QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>         Plaintiff,<br><br>    vs.<br><br>ARCHER AVIATION INC.,<br><br>         Defendant. | CASE NO. 3:21-cv-02450-WHO<br><br>**DECLARATION OF CARYN NIGHTENGALE IN SUPPORT OF WISK AERO LLC'S MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY** |

I, Caryn Nightengale, declare as follows:

1. I am the Chief Financial Officer ("CFO") of Wisk Aero LLC ("Wisk"), a company that is developing commercial electric vertical takeoff and landing ("eVTOL") aircraft. I am making this declaration of my own, personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently to the facts averred to herein.

2. I understand that this declaration is being submitted in support of Wisk's Motion for a Preliminary Injunction, which seeks a court order enjoining the defendant Archer Aviation Inc. ("Archer"). I have reviewed Wisk's complaint against Archer, and I understand that Wisk has filed a lawsuit against Archer, alleging claims for both trade secret misappropriation and patent infringement. I have personal, firsthand knowledge of the measures that Wisk takes to protect its confidential information, and I understand that those measures are relevant to Wisk's trade secret misappropriation claim.

**Wisk's Physical Information Security Measures**

3. Wisk employs a number of physical measures to maintain the security of its confidential and proprietary intellectual property, including but not limited to the measures described here.

4. Wisk requires all employees to wear identification badges while present in Wisk's offices, or any of Wisk's facilities. The doors to Wisk's facilities are kept locked, and, in order to enter, Wisk employees must either be admitted by a receptionist, or "tap" their badges against a "reader" to unlock the doors. After normal business hours, when no receptionist is on duty, Wisk employees cannot gain access without tapping their badge against a badge-reader.

5. In addition to after hours access, employees must also tap their badges against badge-readers in order to access the most sensitive areas of Wisk's offices and facilities. Moreover, not all Wisk employee badges will permit access to the most sensitive areas: if an employee's normal duties do not require access to sensitive areas, then that employee's badge will not permit access.

6. As part of its standard "on boarding process," Wisk requires new employees to sign a written acknowledgement of Wisk's company policies, which include facilities and information security policies.

7. Visitors to Wisk's offices or facilities are required to "sign in" upon arrival and are issued temporary badges that the visitors are required to wear for the duration of their stay. In addition to "signing in," and wearing a temporary badge, visitors must also be escorted by one or more Wisk employees throughout their visit. Wisk has kept all of its visitor sign-in logs since at least June 29, 2019.

8. Unless they are already covered by a non-disclosure agreement--for example, employees of a vendor that has an established relationship with Wisk--visitors must also sign a non-disclosure agreement upon visiting Wisk's offices, which agreement obligates visitors not to reveal any Wisk confidential or proprietary information learned during their visit.

9. Wisk employs closed-circuit cameras to monitor access to its offices and facilities. Wisk keeps copies of the video recorded by the cameras for at least 90 days.

**Wisk's Legal Information Security Measures**

10. In addition to physical information security measures, Wisk also employs a number of legal measures to protect its confidential and proprietary intellectual property. Wisk's legal information security measures include at least the following:

11. Prospective Wisk employees are subjected to a comprehensive background check as part of the hiring process.

12. Wisk employees are required to sign an Employee Invention Assignment and Confidentiality Agreement. Consistent with this policy, former Wisk employee Jing Xue signed the Employee Invention Assignment and Confidentiality Agreement on November 9, 2015. A true and correct copy of Mr. Xue's signed Employee Invention Assignment and Confidentiality Agreement is attached hereto as **Exhibit A**.[1]

---

[1] As explained in Wisk's Complaint against Archer, Wisk was originally named Levt, Inc. when it was founded in 2010, before being renamed Zee.Aero in 2011. Then, pursuant to a 2016 merger, Zee.Aero and the Kitty Hawk Corporation combined under the name "Kitty Hawk." Wisk

13. Wisk employees are also subject to the policies set forth in Wisk's company policies. Prior to 2021, Wisk's company policies were incorporated into an "employee handbook," and, to ensure compliance with the policies in the employee handbook, Wisk required its employees to sign an acknowledgement that they have read and received the employee handbook. Consistent with that policy, former Wisk employee Jing Xue received the employee handbook on November 9, 2018, viewed the handbook on November 10, 2018, and signed the acknowledgement that same day. A true and correct copy of Mr. Xue's employee handbook, complete with the signed acknowledgement page is attached hereto as **Exhibit B**. More recently, Wisk stopped compiling its policies into an employee handbook, and instead began posting its policies directly to the "intranet" for each of the company's relevant company departments. Nonetheless, employees are still required to read and abide by Wisk's company policies.

14. Wisk has also created an employee "Code of Conduct" that prohibits employees from misusing, or improperly disclosing, Wisk's confidential information. Wisk requires its employees to sign a copy of the Employee Code of Conduct. Consistent with that requirement, former Wisk employee Jing Xue signed a copy of Wisk's Employee Code of Conduct on June 26, 2019. A true and correct copy of Mr. Xue's signed Employee Code of Conduct is attached hereto as **Exhibit C**.

15. Wisk also maintains robust "off boarding" procedures, designed to ensure that departing employees abide by their confidentiality obligations to Wisk. Wisk's off-boarding procedures include a formal exit interview, and also require the departing employee to sign a letter acknowledging (i) that the former employee has returned all confidential Wisk property or data, and (ii) that the employee will continue to abide by the confidentiality obligations set forth in the Employee Invention Assignment and Confidentiality Agreement. Consistent with Wisk's standard off boarding procedures, on January 13, 2020, former Wisk employee Jing Xue signed a letter purporting that he returned all company property and data in his possession and confirming his

---

was then "spun off" in 2019 under the name Cora Aero LLC, before finally adopting the name "Wisk Aero" in late 2019. Accordingly, the agreements and other documents referred to in this declaration may use the names Zee.Aero, Kitty Hawk, Cora, or Wisk; but in all cases the agreements create an obligation between the former employee and Wisk.

post-employment obligations under the Employee Invention Assignment and Confidentiality Agreement. A true and correct copy of Mr. Xue's signed off boarding letter is attached hereto as **Exhibit D**.

16. In addition to the exit interview and paperwork described above, Wisk's off-boarding process also includes several steps taken to ensure that former employees cannot continue to access Wisk's confidential information. Specifically, during the off-board process, Wisk deactivates the former employee's badge, so that it can no longer be used to access Wisk's facilities, and the former employee's computer accounts are also deactivated, to ensure that the former employee can no longer log into Wisk's systems. Wisk also deactivates—but does not delete—email accounts used by former employees; meaning that Wisk preserves emails within former employees' accounts.

17. Wisk also enters into non-disclosure agreements with any third parties who receive Wisk's confidential and proprietary information. For example, if Wisk works with an outside manufacturer to build a custom aircraft component, Wisk will require the outside manufacturer to enter into a non-disclosure agreement before Wisk transmits its plans or bills-of-materials for the custom part.

18. Additionally, while it has occurred only rarely, Wisk will report very serious employee misconduct to the authorities. Specifically, when Wisk learned of Jing Xue's file theft, Wisk reported it to the Santa Clara County District Attorney on June 19, 2020.

### Wisk's Electronic Information Security Measures

19. In addition to the physical and legal information security measures described above, Wisk also employs several electronic information security measures, including at least the following:

20. Wisk's documents and information are maintained in a corporate Google Drive repository. Google Drive is a cloud storage system that enables employees to access Wisk documents over the internet using a Wisk-issued username and password. Historically, Wisk required employee passwords to be at least eight characters long, use a mix of upper and lower case letters, and use at least one number. More recently, Wisk has required employees to use

passwords that are at least 12 characters long, include at least one number and one special character; Wisk employees must also now change their passwords every 180 days.

21. Wisk has also instituted certain information controls within its corporate Google Drive repository. Specifically, Wisk employees are each allowed to save their work to a private "My Drive" location that is not accessible by other employees, allowing additional protections for highly sensitive confidential information.

22. Employees may also access some of Wisk's internal systems by logging into Wisk's virtual private network ("VPN") using a Wisk-issued log on ID and password. Additionally, Wisk's network is protected by a commercial Juniper Networks firewall, which Wisk keeps regularly updated.

23. Wisk issues laptop computers to its employees, to be used for their Wisk-related work. Wisk requires all employees to password-protect their Wisk-issued laptops. Additionally, Wisk has used (and continues to use) encryption on Wisk-issued laptops that utilize removable hard drives.

24. When a new employee joins Wisk, they receive a Wisk-issued email account, which is activated just prior to their start date. However, new employees are not given the password for their Wisk email account until after they begin working at the company.

25. Wisk currently employs three different backup programs to create, and preserve, backup copies of its confidential information: Veeam,[2] Backupify,[3] and Code42.[4] Prior to 2020, Wisk used Code 42 to backup client-side data; but it is now required on all Wisk-issued primary devices.

---

[2] https://www.veeam.com/

[3] https://www.backupify.com/

[4] https://www.code42.com/

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: May 18, 2021

By   */s/ Caryn Nightengale*
     Caryn Nightengale

**Local Rule 5-1 Attestation**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

    */s/ Yury Kapgan*
   Yury Kapgan