1  JOSH KREVITT, SBN 208552
   jkrevitt@gibsondunn.com
2  JOSHUA H. LERNER, SBN 220755
   jlerner@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1881 Page Mill Road
4  Palo Alto, CA  94304-1211
   Telephone:     650.849.5300
5  Facsimile:     650.849.5333

6  ORIN SNYDER, SBN 2116424
   osnyder@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   200 Park Avenue
8  New York, NY  10166-0193
   Telephone:     212.351.4000
9  Facsimile:     212.351.4035

10 Attorneys for Defendant
   ARCHER AVIATION INC.

11

                    **UNITED STATES DISTRICT COURT**
12
                    **NORTHERN DISTRICT OF CALIFORNIA**
13
                    **SAN FRANCISCO DIVISION**
14

15 WISK AERO LLC,                          | CASE NO. 5:21-CV-02450-WHO

16              Plaintiff,                  | **DEFENDANT'S NOTICE OF MOTION AND**
                                           | **MOTION TO DISMISS PLAINTIFF'S**
17     v.                                   | **TRADE SECRET CLAIMS (CLAIMS 1 AND**
                                           | **2); SUPPORTING MEMORANDUM OF**
18 ARCHER AVIATION INC.,                   | **POINTS AND AUTHORITIES**

              Defendant.                   | [*[Proposed] Order Granting Motion to Dismiss,*
19                                          | *Request for Judicial Notice, Declaration of*
                                           | *Joshua H. Lerner, and [Proposed] Order*
20                                          | *Granting Request for Judicial Notice filed*
                                           | *concurrently herewith*]
21
                                           | Action Filed:  April 6, 2021
22
                                           | Hearing Date: July 7, 2021
23                                          | Hearing Time: 2:00 p.m.
                                           | Hearing Location: Courtroom 2
24                                          | Honorable Judge William H. Orrick

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 7, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, in Courtroom 2, Seventeenth Floor, of the United States District Court for the Northern District of California in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Archer Aviation Inc. Inc. ("Archer") will, and hereby does, move this Court, pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff Wisk Aero LLC's ("Wisk") first and second causes of action in its Complaint (Dkt. 1) on two independent grounds.

First, the Complaint fails to identify the purported trade secrets that Wisk believes were misappropriated with sufficient particularity, leaving both the Court and Archer without the requisite notice of the trade secrets purportedly at issue.  Second, Wisk fails to plausibly allege that Archer improperly used any Wisk trade secrets.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declaration of Joshua H. Lerner in support, the other documents on file in this action, and any oral argument of counsel at the hearing on the Motion.

DATED:  June 1, 2021                    GIBSON, DUNN & CRUTCHER LLP

                                        By:  _____/s/ Josh A. Krevitt_____
                                                        Josh A. Krevitt

                                        *Attorneys for Defendant Archer Aviation Inc.*

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED ..................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 3

      A.    Wisk's Allegations As To The Trade Secrets At Issue................................. 3

      B.    Wisk's Allegations Of Misappropriation ..................................................... 5

III.  ARGUMENT ........................................................................................................ 6

      A.    Wisk Fails To Plead A Trade Secret With Sufficient Particularity. ............................ 7

      B.    Wisk Fails To Plead Any Improper Use Of A Wisk Trade Secret By Archer............. 9

            1.    Wisk Fails To Allege Any Of Its Employees Transferred A Secret To
                  Archer, Let Alone That Archer Knowingly Used Those Secrets.................... 11

            2.    Wisk's Allegation That Archer's Aircraft Design Bears A "Striking
                  Resemblance" To Wisk's Patent Application Drawing Does Not Give
                  Rise To An Inference Of Trade Secret Misappropriation. .............................. 13

            3.    Wisk's Accusation Of "Inexplicably" Quick Development Is Equally
                  Insufficient. ...................................................................................... 15

            4.    Wisk's Allegations Based On Statements By Archer's Founders Are
                  Baseless. ........................................................................................... 15

IV.   CONCLUSION ..................................................................................................... 16

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4
5

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) ................................................................................15

6

*Agency Solutions.com LLC v. TriZetto Grp., Inc.*,
   819 F. Supp. 2d 1001 (E.D. Cal. 2011) .............................................................................9

7
8

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) .............................................................................9

9
10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................................13

11

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   No. 18-CV-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ..........................8

12
13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................13, 16

14
15

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
   No. 5:15-CV-01370-EJD, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) .......................8, 9

16

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ..........................................................................................10

17
18

*CleanFish, LLC v. Sims*,
   No. 19-CV-03663-HSG, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) .............9, 10, 13

19
20

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................................10

21

*Emazing Lights LLC v. De Oca*,
   2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) ......................................................................8

22
23

*Epicor Software Corp. v. Alt. Tech. Sols., Inc.*,
   2013 WL 12130024 (C.D. Cal. Dec. 2, 2013) ...................................................................9

24

*Hooked Media Grp., Inc. v. Apple Inc.*,
   55 Cal. App. 5th 323 (2020) .............................................................................................11

25
26

*Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
   2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ....................................................................8

27
28

*Integral Dev. Corp. v. Tolat*,
   No. C 12-06575 JSW, 2015 WL 674425 (N.D. Cal. Feb. 12, 2015) ................................15

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
*(continued)*

2

Page(s)

3

*Invisible Dot, Inc. v. DeDecker*,
    2019 WL 1718621 (C.D. Cal. Feb. 6, 2019)....................................................................7

4

5

*Navigation Holdings, LLC v. Molavi*,
    445 F. Supp. 3d 69 (N.D. Cal. 2020) .............................................................................12

6

*Palantir Techs., Inc. v. Abramowitz*,
    No. 19-CV-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020) .......................7, 8

7

8

*Rock the Vote v. Trump*,
    No. 20-CV-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020)..................13, 16

9

10

*Space Data Corp. v. X*,
    No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)...........................8

11

*Teradata Corp. v. SAP SE*,
    No. 18-CV-03670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .........................6

12

13

*Unsworth v. Musk*,
    No. 19-MC-80224-JSC, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) ........................13

14

15

*Vendavo, Inc. v. Price f(x) AG*,
    No. 17-CV-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018)............................7

16

*Veronica Foods Co. v. Ecklin*,
    No. 16-CV-07223-JCS, 2017 WL 2806706 (N.D. Cal. June 29, 2017) ...................10, 12

17

18

*Zoom Imaging Sols., Inc. v. Roe*,
    2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) ...................................................................8

19

**STATUTES**

20

18 U.S.C. § 1836...................................................................................................................6

21

18 U.S.C. § 1839................................................................................................................6, 9

22

Cal. Civ. Code § 3426.1.....................................................................................................6, 9

23

Cal. Civ. Code § 3426.3........................................................................................................6

24

**OTHER AUTHORITIES**

25

Manual of Patent Examining Proc. § 608.01(c) (June 2020)................................................14

26

27

28

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

**REGULATIONS**

37 C.F.R. § 1.97 ..................................................................................................................................14

37 C.F.R. § 1.98 ..................................................................................................................................14

## I.   INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), Defendant Archer Aviation Inc. ("Archer") moves to dismiss the First and Second Causes of Action of Plaintiff Wisk Aero LLC's ("Wisk") Complaint, alleging federal and state trade secret violations.  A plaintiff bringing a misappropriation claim must plausibly allege both the existence of a trade secret and knowing "misappropriation" of that trade secret.  Wisk's trade secret claims must be dismissed because the Complaint fails to allege either of these fundamental elements—a trade secret or misappropriation by Archer.  Wisk's Complaint is long on hyperbole and speculation, but utterly bereft of any legally cognizable claim of the existence of a specific trade secret, let alone its misappropriation by Archer.

***No Trade Secret Identified.***  Wisk fails to allege a trade secret with sufficient particularity to differentiate the secret from matters of general knowledge in the trade or of special knowledge of those skilled in the trade, which is the sine qua non of any trade secrets complaint.  Wisk is obligated to identify the trade secrets at issue, not simply list broad categories of allegedly confidential information that cover virtually every aspect of Wisk's business, without specificity or limitation.  But that is precisely what the Complaint does.  For example, Wisk alleges that its "aircraft designs" are trade secrets (Compl. ¶ 72), and broadly points to a variety of documents that are alleged to contain such information, but never once identifies any "aircraft design" that it contends is, in fact, a trade secret.  In similarly broad language the Complaint points to "component designs," "system designs," "manufacturing," and "test data," (*id.* ¶¶ 73–76), but again, never does Wisk point to even a single, specific item of information within those categories and contend that it is a trade secret.

Nowhere in the Complaint does Wisk identify even one purported trade secret with sufficient clarity to put Archer and the Court on notice of the boundaries within which the secret lies.  This shortfall, in and of itself, is sufficient to require dismissal of the trade secret claims under the controlling law in the Ninth Circuit.

***No Misappropriation By Archer Is Alleged.***  Wisk does not allege facts showing that Archer misappropriated any alleged trade secret at all.  In fact, in place of allegations of fact showing that Archer itself misappropriated a Wisk trade secret or knowingly used a Wisk trade secret misappropriated by someone else, Wisk's Complaint simply repeats, time and again, a series of

irrelevant and/or insufficient facts in an attempt to give the impression that Archer *must have* misappropriated Wisk trade secrets.  Specifically, Wisk's Complaint alleges that (1) a former employee of Wisk downloaded Wisk's proprietary and confidential information; (2) Archer's aircraft design bears a "striking similarity" to a drawing contained in a confidential patent application submitted by Wisk in January 2020; and (3) Archer has announced an "inexplicably" quick time to complete the development, manufacture, and certification of its first aircraft.  These assertions, even when viewed in the light most favorable to Wisk, fall far short of stating a claim for trade secret misappropriation by Archer.

Initially, Wisk places great emphasis on the "suspicious" activities of non-defendant individuals before they were employed by Archer (particularly "Engineer Z," later identified as Jing Xue).  Wisk claims that some former Wisk employees, including Mr. Xue (who is alleged to have left Wisk's employ in January 2020), engaged in unauthorized downloading of certain Wisk files while employed by Wisk.  Wisk's approach is fundamentally a distraction intended to obscure the fact that Wisk does not allege—because Wisk cannot allege—that at any time any Wisk employee disclosed any Wisk information to Archer, or used any such information at Archer.  In other words, *Wisk never even alleges that Archer acquired any of Wisk's alleged secrets*.  That pleading failure is fatal to the Wisk's trade secret claims:  Allegations that one or more current Archer employees engaged in unauthorized downloading of Wisk's files while employed by Wisk must be accepted as true for the purposes of this motion, but such allegations do not suffice to show that Archer (the only defendant in this case) came into possession of the files or learned of the confidential information therein, much less that it did so knowingly, as is required to state a trade secret claim.  Wisk nowhere even attempts to allege facts to connect the dots from Mr. Xue's alleged downloads to Defendant Archer's alleged misappropriation.

Next, Wisk relies on its claim that Archer's design is similar to an undisclosed Wisk design.  Through sheer repetition of illustrations and accusations (*see, e.g.*, Compl. ¶¶ 4, 35, 58, 81, 82), Wisk has made such purported design "similarities" into the linchpin of its case.  Specifically, Wisk alleges that an Archer investor presentation revealed that an Archer aircraft in development bears a "striking similarity" to a drawing contained in a confidential patent application submitted by Wisk in

January 2020.  Incredibly, however, *Wisk does not even allege that its aircraft design is a trade secret*.  Wisk emphasizes that the patent application containing the design drawings is itself a confidential document—but Wisk does not allege that a single feature depicted in its patent application drawings constitutes a trade secret.  Wisk's inability to plead that the allegedly similar design features are Wisk trade secrets compels dismissal of the trade secret claims:  Design features that are not themselves trade secrets cannot be the basis for a claim of trade secret misappropriation, regardless of how "suspicious" the Complaint paints the alleged circumstances surrounding the similarities.

Finally, Wisk alleges that Archer has "inexplicably" indicated its expectation to complete the development, manufacture, and certification of its first aircraft by 2024—supposedly such an "astonishing timeline" that, according to Wisk, it must be the product of trade secret misappropriation.  But Wisk's speculation about the anticipated speed of Archer's future development of a manufactured and certified aircraft is no substitute for allegations that Wisk actually has obtained and used Wisk trade secrets—allegations missing from the Complaint.

Wisk's allegations, even if proven true, would not constitute a claim upon which relief could be granted against Archer, because Wisk's allegations are neither focused on trade secrets, nor directed at Archer.

## II.     STATEMENT OF FACTS

### A.     Wisk's Allegations As To The Trade Secrets At Issue

Wisk's Complaint asserts six causes of action, two claiming trade secret violations and four alleging patent infringement, and the Complaint acknowledges that Wisk differently protects different technologies.  *See id.* ¶ 94 ("These disclosed inventions [in Wisk's patent portfolio] are distinct from the information and innovations that Wisk has elected to retain as trade secrets.  Along with its massive investments in intellectual property, Wisk chooses to seek patent protection for some inventions, while relying on trade secret protections for other valuable innovations and information.").  The Complaint does not attempt to identify where the boundary lines are that separate trade secret technologies from patented inventions:  All 123 paragraphs of the Complaint

Gibson, Dunn &
Crutcher LLP

that precede the First Cause of Action are incorporated into all six causes of action.  *Id.* ¶¶ 124, 133, 142, 160, 177, 193.

In regard to Archer, the Complaint alleges that the company was founded in 2018 by two alumni of the University of Florida, but that it did not have "real operations" at the time of its incorporation.  *Id.* ¶¶ 53–54.  Wisk alleges that the two founders were without personal experience in the development of eVTOL aircraft and "[i]nstead, the two raided the workforces of more experienced companies."  *Id.* ¶ 53.  The Complaint places particular emphasis on the number of former Wisk engineers hired by Archer, implying but not alleging wrongdoing.  *Id.* ¶¶ 59–60.  And, despite the advance billing promised by its caption preceding paragraph 61 ("Archer's Raid on Wisk's Confidential, Proprietary, and Trade Secret Information"), in the Complaint's ensuing paragraphs Wisk alleges only that Engineer Z (*i.e.*, Jing Xue) downloaded approximately 5,000 Wisk files before resigning from Wisk in January 2020.  *See id.* ¶¶ 61–70.  The Complaint is devoid of actual allegations (captions are not a substitute for pleaded facts) that Archer in any way provoked a "raid" or directed the alleged improper downloading activities by Mr. Xue or any other Wisk employee.

The Complaint's First and Second Causes of Action plead the existence of trade secrets without particulars.  Specifically, the Complaint alleges at paragraphs 125 (First Cause of Action) and 134 (Second Cause of Action) only "general categories":

- Aircraft Designs;
- Component Designs;
- System Designs;
- Manufacturing; and
- Test Data.

However, Wisk purports to provide additional detail regarding each "general category" through its incorporation by reference, specifically at paragraphs 71 through 79.  But there as well, the Complaint's description of the purported trade secrets are amorphous and non-exhaustive subcategories of generic subject matter.  *See, e.g.*, *id.* ¶ 72 ("The files stolen disclose confidential aircraft designs in four general categories[.]"); *id.* ¶ 73 ("[T]he stolen files also *include* CoDRs,

Gibson, Dunn &
Crutcher LLP

PDRs, and CDRs that Wisk created for certain aircraft components and systems." (emphasis added));
*id.* ¶ 74 (system design documents at issue pertain to "multiple systems, *including* flight controls,
guidance/navigation and control systems, low voltage power systems, high voltage power systems,
charging systems *and so forth*" (emphasis added)); *id.* ¶ 75 ("The stolen [manufacturing] files
. . . *include* facility floorplans and layouts, photographs of machining equipment and tools, molds for
structures, various jigs, hand tools, *etc.*" (emphasis added)); *id.* ¶ 76 ("The stolen files also contain
raw Wisk testing data, *including* tests of various aircraft configuration, system and component
designs during their development phases." (emphasis added)).

In regard to each of its five categories of alleged trade secrets, Wisk alleges that the
information "*could*" (or in one case, "*would*") accelerate Archer's developmental timetable, *if* used.
*See id.* ¶ 72 ("Using the information contained in these files, Archer could take the years of lessons
learned by Wisk's engineers . . . to drastically shortcut the process."); *id.* ¶ 73 ("Using the
information contained in these files, Archer could precisely replicate multiple, custom components in
Wisk's aircraft . . . ."); *id.* ¶ 74 ("Using the information contained in these files, Archer could take
years of accumulated, evolutionary and innovative design . . . ."); *id.* ¶ 75 ("Using the information
contained in these files, Archer could replicate Wisk's manufacturing and machining capabilities, and
skip years of trial and error . . . ."); *id.* ¶ 76 ("This data would be particularly valuable to a competitor
such as Archer that intended to build an aircraft replicating Wick's design.").

**B.     Wisk's Allegations Of Misappropriation**

After repeatedly alleging that Wisk's information, if used by a competitor such as Archer,
could allow the competitor to accelerate its developmental timeline, Wisk's Complaint implies but
does not directly allege that Archer used any specific Wisk trade secret in any specific manner.
Instead, Wisk seeks to plead indirect misappropriation through a four-part proof:

***First***, Wisk refers to the alleged trade secrets as "stolen files" (*see, e.g.*, *id.* ¶¶ 71, 73–76), but
the Complaint attributes the alleged theft of Wisk's files to only a single "Engineer Z" (Mr. Xue),
whose allegedly "suspicious" activities are alleged to have taken place before Mr. Xue joined Archer.
*Id.* ¶¶ 6, 63–66.  The Complaint does not allege that Mr. Xue disclosed the existence of the allegedly

Gibson, Dunn &
Crutcher LLP

downloaded files to Archer, much less that he transferred any such files to Archer or used the information contained therein in the performance of his job at Archer.

**Second**, Wisk implies that Archer must be guilty of trade secret misappropriation because images of Archer's design bear a "striking resemblance" to drawings in "Wisk's recent, confidential patent application." *Id.* ¶ 6. Wisk seeks to link the design similarities to Mr. Xue's file downloading, alleging that the files Mr. Xue downloaded included confidential presentations on Wisk aircraft, "including aircraft having the fixed wing, 12-rotor configuration that Archer copied from Wisk." *Id.* ¶ 84. However, Wisk *never* alleges that the drawings from its patent comprise a secret or that Mr. Xue (or any other Archer employee who was previously at Wisk) had access to or downloaded copies of the patent application.

**Third**, Wisk characterizes Archer's "surprising" announcement (*id.* ¶ 4) of a *projected* timeline for the future release of an aircraft to be "inexplicably" rapid, but Wisk then purports to explain the inexplicable by declaring that only through the use of Wisk trade secrets (and patented technology) could Archer possibly move from concept to commercialization as quickly as Archer claims it will. *See id.* ¶ 87 ("In short, Archer knew or should have known that it was not possible to develop and certify an eVTOL aircraft in the timeframe it claimed . . . without relying on intellectual property that was not its own.").

**Fourth**, Wisk cites to excerpted quotations from Archer's founders, alleging, for all intents and purposes, that such statements amount to publicly confessed trade secret violations. *See id.* ¶¶ 9, 88–92.

## III.   ARGUMENT

A plaintiff bringing a misappropriation claim under the federal Defend Trade Secrets Act and California Uniform Trade Secrets Act must plausibly allege, among other things, (1) the existence of a trade secret, (2) knowing "misappropriation" of that trade secret, and (3) damages. 18 U.S.C. §§ 1839(3) & (5), 1836(b)(3)(B); Cal. Civ. Code §§ 3426.1(b), 3426.3; *Teradata Corp. v. SAP SE*, No. 18-CV-03670-WHO, 2018 WL 6528009, at *3 (N.D. Cal. Dec. 12, 2018). Wisk fails to allege either of the most fundamental elements—a trade secret or misappropriation.

## A.      Wisk Fails To Plead A Trade Secret With Sufficient Particularity.

The test for pleading a trade secret is well-established, and Wisk does not come close to meeting it.  A trade secret plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation and quotation marks omitted).  Wisk falls well short of that requirement, choosing to plead by broad categories of information that include trade secrets, without identifying any particular trade secret.  Indeed, one would be hard-pressed to conceive of broader categories of information than those pleaded in the Complaint as the trade secrets at issue.  *See, e.g.*, Compl. ¶ 74 ("Numerous CoDRs, PDRs, and CDRs as well as other design and issue focused files related to specific aircraft systems (*e.g.*, the low voltage power system, motor control system, etc.) are included in the files in this category.").  Such a blunderbuss approach provides no actual notice of what Wisk trade secret(s) Wisk alleges have been misappropriated by Archer.  *See Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019) (plaintiff's "laundry list of items . . . does not meaningfully define the trade secrets at issue").[1]

Wisk's initial excuse for pleading by broad category rather than through the identification of specific documents is that "[t]he sheer volume of the theft makes it impractical to describe every single stolen Wisk trade secret in th[e] Complaint."  Compl. ¶ 71.  That is no excuse, particularly when the "theft" is not attributed to Archer, but rather to an individual who is not a defendant in this action.  Nevertheless, asserting a right to plead as it believes is "practical," Wisk has delineated only general categories of high-level technical documents—categories of documents that would be found at any company in this industry—and claims this generic recitation is a satisfactory identification of the trade secrets that Archer is alleged to have misappropriated.  It is not.  Indeed, it is as if Wisk has

---

[1] Wisk's recently filed California Code of Civil Procedure § 2019.210 trade secret disclosure (Dkt. 16-08) would not alleviate the problem with Wisk's Complaint even if it was sufficient for its intended purpose, which it is not.  The caselaw establishes that Wisk must meet its threshold burden to *plead* a trade secret in the Complaint, not through a § 2019.210 disclosure.  *See Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2020 WL 9553151, at *18 (N.D. Cal. July 13, 2020).

Gibson, Dunn &
Crutcher LLP

named a handful of massive national parks and noted that they each contain forests, when its pleading obligation is to identify one or more particular trees. A trade secret complaint cannot survive a motion to dismiss without the identification of trade secrets with enough specificity to give the Court and Archer "notice of the boundaries of this case." *Abramowitz*, 2020 WL 9553151, at *18 (citation and quotation marks omitted). Wisk's Complaint fails to provide any such notice.

As court after court has explained, "allegations of broad categories relating to business or technology are not adequate to support a trade secrets claim." *Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018); *see also Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) ("generic list of categories of various types of information" was "vague and conclusory" and insufficient). A trade secret claim should be dismissed where, as here, Wisk simply pleaded "a high-level overview of [its] purported trade secrets." *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). Making matters worse here, Wisk's lengthy and non-exhaustive lists of subcategories and files following each general category are peppered with catchall phrases like "and so forth," "etc.," and "including." *See, e.g.*, Compl. ¶¶ 74–75. Such phrases only further obscure identification of the trade secret because they indefinitely expand, rather than define, the alleged secret. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) ("[A] number of the categories are preceded by the phrases 'such files included' and 'such as,' thereby further expanding the scope of the allegations in which the categories are contained."); *Emazing Lights LLC v. De Oca*, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (use of terms like "includes" means any "piece of information could potentially be labeled a trade secret"); *Zoom Imaging Sols., Inc. v. Roe*, 2019 WL 5862594, at *5 (E.D. Cal. Nov. 8, 2019) ("Because the list of Confidential Information is not exhaustive, and because the trade secrets are an unknown subset of the indefinite Confidential Information, plaintiff does not sufficiently identify anything. The Complaint gives defendants no clue whatsoever about what information forms the basis of plaintiff's misappropriation claim."). Finally, the use of "general categories" and catchall phrases is particularly problematic in cases like this one because the "categories" encompass information that is irrefutably public and identify nothing that is not. For

example, Wisk alleges that the generic category of "System Designs" includes "low voltage power systems." Compl. ¶ 74. But Wisk also alleges that it has patents on certain "charging systems" for "'all-electric aircraft'" (*id.* ¶ 110)—which by definition are not secret because they have been published in a patent. *Bladeroom*, 2015 WL 8028294, at *4. Here, Wisk has asserted two trade secret misappropriation claims and four patent infringement claims, without any disclosure of what proprietary technology is protected as a trade secret, and what is covered by patents. *See* Compl. ¶ 94 ("Wisk chooses to seek patent protection for some inventions, while relying on trade secret protections for other valuable innovations and information."). It is axiomatic that the same information cannot be protected as a trade secret and by a patent, but, here, the Court and Archer cannot "delineate the boundaries between [Wisk's] trade secrets" and "information that has been made public through patents and patent applications." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019) (citation omitted). This "reaffirms" that Wisk has "not described [its] trade secret with sufficient particularity," making appropriate dismissal of the trade secret claims. *Bladeroom*, 2015 WL 8028294, at *4.

In sum, Wisk's failure to plead a trade secret with sufficient particularity to differentiate it from what is publicly known—and to put Archer and the Court on notice of the boundaries of the claims—is reason alone to dismiss the trade secret claims.

**B.    Wisk Fails To Plead Any Improper Use Of A Wisk Trade Secret By Archer.**

Wisk fails to meet its burden to plead facts establishing misappropriation by *the only named defendant, Archer*. "Misappropriation is defined under both federal and state law as 'improper acquisition of a trade secret or disclosure of a trade secret or use of a trade secret.'" *CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 4732192, at *6 (N.D. Cal. Aug. 14, 2020) (quoting *Agency Solutions.com LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011)); 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b). "As with the other elements of misappropriation, Plaintiff may not rely on 'conclusory, formulaic allegation[s]' to establish the element of misappropriation." *CleanFish*, 2020 WL 4732192, at *6 (quoting *Epicor Software Corp. v. Alt. Tech. Sols., Inc.*, 2013 WL 12130024, at *3 (C.D. Cal. Dec. 2, 2013)).

Here, Wisk carries a specific burden because it is alleging indirect misappropriation, *i.e.*, that Archer somehow acquired trade secrets through others.  Wisk must allege facts to show that Archer "knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it."  *Id*. (citation and quotation marks omitted). Critically, Wisk must allege facts that are not merely consistent with Wisk's theory but that exclude an innocent explanation.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent" with an innocuous explanation (citation and quotation marks omitted)); *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (holding that "mere fact" that competitor began selling products to stores previously supplied by plaintiff "is to be expected from a new [competitor] entering the market" and was insufficient to exclude "an innocent explanation" (citation omitted)); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *CleanFish*, 2020 WL 4732192, at *7.

Wisk lacks *any* facts that Archer ever knowingly used a Wisk trade secret.  In lieu of those facts, Wisk resorts to a sleight of hand that the Court should reject.  As set forth in greater detail below, Wisk points to alleged downloads by its former employees, most importantly, Mr. Xue, and insinuates that the downloads can somehow be connected to Archer's design.  Wisk, however, never connects the alleged downloads to any improper use of any Wisk trade secret by Archer—Wisk never alleges a single instance of any purported secret material from any allegedly downloaded files being used in Archer's design or anywhere in Archer's business.  Instead, Wisk pivots, asking the Court to assume Archer must have used what Mr. Xue allegedly downloaded because there is a "striking resemblance" between Archer's aircraft and Wisk's "recent, confidential patent application" because both have "six front rotors" that tilt, "six rear rotors," and a V tail.  Compl. ¶¶ 6, 83.  But the "similarity"—like the downloads—is never linked to Archer's use of Wisk trade secret.  It cannot be. Indeed, Wisk never claims that the drawing in its patent is a secret; to the contrary, Wisk has put the drawing in a public filing.  And even if Wisk had alleged the drawing were a secret, it never alleges that the former employees who joined Wisk were aware of the drawing or design, that the drawing

was in the allegedly downloaded files, or that Archer knowingly relied on the drawing.  In sum, the misappropriation theory boils down to a farce—that similarity between non-secrets is sufficient to plead a claim against Archer.

        **1.**      **Wisk Fails To Allege Any Of Its Employees Transferred A Secret To Archer, Let Alone That Archer Knowingly Used Those Secrets.**

Wisk **never** alleges (because it cannot consistent with Rule 11) that *Archer* used any of Wisk's alleged secrets.  Instead, Wisk points to other facts that cannot serve as a substitute for pleading misappropriation by Archer.

Wisk begins by repeatedly implying that there is some negative inference to be drawn from Archer's hiring roughly ten of Wisk's engineers in January of 2020, around the time that Wisk filed its confidential patent application.  Compl. ¶¶ 4, 59.  Wisk goes so far as to allege that the similarity between Archer's design on the drawing in the patent application "could not have been a coincidence" because "Archer recruited and hired ten of Wisk's engineers.  *Id*. ¶ 6.

Wisk, however, never alleges that any of its former employees were aware of the design in the patent application, knew it was a secret, or, most importantly, shared the design or any other trade secret with Archer.  Indeed, Wisk implies that Archer's hiring of Mr. Thomas Muniz, Wisk's former Vice President of Engineering, somehow led to the similarity between Archer's design and Wisk's patent application, but Wisk never alleges that Mr. Muniz transmitted a single trade secret to Archer.  Compl. ¶ 57–58. As Wisk is well-aware, hiring employees from a competitor does not give rise to *any* inference of misappropriation or wrongdoing because California courts do not assume that employees will misuse trade secrets when they choose to join a new employer.  *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332–33 (2020), *review granted and cause transferred sub. nom.*, 472 P.3d 1064 (Cal. 2020) ("For that reason, evidence that Apple hired engineers with knowledge of Hooked's trade secrets and that the engineers inevitably would have relied on that knowledge in their work for Apple does not support a claim for improper acquisition of a trade secret.").  That is why the Complaint admits that Wisk "also depends on a fluid and elastic market for talent and strongly believes in the ability of employees to have the freedom to choose where they work."  Compl. ¶ 60.

Because hiring alone is utterly insufficient to establish misappropriation, Wisk repeatedly relies on "suspicious forensic evidence." *Id.* ¶ 7. Wisk even alleges a "raid" on its trade secret information. *Id.* ¶¶ 60–61. But Wisk never connects (because it cannot) any of the pre-hiring activity of these individuals (who are not named as defendants) to any acquisition of a specific trade secret by Archer. Instead, Wisk points to one unidentified employee who allegedly wiped unidentified "forensic evidence from his computer hard drives," and another unidentified employee who downloaded "slide presentations," without ever alleging that either employee downloaded a Wisk trade secret, let alone shared it with Archer. *Id.* ¶¶ 61–62. Given the lack of any facts suggesting that Archer is somehow liable for misappropriation given these two employees' alleged downloads, Wisk focuses on the alleged downloads by "Engineer Z," now identified as Mr. Xue. *Id.* ¶¶ 63–69. Critically, however, Wisk fails to allege that Mr. Xue transferred any information to Archer, let alone that Archer knew about it. At the end of its allegations against Mr. Xue, Wisk simply alleges in utterly conclusory fashion that Mr. Xue "improperly retained these files after his employment with Wisk," and therefore "Archer knew, *or at a minimum had reason to know*, that [Mr. Xue] had improperly retained these files from his employment at Wisk." *Id.* ¶ 70 (emphasis added). Then, even more remarkably, Wisk asks the Court to accept that while Wisk cannot plead any facts showing misuse by Archer now, discovery will show that "Archer improperly relied on the information contained in these files . . . ." *Id.* ¶ 70.

A "naked assertion[]" that defendant "had reason to know" is insufficient under Rule 8 to plead a trade secret claim that has knowledge as one of its elements. *Veronica Foods*, 2017 WL 2806706, at *12, *14 (citations and quotation marks omitted); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (granting motion to dismiss where plaintiffs alleged in conclusory fashion that defendants "'had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use'"). The Complaint, at best, pleads misconduct by Mr. Xue, not Archer, and it was incumbent on Wisk in suing Archer to plead *some* facts that support a connection between misappropriation of a specific trade secret by a former employee on the one hand, and knowing acquisition of that secret by Archer on the other hand. Wisk's "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Wisk's allegations as to its former employees therefore fall far short of alleging improper use of or reliance on any trade secret by Archer.

**2.      Wisk's Allegation That Archer's Aircraft Design Bears A "Striking Resemblance" To Wisk's Patent Application Drawing Does Not Give Rise To An Inference Of Trade Secret Misappropriation.**

As set forth above, Wisk improperly relies on similarity as a proxy for trade secret misappropriation.  Specifically, instead of alleging facts showing that Archer knowingly used any Wisk trade secret, Wisk alleges that the "same overall aircraft configuration" from Archer's investor presentation is "disclosed in Wisk's January 2020 patent application," that the similarity "indicates use of more detailed design features," and that the "technology and design, disclosed in Wisk's January 2020 patent application, is based upon information" that is "contained in the files" downloaded by Mr. Xue.  Compl. ¶¶ 83–84.  There are three glaring problems with Wisk's reliance on similarity as a substitute for Archer's knowing use of any Wisk trade secret:

*First*, Wisk *never* alleges that the drawing in its patent application is actually Wisk's trade secret.[2]  To the contrary, Wisk disclosed the drawing of the design—the only thing Wisk actually identifies as similar to Archer's plane—in its unsealed court filing.  *CleanFish*, 2020 WL 4732192, at *5 ("Plaintiff even includes a direct excerpt of this supposedly secret information within its publicly filed SAC, a decision which at a minimum is in tension with Plaintiff's contention that such information qualifies as a trade secret.").  Wisk's incantation that its application is unpublished and

---

[2]  There is nothing secret about using 12 rotors on a fixed wing, nor does Wisk claim otherwise. Since 2018, Wisk has publicly displayed exactly that on its own website.  *See* Decl. of Joshua H. Lerner, Ex. A (https://wisk.aero/news/blog/partneringwithairnewzealand/ (dated Oct. 15, 2018)). As explained in the concurrently filed request for judicial notice, the Court may consider the existence of this information because it is "information available on [a] publicly available website[]."  *Rock the Vote v. Trump*, No. 20-CV-06021-WHO, 2020 WL 6342927, at *3 n.2 (N.D. Cal. Oct. 29, 2020) (citing *Unsworth v. Musk*, No. 19-MC-80224-JSC, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019)).

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

confidential accomplishes nothing.  That, without the identification of a specific trade secret, is entirely irrelevant to the disposition of this motion.[3]

**Second**, even if the drawing in the patent application were pled as a trade secret, Wisk never alleges that the drawing was stolen or used by anyone, let alone Archer.  Wisk does not even allege that any of its former employees who joined Archer knew about the design in the patent, which was filed in January 2020, or that the design was among the allegedly downloaded files.  Indeed, Wisk pleads that Mr. Muniz, a former Wisk employee, joined Archer *before* the patent was allegedly filed.  Compl. ¶¶ 56, 81.  Wisk never alleges that Mr. Muniz was involved in, or aware of, the patent application.

**Third**, Wisk never explains the basis for its assumption, which pervades the entirety of its Complaint, that the "striking similarity" between nonconfidential features of Wisk's patent application drawing and a photograph of the body of an Archer aircraft reflects that Archer had access to Wisk trade secret information.  *Id.* ¶ 83.  Indeed, Wisk is silent on the differences between its patent drawing and Archer's overall design, including a different wing design, a different tail design, and different landing gear.  *See id.* ¶ 82 (showing wing tips with opposite orientations, different tail design—"Y" vs. "V", and completely different landing gear).  And, while it may be reasonable to assume that Archer's rendering of its external aircraft design "indicates [Archer's] use of more detailed design features, including features related to aircraft propulsion, power management, avionics, flight control, and manufacturing methodology" (*id.* ¶ 83), there is absolutely no basis upon which to assume, as Wisk apparently does, that any of those more detailed features in Archer's aircraft were the result of *Archer's* access to *a Wisk trade secret*.

In sum, Wisk's misappropriation case boils down to its reliance on a comparison of Wisk's non-trade-secret drawing with a single, shadowed image of Archer's design.  Far from being sufficient to draw inferences of misappropriation and use here, Wisk's failure to identify how even a single one of its alleged trade secrets was used by Archer is fatal to its trade secret claims.

---

[3]  Saying that the patent application was "confidential" does not mean the information submitted therein is secret.  Far from it.  The regulations specifically contemplate that an application would include prior art from published patents—*i.e.*, public information.  *See* Manual of Patent Examining Proc. § 608.01(c) (June 2020) (citing 37 C.F.R. § 1.97 and 37 C.F.R. § 1.98).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S TRADE SECRET CLAIMS (CLAIMS 1 AND 2)
CASE NO. 5:21-CV-02450-WHO

**3.      Wisk's Accusation Of "Inexplicably" Quick Development Is Equally Insufficient.**

Wisk's next misappropriation theory takes its speculation a step further.  Wisk alleges that, in contrast to others in the industry, "Archer claims to have completed multiple stages of the development and commercialization process in less than two years," (Compl. ¶ 45), suggesting that Archer could never have done so without using Wisk's (unidentified) trade secrets.  That again is just unadorned speculation premised on an erroneous assumption.

To begin with, this is just piling flawed logic on more flawed logic.  Archer's timing is only suspicious if one assumes—improperly—that the similarity between Archer's design and Wisk's patent drawing is evidence of trade secret misappropriation.  Given that Wisk has never tied the alleged similarity to any misuse of Wisk trade secrets, the amount of time Archer took to come up with the design cannot be used against it as evidence of trade secret misappropriation.

Furthermore, even if Wisk had pointed to a similarity between Archer's design and a Wisk trade secret, the mere fact that Wisk professes to be incapable of otherwise explaining Archer's success does not amount to competent evidence of trade secret misappropriation—Wisk treats Archer's projected timetable as a sufficient substitute for such evidence.  It is not.  *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2015 WL 674425, at *5 (N.D. Cal. Feb. 12, 2015) ("This Court does not find persuasive Integral's conclusion that Tolat must have shared its trade secret information with EBS because the company was able to get a competitive product to market more quickly than Integral.").  Archer was free to take advantage of publicly available information, as well as to partner with third-party consultants and parts suppliers—nothing mandated that Archer try to replicate the development pathway selected by Wisk or any other competitor.  *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008) (dismissing DTSA claim where "there is no allegation that [defendant] either disclosed or used the secrets in developing [its product], only that [defendant] 'seemed to' develop its product 'surprisingly quick[ly]' in [plaintiff's] opinion, which is of no import" (footnote omitted)).

**4.      Wisk's Allegations Based On Statements By Archer's Founders Are Baseless.**

Wisk's last gasp attempt to plead a misappropriation theory requires a remarkable leap of logic.  Wisk points to the fact that Archer's founders have publicly acknowledged that Archer hired

1   from Wisk and that Wisk has invested time and money in aircraft development over the last ten years.

2   Compl. ¶¶ 88–92.  Based on these facts, Wisk suggests that Archer "has not actually been engaged in

3   the kind of research and development in which Archer's competitors invested significant time and

4   resources." *Id.* ¶ 92.  The Court will search the interviews referenced in vain for any statement that

5   suggests any impropriety, let alone trade secret misappropriation,[4] and there is, to state the obvious,

6   nothing wrong with hiring talented employees from a competitor or acknowledging that competitor's

7   history of investment and work.  Wisk is twisting Archer's statements past the breaking point in

8   hopes of making a claim where no claim exists.

9                                         *   *   *   *   *

10          Neither accusations against non-parties nor conclusory assertions of what can and can't be

11  done in two years are sufficient to show Archer's acquisition or use of Wisk's trade secrets, and

12  certainly cannot demonstrate that Archer knowingly "used improper means" to get information or

13  that Archer knew or had reason to know that the information constituted trade secrets of Wisk.

14  Wisk's speculation, unsupported by specific allegations and contrary to common sense, is insufficient

15  to allege misappropriation of the unidentified trade secrets.  *See Twombly*, 550 U.S. at 555 (plaintiff

16  must allege facts sufficient to "raise a right to relief above the speculative level").

17                              **IV.    CONCLUSION**

18          Wisk's trade secret allegations fail to plead the requisite elements of a trade secret claim and,

19  accordingly, the first and second causes of action should be dismissed.

20                                         Respectfully submitted,

21

22  DATED:  June 1, 2021                    GIBSON, DUNN & CRUTCHER LLP

23
                                           By:  _____*/s/ Josh A. Krevitt*_____
24                                                         Josh A. Krevitt

25                                         *Attorneys for Defendant Archer Aviation Inc.*

26  _____

27  [4]  The full transcripts from the quoted interviews are attached to the Declaration of Joshua H.
        Lerner as Exhibits B, C, and D and may be considered on a motion to dismiss because they are
28      incorporated by reference and also "available on publicly available websites."  *Rock the Vote*,
        2020 WL 6342927, at *3 n.1.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S TRADE SECRET CLAIMS (CLAIMS 1 AND 2)
CASE NO. 5:21-CV-02450-WHO

Gibson, Dunn &
Crutcher LLP