JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: 650.849.5300
Facsimile:  650.849.5333

ORIN SNYDER, SBN 2116424
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035

Attorneys for Defendant and Counterclaimant
ARCHER AVIATION INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ARCHER AVIATION INC.,<br><br>　　　　　Defendant. | Case No.    5:21-cv-02450-WHO<br><br>**DEFENDANT ARCHER AVIATION INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIMS AGAINST WISK AERO LLC**<br><br><br>**DEMAND FOR JURY TRIAL** |

Defendant Archer Aviation Inc. ("Archer") hereby responds to the Complaint ("Complaint") filed by Plaintiff Wisk Aero LLC ("Wisk") and asserts counterclaims as follows:

## INTRODUCTION

1.      This lawsuit is entirely without merit, and was filed for an obvious and impermissible purpose: to impede the runaway success of, and investment in, Archer and its state-of-the-art aircraft design.   Despite page after page of reckless innuendo and rank speculation—all designed merely to create fear and uncertainty—Wisk does not actually identify even a single Wisk trade secret ever used by, or even known to, Archer.  Wisk's patent claims are equally meritless and improper: Archer does not infringe Wisk's patents, and Wisk has no basis to allege otherwise.

2.      Wisk's complaint lacks any evidence of misappropriation because there was no misappropriation.  Archer developed its own aircraft design independently, working with one of the country's leading eVTOL aircraft design consultants.  In fact, in spite of Wisk's baseless conjecture about former Wisk employees, the design of Archer's aircraft—the very design that Wisk claims looks similar to its design and on which Wisk bases its allegations—had already been developed and analyzed before a single former Wisk employee started work at Archer and before any former Wisk employee supposedly downloaded any secret information.  This case has nothing to do with the design of Archer's aircraft and everything to do with the success of Archer's business—and the failure of Wisk.

3.      Archer is one of the leading aerospace companies in the world, and since its founding has relentlessly focused on its mission to design and build the best electric vertical takeoff and landing (eVTOL) aircraft.  Archer has assembled a world-class engineering team with over 200 years of combined eVTOL development experience, including some of the leading aerospace engineers on the planet from a wide range of private and government entities, including SpaceX, NASA, Tesla, Google, Wisk, Waymo, Airbus, Joby, Aerion Supersonic, and others.

4.      Archer has developed a best-in-class eVTOL aircraft design and has attracted an enviable list of investors.  Archer recently announced a merger with Atlas Crest Investment Corp., a transaction that is forecast to result in up to $1.1 billion in gross proceeds, which will fund future growth.  At the same time as the billion-dollar Atlas Crest announcement, Archer also announced an

extraordinary $1 billion order from United Airlines for Archer's aircraft, the only deal of its kind and a testament to the confidence the market has in Archer's business and future, and the eagerness of the industry to invest in both.  With these recently announced billion-dollar transactions, along with its years of focused research and development efforts, Archer is poised for breakthrough success and a leadership position in the emerging and exciting eVTOL market.

5.     Wisk improperly seeks to interfere with Archer's billion-dollar transactions with this baseless lawsuit and simultaneous media campaign, both launched just after the transactions were announced.  That is because while Archer has soared, Wisk is at risk of crashing.  Despite the breathless innuendo and baseless speculation to which Wisk devotes its entire complaint, Archer's eVTOL aircraft design is not only the best eVTOL aircraft around, it is entirely Archer's design.

6.     Indeed, there is not a shred of evidence that Archer ever used, or even was aware of, any Wisk trade secret.  Despite its 73 pages and over 200 paragraphs, Wisk's complaint does not even specifically identify a single Wisk trade secret, let alone any trade secret ever used by Archer.  Unable to identify any actual trade secret or to allege any actual trade secret misappropriation (because there is none), Wisk's complaint boils down to an absurdly insufficient assertion that Archer's design resembles one of Wisk's supposedly undisclosed designs, and that it is "surprising" Archer could design its world-class vehicle in the time it did.  Incredibly, though, Wisk does not even allege that this purportedly undisclosed design is a trade secret.  Nor does Wisk allege that any former Wisk employee ever was aware of, let alone told anyone at Archer about, the design.  Nor does Wisk allege that Archer ever was aware of the design.

7.     As the market has recognized, Archer's design and business approach are superior to anything Wisk has designed, let alone anything Wisk has actually offered.  Wisk and its predecessors have suffered from years of disorganization and failed designs as well as defections, as talented employees fled Wisk to join promising companies like Archer.  Wisk is improperly attempting to weaponize the legal system to achieve through bad-faith litigation what it cannot accomplish through fair competition.

8.     Archer intends to hold Wisk accountable for its anticompetitive conduct.  At the same time, Archer and its extraordinary team of world-class aerospace engineers will continue to do what

they have relentlessly been focused on since the beginning: designing and building the best eVTOL aircraft in the world.

**ARCHER'S HISTORY**

9.      Archer was founded in October 2018 with the goal of achieving more environmentally sustainable short-distance air transportation.  Co-founders Brett Adcock and Adam Goldstein were inspired to find ways to move the world toward sustainable forms of transport and funded a research laboratory at the University of Florida, now called



"Archer Aviation eVTOL Lab."  Working with a grant from the University of Florida, Archer teamed up with a graduate facility with decades of experience in drones.  This team of experienced professors and graduate students specializes in technical fields such as aerodynamics, flight controls, avionics, flight test, and aircraft manufacturing.  As part of this collaboration, Archer pioneered its own eVTOL technology and designed, manufactured, and flight-tested three generations of eVTOL aircraft.

10.      To take the next leap in aircraft design, Archer hired a top-tier eVTOL aircraft design firm, FlightHouse Engineering, that specializes in the conceptual design of aircraft, in September 2019.  FlightHouse has its own proprietary software that allows it to simultaneously analyze numerous design disciplines (e.g., aerodynamics, propulsion, structures, mass properties, performance, and payload effectiveness) with high fidelity to generate optimized aircraft designs.

11.      It was FlightHouse that first presented to Archer the configuration that would become known as the Maker.  By early December 2019, FlightHouse modeled a number of aircraft designs, including what FlightHouse referred to as the "12-tilt-6"—an aircraft with 12 rotors on a fixed wing, the front six of which could tilt from a vertical to a horizontal position to allow the aircraft to hover like a helicopter for takeoff and landing, and cruise forward like a plane while in flight.  This was before a single former Wisk employee joined Archer and more than two weeks before Jing Xue allegedly downloaded any files from Wisk.  To be clear, on the day the first Wisk employee arrived

(on December 6), FlightHouse had already modeled the 12-tilt-6 and was actively conducting simulations on this design.  By December 12, FlightHouse identified the 12-tilt-6 as a top design contender based on the strong performance attributes reflected in simulations run in FlightHouse's proprietary software.  Excerpts of FlightHouse's analysis and drawings are below.

 12 Rotors - # Tilt Study 150 mph

Two lift fans' worth of power was well-matched for cruise at 120 mph while at 150 mph four or six lift motor serve this purpose better.

For 150 mph missions, tilting 6 fans is advantageous at nearly all disc loadings

Tilting two rotors for cruise is not easily robust to rotor out if they are at takeoff at tilt wingtips

**Point of interest: 12 Disk, 6 Tilting**
- 6 tilting disks, 12 total disks
- 15 psf disc loading
  - 6.78 ft diameter lift fans
- L/D13-14 in cruise
- 49 mile range



FlightHouse Engineering LLC - Proprietary

162

 Configuration 5: 12 Rotors, 6 Tilting

**Configuration Attributes:**
- Tilting rotors enhances performance.
- High level of VTOL and Fixed Wing redundancy.
- Reduced rotor size reduces transition risks.
- Reduced rotor size reduces motor sizing.
- Smaller rotors = shorter booms
- Powerful yaw authority





FlightHouse Engineering LLC - Proprietary

30

12.     At the same time Archer was working tirelessly on its design with one of the best consultants in the field, it began to scale the business for success.  Archer teamed up with Marc Lore,

known for having sold Jet.com to Walmart, to hire engineers, continue its design, and bring its vision to reality.  Archer also began recruiting the brightest and very best engineers.  Anticipating a successful hiring push in December of 2019, Archer devoted significant resources to hiring legal counsel to implement a robust recruiting and onboarding process to ensure that no trade secret or proprietary information came over with the new employees.  Archer wanted no part of its competitors' proprietary information, and it took extraordinary efforts to protect itself, its employees, and its competitors' confidential information.  For instance, potential new hires went through a lengthy onboarding process with a dedicated employment lawyer.  Among many other prophylactic measure, new hires were presented with a pre-hire document outlining Archer's position on not taking trade secrets:



Hi!  We are delighted you are joining Archer Aviation.  As you make plans to officially start, we want to remind you of a few things that make good sense but that may not be at the top of your mind.

**A. Prior Employers' Trade Secrets and/or Non-Compete Obligations**

First, we don't want you to violate any agreements you may have any current or former employer about non-competition, trade secrets, or confidential information.  This also includes non-solicitation obligations.

. . . .

Don't take materials in any format from your previous employer unless they are completely personal in nature.  This includes electronic or hardcopy documents.  It includes lists of contacts, clients, and suppliers, if that information isn't otherwise publicly available or commonly known.  Sending emails or documents to a personal email account with the intent of then forwarding them on to your new Archer email address or copying them/downloading them onto your Archer machines is simply not okay with us, and we feel confident that your previous employer won't like it either!  Also, don't destroy any documents or files belonging to your previous employer unless you have their agreement to do so.

13.     Archer's hires in early 2020 included some of the brightest, most experienced

engineers in the industry from a wide-range of entities, including Airbus, Joby, NASA, Wisk, Aerion Supersonic, and Tesla.  One of the top technical hires by Archer was Dr. Geoff Bower, the former Chief Engineer for Airbus's Vahana eVTOL demonstrator at A$^3$ ("A Cubed"), Airbus's Silicon Valley innovation center.  Dr. Bower has a Ph.D. in aerospace engineering from Stanford University and joined Archer as its Chief Engineer on January 6, 2020.  Dr. Bower carefully evaluated the "12-tilt-6" design presented by FlightHouse along with a handful of other configurations, and after rigorous modelling and analysis Dr. Bower led the decision to ultimately select the "12-tilt-6" as the best configuration for the specific mission that Archer believed was commercially viable.

**ARCHER PUBLICLY REVEALS MAKER & ATTRACTS INVESTORS AND PARTNERS**

14.     Archer exited stealth mode and publicly posted in May 2020 a rendering of Maker.  Archer's hard work did not go unnoticed.  On January 12, 2021, Archer announced a collaboration agreement with Fiat-Chrysler (FCA/Stellantis) to allow Archer to benefit from access to FCA's efficient supply chain, advanced composite material capabilities, and engineering and design experience.  This was significant not just because it showed Archer's commercial viability, but also because Archer could rely on a global manufacturer to assist with high volume manufacturing and supply components, drastically reducing the amount of time it would take to build a world-class aircraft.  With this announcement, Archer revealed the latest rendering of its aircraft:



15.     Archer's momentum kept growing.  On February 10, 2021, Archer announced it had entered into a business combination agreement with Atlas Crest Investment Corp., which provides approximately $1.1 billion of gross proceeds to the combined company to fund expected future growth.  The transaction was set to close several months later and would result in Archer being

publicly listed on the New York Stock Exchange.  The same day, Archer also announced an aircraft purchase agreement and a collaboration agreement with United Airlines that included an order for $1 billion of Archer's future aircraft, with an option for an additional $500 million of aircraft. Archer's fortunes were taking off.

16.     Today Archer is one of the leading aerospace companies in the world.  Its engineering team boasts engineers from SpaceX, NASA, Tesla, Google, Wisk, Waymo, Airbus, and includes nineteen PhDs.  Altogether, Archer has built up 200 years of combined eVTOL development experience, including with Airbus Vahana's former Chief Engineer, Head of Aerodynamics, Head of Flight Controls, Head of Flight Test, and Head of Avionics.  Archer's commercial aerospace engineers include the previous Chief Test Pilot at Bell Helicopter, Head of FAA Certification at Piper Aircraft, Head of Airframe at Hyundai Urban Air Mobility, Head of Quality at Triumph, and Structures Lead at Cirrus Aircraft.  Archer's advisors include Mark Moore and Nikhil Goel, co-founders of Uber Elevate and former NASA engineers.  It is the promise of this team and the designs they have been working on that resulted in Archer becoming one of only three eVTOL companies to publicly announce more than a billion dollars in funding, and Archer is the only eVTOL company to secure a billion-dollar purchase order from a major U.S. airline.  Archer built the best eVTOL company in the world; it does not want or need Wisk's (or anyone else's) alleged secrets.

**WISK FILES THIS LAWSUIT TO STOP ARCHER'S MOMENTUM**

17.     Wisk's business is reportedly in trouble, and it now seeks to misuse the legal systems to unjustly hamper Archer's success.  Wisk's simultaneous and tortious media campaign against Archer—including blog posts and a press release making false and misleading statements about Archer—underscores Wisk's true motivation.

18.     Just like its false blog posts and press release, Wisk's entire case is built on innuendo, not facts.  Wisk bases its complaint on the "striking resemblance" between Archer's design and a design that Wisk put in a patent application in 2020.  As noted above, however, Wisk does not even allege that its design in the patent application is a trade secret.  Or that any former Wisk employee ever was aware of the design.  Or that any former Wisk employee ever told anyone at Archer about the design.  Or that Archer ever was aware of the Wisk design at all before Wisk put a picture of it in

its complaint.  Similarity between two images does not establish a trade secret, let alone that Archer misappropriated it.  There also is nothing secret about using 12 rotors on a fixed wing, tilting rotors, or a V tail.  The fact that Wisk filed this lawsuit based on superficial similarities between its design and Archer's captures both how baseless this case really is and how improper it was for Wisk to have brought it in order to interfere with Archer's success and imminent transactions.

19.     Equally specious is Wisk's purported "surprise" that Archer developed its design "inexplicably" quickly and Wisk's rank, nonsensical speculation that such a fast development would not have been possible without Wisk's trade secrets.  Archer built a world-class team from across the entire industry, and worked with one of the best consultants in the space to come up with its design.  Archer also did not have to start from scratch given the maturity in the industry and wide variety of publicly available designs.  Wisk's "surprise" about Archer's development timeline is no substitute for evidence that Archer relied on anything secret from Wisk.

20.     Much of Wisk's complaint is devoted to an attempt to taint Archer with the acts of a single former Wisk employee.  Despite Wisk's salacious, press-ready allegations about Wisk's former employee, Wisk has made its allegations against Archer without an iota of evidence that the former Wisk employee transferred a single secret to Archer or had any input whatsoever on Archer's design.

21.     The utter absence of evidence to support Wisk's claims can also be seen in Wisk's assertion that Archer's founders publicly admitted that they had engaged in a wanton scheme to steal Wisk's trade secrets when they acknowledged the hard work and designs done by other companies in the industry over the last decade.  Wisk's effort to contort simple, straightforward statements about public designs into sinister admissions of theft says everything about what this case is really about.

22.     It undoubtedly is difficult for Wisk to watch Archer take off, with some of its leading former employees on board, while Wisk stalls out on the runway.  But there is simply no evidence for Wisk's reckless claims—which Wisk has attempted to spread far and wide—designed to create uncertainty and doubt about Archer in order to interfere with Archer's success and upcoming transactions.  Wisk's failure is its own.  Just as Archer's success—and the incredible eVTOL aircraft it has designed—is its own.

1

**GENERAL DENIAL**

2

Except as expressly admitted in this Answer, Archer denies each and every allegation in the

3

Complaint, including, without limitation, any allegations in the introduction, headings, subheadings,

4

or footnotes of the Complaint, and specifically denies any liability to Wisk.  Pursuant to Rule 8(b) of

5

the Federal Rules of Civil Procedure, moreover, allegations in the Complaint to which not responsive

6

pleading is required shall be deemed to be denied.  Archer expressly reserves the right to seek to

7

amend and/or supplement its Answer as may be necessary.[1]

8

**RESPONSE TO SPECIFIC ALLEGATIONS**

9

**INTRODUCTION**

10

1.      Archer admits that the Complaint purports to set forth an action for trade secret

11

misappropriation and patent infringement.  Archer denies that it has committed or is committing any

12

act of patent infringement or trade secret misappropriation.  Except as expressly admitted, Archer

13

denies the remaining allegations and characterizations contained in Paragraph 1.

14

2.      Archer lacks knowledge or information sufficient to form a belief regarding the truth

15

of the allegations and characterizations contained in Paragraph 2, and therefore denies them.

16

3.      Archer lacks knowledge or information sufficient to form a belief regarding the truth

17

of the allegations and characterizations contained in Paragraph 3, and therefore denies them.

18

4.      Archer admits that in February 2021 it issued press releases titled, "Archer, A Leading

19

Urban Air Mobility Company, To List on NYSE Through Merger With Atlas Crest Investment

20

Corp." and "Archer Announces Commitment to Launching Its Urban Air Mobility Network in Los

21

Angeles by 2024."  Except as expressly admitted, Archer denies the remaining allegations and

22

characterizations contained in Paragraph 4, and specifically denies that it has committed or is

23

committing any act of patent infringement or trade secret misappropriation.

24

5.      To the extent Paragraph 5 of the Complaint implicates legal conclusions, no response

25

is required.  To the extent that a response is required, Archer denies the allegations and

26

27

28

[1]  Answers to each paragraph of the Complaint are made by Archer without waiving, but expressly reserving, all rights Archer may have to seek relief by appropriate motions directed to the allegations in the Complaint or any subsequent amended complaint.

Gibson, Dunn & Crutcher LLP

characterizations contained in Paragraph 5, and specifically denies that it has committed or is committing any acts of patent infringement.

6.      To the extent Paragraph 6 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, Archer denies the allegations and characterizations contained in the first sentence of Paragraph 6, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.  Archer admits that, in January 2020, ten former Wisk engineers started employment at Archer.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 6, and therefore denies them.

7.      To the extent Paragraph 7 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, Archer admits that it denied any wrongdoing and denies the remaining allegations and characterizations contained in Paragraph 7, and specifically denies that it has committed or is committing any acts of trade secret misappropriation.

8.      Archer denies the allegations and characterizations contained in Paragraph 8, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

9.      Archer admits that Adam Goldstein and Brett Adcock have been interviewed regarding Archer, and refers to the publicly available transcripts of such interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 9.

10.      Archer denies the allegations and characterizations contained in Paragraph 10, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.

**THE PARTIES**

11.      Upon information and belief, Archer admits the allegations contained in Paragraph 11.

12.      Archer admits the allegations in Paragraph 12.

**JURISDICTION AND VENUE**

13.      To the extent Paragraph 13 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that this Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836, and supplemental jurisdiction pursuant to 18 U.S.C. § 1367.  Archer denies the remaining allegations and characterizations contained in Paragraph 13.

14.     Archer admits that it resides in this District and that venue is proper.  Archer denies that it has committed or is committing any act complained of in the Complaint, and therefore denies the remaining allegations and characterizations contained in Paragraph 14.

15.     Archer admits that its principal place of business is in California and that it is subject to personal jurisdiction in California.  Archer denies that it has committed or is committing any act complained of in the Complaint, and therefore denies the remaining allegations and characterizations contained in Paragraph 15.

## INTRADISTRICT ASSIGNMENT

16.     Archer admits the allegations in Paragraph 16.

## FACTS COMMON TO ALL CLAIMS

17.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 17, and therefore denies them.

18.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 18, and therefore denies them.

19.     The allegations and characterizations contained in Paragraph 19 include relative terms such as "recent" and "new", the intended scope of which is unclear, and on that basis Archer denies the allegations.

20.     The allegations and characterizations contained in Paragraph 20 include relative terms such as "promises", "clean", and "fast", the intended scope of which is unclear, and on that basis Archer denies the allegations.

21.     Paragraph 21 purports to characterize the contents of a 2018 Morgan Stanley research report.  To the extent a response is required, Archer refers to the 2018 Morgan Stanley research report for the complete and accurate contents thereof.

22.     Archer admits that an eVTOL aircraft must be certified by the FAA in order to fly in the national airspace system and carry passengers in the United States.  The remaining allegations

and characterizations contained in Paragraph 22 include relative terms such as "easily", "robust", "new", and "difficult", the intended scope of which is unclear, and on that basis Archer denies them.

23.     Archer admits that the images in Paragraph 23 are publicly available images of eVTOL aircraft designed by different members of the eVTOL market.  The allegations and characterizations contained in Paragraph 23 include relative terms such as "potentially", "predictably", and "recently", the intended scope of which is unclear, and on that basis Archer denies them.

24.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 24, and therefore denies them.

25.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 25, and therefore denies them.

26.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 26, and therefore denies them.

27.     Archer admits that the image in Paragraph 27 is a publicly available image of an aircraft viewable on Wisk's website, which has a fixed-wing, 12-rotor design.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 27, and therefore denies them.

28.     Archer admits that the image in Paragraph 28 is a publicly available image of an aircraft developed by Wisk called the Cora, which has a fixed-wing, 12-rotor design.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 28, and therefore denies them.

29.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 29, and therefore denies them.

30.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 30, and therefore denies them.

31.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 31, and therefore denies them.

32.     Archer lacks knowledge or information sufficient to form a belief regarding the truth

of the allegations and characterizations contained in Paragraph 32, and therefore denies them.

33.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 33, and therefore denies them.

34.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 34, and therefore denies them.

35.     Based on information disclosed to Archer through this litigation, Archer admits Wisk filed a confidential provisional patent application that contains the phrase "Aircraft with Tilting Fans" and discloses the images contained in Paragraph 35.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 35, and therefore denies them.

36.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 36 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

37.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 37 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

38.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 38 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

39.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 39 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

40.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the first five and last sentences of Paragraph 40 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 40 regarding Wisk, and on that basis Archer denies them.

41.     Archer denies the allegations in the fourth sentence contained in Paragraph 41. Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the fifth sentence of Paragraph 41 regarding Wisk, and therefore denies the allegations.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 41 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies the allegations.

42.     Archer denies the allegations and characterizations contained in the first sentence of Paragraph 42.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 42 regarding Joby Aviation, and therefore denies them.

43.     Paragraph 43 purports to characterize Lilium's public statements.  To the extent a response is required, Archer refers to Lilium's public statements for the complete and accurate contents thereof.  Archer further denies the allegations and characterizations contained in the first sentence of Paragraph 43.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 43 regarding Lilium, and therefore denies them.

44.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 44, and therefore denies them.

45.     Archer denies the allegations and characterizations contained in Paragraph 45.

46.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 46, and therefore denies them.

47.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 47, and therefore denies them.

48.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 48, and therefore denies them.

49.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 49, and therefore denies them.

50.     Archer lacks knowledge or information sufficient to form a belief regarding the truth

of the allegations and characterizations contained in Paragraph 50, and therefore denies them.

51.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 51, and therefore denies them.

52.     Archer denies the allegations and characterizations contained in Paragraph 52, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.

53.     Archer admits that its co-founders, Brett Adcock and Adam Goldstein, both attended the University of Florida, previously worked in the finance industry, and founded an online hiring marketplace called Vettery in 2012.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 53.

54.     Archer admits that it was incorporated on October 16, 2018, partnered with the University of Florida (which co-founders Brett Adcock and Adam Goldstein both attended), and listed contact information in New York City.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 54.

55.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the vague allegations and characterizations contained in Paragraph 55, and therefore denies them.

56.     Archer admits that it recruited Thomas Muniz, who served as Wisk's Vice President of Hardware Engineering, in late 2019, that Mr. Muniz joined Archer in December 2019, and that Mr. Muniz is referenced in certain Archer investment materials along with other Archer team members. Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 56.

57.     Archer denies the allegations and characterizations contained in Paragraph 57, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

58.     Based on information disclosed to Archer through this litigation, Archer admits the design contained in Paragraph 58 is disclosed in Wisk's patent application.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 58, and therefore denies them.

59.     Archer admits that in January 2020, 10 former Wisk employees began work at Archer.

Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 59.

60.     Archer denies the allegations and characterizations in Paragraph 60.

61.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 61, and therefore denies them.

62.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 62, and therefore denies them.

63.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 63, and therefore denies them.

64.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 64, and therefore denies them.

65.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 65, and therefore denies them.

66.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 66, and therefore denies them.

67.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 67, and therefore denies them.

68.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 68, and therefore denies them.

69.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 69, and therefore denies them.

70.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the first sentence of Paragraph 70, and therefore denies them.  Archer denies the remaining allegations and characterizations contained in Paragraph 70, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

71.     Archer denies the allegations and characterizations contained in Paragraph 71, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

72.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 72, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

73.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 73, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

74.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 74, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

75.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 75, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

76.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 76, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

77.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 77, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

78.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 78, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

Gibson, Dunn &
Crutcher LLP

79.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 79, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

80.     Archer denies the allegations and characterizations contained in Paragraph 80, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

81.     Archer admits that in May 2020 it released the rendering in the right quadrant contained in Paragraph 81.  Based on information disclosed to Archer through this litigation, Archer admits Wisk's confidential, provisional patent application discloses the image in the left quadrant contained in Paragraph 81.

82.     Archer admits that it filed with the SEC a document entitled, "Archer Investor Deck 2021,"  and that the rendering in the bottom-right quadrant contained in Paragraph 82 appears in "Archer Investor Deck 2021."  Based on information disclosed to Archer through this litigation, Archer admits Wisk's confidential, provisional patent application discloses the images in the left quadrants contained in Paragraph 82.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 82.

83.     Archer admits that the rendering of Archer's aircraft has six front rotors, each of which consist of five blades that can tilt to be positioned either horizontally or vertically, and six rear rotors, each of which consist of two blades that remain fixed in a vertical position.  Archer further admits that the rendering of Archer's aircraft has a V-tail.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 83, and specifically denies that it has committed or is committing any acts of trade secret misappropriation.

84.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 84, and therefore denies them.

85.     To the extent the allegations reference Archer's "Archer Investor Deck 2021", Archer refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Archer denies the remaining allegations and characterizations contained in Paragraph 85.

86.     Archer denies the allegations and characterizations contained in Paragraph 86.

87.     To the extent the allegations reference Archer's "Archer Investor Deck 2021" publicly filed with the SEC, Archer refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  With respect to the remaining allegations and characterizations in Paragraph 87, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the timing and process of eVTOL competitors' aircraft development process, and therefore denies them.  Archer denies all remaining allegations and characterizations contained in Paragraph 87, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

88.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 88, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

89.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 89, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

90.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 90, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

91.     Archer admits that Adam Goldstein and Brett Adcock have been interviewed regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 91, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

92.     Archer denies the allegations and characterizations contained in Paragraph 92, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

93.     Archer denies the allegations and characterizations contained in Paragraph 93, and specifically denes that it has committed or is committing any act of trade secret misappropriation.

94.     Archer admits, based on publicly available information, that Wisk has been granted patents.  With respect to the remaining allegations and characterizations contained in Paragraph 94, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

95.     Archer admits that its current engineering team consists of 75 engineers, 17 of whom more recently worked at Wisk.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 95, and specifically denies that it has committed or is committing any act of patent infringement.

96.     To the extent Paragraph 96 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,364,036 is attached as Exhibit A.  Archer admits that the patent is entitled "Multicopter with Boom-Mounted Rotors."  Archer admits that the '036 Patent at 1:6-8 states, "Multicopter aircraft typically include a plurality of horizontally oriented rotors, sometimes referred to as 'lift fans,' to provide lift, stability, and control."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 96.

97.     To the extent Paragraph 97 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent states, "An aircraft typically is considered to have six degrees of freedom of movement, including forces in the forward/back, side/side, and up/down directions (e.g., Fx, Fy, and Fz) and moments about the longitudinal (roll) axis, the transverse (pitch) axis, and the vertical (yaw) axis (e.g., Mx, My, and Mz)" at 1:25-30.  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 97.

98.     To the extent Paragraph 98 implicates legal conclusions, no response is required.  The

'036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent at 4:59-65 states, "FIG. 2B is a block diagram showing a front view of the multicopter aircraft 200 of FIG. 2A.  Coordinate axes in the z (vertical) and y (side) direction are indicated.  The front view shown in FIG. 2B illustrates the respective angles off the vertical axis (z axis as labeled), sometimes referred to herein as 'cant angles', at which the outboard, middle, and inboard pairs of lift fans 206 are oriented."  Archer admits that the '036 Patent at 5:51-55 states, "For example, lift fans mounted at an angle relative to the horizontal plane of the aircraft would generate a horizontal force component and a vertical force component, and each force may generate a corresponding moment about one or more axes of the aircraft, depending on the location at which the fan is mounted relative to the center of gravity of the aircraft."  Archer admits that the image of Fig. 2B in the Complaint appears to be the same as Fig. 2B in the '036 patent.  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 98.

99.     To the extent Paragraph 99 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent at 5:1-4 states, "different combinations of fans may be used to exercise yaw control (e.g., rotate around z axis), to slip sideways or counteract the force of wind while in a hover (y axis), etc."  Archer admits that the '036 Patent at 8:3-6 states, "angling rotors as disclosed herein may provide a degree of authority over (ability to control or influence) yaw of the aircraft, e.g., during hover or vertical takeoff (lift) or landing operations."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 99.

100.     To the extent Paragraph 100 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 100.

101.     To the extent Paragraph 101 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 101.

102.     To the extent Paragraph 102 implicates legal conclusions, no response is required.  The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that an

uncertified copy of what appears to be U.S. Patent No. 9,764,833 is attached as Exhibit B.  Archer admits that the patent is entitled "Ventilated Rotor Mounting Boom for Personal Aircraft."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 102.

103.    To the extent Paragraph 103 implicates legal conclusions, no response is required.  The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 1:15-22 states, "Taking off and landing vertically, instead of using a runway to develop sufficient velocity on the ground for wings to provide adequate lift, requires an aircraft to provide both vertical and forward thrust.  Thrust produced in the vertical direction provides lift to the vehicle; thrust produced horizontally provides forward movement.  A vertical takeoff and landing (VTOL) aircraft can produce both vertical and horizontal thrust, and is able to control these forces in a balanced fashion."  Archer admits that the '833 Patent at 1:40-51 states, "Helicopter rotors are large and unprotected from hitting nearby obstacles.  Additionally, they utilize mechanically complex systems to control both the collective and cyclic blade angles.  Such rotors are mechanically complex and require maintenance.  The rotors generally rotate at a low speed; this results in heavy transmissions between the rotor and motor.  The transmissions, or gearboxes, decrease the vehicle payload potential, as well as vehicle safety.  Because of the mechanical complexity across the entire vehicle system, many parts are single points of failure.  Because of this lack of redundancy, frequent inspections and maintenance are required to keep the vehicle safe."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 103.

104.    To the extent Paragraph 104 implicates legal conclusions, no response is required.  The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 1:52-53 states, "Other types of VTOL aircraft have multiple rotors to reduce the single points of failure."  Archer admits that the '833 Patent at 1:52-62 states, "Other types of VTOL aircraft have multiple rotors to reduce the single points of failure.  However, many vital components, such as motor controllers, are not duplicated, and are thus still single points of failure.  These components are not duplicated due to design complexity, weight issues, and maintenance concerns.  For example, a motor controller typically needs to be cooled, and including multiple conventional cooling systems on an aircraft increases design complexity and aircraft weight.  Additionally,

including multiple conventional cooling systems increases the chances that an aircraft will be taken out of service for maintenance."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 104.

105.     To the extent Paragraph 105 implicates legal conclusions, no response is required. The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 4:32-59 states, "Vertical lift rotor assemblies 101, 102 are mounted on each side of aircraft 100.  In one embodiment, rotor mounting booms 114 (FIG. 2) are secured to the wing 104 via a boom attachment interface 206.  In this embodiment, a forward vertical lift rotor assembly 101 and an aft vertical lift rotor assembly 102 are attached to each rotor mounting boom 114.  In one embodiment, the boom attachment interface 206 (FIG. 2) allows the rotor mounting boom 114 to be attached to the wing 104 using releasable fasteners, such as screws or bolts, so that the rotor mounting boom may be easily removed from the wing for efficient repair or replacement."  Archer admits that the '833 Patent at 5:44-52 states, "In various embodiments, the rotor controller assemblies 506 include heat exchangers 570, such as a folded-fin heat exchanger to dissipate heat from the other components of the rotor controller assembly.  The enclosure 510 may include one or more ventilation openings to allow air to more effectively circulate within the enclosure, allowing for increased performance of the heat exchanger 570.  The enclosure 510 may further include airflow channels to direct air within the enclosure.  In one embodiment, one or more air inlets 514 and one or more air outlets 516 are disposed on the enclosure 510 to facilitate airflow through the enclosure."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 105.

106.     To the extent Paragraph 106 implicates legal conclusions, no response is required. The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 8:21-33 states, "The rotor mounting boom of FIG. 8 includes an air inlet 814 at a forward end of the boom.  The air inlet 814 is coupled to a forward duct 850A such that airflow flowing into the air inlet 814 continues into the forward duct 850A.  The forward duct 850A is coupled to the controller enclosure 810 such that airflow through the forward duct passes through the controller enclosure.  The enclosure 810 is coupled to an aft duct 850B such that air passing through the controller enclosure passes through the aft duct 850B.  The aft duct 850B is coupled to an air outlet

816 such that the airflow through the aft duct 850B passes through the air outlet 816 and out of the boom.  The airflow through the boom is indicated by the dashed lines of FIG. 8."  Archer admits that the image of "Fig. 8" in the Complaint appears to be the same as Fig. 8 in the '833 patent.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 106.

107.    To the extent Paragraph 107 implicates legal conclusions, no response is required.  The '833 Patent speaks for itself.  Archer denies the allegations and characterizations contained in Paragraph 107.

108.    To the extent Paragraph 108 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 108.

109.    To the extent Paragraph 109 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,110,033 is attached as Exhibit C.  Archer admits that the patent is entitled "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 109.

110.    To the extent Paragraph 110 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph 110 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 110.

111.    To the extent Paragraph 111 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph 111 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 111.

112.    To the extent Paragraph 112 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph 112 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and

characterizations contained in Paragraph 112.

113.   To the extent Paragraph 113 implicates legal conclusions, no response is required. The '033 Patent speaks for itself.  Archer denies the allegations and characterizations contained in Paragraph 113.

114.   To the extent Paragraph 114 implicates legal conclusions, no response is required. The '328 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,333,328 is attached as Exhibit D.  Archer admits that the patent is entitled "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 114.

115.   To the extent Paragraph 115 implicates legal conclusions, no response is required. The '328 and '033 Patents speak for themselves.  To the extent a response is required, Archer admits that the '328 Patent on its face states, "Continuation of application No. 15/885,303, filed on Jan. 31, 2018, now Pat. No. 10,110,033."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 115.

116.   To the extent Paragraph 116 implicates legal conclusions, no response is required. The '328 and '033 Patents speak for themselves.  To the extent a response is required, Archer admits that the '328 Patent at 2:31-33 states, "Various embodiments of a charger which charges a battery system with a plurality of battery sub-modules on a common power bus are described herein." Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 116.

117.   Archer admits that it publicly filed with the SEC a document entitled, "Archer Investor Deck 2021," and refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 117.  Archer specifically denies that it has committed or is committing any act of trade secret misappropriation or patent infringement.

118.   To the extent Paragraph 118 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that it publicly filed with the SEC a document

entitled, "Archer Investor Deck 2021," and refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 118.

119.    Archer denies the allegations contained in Paragraph 119.  Archer admits that it issued a press release on February 10, 2021, and refers to the press release for the complete and accurate contents thereof.

120.    To the extent the allegations in Paragraph 120 pertain to a publicly filed document with the SEC, Archer refers to that publicly filed document for the complete and accurate contents thereof.

121.    To the extent Paragraph 121 purports to quote from press reports, Archer refers to those press reports for the complete and accurate contents thereof.  Archer denies the remaining allegations and characterizations contained in Paragraph 121.

122.    Archer admits that Mr. Furman began working at Archer as Chief Avionics Architect in January 2020, previously worked at Wisk and Kitty Hawk Corp. as Chief Avionics Architect, and is a named inventor on two patents identified in the Complaint: the '033 and '328 Patents.  Except as expressly admitted, Archer denies the allegations and characterizations of Paragraph 122, and specifically denies that it has committed or is committing any act of patent infringement.

123.    Archer denies the allegations and characterizations contained in Paragraph 123, and specifically denies that it has committed or is committing any act of patent infringement.

**FIRST CAUSE OF ACTION**

**Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.***

124.    Archer incorporates by reference its responses to Paragraphs 1–123 of the Complaint.

125.    Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 125, Archer in no way intends to waive or render moot its pending motion to dismiss. To the extent Paragraph 125 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 125, and specifically denies that it has committed or is committing any act of trade secret

misappropriation.

126.   Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 126, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 126 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 126, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

127.   Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 127, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 127 implicates legal conclusions, no response is required.  To the extent a response is required, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 127, and therefore denies them, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

128.   Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 128, Archer in no way intends to waive or render moot its pending motion to dismiss.   To the extent Paragraph 128 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 128, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

129.   Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 129, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 129 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 129,

and specifically denies that it has committed or is committing any act of trade secret misappropriation.

130.    Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 130, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 130 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 130, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

131.    Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 131, Archer in no way intends to waive or render moot its pending motion to dismiss. To the extent Paragraph 131 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 131, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

132.    Archer has moved to dismiss the First Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 132, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 132 purports to summarize the damages sought by Wisk, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 132, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

## SECOND CAUSE OF ACTION

**Violation of California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.***

133.    Archer incorporates by reference its responses to Paragraphs 1–132 of the Complaint**.**

134.    Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations

contained in Paragraph 134, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 134 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 134, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

135.     Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 135, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 135 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 135, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

136.     Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 136, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 136 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 136, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

137.     Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 137, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 137 implicates legal conclusions, no response is required.  To the extent a response is required, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 137, and therefore denies them, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

138.     Archer has moved to dismiss the Second Cause of Action in the Complaint, and

therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 138, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 138 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 138, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

139.   Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 139, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 139 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 139, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

140.   Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 140, Archer in no way intends to waive or render moot its pending motion to dismiss. To the extent Paragraph 140 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 140, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

141.   Archer has moved to dismiss the Second Cause of Action in the Complaint, and therefore no response is required at this time.  By answering the allegations and characterizations contained in Paragraph 141, Archer in no way intends to waive or render moot its pending motion to dismiss.  To the extent Paragraph 141 purports to summarize the damages sought by Wisk, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 141, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

Gibson, Dunn & Crutcher LLP

1

**THIRD CAUSE OF ACTION**

2

**Infringement of U.S. Patent No. 10,364,036**

3      142.    Archer incorporates by reference its responses to Paragraphs 1–141 of the Complaint.

4      143.    To the extent Paragraph 143 implicates legal conclusions, no response is required.

5   The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036

6   Patent bears the title "Multicopter with Boom-Mounted Rotors" and reflects an issue date of July 30,

7   2019.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a

8   belief regarding the truth of the remaining allegations and characterizations contained in Paragraph

9   143, and therefore denies them.

10      144.    Archer lacks knowledge or information sufficient to form a belief regarding the truth

11   of the allegations and characterizations contained in Paragraph 144, and therefore denies them.

12      145.    To the extent Paragraph 145 implicates legal conclusions, no response is required.  To

13   the extent a response is required, Archer denies the allegations and characterizations contained in

14   Paragraph 145.

15      146.    To the extent Paragraph 146 implicates legal conclusions, no response is required.  To

16   the extent a response is required, Archer denies the allegations and characterizations contained in

17   Paragraph 146, and specifically denies that it has committed or is committing any act of patent

18   infringement.

19      147.    To the extent Paragraph 147 implicates legal conclusions, no response is required.  To

20   the extent a response is required, Archer denies the allegations and characterizations contained in

21   Paragraph 147, and specifically denies that it has committed or is committing any act of patent

22   infringement.

23      148.    To the extent Paragraph 148 implicates legal conclusions, no response is required.  To

24   the extent a response is required, Archer admits that the images shown in Paragraph 148 can be found

25   at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck

26   2021," and refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor

27   Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer

28   denies the allegations and characterizations contained in Paragraph 148, and specifically denies that it

has committed or is committing any act of patent infringement.

149.    To the extent Paragraph 149 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 149 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 149, and specifically denies that it has committed or is committing any act of patent infringement.

150.    To the extent Paragraph 150 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in paragraph 150 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 150, and specifically denies that it has committed or is committing any act of patent infringement.

151.    To the extent Paragraph 151 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 151 and specifically denies that it has committed or is committing any act of patent infringement.

152.    To the extent Paragraph 152 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 152 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 152, and specifically denies that it has committed or is committing any act of patent infringement.

153.    To the extent Paragraph 153 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 153 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 153, and specifically denies that it has committed or is

committing any act of patent infringement.

154.   To the extent Paragraph 154 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 154 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 154, and specifically denies that it has committed or is committing any act of patent infringement.

155.   To the extent Paragraph 155 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 155 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 155, and specifically denies that it has committed or is committing any act of patent infringement.

156.   To the extent Paragraph 156 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 156 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 156, and specifically denies that it has committed or is committing any act of patent infringement.

157.   To the extent Paragraph 157 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in paragraph 156 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 157, and specifically denies that it has committed or is committing any act of patent infringement.

158.   The allegations in the first two sentences of Paragraph 158 state legal conclusions to which a responsive pleading is not required.  Archer admits that it has notice of the '036 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining

allegations contained in Paragraph 158 and specifically denies that it has committed or is committing any act of patent infringement.

159.   To the extent Paragraph 159 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 159 and specifically denies that it has committed or is committing any acts of patent infringement.

## FOURTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 9,764,833

160.   Archer incorporates by reference its responses to Paragraphs 1–159 of the Complaint.

161.   To the extent Paragraph 161 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the '833 Patent bears the title "Ventilated Rotor Mounting Boom for Personal Aircraft" and reflects an issue date of September 19, 2017.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 161, and therefore denies them

162.   Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in Paragraph 162, and therefore denies the allegations.

163.   To the extent Paragraph 163 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 163.

164.   To the extent Paragraph 164 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 164 and specifically denies that it has committed or is committing any acts of patent infringement.

165.   To the extent Paragraph 165 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 165 and specifically denies that it has committed or is committing any acts of patent infringement.

166.   To the extent Paragraph 166 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 166 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer

Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 166, and specifically denies that it has committed or is committing any act of patent infringement.

167.  To the extent Paragraph 167 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 167 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 167, and specifically denies that it has committed or is committing any act of patent infringement.

168.  To the extent Paragraph 168 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 168 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 168, and specifically denies that it has committed or is committing any act of patent infringement.

169.  To the extent Paragraph 169 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 169, and specifically denies that it has committed or is committing any act of patent infringement.

170.  To the extent Paragraph 170 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 170 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 170, and specifically denies that it has committed or is committing any act of patent infringement.

171.  To the extent Paragraph 171 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 171 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete

and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 171, and specifically denies that it has committed or is committing any act of patent infringement.

172.    To the extent Paragraph 172 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 172 can be found in the video at www.archer.com/maker.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 172, and specifically denies that it has committed or is committing any act of patent infringement.

173.    To the extent Paragraph 173 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 173 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 173, and specifically denies that it has committed or is committing any act of patent infringement.

174.    To the extent Paragraph 174 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 174 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 174, and specifically denies that it has committed or is committing any act of patent infringement.

175.    The allegations in the first two sentences of Paragraph 175 state legal conclusions to which a responsive pleading is not required.  Archer admits that it has notice of the '833 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining allegations of Paragraph 175 and specifically denies that it has committed or is committing any act of patent infringement.

176.    To the extent Paragraph 176 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 176 and specifically denies that it has committed or is committing any acts of patent infringement.

Gibson, Dunn & Crutcher LLP

**FIFTH CAUSE OF ACTION**

**Infringement of U.S. Patent No. 10,110,033**

177.     Archer incorporates by reference its responses to Paragraphs 1–176 of the Complaint.

178.     To the extent Paragraph 178 implicates legal conclusions, no response is required. The '033 Patent speaks for itself.  To the extent a response is required, Archer admits that the '033 Patent bears the title "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging" and reflects an issue date of October 23, 2018.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 178, and therefore denies the allegations.

179.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in Paragraph 179, and therefore denies the allegations.

180.     To the extent Paragraph 180 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 180.

181.     To the extent Paragraph 181 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 181 and specifically denies that it has committed or is committing any acts of patent infringement.

182.     To the extent Paragraph 182 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 182 and specifically denies that it has committed or is committing any acts of patent infringement.

183.     To the extent Paragraph 183 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 183 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 183, and specifically denies that it has committed or is committing any act of patent infringement.

184.     To the extent Paragraph 184 implicates legal conclusions, no response is required.  To

Gibson, Dunn & Crutcher LLP

the extent a response is required, Archer admits that the image shown in Paragraph 184 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 184, and specifically denies that it has committed or is committing any act of patent infringement.

185.    To the extent Paragraph 185 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 185 can be found at https://newatlas.com/aircraft/archer-aviation-evtol-united/, in "Archer Investor Deck 2021," or RTCA-DO-311A (December 19, 2017), and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/, "Archer Investor Deck 2021," and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 185, and specifically denies that it has committed or is committing any act of patent infringement.

186.    To the extent Paragraph 186 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 186 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 186, and specifically denies that it has committed or is committing any act of patent infringement.

187.    To the extent Paragraph 187 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 187 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 187, and specifically denies that it has committed or is committing any act of patent infringement.

188.    To the extent Paragraph 188 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 188 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete

and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 188, and specifically denies that it has committed or is committing any act of patent infringement.

189.    To the extent Paragraph 189 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 189 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 189, and specifically denies that it has committed or is committing any act of patent infringement.

190.    To the extent Paragraph 190 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 190 can be found in "Archer Investor Deck 2021" or RTCA-DO-311A (December 19, 2017), and Archer refers to "Archer Investor Deck 2021" and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 190, and specifically denies that it has committed or is committing any act of patent infringement.

191.    Archer admits that Scott Furman is a named inventor of the '033 Patent and joined Archer in January 2020.  The allegations in the first two sentences of Paragraph 191 state legal conclusions to which a responsive pleading is not required.  Archer admits that it has notice of the '033 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining allegations of Paragraph 191 and specifically denies that it has committed or is committing any acts of patent infringement.

192.    To the extent Paragraph 192 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 192 and specifically denies that it has committed or is committing any acts of patent infringement.

## SIXTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 10,333,328

193.    Archer incorporates by reference its responses to Paragraphs 1–192 of the Complaint.

194.     To the extent Paragraph 194 implicates legal conclusions, no response is required. The '328 Patent speaks for itself.  To the extent a response is required, Archer admits that the '328 Patent bears the title "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging" and reflects an issue date of June 25 2019.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 194, and therefore denies them.

195.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in Paragraph 195, and therefore denies the allegations.

196.     To the extent Paragraph 196 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 196.

197.     To the extent Paragraph 197 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 197, and specifically denies that it infringed any patents.

198.     To the extent Paragraph 198 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 198 and specifically denies that it has committed or is committing any acts of patent infringement.

199.     To the extent Paragraph 199 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 199 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 199, and specifically denies that it has committed or is committing any act of patent infringement.

200.     To the extent Paragraph 200 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 200 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and

characterizations contained in Paragraph 200, and specifically denies that it has committed or is committing any act of patent infringement.

201.    To the extent Paragraph 201 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 201 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 201, and specifically denies that it has committed or is committing any act of patent infringement.

202.    To the extent Paragraph 202 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 202 can be found at https://newatlas.com/aircraft/archer-aviation-evtol-united/, in "Archer Investor Deck 2021," or RTCA-DO-311A (December 19, 2017), and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/, "Archer Investor Deck 2021," and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 202, and specifically denies that it has committed or is committing any act of patent infringement.

203.    To the extent Paragraph 203 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 203 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 203, and specifically denies that it has committed or is committing any act of patent infringement.

204.    To the extent Paragraph 204 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 204 can be found in "Archer Investor Deck 2021" or RTCA-DO-311A (December 19, 2017), and Archer refers to "Archer Investor Deck 2021" and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and

Gibson, Dunn & Crutcher LLP

characterizations contained in Paragraph 204, and specifically denies that it has committed or is committing any act of patent infringement.

205.    To the extent Paragraph 205 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 205 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 205, and specifically denies that it has committed or is committing any act of patent infringement.

206.    Archer admits that Scott Furman is a named inventor of the '328 Patent in January 2020.  The allegations in the first two sentences of Paragraph 206 state legal conclusions to which a responsive pleading is not required.  To the extent that a responsive pleading is deemed required, Archer denies the allegations and characterizations contained in Paragraph 206.  Archer admits that it has notice of the '328 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 206 and specifically denies that it has committed or is committing any acts of patent infringement.

207.    To the extent Paragraph 207 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 207 and specifically denies that it has committed or is committing any acts of patent infringement.

## PRAYER FOR RELIEF

208.    Paragraph 208 sets forth the statement of relief requested by Wisk to which no response is required.  Archer denies that Wisk is entitled to any relief against Archer and requests that the Court dismiss all claims with prejudice and order such further relief as the Court deems just and proper, including but not limited to attorney's and expert fees pursuant to California Civil Code § 3426.4 and/or 18 U.S.C. § 1836(b)(3)(D).

## AFFIRMATIVE DEFENSES

Archer asserts the following affirmative defenses, without assuming the burden of proving any fact, issue, or element of a claim where such burden properly belongs to Wisk.  In addition to the

affirmative defenses described below, Archer specifically reserves all rights to assert additional affirmative defenses as additional information becomes available.  Archer reserves the right to seek leave to amend its Answer to plead additional defenses and counterclaims and/or to supplement its existing defenses if information developed through discovery, trial, or otherwise, merits such additional defenses, counterclaims, or supplementation.  Pursuant to Federal Rule of Civil Procedure 8(c), Archer, without waiver, limitation, or prejudice, hereby asserts the following affirmative defenses:

### First Affirmative Defense

### Non-Infringement of U.S. Patent No. 10,364,036

Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '036 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

### Second Affirmative Defense

### Non-Infringement of U.S. Patent No. 9,764,833

Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '833 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

### Third Affirmative Defense

### Non-Infringement of U.S. Patent No. 10,110,033

Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '033 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

**Fourth Affirmative Defense**

**Non-Infringement of U.S. Patent No. 10,333,328**

Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '328 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

**Fifth Affirmative Defense**

**Invalidity of U.S. Patent No. 10,364,036**

Each asserted claim of the '036 Patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

**Sixth Affirmative Defense**

**Invalidity of U.S. Patent No. 9,764,833**

Each asserted claim of the '833 Patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

**Seventh Affirmative Defense**

**Invalidity of U.S. Patent No. 10,110,033**

Each asserted claim of the '033 Patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

**Eighth Affirmative Defense**

**Invalidity of U.S. Patent No. 10,333,328**

Each asserted claim of the '328 Patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

1

2

**Ninth Affirmative Defense**

**Limitations on Damages and Costs**

3          To the extent that Wisk, and/or any predecessors in interest or any licensees to the patents

4     forming the bases for Wisk's patent infringement claims, failed to properly mark any of their relevant

5     products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that

6     Archer's actions allegedly infringe the patents, Archer is not liable to Wisk for the acts alleged to

7     have been performed before Archer received actual notice that the accused devices were allegedly

8     infringing the asserted patents.  Wisk's claims for relief are further barred, in whole or in part, under

9     35 U.S.C. §§ 286 and 288.  Wisk failed to give proper notice to Archer of its claims under the patent

10    laws of the United States and have failed to establish any basis for damages and/or liability prior to

11    patent issuance.

12

**Tenth Affirmative Defense**

13

**Patent Misuse**

14          The patents at issue are unenforceable under the doctrine of patent misuse because Wisk has

15    misused the patents at issue by engaging in a course of conduct that includes prematurely asserting

16    the patents in bad faith before Archer could possibly have engaged in any infringing acts,

17    impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive

18    effect, and attempting to enforce knowingly invalid, unenforceable, and/or noninfringed patents with

19    anticompetitive effects.

20

**Eleventh Affirmative Defense**

21

**Unclean Hands**

22          Wisk's claims for relief are barred, in whole or in part, under the doctrine of unclean hands.

23

**Twelfth Affirmative Defense**

24

**Independent Development**

25          Wisk cannot prevail against Archer on Wisk's inventorship and ownership claims, in whole or

26    in part, because Archer independently developed the inventions and technologies disclosed and

27    claimed by the patents-in-issue.

28

**Thirteenth Affirmative Defense**

**Alleged Injury Caused by Others**

Wisk's claim for misappropriation of trade secrets is barred because the damages sustained by Wisk, if any, were actually and proximately caused by the conduct or misconduct of persons other than Archer.

**Fourteenth Affirmative Defense**

**Defendant's Good Faith**

Wisk's claim for misappropriation of trade secrets is barred because Archer acted in good faith and had no reason to know that the former Wisk employees that Wisk points to in the Complaint owed duties to Wisk to maintain secrecy of the alleged confidential information and prevent any use or disclosure.

**Fifteenth Affirmative Defense**

**Wisk's Bad Faith**

Wisk's claim for misappropriation of trade secrets is frivolous, unreasonable, groundless, and in bad faith and therefore Wisk is barred from any recovery for such claim.

**Sixteenth Affirmative Defense**

**Adequate Remedy at Law**

Wisk is not entitled to injunctive relief, because, at a minimum, it has no irreparable injury, it has an adequate remedy at law for Archer's alleged infringement and/or misappropriation, the balance of hardships does not tip in its favor, and the public interest would be disserved by an injunction.

**Seventeenth Affirmative Defense**

**Readily Ascertainable**

Wisk's alleged trade secrets do not qualify for trade secret protection because they are readily ascertainable by proper means.

Gibson, Dunn & Crutcher LLP

1

**Eighteenth Affirmative Defense**

2

**No Willful Infringement**

3      Archer has not willfully infringed, and will not willfully infringe, any claim of the patents-in-

4  issue, nor has Archer willfully or maliciously misappropriated any of Wisk's alleged trade secrets.

5

**Nineteenth Affirmative Defense**

6

**Failure to Mitigate**

7      To the extent Wisk may have suffered any damages, Wisk has failed to take reasonable steps

8  to mitigate such damages.

9

**Twentieth Affirmative Defense**

10

**Marking**

11      Upon information and belief, Wisk's claims for relief and prayer for damages are limited

12  under 35 U.S.C. § 287.

13

**Twenty-First Affirmative Defense**

14

**Lack of Standing**

15      Upon information and belief, Wisk lacks standing to sue for infringement of, or assert any

16  rights in, the patents-in-suit.

17

**Twenty-Second Affirmative Defense**

18

**Lack of Notice**

19      Archer did not have notice of the patents-in-suit prior to service of the Complaint in this

20  action.  For at least this reason, Archer could not have, and did not, indirectly or willfully infringe the

21  patents-in-suit prior to service of the Complaint.

22

**Twenty-Third Affirmative Defense**

23

**Estoppel**

24      Wisk's requested relief is barred, in whole or in part, by the doctrine of estoppel, including,

25  but not limited to, the doctrine of prosecution history estoppel arising from the patentee's actions,

26  representations, or conduct before the U.S. Patent and Trademark Office during prosecution of the

27  patents-in-suit.

28

**Twenty-Fourth Affirmative Defense**

**Non-Recoverability of Costs**

Wisk is precluded by 35 U.S.C. § 288 from seeking recovery of costs because no disclaimer of any of the invalid claims of the patents-in-suit was entered at the U.S. Patent and Trademark Office prior to the commencement of this suit.

## JURY DEMAND

Archer demands a trial by jury on all issues so triable.

\*       \*       \*

### ARCHER'S COUNTERCLAIMS

Counterclaimant Archer Aviation Inc. ("Archer"), by its undersigned counsel, brings these counterclaims against Plaintiff and Counterdefendant Wisk Aero LLC ("Wisk") and alleges as follows:

### Parties

1. Archer is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1880 Embarcadero Road, Palo Alto, California 94303.

2. On information and belief, Wisk is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 2700 Broderick Way, Mountain View, California 94043.

### Jurisdiction and Venue

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1338(a).  The Court also has supplemental subject-matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District under the provisions of 28 U.S.C. § 1391(b), because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district, the intellectual property that is the subject of this suit is situated in this judicial district, and Wisk resides in this District for the purposes of 28 U.S.C. § 1391.  Venue is also proper in this District under the provisions of 28 U.S.C. § 1400(b), because this is the judicial district where Wisk "resides" and/or where Wisk has committed acts of tortious interference and unfair competition and "has a regular and established place of business."

5. This Court has personal jurisdiction over Wisk because Wisk has continuous and systematic contacts with the State of California, including because its principal place of business is located within this judicial District.  Additionally, and on information and belief, Wisk has intentionally targeted its improper behavior at Archer in this District.

### Factual Background

6. Archer incorporates by reference the Introduction to its Answer at Paragraphs 1-22 as though fully set forth herein.

7. Wisk has engaged in a media campaign to harm Archer, inject uncertainty and fear in

the marketplace, and disrupt Archer's current and prospective contracts and economic success.  Wisk has done this by falsely stating that Archer has stolen trade secrets, infringed patents, and is under criminal investigation.  Wisk made these statements knowing they were false or with reckless disregard of whether they were false or not.  This is evidenced by the fact that Wisk cannot identify any evidence that Archer ever received any secret information from Wisk, let alone misused any intellectual property.

8.     On February 10, 2021, Archer publicly announced it entered into a definitive agreement for a business combination with the special purpose acquisition company Atlas Crest Investment Corp ("ACIC") and its intent to raise $1.1 billion from investors to fund Archer's operations.  If the agreement is approved by ACIC stockholders and other closing conditions are satisfied, Archer would become a public company listed on the New York Stock Exchange.  As part of the $1.1 billion in anticipated funding, certain investors have entered into subscription agreements to purchase an aggregate of 60 million shares for $10 per share.

9.     Also on February 10, 2021, Archer publicly announced an aircraft purchase agreement and collaboration agreement with United Airlines, Inc. that included an order for $1 billion of Archer's future aircraft, with an option for an additional $500 million of aircraft.

10.    On April 6, 2021, Wisk filed a lawsuit recklessly accusing Archer of stealing trade secrets and infringing Wisk's patents.  (Dkt. 1.)  Wisk's lawsuit referenced Wisk's knowledge of Archer's contractual relationships with ACIC and United Airlines.  (Dkt. 1 at ¶¶ 4, 118, 119, 119 n.2.)

11.    To ensure that Wisk's allegations received wide exposure and enhanced their chances of (a) disrupting Archer's publicly announced contracts; (b) discouraging highly qualified talent from joining Archer; and (c) discouraging existing and potential investors from investing in Archer, Wisk posted a lengthy blog post on its website[2] and issued a press release that linked to the blog post[3]

---

[2]  A copy of which is attached as **Exhibit 1** and is also available at https://wisk.aero/news/blog/040621-blog-post/.

[3]  A copy of which is attached as **Exhibit 2** and is also available at https://www.prnewswire.com/news-releases/wisk-aero-sues-archer-aviation-for-theft-of-trade-secrets-and-patent-infringement-301263146.html.

Gibson, Dunn & Crutcher LLP

falsely and recklessly accusing Archer of unlawful conduct.  Wisk timed its public mudslinging campaign, coinciding with the filing of its reckless lawsuit, to maximize harm to Archer after learning of Archer's impending financial success.

12.     Wisk then published a second blog post on the "News & Insights" tab of its website on May 19, 2021, continuing its false, reckless, and unfounded statements of purported fact in an effort to interfere with Archer's success.[4]

13.     Wisk's blog posts were not made in furtherance of the litigation, and instead were made to tortiously interfere with Archer's current and prospective contractual and economic relationships and stifle fair competition.

14.     In its blog posts and press release, Wisk made numerous unsupported and false assertions that expose its true intentions to derail a more successful competitor by interfering with Archer's contracts, existing and prospective business relationships, and recruiting efforts.

15.     For example, on April 6, 2021, Wisk published that Archer is using "stolen Wisk technology" and "infringing our patents", despite knowing or recklessly disregarding that Archer does not have an infringing device.  Wisk's blog post claims that Archer's computer-generated image somehow "indicates Archer's use of more detailed design features, including features related to aircraft propulsion, power management, avionics, flight control, and manufacturing methodology." This is false and underscores Wisk's intentional or reckless attempt to harm Archer.  A single, shadowed, computer-generated image of Archer's aircraft design cannot indicate underlying propulsion, power management, or other technical methodology.

16.     Wisk also baselessly states in its blog post that the similarity between the aircraft design in Wisk's patent application and the aircraft design in Archer's investor materials "could not have been a coincidence."  Effectively calling Archer a thief of trade secrets and patented technology based on the similarity of two computer-generated pictures—both of which depict widely-known aircraft design features—is reckless at best, and ignores the truth, that Wisk cannot even claim in its lawsuit that its aircraft design *is* a secret at all.

---

[4]  The second blog post is available at the link referenced in footnote 2, *supra*, and the corresponding exhibit.  *See* Ex. 1.

17.     Wisk also tries to obscure details about aircraft design and the industry, catering its blog post to industry outsiders like Archer's business partners and investors.  For example, Wisk states:  "The design of the aircraft submitted in Wisk's patent application is not a result of common knowledge among the industry or basic eVTOL aircraft design."  This is deceptive and objectively untrue.  Relevant aspects of Wisk's aircraft design have been publicly available and are common knowledge among the industry, representing basic eVTOL aircraft design.

18.     Wisk also falsely, or in reckless disregard of the truth, asserts that it is "virtually impossible" for Archer to have made the progress it has in its aircraft design in the amount of time in which it has achieved that progress.  Wisk knows (or should know) that Archer's timeline is similar to competitors.  Wisk also knows (or should know) that Archer teamed up with some of the best consultants and engineers in the industry to efficiently and independently develop its aircraft, as described by *Forbes* magazine in a news article that predated Wisk's tortious blog posts by a year, which Wisk recklessly or intentionally ignored.[5]  Wisk is, or should be, well aware that it is common within the industry to utilize the services of consultants to assist in various parts of aircraft design, underscoring the falsity and recklessness of its statements.

19.     Wisk's second blog post deceptively claims that the FBI and U.S. Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property."  *See* Ex. A.  That is a false statement that Wisk knew or should have known was untrue when Wisk posted it and that remains untrue today.  Wisk stated this to intentionally or recklessly further interfere with Archer's contracts and deter would-be employees from joining Archer, to scare off potential Archer investors and customers, and to cause further reputational and economic harm to Archer.  On information and belief, Wisk pushed its salacious blog post to media outlets, which picked up the false and damaging claim that Archer was the subject of a criminal investigation, harming Archer's reputation and goodwill, as Wisk intended.  Archer was forced to expend significant time and resources to correct the misstatements in an effort to prevent further harm.  But the corrections by certain media outlets to their stories could not undo the damage Wisk's

---

[5]  https://www.forbes.com/sites/jeremybogaisky/2020/05/21/archer-walmart-marc-lore-electric-air-taxi/?sh=73163632510e

tortious statement already caused to Archer, damage that continues with Wisk's active blog post.

20.     As intended, Wisk's anticompetitive and tortious conduct has already harmed Archer and will continue to do so.  Wisk's wrongful acts have disrupted Archer's current contractual relationships, making them more burdensome and expensive, as well as prospective opportunities for investment and financial success, and have harmed Archer's valuable goodwill and reputation at a critical time for Archer's funding and success.

21.     Wisk's tortious and anticompetitive conduct has also directly impacted Archer's recruiting efforts.  For example, several recruitment prospects were no longer interested in joining Archer after Wisk's misrepresentations were published, including at least one prospective employee who had signed an employment contract to join Archer but then backed out, citing Wisk's false blog post as the impetus for his withdrawal.  As a result of Wisk's conduct, Archer has already lost, and will continue to lose, talent as well as the funds, time, and effort expended to recruit these individuals.

22.     Wisk's tortious and unlawful actions have caused and continue to cause significant financial damages and harm to Archer going forward, which actual and final amounts will be proven at trial.

### First Counterclaim

(INTERFERENCE WITH CONTRACTUAL RELATIONS)

23.     Archer incorporates Paragraphs 1–22 of the Counterclaims as though fully set forth herein.

24.     Archer entered into a contract with ACIC, and many investors purchased stock in ACIC.  Archer had also reached agreement with at least one prospective employee who had agreed to join Archer before Wisk published its blog posts.

25.     Wisk knew of these contracts, or in the case of the employee, knew on information and belief that Archer was hiring and therefore likely had pending employee contracts.  Wisk's misleading and false blog posts disrupted these contractual relationships, causing the employee to withdraw the acceptance of a job offer from Archer, and making performance of the contracts more expensive, difficult, and burdensome.

26.     By accusing Archer of misconduct and making misleading and false claims in the blog posts and press release intended to obscure the issues for industry outsiders, Wisk intended to disrupt (or, at the very least, failed to act with reasonable care to prevent the disruption of), and did disrupt, these contracts.  Wisk also knew that (or, at the very least, recklessly disregarded whether) disruption of performance was certain or substantially certain to occur.  Wisk has engaged and continues to engage in tortious acts against Archer through which Wisk has intentionally interfered and continues to intentionally interfere with the contractual relations between Archer and its existing investors and recruits.  Wisk intends that such interference would induce breaches or disruption of Archer's contractual relationships.

27.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, has not infringed any Wisk patents, and is not under criminal investigation.  Wisk had no reasonable basis for stating otherwise.  Nonetheless, Wisk falsely represented to the marketplace— indeed to the world—through its blog posts and press release that Archer stole trade secrets, is infringing Wisk's patents, and is under criminal investigation for the anticompetitive purpose of causing harm to Archer's business by, among other things, interfering with Archer's contracts.

28.     Wisk's tortious conduct has caused Archer considerable damage, including but not limited to loss of an employment contract and additional costs and burdens associated with enjoyment of the ACIC contract.

29.     In addition to the damages already suffered, Wisk's ongoing tortious conduct continues to cause Archer harm in an amount to be proven at trial.

**Second Counterclaim**

(INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

30.     Archer incorporates Paragraphs 1–29 of the Counterclaims as though fully set forth herein.

31.     Archer was in economic relationships with potential investors, lenders, and employees that would have resulted in economic benefits to Archer.

32.     Wisk knew of these economic relationships, or in the case of potential employee hires, knew on information and belief that Archer was hiring and therefore likely would have pending or

prospective employee contracts.  Nonetheless, Wisk falsely represented to the marketplace—indeed to the world—through its blog posts and press release that Archer stole intellectual property, is infringing Wisk's patents, and is under criminal investigation for the anticompetitive purpose of causing harm to Archer's reputation and business by, among other things, interfering with Archer's prospective economic benefits.

33.     By falsely and unfairly accusing Archer of misconduct and making misleading and false claims intended to obscure the issues for industry outsiders, Wisk intended to disrupt (or, at the very least, failed to act with reasonable care in whether it would disrupt) the economic relationships with potential investors, lenders, and employees.  Wisk also knew that (or, at the very least, recklessly disregarded whether) disruption of these relationships was certain or substantially certain to occur.  The relationships, as a result, were disrupted.

34.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, not infringed any Wisk patents, and is not under criminal investigation, and had no reasonable basis for stating otherwise.  Wisk's false and reckless representations in its blog posts and press release that Wisk knew or should have known were false or misleading were made for the purpose of causing harm to Archer's business.

35.     Wisk's tortious conduct and unfair business practices have caused considerable damage to Archer by interfering with potential investors, potential lenders, and potential employee relationships, including but not limited to lost actual and potential investors, loans, and lost recruits, in addition to the damage caused to Wisk's reputation and goodwill.

36.     In addition to the damages already suffered, Wisk's ongoing tortious conduct continues to cause Archer harm in an amount to be proven at trial.

### **Third Counterclaim**

(UNFAIR COMPETITION—CALIF. BUSINESS & PROFESSIONS CODE § 17200)

37.     Archer incorporates Paragraphs 1–36 of the Counterclaims as though fully set forth herein.

38.     The acts and conduct of Wisk as alleged above constitute methods of unlawful or unfair business practices as defined by California Business & Professions Code Section 17200.

Gibson, Dunn & Crutcher LLP

39.     Wisk's acts or practices are unlawful in violation of Section 17200, as described in Counterclaims 1 and 2, above.

40.     Wisk's acts or practices are unfair in violation of Section 17200 because they are unlawful, unfair, and/or fraudulent as alleged here, and significantly threaten and harm competition at least in the following aspects:  Archer has lost employees and has been forced to divert substantial resources to fight the false statements Wisk has made in its blog posts and press release regarding Archer's use of Wisk's trade secrets and patents, and Archer's contractual relationships have been disrupted and made more burdensome.  The severity of harm to Archer resulting from Wisk's unfair conduct outweighs any public utility or Wisk's justification for engaging in those acts or practices.

41.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, not infringed any Wisk patents, and is not under criminal investigation.  Wisk has no reasonable basis for stating otherwise.  Wisk's false and reckless representations in its blog posts and press release that it knew or should have known were false and misleading were for the purpose of causing harm to Archer's business.

42.     Wisk's tortious behavior has caused Archer considerable damage, including lost employees, potential investors, potential lending relationships, and lost recruits.

43.     Archer has been harmed and is continuing to be harmed as a result of Wisk's unlawful or unfair acts.

**Fourth Counterclaim**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '036 PATENT)

44.     Archer incorporates Paragraphs 1–43 of the Counterclaims as though fully set forth herein.

45.     A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 10,364,036, or '036 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

46.     Archer denies infringement of any valid and enforceable claim of the '036 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '036 Patent.

47.     Each asserted claim of the '036 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

48.     A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '036 Patent.

49.     Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '036 Patent.

50.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '036 Patent are invalid.

51.     Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '036 Patent.

**Fifth Counterclaim**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '833 PATENT)

52.     Archer incorporates Paragraphs 1–51 of the Counterclaims as though fully set forth herein.

53.     A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 9,764,833 or '833 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This

controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

54. Archer denies infringement of any valid and enforceable claim of the '833 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '833 Patent.

55. Each asserted claim of the '833 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

56. A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '833 Patent.

57. Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '833 Patent.

58. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '833 Patent are invalid.

59. Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '833 Patent.

### Sixth Counterclaim

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '033 PATENT)

60. Archer incorporates Paragraphs 1–59 of the Counterclaims as though fully set forth herein.

61. A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 10,110,033 or '033 Patent with respect to the

manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

62.     Archer denies infringement of any valid and enforceable claim of the '033 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '033 Patent.

63.     Each asserted claim of the '033 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

64.     A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '033 Patent.

65.     Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '033 Patent.

66.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '033 Patent are invalid.

67.     Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '033 Patent.

**Seventh Counterclaim**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '328 PATENT)

68.     Archer incorporates Paragraphs 1–67 of the Counterclaims as though fully set forth herein.

69.     A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid

and enforceable claim of the U.S. Patent No. 10, 333,328 or the '328 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

70.     Archer denies infringement of any valid and enforceable claim of the '328 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '328 Patent.

71.     Each asserted claim of the '328 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

72.     A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '328 Patent.

73.     Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '328 Patent.

74.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '328 Patent are invalid.

75.     Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '328 Patent.

**DEMAND FOR JURY TRIAL**

76.     Archer demands a jury trial.

**PRAYER FOR RELIEF**

a)     Dismiss Wisk's Complaint with prejudice;

b)     Enter a judgment in favor of Archer and against Wisk on all claims in Wisk's Complaint;

1  c)  An award of damages to Archer;

2  d)  Injunctive relief to enjoin Wisk from continuing to interfere with contractual relations
3      and prospective economic advantage;

4  e)  Restitution under Section 17200 and an injunction to enjoin Wisk from continuing its
5      unlawful and unfair practices;

6  f)  An order awarding Archer compensation for any and all damages, injury, or harm;

7  g)  An order directing Wisk to pay full restitution and/or disgorgement of all profits and
8      benefits that may have been obtained as a result of its wrongful conduct;

9  h)  An order awarding Archer treble and/or increased damages resulting from Wisk's
10      willful and intentional conduct;

11  i)   An order awarding Archer its costs pursuant to Rule 54(d) of the Federal Rules of
12      Civil Procedure;

13  j)  Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Archer its
14      costs and reasonable attorney fees; and

15  k)  An order awarding Archer such further relief as the Court may deem appropriate under
16      the circumstances.

17

DATED:   JUNE 1, 2021     GIBSON DUNN & CRUTCHER, LLP
18

19

                    BY:   */s/ Josh A. Krevitt*
20                      Josh A. Krevitt

21                     Attorney for Defendant
22                     and Counterclaimant
                      ARCHER AVIATION INC.

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP