June 7, 2021

The Honorable William H. Orrick
District Judge of the Northern District of California

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO

Dear Judge Orrick,

Plaintiff Wisk Aero LLC ("Wisk") and Defendant Archer Aviation Inc. ("Archer") respectfully submit this joint letter brief pursuant to the Court's May 27, 2021 Order. The parties met and conferred extensively over telephone and Zoom and with lead counsel present, and reached substantial agreement as outlined in Exhibit A hereto. The parties present four disputes to the Court for resolution below.

### Wisk Statement

**1. Wisk Is Entitled to an <u>Equal</u> Opportunity to Inspect Jing Xue's Laptop**

Wisk has submitted forensic evidence, and expert testimony, demonstrating that Jing Xue stole nearly 5,000 files from Wisk, using a private network, and a laptop that was not returned to Wisk, *see* Dkt. 16-24. This District has repeatedly held that "where, as here, the electronic information on [] hard drives is relevant to a plaintiff's claims of trade secret misappropriation," then a device inspection is appropriate. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012). Indeed, Archer <u>has already inspected Mr. Xue's work laptop</u>.

But, having already performed its own independent investigation, Archer refuses to provide Wisk with equal access to Mr. Xue's work laptop, insisting instead that only a third-party neutral should be allowed to examine it. That is unfair to Wisk, and it is the exact argument that this District rejected in *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2454003 (N.D. Cal. May 22, 2015). In *Autodesk*, the defendant was accused of misappropriating secret source code (*id*. at *1), and sought to deny the plaintiff discovery by insisting that the court should appoint a neutral expert to examine the code and determine what was relevant. *Id*. But this was rightfully rejected as an improper limitation on the plaintiff's Rule 26 discovery rights. This situation is little different.

To be clear, Wisk does <u>not</u> object to a protocol that would permit Archer to identify and segregate allegedly privileged documents; for example, Wisk would agree to have its vendor provide a list of files from the laptop to Archer, allowing Archer to assert privilege, and then agree to receive only those documents that are not privileged. But discovery is a two-way street, and Archer has refused to discuss any procedure that does not involve a "neutral," even though Archer has already examined the laptop itself. Wisk is entitled to equal access, and the court should compel it.

**2. Archer May Not Request Full Fact Discovery on an Expedited Basis**

Wisk has limited its expedited document requests to *specific*, *discrete* documents, known to exist in Archer's possession; but Archer is insisting on full fact discovery, complete with electronic document collection and search terms. That is inappropriate for expedited discovery, and this District has repeatedly held that expedited discovery requests requiring mass document collection, search terms, and review, will be denied. *E.g. Navarrete v. Hill's Pet Nutrition, Inc.*, 2019 WL 1932388, at *2 (N.D. Cal. May 1, 2019) ("[P]laintiffs seek responses to interrogatories and document requests which are excessively broad. Because plaintiffs' requests are not narrowly tailored, the motion for expedited discovery is DENIED."); *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *3 (N.D. Cal. May 18, 2011) (similar); *see also Corelogic Sols., LLC v. Geospan*

*Corp.*, 2020 WL 7786537, at *4 (C.D. Cal. Aug. 21, 2020) (denying broad expedited discovery because it could not be completed quickly).

Archer attempts to downplay the burden by claiming that it "only" wants "one" term (which is actually a conjunctive term, using "and," that would count as multiple terms under this District's Model ESI stipulation). But the number of search terms is beside the point: the burden comes from collecting dozens of Wisk employee email boxes, and processing those email boxes into a review platform, which are necessary steps required to run *any* search terms. Moreover, given Mr. Xue's centrality to the issues in this litigation, *see generally* Dkt. 16, it should be no surprise that he would be mentioned frequently in privileged documents; and Archer's requested search is really a request for Wisk to undertake an unduly burdensome, large-scale privilege review. That cannot be done efficiently, on an expedited basis. Archer's request for expedited document collections with search terms should be denied. *Navarrete*, 2019 WL 1932388, at *2.

### 3. Wisk's CEO Does Not Have Firsthand, Non-Duplicative Knowledge <u>Relevant to the Preliminary Injunction</u>

Archer has requested a deposition of Wisk's CEO, Gary Gysin, on a "tit-for-tat" basis, because Wisk has requested a deposition of one of Archer's founders; Archer does not even deny this—its portion of this letter brief admits that it is requesting a CEO deposition merely because Wisk requested one. "Discovery, however, is not a game of tit-for-tat." *Monster Cable Prod., Inc. v. The Quest Grp.*, 2005 WL 2596451, at *7 (N.D. Cal. Oct. 13, 2005). Archer's founders are *not* similarly situated to Mr. Gysin, whose deposition is not relevant to the preliminary injunction.

Unlike Mr. Gysin, Archer's founders, Brett Adcock and Adam Goldstein, *do* have unique, first-hand knowledge relevant to the preliminary injunction. Both Mr. Adcock and Mr. Goldstein personally met with, and attempted to recruit, Wisk employee Geoff Long, and during that conversation Messrs. Adcock and Goldstein revealed information about the state of Archer's aircraft development in December 2019. *See* Dkt. 16-27 ¶¶ 11-14. Because "implausibly fast development . . . can contribute to finding misappropriation," *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019), the state of Archer's aircraft development in December 2019, as described by Archer's founders to Mr. Long, is directly relevant to Wisk's motion.

Moreover, public statements made by both Messrs. Adcock and Goldstein appear to acknowledge Archer's strategy of raiding Wisk's workforce to gain access to trade secrets. *See* Dkt. 16 at 10. For example, Mr. Adcock boasted that Archer's aircraft is the "sixth aircraft that [former Wisk employees Geoff Bower and Tom Muniz] are building," *id*., even though Archer hasn't built *any* other aircraft: Mr. Adcock was talking about *five earlier Wisk aircraft*, and whether Mr. Adcock hired Wisk's workforce to rely on Wisk's trade secrets clearly is part of this dispute.

By contrast, Archer has not identified any evidence showing Mr. Gysin has knowledge relevant <u>to the preliminary injunction</u>. Instead, Archer wants to depose Mr. Gysin *about Archer's counterclaims*. As Archer's portion of the brief acknowledges, the proposed topic for Mr. Gysin's deposition is the timing of Wisk's lawsuit—which is the exact issue raised in Archer's counterclaims. *See* Dkt. 31 Counterclaim ¶ 10 ("Wisk timed its … lawsuit, to maximize harm to Archer"). Archer should not be allowed to abuse expedited discovery *for the preliminary injunction* to take discovery about its counterclaims.

To be clear: Wisk is *not* withholding its CEO for the entire lawsuit; Wisk merely seeks to prevent an irrelevant, burdensome, expedited apex deposition. Moreover, Wisk is producing its CFO (Caryn Nightengale), its CTO (Jim Tighe), and its Aircraft Chief Engineer (Geoff Long); and Archer makes no showing that Mr. Gysin has "unique firsthand, non-repetitive knowledge of the facts at issue" as is required for an apex deposition. *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011). Mr. Gysin should not have to be deposed at this time.

### 4. Archer Cannot Claim It "Lacks Control" Over Its Own Employees

Archer has taken the untenable position that it "lacks control" over both (i) its own employees, and (ii) documents in possession of its employees; allegedly because they have "retained separate criminal counsel." The Court should not allow Archer to dodge its discovery obligations, and wriggle out of agreed-to expedited discovery, by claiming that it can't control its own employees or their documents. Courts in this District regularly reject such arguments. *E.g. Proofpoint, Inc. et al v. Vade Secure, Incorporated et al*, Case No. 3:19-cv-04238-MMC (N.D. Cal.), Dkt. 566 at 14 (rejecting corporation's "self-serving contentions that it had no control over its own source code simply because it was reposed on the personal computers of its own [employee] agent").

As this District has recognized, Archer may compel its employees to produce documents in their possession through adverse employment actions. *See, e.g. Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *14 n. 9 (N.D. Cal. May 15, 2017) ("This order … directs Uber, a private employer, to do whatever it can to ensure that its employees return 14,000-plus pilfered files to their rightful owner. If Uber were to threaten Levandowski with termination for noncompliance, that threat would be backed up by only Uber's power as a private employer … Uber has no excuse under the Fifth Amendment to pull any punches as to Levandowski."). The same reasoning applies to depositions: Archer may compel its own employees to appear for deposition, or terminate their employment if they refuse. *Id*. The Court should require Archer to take all necessary steps to cause its employees to show up for their depositions along with their documents.

### Archer's Statement

Before setting forth its positions on the disputed issues, Archer wishes to inform the Court that if the resolution of any issue in Archer's favor would necessitate moving the currently scheduled July 21 hearing date on Wisk's motion for a preliminary injunction, *Archer will withdraw its request(s)*. As Archer has publicly announced, it is on the cusp of a merger critical to its future. Archer does not wish to litigate any issue that could delay the hearing, thus interrupting the merger and causing Archer irreparable harm, regardless of whether Archer prevails on Wisk's motion.

### 1. Dispute Regarding Which Forensic Firm Should Review Jing Xue's Archer Laptop

Wisk's complaint and its motion for a preliminary injunction portray former Wisk employee Jing Xue as a thief who has sought to cover his tracks by deleting Wisk material from personal devices rather than returning it to Wisk, suggesting that he must have transferred those files to Archer, his subsequent employer. Archer denies that Mr. Xue provided it with any Wisk documents (which would be a serious breach of Archer's onboarding requirements). To the contrary, Wisk emails reflect that: (i) Wisk itself instructed Mr. Xue that the Wisk documents on Mr. Xue's personal devices needed to be "returned and/or removed"; and (ii) Mr. Xue complied with that directive.

Wisk has asked Archer to turn over a forensic copy of Mr. Xue's Archer laptop to Wisk's vendor for review pursuant to a protocol proposed by Wisk. *Archer does **not** object to an inspection of Mr. Xue's Archer laptop or to the scope of that inspection proposed by Wisk*. For the reasons set forth below, however, Archer requests that the forensics inspection be done by a neutral vendor selected by the parties jointly. Archer is prepared to pay 50% of that vendor's cost.

Production of Mr. Xue's Archer work device will provide the recipient with access to a vast array of Archer documents, including Archer's proprietary and confidential information, much of which has no bearing on this case. Moreover, because Mr. Xue is represented by personal counsel, his Archer laptop also may contain Mr. Xue's attorney-client privileged communications. Indeed, during the parties' meet and confer, Wisk refused Archer's request for production of all files from the Wisk computers that Mr. Xue returned, citing as a reason "the likely presence of privileged information on these computers." A neutral vendor should be able to provide Wisk with search

3

results for non-privileged documents, including any Wisk documents that Wisk speculates are on that device.  The alternative solution demanded by Wisk effectively amounts to Archer being required to create a workstation in its offices for a Wisk agent.  (Mr. Xue has been placed on leave and he himself has no access to his Archer computer.)  Accordingly, Archer requests that it be permitted to provide the information Wisk seeks, and follow the protocol that Wisk seeks, using a third-party vendor who is agreed-upon and retained and paid by both parties, reports to both parties' counsel, and does not communicate privileged or personal materials to Wisk.

**2. Dispute Whether Wisk Must Conduct Reasonable Searches Of Its Computers For Requested Documents That Are Relevant To Arguments That Archer Intends To Make In Opposition To Wisk's Motion For Preliminary Injunction**

Archer requests that the Court order Wisk to conduct reasonable searches for the following:

- Documents regarding Jing Xue that were created and/or dated on or after Mr. Xue left Wisk;
- Documents reflecting the subject matter of communications between Wisk and/or its agents (including counsel) and any employee of the Santa Clara District Attorney's Office, FBI, and/or U.S. Department of Justice;
- Documents relating to or reflecting Wisk's concerns, if any, about Archer's alleged acquisition, use, or disclosure of Wisk trade secrets.

**First**, Archer requests a one-search-term ESI search—"Jing or Xue"—limited to the time period between Mr. Xue's last day at Wisk on January 10, 2020 and Wisk's filing of the complaint on April 6, 2021.  Having attached 10 such emails to Ms. Russell's declaration, Wisk has shown that it is has already searched for documents regarding Mr. Xue during that time period.  Cherry-picked documents were filed with Wisk's moving papers (and mischaracterized); Archer should have access to all other similar documents (and their family members) for its Opposition to Wisk's motion.   The documents are not privileged and the requested search is not burdensome.

**Second**, Archer seeks all communications by four high-level Wisk custodians regarding the subject matter of communications that Wisk or its agents had with law enforcement.  Wisk has agreed to produce the law enforcement communications themselves, but refuses to search for and produce internal, non-privileged Wisk communications about the subject matter of those communications.   This is insufficient. Wisk apparently spent many months lobbying prosecutors to start a criminal investigation against Mr. Xue, which Archer contends was a tactic intended to bolster its insufficient litigation claims against Archer. Internal communications about the subject matter of those accusations may reflect inequitable conduct by Wisk that undermines its request for extraordinary equitable relief in advance of trial.   To minimize any burden, Archer seeks such internal communications only from the following Wisk custodians: CEO Gary Gysin, CTO Jim Tighe, CFO Caryn Nightengale, and Senior People Partner Carlie Russell.

**Third**.   Documents relating to or reflecting Wisk's concerns, if any, about Archer's acquisition, use, or disclosure of Wisk trade secrets or infringement of Wisk patents are directly relevant to Wisk's alleged irreparable harm and its purported need for emergency equitable relief. Wisk contends in this Court that it believed that an employee stole thousands of files and brought them to a competitor, and that Archer copied its current eVOTL aircraft design from that information. Archer challenges the sincerity of those purported beliefs, and intends to show that the impetus for this case were factors unrelated to Wisk's trade secrets—the documents that Archer seeks are

easily searchable using terms such as "Archer" and "Maker." If Wisk has no documents demonstrating good faith concerns about Archer, then it will have nothing to produce.

3. **Dispute Whether Archer May Depose Wisk CEO Gary Gysin**

Wisk's lawyers and paid experts insist Archer's projected development timeline is unfathomable. Archer disagrees and seeks to question Wisk CEO Gary Gysin about that and other relevant subjects.  Archer has agreed to produce either one of its founders for deposition, as they, like Mr. Gysin possess relevant factual knowledge. Having put timelines at issue—and insisted that it can take Archer's apex depositions based on public statements—Wisk should not be permitted to deny Archer the opportunity to take a short deposition of Mr. Gysin, whose testimony is also highly relevant to Wisk's decision (and the timing of that decision) to sue its competitor instead of its former employee, who it accuses of wrongdoing.  It is Wisk's burden to show why the deposition should be denied, and "it is very unusual for a court to prohibit the taking of a deposition [of an apex witness] altogether absent extraordinary circumstances." *In re Apple iPhone Antitrust Litig.*, 2021 WL 485709, at *5 (N.D. Cal. Jan. 26, 2021) (quotation marks omitted).  Mr. Gysin has personal knowledge of the facts undergirding Wisk's case, he is Wisk's ultimate decision-maker, and Archer is entitled to his deposition.

4. **Wisk's Complaints Re Discovery from Individual Archer Witnesses**

Archer has made clear that it will request and encourage its employees to testify in depositions requested by Wisk and to produce their personal documents. Archer understands that Messrs. Muniz and Melack are willing to be deposed, so the issue concerns, at most, Mr. Xue. Wisk has no information at this time about Mr. Xue's intentions. What potentially stands in the way of Mr. Xue's testimony is Wisk's successful effort to jeopardize Mr. Xue by its grossly misleading accusations to the U.S. Attorney's Office about his conduct at Wisk. Wisk now asserts that Archer can force Mr. Xue to testify by threatening to fire him if he refuses to testify on the advice of his personal counsel. Power over someone's livelihood does not create "control" over documents they may have on a home computer or personal email account (including personal files like health records and pictures of their children). Archer is providing full corporate discovery, and desires that all its employees cooperate with Wisk's legitimate discovery requests. Wisk's effort to further threaten Mr. Xue's career and life is both cynical and premature—Mr. Xue has not indicated his decision regarding deposition testimony. That decision is his, not Archer's or Wisk's.

DATED: June 8, 2020     QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Yury Kapgan*
Yury Kapgan
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By */s/ Joshua Lerner*
Josh A. Krevitt
Joshua H. Lerner
*Attorneys for Defendant Archer Aviation Inc.*

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

                                                          */s/ Yury Kapgan*
                                                          Yury Kapgan

**Exhibit A**

**Depositions**:   Subject to the disputed issues regarding depositions noted above, Archer does not object to depositions of each of the individuals that Wisk requested, specifically the following individuals: (1) Tom Muniz; (2) Jing Xue; (3) John Melack; (4) Brett Adcock or Adam Goldstein; (5) Geoff Bower (6) any declarant who offers testimony regarding FlightHouse Engineering (if any); and (7) Archer's expert(s) who submit a declaration in opposition to Wisk's motion.[1]

Subject to the disputed issues regarding depositions noted above, Wisk agreed to make the individuals Archer requested available for deposition: (1) Geoff Long; (2) Jim Tighe; (3) Caryn Nightengale; (4) Carlie Russell; (5) Dr. Randy Collins (expert); and (6) Dr. Farhan Gandhi (expert).[2]

**Documents**:   Archer agreed to produce the following non-privileged documents in its possession, custody or control: (1) flight readiness reviews, conceptual design reviews, critical design reviews, and preliminary design reviews (or any equivalent documents); and (2) design documents that Archer received from FlightHouse Engineering and any other third parties Archer will rely on to support its defense of "independent development."

Wisk agreed to produce the following non-privileged documents in its possession, custody or control: (1) documents sufficient to show flight readiness reviews, conceptual design reviews, critical design reviews, and preliminary design reviews (including any documentation equivalent to the foregoing) for Wisk's first, second, and fifth generation aircrafts, and its sixth generation aircraft referenced in Wisk's Complaint (Dkt. 1) and allegedly disclosed in Wisk's January 2020 patent application; (2) documents sufficient to show Wisk's development timelines from January 1, 2010 to the present for eVTOL aircraft; (3) complete file history for the January 2020 patent application (and will provide a privilege log for any invention disclosure forms, without admitting that a privilege log as to other requests is appropriate for expedited discovery); (4) documents sufficient to show the origin of Figures 1-3 of the January 2020 patent application; (5) documents sufficient to show design reviews relating to eVTOL aircraft utilizing tilt rotors since January 2020; (6) documents that Wisk presently believes were improperly downloaded by the former Wisk employees now at Archer based on information known to Wisk; (7) the "logs" and "reports" that Wisk provided to the authorities for the downloaded files; and (8) Wisk's communications with the Santa Clara District Attorney, FBI, and/or U.S. Department of Justice.

---

[1]   Archer is agreeing to provide the discovery set forth herein to avoid delay regarding the resolution of Wisk's Motion for Preliminary Injunction. The parties have agreed that in providing discovery now Archer does not waive any objections to Wisk's CCP § 2019.210 Statement.

[2]   The parties agree that each deposition for purposes of the preliminary injunction proceeding shall be up to four hours long.   Separately, Wisk and Archer agree that these depositions will not count against the "10 deposition limit" (to the extent it will be applicable here), nor is either party waiving its right to seek further depositions of these witnesses during ordinary fact discovery to the extent appropriate.