JOSH KREVITT, SBN 208552
jkrevitt@gibsondunn.com
JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:     650.849.5300
Facsimile:      650.849.5333

ORIN SNYDER, *admitted pro hac vice*
osnyder@gibsondunn.com
DANIEL J. THOMASCH, *admitted pro hac vice*
dthomasch@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:     212.351.4000
Facsimile:      212.351.4035

WAYNE BARSKY, SBN 116731
wbarsky@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone:     310.552.8500
Facsimile:      310.551.8741

Attorneys for Defendant
ARCHER AVIATION INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>ARCHER AVIATION INC.,<br><br>            Defendant. | Case No. 3:21-CV-02450-WHO<br><br>**ARCHER AVIATION INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S TRADE SECRET CLAIMS (CLAIMS 1 AND 2); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*[Proposed] Order Granting Motion to Dismiss, filed concurrently herewith*]<br><br>Action Filed:  April 6, 2021<br><br>Hearing Date: July 21, 2021<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 2<br>Honorable Judge William H. Orrick |

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 21, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, in Courtroom 2, Seventeenth Floor, of the United States District Court for the Northern District of California in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Archer Aviation Inc. ("Archer") will, and hereby does, move this Court, pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff Wisk Aero LLC's ("Wisk") first and second causes of action in its First Amended Complaint (Dkt. 45) on two independent grounds.

First, the First Amended Complaint fails to identify the purported trade secrets that Wisk believes were misappropriated with sufficient particularity, leaving both the Court and Archer without the requisite notice of the trade secrets at issue.  Second, Wisk fails to plausibly allege that Archer improperly used any Wisk trade secrets.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Declaration of Joshua H. Lerner in support filed on June 1, 2021 (Dkt. 30), the other documents on file in this action, and any oral argument of counsel at the hearing on the Motion.


DATED:  June 16, 2021                     GIBSON, DUNN & CRUTCHER LLP

                                          By:  _____*/s/ Josh A. Krevitt*_____
                                                           Josh A. Krevitt

                                          *Attorneys for Defendant Archer Aviation Inc.*

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

<u>Page</u>

3

I.      INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED ..................................... 1

4

II.     STATEMENT OF FACTS ......................................................................................................... 2

5

     A.      Wisk's Allegations As To The Trade Secrets At Issue.................................................... 2

6

     B.      Wisk's Allegations Of Misappropriation ........................................................................ 3

7

     C.      Wisk's Amendment........................................................................................................... 5

8

III.    ARGUMENT ............................................................................................................................. 5

9

     A.      Wisk Fails To Plead A Trade Secret With Sufficient Particularity ............................ 5

10

          1.      The Allegations In The FAC Fail To Plead A Trade Secret .......................... 5

11

          2.      The FAC's Reference To The 2019.210 Statement Does Not Save Wisk's Claims ...................................................................................................... 8

12

     B.      Wisk Fails To Plead Any Improper Use Of A Wisk Trade Secret By Archer........... 10

13

14

          1.      Wisk Fails To Allege Any Of Its Employees Transferred A Secret To Archer, Let Alone That Archer Knowingly Used Those Secrets.................. 12

15

          2.      Wisk's Allegations Of Similarity Do Not Give Rise To An Inference Of Trade Secret Misappropriation ................................................................ 14

16

17

          3.      Wisk's Accusation Of "Inexplicably" Quick Development Is Equally Insufficient ........................................................................................................ 15

18

          4.      Wisk's Allegations Based On Statements By Archer's Founders Are Baseless ............................................................................................................. 16

19

IV.     CONCLUSION ........................................................................................................................ 17

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*,
　　581 F. Supp. 2d 654 (D. Del. 2008) ........................................................16

*Advanced Modular Sputtering, Inc. v. Super. Ct.*,
　　132 Cal. App. 4th 826 (2005) .................................................................9

*AlterG, Inc. v. Boost Treadmills LLC*,
　　388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..................................................7

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ...............................................................................13

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
　　No. 18-CV-933, 2018 WL 2298500 (N.D. Cal. May 21, 2018) .............6

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007) ...............................................................................17

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
　　No. 15-CV-1370, 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) .........6, 7

*In re Century Aluminum Co. Sec. Litig.*,
　　729 F.3d 1104 (9th Cir. 2013) ...............................................................11

*CleanFish, LLC v. Sims*,
　　No. 19-CV-3663, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) .....10, 11, 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
　　751 F.3d 990 (9th Cir. 2014) ..................................................................11

*Emazing Lights LLC v. De Oca*,
　　No. 15-CV-1561, 2016 WL 3658945 (C.D. Cal. Jan. 7, 2016) .............7

*Hooked Media Grp., Inc. v. Apple Inc.*,
　　55 Cal. App. 5th 323 (2020),
　　*review granted and cause transferred*, 472 P.3d 1064 (Cal. 2020) ........12

*Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
　　No. 18-CV-1656, 2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ..........6

*Integral Dev. Corp. v. Tolat*,
　　No. 12-CV-6575, 2015 WL 674425 (N.D. Cal. Feb. 12, 2015) ............16

*Invisible Dot, Inc. v. DeDecker*,
　　No. 18-CV-8168, 2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ............6

Gibson, Dunn & Crutcher LLP

1

2

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

3

*Loop AI Labs Inc. v. Gatti*,
No. 15-CV-798, 2017 WL 934599 (N.D. Cal. Mar. 9, 2017),

4

*aff'd*, 742 F. App'x 286 (9th Cir. 2018)..................................................................................10

5

*M/A-COM Tech. Solutions, Inc. v. Litrinium, Inc.*,
No. 19-CV-220, 2019 WL 8108729 (C.D. Cal. Sept. 3, 2019)....................................................10

6

7

*Navigation Holdings, LLC v. Molavi*,
445 F. Supp. 3d 69 (N.D. Cal. 2020) .....................................................................................13

8

9

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
No. 16-CV-253, 2018 WL 2117424 (N.D. Cal. May 8, 2018) ...................................................3, 9

10

*Palantir Techs., Inc. v. Abramowitz*,
No. 19-CV-06879-BLF, 2020 WL 9553151 (N.D. Cal. July 13, 2020) ......................................7, 8

11

12

*Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*,
No. 20-CV-4808, 2021 WL 965349 (N.D. Cal. Mar. 13, 2021)..................................................10

13

14

*Rock the Vote v. Trump*,
No. 20-CV-6021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020)...................................14, 17

15

*Space Data Corp. v. X*,
No. 16-CV-3260, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ...............................................6, 8

16

17

*Teradata Corp. v. SAP SE*,
No. 18-CV-3670-WHO, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .........................................5

18

19

*Vendavo, Inc. v. Price f(x) AG*,
No. 17-CV-6930, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018).................................................5

20

*Veronica Foods Co. v. Ecklin*,
No. 16-CV-7223, 2017 WL 2806706 (N.D. Cal. June 29, 2017)............................................11, 13

21

22

*Zoom Imaging Sols., Inc. v. Roe*,
No. 19-CV-1544, 2019 WL 5862594 (E.D. Cal. Nov. 8, 2019) ...................................................7

23

**STATUTES**

24

18 U.S.C. § 1836 ......................................................................................................................5

25

18 U.S.C. § 1839 ...............................................................................................................5, 9, 10

26

Cal. Civ. Code § 3426.1 .....................................................................................................5, 9, 10

27

Cal. Civ. Code § 3426.3 .............................................................................................................5

28

1

2

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

Cal. Code Civ. P. § 2019.210.................................................................................................3

**OTHER AUTHORITIES**

Manual of Patent Examining Proc. § 608.01(c) (June 2020)...............................................14

Gibson, Dunn &
Crutcher LLP

## I.      INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), Defendant Archer Aviation Inc. ("Archer") moves to dismiss the First and Second Causes of Action of Plaintiff Wisk Aero LLC's ("Wisk") First Amended Complaint ("FAC"), alleging federal and state trade secret violations.

Wisk filed this lawsuit alleging "brazen theft" of trade secrets by Archer—a promising contender in the market for electric vertical takeoff and landing ("eVOTL") vehicles—shortly after Archer announced a billion-dollar merger with Atlas Crest Investment Corp. and a $1 billion contract with United Airlines.  The purpose of Wisk's baseless allegations is clear:  Wisk seeks to disrupt Archer's business at a critical point in its growth.  But the numerous cracks and holes in Wisk's meritless case are already apparent.

Wisk's original complaint did not even identify a single specific trade secret at issue, instead offering only sweeping categories such as "Aircraft Designs" and "Manufacturing."  Archer timely moved to dismiss the complaint for failure to adequately plead either the existence of a trade secret or misappropriation by Archer.  Just before midnight on the day its brief in opposition was due, Wisk filed an amended complaint, but made only *one* change.  Rather than correct the obvious deficiencies in its allegations, Wisk added a single sentence that simply states: "The stolen Wisk trade secrets are described in <u>Exhibit E</u> hereto, which Wisk previously submitted at Dockets Nos. 16-8 and 17-11." Dkt. 45 ¶ 71.  This hollow invocation does nothing to salvage the generalized and vague allegations actually set forth in the FAC, and does not even address Wisk's failure to allege misappropriation.

It was incumbent upon Wisk to plead with adequate particularity the *specific* trade secrets it claims were misappropriated by Archer.  It abjectly failed to do so in its original complaint.  It now cross-references a statement it submitted pursuant to California Code of Civil Procedure § 2019.210, which sets forth fifty-two purported trade secrets of Wisk.  Wisk does not specify which of those secrets fits into which category alleged in the actual complaint, which specific secrets it alleges Archer misappropriated, or how any of those secrets fit (or do not fit) within the allegations of the FAC.  Courts in this district have correctly recognized that a 2019.210 statement is no substitute for adequate *allegations*—in a signed pleading subject to Rule 11—of trade secret misappropriation. Wisk's 2019.210 statement does nothing to cure its failure to allege the purportedly misappropriated

trade secrets with sufficient particularity to permit Archer and the Court to understand the scope of the case.  For that reason alone, Wisk's misappropriation claims should be dismissed.

Worse still, Archer did not even *try* to fix its defective allegations of misappropriation. Rather than allege facts showing that Archer misappropriated its trade secrets, Wisk engages in misdirection to create the impression of evidence of misconduct where there is none.  In one egregious sleight of hand, for example, Wisk points to the alleged "striking similarity" between a drawing in a patent application Wisk submitted in January 2020 and Archer's design in an effort to give the Court (and the public) the impression that Archer stole Wisk's design.  But Wisk never claims that the design in its patent application is a trade secret, that the design was stolen by any of its former employees, or even that Archer ever received a copy or was otherwise aware of the design. This allegation, like the others, does not get Wisk anywhere close to pleading a plausible case of misappropriation.

Wisk's allegations simply do not establish either the existence of trade secrets or misappropriation of those secrets by Archer.  Its misappropriation claims should be dismissed.

## II.     STATEMENT OF FACTS

### A.     Wisk's Allegations As To The Trade Secrets At Issue

Wisk alleges that it is the owner of some unspecified number of trade secrets related to the design and manufacture of eVOTL vehicles, that is, electric powered aircrafts that are capable of vertical flight.  *See* FAC ¶¶ 71–79.  Wisk does not allege that it currently manufactures any eVOTL vehicles for commercial use in the United States, and does not state when it intends to do so.

In defining the trade secrets it claims are at issue in this case, Wisk offers "five general categories of trade secrets: aircraft designs, component designs, system designs, manufacturing, and test data."  FAC ¶ 71.  Although Wisk purports to provide additional information regarding these categories in the paragraphs that follow, the descriptions it offers deliver no clarity.  By way of example, Wisk alleges that its trade secrets include "explicit instructions regarding how to manufacture and assemble certain components for use in the aircraft," *id.* ¶ 73, "confidential designs of the various systems within the aircraft," *id.* ¶ 74, and "details of Wisk's manufacturing facilities, tooling and processes for aircraft structures, electronic systems, and components," *id.* ¶ 75.  Wisk

further alleges that these various categories could "include" things such as "printed circuit board ('PCB') schematics," *id.* ¶ 73, and "facility floorplans and layouts," *id.* ¶ 75, but does not define these exemplars with any specificity and does not state whether these examples are exclusive.

In its amended complaint, Wisk has added only a single sentence at the outset of this section, cross-referencing a document filed in support of its motion for a preliminary injunction:  "The stolen Wisk trade secrets are described in <u>Exhibit E</u> hereto, which Wisk previously submitted at Docket Nos. 16-8 and 17-11."  FAC ¶ 71.  The document to which Wisk is referring is a statement it submitted pursuant to Section 2019.210 of the California Code of Civil Procedure, which requires a plaintiff in a trade secret case to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies."  Cal. Code Civ. P. § 2019.210.  Courts, including this one, have "routinely applied" this disclosure requirement in federal court.  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-253, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018).

The 2019.210 statement—submitted entirely under seal and therefore not viewable by Archer's in-house corporate team—sets forth fifty-two alleged trade secrets across a wide variety of categories.  Neither in the 2019.210 statement nor in the FAC, however, does Wisk explain how the trade secrets in the 2019.210 statement relate to (or do not relate to) the categories of trade secrets alleged in the FAC.  Nor does the 2019.210 statement contain any detail about which particular trade secrets Archer is alleged to have misappropriated.

## B.    Wisk's Allegations Of Misappropriation

Archer is a growing force in the eVOTL vehicle industry.  The company was founded in 2018 by two alumni of the University of Florida.  FAC ¶¶ 53–54.  Wisk alleges that because Archer's founders did not have personal experience in the development of eVTOL vehicles, they instead "raided the workforces of more experienced companies."  *Id.* ¶ 53.  Archer hired ten of Wisk's engineers in early January 2020, and now employs at least 20 former Wisk employees.  *Id.* ¶ 59.

Following the departure of several of its employees to Archer, Wisk retained a third-party consultant to analyze the devices of these employees.  FAC ¶ 61.  Although Wisk alludes to

purportedly suspicious downloads on two other employees' devices, the focus of its claims is "Engineer Z" (now known to be an engineer named Jing Xue), who purportedly downloaded approximately 5,000 files from Wisk's document repository shortly before his departure to join Archer.  *Id.* ¶¶ 64–66.  Wisk also alleges that Mr. Xue inserted two USB storage devices into a Wisk-issued laptop and copied files to those devices.  *Id.* ¶ 64.  Upon being contacted by Wisk, Mr. Xue advised that the downloads were "part of his normal work" and that any USB devices he used while at Wisk had been reformatted.  *Id.* ¶¶ 68–69.  Wisk alleges "on information and belief" that Mr. Xue "improperly retained these files after his employment with Wisk concluded, and Archer knew, or at a minimum had reason to know, that Engineer Z had improperly retained these files from his employment at Wisk."  *Id.* ¶ 70.

Wisk alleges that in May 2020, Archer released a rendering of an aircraft that shares some features of an aircraft design in a confidential, provisional patent application that Wisk submitted to the U.S. Patent and Trademark Office in January 2020.  FAC ¶ 81.  In February 2021, Archer released another conceptual design of its planned aircraft in an investor presentation.  *Id.* ¶ 82.  Wisk does not allege that the design from its patent application was among the files it suspects Mr. Xue or any other Wisk employees of stealing, nor even that the aircraft design itself is a trade secret.  Nonetheless, Wisk claims the purported similarity between the two designs is evidence of misappropriation of trade secrets.  *Id.* ¶ 82.

As further "evidence" of misappropriation, Wisk points to Archer's aspiration to obtain FAA certification of its eVOTL aircraft by 2024, a timeline that, Wisk alleges, is not reasonable on the assumption that Archer "is not relying on off-the-shelf components for [certain] key technologies but instead purportedly developing them in-house."  FAC ¶ 87.  Wisk also contends that Archer's co-founders have made public statements that, in Wisk's telling, amount to an admission of misappropriation.  *Id.* ¶¶ 88–92.

Following Archer's February 2021 presentation—in which Archer also disclosed that it had a contract with United Airlines, Inc. in excess of $1 billion, FAC ¶ 118—Wisk filed this lawsuit on April 6, 2021, Dkt. 1.  It filed a motion for preliminary injunction on May 19, 2021, which remains pending.  Dkt. 16.

C. **Wisk's Amendment**

Archer moved to dismiss Wisk's initial complaint on June 1, 2021.  Dkt. 29.  In the motion, Archer raised the same deficiencies it raises in this motion—namely, that Wisk failed to allege any trade secrets with sufficient particularity or that Archer misappropriated any trade secrets.  *See id.* Shortly before the midnight deadline on June 15, 2021 to file its response, Wisk filed its FAC pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  Dkt. 45.  Yet despite having Archer's motion in hand for two weeks, Wisk made just *one* change to its complaint:  It added a single sentence referring to the 2019.210 statement it filed in connection with its motion for a preliminary injunction.  *Id.* ¶ 71.  Wisk made no other changes in response to Archer's arguments regarding Wisk's failure to define its trade secrets, and made no changes *whatsoever* in response to Archer's arguments regarding the failure to plead misappropriation.

## III.   ARGUMENT

A plaintiff bringing a misappropriation claim under the federal Defend Trade Secrets Act and California Uniform Trade Secrets Act must plausibly allege, among other things, (1) the existence of a trade secret, (2) knowing "misappropriation" of that trade secret, and (3) damages.  18 U.S.C. §§ 1839(3), (5), 1836(b)(3)(B); Cal. Civ. Code §§ 3426.1(b), 3426.3; *Teradata Corp. v. SAP SE*, No. 18-CV-3670-WHO, 2018 WL 6528009, at *3 (N.D. Cal. Dec. 12, 2018).  Wisk has failed entirely to allege—with any specificity or particularity—either the existence of a trade secret or the knowing misappropriation of a trade secret.  Wisk's half-hearted amendment fails to cure either of those fatal defects.  The trade secret misappropriation claims should be dismissed with prejudice.

A. **Wisk Fails To Plead A Trade Secret With Sufficient Particularity**

1. **The Allegations In The FAC Fail To Plead A Trade Secret**

The threshold requirement for a plaintiff bringing a claim for misappropriation of trade secrets is that the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-6930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation and quotation marks omitted).  This requirement is not pro forma:  particularized pleading is

1    necessary so that both the defendant and the Court can understand exactly what trade secrets are at

2    issue in the case. *See id.*

3         Wisk falls well short of pleading ***any*** trade secret with particularity.   Wisk purports to set

4    forth its trade secrets at paragraphs 71–79 (pp. 20–23) of the FAC, but rather than identify particular

5    trade secrets as required by law, Wisk instead has pled broad categories of information.  These

6    categories cover topics of general application: "aircraft designs, component designs, system designs,

7    manufacturing, and test data." FAC ¶ 71.  And even where Wisk purports to give some definition to

8    its alleged trade secrets, it again resorts to empty generalizations, *e.g.*, "Numerous CoDRs, PDRs, and

9    CDRs as well as other design and issue focused files related to specific aircraft systems (*e.g.*, the low

10   voltage power system, motor control system, etc.) are included in the files in this category." *Id.* ¶ 74.

11   It is impossible to discern from these high-level statements what exactly it ***is*** that Wisk claims Archer

12   has taken from it.  Indeed, taken literally, Wisk's categories of trade secrets cover virtually every

13   aspect of aircraft design and manufacturing.

14        Courts in the Ninth Circuit have held time and again that "allegations of broad categories

15   relating to business or technology are not adequate to support a trade secrets claim." *Hum. Longevity,*

16   *Inc. v. J. Craig Venter Inst., Inc.*, No. 18-CV-1656, 2018 WL 6617633, at *4 (S.D. Cal. Dec. 18,

17   2018); *see also Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 15-CV-1370, 2015 WL 8028294, at *3

18   (N.D. Cal. Dec. 7, 2015) ("generic list of categories of various types of information" was "vague and

19   conclusory" and insufficient).  This kind of "high-level overview of [the] purported trade secrets" do

20   not "satisfy the Rule 8 pleading requirements, as they do not even give the Court or Defendants

21   notice of the boundaries of [the] case." *Space Data Corp. v. X*, No. 16-CV-3260, 2017 WL 5013363,

22   at *2 (N.D. Cal. Feb. 16, 2017).  Wisk's "laundry list of items" does absolutely nothing to

23   "meaningfully define the trade secrets at issue." *Invisible Dot, Inc. v. DeDecker*, No. 18-CV-8168,

24   2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019).

25        Making matters worse here, Wisk's lengthy and non-exhaustive lists of subcategories and

26   files following each general category are peppered with catchall phrases like "and so forth," "etc.,"

27   and "including." *See, e.g.*, FAC ¶¶ 74–75.  Such phrases only further obscure identification of the

28   trade secret because they indefinitely ***expand***, rather than define, the alleged secret. *See Becton,*

*Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-933, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) ("[A] number of the categories are preceded by the phrases 'such files included' and 'such as,' thereby further expanding the scope of the allegations in which the categories are contained."); *Emazing Lights LLC v. De Oca*, No. 15-CV-1561, 2016 WL 3658945, at *2 (C.D. Cal. Jan. 7, 2016) (use of terms like "includes" means any "piece of information could potentially be labeled a trade secret"); *Zoom Imaging Sols., Inc. v. Roe*, No. 19-CV-1544, 2019 WL 5862594, at *5 (E.D. Cal. Nov. 8, 2019) ("[B]ecause the trade secrets are an unknown subset of the indefinite Confidential Information, plaintiff does not sufficiently identify anything.").  Rather than clarifying the trade secrets it is asserting, Wisk's allegations affirmatively obfuscate them.

Moreover, the use of "general categories" and catchall phrases is particularly problematic here because the "categories" encompass information that is irrefutably public and identify nothing that is not.  For example, Wisk alleges that the generic category of "System Designs" includes "low voltage power systems."  FAC ¶ 74.  But Wisk also alleges that it has patents on certain "charging systems" for "'all-electric aircraft'" (*id.* ¶ 110)—which by definition are not secret because they have been published in a patent, *Bladeroom*, 2015 WL 8028294, at *4.  It is axiomatic that the same information cannot be protected as a trade secret and by a patent, but here, the Court and Archer cannot "delineate the boundaries between [Wisk's] trade secrets" and "information that has been made public through patents and patent applications."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019) (citation omitted).

Wisk's only excuse for this pleading strategy is that "[t]he sheer volume of the theft makes it impractical to describe every single stolen Wisk trade secret in th[e] Complaint."  FAC ¶ 71.  Wisk's effort to blame *Archer* for its failure to adequately plead an essential element of its case is not well taken—Wisk bears the burden of its alleging its case and giving Archer and the Court "notice of the boundaries of this case."  *Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-6879, 2020 WL 9553151, at *18 (N.D. Cal. July 13, 2020) (citation and quotation marks omitted).  That rule applies whether one trade secret or one hundred trade secrets are at issue.  Indeed, the scope of Wisk's allegations make the requirement of particularity ***more important*** here, not less so.  Wisk has levied allegations plainly intended to disrupt Archer's business as it is emerging as a competitive force within the

eVOTL industry. In order to defend itself against such sweeping allegations that cover every aspect of Archer's business, it must understand what exactly it is being accused of. Wisk has failed entirely to provide any sufficient explanation of the trade secrets at issue that would permit Archer to meaningfully contest these baseless charges.

### 2. The FAC's Reference To The 2019.210 Statement Does Not Save Wisk's Claims

Apparently in an attempt to stave off dismissal of its trade secrets claims for as long as possible (all while Archer continues to suffer reputational and pecuniary harm from Wisk's baseless allegations), Wisk submitted its FAC on the same day its response to Archer's motion to dismiss was due, yet made only *one* substantive change. In discussing the trade secrets at issue, Wisk now states: "The stolen Wisk trade secrets are described in <u>Exhibit E</u> hereto, which Wisk previously submitted at Docket Nos. 16-8 and 17-11." FAC ¶ 71. This offhand allusion to the statement filed by Wisk pursuant to California Civil Code of Procedure § 2019.210 is patently insufficient.

In order for a plaintiff to maintain a claim for misappropriation of trade secrets, it must have at least enough confidence in and understanding of its claims to assert them in a signed pleading. Not only does this requirement hold the plaintiff to the requirements of Rule 11, it also helps to ensure that the relevant allegations are made known to the defendant in a public filing, and not in a statement filed under seal (as is the case here). A section 2019.210 statement simply is not a substitute for particularized allegations of the trade secrets alleged to have been misappropriated.

Courts in this district have thus recognized that even if a plaintiff "identifies the trade secrets in the trade secret disclosure filed in satisfaction of Cal. Code. Civ. P. § 2019.210," that "does not change the Court's analysis" if "the *complaint* still fails to describe with sufficient particularity the trade secrets that were disclosed." *Palantir Techs.*, No. 19-CV-6879, 2020 WL 9553151, at *18 (emphasis added); *see also Space Data Corp.*, 2017 WL 5013363, at *2 ("[The plaintiff's] compliance with Cal. Code Civ. P. § 2019.210 does not change the Court's assessment."). Wisk was well aware of this case law when it filed its FAC—Archer cited it in its first motion to dismiss. *See* Dkt. 29 at 7 n.1. Yet Wisk nonetheless seems to assume that the addition of a single sentence into its Complaint can remedy the defective pleading. That assumption is wrong and contrary to precedent.

To the extent closer scrutiny of Wisk's 2019.210 statement is even warranted, the statement is grossly deficient on its face.  This Court, as others, requires trade secret plaintiffs to file a 2019.210 statement that sets forth: (1) "a summary of the specific trade secret," (2) "the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public," (3) "a description of how each secret has been the subject of reasonable efforts to maintain its secrecy," and (4) "each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent." *Openwave Messaging*, 2018 WL 2117424, at *4.  Wisk's 2019.210 statement fails the second, third, and fourth of these requirements.[1]

First, Wisk's statement does not include ***any*** description whatsoever of how each secret "has derived independent, actual or potential economic value by virtue of not being generally known to the public." *Openwave Messaging*, 2018 WL 2117424, at *4.  Wisk does not even pay lip-service to this essential ingredient of a trade secret, yet it comprises a fundamental element of what it means for information to be a trade secret.  This glaring omission is reason enough to discard Wisk's 2019.210 statement.

Second, Wisk's statement is likewise ***entirely*** silent on whether "each secret has been the subject of reasonable efforts to maintain its secrecy." *Openwave Messaging*, 2018 WL 2117424, at *4.  Again, a company's efforts to maintain the secrecy of its information is a definitional component of what constitutes a trade secret.  18 U.S.C. § 1839(6); Cal. Civ. Code § 3426.1(d).  And again, Wisk says nothing about this element.

Finally, Wisk's statement is deficient in the same way the FAC (and the Complaint before it) is—it lacks sufficient specificity to enable either Archer or the Court to identify the alleged secrets and differentiate them from matters generally known to the industry.  *Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 835 (2005) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)).  Wisk's 2019.210 statement defines its trade secrets by general

---

[1]  The deficiencies in Wisk's 2019.210 statement—as well as the supporting expert declarations—are discussed in full in Archer's motion to strike.  Archer refers the Court to that motion to the extent there is any need to assess the sufficiency of any individual trade secrets in the 2019.210 statement.

categories so broad that they cover virtually any documents or information an airplane manufacturing company would have in its possession. *See Loop AI Labs Inc. v. Gatti*, No. 15-CV-798, 2017 WL 934599, at *7 (N.D. Cal. Mar. 9, 2017) ("Plaintiff's technique of listing general concepts or categories of information is plainly insufficient . . . ."), *aff'd*, 742 F. App'x 286 (9th Cir. 2018).  The 2019.210 statement also identifies numerous documents as non-exhaustive examples of its trade secrets, but does not specify *what* in those documents is alleged to be secret.  That is not sufficient. *M/A-COM Tech. Solutions, Inc. v. Litrinium, Inc.*, No. 19-CV-220, 2019 WL 8108729, at *4 (C.D. Cal. Sept. 3, 2019) ("[I]dentifying large numbers of documents without any reference to specific pages does not provide an adequate substitute for detail information of the trade secrets . . . .").  And finally, the 2019.210 statement uses catchall phrases, like "including," to give the trade secrets an essentially limitless reach.  Again, such qualifiers obscure, rather than clarify, the trade secrets at issue. *See Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. 20-CV-4808, 2021 WL 965349, at *1 (N.D. Cal. Mar. 13, 2021) (purpose of the 2019.210 statement is "to prevent plaintiff from indulging in shifting sands").

At bottom, while Wisk's 2019.210 statement is more detailed than the FAC, the information it provides does not actually clarify any of the issues that Wisk is required to plead.  Wisk does not tie the 2019.210 statement to any of the allegations in the FAC, it does not explain which trade secrets in the statement relate to which categories asserted in the FAC, it does not explain what *specific* trade secrets Archer is alleged to have misappropriated, and it does not explain how those trade secrets relate to Archer's aircraft design.  Wisk's eleventh-hour amendment is nothing more than an effort to delay dismissal of its claims and inflict maximum reputational and pecuniary harm on Archer.

**B.      Wisk Fails To Plead Any Improper Use Of A Wisk Trade Secret By Archer**

In addition to its failure to adequately plead a single trade secret, Wisk fails to meet its burden to plead facts establishing misappropriation by *the only named defendant, Archer*. "Misappropriation is defined under both federal and state law as improper acquisition of a trade secret or disclosure of a trade secret or use of a trade secret." *CleanFish, LLC v. Sims*, No. 19-CV-3663, 2020 WL 4732192, at *6 (N.D. Cal. Aug. 14, 2020) (quotation marks omitted); 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b).  "As with the other elements of misappropriation, Plaintiff

1  may not rely on conclusory, formulaic allegation[s] to establish the element of misappropriation."

2  *CleanFish*, 2020 WL 4732192, at *6 (quotation marks omitted).

3  Here, Wisk carries a special burden because it is alleging indirect misappropriation, *i.e.*, that

4  Archer acquired trade secrets through others.  Wisk must allege facts to show that Archer "knew or

5  had reason to know before the use or disclosure that the information was a trade secret and knew or

6  had reason to know that the disclosing party had acquired it through improper means or was

7  breaching a duty of confidentiality by disclosing it."  *CleanFish*, 2020 WL 4732192, at *6 (citation

8  and quotation marks omitted).  Critically, Wisk must allege facts that are not merely consistent with

9  Wisk's theory, but that affirmatively ***exclude*** an innocent explanation.  *Eclectic Props. E., LLC v.*

10  *Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("plaintiffs cannot offer allegations that

11  are merely consistent with their favored explanation but are also consistent" with an innocuous

12  explanation (citation and quotation marks omitted)); *Veronica Foods Co. v. Ecklin*, No. 16-CV-7223,

13  2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (holding that "mere fact" that competitor began

14  selling products to stores previously supplied by plaintiff "is to be expected from a new [competitor]

15  entering the market" and was insufficient to exclude "an innocent explanation" (citation omitted)); *In*

16  *re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *CleanFish*, 2020 WL

17  4732192, at *7.

18  Wisk fails to allege ***any*** facts indicating or suggesting that Archer ever knowingly used a

19  Wisk trade secret, because it has none.  In lieu of such allegations, Wisk resorts to sleight of hand,

20  impugning one of its own former employees without ever connecting that employee's alleged

21  misconduct to Archer.  And in a classic bait-and-switch, Wisk emphasizes the "striking resemblance"

22  between Archer's aircraft and a design in Wisk's patent application, FAC ¶¶ 6, 83, but never links

23  that design to its trade secrets, or ***even alleges that the design in the patent is a trade secret or that***

24  ***anyone at Archer was ever aware of Wisk's undisclosed design***.  Wisk's theory of misappropriation

25  collapses on itself.

26

27

28

1. **Wisk Fails To Allege Any Of Its Employees Transferred A Secret To Archer, Let Alone That Archer Knowingly Used Those Secrets**

Wisk *never* alleges (because it cannot consistent with Rule 11) that Archer used any of Wisk's alleged secrets. Even after amending its complaint in response to Archer's motion to dismiss, Wisk *still* has not raised an actual allegation of acquisition or use by Archer. Instead, Wisk points to other facts that cannot serve as a substitute for pleading misappropriation by Archer.

Wisk begins by repeatedly implying that there is some negative inference to be drawn from Archer's hiring roughly ten of Wisk's engineers in January of 2020, around the time that Wisk filed its confidential patent application. FAC ¶¶ 4, 59. Wisk goes so far as to allege that the similarity between Archer's design on the drawing in the patent application "could not have been a coincidence" because "Archer recruited and hired ten of Wisk's engineers. *Id.* ¶ 6.

Wisk, however, never alleges that any of its former employees were aware of the design in the patent application, knew it was a secret, or, most importantly, shared the design or any other trade secret with Archer. Wisk implies that Archer's hiring of Mr. Thomas Muniz, Wisk's former Vice President of Engineering, somehow led to the similarity between Archer's design and Wisk's patent application, but never alleges that Mr. Muniz transmitted a single trade secret to Archer, much less the design in the patent application. FAC ¶¶ 57–58. As Wisk is well aware, hiring employees from a competitor does not give rise to *any* inference of misappropriation or wrongdoing, because California courts do not assume that employees will misuse trade secrets when they choose to join a new employer. *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 332–33 (2020) ("For that reason, evidence that Apple hired engineers with knowledge of Hooked's trade secrets and that the engineers inevitably would have relied on that knowledge in their work for Apple does not support a claim for improper acquisition of a trade secret."), *review granted and cause transferred*, 472 P.3d 1064 (Cal. 2020). Indeed, the FAC admits that Wisk "also depends on a fluid and elastic market for talent and strongly believes in the ability of employees to have the freedom to choose where they work." FAC ¶ 60.

Because hiring alone is insufficient to establish misappropriation, Wisk repeatedly relies on "suspicious forensic evidence," FAC ¶ 7, alleging a "raid" on its trade secret information, *id.* ¶¶ 60–

61.  But Wisk never connects (because it cannot) any of the pre-hiring activity of these individuals (who are not named as defendants) to any acquisition of a specific trade secret by Archer.  Wisk points to one unidentified employee who allegedly wiped unidentified "forensic evidence from his computer hard drives," and another unidentified employee who downloaded "slide presentations," without ever alleging that either employee downloaded a Wisk trade secret, let alone shared it with Archer.  *Id.* ¶¶ 61–62.  In the absence of any facts connecting Archer to these purported downloads, Wisk focuses its efforts on the alleged downloads by "Engineer Z," now identified as Mr. Xue.  *Id.* ¶¶ 63–69.  Critically, however, Wisk fails to allege that Mr. Xue transferred any information to Archer.  At the end of its allegations against Mr. Xue, Wisk simply alleges in conclusory fashion that Mr. Xue "improperly retained these files after his employment with Wisk," and therefore "Archer knew, ***or at a minimum had reason to know***, that [Mr. Xue] had improperly retained these files from his employment at Wisk."  *Id.* ¶ 70 (emphasis added).  Then, even more remarkably, Wisk asks the Court to accept that while Wisk cannot plead any facts showing misuse by Archer now, discovery will show that "Archer improperly relied on the information contained in these files . . . ."  *Id.* ¶ 70.

These conclusory recitations of the elements are insufficient under Rule 8.  A "naked assertion[]" that defendant "had reason to know" is insufficient to plead a trade secret claim that has knowledge as one of its elements.  *Veronica Foods*, 2017 WL 2806706, at *12, *14 (citations and quotation marks omitted); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (granting motion to dismiss where plaintiffs alleged in conclusory fashion that defendants "'had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use'").  The FAC, at best, pleads misconduct by Mr. Xue, not Archer, and it was incumbent on Wisk in suing Archer to plead ***some*** facts that support a connection between misappropriation of a specific trade secret by a former employee on the one hand, and knowing acquisition of that secret by Archer on the other hand.  Wisk's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

2. **Wisk's Allegations Of Similarity Do Not Give Rise To An Inference Of Trade Secret Misappropriation**

With no actual evidence tying Archer to any of its trade secrets, Wisk improperly relies on similarity as a proxy for trade secret misappropriation. Specifically, instead of alleging facts showing that Archer knowingly used any Wisk trade secret, Wisk alleges that the "same overall aircraft configuration" from Archer's investor presentation is "disclosed in Wisk's January 2020 patent application," that the similarity "indicates use of more detailed design features," and that the "technology and design, disclosed in Wisk's January 2020 patent application, is based upon information" that is "contained in the files" downloaded by Mr. Xue. FAC ¶¶ 83–84. There are three glaring problems with Wisk's reliance on similarity as a substitute for Archer's knowing use of any Wisk trade secret:

**First**, Wisk **never** alleges that the drawing in its patent application is actually Wisk's trade secret.[2] To the contrary, Wisk disclosed the drawing of the design—the only thing Wisk actually identifies as similar to Archer's aircraft—in its unsealed court filing. *CleanFish*, 2020 WL 4732192, at \*5 ("Plaintiff even includes a direct excerpt of this supposedly secret information within its publicly filed SAC, a decision which at a minimum is in tension with Plaintiff's contention that such information qualifies as a trade secret."). Wisk's incantation that its application is unpublished and confidential accomplishes nothing. That, without the identification of a specific trade secret, is entirely irrelevant to the disposition of this motion.[3]

**Second**, even if the drawing in the patent application were pled as a trade secret, Wisk never alleges that the design was stolen or used by anyone, let alone Archer. Wisk does not even allege that

---

[2] There is nothing secret about using 12 rotors on a fixed wing, nor does Wisk claim otherwise. Since 2018, Wisk has publicly displayed exactly that on its own website. *See* Dkt. 31-1 (https://wisk.aero/news/blog/partneringwithairnewzealand/ (dated Oct. 15, 2018)). As explained in the previously filed request for judicial notice, Dkt. 30, the Court may consider the existence of this information because it is "information available on [a] publicly available website[]," *Rock the Vote v. Trump*, No. 20-CV-6021-WHO, 2020 WL 6342927, at \*3 n.2 (N.D. Cal. Oct. 29, 2020) (citing *Unsworth v. Musk*, No. 19-MC-80224-JSC, 2019 WL 5550060, at \*4 (N.D. Cal. Oct. 28, 2019)).

[3] Saying that the patent application was "confidential" does not mean the information submitted therein is secret. The regulations specifically contemplate that an application must include prior art from published patents—*i.e.*, public information. *See* Manual of Patent Examining Proc. § 608.01(c) (June 2020) (citing 37 C.F.R. § 1.97 and 37 C.F.R. § 1.98).

Gibson, Dunn &
Crutcher LLP

any of its former employees who joined Archer knew about the design in the patent, which was filed in January 2020, or that the design was among the allegedly downloaded files.  Indeed, Wisk pleads that Mr. Muniz, a former Wisk employee, joined Archer **before** the patent application was allegedly filed.  FAC ¶¶ 56, 81.  Wisk never alleges that Mr. Muniz was involved in, or aware of, the design in the patent application.

*Third*, Wisk never explains the basis for its assumption, which pervades the entirety of its FAC, that the "striking similarity" between nonconfidential features of Wisk's patent application drawing and a photograph of the body of an Archer aircraft reflects that Archer had access to Wisk trade secret information.  FAC ¶ 83.  Indeed, Wisk is silent on the differences between its patent drawing and Archer's overall design, including a different wing design, a different tail design, and different landing gear.  *See id.* ¶ 82 (showing wing tips with opposite orientations, different tail design—"Y" vs. "V", and completely different landing gear).  And, while it may be reasonable to assume that Archer's rendering of its external aircraft design "indicates [Archer's] use of more detailed design features, including features related to aircraft propulsion, power management, avionics, flight control, and manufacturing methodology" (*id.* ¶ 83), there is absolutely no basis upon which to assume, as Wisk apparently does, that any of those more detailed features in Archer's aircraft were the result of ***Archer's*** access to ***a Wisk trade secret***.

In sum, Wisk's misappropriation case boils down to its reliance on a comparison of Wisk's non-trade-secret drawing with a single image of Archer's design.  Far from being sufficient to draw inferences of misappropriation and use here, Wisk's failure to identify how even a single one of its alleged trade secrets was used by Archer is fatal to its claims.

### 3.    Wisk's Accusation Of "Inexplicably" Quick Development Is Equally Insufficient

Wisk's next misappropriation theory takes its speculation a step further.  Wisk alleges that, in contrast to others in the industry, "Archer claims to have completed multiple stages of the development and commercialization process in less than two years," FAC ¶ 45, suggesting that Archer could never have done so without using Wisk's (unidentified) trade secrets.  That again is just unadorned speculation premised on an erroneous assumption.

To begin with, Wisk has simply stacked flawed logic on top of more flawed logic. Archer's timing is only suspicious if one assumes—improperly—that the similarity between Archer's design and Wisk's patent drawing is evidence of trade secret misappropriation. Given that Wisk has never tied the alleged similarity to any misuse of Wisk trade secrets, the amount of time Archer took to come up with the design is not evidence of trade secret misappropriation.

Furthermore, even if Wisk had pointed to a similarity between Archer's design and a Wisk trade secret, the mere fact that Wisk professes to be incapable of otherwise explaining Archer's success does not amount to competent evidence of trade secret misappropriation. *See Integral Dev. Corp. v. Tolat*, No. 12-CV-6575 JSW, 2015 WL 674425, at \*5 (N.D. Cal. Feb. 12, 2015) ("This Court does not find persuasive Integral's conclusion that Tolat must have shared its trade secret information with EBS because the company was able to get a competitive product to market more quickly than Integral."). Archer was free to take advantage of publicly available information, as well as to partner with third-party consultants and parts suppliers—nothing mandated that Archer try to replicate the development pathway selected by Wisk or any other competitor. *See Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008) (dismissing DTSA claim where "there is no allegation that [defendant] either disclosed or used the secrets in developing [its product], only that [defendant] 'seemed to' develop its product 'surprisingly quick[ly]' in [plaintiff's] opinion, which is of no import" (footnote omitted)). And by Wisk's own admission, FAC ¶¶ 53, 59, Archer relied on the prior experience of its talented force of engineers. There is no plausible or even rational inference of misappropriation to be drawn from Archer's projected timeline.

### 4. Wisk's Allegations Based On Statements By Archer's Founders Are Baseless

Wisk's last attempt to plead a misappropriation theory rests on a misrepresentation of undisputed evidence. Wisk points to the fact that Archer's founders have publicly acknowledged that Archer hired engineers from Wisk and that Wisk has invested time and money in aircraft development over the last ten years. FAC ¶¶ 88–92. Based on these facts, Wisk suggests that Archer "has not actually been engaged in the kind of research and development in which Archer's competitors invested significant time and resources." *Id.* ¶ 92. The Court will search the interviews

referenced in vain for any statement that suggests any impropriety, let alone trade secret misappropriation,[4] and there is, to state the obvious, nothing wrong with hiring talented employees from a competitor or acknowledging that competitor's history of investment and work.  Wisk is twisting Archer's statements past the breaking point in hopes of making a claim where no claim exists.

*   *   *   *   *

Neither accusations against non-parties nor conclusory assertions of what can and cannot be done in two years are sufficient to show Archer's acquisition or use of Wisk's trade secrets, and certainly cannot demonstrate that Archer knowingly "used improper means" to get information or that Archer knew or had reason to know that the information constituted trade secrets of Wisk. Wisk's decision not to add *any* allegations regarding misappropriation in its amended complaint speaks volumes—if Wisk had actual evidence of misappropriation, it would have offered it by now. But it has not, and instead it relies on speculation, unsupported by specific allegations and contrary to common sense.  That is not sufficient to plead a claim for misappropriation of trade secrets.  *See Twombly*, 550 U.S. at 555 (plaintiff must allege facts sufficient to "raise a right to relief above the speculative level").

### IV.    CONCLUSION

Wisk's trade secret allegations fail to plead the requisite elements of a trade secret claim and, accordingly, the first and second causes of action should be dismissed.  Because Wisk has already had an opportunity to amend after reviewing the defects identified by Archer in its initial motion to dismiss, dismissal should be with prejudice.

---

[4]  The full transcripts from the quoted interviews are included in Archer's pending Request for Judicial Notice, Dkts. 30-3, 30-4, 30-5, and may be considered on a motion to dismiss because they are incorporated by reference and also "available on publicly available websites," *Rock the Vote*, 2020 WL 6342927, at *3 n.1.

Gibson, Dunn & Crutcher LLP

1

2

Respectfully submitted,

3    DATED:  June 16, 2021          GIBSON, DUNN & CRUTCHER LLP

4

By:        _/s/ Josh A. Krevitt_

5                                        Josh A. Krevitt

6                                *Attorneys for Defendant Archer Aviation Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28