JOSH KREVITT, SBN 208552
jkrevitt@gibsondunn.com
JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:    650.849.5300
Facsimile:    650.849.5333

ORIN SNYDER, *admitted pro hac vice*
osnyder@gibsondunn.com
DANIEL J. THOMASCH, *admitted pro hac vice*
dthomasch@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

WAYNE BARSKY, SBN 116731
wbarsky@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone:    310.552.8500
Facsimile:    310.551.8741

Attorneys for Defendant
ARCHER AVIATION INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

WISK AERO LLC,

    Plaintiff,

  v.

ARCHER AVIATION INC.,

    Defendant.

Case No. 3:21-cv-02450-WHO

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S SECTION 2019.210 STATEMENT**

[*[Proposed] Order Granting Motion To Strike, Declaration Of Dr. Marilyn J. Smith*]

Action Filed: April 6, 2021

Hearing Date: July 21, 2021
Hearing Time: 2:00 P.M.
Hearing Location: Courtroom 2
Honorable Judge William H. Orrick

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

        **PLEASE TAKE NOTICE THAT** on July 21, 2021, at 2:00 p.m., or as soon thereafter as the

4

matter may be heard before the Honorable William H. Orrick, in Courtroom 2, Seventeenth Floor, of

5

the United States District Court for the Northern District of California in the San Francisco

6

Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Archer Aviation

7

Inc. ("Archer") will, and hereby does, move this Court for an order striking Plaintiff Wisk Aero

8

LLC's ("Wisk") disclosure of its purported trade secrets pursuant to California Code of Civil

9

Procedure § 2019.210 (Dkt. 16-08, the "Statement") on three independent grounds.

10

        First, the Statement does not include a description of how each secret has derived independent

11

economic value by virtue of not being generally known to the public or readily ascertainable.

12

Second, the Statement does not include a description of how each secret has been the subject of

13

reasonable efforts to maintain its secrecy.  Third, the Statement does not include a clear description of

14

the elements of each secret with sufficient particularity to determine the contours of the secret or how

15

the secrets differ from general knowledge.

16

        This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

17

of Points and Authorities, the concurrently filed Declaration of Dr. Marilyn J. Smith in support, the

18

other documents on file in this action, and any oral argument of counsel at the hearing on the Motion.

19

20

DATED:  June 16, 2021                          GIBSON, DUNN & CRUTCHER LLP

21

                                       By:   _____*/s/ Josh A. Krevitt*_____

22

                                                          Josh A. Krevitt

23

                                              *Attorneys for Defendant Archer Aviation Inc.*

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

Page

3

I.      INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED ................................... 1

4

II.     ARGUMENT ........................................................................................................................ 2

5

        A.      Wisk's Statement Fails To Describe How Any Of Its Alleged Secrets Derives
                Economic Value By Virtue Of Being Secret And Not Readily Ascertainable. ............ 3

6

7

        B.      Wisk's Statement Fails To Describe How Any Of The Alleged Secrets Are
                The Subject Of Reasonable Efforts To Maintain Secrecy. ........................................... 5

8

        C.      Wisk's Statement Lacks Sufficient Specificity To Enable Archer To Identify
                The Alleged Secrets, Let Alone Differentiate The Secrets From Public
                Information............................................................................................................... 5

9

10

                1.      Each Of Wisk's Trade Secret Descriptions Suffers From Multiple
                        Common Flaws. ............................................................................................. 7

11

                2.      Each Of Wisk's Trade Secret Descriptions Mixes In Additional
                        Defects........................................................................................................ 10

12

13

III.    CONCLUSION ................................................................................................................... 21

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SECTION 2019.210 STATEMENT
CASE NO. 3:21-CV-02450-WHO

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Action Learning Sys., Inc. v. Crowe,*
    2014 WL 12564011 (C.D. Cal. Aug. 11, 2014)...............................................................................3

*Albert's Organics, Inc. v. Holzman,*
    No. 19-CV-07477-PJH, 2020 WL 4368205 (N.D. Cal. July 30, 2020)..............................9

*Cisco Sys., Inc. v. Chung,*
    No. 15-cv-01862-PJH, 2020 WL 7495085 (N.D. Cal. Dec. 21, 2020)..............................2

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek,*
    2018 WL 3062160 (E.D. Cal. June 19, 2018)......................................................10, 14

*Gatan, Inc. v. Nion Co.,*
    No. 15-cv-01862-PJH, 2018 WL 2117379 (N.D. Cal. May 8, 2018)..............................2

*IMAX Corp. v. Cinema Techs., Inc.,*
    152 F.3d 1161 (9th Cir. 1998)................................................................................9, 19

*Jobscience, Inc. v. CVPartners, Inc.,*
    No. C 13–04519 WHA, 2014 WL 1724763 (N.D. Cal. May 1, 2014).............................19

*Jobscience, Inc. v. CVPartners, Inc.,*
    No. C 13–04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014)..............................2

*Lamont v. Krane,*
    No. 5:18-CV-04327-EJD, 2019 WL 2010705 (N.D. Cal. May 7, 2019)..........................2

*Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc.,*
    No. 15-CV-01267-SC, 2015 WL 4149066 (N.D. Cal. July 9, 2015).............................21

*Loop AI Labs Inc. v. Gatti,*
    No. 15-CV-00798-HSG, 2017 WL 934599 (N.D. Cal. Mar. 9, 2017) ..............7, 9, 10, 19

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.,*
    2019 WL 8108729 (C.D. Cal. Sept. 3, 2019)....................2, 7, 8, 9, 11, 14, 16, 17, 18, 20

*Myrio Corp. v. Minerva Network Inc.,*
    No. C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 10, 2001) ..............8

*Olaplex, Inc. v. L'Oreal USA, Inc.,*
    No. 2020-1382, 2021 WL 1811722 (Fed. Cir. May 6, 2021) ...........................................4

*Openwave Messaging, Inc. v. Open-Xchange, Inc.,*
    No. 16-CV-00253-WHO, 2018 WL 2117424 (N.D. Cal. May 8, 2018) ...................2, 3, 4, 5, 6, 21

iii

Gibson, Dunn &
Crutcher LLP

1
2

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

3
4

*Perlan Therapeutics, Inc. v. Super. Ct.*,
  178 Cal. App. 4th 1333 (2009)..................................................................................7, 15

5

*Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*,
  No. C 20-04808 WHA, 2021 WL 965349 (N.D. Cal. Mar. 13, 2021) ....................................2, 7, 9

6
7

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  923 F.Supp. 1231 (N.D. Cal. 1995) ...........................................................................3

8
9

*Social Apps, LLC v. Zynga, Inc.*,
  No. 4:11-CV-04910 YGR, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ........................8, 10, 12

10

*Space Data Corp. v. Alphabet Inc.*,
  No. 16-cv-03260-BLF (NC), 2018 WL 10647160 (N.D. Cal. May 8, 2018)..........................11, 18

11
12

*Sunbelt Rentals, Inc. v. Victor*,
  No. C 13-4240 SBA, 2014 WL 492364 (N.D. Cal. Feb. 5, 2014)...................................4

13
14

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA, 2017 WL 5000352 (N.D. Cal. Nov. 2, 2017) ...........................3

15

**STATUTES**

16

18 U.S.C. § 1839(3)(A).............................................................................................5

17

Cal. Civ. Code § 3426.1(d)(1)...................................................................................5

18

Cal. Civ. Code § 3426.1(d)(2)...................................................................................5

19

Cal. Civ. Proc. Code § 2019.210.........................................................................2, 10

20

**OTHER AUTHORITIES**

21

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for A Ubiquitous Dispute*, NW. J. TECH. & INTELL. PROP. 68 (2006)................................8

22

**RULES**

23

Fed. R. Civ. P. 65(d)(1)...........................................................................................3

24

25
26
27
28

### I.      INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED

Wisk's 2019.210 Statement (Dkt. 16-08, the "Statement") is plainly defective, lacking even the basic information required to determine whether Wisk actually has any trade secrets at all and, if so, what the precise contours are for each.  Incredibly, despite seeking extraordinary relief, Wisk has failed even to provide the information explicitly required by this Court for an adequate statement.  Wisk's Statement should be stricken for three reasons:

*First*, Wisk's 2019.210 Statement does not address—not once—whether any one of its alleged trade secrets derives economic value by virtue of being secret and not readily ascertainable.  The Statement literally says not a word (not even insufficient boilerplate) about whether—much less how—any one of the alleged trade secrets derives any economic value from being secret and not readily ascertainable.

*Second*, Wisk's Statement says nothing at all—again, not a single word—about whether any means were employed to protect any one of its trade secrets, never mind the required description of how *each* secret has been the subject of efforts to maintain its secrecy.

*Third*, Wisk never identifies any of its claimed trade secrets with specific elements for each, as claims would appear at the end of a patent, and as this Court has explicitly required.  Instead, Wisk provides general categories of information that include subcategories, which in turn include examples of years-old documents that do not identify the boundaries of any specific secret, and, at each level, Archer is confronted with catchall phrases, such as "includes," that further obfuscate the alleged secrets.  As Dr. Marilyn Smith, a professor at the Daniel Guggenheim School of Aerospace Engineering at the Georgia Institute of Technology, explains in her detailed declaration, this means she cannot determine from either the Statement or the declarations of Wisk's technical experts, Drs. Farhan Gandhi and Randolph Collins, what are Wisk's secrets and what is known by those in the field.

Any one of the foregoing problems independently dooms Wisk's 2019.210 Statement.  The aggregation shows that Wisk's Statement—which forms the basis for Wisk's entire Motion for Preliminary Injunction—is defective from beginning to end.  The Court should strike the Statement.

## II.    ARGUMENT

Wisk must identify its alleged trade secrets with "reasonable particularity."  Cal. Civ. Proc. Code § 2019.210; *Lamont v. Krane*, No. 5:18-CV-04327-EJD, 2019 WL 2010705, at *2 (N.D. Cal. May 7, 2019).  In a technical case like this one, Wisk is required to distinguish "the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'"  *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 8108729, at *3 (C.D. Cal. Sept. 3, 2019) (citation omitted).  Wisk must describe "the actual secret sauce."  *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808 WHA, 2021 WL 965349, at *3 (N.D. Cal. Mar. 13, 2021).

This Court, as well as others in this district, accordingly require trade secret plaintiffs to set out the following:

> (1) a summary of the specific trade secret;
>
> (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public;
>
> (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally
>
> (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent.

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-00253-WHO, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018) (quoting *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13–04519 WHA, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014)); *see also Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 WL 2117379, at *4 (N.D. Cal. May 8, 2018).

The consequences of failing to comply with Section 2019.210 are well-established.  The statement is stricken in whole or in part.  *Cisco Sys., Inc. v. Chung*, No. 15-cv-01862-PJH, 2020 WL 7495085, at *4 (N.D. Cal. Dec. 21, 2020), *reconsideration denied*, 2021 WL 981048 (N.D. Cal. Mar. 16, 2021) (granting a motion to strike portions of a 2019.210 statement that did not meet the standard of a trade secret); *see also Quintara Biosciences*, 2021 WL 965349, at *2 (granting a motion to strike portions of a deficient 2019.210 statement where plaintiff "in all but a few instances, merely

Gibson, Dunn &
Crutcher LLP

described *categories* of information that might be protectable as trade secret without actually disclosing *the trade secrets* themselves" (emphasis in original)); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 5000352, at *7–9 (N.D. Cal. Nov. 2, 2017) (granting overlapping motions to strike and for summary judgment on trade secret misappropriation claim).

And Section 2019.210's requirements apply with particular force when the plaintiffs seeks a preliminary injunction. Wisk cannot "carry its heavy burden under Rule 65 . . . without specifying what, exactly, it is trying to protect." *Action Learning Sys., Inc. v. Crowe*, 2014 WL 12564011, at *4 (C.D. Cal. Aug. 11, 2014); *see also Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1252 (N.D. Cal. 1995) (rejecting preliminary injunction because court was "not satisfied that plaintiffs identified their trade secrets with sufficient definiteness to support injunctive relief"). This follows from the text of Rule 65 itself, which requires any injunction to "state its terms specifically . . . [and] describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A court cannot possibly enjoin use of a trade secret unless that trade secret is precisely and particularly defined. Wisk's Statement does not even remotely approach the required level of specificity.

A.     **Wisk's Statement Fails To Describe How Any Of Its Alleged Secrets Derives Economic Value By Virtue Of Being Secret And Not Readily Ascertainable.**

An essential, definitional requirement for any trade secret is that it derive economic value from being secret and not readily ascertainable. Accordingly, as this Court has explicitly held, a plaintiff must set forth in its 2019.210 statement, "a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public." *Openwave Messaging*, 2018 WL 2117424, at *4.

Wisk's Statement does not include ***any*** description of how any one of its alleged secrets has derived value from being secret and not readily ascertainable. Not once in the entire 74-page Statement does Wisk describe how a single one of its alleged secrets derives independent economic value from not being generally known or readily ascertainable. The words do not even appear in the Statement. Wisk does not even pay insufficient lip-service to this essential requirement. Wisk simply ignores it altogether, saying not a word about this essential element for any one of its alleged

1   secrets.  Thus, Wisk's Statement fails to do what this Court has required, and this failing, on its own,

2   compels the striking of the Statement.

3          This is a fundamental failing because under the federal trade secret statute, Wisk also bears

4   the burden of providing a sufficiently particular description for Archer to determine how the alleged

5   secrets derive economic value from not being readily ascertainable by proper means.  *Olaplex, Inc. v.*

6   *L'Oreal USA, Inc.*, No. 2020-1382, 2021 WL 1811722, at *4 (Fed. Cir. May 6, 2021).  Wisk's lack of

7   particularity makes it impossible to make this determination.  *Id*. at *4, *8 ("In part because of the

8   absence of particularity, we cannot say that the evidence allowed a reasonable finding that

9   information in these groups was even a trade secret, *i.e.*, was not readily ascertainable through proper

10  means by other persons who can obtain economic value from its disclosure or use.").

11         Even were the Court to look outside the Statement (which the Court need not do under its

12  decision in *Openwave Messaging*), the information is lacking.  Wisk's experts, whom Wisk expressly

13  relies upon for the proposition that its secrets are described with sufficient particularity, provide no

14  description at all of the value of any alleged secret.  For Trade Secrets 1–8, Wisk relies solely on

15  Dr. Gandhi.  But he does not even address this issue, generally or specifically, as to each trade secret,

16  as required.  He provides no description of independent economic value as to any trade secret; as is

17  the case with the Statement, the words "economic value" never appear in his report.  There is thus no

18  description in the Statement, Wisk's Motion for Preliminary Injunction (Dkt. 16-00), or the expert

19  declarations of how these secrets derive independent economic value from not being generally

20  known.

21         For the remaining Trade Secrets (9–52), Wisk's expert testimony is equally lacking.  As to

22  this entire group of 43 alleged secrets, Dr. Collins merely states that he "understand[s] how the

23  specific concepts articulated in Trade Secret Nos. 9-52 would provide independent economic value,

24  by for example, improving the safety, efficiency, and/or performance of the eVTOL architecture,

25  and/or reducing the cost, time, and effort needed for its design and development."  Dkt. 16-01 ¶ 27.

26  This statement fails to address how "***each*** secret" is valuable.  *Openwave Messaging*, 2018 WL

27  2117424, at *4 (emphasis added).  It also is entirely conclusory and thus accorded no weight.  *Sunbelt*

28  *Rentals, Inc. v. Victor*, No. C 13-4240 SBA, 2014 WL 492364, at *6 (N.D. Cal. Feb. 5, 2014)

(rejecting as insufficient a conclusory declaration that the company has "invested substantial time, effort and expense" in its customer lists).  Furthermore, Dr. Collins does not explain how any of the trade secrets derive economic value from being secret as opposed to just being useful.  Cal. Civ. Code § 3426.1(d)(1) ("Derives independent economic value, actual or potential, from not being generally known to the public").  Thus, as to this group of secrets as well, there is no description in the Statement, Wisk's Motion, or the expert declarations as to how any of the secrets derives economic value from not being known, and on this basis, the Court should strike Wisk's 2019.210 Statement.

**B.     Wisk's Statement Fails To Describe How Any Of The Alleged Secrets Are The Subject Of Reasonable Efforts To Maintain Secrecy.**

Wisk's statement has a second, glaring omission:  It is completely silent regarding any reasonable efforts to maintain secrecy.  Reasonable efforts to maintain secrecy is an essential element for any trade secret claim, under both state and federal law.  Cal. Civ. Code § 3426.1(d)(2); 18 U.S.C. § 1839(3)(A).  Indeed it is part of the very definition of a "trade secret" under both statutes.  Cal. Civ. Code § 3426.1(d)(2); 18 U.S.C. § 1839(3)(A).  It is therefore fundamental that a 2019.210 statement address this issue.  Accordingly, this Court requires the 2019.210 statement include "a description of how each secret has been the subject of reasonable efforts to maintain its secrecy."  *Openwave Messaging*, 2018 WL 2117424, at *4.  Yet Wisk's Statement does not include a single word about its efforts to maintain secrecy.  On this basis alone, the Court should strike the Statement.  *See id.*[1]

**C.     Wisk's Statement Lacks Sufficient Specificity To Enable Archer To Identify The Alleged Secrets, Let Alone Differentiate The Secrets From Public Information.**

Even if Wisk had described the basic definitional requirements of a trade secret—economic value and reasonable efforts—Wisk's Statement suffers from another fatal flaw.  Wisk was required to describe its alleged secrets with sufficient particularity and precision to differentiate the trade secrets "from matters of general knowledge in the trade or of special knowledge of those persons who

---

[1]  In support of its Motion for Preliminary Injunction, Wisk points to a declaration from one of its executives. Dkt. 16 at 13 (citing Dkt. 16-29).  It too does not describe the measures Wisk took to maintain the secrecy of each (or even any) alleged trade secret, and undermines any claim that Wisk took reasonable measures, as Archer will explain in its forthcoming opposition to the Motion.

Gibson, Dunn &
Crutcher LLP

are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies." *Openwave Messaging*, 2018 WL 2117424, at *4.

Wisk's Statement does not just fail to distinguish the alleged secrets from matters of general knowledge, it does the opposite. Throughout, the Statement blurs the boundaries of the alleged secrets, making it impossible to know where the trade secrets even lie, let alone how they can be distinguished from general knowledge. ██████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Simply put, Wisk failed to comply with this Court's explicit requirement to describe *in its Statement* each of its alleged secrets "with a list of the specific elements for each, as claims would appear at the end of a patent." *Id*. It did not do so. Even a cursory review of Wisk's Statement reveals the extent to which Wisk has ignored what this Court has required and the secret-by-secret analysis below confirms that.

And even if the Court looks outside the Statement to Wisk's experts, Dr. Collins and Dr. Gandhi, they too only summarize and then largely parrot the descriptions of the alleged secrets in the 2019.210 secrets. And their opinions are entirely conclusory. Dr. Collins simply states:

> As a person skilled in the field, I understand the specific concepts and subject matter described in Trade Secret Nos. 9-52. I understand these specific concepts to be distinct from that which would have been considered generally known and/or readily ascertainable to others in the field. I am not aware of the information in Trade Secret Nos. 9-52 being generally known or readily ascertainable in the field, nor do I believe that it is.

Dkt. 16-01 ¶ 26.

Dr. Gandhi is even more conclusory: "It is also my opinion that Wisk has adequately identified its trade secret nos. 1, 2, 3, 4, 5, 6, 7, 8, and 15." Dkt. 16-04 ¶ 3(c).

These conclusory statements obviously provide no assistance to Archer or the Court in differentiating between the alleged secrets and public information.  Merely offering expert declarations does not transform Wisk's Statement into a proper 2019.210 Statement.  Indeed, a mere declaration does not mean "that the Court is required to accept Plaintiffs' Supplemental Disclosure as sufficient as a matter of law." *M/A-COM*, 2019 WL 8108729, at *3 (citing *Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1351–52 (2009)).  That is especially true in a technical case like this one where "a more exacting level of particularity" is required in order "to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id.* (citation omitted).

Wisk's Statement utterly fails to accomplish its purpose "to nail down the asserted trade secrets with sufficient particularity to permit [the Court] to discern the reasonable bounds of discovery, to give defendants enough notice to mount a cogent defense, and to prevent plaintiff from indulging in shifting sands." *Quintara Biosciences*, 2021 WL 965349, at *1.

1.     **Each Of Wisk's Trade Secret Descriptions Suffers From Multiple Common Flaws.**

Over and over again, Wisk's Statement falls back on language that courts have repeatedly found improper in a 2019.210 statement.  Indeed, at every level, Wisk's descriptions serve to make it more difficult to figure out what exactly the secrets could possibly be, where each starts and ends, and how to distinguish them from what is known.

*General Categories.*  Nearly every one of Wisk's alleged secrets begins with a general description of a general category of information. ████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████. The problem is that general categories are counterproductive when one is trying to identify a specific trade secret.  These categories are so broad that any airplane company would have documents within the category—what Archer needs to know is what specific information is allegedly secret. *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2017 WL 934599, at *7 (N.D. Cal. Mar. 9, 2017), *aff'd*, 742 F. App'x 286 (9th Cir. 2018) ("Plaintiff's technique of listing general concepts or categories of information is

Gibson, Dunn &
Crutcher LLP

plainly insufficient; Defendants cannot fairly be expected to rebut Plaintiff's trade secrets claim

without a reasonably concrete definition of the purported secrets. . . .  Plaintiff's categorical

descriptions render it impossible for Defendants to conduct public domain or other research to

challenge the alleged secrecy of the information at issue.").

Within each general category, Wisk then identifies subcategories of information that it

believes could be secret, such as ███████████████████████. This does not help Archer

identify the specific secrets either.  "A description of the category, or even of the subcategories of

information within a category, does not comply with the requirement to identify the actual matter that

is claimed to be a trade secret."  *Social Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012

WL 2203063, at *4 (N.D. Cal. June 14, 2012).

***Non-Exhaustive Lists of "Exemplar" Documents.***  For every single trade secret, ██████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████.  The problem is that where, as here, a plaintiff

references a document—let alone many documents, from many different years, spanning many

pages—it should "specify precisely which portions of the document describe the trade secret(s)."

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions

for A Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 84 (2006) (citing *Myrio Corp. v.

Minerva Network Inc.*, No. C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461, at *1–3 (N.D.

Cal. Apr. 10, 2001)).  By failing to point to the precise secrets alleged to lie in the documents, Wisk

is, again, hiding the ball.  *M/A-COM*, 2019 WL 8108729, at *4 ("Additionally, as a general matter,

the Court finds that identifying large numbers of documents without any reference to specific pages

does not provide an adequate substitute for detailed information of the trade secrets, as a review of

the documents may not provide Defendants sufficient information to identify what precisely Plaintiffs

are asserting as a trade secret.").

To give just one example, ███████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 █████████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████████

6 ███. Again, this is improper as it not only clouds the boundaries of the alleged secrets, it leaves Wisk

7 leeway to revise its purported secrets later.

8     ***Catchall Phrases.***  Like general categories and nonspecific references to documents, catchall

9 phrases, like "including," are impermissible.  They create the same problem, as they blur the lines of

10 any alleged secrets.  *Loop AI Labs*, 195 F. Supp. 3d at 1115 ("The Ninth Circuit has rejected the use

11 of 'catchall' language, holding that such language is insufficiently specific 'because it does not

12 clearly refer to tangible trade secret material.'" (quoting *IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d

13 1161, 1167 4–65 (9th Cir. 1998))).  "'[C]atchall' descriptions, 'lists [of] categories of alleged trade

14 secrets in broad terms,' and 'list[s] of concepts that [the plaintiff] asserts constitute its trade secret

15 information' are all insufficient under Section 2019.210."  *M/A-COM*, 2019 WL 4284523, at *2

16 (quoting *Loop AI Labs*, 195 F. Supp. 3d at 1113–14); *see also Albert's Organics, Inc. v. Holzman*,

17 No. 19-CV-07477-PJH, 2020 WL 4368205, at *4 (N.D. Cal. July 30, 2020) ("Further, the use of

18 catchall terms such as 'including' also indicates an overly broad designation.  Such a term does not

19 <u>clearly refer</u> to tangible trade secret material." (emphasis in original)).

20     With respect to every alleged secret, ██████████████████████████████████

21 ███████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 █████████████████████████████████████████████████████

25 ███████████████████████████████.  The consequence is that Archer has no

26 idea where the boundaries of the alleged secrets are.  And by leaving itself room to add other

27 documents with other secrets, Wisk is engaging in exactly what 2019.210 is supposed to avoid,

28 namely shifting sands.  *Quintara Biosciences*, 2021 WL 965349, at *1.

Gibson, Dunn &
Crutcher LLP

9

## 2.     Each Of Wisk's Trade Secret Descriptions Mixes In Additional Defects.[2]

Examining each secret individually further highlights why the Statement fails to meet the requirements of Section 2019.210 and should be stricken.

**Trade Secret #1**:  This alleged trade secret merely describes a general category of information, which makes it *impossible* to identify any specific secret: ███████████████ ████████████████████████████████; *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 3062160, at *5 (E.D. Cal. June 19, 2018)  (citing *Loop AI Labs*, 195 F. Supp. 3d at 1114–15); *see also Social Apps*, 2012 WL 2203063, at *4 ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret.").  This broad category is useless as a guide to identify specific secrets because of course not all information—and maybe even no information—in such a broad category is secret. ████████████████████████████ ███████████████████████████████ █████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████. But Wisk never clearly delineates exactly what ████████ is secret or how it could be used to design or configure an aircraft. ██████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████. But references to documents are not substitutes for coherent descriptions of the alleged secrets.  *Loop AI Labs,* 195 F.

---

[2] Section 2019.210 unequivocally requires a trade secret plaintiff to identify the trade secrets *that were misappropriated* with reasonable particularity.  Cal. Civ. Proc. Code § 2019.210 ("alleging the misappropriation").  Wisk's Statement purports to identify 52 trade secrets, but in its Motion for Preliminary Injunction, Wisk actually only contends that Archer misappropriated 19 of them. Dkt. 16 at 17–21.  Accordingly, Archer (and Dr. Smith) addresses the 19 secrets alleged to have been misappropriated, reserving its rights regarding the rest in the event Wisk attempts to allege misappropriation of any of those.

Gibson, Dunn &
Crutcher LLP

1   Supp. 3d at 1116.  Furthermore, ███████████████████████████████████████

2   ██████████████████████████████████████████████████████████████

3   ████████████████████████████████████████.  *Space Data Corp. v. Alphabet Inc.*, No. 16-

4   cv-03260-BLF (NC), 2018 WL 10647160, at *2 (N.D. Cal. May 8, 2018) ("If, as it seems, Space

5   Data is claiming something more—like information the screenshots reveal about the optimized

6   timing and rate of venting and ballast—Space Data must clearly identify what '[t]he detail[s]' of

7   these optimizations are.").  Indeed, ████████████████████████████████████

8   ██████████████████████████████████████.  *See M/A-COM*, 2019 WL

9   8108729, at *4 ("identifying large numbers of documents without any reference to specific pages" is

10  insufficient).

11      Given Wisk's complete failure to precisely identify a single trade secret in this broad category

12  of information, Dr. Smith is unable to distinguish this secret from what is known by others in the

13  field. ████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████.

16  Furthermore, ██████████████████████████████████████

17  ████████████████████████, and there is nothing in Wisk's description that differentiates

18  between the information provided by █████████ and Wisk's alleged secret.  *Id.*

19      Wisk's expert only further obscures the boundaries of the alleged secret. ████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████.  Again, if Wisk believes this is the secret, it must say so.

27  *Space Data,* 2018 WL 10647160, at *2.

28

1  ███████████████████████████████████████████

2  ████████████████████████.  That aircraft has been flying since 2018, and much is publicly

3  known about it.  *Id.* ¶ 19.  ████████████████████████████████

4  ███████████████████████████████████████

5  ████████████████████████████████.  Dr. Gandhi thus provides no way to

6  differentiate between the alleged trade secret and what is already known outside of Wisk or

7  ascertainable.

8       **Trade Secret #2**:  This alleged secret is another broad ████████████████

9  █████████████████████████████████████

10  ███████████████████████████████████████████

11  ███████████████████████████████████

12  ██████████████████████████████████████

13  ████████████████████████████████████████

14  ███████████████████████████████.

15       This description fails for the same reason as the description of Trade Secret #1.  Namely, the

16  Statement does not explain what specific information within its alleged ████████████████ is

17  secret versus already known.  ████████████████████████████

18  ████████████████████████████████

19  ██████████████████████; *see Social Apps*, 2012 WL 2203063, at *4.

20       **Trade Secret #3**:  Next, Wisk alleges it has secret information on ████████████████

21  █████████████████████████████████████

22  ██████████████████████████████████████

23  ████████████████████████████████████████

24  ███████████████████████████████████

25  ███████████████

26       This description suffers from the same flaws as the first two secrets:  ████████████████

27  ████████████████████████████████████

28  ██████████████████████████████.

Gibson, Dunn &
Crutcher LLP

1   Dr. Gandhi's declaration further obfuscates the alleged secret. ██████████████

2   ███████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   █████████████████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████████

8   █████████████████████████████████████████████████████████████████

9   ███████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████.

12  **Trade Secret #4**:  Wisk's final alleged secret regarding ██████████████████

13  ██████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████.

17      ██████████████████████████████████████████████████████████

18  █████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████████████

22  █████████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

26  ████████████████████.

27  **Trade Secret #9**:  This alleged secret is described as a ████████████████████

28  ████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████. *See E. & J. Gallo Winery*, 2018 WL 3062160, at *5 ("Section 2019.210

4 mandates a more refined description of each individual component and combination of components

5 purported to be a trade secret . . . .").

6 ███████████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ██████████████████████████████████████████████████

9 ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████

11 █████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 █████████████████████████████████████████████

14 █████████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ████████████████████████████████████████████

17 ██████████████████████████████████████████████████

18 █████████████████████████████████████████████.

19       Even if Wisk had not hidden any alleged secret, there is an additional problem with this Trade

20 Secret. █████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ██████████████████████.

23 █████████████████████████████████████████████

24 ███████████████████████████████████████████

25 ███████████████████████████████████████████

26 ███████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 █████████.

Gibson, Dunn & Crutcher LLP

1    **Trade Secret #12**:  This alleged secret is a ██████████████████████████

2    ███████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████████████████

4    ███████████████████████████████████████████████████████████

5    █████████████████████████████████████████████████.

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████

12   ███████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████

15   ████████.  *Perlan Therapeutics*, 178 Cal. App. 4th at 1350 ("If [a party] does not know what its own

16   trade secrets are, it has no basis for suggesting defendants misappropriated them.  Nor is [a party]

17   entitled to hide its trade secrets in 'plain sight' by including surplusage and voluminous attachments

18   in its trade secret statement.").

19   ██████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ███████████████████████████████████████████.

23   **Trade Secret #14**:  Here, Wisk contends its secret is ██████████████████████

24   ███████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████████████

28   ██████████████████████████████████████████████████████████████

1 ███████████████████████████████████

2 █████████████████████████████████████

3 ████████████████████.

4 ████████████████████████████████████

5 █████████████████████████████████████

6 ██████████████████████████████████████

7 ████████████████████████████████

8 ████████████████. *See M/A-COM*, 2019 WL 8108729, at *4 (holding that "identifying large

9 numbers of documents without any reference to [a] specific page" is insufficient).

10 ████████████████████████████████████

11 ████████████████████████████████

12 █████████████████████████████████████

13 ███████████████████████████████████████.

14 **Trade Secret #16**: Wisk alleges this secret is its █████████████

15 █████████████████████████████████████

16 █████████████████████████████████████

17 ██████████████████████████████████████

18 ████████████████████████████████████

19 █████████████████████████████████████

20 ██████████████████████████████████████

21 ███████████████████ *See M/A-COM*, 2019 WL 8108729, at *4.

22 ████████████████████████████████████

23 ████████████████████████████████

24 ███████████████████████████████████

25 ███████████████████████████████████

26 ██████████████████████████████████████

27 ██████████████████████████████████████

28 ████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1 ████████████████████████████████████████████████████████

2 ████████████████████████.

3    **Trade Secret #20**:  For Trade Secret #20, Wisk claims ownership of ██████

4 ██████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ██████████████████████.  *See M/A-COM*, 2019 WL 8108729, at *4.

13    ████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████.

20    **Trade Secret #21**:  This secret allegedly pertains to ████████████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████████████████████████████

23 ██████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28

Gibson, Dunn &
Crutcher LLP

1 ███████████████████████████████████████████████████████

2 █████████ .

3      **Trade Secret #17**:  This alleged secret concerns ███████████████████

4 ████████████████████████████████████████████████████

5 ██████████ .  This again is utterly insufficient.  ██████████████████████████

6 █████████████████████ .  *Space Data*, 2018 WL 10647160, at *2 ("Here, Space Data is claiming

7 as its trade secret 'an algorithm,' but it has not identified what the algorithm is."). ████████████

8 ███████████████████████████████████████████████████████

9 █████████████████████████████████████████████████

10 █████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 █████████████████████████████████████████████

16 ███████████████████████████████  This is insufficient.  *See M/A-COM*, 2019 WL

17 8108729, at *4.

18      **Trade Secret #18**:  ██████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 █████████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ██████████████████ .

27      **Trade Secret #29**:  Wisk alleges here it owns a secret about its ██████████████

28 ████████████████████████████████████████████████████████

1

2

3                 This does not identify a specific secret.

4

5 . So once

6 again, the Court and Archer are left to speculate what is secret from this technology

7

8                And moreover, there is insufficient information to determine if

9 the alleged secret is ascertainable.

10        **Trade Secret #30**:

11             But it does not come close to meeting Section 2019.210's "reasonable

12 particularity" standard.

13

14

15

16 .

17

18             *See Loop AI Labs*, 195 F. Supp.

19 3d at 1115 ("The Ninth Circuit has rejected the use of 'catchall' language, holding that such language

20 is insufficiently specific 'because it does not clearly refer to tangible trade secret material.'" (quoting

21 *IMAX*, 152 F.3d at 1167)).

22

23           . Again, this is impermissible because it

24 allows the plaintiff to seize on the "vagueness," and then later "cleverly specify whatever happens to

25 be" found later to be its trade secret. *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13–04519 WHA,

26 2014 WL 1724763, at *2–4 (N.D. Cal. May 1, 2014) (granting motion to strike and dismissing trade

27 secret misappropriation claim). Furthermore, there is insufficient information to determine if the

28 alleged secret is ascertainable.

1    **Trade Secret #31**: ████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ██████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ██████████████████████████████████████████████

8    ███████████████████████████████████████████. Further, there is

9    insufficient information to determine if the alleged secret is ascertainable.

10   **Trade Secret #44**: ████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████.

16      ████████████████████████████████████████

17   ███████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ███████████████████████████. *See M/A-COM*, 2019 WL 8108729, at *4.  And

20   there is again insufficient information to determine if the alleged secret is ascertainable.

21   **Trade Secret #46**:  Finally, ███████████████████████████

22   ███████████████████████████████████████████

23   ██████████████████████████████████████████████

24   █████████████████████████████████████████████████

25   ██████████████████████████████████████████

26   ██████████████████████████████████████████████

27   ████████████████████████████████████████████████

28   ████████████████████████████████████████████

████████████████████████████. *See Lilith Games (Shanghai) Co. Ltd. v. uCool, Inc.,* No. 15-CV-01267-SC, 2015 WL 4149066, at *4 (N.D. Cal. July 9, 2015).

### III.    CONCLUSION

The Court should strike Wisk's Statement for three independent reasons:  It does not include (1) a description of how each secret has derived independent actual or potential economic value by virtue of not being generally known to the public and readily ascertainable; (2) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; or (3) a clear description of the elements of each secret, "as claims would appear at the end of a patent," sufficient to enable Archer to determine the contours of the secret or how the secrets differ from general knowledge. *Openwave Messaging*, 2018 WL 2117424, at *4.


Respectfully submitted,


DATED:  June 16, 2021                    GIBSON, DUNN & CRUTCHER LLP

By:   _____*/s/ Josh A. Krevitt*_____
                      Josh A. Krevitt

*Attorneys for Defendant Archer Aviation Inc.*