1    QUINN EMANUEL URQUHART & SULLIVAN, LLP
     Yury Kapgan (Bar No. 218366)
2      yurykapgan@quinnemanuel.com
     Robert M. Schwartz (Bar No. 117166)
3      robertschwartz@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
4      michaelzeller@quinnemanuel.com
     Diane Cafferata (Bar No. 190081)
5      dianecafferata@quinnemanuel.com
     Patrick Schmidt (Bar No. 274777)
6      patrickschmidt@quinnemanuel.com
     865 South Figueroa Street, 10th Floor
7    Los Angeles, California 90017
8    Telephone:     (213) 443-3000
     Facsimile:     (213) 443-3100
9
10   Michael F. LaFond (Bar No. 303131)
       michaellafond@quinnemanuel.com
11   555 Twin Dolphin Drive, 5th Floor
     Redwood Shores, California 94065
12   Telephone:     (650) 801-5000
     Facsimile:     (650) 801-5100
13

14   Attorneys for Plaintiff Wisk Aero LLC

15

16                    UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18                    SAN FRANCISCO DIVISION

19
     WISK AERO LLC,                        CASE NO. 3:21-cv-02450-WHO
20
                  Plaintiff,               **PLAINTIFF'S OPPOSITION TO**
21                                         **DEFENDANT'S MOTION TO DISMISS**
                                           **TRADE SECRET CLAIMS**
22          vs.
                                           [*Declaration of Yury Kapgan filed currently*
23   ARCHER AVIATION INC.,                 *herewith*]
24                Defendant.
                                           Hearing Date: July 21, 2021
25                                         Hearing Time: 2:00 p.m.
                                           Hearing Location: Courtroom 2
26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 1

        A.      Wisk's Trade Secret Misappropriation Allegations ...................... 1

        B.      Wisk's Identification Of Trade Secrets Pursuant To 2019.210 ..... 3

        C.      Archer's Motion To Dismiss And Motion To Strike ..................... 3

III.    LEGAL STANDARD ................................................................................ 4

IV.     ARGUMENT ............................................................................................. 4

        A.      Wisk Has Pled Its Trade Secrets With More Than Sufficient Particularity ................. 4

                1.      Wisk's Trade Secret Descriptions Are Sufficient Even Without Reference To Its 2019.210 Statement ........... 6

                2.      Wisk's 2019.210 Statement Provides Far More Detailed Descriptions Than Required At This Stage ........... 8

        B.      Wisk Properly Alleges That Archer Both Used And Acquired Wisk's Trade Secrets By Improper Means ........... 10

                1.      Wisk Is Not Subject To A "Special Burden" To Allege Trade Secret Misappropriation .......... 11

                2.      Archer Fails to Show That Wisk's Allegations, When Properly Read in Combination, Are Insufficient .......... 12

V.      CONCLUSION ........................................................................................ 17

1

**TABLE OF AUTHORITIES**

2

**Page**

3  **Cases**

4  *Ajaxo Inc. v. E*Trade Grp. Inc.*,
   135 Cal. App. 4th 21 (2005) .................................................................................16

5  *Allergan, Inc. v. Merz Pharm., LLC*,
   2012 WL 781705 (C.D. Cal. Mar. 9, 2012) .........................................................15
6
   *Alta Devices, Inc. v. LG Elecs., Inc.*,
7  343 F. Supp. 3d 868 (N.D. Cal. 2018) ...................................................5, 6, 13, 16

8  *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................4

9  *Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ....................................................................4
10
   *Bladeroom Grp. Ltd. v. Facebook, Inc.*,
11 2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) .........................................................7

12 *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
   331 F. Supp. 3d 977, 984 (N.D. Cal. 2018)
13
   *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
14 2011 WL 1044899 (N.D. Cal. Mar. 23, 2011) ....................................................6, 8

15 *Cedars Sinai Medical Center v. Quest Diagnostic Inc.*,
   2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) .................................................5, 8, 9
16
   *CleanFish, LLC v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ......................................................12
17
   *Diodes, Inc. v. Franzen*,
18 260 Cal. App. 2d 244 (1968) ..................................................................................5

19 *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
   2018 WL 2463869 (E.D. Cal. June 1, 2018)........................................................16
20
   *Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
21 751 F.3d 990 (9th Cir. 2014)................................................................................12

22 *Gatan, Inc. v. Nion Co.*,
   2018 WL 2117379 (N.D. Cal. May 8, 2018) ..........................................................9

23 *Glob. Servs. GMBH v. Guidewire Software Inc.*,
   581 F. Supp. 2d 654 (D. Del. 2008) .....................................................................17
24
   *GSI Tech., Inc. v. United Memories Inc.*,
25 2015 WL 5655092 (N.D. Cal. Sept. 25, 2015)......................................................15

26 *GTAT Corp. v. Fero*,
   2017 WL 7035655 (D. Mont. May 3, 2017) .........................................................16
27
   *Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
28 2018 WL 6617633 (S.D. Cal. Dec. 18, 2018)........................................................7

   *In re Century Aluminum Co. Sec. Litig.*,
   2011 WL 830174 (N.D. Cal. Mar. 3, 2011) .........................................................12

   *Integral Dev. Corp. v. Tolat*,
   2015 WL 674425 (N.D. Cal. Feb. 12, 2015) ........................................................17

*Invisible Dot, Inc. v. DeDecker*,
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) .................................................................... 7

*Language Line Servs., Inc. v. Language Servs. Assocs., LLC*,
  2010 WL 2764714 (N.D. Cal. July 13, 2010) ........................................................... 10, 14

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
  2019 WL 4284523 (C.D. Cal. June 11, 2019) .................................................................. 9

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ........................................................................................ 4

*Masimo Corp. v. Apple Inc.*,
  2020 WL 6653652 (C.D. Cal. Oct. 13, 2020) ............................................................... 17

*Masimo Corp. v. Apple Inc.*,
  2021 WL 925885 (C.D. Cal. Jan. 6, 2021) ............................................................... 10, 13

*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (C.D. Cal. June 30, 2014) ................................................................. 8

*Newport News Indus. v. Dynamic Testing, Inc.*,
  130 F. Supp. 2d 745 (E.D. Va. 2001) ........................................................................... 14

*Palantir Techs., Inc. v. Abramowitz*,
  2020 WL 9553151 (N.D. Cal. July 13, 2020) ................................................................. 9

*Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*,
  2013 WL 12080221 (S.D. Cal. Nov. 5, 2013) ............................................................... 10

*Roadrunner Transportation Services. v. Tarwater*,
  2010 WL 11483986 (C.D. Cal. Dec. 20, 2010) .............................................................. 8

*Rockwell Collins, Inc. v. Wallace*,
  2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) ................................................................ 6

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
  2010 WL 5069832 (N.D. Cal. Dec. 7, 2010) ............................................................. 6, 13

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) ..................................................................................... 10, 11

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) .............................................................. 7, 9

*Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*,
  2016 WL 10611186 (C.D. Cal. Nov. 23, 2016) .............................................................. 6

*TMC Aerospace, Inc. v. Elbit Systems of America LLC*,
  2016 WL 3475322 (C.D. Cal. Jan. 29, 2016) .............................................................. 6, 8

*TMX Funding, Inc. v. Impero Technologies, Inc.*,
  2010 WL 2509979 (N.D. Cal. June 17, 2010) ............................................................ 6, 8

*Veronica Foods Co. v. Ecklin*,
  2017 WL 2806706 (N.D. Cal. June 29, 2017) ........................................................... 11, 12

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 2123560 (N.D. Cal. May 15, 2017) ............................................................... 14

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................................................ 12

**Statutory Authorities**

18 U.S.C. § 1839(5) ........................................................................................................ 10

18 U.S.C. § 1839(6) ................................................................................................................10

Cal. Civ. Proc. Code § 2019.210 ..............................................................................................3

Cal. Civ. Code § 2332 .............................................................................................................15

Cal. Civ. Code § 3426.1 ..........................................................................................................10

**Rules and Regulations**

Fed. R. Civ. P. 8(a) ............................................................................................................9, 12

Fed. R. Civ. P. 9 .....................................................................................................................12

Fed. R. Civ. P. 9(b) ................................................................................................................12

## I.  <u>INTRODUCTION</u>

Archer's motion seeks to dismiss Wisk's trade secret claims on two grounds—both of which rest on a distorted reading of trade secret case law and a total disregard of Wisk's actual factual allegations.  First, Archer's claim that Wisk has not sufficiently identified its trade secrets is contrary to the overwhelming weight of authority holding that categorical trade secret descriptions like those contained in Wisk's initial Complaint are sufficient at the pleading stage to provide Archer with notice of the issues and to guide discovery.  Moreover, Wisk's incorporation of its 2019.210 trade secret identification statement into its First Amended Complaint ("FAC")—with its over 70 pages of detailed trade secret descriptions—far surpasses what is necessary at the motion to dismiss stage.  Archer's contention that the Court should simply ignore that incorporation is based on a clear misstatement of the law and should be rejected.

Archer's second argument, that Wisk has failed to plead misappropriation under a purported "special burden," is equally unavailing.  The "special burden" Archer attempts to impose here misreads precedent and invites this court to err as a matter of law.  In substance, Archer's argument boils down to a dispute over the underlying factual allegations in the FAC, which Archer tries to slice and dice into as many small pieces as possible in order to avoid the clear overarching picture of misappropriation they paint.  Those allegations, taken together—and taken as true at the pleading stage—are more than sufficient to state a claim for trade secret misappropriation.

The Court should deny Archer's motion.

## II.  <u>STATEMENT OF FACTS</u>

### A.  Wisk's Trade Secret Misappropriation Allegations

On April 6, 2021, Wisk filed its initial Complaint in this case, asserting claims for trade secret misappropriation and patent infringement against Archer.  Dkt. 1.  Wisk's Complaint described how a former Wisk employee—now identified as Jing Xue—downloaded thousands of highly confidential files containing Wisk trade secret information immediately before leaving Wisk to join Archer to begin work on a copycat version of Wisk's eVTOL aircraft design.  *Id.* ¶¶ 63-70.  While the sheer volume of this theft made it difficult to fully capture everything that was taken, Wisk's Complaint explained that these files contained trade secrets falling in at least five specific

categories: aircraft designs, component designs, system designs, manufacturing, and test data. *Id.* ¶ 71. Wisk's Complaint then described the specific trade secret information at issue in each of those categories. *Id.* ¶¶ 72-76. For example, the Complaint explained that the stolen files relating to systems design included those describing "the interaction and compatibility among components and systems due to issues such as electromagnetic interference (EMI)." *Id.* ¶ 74. Similarly, the Complaint described how the files containing trade secrets related to manufacturing techniques and processes specifically included photographs identifying the specific machines and tools Wisk uses to design and manufacture its aircraft and aircraft components. *Id.* ¶ 75.

Wisk's Complaint further alleged misappropriation of the trade secrets in each of these categories against Archer. In support of its misappropriation claims, Wisk's Complaint provided a host of factual allegations indicating that Archer had incorporated these trade secrets into its eVTOL development plans. *See* Complaint ¶¶ 52-60, 80-93. For example, Wisk described how Archer's accelerated development timeline—unprecedented in the eVTOL industry—could not be explained absent Archer's incorporation of Wisk's trade secret information. *See, e.g.*, *id.* ¶ 52 ("Archer's claim to be able to develop a full-scale aircraft in just two years (or less), with full commercialization in four, cannot be explained through independent development."); *id.* ¶ 87 ("Archer knew or should have known that it was not possible to develop and certify an eVTOL aircraft in the timeframe it claimed and with the number of personnel it employed without relying on intellectual property that was not its own."). As Wisk's Complaint further explained, misappropriation was particularly likely under these circumstances because: (1) Archer announced this timeline a mere year after it first appears to have initiated any meaningful operations; (2) the company was founded by a pair of former finance industry operatives with no engineering or aircraft industry experience; (3) Archer specifically targeted and hired many Wisk engineers; and (4) the aircraft Archer ultimately announced appeared to be an almost exact copycat of one of Wisk's own confidential eVTOL aircraft designs. *Id.* ¶¶ 52-60, 80-93.

Wisk's Complaint then summarized those allegations concisely in the final paragraph of a section titled "Archer's Use of Wisk's Trade Secrets":

> There is only one conclusion to be drawn from the brief time Archer has had any
> meaningful operations, its small number of employees, the stunning apparent progress
> in its development of an eVTOL aircraft, the copy of Wisk's unreleased design, and the
> download of thousands of Wisk's highly confidential trade secrets by an Archer
> employee and other suspicious, unexplained activity.  Archer's business is built on
> Wisk's intellectual property.  If left unremedied, Archer's misappropriation of Wisk's
> trade secrets for its own benefit will cause Wisk irreparable harm and permit Archer to
> compete unfairly in the nascent eVTOL market.

*Id.* ¶ 93.

**B.    Wisk's Identification Of Trade Secrets Pursuant To 2019.210**

On May 19, 2021, Wisk filed a motion for a preliminary injunction and expedited discovery to enjoin Archer's use of its trade secrets.  Dkts. 16-17.  As Exhibit 1 to that motion, Wisk provided a formal statement identifying specific trade secrets contained in the stolen files pursuant to California Code of Civil Procedure § 2019.210.  *See* Dkt. 16-8, 17-11.  Wisk's 2019.210 statement meticulously defined 52 discrete trade secrets over the course of 74 pages and further identified the precise stolen files reflecting each one.  *Id.*  Wisk's motion also included the declaration of two credible experts—Dr. Collins and Dr. Gandhi—who both declared the 2019.210 statement provided sufficient detail for them to understand Wisk's identified trade secrets and to differentiate them from generally known information in the eVTOL field.  *See* Dkt. 16-1 (Collins Decl.) ¶¶ 26-27; Dkt. 16-4 (Gandhi Decl.) ¶¶ 65-73.  Drs. Collins and Gandhi further explained that Wisk's identified trade secret represented confidential, non-public knowledge accumulated by Wisk which would be highly valuable to a competitor like Archer who wished to gain a "head start" in the eVTOL arena.  *See* Dkt. 16-1 (Collins Decl.) ¶¶ 27, 30-31; Dkt. 16-4 (Gandhi Decl.) ¶¶ 23-32.

**C.    Archer's Motion To Dismiss And Motion To Strike**

On June 6, 2021, Archer filed an initial motion to dismiss Wisk's Complaint, arguing that Wisk had failed to identify its trade secrets with sufficient particularity and had failed to adequately allege misappropriation against Archer.  *See* Dkt. 29 at 7, 9.  Archer's arguments regarding Wisk's identification of its trade secrets focused exclusively on Wisk's description of the five categories of trade secret information contained in the files stolen by Wisk's former employee immediately before he joined Archer.  *Id.* at 7-9.  Archer's motion specifically ignored the 52 specific trade

secrets described in detail in Wisk's 2019.210 statement, arguing that the statement could not be considered as part of the pleadings contained in Wisk's Complaint.  *Id.* at 7 n.1.

On June 15, 2021, Wisk filed its First Amended Complaint ("FAC"), formally incorporating the 74-page description of its asserted trade secrets pursuant to section 2019.210 as Exhibit E.  *See* FAC ¶ 71.

The next day, on June 16, Archer filed a motion to strike Wisk's 2019.210 statement and also brought the present motion, moving to dismiss Wisk's FAC.  *See* Dkts. 48, 49.  Archer's renewed motion to dismiss largely tracked its original motion while also incorporating a short section attacking the sufficiency of Wisk's 2019.210 disclosure on the same bases described in its motion to strike.  *See* Dkt. 48 at 8-10.

## III.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.   **ARGUMENT**

### A.   **Wisk Has Pled Its Trade Secrets With More Than Sufficient Particularity**

Wisk's FAC describes the subject matter of Wisk's trade secrets with far more specificity than is required at this stage to survive a motion to dismiss and guide discovery in this case.  *See* FAC ¶¶ 71-79, Dkt. 45-5.  Under the Defend Trade Secrets Act and the California Uniform Trade Secret Act, in order to survive a motion to dismiss, a plaintiff alleging trade secret misappropriation need only "describe the subject matter of the trade secret with sufficient particularity to separate it

from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018). "[T]he level of detail required in trade secret pleadings is not high." *Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, No. CV 17-5169-GW(FFMX), 2018 WL 2558388, at *5 (C.D. Cal. Feb. 27, 2018). To that end, courts have emphasized that a plaintiff alleging trade secret misappropriation is not required to "spell out the details of the trade secret," but only needs to provide the defendant with "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance *in ascertaining the scope of appropriate discovery*." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (emphasis added); *see also Alta Devices*, 343 F. Supp. 3d at 881.

In its motion, Archer argues that the trade secret descriptions contained in Wisk's FAC are insufficient because they are grouped as categories of specific information contained in the files stolen from Wisk and occasionally described through the use of non-exhaustive examples. Mot. at 5-8. Archer argues that these specific characteristics are improper *per se* in any trade secret identification. *Id*. at 6. On top of this, Archer contends that Wisk's amendment of its Complaint to incorporate by reference its 2019.210 statement has *no* relevance to this question, mischaracterizing the incorporation of this 74-page description of its trade secrets as simply an "offhand allusion" and "a single sentence" addition to Wisk's pleadings. *Id*. at 8. Alternatively, Archer argues that even if Wisk's 2019.210 statement is properly considered as part of its trade secret descriptions, that incredibly detailed document is somehow still insufficient. *See* Mot. at 9-10 (rehashing the substance of Archer's pending motion to strike (Dkt. 50)). None of these arguments have merit. Courts have consistently found that detailed categorical descriptions of misappropriated trade secrets like those in Wisk's FAC are more than sufficient to survive a motion to dismiss on their own. And when Wisk's 2019.210 statement is also considered, Archer's argument can hardly be taken at face value.

1              **1.      Wisk's Trade Secret Descriptions Are Sufficient Even Without**

2                        **Reference To Its 2019.210 Statement**

3          To begin with, Archer's claim that plaintiffs are forbidden from identifying their trade

4   secrets through the use of categorical descriptions is simply false.  In fact, "broad categories of

5   descriptions suffice at the pleading stage."  *Strategic Partners Inc. v. Vestagen Protective Techs.*

6   *Inc.*, 2016 WL 10611186, at *4 (C.D. Cal. Nov. 23, 2016).  Courts throughout the Ninth Circuit and

7   this District have consistently approved of this approach.  *See, e.g.*, *TMX Funding, Inc. v. Impero*

8   *Techs., Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (finding plaintiff had sufficiently

9   identified its trade secrets where it alleged "nine broad categories of trade secret information"

10  including "[i]ts software, source codes, data, formulas, and other technical information developed

11  as proprietary and confidential products and services" and "its product information, including, but

12  not limited to, cost, pricing, margin data and other financial information"); *Alta Devices, Inc. v. LG*

13  *Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (finding plaintiff had sufficiently identified

14  its trade secrets by describing them as related to the categories of "high throughput thin-film

15  deposition," "proofs and tests of manufacturing concepts and techniques," and "manufacturing

16  process flows"); *Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10,

17  2017) (finding plaintiff had sufficiently identified trade secrets where its "complaint define[d] the

18  trade secret as 'technical drawings, technical specifications, business information, documents, and

19  data relating to flight control systems, methods, assemblies, and services'");  *TMC Aerospace, Inc.*

20  *v. Elbit Sys. of Am. LLC*, 2016 WL 3475322, at *5 (C.D. Cal. Jan. 29, 2016) (finding trade secrets

21  had been sufficiently identified where plaintiff alleged they included "proprietary design drawings,

22  manufacturing techniques, and manufacturing equipment" concerning a de-icing system);

23  *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 WL 5069832, at *10 (N.D. Cal. Dec. 7, 2010)

24  (denying motion to dismiss based on argument that plaintiff did "not plead facts showing any

25  specific trade secrets" were misappropriated where plaintiff's complaint "identified a number of

26  categories of trade secrets [a former employee] downloaded onto his computer and e-mailed to

27  himself"); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2011 WL 1044899, at *5 (N.D. Cal.

28  Mar. 23, 2011) (collecting further cases).

The cases Archer cites in support of the idea that categorical descriptions of trade secrets are *per se* improper are actually notable outliers in this regard—and clearly distinguishable from the allegations set forth in Wisk's FAC.  In each of those cases the trade secret identifications found insufficient were identified at so high a level that they either referred to only generic types of recorded "data" or else were circular in referring back to the plaintiffs' products without further elaboration.  For example, in *Space Data Corporation v. X*, plaintiff's complaint referenced attached exhibits that provided only the most abstract possible descriptions of its trade secrets as "data on the environment in the stratosphere" and "data on the propagation of radio signals from stratospheric balloon-based transceivers."  *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).  In *Human Longevity*, plaintiff simply asserted that its trade secrets "include, but are not limited to," "processes and data relating to [its] development of its Health Nucleus" product, and also included "its weekly reports" of all its activities related to that product.  *Hum. Longevity, Inc. v. J. Craig Venter Inst., Inc.*, 2018 WL 6617633, at *5 (S.D. Cal. Dec. 18, 2018).  Likewise, in *Bladeroom v. Facebook*, plaintiff baldly alleged that its claimed trade secret consisted of "its unique methodology for building modular, enterprise-level data centers which no other company in the market provides."  *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015).  And finally, in *Invisible Dot v. DeDecker*, a court properly rejected a description of asserted trade secrets where that description recited almost every possible aspect of *any* generic company's business.  *See Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *5 (C.D. Cal. Feb. 6, 2019) (rejecting plaintiff's description of its trade secrets as "information including, without limitation, information related to 'research, business plans, product plans, products, services, customer lists and customers ... market research, works of original authorship, intellectual property ... photographs, negatives digital images, software, computer programs, ideas, developments, inventions ...'").  The perfunctory trade secret descriptions in each of these cases is far removed from the specific, detailed categories set forth in Wisk's FAC.

Archer's claim that Wisk's trade secret descriptions are "peppered with catchall phrases" is equally unavailing.  Notably, while Archer implies this is a pervasive feature of Wisk's trade secret descriptions, it identifies only one use of the phrase "and so forth" and one use of "etc." in the

entirety of those descriptions. *See* Mot. at 6. And in both instances those terms were ***not*** used to expand an abstract universe of trade secrets, but to provide specific examples of trade secret information contained ***in the specific files Wisk had already identified as stolen***. *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558388, at *6 (C.D. Cal. Feb. 27, 2018) (finding trade secret allegations sufficient where plaintiff's description also identified "the specific confidential communications that allegedly contain these trade secrets").

Contrary to Archer's claims, there is no broad prohibition on the use of such terms in a trade secret description. In fact, courts consistently find that trade secret descriptions that made use of terms like "including" or "including but not limited to" were sufficient at this early stage. *See, e.g.*, *id.* (finding trade secret description sufficient where it referred to broad categories of secrets "including patterns, plans, complications, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, tangible and/or intangible, related to [its] diagnostic techniques and validation of the same"); *TMC Aerospace*, 2016 WL 3475322, at *5; *Brocade*, 2011 WL 1044899, at *1; *TMX Funding, Inc. v. Impero Technologies, Inc.*, 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *9 (C.D. Cal. June 30, 2014); *Roadrunner Transportation Services. v. Tarwater*, 2010 WL 11483986, at *4 (C.D. Cal. Dec. 20, 2010).

### 2. Wisk's 2019.210 Statement Provides Far More Detailed Descriptions Than Required At This Stage

If there were any question as to whether Wisk's original Complaint described its trade secrets with sufficient detail, they dissolve completely in the face of Wisk's incorporation of its 74-page description of those trade secrets in its FAC. *See* FAC, Ex. E (Dkt. 45-5).

Having drawn up its original motion to dismiss before Wisk amended its Complaint to incorporate its 2019.210 statement, Archer's renewed motion first urges the Court to ignore that statement entirely by suggesting it is not properly considered as part of Wisk's Complaint. *See* Mot. at 8. Here, Archer cites two cases, *Palantir* and *Space Data Corp.*, for the broad claim that trade secret descriptions laid out in a 2019.210 statement are somehow completely null when incorporated into an operative pleading. *Id.* Neither case stands for that proposition. The

complaint at issue in *Space Data Corp.* did not incorporate any 2019.210 statement.  *See Space Data*, 2017 WL 5013363, at *2; Declaration of Yury Kapgan, Ex. 1 (*Space Data Corp.*, Dkt. 28).  And in *Palantir*, the court did not ignore plaintiff's 2019.210 statement.  It affirmatively considered it integrated into plaintiff's Fourth Amended Complaint, but found it insufficient because it failed to allege the defendant had any access to the secrets alleged.  *Palantir Techs., Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2020 WL 9553151, at *17-18 (N.D. Cal. July 13, 2020).

Alternatively, Archer also argues that if Wisk's 2019.210 statement is considered as part of Wisk's FAC—as it must be—the FAC is inadequate under the requirements of section 2019.210  In support of this argument, Archer rehashes the same exact arguments found in its June 16, 2021 motion to strike Archer's 2019.210 statement.  *See* Dkt. 50.

In so doing, Archer again seeks to impose a higher burden on Wisk than required at this stage.  Even if Archer's motion correctly set forth the proper standard for the sufficiency of a 2019.210 statement before the initiation of discovery, which it did not (*see* Wisk's Opposition to Defendant's Motion to Strike at 5-7), those requirements are distinct from what is necessary to satisfy the basic pleading requirements of Federal Rule of Civil Procedure 8(a) applicable here.  As federal courts in California routinely point out, the burden applicable to trade secret descriptions in the context of a motion to dismiss is lower than that for section 2019.210.  *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *3 (C.D. Cal. June 11, 2019) (noting that trade secret allegations were sufficient to survive motion to dismiss but that "the inquiry under Section 2019.210 is separate"); *Gatan, Inc. v. Nion Co.*, 2018 WL 2117379, at *2 (N.D. Cal. May 8, 2018); C*edars Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2018 WL 2558385, at *4 (C.D. Cal. Feb. 12, 2018); *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, 2013 WL 12080221, at *6 (S.D. Cal. Nov. 5, 2013).

As explained in detail in Wisk's concurrently-filed opposition to Archer's motion to strike, which Wisk incorporates by reference here, Wisk's 2019.210 statement describes its trade secrets with considerable particularity.  *See* Wisk's Opposition to Defendant's Motion to Strike at 7-16. That level of detail is far more than what is necessary to survive a motion to dismiss.

1    **B.    Wisk Properly Alleges That Archer Both Used And Acquired Wisk's Trade**

2    **Secrets By Improper Means**

3    As with its trade secret descriptions, Wisk's allegations regarding Archer's misappropriation

4    are also more than sufficient to pass muster at this early stage.  "Misappropriation" of a trade secret

5    includes acquiring another's trade secret "by a person who knows or has reason to know that the

6    trade secret was acquired by improper means."  Cal. Civ. Code § 3426.1(b)(1); 18 U.S.C.

7    § 1839(5).  Third parties who use trade secrets are also liable for misappropriation if they know or

8    have reason to know that "the trade secret was derived from or through a person who had utilized

9    improper means to acquire it."  Cal. Civ. Code § 3426.1(b)(2); 18 U.S.C. § 1839(5).  "Improper

10   means" includes "theft" and "breach of a duty to maintain secrecy."  Cal. Civ. Code § 3426.1(a); 18

11   U.S.C. § 1839(6).  Where employees take trade secrets to a new employer, both the employee and

12   the employer are liable for trade secret misappropriation.  *Language Line Servs., Inc. v. Language*

13   *Servs. Assocs., LLC*, 2010 WL 2764714, at *3 (N.D. Cal. July 13, 2010) (holding defendant

14   company liable for misappropriation of trade secrets that new employee "secretly took with him to

15   Defendant" because "an act of this nature was generally foreseeable").  In determining whether a

16   plaintiff has sufficiently pled misappropriation at the motion to dismiss stage, "the Court must

17   consider the entire sequence of events in context, and not the individual allegations in isolation."

18   *Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *7 (C.D. Cal. Jan. 6, 2021) (citing *Soo Park v.*

19   *Thompson*, 851 F.3d 910, 929 n.22 (9th Cir. 2017)).

20   Archer's claim that Wisk has not alleged facts "indicating or suggesting that Archer ever

21   knowingly used a Wisk trade secret" is belied by its own motion.  In fact, Archer's motion appears

22   to argue, not that Wisk has actually failed to allege misappropriation, but that those allegations are

23   insufficient simply because they rely on circumstantial rather than direct proof of misappropriation.

24   *See* Mot. at 12-17.  But these arguments ignore a core facet of trade secret cases:  "Misappropriation

25   and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must

26   construct a web of perhaps ambiguous circumstantial evidence . . . ."  *BladeRoom Grp. Ltd. v.*

27   *Emerson Elec. Co.*, 331 F. Supp. 3d 977, 984 (N.D. Cal. 2018) (denying motion for summary

28   judgment based on claim that plaintiff had failed to establish misappropriation by direct proof).

1   Archer ignores this fact.  First, Archer suggests that circumstantial evidence is insufficient

2   because Wisk faces a purported "special burden" in pleading misappropriation in this case.  Then, it

3   sets up a series of straw-man arguments by parsing each fact in the web of evidence described in

4   Wisk's FAC in total isolation from the others—ignoring the clear broader picture of

5   misappropriation that they paint.  Archer's effort to separately impose an improper heightened

6   pleading standard to each standalone allegation in Wisk's FAC should be rejected.

7           **1.      Wisk Is Not Subject To A "Special Burden" To Allege Trade Secret**

8                   **Misappropriation**

9           Archer prefaces its attack on Wisk's misappropriation allegations with the claim that Wisk

10  faces a "special burden" at the pleading stage to establish indirect misappropriation and to

11  "affirmatively ***exclude*** an innocent explanation."  Mot. at 11.  This is a blatant misapplication of the

12  law.

13          Archer repeatedly refers to the decisions in *CleanFish* and *Veronica Foods* in its attempt to

14  apply its "special burden" to Wisk's misappropriation allegations.  But those decisions both

15  considered narrow issues related to pleading misappropriation in the context of customer lists in the

16  food wholesale industry—not technical trade secrets in a complex environment like the eVTOL

17  industry.  For instance, in *Veronica Foods*, the court found plaintiff had failed to plausibly plead

18  that defendant had misappropriated its customer list where plaintiff made only high-level,

19  conclusory allegations that were clearly contradicted by the public record.  *See Veronica Foods Co.*

20  *v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017).  There, plaintiff merely alleged that

21  defendant "made improper and unauthorized use of" its customer list—an allegation that was

22  plainly implausible in light of the fact, judicially noticed by the court, that plaintiff actively and

23  openly "publicized its relationship with many of its customers."  *Id.*  Likewise, in *CleanFish*, the

24  court found claims of misappropriation related to a food industry customer list were not plausibly

25  pled where plaintiff failed to establish that the list was actually a trade secret and where the

26  employee who allegedly provided the list to defendants had decades of experience with contacts in

27  the tight-knit seafood wholesale industry before his brief time working for plaintiff.  *CleanFish,*

28  *LLC v. Sims*, 2020 WL 4732192, at *7 (N.D. Cal. Aug. 14, 2020).  Neither of these decisions are

1    comparable to the detailed allegations of misappropriation related to the highly technical trade

2    secrets at issue in this case.

3            Archer's purported reliance on *Eclectic Properties* and *In re Century Aluminum* for its

4    "special burden" is even more egregious.  Archer relies on *Eclectic Properties*, in particular, to

5    argue that, in order to overcome a motion to dismiss, Wisk must allege facts that "affirmatively

6    ***exclude*** an innocent explanation" for Archer's conduct.  Mot. at 11.  But Archer fails to mention

7    that neither *Eclectic Properties* nor *In re Century Aluminum* were trade secret cases.  Not only were

8    these not trade secret cases, but *Electric Properties* related to civil RICO claims and *In re Century*

9    *Aluminum* related to claims under the Securities Exchange Act—both of which were evaluated by

10   those courts under the ***heightened pleading standards of Rule 9(b)***.  *See Eclectic Properties E.,*

11   *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 993–94 (9th Cir. 2014) ("We consider whether

12   Plaintiffs–Appellants have pleaded facts sufficient under Federal Rules of Civil Procedure 8(a) ***and***

13   ***9(b)*** to support a plausible theory of Racketeering Influenced and Corrupt Organizations Act

14   ('RICO') and RICO conspiracy violations") (emphasis added); *In re Century Aluminum Co. Sec.*

15   *Litig.*, 2011 WL 830174, at *2 (N.D. Cal. Mar. 3, 2011), *aff'd*, 704 F.3d 1119 (9th Cir. 2013), and

16   *aff'd*, 729 F.3d 1104 (9th Cir. 2013) (dismissing complaint based on a failure to adequately plead

17   ***scienter under Rule 9(b) and the PSLRA***).[1]  Contrary to Archer's misleading argument, "Federal

18   Rule of Civil Procedure 9's heightened pleading standard does not apply to trade secrets cases."

19   *Alta Devices, Inc.*, 343 F. Supp. 3d at 882.

20           **2.    Archer Fails to Show That Wisk's Allegations, When Properly Read in**

21                  **Combination, Are Insufficient**

22           Archer's argument that Wisk has not alleged a single fact "indicating or suggesting that

23   Archer ever knowingly used a Wisk trade secret" relies on misleading and improper parsing of

24   Wisk's factual allegations of misappropriation in isolation.  To avoid having to deal with the

25   entirety of Wisk's allegations, Archer separates its discussion of each of these facts into entirely

26

27   _____

     [1]  Plaintiffs in securities cases like *In re Century Aluminum* are required to allege scienter under the
28   heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act.
     *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

different sections of its brief, addressing Wisk's allegations related to Archer's hiring of Wisk engineers that downloaded vast amounts of trade secret information just before leaving for Archer's employment, Archer's copycat design, improbable development timeline, and its founders' public statements as if each—standing alone—were the sole basis for Wisk's misappropriation claim.[2]  Of course, each of these facts is highly suggestive of misappropriation, but taken together, as they must be, they overwhelmingly satisfy Wisk's burden to allege a plausible claim of misappropriation. *See, e.g.*, *SOAProjects*, 2010 WL 5069832, at *11 (allegation that defendant had "acted in concert" with plaintiff's former employee and was "knowingly enjoying the fruits of his theft" was sufficient to state a claim for trade secret misappropriation "in the context of the other circumstantial allegations"); *Masimo Corp.*, 2021 WL 925885, at *7.

Archer first attempts to sever Wisk's allegations of misappropriation by individual former employees from any other facts tying that misappropriation to Archer.  Mot. at 12-13.  Archer opens this portion of its motion with an obvious red herring, pretending that Wisk's allegations are built solely on the fact that Archer had hired away Wisk engineers, *id*. at 12 (citing FAC ¶ 6), and citing a case related to the inevitable disclosure doctrine.  But the portion of Wisk's FAC that Archer cites for this proposition has nothing to do with inevitable disclosure.  Instead, it describes how Wisk's forensic investigation had uncovered the fact that one of these employees—now publicly identified as Xue—had "surreptitiously downloaded thousands of files near midnight, shortly before he announced his resignation and immediately departed to Archer" while others had downloaded confidential test data or wiped traces of their computer activities shortly before departing to Archer.  FAC ¶ 6.

Archer next argues that, even though Wisk alleges these former employees downloaded vast amounts of trade secret information, these allegations are irrelevant because Wisk has failed to

---

[2]   A court in the Central District of California recently rejected a similar attempt by Archer's counsel to parse factual allegations in this manner.  *See Masimo Corp. v. Apple Inc.*, 2021 WL 925885, at *7 (C.D. Cal. Jan. 6, 2021) ("Apple makes a series of arguments criticizing Plaintiff's allegations of knowledge.  But Apple attacks these allegations in isolation and does not consider the entire sequence of events in context.  Indeed, the Court considers these allegations taken together to be sufficient . . .") (internal citations omitted).

demonstrate that information was directly transferred to Archer.  Mot. at 12-13.  Not surprisingly, Archer provides no case law in support of this particular argument, which might have force if an employee had stolen this information before resigning to go join a third party working on different products.  But the engineer in question here stole files containing trade secret information *immediately before resigning to join Archer*, where he was tasked with working in the *same* power electronics engineering role at Archer which soon announced an aircraft featuring the *same* design elements detailed in those files.  Even standing alone, the fact that Xue downloaded huge amounts of trade secret information before exiting to join Archer strongly suggests that Archer is using that information.  *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *6 (N.D. Cal. May 15, 2017) ("[I]t would strain credulity to imagine that [Defendant] plundered [Plaintiff's] vault the way he did with no intent to make use of the downloaded trove.").  But here, there is much more, and Wisk's allegations are more than sufficient.

Courts have also routinely rejected defendants' attempts—like Archer's here—to distance themselves and hide behind the misappropriation and use of trade secret information by their employees.  Notably, Archer does not seriously contest that Wisk's FAC pleads misappropriation against one of its current employees—Mr. Xue.  *See* Mot. at 13.  But as prospective and current employees of Archer, the misappropriation and use of Wisk's trade secrets by these engineers is imputed to Archer.  *See Language Line*, 2010 WL 2764714, at *4; *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 754 (E.D. Va. 2001) (holding company vicariously liable for prospective employee's misappropriation of trade secrets).  Those employees' knowledge that the trade secrets were misappropriated is similarly imputed to Archer.  *GSI Tech., Inc. v. United Memories Inc.*, 2015 WL 5655092, at *10 (N.D. Cal. Sept. 25, 2015) ("A company is deemed to have notice of any facts its employees or agents "ought, in good faith and the exercise of ordinary care and diligence, to communicate to the [company].") (citing Cal. Civ. Code § 2332); *Allergan, Inc. v. Merz Pharm.*, LLC, 2012 WL 781705, at *12 (C.D. Cal. Mar. 9, 2012) ("The Merz Defendants are liable for the acts of misappropriation committed by their employees and former employees.").

1    Indeed, even without the benefit of discovery, Wisk's trade secrets allegations suggest a

2  coordinated effort by Archer and certain former Wisk employees to steal Wisk's trade secrets and

3  use them to build a copycat eVTOL design at Archer.  Wisk's FAC alleges that current Archer

4  employees, including Xue, knowingly downloaded files containing Wisk trade secrets immediately

5  before departing to join Archer.  FAC ¶¶ 63-70.  Wisk's FAC further alleges that the overwhelming

6  similarity between Wisk's confidential eVTOL design and Archer's design suggests that the two

7  aircraft use highly similar internal components and subsystems—components and subsystems

8  designed by the same former Wisk employees who engaged in mass downloading of trade secret

9  information immediately before their departure.  *Id.* ¶ 83.  Against that backdrop, the FAC also

10  alleges facts to show that Archer's purported development timeline for bringing its aircraft to

11  market is completely unprecedented and highly suspicious based on the experience of every other

12  major player in the eVTOL market—particularly where Archer's founders have publicly claimed

13  not to have invested in the same kind of research and development as those companies.  *Id.* ¶¶ 42-

14  45, 52-60, 85-93.  Under Archer's interpretation of the law, it is not clear what else a trade secret

15  plaintiff would possibly have to allege in this situation—absent a public admission from a

16  defendant that it had actively incorporated the plaintiff's stolen trade secrets into its products.

17    As to Wisk's supporting allegations regarding the similarity of Archer's aircraft to one of

18  Wisk's confidential aircraft designs, Archer misleadingly argues that—because Wisk does not

19  claim a drawing contained in one of its patent applications as a trade secret[3]—similarity cannot be

20  used "to draw inferences of misappropriation and use here."  Mot. at 15.  Again, however, Wisk's

21  allegations regarding the similarity of Archer's design to Wisk's own internal and confidential

22  eVTOL design (reflected in the pending patent application described in the FAC) do not stand

23  alone.  Whether the fact that Archer's aircraft is the same as Wisk's design would be sufficient to

24  plead misappropriation on its own is irrelevant here, where it simply provides yet more support for

25

26  [3]  Throughout its motion, Archer also appears to suggest that Wisk has tried but failed to allege
    misappropriation of trade secrets relating to a design depicted in its confidential patent application.
27  *See* Mot. at 4, 11, 12.  That is clearly not true.  On the contrary, the fact that Archer created an
    almost identical copycat design of the eVTOL disclosed in this application—a design Wisk was
28  already working on in private—is yet additional evidence that the trade secrets stolen from Wisk
    were being incorporated into Archer's development process.

Wisk's other allegations of misappropriation.  *See E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, 2018 WL 2463869, at *7 (E.D. Cal. June 1, 2018) (denying motion to dismiss where plaintiff's allegations of similarity were supported by "other circumstantial allegations"); *Alta Devices*, 343 F. Supp. 3d at 880 (rejecting plaintiff's contention that misappropriation claims were based only on "similarities" between the parties' technology where plaintiff also pled additional facts supporting an inference of misappropriation).

Archer next attempts to minimize Wisk's allegations relating to Archer's improbable development timeline.  Mot. at 15-16.  As described at length in Wisk's FAC, "Archer's competitors in the eVTOL industry typically have spent ten years (or more) to develop an aircraft to certify, which will be followed by a years-long certification process"; whereas Archer now "inexplicably claims it has the ability to design, manufacture, and certify an aircraft by 2024—despite not even having any facilities as of December 2019."  FAC ¶ 87; *see also id*. ¶¶ 52-60, 85-86.  Given that former Wisk employees stole Wisk's trade secrets immediately before resigning and departing to Archer, Archer's brief development timeline is strongly indicative of improper use of those trade secrets.  *See Ajaxo Inc. v. E*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005) (affirming finding of misappropriation where defendant "developed the same technology in too short a time for independent development"); *GTAT Corp. v. Fero*, 2017 WL 7035655, at *1-3 (D. Mont. May 3, 2017) (granting preliminary injunction on trade secret claims where plaintiff's former employee and his new company had "detailed . . . engineering information which [defendant] could not have developed on his own in a matter of months without using [plaintiff's] proprietary technology").  Wisk properly relied on this fact in support of its other allegations.  *See* FAC ¶ 87 ("Archer knew or should have known that it was not possible to develop and certify an eVTOL aircraft in the timeframe it claimed and with the number of personnel it employed without relying on intellectual property that was not its own.").

Here too, the cases Archer cites in support of its position that accelerated development timelines cannot support misappropriation claims miss the mark.  In *Accenture*, the court found a trade secret claim based on allegations of "a surprisingly quick development trajectory" were insufficient where it was ***the only fact plaintiff alleged*** in support of its theory that defendant had

"somehow" obtained its trade secrets. *Accenture Glob. Servs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008). *Integral Development* is even further afield, as that decision also considered the merit of misappropriation allegations built ***solely*** on allegations of an accelerated development process, but did so ***after*** "undertaking extensive discovery" and ***after*** the Court had already granted summary judgment. *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2015 WL 674425, at *5 (N.D. Cal. Feb. 12, 2015).

## V.   CONCLUSION

Wisk's trade secret descriptions are far beyond what is required at this early stage of this case. So too are Wisk's misappropriation allegations, which are properly considered together rather than in total isolation from one another. Archer's recycled motion to dismiss Wisk's first and second causes of action for trade secret misappropriation should be denied.[4]

DATED: June 30, 2021

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Yury Kapgan*
        Yury Kapgan
        Robert M. Schwartz
        Michael T. Zeller
        Diane Cafferata
        Patrick Schmidt
        Michael LaFond

Attorneys for Plaintiff Wisk Aero LLC

---

[4]  To the extent the Court is inclined to grant any part of Archer's motion, Wisk respectfully requests that any dismissal be granted with leave to amend. *Masimo Corp. v. Apple Inc.*, 2020 WL 6653652, at *5 (C.D. Cal. Oct. 13, 2020) ("In the absence of an 'apparent or declared reason,' such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint.").