**HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WISK AERO LLC, | CASE NO. 3:21-cv-02450-WHO |
| Plaintiff, | **PLAINTIFF WISK AERO LLC'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SECTION 2019.210 STATEMENT** |
| vs. | |
| ARCHER AVIATION INC., | |
| Defendant. | Action Filed: April 6, 2021 |
| | Hearing Date: July 21, 2021 |
| | Hearing Time: 2:00 P.M. |
| | Hearing Location: Courtroom 2 |
| | Honorable Judge William H. Orrick |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Case No. 3:21-cv-02450-WHO

## TABLE OF CONTENTS

**Page**

UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED...................................1

I.   INTRODUCTION.........................................................................................................1

II.  LEGAL STANDARD ...................................................................................................2

A.   Fed. R. Civ. P. 12(f) Requires Viewing the Pleadings In The Light Most
     Favorable to Wisk ...............................................................................................2

B.   Section 2019.210 Requires Wisk to Identify Its Trade Secrets With
     Reasonable Particularity.....................................................................................2

C.   To Defeat Archer's Motion, Wisk Need Only Identify A Single Trade
     Secret With Reasonable Particularity.................................................................3

D.   The Merits Are Not At Issue Here .......................................................................4

III. ARGUMENT ...............................................................................................................5

A.   Archer Waived Objection To Wisk's Identification of Trade Secrets For
     Trade Secrets Archer Chose Not To Address In Its Motion To Strike .....................5

B.   Archer's Motion Relies Entirely On The Application Of An Erroneous
     Standard...............................................................................................................5

     1.   Though Not Required, Wisk's § 2019.210 Statement Describes The
          Economic Value Of Its Alleged Secrets.........................................................7

     2.   Though Not Required, Wisk Has Described How Its Trade Secrets
          Were The Subject Of Reasonable Efforts To Maintain Secrecy...................9

C.   Wisk's 2019.210 Statement Defines Its Trade Secrets With Reasonable
     Particularity .......................................................................................................10

     1.   Wisk's § 2019.210 Statement Is Not Limited To General Categories.........11

     2.   Wisk's Statement Adequately Identifies Its Trade Secrets Within
          Documents....................................................................................................13

     3.   Archer's Complaints About "Catch-All" Phrases Are Disingenuous..........14

D.   Archer's Remaining Complaints Are Baseless, As They Rely on
     Inapplicable Standards and Feigned Confusion ........................................15

     1.   Trade Secrets 1-4 Are Sufficiently Identified .............................................16

     2.   The Remaining Trade Secrets Are Sufficiently Identified...........................18

IV.  TO THE EXTENT ANY TRADE SECRET IDENTIFICATION IS
     DETERMINED INSUFFICIENT, WISK SHOULD BE GIVEN LEAVE TO
     AMEND ...................................................................................................................24

V.      CONCLUSION .................................................................................................................25

OPPOSITION TO MOTION TO STRIKE

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005)................................ 1, 3, 4, 7, 11, 14, 16, 21, 22, 23, 24

*Albert's Organics, Inc. v. Holzman*,
2020 U.S. Dist. LEXIS 135492 (N.D. Cal. July 30, 2020) ...................................... 16

*B. Braun Med., Inc. v. Rogers*,
2006 U.S. App. LEXIS 884 (9th Cir. 2006).............................................................. 10

*Bal Seal Eng'G v. Nelson Prods.*,
2017 U.S. Dist. LEXIS 232297 (C.D. Cal. March 13, 2017)..................................... 7

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2018 U.S. Dist. LEXIS 10905 (N.D. Cal. Jan. 23, 2018) ................................. 3, 6, 7, 9, 21, 23

*Brescia v. Angelin*,
172 Cal. App. 4th 133 (2009)................................ 1, 3, 4, 6, 7, 10, 11, 16, 18, 20, 22

*Cisco Sys. v. Chung*,
2021 U.S. Dist. LEXIS 240028 (N.D. Cal. 2020)......................................... 2, 6, 12

*Colaprico v. Sun Microsystems, Inc.*,
758 F. Supp. 1335 (N.D. Cal. 1991) ......................................................................... 2

*Computer Econ., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999) ......................................................................... 2

*Erie R.R. v. Tompkins*,
304 U.S. 64 (1938) ..................................................................................................... 2

*Genentech, Inc. v. JHL Biotech, Inc.*,
2019 U.S. Dist. LEXIS 36140 (N.D. Cal. March 1, 2019) ................................. 11, 22

*I-Flow Corp. v. Apex Med. Techs., Inc.*,
2008 U.S. Dist. LEXIS 44551 (S.D. Cal. May 23, 2008) ........................................... 4

*In re 2TheMart.com, Inc., Sec. Litig.*,
114 F. Supp. 2d 955 (C.D. Cal. 2000)........................................................................ 2

*Inteliclear, LLC v. ETC Global Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020)............................................................... 3, 4, 5, 25

*Krainski v. Nevada ex*,
616 F.3d 963 (9th Cir. 2010).................................................................................... 25

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .................................................................. 15

*Loop AI Labs, Inc. v. Gatti*,
2015 U.S. Dist. LEXIS 170349 (N.D. Cal. Dec. 21, 2015) ..................................... 25

*M/A COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 U.S. Dist. LEXIS 228417 (C.D. Cal. Sept. 3, 2019) ........................................... 14, 15, 19

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
   2018 U.S. Dist. LEXIS 17776, 2018 WL 692022 (N.D. Cal. Feb. 2, 2018) ............................. 6

*Perlan Therapeutics, Inc. v. Superior Court*,
   178 Cal. App. 4th 1333 (2009) ................................................................... 4, 6, 10, 11, 19

*Phoenix Techs., Ltd. v. DeviceVM, Inc.*,
   2010 WL 8590525 (N.D. Cal. Mar. 17, 2010) ................................................................. 3, 4

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2020 U.S. Dist. LEXIS 69048 (N.D. Cal. Apr. 20, 2020) ...................................................... 6, 7

*ReadyLink Healthcare v. Cotton*,
   126 Cal. App. 4th 1006 (2005) ........................................................................................ 24

*Redfin Corp. v. iPayOne, LLC*,
   2018 U.S. Dist. LEXIS 45698 (W.D. Wash. March 20, 2018) ............................................. 20

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
   155 Cal. App. 4th 1528 (2007) ........................................................................................ 24

*Social Apps, LLC v. Zynga, Inc.*,
   No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767 (N.D. Cal. June 14, 2012) .............. 13

*Sunbelt Rentals, Inc. v. Victor*,
   2014 U.S. Dist. LEXIS 14416 (N.D. Cal. Feb. 5, 2014) ...................................................... 10

*Uniloc United States, Inc. v. Apple, Inc.*,
   2018 U.S. Dist. LEXIS 58594 (N.D. Cal. Apr. 5, 2018) ........................................................ 2

*WeRide Corp. v. Kun Huang*,
   379 F. Supp. 3d 834 (N.D. Cal. 2019) ......................................................................... 3, 24

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ............................................................................................. 2

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ................................................................................... 10, 17

### Statutory Authorities

Cal. Civ. Code § 3426.1 ......................................................................................................... 8, 9

Cal. Civ. Proc. Code § 2019.210 ............................................................................................... 2

### Rules and Regulations

Fed. R. Civ. P. 12(f) ................................................................................................................. 2

Fed. R. Civ. P. 26 ..................................................................................................................... 7

1

## I.     **INTRODUCTION**

2

In connection with its motion for preliminary injunction, Plaintiff Wisk Aero LLC

3  ("Wisk") submitted a detailed 74-page § 2019.210 disclosure that identified 52 separate trade

4  secrets with reasonable particularity.  Defendant Archer Aviation Inc. ("Archer") has moved to

5  strike this statement, not because it is insufficient under the law, but because it would have to

6  abandon its latest effort to dismiss Wisk's trade secret claims, which incorporate this statement by

7  reference.

8

Archer's arguments against Wisk's § 2019.210 disclosure have no merit. First, Archer

9  attacks only 19 of the 52 trade secrets identified in the statement, waiving any objection as to the

10  33 remaining trade secret identifications. On this basis alone, its motion to strike the entire

11  statement should be denied.

12

Second, most of Archer's arguments rest on its application of legal principles that have

13  nothing to do with the requirements of § 2019.210, and instead go to whether Wisk's trade secret

14  claims will succeed on the merits. That is improper. *Advanced Modular Sputtering, Inc. v.*

15  *Superior Court*, 132 Cal. App. 4th 826, 835 (2005). For example, Archer complains that Wisk

16  failed to specify whether or not the identified trade secrets have value or are secret. These claims

17  are factually untrue, but they are of no moment here anyway. These are issues that are to be

18  decided on the merits and not at this juncture. *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147-149

19  (2009). This information is not required to identify trade secrets with reasonable particularity.

20

Archer's motion also  presents other straw man arguments. For example, it claims Wisk

21  failed to identify its trade secrets like claims that appear at the end of a patent, did not identify

22  specific page numbers, and identified too many documents to support its identification of trade

23  secrets. These requirements do not exist. Wisk was required to make a showing that is reasonable,

24  *i.e.*, fair, proper, just and rational under all of the circumstances. It has done that. Because Wisk

25  identified its trade secrets with reasonable particularity, Archer's motion should be denied.

26

27

28

1    II.    **LEGAL STANDARD**

2         A.    **Fed. R. Civ. P. 12(f) Requires Viewing the Pleadings In The Light Most**

3                **Favorable to Wisk**

4         Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading

5    any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.

6    Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time

7    and money that must arise from litigating spurious issues by dispensing with those issues prior to

8    trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). However, motions

9    to strike are disfavored and "*should not be granted unless it is clear that the matter to be stricken*

10   *could have no possible bearing on the subject matter of the litigation*." *Colaprico v. Sun*

11   *Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (emphasis added).

12        When a court considers a motion to strike, it "must view the pleadings [trade secret

13   disclosure] in light most favorable to the pleading party." *Uniloc United States, Inc. v. Apple, Inc.*,

14   2018 U.S. Dist. LEXIS 58594, at *1 (N.D. Cal. Apr. 5, 2018). A court must deny a motion to

15   strike if there is any doubt whether the allegations in the pleadings might be at issue in the action.

16   *Cisco Sys. v. Chung*, 2021 U.S. Dist. LEXIS 240028, at *7 (N.D. Cal. 2020) (denying motion to

17   strike identification of trade secrets), *citing In re 2TheMart.com, Inc., Sec. Litig.*, 114 F. Supp. 2d

18   955, 965 (C.D. Cal. 2000).

19        B.    **Section 2019.210 Requires Wisk to Identify Its Trade Secrets With Reasonable**

20                **Particularity**

21        Prior to commencing discovery, California trade secret plaintiffs must "identify the trade

22   secret[s] at issue "with reasonable particularity."  Cal. Civ. Proc. Code § 2019.210; *Computer*

23   *Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) (applying § 2019.210

24   in federal court pursuant to *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). The term "reasonable

25   particularity" requires that a plaintiff "make some showing that is reasonable," which, in effect,

26   means "fair, proper, just, and rational, under all of the circumstances to identify its alleged trade

27   secret in a manner that will allow the trial court to control the scope of subsequent discovery,

28   protect all parties' proprietary information, and allow them a fair opportunity to prepare and

present their best case or defense at a trial on the merits." *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835.

The reasonable particularity requirement "is not statutorily defined." *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2018 U.S. Dist. LEXIS 10905, at *7 (N.D. Cal. Jan. 23, 2018) (finding trade secret plaintiff identified trade secrets with reasonable particularity). In fact, § 2019.210 is purposely vague to permit "play in the joints." *Id.* (*quoting Advanced Modular Sputtering*, 132 Cal. 4th at 835). A plaintiff is required to "identify the alleged trade secret with adequate detail to allow the defendant to investigate how it might differ from matters already known and to allow the court to craft relevant discovery." *Brescia*, 172 Cal. App. 4th at 147.

Notably, the reasonable particularity requirement does not demand that a plaintiff "define every minute detail of its claimed trade secret at the outset of litigation" or that a trial court "conduct a miniature trial on the merits of a misappropriation claim before discovery commences." *Advanced Modular Sputtering*, 132 Cal. 4th at 835-36. At this stage, "reasonable particularity" is a low standard; "[t]he plaintiff need not spell out the details of the alleged trade secrets," and may simply identify "the boundaries within which the secret lies." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019). When ruling on the sufficiency of the identification, the "identification should be liberally construed and reasonable doubts about its sufficiency should be resolved in favor" of the plaintiff. *Phoenix Techs., Ltd. v. DeviceVM, Inc.*, 2010 WL 8590525, at *3 (N.D. Cal. Mar. 17, 2010).

**C.    To Defeat Archer's Motion, Wisk Need Only Identify A Single Trade Secret With Reasonable Particularity**

In *Inteliclear, LLC v. ETC Global Holdings, Inc.*, the Ninth Circuit reversed a district court's summary judgment finding on the grounds that pre-discovery, Plaintiff only had to identify "one trade secret with sufficient particularity to create a triable issue." 978 F.3d 653, 659 (9th Cir. 2020). The Plaintiff in *Inteliclear* served a § 2019.210 statement identifying its trade secret as "the InteliClear System's unique design and concepts and the unique software, formulas, processes, programs, tools, techniques, tables, fields, functionality, and logic by which its components interrelate and process data." *Id.* at 658. Defendant moved for summary judgment on the grounds

-3-

that Plaintiff had failed to prove it possessed a trade secret. *Id.* The Ninth Circuit reversed the district court's summary judgment ruling, finding that there "is at least a genuine dispute as to whether InteliClear was successful in identifying at least one trade secret with sufficient particularity." *Id.* at 659. To be clear, Wisk believes that it has identified all of its trade secrets at a level of particularity that far exceeds the level of specificity found adequate in *Inteliclear*. Nevertheless, the Ninth Circuit's guidance regarding the low threshold for trade secret identification on a motion to dismiss provides important context for the analysis. In fact, where discovery has not yet been completed, it is not fatal for a trade secret plaintiff to leave "open the possibility of expanding its identifications later." *Inteliclear,* 978 F.3d at 659 (finding the identification of a single trade secret with reasonable particularity sufficient to defeat summary judgment).

### D. The Merits Are Not At Issue Here

"Where, as here, credible experts declare that they are capable of understanding the designation and distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence." *Advanced Modular Sputtering,* 132 Cal. App. 4th at 836.; *see also I-Flow Corp. v. Apex Med. Techs., Inc.*, 2008 U.S. Dist. LEXIS 44551, at *14-15 (S.D. Cal. May 23, 2008) (crediting testimony of plaintiff's witness in finding § 2019.210 statement disclosed trade secrets with reasonable particularity). Contrary expert declarations are inconsequential to the reasonableness of the disclosure. *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835; *Phoenix Techs., Ltd.*, 2010 WL 8590525, at *12-13 (finding trade secrets were adequately disclosed despite credible expert opinions on both sides). This would be true even if, unlike here, "there is undeniable evidence that the plaintiffs' purported trade secret is actually public knowledge." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1351 (2009). The *Perlan* court elaborated: "The statute . . . does not create a procedural device to litigate the ultimate merits of the case–that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Id.* (*quoting Brescia* 172 Cal. App. 4th at 149).

III.   **ARGUMENT**

A.   **Archer Waived Objection To Wisk's Identification of Trade Secrets For Trade Secrets Archer Chose Not To Address In Its Motion To Strike**

In its Motion, Archer argues that Wisk failed to set forth with "reasonable particularity" just 19 trade secrets. *See* Dkt. 50 n.2. Archer claims it did not address the remaining 33 trade secrets because "Wisk actually only contends that Archer misappropriated 19 of them." *Id.*

That is not true. Wisk has alleged that Archer misappropriated all 52 trade secrets identified in its § 2019.210 statement. Dkt. 16-1. While its preliminary injunction motion addresses in detail "only those trade secrets for which the evidence of trade secret misappropriation is most direct," Wisk seeks discovery on all 52 trade secrets it identified. Dkt. 16 at 21. "Based on the unlawfully downloaded files, Archer's implausibly short developmental timeframe, Archer's copycat design, and the public statements of Archer's founders, Wisk believes that discovery will reveal even further evidence of rampant trade secret misappropriation." *Id.*

Archer's decision not to identify any deficiency in the identification of 33 out of 52 trade secrets disclosed in Wisk's § 2019.210 statement[1] constitutes a waiver of any objection. With 33 trade secrets sufficiently identified by virtue of this concession, the entirety of Archer's Motion should be denied. *Inteliclear,* 978 F.3d at 659.

B.   **Archer's Motion Relies Entirely On The Application Of An Erroneous Standard**

The standard Archer advances for a § 2019.210 statement would require Wisk to make the same showing before discovery has begun that it is required to make in a trial on the merits. *Cf.* Dkt. 50 at 2 and California Model Jury Instructions at CACI No. 4402 ("To prove that the information was a trade secret, plaintiff must prove all of the following: 1. That the information was secret; 2. That the information had actual or potential independent economic value because it was secret; and 3. That plaintiff made reasonable efforts to keep the information secret."); *see also*

---

[1]   The trade secrets that Archer does not object to are Nos. 5-8, 10-11, 13, 15, 19, 22-28, 32-43, 45, and 47-52.

Cal. Civ. Code § 3426.1(d) (defining a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). The law does not demand such a showing at this stage. *Brescia*, 172 Cal. App. 4th at 149; *see also Proofpoint, Inc. v. Vade Secure, Inc*., 2020 U.S. Dist. LEXIS 69048, at *29 (N.D. Cal. Apr. 20, 2020) (explaining the court is not required under the reasonable particularity standard to "conduct a miniature trial on the merits of a misappropriation claim before discovery may commence").

For example, there is no requirement that Wisk describe in the § 2019.210 statement "how each trade secret has been the subject of reasonable efforts to maintain its secrecy." Dkt. 50 at 5. *Perlan*, 178 Cal. App. 4th at 1351 (a trade secret plaintiff is not required to show "that the purported trade secrets are actually secret" in its § 2019.210 statement). "This is an element of their case that must be proven, but not at the prediscovery stage of the action." *Id.*

Wisk only needed to identify its trade secrets with adequate detail to allow Archer to investigate how they might differ from matter already known and to allow the court to craft relevant discovery. *Brescia*, 172 Cal. App. 4th at 147. Because Wisk's § 2019.210 statement meets this standard, Archer's Motion must be denied. *See Cisco*, 2021 U.S. Dist. LEXIS 23787, at *19 (denying motion to strike when viewing the pleadings in the "light most favorable to the pleading party").

There are some situations which would permit a Court to require a trade secret plaintiff to identify additional information regarding its trade secrets, but that is not the case here. For example, in opposing a motion for summary judgment, after full discovery, a trade secret plaintiff should be prepared to set forth its trade secrets in a sufficient manner to show the existence of a genuine issue of material fact. *See, e.g.*, *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2018 U.S. Dist. LEXIS 17776, 2018 WL 692022, at *4 (N.D. Cal. Feb. 2, 2018) (finding § 2019.210 disclosure adequate in deciding motion for summary judgment); *Bladeroom Grp.*, 2018 U.S. Dist. LEXIS 10905, at *3-5 (same). If a trade secret defendant alleges that none of the definitional

1  requirements of a trade secret have been met in a summary judgment motion, the plaintiff could be

2  required to come forward with sufficient evidence on each requirement to show the existence of a

3  genuine issue of material fact.

4        Here, in contrast, Wisk served its § 2019.210 statement before discovery began and no

5  motion for summary judgment has been filed. At this point, in "assessing the adequacy of a trade

6  secret disclosure, 'the designation should be liberally construed, and reasonable doubts about its

7  sufficiency resolved in favor of allowing discovery to go forward.'" *Proofpoint,* 2020 U.S. Dist.

8  LEXIS 69048, at *30 (*quoting Brescia*, 172 Cal. App. 4th at 149). "At this very preliminary stage

9  of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to

10  describe it with the greatest degree of particularity possible, or to reach such an exacting level of

11  specificity that even its opponents are forced to agree the designation is adequate." *Advanced*

12  *Modular Sputtering*, 132 Cal. App. 4th at 836. "What is required is not absolute precision, but

13  'reasonable particularity.'" *Id.* Wisk has disclosed its trade secrets with the reasonable particularity

14  required.

15             1.   Though Not Required, Wisk's § 2019.210 Statement Describes The
                     Economic Value Of Its Alleged Secrets
16

17        Wisk was not required to set forth the economic value of its trade secrets in its § 2019.210

18  statement. *See Bal Seal Eng'G v. Nelson Prods.*, 2017 U.S. Dist. LEXIS 232297, *18 (C.D. Cal.

19  March 13, 2017) ("For purposes of complying with section 2019.210 or FRCP 26, a plaintiff need

20  not prove at the discovery stage that each trade secret identified qualifies for trade secret

21  protection."). Archer's objection to Wisk's disclosure narrowly focuses on the fact that the words

22  "economic value" do not specifically appear in Wisk's § 2019.210 statement.

23        The truth is that although it was not required, Wisk's § 2019.210 statement articulated "a

24  description of how each secret has derived independent, actual or potential economic value by

25  virtue of not being generally known to the public." *See* Dkt. 16-8. Archer simply chooses to ignore

26  Wisk's description. In its § 2019.210 statement, Wisk describes the trade secrets as well as how

27  they were used to design Wisk's eVTOL aircraft. Dkt. 16-8. Because others in the eVTOL

28  industry could use Wisk's trade secret information to design an eVTOL aircraft, it has value. *See*

1  Cal. Civ. Code § 3426.1. Indeed, Archer appears to have used Wisk's trade secret data to do that

2  very thing.

3       For example, Wisk explained that trade secrets 1-6 are █████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████" Dkt. 16-8 at 5. Trade

8  secrets 7-8 similarly cover ███████████████████████████████████████████

9  ████████████████████████████████████████████████████████████"

10  and "████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████" *Id.* at 7-9. As set forth in Wisk's

13  statement, the data/information described in trade secrets 1-8 and 15 is valuable because it shows

14  how one can design and develop electric vertical takeoff and landing (eVTOL) aircraft for use in

15  urban air mobility, which Archer concedes is highly valuable economically. *See* Cal. Civ. Code

16  § 3426.1 (defining trade secrets as information having "independent economic value, actual or

17  potential, from not being generally known to the public or to *other persons who can obtain*

18  *economic value from its disclosure or use*.") (emphasis added).

19       Wisk's trade secrets are especially valuable for designing eVTOLs with identical or similar

20  designs. As the name implies, these vehicles have to be capable of vertical takeoffs and landings.

21  As explained by Dr. Gandhi, there are technical tradeoffs that need to be made when designing

22  eVTOLs. *See, e.g.*, Dkt. 16-4 ¶ 39 (explaining that ████████████████████████

23  (████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████"); *see also*

26  *id.* ¶¶ 43, 45-47, 50-55, 57-60. Knowing the advantages and disadvantages of these technical

27  tradeoffs is useful for making decisions about the design of an eVTOL. *Id.* ("████████████

28  ████████████████████████████████████████████████████████████

-8-                    Case No. 3:21-cv-02450-WHO

OPPOSITION TO MOTION TO STRIKE

1  ██████████████████████████████████████████████████████"); *see also id.* ¶

2  72 (██████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████). Wisk's trade secret data is most useful,

5  *i.e.* valuable, when designing "a similarly configured aircraft" which is exactly what Archer did.

6  *Id.* ¶ 41.

7  The potential market for eVTOL aircraft, which by Archer's own admission, is massive—

8  up to trillions of dollars—also demonstrates the value of Wisk's trade secrets. *See* Dkt. 16-3 at 6

9  ("Morgan Stanley estimates Urban Air Mobility to be up to a $1.5 to approx $3.0 trillion industry

10  by 2040"). For Archer specifically, the trade secret data it misappropriated from Wisk was

11  valuable because Archer used it to purportedly secure "$1.0 billion in orders from United

12  Airlines" for its copycat eVTOL design, something it could not have done otherwise. *Id.*; *see also*

13  Dkt. 16-4 ¶¶ 23-32 (explaining that "Archer's stated eVTOL development timeline is too short for

14  independent development.").

15  As to trade secrets 9-52, Archer admits that Wisk's § 2019.210 statement and its expert

16  declaration explain how the identified trade secret information is "useful." Dkt. 50 at 5; *see also*

17  Dkt. 16-1 ¶¶ 32-62. Because Archer admits the information is useful, it is by definition

18  economically valuable. Cal Civ Code § 3426.1(d)(1). While Archer argues that "Dr. Collins does

19  not explain how any of the trade secrets derive economic value from being secret as opposed to

20  just being useful," such an explanation is not required. *Bladeroom Grp.*, 2018 U.S. Dist. Lexis

21  10905, at *5-6 (explaining a trade secret "consists of any unpatented idea which may be used for

22  industrial and commercial purposes."). As explained above, the information in trade secrets 9-52 is

23  secret and can be used by others to design eVTOL aircraft. Therefore, it constitutes trade secret

24  information.

25  2.  <u>Though Not Required, Wisk Has Described How Its Trade Secrets Were</u>

26  <u>The Subject Of Reasonable Efforts To Maintain Secrecy.</u>

27  Wisk was not obligated in its § 2019.210 statement to describe "how each trade secret has

28  been the subject of reasonable efforts to maintain its secrecy" either. *Perlan*, 178 Cal. App. 4th at

-9-

1351 (trade secret plaintiffs need not show "that the purported trade secrets are actually secret" in their § 2019.210 statements). Rather, that is an issue to be proven at trial. *Id.*

Nevertheless, Wisk has already explained in great detail in the declaration of its executive, Caryn Nightengale, the measures Wisk takes to maintain the secrecy of its trade secrets. *See* Dkt. 16-29. Regardless of whether it appears in the § 2019.210 statement itself, or whether it is required to be, Wisk has sufficiently demonstrated that its trade secrets were the subject of reasonable efforts to maintain secrecy. *See Sunbelt Rentals, Inc. v. Victor*, 2014 U.S. Dist. LEXIS 14416, at *18-19 (N.D. Cal. Feb. 5, 2014) (finding plaintiff established its "pricing information" constitutes a trade secret because the declaration plaintiff submitted in support of its preliminary injunction motion explained how plaintiff "limits the dissemination of its pricing information to only certain employees").

### C.    Wisk's 2019.210 Statement Defines Its Trade Secrets With Reasonable Particularity

A § 2019.210 statement is not "a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists." *Brescia*, 172 Cal. App. 4th at 149. Wisk's § 2019.210 statement merely had "to permit the defendant to ascertain at least the boundaries within which the secret lies." *B. Braun Med., Inc. v. Rogers*, 2006 U.S. App. LEXIS 884, at *9 (9th Cir. 2006); *see also Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002). It more than accomplishes that.

As detailed above, Wisk submitted declarations from two experts, each of whom stated they could understand the trade secrets identified and could distinguish them from information already known to persons in the field. Dkt. 16-1 ¶¶ 26-63; Dkt. 16-4 ¶¶ 37-75. Those declarations are sufficient to show the trade secrets were identified with reasonable particularity. *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835; *Perlan Therapeutics, Inc.*, 178 Cal. App. at 1351; *Phoenix Techs., Ltd.*, 2010 WL 8590525, at *12-13 (relying on expert's opinion that trade secrets were adequately disclosed in denying motion to compel).

Throughout its Motion, Archer repeatedly complains that its own expert, Dr. Smith, "is unable to distinguish" Wisk's trade secrets "from what is known by others in the field." *See, e.g.,*

1    Dkt. 50 at 11. Archer thus implicitly asks the court to decide as a matter of law whether each trade

2    secret identified actually constitutes a trade secret. That is procedurally improper. There is no

3    requirement that Wisk prove in its § 2019.210 statement that its trade secrets were not generally

4    known by others in the field. *Brescia*, 172 Cal. App. 4th at 149 (rejecting argument that in a

5    § 2019.210 statement "trade secret claimants must be required in all cases to show how the alleged

6    trade secret is distinguished from things already known to skilled persons in the field"); *see also*

7    *Genentech, Inc. v. JHL Biotech, Inc.,* 2019 U.S. Dist. LEXIS 36140, at * 49-50 (N.D. Cal. March

8    1, 2019) (same).

9         The fact that Archer submitted a contrary expert declaration is also "inconsequential" at

10   this stage. *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835. And this would be true even

11   if, unlike here, "there is undeniable evidence that the plaintiffs' purported trade secret is actually

12   public knowledge." *Perlan*, 178 Cal. App. 4th at 1351.

13        If anything, Archer's expert declaration and its opposition to Wisk's motion for

14   preliminary injunction show that Archer is, in fact, able to understand the trade secrets disclosed.

15   In particular, Archer was able to depose Wisk's experts about their opinions and understanding of

16   the trade secrets and argue, in its opposition to Wisk's motion for preliminary injunction, that it is

17   not currently using Wisk's trade secrets. Dkt. 58 at 19-21. If, as Archer claims, Wisk's trade secret

18   disclosures were insufficient, it would not be capable of mounting a defense. *Genentech, Inc.,*

19   2019 U.S. Dist. LEXIS at *49-50 (rejecting defendants' claim that the trade secrets were not

20   sufficiently identified in light of defendant's ability to mount a defense).

21              1.    Wisk's § 2019.210 Statement Is Not Limited To General Categories

22        Archer's Motion relies on arguments that individual elements of Wisk's 2019.210

23   disclosure, taken alone, would be insufficient. For example, Archer complains that "[n]early every

24   one of Wisk's alleged secrets begins with a general description of a general category of

25   information." Dkt. 50 at 7. Archer argues the "categories are so broad that any airplane company

26   would have documents within the category." *Id.*

27        However, Wisk's trade secrets are not limited to general categories. Wisk went much

28   further and sufficiently identified its trade secrets with "reasonable particularity." *Cisco*, 2021 U.S.

-11-                                                         Case No. 3:21-cv-02450-WHO

Dist. LEXIS 240028, at *7 (explaining that in considering a motion to strike the identification of

trade secrets, the Court must view the disclosure "in the light most favorable to the pleading

party").

For example, with respect to trade secret 1, Wisk cites to specific documents and explains:



Dkt. 16-8 at 5. Thus, Wisk described the trade secret information— ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ where it could be found—a ████████████████████████████

████████████████[2] and how it could be used. *Id.* Wisk provided similar disclosures for each of

the other 51 trade secrets identified in its § 2019.210 statement. Thus, Archer's complaints

regarding the identification of general categories is unfounded.

---

[2] Archer states that the document titled "████████████████████████████████" "seems to come
from another company." Dkt 50 at 8. Wisk assumes Archer means a company other than Wisk, but
this is incorrect. The document is identified as "Zee.Aero Proprietary" information and, as
explained in the declaration of Geoff Long, "during its ten year history, Wisk has also been known
as Levt, ***Zee.Aero***, Kitty Hawk, and Cora." Dkt. 16-27 ¶ 4 (emphasis added).

1   Archer's citation to *Social Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S.

2   Dist. LEXIS 82767, at *11-12 (N.D. Cal. June 14, 2012), is inapt. In that case, some of the

3   plaintiff's trade secrets were identified *only* as general categories of information. *Id.* (finding a

4   trade secret described as "gameplay items, icons and interface artwork" insufficiently disclosed

5   under 2019.210). Wisk did not do that. Thus, this case has no application to Wisk's § 2019.210

6   statement.

7           2.   <u>Wisk's Statement Adequately Identifies Its Trade Secrets Within</u>

8              <u>Documents</u>

9   Archer complains that "Wisk lists non-exhaustive examples of documents—often many

10  documents, spanning hundreds of pages, from ███████████████████████—that Wisk

11  claims reflect the unidentified secret(s) in the general categories." Dkt. 50 at 8. According to

12  Archer, Wisk is hiding the ball by "failing to point to the precise secrets alleged to lie in the

13  documents." *Id.* In particular, Archer complains that Wisk points to unidentified "███" in the

14  document titled ███████████████████ without identifying what specific page or

15  ███ (or anything else) is a trade secret. *Id.* at 8-9.

16  Here again, Archer is wrong. As explained above, Wisk identified the trade secret in the

17  document ████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████ Even a cursory review of the document shows that the information identified in

21  Wisk's § 2019.210 statement—that is, ██████████████████████████

22  ████████████████████████████████████████████

23  ██████████████████████████—appears by name on pages 11-

24  14 and 15-23 of the document.

25  This is not a case like *M/A COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 U.S. Dist. LEXIS

26  228417, at *11 (C.D. Cal. Sept. 3, 2019) where the Plaintiff identified large numbers of documents

27  without any reference to specific pages. To the contrary, Wisk identified the information it

28  considers to be a trade secret by name. An expert in the art when given the exact name of the

1   information considered secret is capable of looking through a document and identifying that

2   information. *See, e.g.*, Dkt. 16-4 ¶¶ 38-43, 46-47, 51-55, 58-59.

3                   3.      Archer's Complaints About "Catch-All" Phrases Are Disingenuous

4          According to Archer, "Wisk carefully avoids delineating any given secret by relying on

5   catchall phrases like 'including'" and citing non-exhaustive lists of documents. Dkt. 50 at 9.

6   Again, Archer seeks to impose on Wisk requirements greater than the law requires. Reasonable

7   particularity does not require a party to define its trade secret down to the finest detail. Rather, it

8   requires that the plaintiff make some effort to define the trade secret in a manner that is fair and

9   proper under all the circumstances. *Advanced Modular Sputtering,* 132 Cal.App.4th at 835-36.

10  Wisk has met this requirement.

11         In identifying its trade secrets, Wisk describes them with particularity *and then* identifies

12  documents which disclose the trade secrets. Wisk's disclosure is reasonable, fair, and proper under

13  all the circumstances. Indeed, it is far beyond what is required. Contrary to Archer's suggestion,

14  the phrase "Documents reflecting this trade secret include … " (Dkt. 50 at 9) does not hide

15  anything, because this language appears after the trade secret has already been described with

16  reasonable particularity in the text of the § 2019.210 statement. Dkt. 16-8.

17         For example, Wisk identifies trade secret 9 as a ████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████" Dkt. 16-8 at 9. Wisk goes on to explains that the trade

20  secret includes '████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████████████████' as

22  well as an "'████████████████████████████████████████████████

23  ████████████████████████████" *Id.* After describing the trade secret in great detail, Wisk

24  identifies documents that contain details of the ████████████described in Wisk's § 2019.210

25  statement. *Id.* at 10. This is not a case, as Archer implies, where Wisk merely points to documents

26  as disclosing a trade secret without any explanation as to what the trade secret is. Contrary to

27  Archer's allegation, after identifying the trade secrets, Wisk then added documents and exemplars

28  to facilitate the identity of those trade secrets, not to hide the ball.

None of the cases Archer cites are applicable here. In *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-14 (N.D. Cal. 2016), the Court found a publicly filed § 2019.210 statement that contained "'catchall' descriptions that refer to allegations made in pleadings and other court filings" insufficient. The Court's primary objection to the Loop AI Labs trade secret disclosure was its catchall citation to publicly filed documents. *Id*. In contrast, Wisk's § 2019.210 statement contains no reference to publicly filed documents. Rather, it has set out in detail specific trade secret information and identified a limited number of confidential documents that further detail the trade secrets. Dkt. 16-8.[3]

In *M/A COM*, the Court rejected the trade secret plaintiffs' vague description of one trade secret as a "compilation of all trade secrets set forth above including those combined with public technology and confidential and non-confidential business information to produce MACOM products." *M/A COM,* 2019 U.S. Dist. LEXIS 228417, at *9-10. As the Court explained, this description suggests "Plaintiffs are claiming additional trade secrets based on unidentified combinations of trade secrets, public technology, and other nonconfidential business information." *Id*. at 10. Again, this case is different. Wisk's § 2019.210 statement does not use "catch-all" descriptions to describe the trade secret in a way that leaves Archer guessing as to the potential existence of additional trade secrets. Wisk's use of the terms "include" and "exemplary" identify certain documents and exemplars in the documents that describe the trade secrets with reasonable particularity. *See Advanced Modular Sputtering*, 132 Cal. App. 4th at 835.

**D.      Archer's Remaining Complaints Are Baseless, As They Rely on Inapplicable Standards and Feigned Confusion**

The bulk of Archer's Motion is directed to purported defects in Wisk's identification of specific trade secrets. Most of Archer's complaints simply rehash the arguments discussed above. None of these complaints is legitimate, much less justifies striking Wisk's § 2019.210 statement.

---

[3]   While Archer cites *Albert's Organics, Inc. v. Holzman*, 2020 U.S. Dist. LEXIS 135492, at *9-10 (N.D. Cal. July 30, 2020) for the proposition that "the use of catchall terms such as 'including' also indicates an overly broad designation," the Court cites no actual use of that term in the § 2010.219 statement. In any event, the Court did not find that a trade secret plaintiff could not include exemplar information in its trade secret disclosure.

1          1.     <u>Trade Secrets 1-4 Are Sufficiently Identified</u>

2          With respect to trade secrets 1-4, Archer complains that they are directed to broad, general

3   categories of information and that Wisk fails to differentiate these trade secrets from information

4   other companies possess. Neither of these arguments is based in fact.

5          Wisk's trade secrets 1-4 cover ██████████████████████████████████████

6   ██████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████ ) Dkt. 16-8 at 5-6.

8   Archer's complaint that its expert cannot distinguish trade secrets 1-4 from what is known by

9   others in the field is inconsequential. *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835. The

10  § 2019.210 statement is not required to "detail how the trade secret differs from matters of general

11  knowledge in the trade." *Albert's Organics, Inc.*, 2020 U.S. Dist. LEXIS 135492, at * 4-5. It is not

12  Wisk's burden, at this early stage of the case, to differentiate its trade secrets from matters already

13  known. *Brescia*, 172 Cal. App. 4th at 147-50.

14         It is also irrelevant if the § 2019.210 statement does not explain the information that is

15  secret as opposed to the information that is already known. *See, e.g.*, Dkt. 50 at 10 ("Wisk never

16  explains what differentiates its ████████████ from that of other companies."); Dkt. 50 at 13

17  ("Wisk makes no attempt to differentiate between the secret ████████████ information and

18  the information known to others in the field."). The § 2019.210 statement "was intended to require

19  the trade secret claimant to identify the alleged trade secret with adequate detail to allow the

20  defendant to investigate how it might differ from matters already known and to allow the court to

21  craft relevant discovery." *Brescia*, 172 Cal. App. 4th at 147-50. "Absent a showing that

22  elaboration is required to serve the [section's] goals, section 2019.210 should not be construed to

23  require the claimant to explain why the alleged trade secret differs from matters already known in

24  the industry." *Id*.

25         Archer also seems to believe that the data described in trade secrets 1-4 cannot constitute

26  trade secrets because "any aircraft company—whether it be Wisk, Archer, or some other—would

27  have" similar information. Dkt. 50 at 10; *see also* Dkt. 50 at 13 ("*any* airplane company will have

28  ██████████████████████████ "). This argument makes no sense. Customer

-16-                              Case No. 3:21-cv-02450-WHO

lists and pricing information are regularly found to constitute trade secret information, and yet every company that sells products will have this type of information. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1455 (2002) (collecting cases). While every aircraft company may have ███████████████████████ they do not have *this* data. Dkt. 16-4 ¶ 32. Only aircraft companies considering this or similar designs, like Wisk, would have this specific information and find it useful. *Id. Id.* It is the information specifically created for this design that constitutes trade secret information.

Archer next argues that data derived using software which happens to be generally available to companies across the United States cannot constitute trade secret information. *See* Dkt. 50 at 11 ("████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████"). Not surprisingly, Archer cites no support for this novel proposition. Indeed, if any information that could be produced using software generally available to companies across the United States was not protectable as a trade secret, it would essentially eliminate the ability to protect any idea as a trade secret.

Finally, Archer complains that it cannot tell what the trade secrets are because the document Wisk cites as disclosing the trade secrets "is 140 pages long, but Wisk does not point to the specific pages where the alleged trade secret lies in the document." Dkt. 50 at 11. As already explained above, this is untrue. For example, trade secret no. 2 covers "██████████████ ████████████████████████████████████████████ ██████████████████████████████████████" Dkt. 16-8 at 5. It is readily apparent where the corresponding information exists in the document. ████████ ████████████████████████████ And directly below the title are ██████ ████████████████████████████████████████████ ██████████████████████" Dkt. 16-6. In other words, this slide discloses exactly what Wisk's trade secret no. 2 identifies as the trade secret. *See also id.* at 26 (slide entitled "████████████"), 27 (slide entitled "████████████████"). It is telling that both Archer and its

1  expert feign an inability to identify these pages in the powerpoint, despite the fact that the slides

2  are titled with the exact name of the trade secret identified in the § 2019.210 statement.

### 2. The Remaining Trade Secrets Are Sufficiently Identified

4  With respect to trade secret nos. 9, 12, 14, 16, 20, 21, 17, 18, 29, 30, 31, 44, and 46, Archer

5  raises the same baseless complaints about Wisk's identification of its trade secrets that have

6  already been discussed. One familiar argument is that the trade secrets that Wisk identified cannot

7  be distinguished from what was already known or basic knowledge in the field. But whether

8  information is a trade secret or is generally known is an argument that goes to the merits of Wisk's

9  claim, something that is not being decided at this stage of the case. *Brescia*, 172 Cal. App. 4th at

10  147-50. As stated above, § 2019.210 "does not create a procedural device to litigate the ultimate

11  merits of the case—that is, to determine as a matter of law on the basis of evidence presented

12  whether the trade secret actually exists." *Id.* at 149.

13  Trade Secret No. 9

14  Wisk's trade secret no. 9 covers its design for a '█████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ███████████████████████████' used in a six-boom eVOTL aircraft design. Dkt. 16-8 at

17  9-10. Archer complains that Wisk has not identified what is secret about its overall design. But the

18  statement clearly describes what is secret about the ███████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████" Dkt. 16-8 at 10. The benefit of this design for use with

21  eVTOL aircraft is a secret.

22  Next, Archer argues that the documents identified were not downloaded by any former

23  Wisk employee, that some of the documents were not marked confidential, and that four of the

24  documents come from a company other than Wisk. These arguments have no merit.

25  To the extent Wisk identified select files not downloaded by Wisk's former employees

26  along with files that were downloaded, that identification only serves to assist Archer in

27  understanding the trade secrets identified.

28

1    Moreover, Archer's accusations about the source of the documents is easily dismissed. As

2  stated above, "during its ten year history, Wisk has also been known as Levt, Zee.Aero, Kitty

3  Hawk, and Cora." Dkt. 16-27 ¶ 4. And each of the documents identified by Wisk is labeled as

4  originating from one of these entities.

5    And it is irrelevant whether or not the documents were marked confidential at this point.

6  *Perlan*, 178 Cal. App. 4th at 1351 (explaining it would be legal error to require that a trade secret

7  plaintiff prove "that the purported trade secrets are actually secret" in its § 2019.210 statement).

8  Besides being irrelevant, Wisk explained in great detail how it maintains the secrecy and

9  confidentiality of its documents. *See* Dkt. 16-29 ¶¶ 19-25.

10    Finally, Archer complains that Wisk obfuscates its trade secret by identifying eight

11  documents spanning 592 pages. But here again, Archer's problem is not the number of pages, but

12  rather that it apparently did not look at any of them. If it had, it could easily locate within those

13  documents discussion of "███████████████████████████████████

14  ███████████████████████████████████████████████

15  ███" The *M/A COM* decision is distinguishable. In that case, the plaintiff described its trade secret

16  as multiple "designs," and including research efforts generally with a vague citation to more than

17  100 pages of documents. *M/A Com*, 2019 U.S. Dist. LEXIS 228417, at *10-11. In this case,

18  Wisk's identification does not include multiple "designs," nor does it claim research efforts

19  generally. Wisk was very specific identifying its trade secret as "███████████████████

20  ███████████████████████████████████████████████

21  ████████████████████" Dkt. 16-8 at 9-10.

22    <u>Trade Secret No. 12</u>

23    Trade secret no. 12 is a "███████████████████████████████"

24  Dkt. 16-8 at 12-13. According to Archer, Wisk has failed to "explain what the tool itself is." Dkt.

25  50 at 15. Archer is wrong. As reflected in Wisk's statement, the tool is a ███████████████

26  ███████████████████████████████████████████████

27  ███████████████████████████████████████████████

28  ███████████████████████████████████████████████

1 ███████████████████████████████████████

2 ███████████████████████████████████████

3 ████████████████████████████████████████████

4 ███████████████████████████████████ *Id.* Thus, Wisk

5 described what the tool was and how it worked with a specific example. *Id.* This is a sufficient

6 description to identify the trade secret with reasonable particularity. *See Redfin Corp. v. iPayOne,*

7 *LLC*, 2018 U.S. Dist. LEXIS 45698, *5-6 (W.D. Wash. March 20, 2018) (finding the

8 identification of trade secrets as the success metrics of certain marketing strategies and campaigns,

9 market research, and other aspects underlying its "1% commission structure" to meet the

10 reasonable particularity requirement).

11     Archer further complains about the identification of multiple documents not identifying

12 trade secret no. 12. But those documents contain further examples of how the ████████ works

13 which, in turn, explains what the tool is and what it can do. In fact, Archer's expert recognized that

14 the documents Wisk cited contain this information. Dkt. 50-1 ¶ 37 (conceding the documents

15 Wisk cites contain '████████████████')  Archer's complaint is therefore misplaced. Wisk

16 has sufficiently identified trade secret no. 12 with reasonable particularity.

17     <u>Trade Secret No. 14</u>

18     Archer claims Wisk's trade secret no. 14 cannot be distinguished from what was well

19 known in the field. As explained previously, that argument is meritless. *Brescia*, 172 Cal. App. 4th

20 at 147-50. Archer then argues that Wisk's identification is insufficient because Wisk did not point

21 to *specific pages* in the identified documents. Dkt. 50 at 16. Note that neither Archer nor its expert

22 state they were unable to identify the trade secret information in the documents; only that Wisk did

23 not identify it by specific page numbers. Archer can easily identify the relevant information in the

24 documents by looking at them. *Bladeroom Grp.*, 2018 U.S. Dist. LEXIS 10905, at *7 (explaining

25 that § 2019.210 is purposely vague to permit "play in the joints" and does not require the party

26 alleging misappropriation to "define every minute detail of its claimed trade secret at the outset of

27 the litigation").

28

1   Archer also argues that trade secret no. 14, "██████████████████████████

2   ████████████████████████████████" is insufficiently identified because Wisk does

3   not "describe where, when, or how the alleged studies were conducted." Dkt. 50 at 15. But Wisk is

4   not required to "describe where, when, or how the alleged studies were conducted." Indeed,

5   Archer does not even explain how that information is relevant. At this point, the trade secret has

6   been defined with requisite particularity and Archer's complaint should be rejected. If Archer

7   wants information about "where, when, or how the alleged studies were conducted," it can ask

8   those questions in discovery.

9   Trade Secret Nos. 16 and 20-21

10   With respect to trade secrets 16 and 20-21, Archer again claims the purported inability of

11   its expert to distinguish the trade secrets from what was well known in the field and that the trade

12   secrets cannot be identified from the documents Wisk cites. These arguments should be rejected

13   for the same reasons stated above.

14   Additionally, Archer complains that "Wisk never describes whether this alleged secret is in

15   use in Wisk's current generation or prior generations of aircraft, which have been flying for

16   years." Dkt. 50 at 16. Apparently, Archer believes that a § 2019.210 statement must describe the

17   trade secret with reasonable particularity and also provide a complete list of products that have

18   ever employed that trade secret. Unsurprisingly, Archer cites no support for this contention. To the

19   extent that the specific aircraft on which the trade secret information was used is relevant, that is

20   something that Archer can investigate further in discovery from Wisk.

21   Trade Secret No. 17

22   Archer argues that Wisk's description does not distinguish this trade secret from what was

23   known in the art. But again, whether something actually constitutes a trade secret goes to the

24   merits of Wisk's claim, not the reasonableness of its trade secret identification. *Advanced Modular*

25   *Sputtering, Inc.*, 132 Cal. App. 4th at 835-36. Moreover, Archer's ability to identify patents and

26   other████████████████████████████████████belies its claim

27   that it does not understand what the trade secret is. Dkt. 50 at 18; *see also Genentech, Inc.*, 2019

28   U.S. Dist. LEXIS at *49-50.

Second, Archer argues that Wisk's description of this trade secret is insufficient because "[i]f Wisk wants to claim an algorithm as a secret, it must identify the algorithm." Dkt. 50 at 18, citing *Space Data*, 2018 WL 10647160, at *2 ("Here, Space Data is claiming as its trade secret 'an algorithm,' but it has not identified what the algorithm is."). But that is exactly what Wisk did by describing the trade secret—'███████████████████████'—in text and including an illustration of the trade secret in the § 2019.210 statement:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

Dkt. 16-8 at 18-19. Wisk's description, example, and documents identify the trade secret with reasonable particularity. *Advanced Modular Sputtering, Inc.*, 132 Cal. App. 4th at 835-36.

Trade Secret No. 18

Trade secret no. 18 is described with reasonable particularity. Archer's laundry list of complaints should be rejected. First, Archer argues that Wisk failed to distinguish between the trade secret and what is publicly known. But again, such a description is not required in a § 2019.210 statement. *Brescia*, 172 Cal. App. 4th at 147-50. Contrary to Archer's Motion, Wisk described the trade secret in great detail as:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

-22-

OPPOSITION TO MOTION TO STRIKE

Dkt. 16-8 at 19-20. This detailed description is more than sufficient to meet the requisite reasonable particularity standard. *Bladeroom Grp.*, 2018 U.S. Dist. LEXIS 10905, at *7.

Regarding the citation of multiple documents, that argument should be rejected because it is based on nothing more than the fact that Wisk did not identify specific pages. Again, Archer did not state that it could not find the relevant pages in the documents, it only complains that Wisk did not identify the relevant pages for it. And while the documents provide further information on the trade secrets, the text alone is sufficient to meet the reasonable particularity standard. *Id.*

<u>Trade Secret Nos. 29, 30, and 31</u>

Trade secret nos. 29, 30, and 31 all relate to battery technology. Archer raises the same objections to these trade secrets as it has to all of the others. With respect to trade secret nos. 29 and 30, Archer complains that Wisk identified several documents, but only identified exemplar figures within those documents. To identify these trade secrets with reasonable particularity, Wisk had to "make some showing that is reasonable." *Advanced Modular Sputtering,* 132 Cal. App. 4th at 835. By citing exemplars from the documents, Wisk has met its burden. *Id.* Wisk was not required to "define every minute detail of its claimed trade secret at the outset of litigation." *Id.*

Archer's complaints regarding the failure to differentiate the trade secrets from what is generally known should be rejected because whether something actually constitutes a trade secret goes to the merits of Wisk's claim, not the reasonableness of its trade secret identification. *Advanced Modular Sputtering, Inc.*, 132 Cal. App. 4th at 835-36.

For trade secret no. 31, Archer complains that it cannot understand the trade secret which claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Dkt. 16-8 at 42. The results of these ▓▓▓▓ are detailed in the documents cited by Wisk under the disclosure of

1  trade secret no. 31. And the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a protectable trade secret

2  which was disclosed with reasonable particularity. *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155

3  Cal. App. 4th 1528, 1537 (2007) (explaining compilations of data are protectable trade secrets); *see*

4  *also ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1020 (2005) (discussing

5  compilation trade secrets generally).

6           Trade Secret Nos. 44, and 46

7           With respect to trade secret nos. 44 and 46, Archer raises the same objections that have

8  already been discussed above. First, Archer argues the description of the trade secret cannot be

9  distinguished from what is known in the field. This objection improperly goes to the merits of the

10  trade secret claim, not the reasonableness of the identification. *Advanced Modular Sputtering, Inc.*,

11  132 Cal. App. 4th at 835-36. Furthermore, despite Archer's claim to the contrary, Wisk describes

12  the location of the sensors for trade secret no. 46 in detail. Dkt. 16-8 at 66.

13           Next, Archer claims Wisk has obfuscated the trade secrets by identifying multiple

14  documents as disclosing the trade secrets without pinpointing precise pages. But these documents

15  are all easily understandable, and in conjunction with the description provided in Wisk's

16  § 2019.210 statement, can be used to readily identify the trade secrets in the documents.

17  Moreover, with respect to trade secret no. 44, Wisk provided an exemplar citation. That is enough

18  at this early stage. *WeRide Corp.*, 379 F. Supp. 3d at 846 (explaining "[t]he plaintiff need not spell

19  out the details of the alleged trade secrets," and may simply identify "the boundaries within which

20  the secret lies").

21  **IV.     TO THE EXTENT ANY TRADE SECRET IDENTIFICATION IS  DETERMINED**

22           **INSUFFICIENT, WISK SHOULD BE GIVEN LEAVE TO AMEND**

23           If the Court finds that any of Wisk's trade secrets are insufficiently identified, then Wisk

24  should be granted leave to refine its trade secret identification. *See Krainski v. Nevada ex rel. Bd.*

25  *of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without

26  leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be

27  saved by any amendment."); *Loop AI Labs, Inc. v. Gatti*, 2015 U.S. Dist. LEXIS 170349, at *13

28

-24-                                    Case No. 3:21-cv-02450-WHO

1  (N.D. Cal. Dec. 21, 2015) (permitting leave to amend trade secret disclosure); *see also InteliClear*,

2  978 F.3d at 662 ("Refining trade secret identifications through discovery makes good sense.").

3  **V.      CONCLUSION**

4        For all of the reasons discussed above, Archer's Motion to Strike Wisk's § 2019.210

5  statement should be denied, and/or Wisk should be given leave to amend any aspects of its

6  § 2019.210 disclosure found insufficient.

7  DATED:  June 30, 2021                              Respectfully submitted,

8                                        QUINN EMANUEL URQUHART & SULLIVAN,

9                                        LLP

10                                        By  */s/ Yury Kapgan*

11                                          Yury Kapgan
                                        Robert M. Schwartz

12                                          Michael T. Zeller
                                        Diane Cafferata

13                                          Patrick Schmidt
                                        Michael LaFond

14

15                                        Attorneys for Plaintiff Wisk Aero LLC

16

17

18

19

20

21

22

23

24

25

26

27

28