QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>              Plaintiff,<br><br>     vs.<br><br>ARCHER AVIATION INC.,<br><br>              Defendant. | CASE NO. 3:21-cv-02450-WHO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE AND DISMISS DEFENDANT'S COUNTERCLAIMS (1-4); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*[Proposed] Order Granting Motion to Strike and to Dismiss, Request for Judicial Notice, Declaration of Yury Kapgan, and [Proposed] Order Granting Request for Judicial Notice filed concurrently herewith*]<br><br>Hearing Date: September 1, 2021<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 2 |

**PLEASE TAKE NOTICE THAT** on September 1, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Orrick, in Courtroom 2, Seventeenth Floor, of the United States District Court for the Northern District of California in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff and Counterclaim Defendant Wisk Aero LLC ("Wisk") will, and hereby does, move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and California Code of Civil Procedure section 425.16, for an order striking or, in the alternative, dismissing Defendant Archer Aviation Inc.'s ("Archer") first, second, third, and fourth amended counterclaims (Dkt. 90).

Archer's first, second, third, and fourth amended counterclaims for tortious interference, defamation, and unfair competition should be stricken under the California anti-SLAPP statute— California Code of Civil Procedure section 425.16.  Archer's counterclaims are subject to the anti-SLAPP because they arise from protected activity in furtherance of Wisk's right of petition and free speech in connection with a public issue (this lawsuit).  The counterclaims should be stricken under the anti-SLAPP statute because Archer has not and cannot establish a probability that it will prevail on any of the four counterclaims because they are barred under the *Noerr-Pennington* doctrine, the California litigation and fair and accurate reporting standards, are improperly pled as a matter of law, and would fail on the merits.  Wisk is also entitled to recover attorney's fees and costs associated with this motion pursuant to section 425.16(c)(1) of the anti-SLAPP statute.

In the alternative, Archer's first, second, third, and fourth amended counterclaims should be dismissed pursuant to Federal Rule of Civil Procedure of 12(b)(6) because each counterclaim is barred under the *Noerr-Pennington* doctrine, the California litigation and fair and accurate reporting standards, and is improperly pled as a matter of law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and Declaration of Yury Kapgan in support, the other documents on file in this action, and any oral argument of counsel at the hearing on the Motion.

1    DATED:  July 27, 2021                    Respectfully submitted,

2                                             QUINN EMANUEL URQUHART & SULLIVAN, LLP

3

4                                             By  _/s/ Yury Kapgan_____
                                                  Yury Kapgan
5                                                 Robert M. Schwartz
                                                  Michael T. Zeller
6                                                 Patrick Schmidt
                                                  Michael LaFond
7

8                                             Attorneys for Plaintiff Wisk Aero LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................... 1

II. BACKGROUND FACTS ................................................................................... 2

III. THE COURT SHOULD STRIKE THE COUNTERCLAIMS UNDER
CALIFORNIA'S ANTI-SLAPP STATUTE. ....................................................... 4

   A. Archer's Counterclaims Arise From Protected Activity. ........................ 4

   B. Archer Cannot Demonstrate A Probability Of Prevailing. ..................... 6

      1. The Counterclaims Are Barred Under The *Noerr-Pennington*
Doctrine ........................................................................................ 7

      2. Archer's Counterclaims Are Separately Barred Under The
California Litigation Privilege of Civil Code Section 47(b)..................... 9

      3. Archer's Counterclaims Are Barred Under The California Fair
And Truthful Reporting Privilege of Section 47(d)................................ 11

      4. Archer Fails To State A Claim For Interference With Contract ........... 12

      5. Archer Fails To State A Claim For Interference With Prospective
Economic Advantage ..................................................................... 13

         (a) Failure to identify a specific economic relationship. ........................ 14

         (b) Failure to allege any independent tortious conduct........................... 15

         (c) Archer fails to plead actual and proximate disruption. ..................... 16

      6. Archer Fails To State A Claim Under The UCL ................................... 17

         (a) Archer fails to allege "unlawful" conduct........................................ 17

         (b) Archer fails to allege "unfair" conduct. ........................................... 18

      7. Archer's Claims Fail Because Wisk's Statements Were Truthful .......... 19

IV. ALTERNATIVELY, THE COURT SHOULD DISMISS ARCHER'S
COUNTERCLAIMS UNDER RULE 12(B)(6)........................................................ 20

V. CONCLUSION............................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Int'l Traders v. Yamaha Corp. of Am.*,
No. CV-86-7892-RSWL, 1993 U.S. Dist. LEXIS 20947 (C.D. Cal. Jan. 27, 1993) ......................8

*Action Apartment Assn., Inc. v. City of Santa Monica*,
41 Cal. 4th 1249 (2007)...........................................................................................................10

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*,
634 F. Supp. 316 (D. Kan. 1986) ................................................................................................8

*Argentieri v. Zuckerberg*,
No. CGC-15-548503, 2016 WL 4151528 (Cal. Super. Feb. 16, 2016), *aff'd*, 8 Cal. App.
5th 768 (2017) ........................................................................................................................1, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................20, 21

*BE & K Contr. Co. v. NLRB*,
536 U.S. 516 (2002) ....................................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................20, 21

*Birkner v. Lam*,
156 Cal. App. 4th 275 (2007).......................................................................................................6

*Buxton v. Eagle Test Sys., Inc.*,
No. C-08-04404 RMW, 2010 WL 1240749 (N.D. Cal. Mar. 26, 2010)................................14, 15

*Cal. State Council of Carpenters v. Associated Gen. Contractors of California, Inc.*,
404 F. Supp. 1067 (N.D. Cal. 1975) ..........................................................................................18

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) ....................................................................................................................7

*Cap. Health Sys., Inc. v. Veznedaroglu*,
No. 15-8288, 2017 WL 751855 (D.N.J. Feb. 27, 2017) ...............................................................8

*CBS Outdoor LLC v. Cal. Mini Storage, LLC*,
No. C 14-01598 SI, 2014 WL 5282088 (N.D. Cal. Oct. 15, 2014) .............................................15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)...............................................................................................................18

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
403 F. Supp. 3d 813 (N.D. Cal. 2019) .........................................................................................8

*Creative Mobile Techs., LLC v. Flywheel Software, Inc.*,
No. 16-CV-02560-SI, 2017 WL 679496 (N.D. Cal. Feb. 21, 2017)............................................19

*Daniel v. Wayans*,
8 Cal. App. 5th 367 (2017)...........................................................................................................5

*Dolin v. Facebook, Inc.*,
No. C 18-0950 SBA, 2018 WL 2047766 (N.D. Cal. May 2, 2018).......................................14, 15

*eCash Techs., Inc. v. Guagliardo*,
127 F. Supp. 2d 1069 (C.D. Cal. 2000), *aff'd*, 35 Fed.Appx. 498 (9th Cir. 2002) ......................10

*FIVE Hotel FZCO v. Viceroy Hotels, LLC*,
   No. B288793, 2019 WL 91567 (Cal. Ct. App. Jan. 3, 2019) ...................................................10, 11

*GetFugu, Inc. v. Patton Boggs LLP*,
   220 Cal. App. 4th 141 (2013) .........................................................................................................6

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) ......................................................................................................21

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.*,
   691 F. App'x 406 (9th Cir. 2017) ...................................................................................................8

*Healthsmart Pac., Inc. v. Kabateck*,
   7 Cal. App. 5th 416 (2016) ......................................................................................................11, 12

*Hilario v. Allstate Ins. Co.*,
   No. 20-CV-05459-WHO, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020) ............................17, 18

*Jacob B. v. Cnty. of Shasta*,
   40 Cal. 4th 948, 960 (2007) ..........................................................................................................10

*Jensen Enterprises Inc. v. Oldcastle Precast Inc.*,
   No. C 06-247 SI, 2009 WL 440492 (N.D. Cal. Feb. 23, 2009) ....................................................12

*Kemin Foods, L.C. v. Pigmentos Vegetales*,
   384 F. Supp. 2d 1334 (S.D. Iowa 2005) .........................................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................................................14

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ..........................................................................................17, 18, 19

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991) ......................................................................................................................20

*Meyer v. Aabaco Small Bus., LLC*,
   No. 2018 WL 306688 (N.D. Cal. Jan. 5, 2018) ............................................................................18

*Microsoft v. Yokohama Telecom Corp.*,
   993 F. Supp. 782 (C.D. Cal. 1998) ...............................................................................................12

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ......................................................................................................15

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
   268 F. Supp. 3d 1071 (C.D. Cal. 2017) .........................................................................................15

*Panakosta, Partners, LP v. Hammer Lane Mgmt., LLC*,
   199 Cal. App. 4th 612 (2011) .........................................................................................................5

*Parlour Enterprises, Inc. v. Kirin Grp., Inc.*,
   152 Cal. App. 4th 281 (2007) .......................................................................................................16

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ........................................................................................19

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013) ............................................................................................5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ...............................................5

*PMC, Inc. v. Saban Ent., Inc.*,
   45 Cal. App. 4th 579 (1996) .........................................................................................................12

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Inc.*,
  508 U.S. 49 (1993) ................................................................................................................7

*Rubin v. Green*,
  4 Cal. 4th 1187 (1993) ........................................................................................................10

*San Miguel v. HP Inc.*,
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ..............................................................................19

*Savage v. Pac. Gas & Elec. Co.*,
  21 Cal. App. 4th 434 (1993) ...............................................................................................20

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) .......................................................................................17, 18

*Snapkeys, Ltd. v. Google LLC*,
  442 F. Supp. 3d 1196 (N.D. Cal. 2020) ..............................................................................19

*Sole Energy Co. v. Petrominerals Corp.*,
  128 Cal. App. 4th 212 (2005) .............................................................................................12

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ............................................................................................7, 8

*Starlight Cinemas v. Regal Entm't Grp.*,
  2014 WL 7781018 (C.D. Cal. Oct. 23, 2014) .....................................................................14

*Surface Supplied, Inc. v. Kirby Morgan Drive Sys., Inc.*,
  No. C-13-0575, 2013 WL 5496961 (N.D. Cal. Oct. 3, 2013) ................................................7

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2009) ............................................................................................18

*Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................................18

*Theme Promotions, Inc v. News Am. Marketing FSI*,
  546 F.3d 991 (9th Cir. 2008) ............................................................................................7, 8

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
  No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013) ........................................10

*Silberg v. Anderson*,
  50 Cal. 3d 205, 213 (1990) .................................................................................................10

*UCAR Tech. (USA) Inc. v. Yan Li*,
  No. 5:17-CV-01704-EJD, 2018 WL 2555429 (N.D. Cal. June 4, 2018) ...............................19

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.*,
  420 F. Supp. 3d 966 (N.D. Cal. 2019) ..............................................................................9, 10

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.*,
  2017 WL 7201873 (C.D. Cal. Aug. 30, 2017) .....................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..............................................................................................5

*Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'ns, Inc.*,
  858 F.2d 1075 (5th Cir. 1988) ...............................................................................................8

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
  814 F. Supp. 2d 1033 (S.D. Cal. 2011) ................................................................................11

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ...............................................................................................8

## Statutory Authorities

Cal. Bus. & Prof. Code § 17200 ................................................................................................ 1, 17

Cal. Civ. Code § 47(b) ............................................................................................................... 10

Cal. Civ. Code § 47(b) ................................................................................................................. 1

Cal. Civ. Code § 47(d) ............................................................................................................... 11

Cal. Civ. Proc. Code § 425.16 ..................................................................................................... 5

## Rules and Regulations

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 20

## I.   PRELIMINARY STATEMENT

Defendant Archer has asserted four improper counterclaims that are based on Wisk's exercise of its constitutionally-protected activities and speech.  The Court should strike them under California's anti-SLAPP statute or dismiss them under Rule 12(b)(6).

Plaintiff Wisk is a leader in the burgeoning field of all-electric vertical-take-off-and-landing ("eVTOL") aircraft.  Wisk sued Archer in April upon discovering that Archer misappropriated a massive amount of Wisk's highly valuable, non-public information, and is infringing Wisk's patents.  Wisk does not stand alone in taking legal action against Archer for this theft.  The federal government also issued a search warrant to one of Archer's employees, as well as grand jury subpoenas to Archer and three other employees.  Archer has publicly admitted as much.

Nonetheless, Archer responded with counterclaims for tortious interference with contract, interference with prospective economic advantage, defamation, and violation of California Business and Professions Code section 17200.  These claims are expressly based on Wisk's Complaint and on Wisk's public statements about the content of that pleading and related criminal proceedings.

As explained below, those claims fail on several grounds.  Not only do Archer's claims fail because Wisk's public statements are truthful, but they are also barred by multiple state and federal protections under the California anti-SLAPP statute, the *Noerr-Pennington* doctrine, and the California litigation and fair and true reporting privileges codified in California Civil Code sections 47(b) and 47(d).  Further, Archer's counterclaims independently fail because it has not adequately pled ***any*** of them.

As much as Archer would like to the shift the focus away from its own wrongdoing, Wisk's efforts to right those wrongs do not give rise to liability.  The Court should strike and dismiss Archer's counterclaims.  It also should award Wisk its fees and costs for this motion.[1]

---

[1]   An award of fees and costs to Wisk is particularly warranted here.  Not only has Archer brought plainly improper claims, but Archer's lead lawyer and law firm know they are improper.  They have previously successfully moved under the anti-SLAPP statute to strike precisely these types of tort claims arising from media statements about the content of legal filings.  *See Argentieri v. Zuckerberg*, No., 2016 WL 4151528 (Cal.Super. Feb. 16, 2016), *aff'd*, 8 Cal. App. 5th 768 (2017).

## II.   BACKGROUND FACTS

On April 6, 2021 Wisk filed its claims for trade secret misappropriation and patent infringement.  On the same day, Wisk also released a blog post on its website (the "April 6 Post") and issued a press release (the "Press Release") announcing the filing of the Complaint.  The April 6 Post announced in pertinent part:

> As detailed in the Complaint, we have discovered significant and troubling evidence indicating that Archer has been using Wisk's proprietary intellectual property without our permission.  Among other things, we discovered the misappropriation of thousands of highly confidential files containing very valuable trade secrets, as well as the use of significant innovations Wisk has patented.  Wisk's confidential, proprietary trade secrets and patented innovations represent the hard work and dedication of hundreds of Wisk's engineers over multiple years.  Today we took legal action to ask a federal court to stop Archer from using that stolen Wisk technology and from infringing out patents.  This isn't a step we wanted to take, but we must protect our IP and the decade's worth of work and innovation we've put into Wisk.

Declaration of Yury Kapgan ("Kapgan Decl.") Ex. 1.  The April 6 Post also summarized the Complaint's allegations and concluded with a link to the Complaint.  *Id*.  The Press Release similarly referred to the filing of the Complaint, provided a two-bullet point summary of its allegations and concluded with a reference to the case caption.  *Id*. Ex. 2.

That day, media outlets reported the filing of the Complaint and obtained comment ***from Archer*** disclosing the existence of a federal investigation related to the lawsuit.  The *New York Times* ran a story announcing the filing of the Complaint and similarly included comment ***from Archer*** noting that it "had placed an employee accused in the suit on paid leave 'in connection with a government investigation and a search warrant issued to the employee ….'"  *Id*. Ex. 3.  That article also reported that Archer had announced that "it and three employees who had worked with the individual had been subpoenaed in that investigation and were cooperating with the authorities."  *Id*. An article in the *Silicon Valley Business Journal* also covered the filing of the Complaint and ***Archer's*** same disclosures regarding the existence of an underlying investigation into the company and its employees.  *Id*. Ex. 4.  That article noted that "Wisk declined to respond to specific questions about what it knows of the investigation cited by Archer" and that Wisk had said it was "aware of Archer's disclosure of a criminal investigation into this matter" and that it was "fully cooperating with the government."  *Id*.

Also on April 6, 2021, Atlas Crest Investment Corp., a special-purpose acquisition company ("SPAC") that had announced plans to merge with Archer to take Archer public, issued an updated disclosure with the SEC addressing Wisk's lawsuit and announcing the existence of a related federal investigation into Archer:

> Atlas has been informed by Archer that it has placed an employee on paid administrative leave in connection with a government investigation and a search warrant issued to the employee . . . . Atlas has also been informed that Archer and three other Archer employees with whom the individual worked have received subpoenas relating to this investigation.

*Id*. Ex. 5 at 2.

On May 19, 2021, Wisk issued an "Update" to its initial April 6 Post (the "May 19 Post"). In its entirety, the May 19 Post said:

> After Wisk filed its Complaint on April 6, Archer publicly disclosed a criminal investigation relating to some of the claims Wisk brought, and Archer's SPAC sponsor Atlas Crest Investment Corp filed an 8-K noting that it was reviewing these matters. Wisk is fully cooperating with the FBI and Department of Justice in their criminal investigation into Archer relating to the theft and use of Wisk's intellectual property.

Kapgan Decl. Ex. 1.

These three statements—the April 6 Post, the Press Release, and the May 19 Post—plus Wisk's Complaint filed in this case, constitute the *entirety* of Archer's bases for its counterclaims for tortious interference with contractual relations, tortious interference with prospective economic advantage, and unfair competition under California Business & Profession Code § 17200.  *See* Dkt. 90 ("Amended Counterclaims") ¶ 68 (claiming Wisk had engaged in tortious interference "[b]y accusing Archer of misconduct and making misleading and false claims in the blog posts and press release …"); *see also id*. ¶¶ 39-48, 69, 74, 95-96.

On June 4, 2021, Atlas provided another updated SEC disclosure, announcing: "On March 30, 2021, one of Archer's employees, who is a former employee of [Wisk] was the subject of a search warrant executed at his home in connection with a *federal investigation into Archer's aircraft design and hiring practices*."  Kapgan Decl. Ex. 6 at 21 (emphasis added).  The disclosure explained Archer had received grand jury subpoenas seeking "documents and information *about Archer's business, including its hiring practices and intellectual property*, as well as documents and

information relating to the employment of such employees at Wisk, including Wisk's intellectual property, business plans, and information relating to Wisk's aircraft design." *Id.* at 43 (emphasis added). Atlas's disclosure did not refer to Wisk's blog posts or press release.

On June 7, 2021, Atlas amended its SEC disclosure to remove passages tying Archer to the federal investigation. *Id.* Ex. 7 at 21 (removing language describing the federal investigation as "*into* Archer's aircraft design and hiring practices" (emphasis added)). However, Atlas's June 7 disclosures—as well as its most recent disclosures—each still refer to the fact that Archer has received grand jury subpoenas seeking "documents and information *about Archer's business, including its hiring practices and intellectual property*, as well as documents and information relating to the employment of such employees at Wisk, including Wisk's intellectual property, business plans, and information relating to Wisk's aircraft design." *Id.* Ex, 7 at 43; *Id.* Ex. 8 at 44-45.

On June 22, 2021, Wisk filed a motion—almost identical to the present motion—to strike and dismiss Archer's first, second, and third counterclaims for tortious interference with contract, interference with prospective economic advantage, and unfair competition. Dkt. 54. On July 6, 2021, the day its opposition to that motion was due, Archer filed a "statement" declaring that intended "to amend its counterclaims on July 13, 2021, within the time period specified by Rule 15 for amending as of right. Dkt. 75. On July 13, 2021, Archer then filed amended counterclaims—almost identical to its initial counterclaims—but with a single additional claim for defamation. As with its other counterclaims, Archer's new defamation claim is based entirely on statements made in Wisk's April 6 Post, the Press Release, and the May 19 Post about this lawsuit. *See* Amended Counterclaims ¶¶ 80-81 (claiming that Wisk's statements that Archer is using "stolen Wisk technology" and is "infringing our patents" were "false and defamatory"); *see also id.* ¶¶ 82-89.

## III. THE COURT SHOULD STRIKE THE COUNTERCLAIMS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE.

### A. Archer's Counterclaims Arise From Protected Activity.

Under California Code of Civil Procedure section 425.16 a party may bring a "special motion to strike" if a cause of action against them arises "from any act … in furtherance of the …

right of petition or free speech … in connection with a public issue," unless "the [non-movant] has established that there is a probability that [they] will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1).  If a movant prevails on a motion to strike, that movant "shall be entitled to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. § 425.16(c).[2]

"The first step in analyzing an anti-SLAPP motion is determining whether the [movant] successfully made 'an initial prima facie showing that the [non-movant's claim] arises from an act in furtherance of the [movant's] rights of petition or free speech.'"  *Piping Rock Partners, Inc. v. David Lerner Assocs.*, Inc., 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)) (further citations omitted).  Such an act includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e).  The movant's burden "is not a particularly demanding one."  *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017).

Archer's tort and unfair competition counterclaims—based on Wisk's decision to file this lawsuit and to make basic, matter-of-fact statements about the lawsuit—are precisely the kind of retaliatory claims prohibited by and subject to dismissal under the anti-SLAPP statute.  The Complaint itself qualifies as protected activity because "[t]he right of petition encompasses the filing of a legal action and the requesting of an injunction."  *Panakosta, Partners, LP v. Hammer Lane Mgmt., LLC*, 199 Cal. App. 4th 612, 635 (2011); *see also Birkner v. Lam*, 156 Cal. App. 4th 275, 281 (2007) ("The constitutional right to petition … includes the basic act of filing litigation or otherwise seeking administrative action.").  So too are Wisk's blog posts and press release, which summarized the contents of Wisk's Complaint and provided matter-of-fact updates regarding the lawsuit—including the fact that Archer itself had disclosed the existence of a federal criminal investigation and that it had been subpoenaed.  *See GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.

---

[2]   Wisk presents its anti-SLAPP challenge here together with its other bases for dismissal under Federal Rule of Civil Procedure 12(b)(6) because of the factual overlap between these issues and because challenges to the legal sufficiency of a claim under the anti-SLAPP statute are treated under the same standard.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").

App. 4th 141, 151 (2013) (holding defamation claim related to a "press release" and "Tweet" concerning underlying civil RICO action and announcing the fact that a party was under FBI investigation was based on protected activity under the anti-SLAPP statute).

The California Court of Appeal's decision in *Argentieri v. Zuckerberg* is instructive.  In *Argentieri*, defendants Facebook and founder Mark Zuckerberg successfully moved to strike defamation claims based on a press release issued by Facebook's general counsel related to ongoing litigation against Argentieri.  *Argentieri v. Zuckerberg*, No. CGC-15-548503, 2016 WL 4151528, at *1 (Cal. Super. Feb. 16, 2016), *aff'd*, 8 Cal. App. 5th 768 (2017).  As here, Plaintiff had based his defamation claim on statements from Facebook's general counsel that the company had "said from the beginning that [the underlying lawsuit] was a fraud and that we would seek to hold those responsible accountable.  [The firms that brought the lawsuit] knew the case was based on forged documents yet they pursued it anyway, and they should be held to account."  *Id*.  Facebook— represented by the same law firm and even one of its senior partners representing Archer here— moved to strike the claim under the California anti-SLAPP statute, arguing that the statement was protected activity.  *Id*.  The court agreed, holding the statement fell under the statute as "a statement made in connection with an issue under consideration or review by a judicial body."  *Id*. at *2.

### B.      Archer Cannot Demonstrate A Probability Of Prevailing.

Once a movant has made a prima facie showing that a cause of action arises from protected activity under the anti-SLAPP statute, "the burden shifts to the [non-movant] to establish, by admissible evidence, a probability of prevailing on the claim."  *Argentieri*, 8 Cal. App. 5th at 780.  "If the [non-movant] fails to do so, the motion to strike is granted and the prevailing [movant] is entitled to recover his or her attorney fees and costs."  *Id*.

Archer cannot meet this burden.  As described below, Archer's first four amended counterclaims are barred by multiple state and federal privileges, are insufficiently pled as a matter of law, and would fail on the merits.  Consequently, Archer has not and cannot demonstrate a probability of prevailing on its counterclaims.

### 1. The Counterclaims Are Barred Under The *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine immunizes from liability those who "use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors." *Surface Supplied, Inc. v. Kirby Morgan Drive Sys., Inc.*, No. C-13-0575, 2013 WL 5496961, at *8 (N.D. Cal. Oct. 3, 2013) (Chesney, J.) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972)).  Grounded in principles protecting a party's First Amendment right to petition the government for redress of grievances, "[t]he essence of the *Noerr-Pennington* doctrine is that those who petition any department of the government for redress are immune from . . . liability for their petitioning conduct." *Theme Promotions, Inc v. News Am. Marketing FSI*, 546 F.3d 991, 1006 (9th Cir. 2008).  The doctrine also protects conduct incidental to a lawsuit, such as statements about the lawsuit and its implications to the defendant's customers. *Id.* at 1007 (noting that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine," and therefore extending protection to pre-suit letters sent to competitor's customers stating that, if they continued to do business with competitor, they could get embroiled in the plaintiff's and defendant's litigation) (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–38 (9th Cir. 2006)); *Prof'l Real Estate Investors, Inc. v. Columbia Pictures, Inc.*, 508 U.S. 49, 60 (1993).

While the doctrine originates from the antitrust world, the Ninth Circuit has been clear that *Noerr-Pennington* protections extend to other statutory contexts and state/common law tort claims, including claims for tortious interference with prospective economic advantage and defamation. *See Theme Promotions, Inc.*, 546 F.3d at 1006–07 ("'There is simply no reason that a common-law tort doctrine can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust.'  We agree, and we hold that the *Noerr-Pennington* doctrine applies to [plaintiff's] state law tortious interference with prospective economic advantage claims.") (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988)); *see also Sosa*, 437 F.3d at 930) (noting the Supreme Court has made clear that *Noerr-Pennington* principles 'apply with full force in other statutory contexts' outside antitrust.") (citing *BE & K Contr. Co. v. NLRB*, 536 U.S. 516, 525 (2002)); *White v. Lee*, 227 F.3d 1214, 1236 (9th

Cir. 2000) ("As we have discussed, this court has applied the First Amendment rationale of the *Noerr–Pennington* doctrine broadly to claims not involving antitrust law.") (internal quotations and citations omitted); *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 824 (N.D. Cal. 2019) ("In the Ninth Circuit, the *Noerr-Pennington* doctrine provides immunity from both federal and state statutory and common-law liability.") (citing *Theme Promotions*, 546 F.3d at 1008); *Hard2Find Accessories, Inc. v. Amazon.com, Inc.*, 691 F. App'x 406, 407 (9th Cir. 2017) (holding that "[t]he district court appropriately applied the Noerr-Pennington doctrine" to dismiss tortious interference and defamation claims).

To avoid the *Noerr-Pennington* doctrine, Archer appears to frame its counterclaims as based, not on Wisk's lawsuit, but on its "blog posts and press release" about that lawsuit—despite the fact those blog posts and press release address the **exact** factual allegations at issue in the lawsuit. But the Ninth Circuit has been clear in rejecting such end-arounds the *Noerr-Pennington* doctrine and held that the doctrine also covers these statements as incidental to a lawsuit. *Theme Promotion*, 546 F.3d at 1007. Courts throughout the country routinely rely on the doctrine to throw out counterclaims that, like Archer's, are predicated on public communications or press releases that simply reflect or refer to factual allegations contained in a party's publicly-filed complaint. *See, e.g.*, *ABC Int'l Traders v. Yamaha Corp. of Am.*, No. CV-86-7892-RSWL, 1993 U.S. Dist. LEXIS 20947, at *14-15 (C.D. Cal. Jan. 27, 1993) ("Thus, to the extent that [defendant] merely publicized the fact and content of its lawsuits against [plaintiffs]—lawsuits that this Court has found were not shams—that publicity is also protected by the *Noerr-Pennington* doctrine."); *Cap. Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017) ("The Court is similarly unaware of any authority indicating that press releases based on non-sham court-filings remain outside the scope of immunity."); *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 323 (D. Kan. 1986) (holding press releases and other publicity related to allegations contained in lawsuit were protected by *Noerr-Pennington* doctrine because they "were incidental to the lawsuit."); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F. Supp. 2d 1334, 1349 (S.D. Iowa 2005), *aff'd*, 464 F.3d 1339 (Fed. Cir. 2006) (holding such press releases were protected by *Noerr-Pennington*).

Wisk's April 6 Post and Press Release contain merely a permissible, high-level summary of the allegations of Wisk's Complaint.  *See* Kapgan Decl. Ex. 1 (Wisk Blog Posts), Ex. 2 (Wisk Press Release).  Wisk's April 6 Post contains ***nothing*** that was not already publicly pled in that Complaint.  *See id*. Ex. 1.  Likewise, the Press Release includes nothing more than a quote from that Complaint and a two-bullet point summary of those allegations.  *See id*. Ex. 2.  Both the April 6 Post and the Press Release expressly direct readers to the Complaint.  The May 19 Post provided merely a two-sentence update to the April 6 Post to address Archer's public disclosure of an FBI investigation related to Wisk's claims, as widely reported.  Although Archer claims this update included "false" and "deceptive" allegations that Archer was under criminal investigation, the update refers merely to the fact that "on April 6, ***Archer*** publicly disclosed a criminal investigation relating to some of the claims Wisk brought" and that Wisk was cooperating with that investigation.  *Id*. Ex. 1.  That is a true statement about something ***Archer itself publicized***.  *See id*. Ex. 4 (*Silicon Valley Business Journal* article) (reporting on Archer's announcement that "it has been served a subpoena and one of its employees got a search warrant as part of a government investigation."); Ex. 3 (*New York Times* article) (reporting Archer's statements that one of its employees had been subject to a search warrant and that the company and three other employees had been subpoenaed).

Not only are Archer's counterclaims plainly barred by the *Noerr-Pennington* doctrine, but Archer cannot even muster allegations invoking its narrow sham litigation exception.  This failure itself constitutes an independent basis for dismissal, as a party bringing claims subject to the doctrine must *affirmatively* plead facts specifically showing that the sham litigation exception applies.  *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 981 (N.D. Cal. 2019) (Orrick, J.) ("Where claims are based on activities shielded by *Noerr-Pennington* immunity, the plaintiff must plead the sham litigation exception with specificity.").

### 2.     Archer's Counterclaims Are Separately Barred Under The California Litigation Privilege of Civil Code Section 47(b).

Archer's tort and statutory claims are also barred by the California litigation privilege to the extent those claims are based on Wisk's Complaint or postings on its website related to this lawsuit.  "Under California Civil Code section 47(b), communications made in or related to judicial

proceedings cannot give rise to tort liability.  The purpose of the privilege is 'to afford litigants ... the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.'"  *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368365, at *9 (N.D. Cal. Jan. 29, 2013) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)).  "[The] privilege has been given an 'expansive reach' by California courts ...."  *eCash Techs., Inc. v. Guagliardo*, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000), *aff'd*, 35 Fed.Appx. 498 (9th Cir. 2002) (citing *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993)).  It "bars all tort causes of action except malicious prosecution," and applies to communicative acts "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955, 960 (2007).  The privilege also includes publication to nonparties with a substantial interest in the proceedings.  *FIVE Hotel FZCO v. Viceroy Hotels, LLC*, No. B288793, 2019 WL 91567, at *7 (Cal. Ct. App. Jan. 3, 2019).  In the anti-SLAPP context, the litigation privilege "is absolute and precludes a claimant from establishing a probability of prevailing on the merits of his claim."  *Argentieri*, 8 Cal. App. 5th at 780.

Here, Wisk's Complaint and its allegations indisputably constitute statements made in a judicial proceeding, subject to the litigation privilege.  *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 980 (N.D. Cal. 2019) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action.") (Orrick, J.) (quoting *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1249 (2007)).  That privilege also extends to Wisk's blog posts and press release, which by their nature were targeted toward parties that followed and maintained an active interest in the eVTOL industry and actively visited Wisk's website.[3]  Courts have found that such blog posts and online press releases qualify for protection under the California litigation privilege.  *See, e.g.*, *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1041 (S.D. Cal. 2011) (finding that

---

[3]  To the extent Archer argues the Press Release was directly sent to news outlets, claims related to that communication would also be protected by the California fair and true reporting privilege, Civil Code § 47(d), discussed below.

1   communication related to party's patent infringement allegations posted to that party's own

2   webpage qualified for protection under the California litigation privilege); *FIVE Hotel FZCO v.*

3   *Viceroy Hotels, LLC*, No. B288793, 2019 WL 91567, at *8 (Cal. Ct. App. Jan. 3, 2019) (affirming

4   that communications posted to defendant's own webpage qualified for protection under the

5   California litigation privilege).

6          **3.      Archer's Counterclaims Are Barred Under The California Fair And**

7                  **Truthful Reporting Privilege of Section 47(d).**

8         Because Archer's tortious interference and unfair competition claims are based on the

9   transmittal of Wisk's blog posts and press release to news outlets, they are barred by the California

10   fair and true reporting privilege, codified in California Civil Code § 47(d).  That privilege bars

11   claims based on accurate reporting regarding judicial proceedings.  "'Fair and true' in this context

12   does not refer to the truth or accuracy of the matters asserted in the judicial proceedings, but rather

13   to the accuracy of the challenged statements with respect to what occurred in the judicial

14   proceedings." *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 434 (2016).  "To be 'fair

15   and true,' the report must capture the substance, the 'gist' or 'sting', of the subject proceedings as

16   measured by considering the natural and probable effect of the report on the mind of the average

17   reader." *Argentieri*, 8 Cal. App. 5th at 787 (internal citations and quotations omitted).  The party

18   invoking the privilege is "entitled to a certain degree of 'flexibility/literary license' in this regard,

19   such that the privilege will apply even if there is a slight inaccuracy in details—one that does not

20   lead the reader to be affected differently by the report than he or she would be by the actual truth."

21   *Id.* at 787-88.  As with the litigation privilege, the fair and true reporting privilege is "an absolute

22   privilege" that "forecloses a plaintiff from showing a probability of prevailing on the merits."

23   *Argentieri*, 8 Cal. App. 5th at 787.

24         Here, Wisk's communications with the press relating to this lawsuit fall within the

25   protection of the fair and true reporting privilege.  *See, e.g.*, *Argentieri*, 8 Cal. App. 5th at 789;

26   *Microsoft v. Yokohama Telecom Corp.*, 993 F. Supp. 782, 784–85 (C.D. Cal. 1998) (privilege

27   applied to protect a company that paid a newspaper to run an announcement regarding nature of the

28   suit); *Healthsmart*, 7 Cal. App. 5th at 436 (holding that TV interview summarizing the allegations

in a recently filed Complaint qualified for protection under the privilege).  While Archer's counterclaims assert in conclusory fashion that Wisk's allegations are "false," nowhere do they claim that Wisk's April 6 Press Release or its blog posts misconstrue the allegations set forth in the Complaint.  Nor could they, as these materials accurately reflect Wisk's trade secret and patent infringement allegations.  *See* Kapgan Decl. Exs. 1 & 2.

### 4.    Archer Fails To State A Claim For Interference With Contract

Archer's counterclaim for intentional interference with contract fails because Archer has not alleged facts sufficient to establish multiple elements of the tort.  To successfully plead a claim for interference with contractual relations Archer must present factual allegations sufficient to establish "(1) the existence of a valid contract with a third party; (2) defendants' knowledge of that contract; (3) intentional acts by defendants designed to induce a breach of the contract; (4) actual breach; and (5) resulting damages."  *Jensen Enterprises Inc. v. Oldcastle Precast Inc.*, No. C 06-247 SI, 2009 WL 440492, at *8 (N.D. Cal. Feb. 23, 2009), *aff'd*, 375 F. App'x 730 (9th Cir. 2010) (citing *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 237–38 (2005)).

Archer fails to establish these elements.  First, Archer fails to allege the existence of an enforceable contract that was actually breached.  "[A] cause of action for intentional interference with contract requires an underlying *enforceable* contract."  *PMC, Inc. v. Saban Ent., Inc.*, 45 Cal. App. 4th 579, 601 (1996).  Archer's counterclaim could hardly be more vague as to the purported contracts that Wisk "interfered" with.  The entirety of Archer's allegations as to this element consist of its claim that:

> Archer entered into a contract with ACIC, and many investors purchased stock in ACIC.  Archer had also reached agreement with at least one prospective employee who had agreed to join Archer before Wisk published its blog posts.

Amended Counterclaims ¶ 66.

As to its alleged contract with ACIC, nowhere does Archer explain the relevance of the "many investors who purchased stock in ACIC," or whether, why, or how Wisk's two blog posts and press release relating to this lawsuit led to "actual breach" of the contract.  In fact, elsewhere Archer alleges that this agreement is still subject to requirements, including approval by ACIC

stockholders, as well as multiple other closing conditions.  *See* Amended Counterclaims ¶ 38.
Those allegations suggest that, even if the contract is enforceable, it has not been breached.

As to Archer's allegations regarding an unnamed "prospective employee"—it is unclear who
this individual is, whether Archer and this person entered into an enforceable contract, how it was
breached, or what relationship that has to Wisk's statements.

Notably, Archer does not allege that Wisk knew about this potential employee or had
knowledge of any underlying contract with that individual.  Archer attempts to gloss over this fatal
flaw by alleging instead that Wisk "knew on information and belief that Archer was hiring and
therefore likely had pending employee contracts."  Amended Counterclaims ¶ 67.  In effect, Archer
attempts to suggest that a claimant can establish the "knowledge" requirements of a claim for
*intentional* interference with contractual relations so long as the company is hiring, regardless of
whether the other party knew of a specific potential employee or contract.  That position would
essentially eliminate any scienter requirement from this intentional tort where the claimant is a large
enough company to be in a constant state of hiring.  Archer cannot successfully plead that Wisk had
knowledge of this contract merely because it knew Archer was "hiring."  Thus, even had Archer
pled the existence of a contract with its mystery employee, Archer has failed to successfully plead
Wisk's knowledge of such a contract.

### 5. Archer Fails To State A Claim For Interference With Prospective Economic Advantage

The elements of a claim for intentional interference with prospective economic advantage
are: "(1) an economic relationship between the plaintiff and some third party, with the probability of
future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)
intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual
disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts

1    of the defendant." *Starlight Cinemas v. Regal Entm't Grp.*, 2014 WL 7781018, at *2 (C.D. Cal.

2    Oct. 23, 2014) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003)).[4]

3           The elements of a claim for ***negligent*** interference with prospective economic advantage

4    are: "(1) the existence of an economic relationship between the plaintiff and a third party containing

5    the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the

6    relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be

7    disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with

8    reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately

9    caused by the defendant's negligence." *Dolin v. Facebook, Inc.*, No. C 18-0950 SBA, 2018 WL

10   2047766, at *5 (N.D. Cal. May 2, 2018).

11          For four reasons, Archer has failed to adequately plead a claim for either negligent or

12   intentional interference with prospective economic advantage: (a) it has failed to identify ***any***

13   ***specific economic relationships*** necessary to form the basis of its claims, (b) it has failed to allege

14   that Wisk engaged in any independently tortious ***wrongful acts***, and (c) it has failed to identify ***any***

15   ***proximate cause*** linking such disruption to Wisk's alleged conduct.

16                        (a)      <u>Failure to identify a specific economic relationship.</u>

17          Archer has not identified any actual, specific third-party economic relationships that have

18   been disrupted.  To establish this element, Archer must "allege the existence of a specific

19   prospective relationship, not potential relationships with a class of unknown investors or

20   purchasers." *Buxton v. Eagle Test Sys., Inc.*, No. C-08-04404 RMW, 2010 WL 1240749, at *1

21   (N.D. Cal. Mar. 26, 2010) (internal citations omitted).  Such allegations must amount to more than

22   "a general averment that it had relationships with its customers and prospective customers."

23   *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D. Cal. 2017).

---

26   4   While Archer has styled its second counterclaim as based on "Interference With Prospective
     Economic Advantage," it appears to include separate and/or alternative conclusory allegations
27   premised on both negligent and intentional interference.  *See, e.g.*, Amended Counterclaims ¶ 75
     ("Wisk also knew that (or, at the very least, recklessly disregarded whether) disruption of these
28   relationships was certain or substantially certain to occur.").

1    Archer does not even attempt to comply.  Instead, it bases its counterclaim on such improper

2    general averment that Archer had "potential" relationships with unidentified third parties.  Archer's

3    allegations on this fundamental element consist exclusively of the vague and conclusory statement

4    that "Archer was in economic relationships with ***potential*** investors, lenders, and employees that

5    would have resulted in economic benefits to Archer."  Amended Counterclaims ¶ 73 (emphasis

6    added).  Even if these were not merely "potential" relationships, Archer's failure to identify even a

7    single specific third party by name is grounds for dismissal.  *See, e.g.*, *Packaging Sys., Inc.*, 268 F.

8    Supp. 3d at 1090 ("Plaintiff must identify specific third parties with whom it had an economic

9    relationship." (emphasis added)); s*ee also Varsity News Network, Inc. v. Carty Web Strategies, Inc.*,

10   2017 WL 7201873, at *10 (C.D. Cal. Aug. 30, 2017) (dismissing claims based on an allegation of

11   an existing economic relationship between plaintiff "and consumers it previously sold its goods and

12   services to as well as prospective consumers."); *CBS Outdoor LLC v. Cal. Mini Storage, LLC*, No.

13   C 14-01598 SI, 2014 WL 5282088, at *6 (N.D. Cal. Oct. 15, 2014); *Buxton v. Eagle Test Sys., Inc.*,

14   No. C-08-04404 RMW, 2010 WL 1240749, at *2 (N.D. Cal. Mar. 26, 2010).

15                         (b)      Failure to allege any independent tortious conduct.

16   Archer has not pled that Wisk engaged in any actual wrongful—*i.e.*, unlawful—conduct to

17   disrupt specific economic relationships.  "A tortious interference with prospective economic

18   advantage claim . . . requires that the defendant's conduct be 'wrongful by some legal measure other

19   than the fact of interference itself.'"  *Name.Space, Inc. v. Internet Corp. for Assigned Names and*

20   *Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015).  "An act is not independently wrongful merely

21   because defendant acted with an improper motive."  *Korea Supply Co.*, 29 Cal. 4th at 1158.  Rather,

22   "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

23   statutory, regulatory, common law, or other determinable legal standard."  *Id*. at 1158-59.  Thus, in

24   order to successfully plead a claim for tortious interference with prospective interference—whether

25   negligent or intentional—Archer must identify conduct proscribed by a specific legal standard that

26   was used to accomplish the claimed interference.  *Dolin*, 2018 WL 2047766, at *4 (dismissing

27   claim for intentional interference with prospective economic advantage where plaintiff failed to

28   identify whether conduct was proscribed by any specific constitutional, statutory, regulatory, or

1  common law standard but merely insinuated that defendant's conduct may violate the antitrust

2  laws).  Archer fails to satisfy this requirement.  Archer does not identify any specific unlawful

3  action underlying its claim for tortious interference with prospective economic advantage, but

4  merely alleges that Wisk's blog posts and press release—summarizing allegations contained in its

5  publicly-filed Complaint and Archer's public comments—"***falsely and unfairly*** accus[ed] Archer of

6  misconduct and ma[de] misleading and false claims intended to obscure the issues for industry

7  outsiders."[5]  In sum, Archer merely alleges that Wisk made "false" and "unfair" statements that it

8  either "knew or should have known" were untrue, without alleging that these statements were

9  unlawful under any specific legal standard—that is insufficient.

10                    (c)      Archer fails to plead actual and proximate disruption.

11            Archer's counterclaim also fails to allege any facts supporting the requirement that Wisk's

12  conduct was the proximate cause of such disruption.  That failure is significant here because, even if

13  Archer could identify specific third parties with whom it had a prospective economic relationship, it

14  is unclear how Archer could possibly establish that Wisk's blog posts and press release were the

15  cause of any disruption to those relationships, rather than Archer's own conduct and the public

16  allegations detailing that conduct in Wisk's Complaint.[6]

17            To establish proximate causation for purposes of a claim for interference with prospective

18  economic advantage, Archer must establish "a reasonable probability the lost economic advantage

19  would have been realized but for the defendant's wrongful acts."  *Parlour Enterprises, Inc. v. Kirin*

20  *Grp., Inc.*, 152 Cal. App. 4th 281, 294 (2007).  The blog posts and press release upon which Archer

21  purports to base its claims refer exclusively to facts alleged in greater detail in Wisk's Complaint

22  and Archer's own public statements.  Archer fails to allege how Wisk's summary of allegations

23  already detailed in much greater detail in a public complaint and in the press could be the proximate

---

[5]  Archer's allegations that Wisk's conduct was targeted at obscuring issues for "industry outsiders" belie its claim that this conduct harmed its relationships with potential eVTOL investors, lenders, and employees—none of whom would likely consider themselves "outsiders" in this context.

[6]  As noted above, Archer's reference to the factual allegations in Wisk's blog posts and press releases rather than the exact same allegations in Wisk's Complaint appears to be part of a half-hearted effort to circumvent the *Noerr-Pennington* doctrine and the California litigation privilege. As also explained above, that effort fails as a matter of law.

cause of any (theoretically) disrupted relationship.  Nor could it plausibly plead such facts.  Indeed, Archer has not identified a single statement contained in Wisk's blog posts or press release that was not addressed in greater detail in Wisk's Complaint or Archer's own public statements.

### 6.      Archer Fails To State A Claim Under The UCL

In addition to its common law tort claims, Archer alleges that the same exact underlying facts also give rise to a claim for unfair competition under the California Business and Professions Code Section 17200—also known as the "UCL"—because they reflect conduct that is "unlawful, unfair, and/or fraudulent."  Amended Counterclaims ¶ 95.  The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice …."  Cal. Bus. & Prof. Code § 17200.  The statute is written in the disjunctive, establishing three separate bases for a claim of unfair competition—conduct that is (1) unlawful, or (2) unfair, or (3) fraudulent.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010).  Archer does not attempt to claim that Wisk has violated the UCL based on any "fraudulent" conduct."[7]  Instead, Archer alleges that Wisk has engaged in unfair competition under the "unlawful" and "unfair" prongs.  But Archer's counterclaims fail to plead either of these two forms of unfair competition as a matter of law.

(a)      Archer fails to allege "unlawful" conduct.

Archer's claim that Wisk has engaged in "unlawful" practices under the UCL fails because it is based solely on common law violations that are excluded from the scope of the UCL.  "In prohibiting any unlawful business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130 (9th Cir. 2014) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  Thus, allegations of unlawful conduct under the

---

[7]  Although paragraph 95 of Archer's Amended Counterclaims alleges that Wisk engaged in conduct that was "unlawful, unfair, ***and/or*** fraudulent," that statement appears to be boilerplate included in the paragraph setting forth its allegations as to the "unfair" prong of the UCL.  Despite this "and/or" catch-all, Archer provides no substantive allegations in support of any claim that Wisk has engaged in "fraudulent" conduct for purposes of the UCL.  Nor could it based on the conclusory allegations elsewhere in its Counterclaims—as such allegations would be subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Hilario v. Allstate Ins. Co.*, No. 20-CV-05459-WHO, 2020 WL 7643233, at *7 (N.D. Cal. Dec. 23, 2020) (Orrick, J.) ("Rule 9(b)'s heightened pleading standard applies to Hilario's UCL claim because it is grounded in fraud.").

1   UCL must be grounded "in a business practice forbidden by law, be it civil or criminal, federal,

2   state, or municipal, statutory, regulatory, or court-made.  In other words, a common law violation …

3   is insufficient."   *Shroyer*, 622 F.3d at 1044 (internal citations omitted); *Meyer v. Aabaco Small*

4   *Bus., LLC*, No. 2018 WL 306688, at *4 (N.D. Cal. Jan. 5, 2018) ("Plaintiffs' breach of contract

5   claim cannot support a UCL claim.") (Davila, J.); *Hilario v. Allstate Ins. Co.*, No. 20-CV-05459-

6   WHO, 2020 WL 7643233, at *8 (N.D. Cal. Dec. 23, 2020) (Orrick, J.) (same).

7        In support of its claim that Wisk has taken unlawful actions in violation of the UCL, Archer

8   merely incorporates by reference the allegations "as described in Counterclaims 1 and 2."

9   Amended Counterclaims ¶ 94.  As discussed above, however, those counterclaims are based

10   exclusively on allegations relating to "interference with contractual relations" and "interference

11   with prospective economic advantage."[8]  Amended Counterclaims ¶¶ 65-78.  These are common

12   law claims. *See Korea Supply*, 29 Cal. 4th at 1164 (discussing "the California common law tort of

13   interference with prospective economic advantage"); *Cal. State Council of Carpenters v. Associated*

14   *Gen. Contractors of California, Inc.*, 404 F. Supp. 1067, 1072 (N.D. Cal. 1975) (referring to "the

15   common law tort of interference with contractual relations").  Thus, neither counterclaim can form

16   the basis for a claim of "unlawful" conduct under the UCL.  *Shroyer*, 622 F.3d at 1044.

17                        (b)     Archer fails to allege "unfair" conduct.

18        Archer's attempts to allege the "unfair" prong of the UCL fails as a matter of law.  "Unfair

19   acts among competitors means conduct that threatens an incipient violation of an antitrust law, or

20   violates the spirit or policy of those laws because its effects are comparable to or the same as a

21   violation of the law, or otherwise significantly threatens or harms competition."  *Sybersound*

22   *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2009) (quoting *Cel-Tech Commc'ns, Inc.*

23   *v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)); *Levitt v. Yelp! Inc.*, 765 F.3d 1123,

24   1136 (9th Cir. 2014) (affirming dismissal of a UCL unfair prong claim based on conclusory

25   allegations of competitive harm).  Accordingly, in order to assert an "unfair" UCL claim against

26

27   ―――――――――――――――
    [8]   As explained above in Sections III.B.1 through III.B.5, Archer's first and second counterclaims
28   also fail as a matter of law and thus could not provide a basis for allegations under the "unlawful"
     prong even if they were not common law claims.

Wisk, Archer was required to allege "an antitrust injury, i.e. harm to competition, which is distinct from harm to a competitor." *UCAR Tech. (USA) Inc. v. Yan Li*, No. 5:17-CV-01704-EJD, 2018 WL 2555429, at \*7 (N.D. Cal. June 4, 2018) (Davila, J.).

Archer's counterclaims are devoid of the required allegations of antitrust injury.  Although Archer's claims include boilerplate language that Wisk's practices "as alleged here" could "significantly threaten and harm competition in the following aspects," Archer's counterclaims then merely go on to list direct harm to Archer in the form of purported lost resources and contractual relations—not harm to competition. *See* Amended Counterclaims ¶¶ 95-98.  Courts routinely dismiss UCL claims based on such threadbare and conclusory allegations of competitive harm backed only by allegations of direct harm to a competitor itself. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136–37 (9th Cir. 2014) (dismissing claim under "unfair" prong of UCL for failure to plead antitrust injury based on the "very general allegation" that defendant's conduct "harms competition by favoring businesses that submit to [defendant's] manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising"); *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1210 (N.D. Cal. 2020) (noting that plaintiff's allegations were "even weaker than that in *Levitt* because [plaintiff] fail[ed] to allege any harm to competition but merely focuse[d] on harm to itself, which is insufficient to state a claim under the 'unfair' prong of the UCL."); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1092–93 (N.D. Cal. 2018) ("Plaintiffs also do not allege facts to show how [defendant] caused anticompetitive impact on [the claimed] market.  Generalized allegations of harm do not satisfy *Cel-Tech*'s requirement that the effect of a defendant's conduct amounts to a violation of antitrust laws or otherwise significantly threatens or harms competition." (internal citations omitted)); *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1093 (N.D. Cal. 2007); *Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, No. 16-CV-02560-SI, 2017 WL 679496, at \*6 (N.D. Cal. Feb. 21, 2017).

### 7.    Archer's Claims Fail Because Wisk's Statements Were Truthful

Finally, Archer cannot meet its burden to show a probability of prevailing on the merits for one more important reason:  truth matters.  Even if Archer's counterclaims did not fail as a matter of law—and as explained above, they each do—no reasonable jury could find that Wisk's truthful

1    statements about this lawsuit—rather than the underlying allegations in that lawsuit—give rise to

2    liability for tortious interference or unfair competition based on tortious interference.

3        To prevail on its counterclaims, Archer must demonstrate that Archer's blog posts and press

4    release about this lawsuit were untrue.  *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 449–

5    50 (1993) ("A person cannot incur liability for interfering with contractual or economic relations by

6    giving truthful information to a third party."); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516

7    (1991) ("As in other jurisdictions, California law permits the defense of substantial truth").

8        Archer cannot do so here.  Wisk's April 6 Post and Press Release each accurately stated the

9    allegations set forth in Wisk's Complaint.  *Compare* Kapgan Decl. Exs. 1 & 2 *with* Dkt. 1.  And

10   Wisk's subsequent May 19 Post updated its original post to reflect that **Archer** had acknowledged

11   the existence of an FBI investigation related to the allegations in Wisk's Complaint.  *Id.* Ex. 1.  That

12   update accurately reflected news that had already been widely reported weeks earlier.  *See id.* Ex. 3

13   (*New York Times* article), Ex. 4 (*Silicon Valley Business Journal* article).

14   **IV.   ALTERNATIVELY, THE COURT SHOULD DISMISS ARCHER'S**

15   **COUNTERCLAIMS UNDER RULE 12(B)(6)**

16       To the extent the Court does not strike Archer's counterclaims, they should be dismissed

17   pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss under Rule

18   12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

19   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

20   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

21   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22   defendant is liable for the misconduct alleged."  *Id.*  When considering a motion to dismiss, the

23   court assumes the veracity of "well-pleaded factual allegations"; however, the same assumption

24   does not apply to legal conclusions, even if presented as supposed fact.  *Iqbal*, 556 U.S. at 678-679.

25   Similarly, the court need not accept conclusory allegations, unwarranted deductions of fact, or

26   unreasonable inferences, *e.g., Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112,

27   1115 (9th Cir. 2014), and "[f]actual allegations must be enough to raise a right to relief above the

28   speculative level," *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief," and the claim must be dismissed. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (quotation marks omitted).

As described above, Archer's first four counterclaims are barred under the *Noerr-Pennington* doctrine, barred under the California litigation and fair and truthful reporting privileges, and fail to adequately plead each cause of action.

## V.   CONCLUSION

For the foregoing reasons, the Court should strike Archer's first, second, third, and fourth counterclaims and award Wisk its attorneys' fees incurred in filing and arguing this motion.

DATED:  July 27, 2021                            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Yury Kapgan*
    Yury Kapgan
    Robert M. Schwartz
    Michael T. Zeller
    Patrick Schmidt
    Michael LaFond

Attorneys for Plaintiff Wisk Aero LLC