JOSH A. KREVITT, SBN 208552
jkrevitt@gibsondunn.com
JOSHUA H. LERNER, SBN 220755
jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone:    650.849.5300
Facsimile:    650.849.5333

ORIN SNYDER, *admitted pro hac vice*
osnyder@gibsondunn.com
DANIEL J. THOMASCH, *admitted pro hac vice*
dthomasch@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

WAYNE BARSKY, SBN 116731
wbarsky@gibsondunn.com
DIANA M. FEINSTEIN, *admitted pro hac vice*
dfeinstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone:    310.552.8500
Facsimile:    310.551.8741

Attorneys for Defendant
ARCHER AVIATION INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ARCHER AVIATION INC.,<br><br>　　　　　　Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND DISMISS DEFENDANT'S COUNTERCLAIMS (1–4)**<br><br>Action Filed:  April 6, 2021<br><br>Hearing Date: September 1, 2021<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 2<br><br>Honorable Judge William H. Orrick |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... II

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

    A.    Archer's Work with FlightHouse to Develop Archer's *Maker* Aircraft ...................... 2

    B.    Archer Discloses Its Design To Wisk's Senior Engineer ............................................ 3

    C.    Wisk's 2020 Accusations Of Theft ............................................................................ 3

    D.    Procedural Background ............................................................................................. 5

ARGUMENT ......................................................................................................................... 6

I.    There Is No Basis To Strike Archer's Counterclaims ............................................................. 6

    A.    The Challenged Statements Are Not Protected Activity ............................................. 7

    B.    Archer Has Adequately Pleaded Its Claims .............................................................. 9

        1.    The *Noerr-Pennington* Doctrine Does Not Apply ......................................... 10

            a.    There Is No Immunity For Wisk's Blog Posts and Press Release ...... 10

            b.    Archer Has Adequately Alleged Wisk's Lawsuit Is a Sham .............. 13

        2.    California's Litigation Privilege Does Not Apply ......................................... 15

        3.    California's Fair And True Reporting Privilege Does Not Apply ................. 18

        4.    Archer Has Stated A Plausible Claim For Interference With Contract ......... 20

        5.    Archer Has Stated A Plausible Claim For Interference With Prospective Economic Advantage ................................................................................... 21

        6.    Archer Has Stated A Plausible Claim Under The UCL ................................ 22

        7.    Archer Has Plausibly Alleged Falsity ........................................................ 24

II.    Archer Has Adequately Stated Its Claims ......................................................................... 24

CONCLUSION ...................................................................................................................... 25

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abuemeira v. Stephens*,
246 Cal. App. 4th 1291 (2016)....................................................................................16

*Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*,
634 F. Supp. 316 (D. Kan. 1986)................................................................................13

*Am. Dental Ass'n v. Khorrami*,
2004 WL 3486525 (C.D. Cal. Jan. 26, 2004) ............................................................18

*AmeriPOD, LLC v. DavisREED Constr. Inc.*,
2017 WL 2959351 (S.D. Cal. July 11, 2017) .............................................................22

*Argentieri v. Zuckerberg*,
2016 WL 4151528 (Cal. Super. Feb. 16, 2016), *aff'd*, 8 Cal. App. 5th 768 (2017) .......................9

*Argentieri v. Zuckerberg*,
8 Cal. App. 5th 768) (2017) ..........................................................................6, 15, 16, 17

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
2018 WL 11230167 (N.D. Cal. May 21, 2018) ....................................................11, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................24

*Asia Econ. Inst. v. Xcentric Ventures, LLC*,
2010 WL 11462989 (C.D. Cal. Apr. 20, 2010) ...........................................................8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................24

*Braun v. Chron. Publ'g Co.*,
52 Cal. App. 4th 1036 (1997)......................................................................................9

*Canaday v. Peoples-Perry*,
2017 WL 6405618 (N.D. Cal. Dec. 15, 2017) ...........................................................15

*Carver v. Bonds*,
135 Cal. App. 4th 328 (2005)......................................................................................7

*Castaline v. Aaron Mueller Arts*,
2010 WL 583944 (N.D. Cal. Feb. 15, 2010)..............................................................17

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 (9th Cir. 1982).....................................................................................13

ii

Gibson, Dunn &
Crutcher LLP

*Cole v. Patricia A. Meyer & Assocs., APC*,
    206 Cal. App. 4th 1095 (2012).........................................................................................18

*Commodity Trucking Acquisition, LLC v. Aylott*,
    2018 WL 6583843 (Cal. Ct. App. Dec. 14, 2018) .........................................................19

*Cortez v. Glob. Ground Support, LLC*,
    2009 WL 4282076 (N.D. Cal. Nov. 25, 2009)................................................................22

*Crane v. Arizona Republic*,
    972 F.2d 1511 (9th Cir. 1992)........................................................................................10

*Dickinson v. Cosby*,
    17 Cal. App. 5th 655 (2017)...........................................................................................12

*F.T.C. v. Wellness Support Network, Inc.*,
    2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) .................................................................24

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006)..........................................................................................23

*FIVE Hotel FZCO v. Viceroy Hotels, LLC*,
    2019 WL 91567 (Cal. Ct. App. Jan. 3, 2019) ...............................................................17

*GetFugu, Inc. v. Patton Boggs LLP*,
    220 Cal. App. 4th 141 (2013)..............................................................................8, 16, 17

*Grishin v. Sulkess*,
    2019 WL 4418543 (C.D. Cal. May 31, 2019) .................................................................9

*Hanover Ins. Co. v. Fremont Bank*,
    68 F. Supp. 3d 1085 (N.D. Cal. 2014) .............................................................................9

*Healthsmart Pac., Inc. v. Kabateck*,
    7 Cal. App. 5th 416 (2016)........................................................................................1, 19

*House of Leb. Org., Inc. v. House of Pac. Relations Int'l Cottages, Inc.*,
    2017 WL 2380121 (S.D. Cal. June 1, 2017)..................................................................22

*In re IBP Confidential Bus. Documents Litig.*,
    755 F.2d 1300 (8th Cir. 1985)........................................................................................10

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009)..........................................................................................13

*Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998)..................................................................................13, 14

*Luxul Tech. Inc. v. Nectarlux, LLC*,
    78 F. Supp. 3d 1156 (N.D. Cal. 2015) .....................................................................23, 24

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
AND DISMISS DEFENDANT'S COUNTERCLAIMS
CASE NO. 3:21-CV-02450-WHO

*Mandel v. Hafermann*,
   503 F. Supp. 3d 946 (N.D. Cal. 2020) .................................................................................7

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006).............................................................................................23

*Metro. Opera Ass'n v. Local 100*,
   2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) ....................................................................10

*Moran v. Prime Healthcare Mgmt., Inc.*,
   3 Cal. App. 5th 1131 (2016)..................................................................................................23

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003)................................................................................23

*Nestle USA, Inc. v. Crest Foods, Inc.*,
   2017 WL 3267665 (C.D. Cal. July 28, 2017) ......................................................................22

*Netflix, Inc. v. Blockbuster, Inc.*,
   2006 WL 2458717 (N.D. Cal. Aug. 22, 2006)...............................................................13, 14

*Neville v. Chudacoff*,
   160 Cal. App. 4th 1255 (2008)...............................................................................................9

*In re Outlaw Lab., LP Litig.*,
   2019 WL 1205004 (S.D. Cal. Mar. 14, 2019) ...............................................................13, 14

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal.3d 1118 (1990) ..........................................................................................................20

*Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*,
   268 F. Supp. 3d 1071 (C.D. Cal. 2017).................................................................................21

*PAI Corp. v. Integrated Sci. Sols., Inc.*,
   2008 WL 11404541 (N.D. Cal. Feb. 15, 2008).....................................................................22

*Park Miller, LLC v. Durham Grp., Ltd.*,
   2020 WL 1955652 .................................................................................................................20

*Parlour Enterprises, Inc. v. Kirin Grp., Inc.*,
   152 Cal. App. 4th 281 (2007).................................................................................................22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018) ............................6

*Rand Res., LLC v. City of Carson*,
   6 Cal. 5th 610 (2019) .............................................................................................................9

*Rausch v. Blair*,
   2015 WL 13283839 (C.D. Cal. Oct. 1, 2015) .......................................................................22

Gibson, Dunn &
Crutcher LLP

*Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*,
  2015 WL 12941890 (N.D. Cal. Apr. 7, 2015) .............................................................11

*Riverbed Technologies. Capital Health Sys., Inc. v. Veznedaroglu*,
  2017 WL 751855 (D.N.J. Feb. 27, 2017).....................................................................13

*Rothman v. Jackson*,
  49 Cal. App. 4th 1134 (1996)......................................................................................15

*Sebastian Int'l, Inc. v. Russolillo*,
  162 F. Supp. 2d 1198 (C.D. Cal. 2001)........................................................................21

*Shroyer v. New Cingular Wireless Services, Inc.*,
  622 F.3d 1035 (9th Cir. 2010)......................................................................................23

*Silberg v. Anderson*,
  50 Cal. 3d 205 (1990) ...........................................................................................15, 16

*Silicon Labs Integration, Inc. v. Melman*,
  2010 WL 890140 (N.D. Cal. Mar. 8, 2010)............................................................20, 22

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  2020 WL 2214152 (S.D. Cal. May 7, 2020).................................................................23

*Sole Energy Co. v. Petrominerals Corp.*,
  128 Cal. App. 4th 212 (2005).......................................................................................20

*Sonus Networks, Inc. v. Inventergy, Inc.*,
  2015 WL 4539814 (N.D. Cal. July 27, 2015)..........................................................13, 14

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)...................................................................................11, 12

*Susan A. v. Cnty. of Sonoma*,
  2 Cal. App. 4th 88 (1991).............................................................................................16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008).............................................................................10, 11, 12

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
  377 F.3d 1081 (9th Cir. 2004).......................................................................................25

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*,
  814 F. Supp. 2d 1033 (S.D. Cal. 2011).........................................................................17

*Weinberg v. Feisel*,
  110 Cal. App. 4th 1122 (2003)......................................................................................12

*Wichmann v. Levine*,
  2016 WL 4368136 (E.D. Cal. Aug. 16, 2016) ...............................................................8

v

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004).............................................................................................8

**STATUTES**

Cal. Civ. Code § 47(b)(2)..................................................................................................15

Cal. Civ. Code § 47(d)(1)..................................................................................................18

Cal. Civ. Proc. Code § 425.16(b)(1) ..............................................................................6, 7

Cal. Civ. Proc. Code § 425.16(e)(2) ..................................................................................9

Cal. Civ. Proc. Code § 425.16(e)(3) ..............................................................................7, 9

**OTHER AUTHORITIES**

Christopher Yasiejko, Bloomberg Quint, *Flying-Taxi SPAC Faces Criminal Probe Over Rival's Trade Secrets* (May 20, 2021), https://www.bloombergquint.com/onweb/flying-taxi-spac-facing-criminal-probe-on-rival-s-trade-secrets................................................................................5

Cision PR Newswire, *About PR Newswire,* https://prnewswire.mediaroom.com/index.php ...............16

**RULES**

Fed. R. Civ. P. 15(a)(1)(B).................................................................................................5

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
AND DISMISS DEFENDANT'S COUNTERCLAIMS
CASE NO. 3:21-CV-02450-WHO

Gibson, Dunn &
Crutcher LLP

# INTRODUCTION

Wisk's lawsuit against Archer was filed in bad faith for the improper purpose of sabotaging a competitor.  Archer will disprove all of Wisk's baseless allegations, defeat them at trial if necessary, and then pursue an action against Wisk for malicious prosecution.  If Wisk had only made false statements in court-filed documents in this litigation, right now Archer would have limited legal recourse against Wisk.  But Wisk did not stop there.  It deployed a knowingly false extra-judicial smear campaign that projected stand-alone defamatory statements about Archer to the world.  The public blog statements and press release at issue stretch way beyond Wisk's right to petition this Court for relief.  They do not further Wisk's court claims in any way.  They are false, malicious, and have the plain purpose of impeding Archer's business at a critical juncture for the company.  Filing a complaint in court does not give Wisk a free pass to make false and damaging statements outside of the judicial process.

On its blog on its website, Wisk proclaimed that it "discovered significant and troubling evidence indicating that Archer has been using Wisk's proprietary intellectual property without [its] permission," that it had "discovered the misappropriation of thousands of highly confidential files containing very valuable trade secrets," and that Archer's eVTOL aircraft design is a "copy of the same design that Wisk developed and submitted in a confidential patent application."  Dkt. 90-1; *see also* Dkt. 90 ¶¶ 3–4.  For three months and counting, Wisk also has posted the damaging lie that the FBI and Department of Justice are conducting a "criminal investigation into Archer."  Dkt. 90-1; *see also* Dkt. 90 ¶ 3.  Wisk says that its complaint insulates it from liability for these defamatory statements, and that Archer's actions to hold Wisk to account for its false and malicious internet postings somehow restrict Wisk's right to petition for the redress of grievances—even though its court claims are unaffected.  Wisk is wrong.

Wisk may not "make defamatory allegations in a complaint and then report the same alleged facts, *as facts* . . . with impunity."  *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 435 (2016) (emphasis in original).  Nor can Wisk absolve itself of responsibility for false statements by sprinkling into its blog postings phrases like "[a]s detailed in our Complaint."  *See* Dkt. 90-1.  The fair and true report privilege that Wisk hoped its token references would trigger does not even apply

Gibson, Dunn &
Crutcher LLP

here; none of these statements was made to a "public journal." But even if any privilege applied, Wisk's clumsy effort to excuse its defamatory blog posts and press releases have the opposite effect; rather than report what is in the complaint, Wisk has chosen to tell readers that the complaint is *support* for Wisk's independent (defamatory) statements, including its significant misrepresentation that Archer is under "criminal investigation" (a claim that even the over-the-top complaint does not allege).

Archer has stated viable claims that are intended to hold Wisk accountable for its false and malicious extra-judicial smear campaign that has caused substantial damage to Archer, likely to exceed $1 billion, including negatively impacting Archer's ability to access capital on acceptable terms and impairing Archer's business relationships. Wisk cannot find refuge in discredited legal authority or inapplicable privileges. Nor can Wisk avoid that it is attempting to contest factual contentions that cannot be decided at this stage of the litigation. Wisk's motion to strike or dismiss Archer's counterclaims should be denied.

## FACTUAL BACKGROUND

### A.   Archer's Work with FlightHouse to Develop Archer's *Maker* Aircraft

In September 2019, Archer engaged FlightHouse Engineering, LLC—a leader in the aircraft design industry that had worked with Airbus and others to develop an eVTOL aircraft—to help design an eVTOL aircraft that would meet Archer's needs. Dkt. 90 ¶ 15. FlightHouse spent several months developing different potential aircraft design configurations for Archer. *Id.* ¶ 16.

By no later than November 22, 2019, FlightHouse had proposed to Archer the possibility of using tiltable rotors—rotors attached to the wing that can tilt up and down between takeoff and flight—on its eVTOL aircraft. *Id.* ¶ 17. On December 6, 2019, FlightHouse provided Archer with a presentation deck that identified as one potential design an aircraft with "12 rotors, front six tilt." *Id.* ¶ 18. At the same time it was working with FlightHouse, Archer was recruiting the leading talent in the industry, including engineers Tom Muniz and Geoff Bower, and world-renowned industrial designer Frank Stephenson. *Id.* ¶¶ 19–25. Archer also worked with third-party vendors to source the motors and battery systems for its aircraft. *Id.* ¶¶ 26–27.

Gibson, Dunn &
Crutcher LLP

### B.    Archer Discloses Its Design To Wisk's Senior Engineer

On December 9, 2019—three days *after* the meeting with FlightHouse that included a deck containing the 12-tilt-6 design—Archer founders Brett Adcock and Adam Goldstein met with Geoff Long, a senior engineer at Wisk, in Palo Alto to discuss recruiting Long to join Archer.  *Id.* ¶ 28.  As Long's own notes indicate, Adcock and Goldstein disclosed to Long that they were working with Calder Hughes (of FlightHouse) to design an eVTOL aircraft, and that they planned to use a fixed-wing aircraft with a 12-rotor tilting design.  *Id.* ¶¶ 29, 55.  Adcock and Goldstein also told Long that one of the designs they were considering would have six rotors along the front of a fixed wing, with up to all six front rotors capable of tilting, and six stationary lift fans arranged aft of the wing (*i.e.*, the 12-tilt-6 design).  *Id.* ¶ 30.

Long relayed his conversation with Adcock and Goldstein to Wisk CEO Gary Gysin and Wisk Chief Technology Officer Jim Tighe.  *Id.* ¶ 32.  Long specifically disclosed Archer's plans for a 12-rotor tilting design, and also disclosed that Archer was working with a third-party consultant to design its eVTOL aircraft.  *Id.* ¶ 33.  The next month, on January 31, 2020, Wisk filed a provisional patent application containing, among several other designs, the 12-tilt-6 design that Wisk repeatedly reproduces in its pleadings and media campaign.  *Id.* ¶ 34.  The side-by-side illustrations that Wisk touts have, in fact, been wholly fraudulent.  The Wisk design was drawn after Archer revealed its plans to Long.

### C.    Wisk's 2020 Accusations Of Theft

Meanwhile, Archer's hard work and innovative strategy have already started to pay off.  In January 2021, Archer announced an agreement with Fiat-Chrysler (FCA/Stellantis) that will allow Archer to access the resources and expertise of an established and recognized global manufacturer, all with the goal of obtaining FAA certification of an eVTOL vehicle in 2024.  *Id.* ¶¶ 36–37.  On February 10, 2021, Archer publicly announced that it had entered into a definitive agreement for a business combination with a special purpose acquisition company (Atlas Crest Investment Corp) intended to raise $1.1 billion from investors and make Archer a public company listed on the New York Stock Exchange.  *Id.* ¶ 38.  Also on February 10, 2021, Archer publicly announced an aircraft purchase and collaboration agreement with United Airlines, Inc. that includes an order for $1 billion

Gibson, Dunn &
Crutcher LLP

of Archer's future aircraft, with an option for United to purchase an additional $500 million of aircraft. *Id.* ¶ 39.  In making these announcements, Archer made publicly available its investor presentation that included a conceptual mock-up of the aircraft design it had been working on—the *Maker*—that included twelve rotors, six of which tilt. *Id.* ¶ 40.

It was not long after these announcements that Wisk launched the public phase of its campaign against Archer.  On April 6, 2021, Wisk filed a lawsuit accusing Archer of stealing trade secrets and infringing several of Wisk's patents, although with no actual evidence of either. *Id.* ¶ 41. In its Complaint and its First Amended Complaint, Wisk expressly referenced Archer's contractual relationships with Atlas Crest and United Airlines.  Dkt. 1 ¶¶ 4, 118, 119, 119 n.2;  Dkt. 45 ¶¶ 4, 118, 119, 119 n.2.  Throughout its pleadings, Wisk also has included a side-by-side image of the 12-tilt-6 design depicted in its January 2020 patent application next to the design Archer released in February 2021 (also a 12-tilt-6 design). *See, e.g.*, Dkt. 45 ¶¶ 4, 81–82.  In doing so, Wisk concealed that Archer's founders had described the 12-tilt-6 design to Wisk's lead engineer *before* Wisk even began the process of preparing the patent application.  Dkt. 90 ¶¶ 28–34.

Wisk's lawsuit was just one prong of its attack.  To inflict maximum damage on Archer, Wisk posted a blog post on its website simultaneously with the filing of its lawsuit, and also issued a press release—also posted on the internet—that linked to the blog post. *Id.* ¶ 45.  Wisk claimed in its April 6, 2021 blog post that Archer is using "stolen Wisk technology" and "infringing our patents." *Id.* ¶ 49.  Pointing to the similarity between a drawing in Wisk's provisional patent application and Archer's *Maker*, Wisk baselessly asserted that this "could not have been a coincidence," *id.* ¶ 51, even though Wisk *knew* that Archer was working on a 12-tilt-6 design before Wisk ever contemplated filing the patent application, *id.* ¶¶ 4, 28–34.

Beyond its misleading comparison of the *Maker* to the patent application, Wisk also misled readers about basic industry realities.  Wisk asserted that "[t]he design of the aircraft submitted in Wisk's patent application is not a result of common knowledge among the industry or basic eVTOL aircraft design," a knowingly untrue statement given that many aspects of Wisk's aircraft design (including the use of tiltable rotors) are common knowledge in the industry. *Id.* ¶ 53.  Wisk further claimed that it was "virtually impossible" for Archer to have made such progress in the amount of

4

Gibson, Dunn &
Crutcher LLP

time it did, ignoring that Wisk already knew by December 2019 that Archer was working with FlightHouse to design its aircraft configuration. *Id.* ¶¶ 54–55.

Wisk still was not done. In a second blog post on May 19, 2021, Wisk falsely claimed that the FBI and U.S. Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property." Dkt. 90 ¶ 57; Dkt. 90-1. Within hours of Wisk filing its motion for preliminary injunction, Bloomberg published an article entitled "Flying-Taxi SPAC Faces Criminal Probe Over Rival's Trade Secrets" that detailed allegations in Wisk's motion.[1] Wisk's statement in its blog post that Archer was under federal criminal investigation, which the Bloomberg headline mirrored, is not true. It is a false statement that Wisk knew to be false when Wisk made it: Archer is not currently and has never been the target of a criminal investigation. Dkt. 90 ¶¶ 58–59.[2]

Wisk's course of conduct leaves little doubt—and certainly gives rise to at least a plausible inference when Archer's allegations are accepted as true—that Wisk's intent in publishing its salacious allegations was to inflict maximum harm on Archer at a critical moment in Archer's development. To an extent, it has worked. Wisk's public statements on its website have disrupted Archer's business, causing substantial damage, likely to exceed $1 billion, including negatively impacting Archer's ability to access capital on acceptable terms and impairing Archer's business relationships. *See id.* ¶¶ 60–64.

### D.     Procedural Background

On June 1, 2021, Archer filed its original counterclaims. Dkt. 31. Wisk moved to strike or dismiss those counterclaims pursuant to California's anti-SLAPP statute on June 22. Dkt. 54. Archer filed its First Amended Counterclaims as of right, *see* Fed. R. Civ. P. 15(a)(1)(B), on July 13, 2021, Dkt. 90, which Wisk moved to strike or dismiss on July 27, 2021. Dkt. 113 ("Mot.").

---

[1]  Christopher Yasiejko, Bloomberg Quint, *Flying-Taxi SPAC Faces Criminal Probe Over Rival's Trade Secrets* (May 20, 2021), https://www.bloombergquint.com/onweb/flying-taxi-spac-facing-criminal-probe-on-rival-s-trade-secrets.

[2]  That Atlas Crest mistakenly issued an SEC disclosure on June 4, 2021 that indicated there was "a federal investigation into Archer's aircraft design and hiring processes," Mot. at 3, is irrelevant. Not only was that statement not included in either of Wisk's complaints, but Atlas Crest's correction of the statement within hours shows its falsity, not its truth.

1    Contrary to Wisk's mischaracterization, Archer's First Amended Counterclaims are not

2   "almost identical to its initial counterclaims[,] but with a single additional claim for defamation."

3   Mot. at 4.  Archer's First Amended Counterclaims contain additional detail, obtained through

4   expedited discovery conducted in connection with Wisk's unsuccessful motion for a preliminary

5   injunction.  *See, e.g.*, Dkt. 90 ¶¶ 4, 28–34 (adding allegations about when Archer's co-founders

6   disclosed its design to Wisk's senior engineer).  This expedited discovery provided further factual

7   basis for Wisk's reckless disregard for the truth in making its public statements, particularly those

8   referencing Wisk's January 2020 patent application.  Wisk's second motion to strike or dismiss

9   Archer's counterclaims, however, *is* identical to its original motion (but for a single paragraph

10   incorrectly describing Archer's amendment) and does not address any of the new allegations.  *See*

11   *generally* Mot.

## ARGUMENT

### I.    There Is No Basis To Strike Archer's Counterclaims

14    Before showing how Wisk fails to satisfy the anti-SLAPP statute's requirements, it is

15   necessary to correct Wisk's erroneous statement of what those requirements are.  California's

16   anti-SLAPP statute authorizes a defendant to bring a special motion to strike when a cause of action

17   arises from an act in furtherance of the defendant's constitutional free speech in connection with a

18   public issue.  Cal. Civ. Proc. Code § 425.16(b)(1).  Wisk claims that after it establishes that the

19   challenged statements constitute protected activity, the burden is on Archer "to establish, by

20   admissible evidence, a probability of prevailing on the claim."  Mot. at 6 (quoting *Argentieri v.*

21   *Zuckerberg,* 8 Cal. App. 5th 768, 780) (2017).  That is wrong, and misstates both what the burden is

22   and which party carries it here.

23    Although California's anti-SLAPP statute applies in federal courts in the Ninth Circuit,

24   its framework must be modified to avoid any "collision of the state rules of procedure with the

25   governing Federal Rules of Civil Procedure."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for*

26   *Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018).

27   Accordingly, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim,

28   a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider

Gibson, Dunn &
Crutcher LLP

whether a claim is properly stated." *Id.* ("[W]hen an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.").

Wisk challenges only the legal sufficiency of Archer's claims, not their factual basis.  Mot. at 6–19.  Accordingly, even if Wisk's challenged statements qualified as protected activity and satisfied the first prong of the anti-SLAPP analysis, Wisk's anti-SLAPP motion fails under the second prong of that analysis if Archer has stated plausible claims for relief.  Any higher threshold requiring Archer to have a "probability of prevailing" does not apply in this federal court action.[3]

In addition, unlike in the typical analysis of the second prong of the anti-SLAPP statute, it is the defendant (*i.e.*, Wisk) who bears the burden of proving that a privilege applies.  *Carver v. Bonds*, 135 Cal. App. 4th 328, 348–49 (2005); *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 963 (N.D. Cal. 2020) (Corley, J.) (party invoking privilege carries the burden because it is an affirmative defense).  Thus, as to at least Wisk's incorrect assertions that the litigation privilege and fair and true report privilege apply to its extra-judicial defamatory statements about Archer, it is Wisk that bears the burden of showing those privileges apply.

## A.     The Challenged Statements Are Not Protected Activity

Wisk has the burden under the first prong of the anti-SLAPP analysis to show that its out-of-court statements on which Archer bases its counterclaims were in furtherance of Wisk's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  *See* Cal. Civ. Code § 425.16(b)(1).  The statute lists four types of statements or conduct that satisfy this definition.  Wisk appears to rely on only one of them, quoting the anti-SLAPP statute's application to "any written . . . statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3); *see also* Mot. at 5.  But Wisk makes no effort to show how it satisfies this provision and thus carry its statutory burden.

---

[3] In what has become a trend, Wisk makes false or misleading statements in the body of its filing and buries the clarifying truth in a footnote.  Its motion states repeatedly in the text that Archer must show a probability of prevailing on its counterclaims under California Code of Civil Procedure § 425.16(b)(1).  Mot. at i, 6, 10, 11, 19.  In footnote 2 on page 5, however, Wisk cites *Planned Parenthood* and acknowledges that the Rule 12(b)(6) standard applies.

Whether a statement concerns an issue of public interest turns on such considerations as whether (1) "the subject of the statement or activity precipitating the claim was a person or entity in the public eye," (2) "the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants," and (3) "the statement or activity precipitating the claim involved a topic of widespread public interest." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). Wisk makes no attempt to explain how the false and defamatory statements that Wisk published on its website pass muster under any of these formulations of what constitutes a matter of "public interest."

For example, Wisk offers nothing to explain how Archer is any more in the "public eye" than every other small start-up. Wisk also does not say how the alleged misappropriation by one private company from another private company, involving aircraft that have not been certified, let alone produced, and in which no member of the public will fly for years "affects a large number of people" beyond the parties to the dispute. *Wichmann v. Levine*, 2016 WL 4368136, at *6 (E.D. Cal. Aug. 16, 2016). Nor does Wisk claim that the challenged statements involve a "topic of widespread public interest" rather than being "of interest only to [Archer and Wisk] and to those who had been affected by [Archer's purported] practices." *Asia Econ. Inst. v. Xcentric Ventures, LLC*, 2010 WL 11462989, at *10 (C.D. Cal. Apr. 20, 2010).

Wisk cites just one case relating to the public interest provision of the anti-SLAPP statute. Mot. at 5 (citing *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 151 (2013)). The *GetFugu* court noted that the scam in that case concerned "a public company whose common stock was traded on the OTCBB (OTC Bulletin Board)," but only for the purpose of clarifying that "not every act of fraud is a matter of public interest." *GetFugu*, 220 Cal. App. 4th at 151. In *GetFugu*, the "investment scams [were] a matter of public interest," because "[i]nvestors turn to the markets to help secure their futures, pay for homes, and send children to college, making investor protection more compelling than ever." *Id.* By contrast, here, Archer is not yet a public company, has no product to sell, and is not alleged to have engaged in any fraud on the public. This is a civil dispute between two companies, which is significantly different than the matters of "public interest" under California Code of Civil Procedure § 425.16(e)(3).

Wisk also cites *Argentieri v. Zuckerberg*, 2016 WL 4151528 (Cal. Super. Feb. 16, 2016), *aff'd*, 8 Cal. App. 5th 768 (2017), but that case involved a *different* provision of the anti-SLAPP statute not cited by Wisk.  *Id.* at *1 n.1.  That separate provision extends protection to "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body," Cal. Civ. Proc. Code § 425.16(e)(2).  Wisk has not invoked that provision— subsection (e)(2)—because it applies only if the challenged statements were "directed to persons having some interest in the litigation."  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1266 (2008).

There is no colorable argument that Wisk's publications on its publicly available website are the kind of "tailored disclosures" required for the anti-SLAPP law to apply under subsection (e)(2).  *Grishin v. Sulkess*, 2019 WL 4418543, at *4 (C.D. Cal. May 31, 2019) (holding that Facebook posts do not qualify as protected activity under subsection(e)(2)); *see also Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1105–06 (N.D. Cal. 2014) (Ryu, J.) (holding that statements were not covered by the anti-SLAPP statute where the statements were not directed to "persons having some interest in the litigation" (quotation marks omitted)).  Although courts have interpreted subsection (e)(2) to apply to statements beyond the "petitioning activity" itself, *Braun v. Chron. Publ'g Co.*, 52 Cal. App. 4th 1036, 1044–45 (1997), that does not change the requirement that the statements be tailored to a specific interested audience.  *See Neville*, 160 Cal. App. 4th at 1266.  If the statements are made to a wider audience, then the speaker must show the issue is of "public interest." Cal. Civ. Proc. Code § 425.16(e)(3).  But as explained above, Wisk has not and cannot meet that requirement.

Wisk thus gives short and insufficient shrift to a threshold requirement for its motion, namely whether its statements in a public forum relate to an issue of public interest.  Its failure to meaningfully address that essential element *at all* alone warrants denial of the motion.  At a minimum, there is a factual question about whether Wisk's statements concern an issue of public interest, and the motion should be denied.  *See Rand Res., LLC v. City of Carson*, 6 Cal. 5th 610, 625–26 (2019) (movants failed to discharge their burden at the first stage of the anti-SLAPP analysis because they did not show that the statements at issue related to a matter of public interest).

## B.     Archer Has Adequately Pleaded Its Claims

Even if Wisk's challenged statements qualified as protected activity, Archer's allegations are

more than sufficient to plead its claims.  Wisk made extra-judicial statements in order to destroy Archer's business prospects.  These statements do not report on or further Wisk's civil lawsuit. In fact, Wisk's claim on its website that Archer has committed federal crimes is not contained in Wisk's complaint at all.  *See, e.g.*, *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992) (explaining that the fair report privilege does not apply when the "deviation" between the report and the underlying proceeding is "of such a substantial character that it produce[s] a different effect on the reader").  These statements are actionable, plain and simple.

### 1.  The *Noerr-Pennington* Doctrine Does Not Apply

Wisk first contends that all of Archer's counterclaims are barred by the *Noerr-Pennington* doctrine, which provides that "those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct."  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008).  But Archer brings its counterclaims in response to Wisk's blog posts and a press release posted on its website and disseminated to thousands of websites that are not part of Wisk's "petitioning conduct."  The counterclaims have no bearing at all on Wisk's court-filed claims.  Even if they did, Archer has adequately pleaded the sham lawsuit exception to *Noerr-Pennington*.

### a.  There Is No Immunity For Wisk's Blog Posts and Press Release

The *Noerr-Pennington* doctrine does not give litigants free reign to make knowingly false statements, even in court.  Numerous courts have held that "*Noerr-Pennington* does not necessarily and absolutely preclude liability for damages resulting from defamatory statements made in the course of petitioning the government."  *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1313 (8th Cir. 1985); *see also Metro. Opera Ass'n v. Local 100*, 2004 WL 1943099, at *20 (S.D.N.Y. Aug. 27, 2004) (rejecting argument that "the *Noerr-Pennington* doctrine applies to defamation claims").  To hold otherwise would effectively wipe away the availability of malicious prosecution claims and Rule 11 sanctions where litigants make knowingly false statements in litigation. Wisk tries to stretch the law even further.  It argues that the *Noerr-Pennington* doctrine bars claims based on a defendant's knowingly false and damaging statements made outside of court and having *no bearing on the litigation whatsoever*.  That is not the law.

The *Noerr-Pennington* doctrine only applies to statements made in "furtherance" of the litigation. *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *11 (N.D. Cal. May 21, 2018).[4]  It is not enough for a blog post or press release to be "related" to the litigation because it discusses the litigation. *Id.*  In *Arista Networks*, for example, Judge Freeman held that "blog posts and direct correspondence with customers regarding the litigation between the parties" were not subject to the *Noerr-Pennington* doctrine because, although the "communications are in one sense related to the [] litigation because they discuss the parties' copyright dispute" those communications had "no relation to the *prosecution* of" the lawsuit. *Id.* (emphasis in original).  As Wisk argues here, the defendant in *Arista Networks* had argued its blog posts were protected by the *Noerr-Pennington* doctrine because they were "public statements discussing [the] litigation." *Id.*  The district court rejected that argument, finding it inconsistent with the Ninth Circuit's narrower construction of the doctrine. *Id.*  Blog posts "about the litigation" are not immune *unless* they relate to the "*prosecution*" of the lawsuit, not merely describe the "status of the parties' litigation." *Id.* (emphasis in original).

Judge White's decision in *Riverbed Tech., Inc. v. Silver Peak Sys., Inc.*, 2015 WL 12941890 (N.D. Cal. Apr. 7, 2015), also highlights why Wisk's blog posts and press release are not protected by the *Noerr-Pennington* doctrine.  There, the defendant, Silver Peak Systems, moved for leave to amend its answer and counterclaims to add claims for false advertising and unfair competition stemming from Riverbed's publication of a "competitive brief" concerning a separate, then-ongoing litigation in Delaware. *Id.* at *1.  Riverbed argued that such amendment would be futile because the disputed statements in the competitive brief were made in the context of litigation and were therefore protected by the *Noerr-Pennington* doctrine and the California litigation privilege. *Id.* at *2–3.  The court disagreed, holding that "although *about* pending litigation," the brief "was not *in furtherance* of or incidental to it." *Id.* at *3 (emphasis added).  Indeed, there was "no basis to provide First Amendment protections to . . . commercial speech which merely describes Riverbed's litigation position." *Id.*  The Court also concluded that the California litigation privilege did not apply because

---

[4]  The Ninth Circuit treats the phrases "in furtherance of" and "incidental to" synonymously in this context. *See Theme Promotions, Inc v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006).

Gibson, Dunn &
Crutcher LLP

1  "[t]he disputed representations were not made in the course of a judicial proceeding or made

2  incidental to or in furtherance of such a proceeding."  *Id.*

3         Wisk did not and cannot contend that it needed to issue its blog post and press release in order

4  to "prosecute" its case, and thus the *Noerr-Pennington* doctrine has no application under Ninth

5  Circuit law and the decisions of this District.  As in *Arista Networks* and *Riverbed Technologies*,

6  Wisk's blog posts and press release do not further the litigation in any way.  Indeed, Wisk's lie that

7  there is a federal criminal investigation "into Archer" is not in Wisk's complaint at all.  That

8  statement is especially harmful, and represents an accusation of criminal conduct that is defamatory

9  *per se* under California law.  *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003)

10  ("[W]rongful accusations of criminal conduct . . . are among the most clear and egregious types of

11  defamatory statements" and "false accusations of crime are libel *per se*.").  The *Noerr-Pennington*

12  doctrine does not apply to that or any other of Wisk's knowingly false statements about Archer.

13         The cases that Wisk cites from courts in this Circuit reinforce the principle that

14  *Noerr-Pennington* applies only to communications made in furtherance of the litigation, and not

15  Wisk's blog post and press release.  The leading case in the Ninth Circuit on the *Noerr-Pennington*

16  doctrine, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006), concerned private pre-suit demand

17  letters, which the court recognized "is a common, if not universal, feature of modern litigation."  *Id.*

18  at 936; *cf. Dickinson v. Cosby*, 17 Cal. App. 5th 655, 684 (2017) (even demand letters fall outside the

19  litigation privilege if they do not further potential litigation and are sent "without a good faith

20  contemplation of litigation seriously considered").

21         Similarly, *Theme Promotions, Inc v. News Am. Marketing FSI*, 546 F.3d 991 (9th Cir. 2008)

22  involved targeted letters to customers notifying them that they could become parties to the litigation

23  and be found to be in breach of contract if they placed orders with the defendant.  *Id.* at 1008.  Thus,

24  the letters in both cases were presented to a limited audience and sent in furtherance of the litigation.

25         In contrast, Wisk presented its blog posts and press release to anyone in the world with access

26  to the internet and there is not even a hint that they were published in furtherance of petitioning the

27

28

government for redress.[5]  They were, as in *Arista Networks* and *Riverbed Technologies*, at best tangential to the prosecution of Wisk's lawsuit, and thus are not subject to immunity under if the *Noerr-Pennington* doctrine.

### b.   Archer Has Adequately Alleged Wisk's Lawsuit Is a Sham

Even if the *Noerr-Pennington* doctrine could apply to Wisk's blog post and press release, Archer has adequately pleaded the trade secret claims are a sham and thus not entitled to immunity. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982); *Sonus Networks, Inc. v. Inventergy, Inc.*, 2015 WL 4539814, at *2 (N.D. Cal. July 27, 2015). Litigation is a sham if it is objectively and subjectively meritless.  *In re Outlaw Lab., LP Litig.*, 2019 WL 1205004, at *5 (S.D. Cal. Mar. 14, 2019).  Litigation is also a sham if it "'consists of making intentional misrepresentations to the court' and those misrepresentations or the 'party's knowing fraud upon . . . the court deprive the litigation of its legitimacy.'"  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (alterations in original) (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

Although pleading the sham exception to the *Noerr-Pennington* doctrine requires specific allegations, the Ninth Circuit has held that the allegations "must be assumed true" by the court and it is error to require "support" for the allegations.  *Id.* at 647.  So long as Archer's allegations raise a question of fact about whether Wisk's lawsuit is a sham, that precludes an award of immunity on a motion to strike under Anti-SLAPP or on a motion to dismiss.  *Sonus Networks*, 2015 WL 4539814, at *2.  As the Ninth Circuit has explained, "[w]hether something is a genuine effort to influence governmental action, or a mere sham [for *Noerr-Pennington* purposes], is a question of fact."  *Clipper Exxpress*, 690 F.2d at 1253; *see also Sonus Networks*, 2015 WL 4539814, at *2; *Netflix, Inc.*

---

[5] Wisk's out-of-circuit cases from New Jersey and Kansas should not be followed in light of the decisions from this District in *Arista Networks* and *Riverbed Technologies*.  *Capital Health Sys., Inc. v. Veznedaroglu*, 2017 WL 751855, at *13 (D.N.J. Feb. 27, 2017) does not cite *Riverbed*, and thus is incorrect about the lack of case authority regarding whether the *Noerr-Pennington* doctrine applies to press releases.  And it, along with *Aircapital Cablevision, Inc. v. Starlink Commc'ns Grp., Inc.*, 634 F. Supp. 316, 323 (D. Kan. 1986), misinterpret the *Noerr-Pennington* doctrine and conflict with the Ninth Circuit's narrower construction of the doctrine in *Sosa*.  *See Arista Networks*, 2018 WL 11230167, at *11 (finding *Aircapital Cablevision* and similar cases unpersuasive in light of *Sosa*).

*v. Blockbuster, Inc.*, 2006 WL 2458717 (N.D. Cal. Aug. 22, 2006) (denying motion to dismiss because deciding the validity of the sham litigation allegations was "premature"); *In re Outlaw Lab., LP Litig.*, 2019 WL 1205004, at *10 (materially same).

Archer has more than adequately alleged, and should be permitted to obtain evidence through discovery in order to prove, that Wisk's lawsuit is objectively and subjectively meritless and predicated on intentional misrepresentations to the Court.  Archer's counterclaims detail how the crux of Wisk's trade secret claims was its side-by-side image of the 12-tilt-6 design depicted in its January 2020 patent application next to the design Archer released in February 2021 (also a 12-tilt-6 design).  Dkt. 90 ¶¶ 3–4.  But Wisk did not disclose that Archer's founders had disclosed the 12-tilt-6 design to Wisk's lead engineer *before* Wisk even began the process of preparing the patent application.  *Id.* ¶¶ 3–4, 28–34.  It is therefore "clear now that the patent application Wisk relies on so much for its case is nothing more than a litigation prop, hastily pulled together upon learning of Archer's designs to try and interfere with Archer's business."  *Id.* ¶ 5.  And Archer has alleged that Wisk brought the trade secret claims based on an improper motive:  *i.e.*, "with the clear intended purpose to disrupt Archer's business and impede Archer's growth as a competitor in the field of" eVTOL vehicles, and only did so following "Archer's announcement in February 2021 of two significant business deals—a billion-dollar merger into a special purpose acquisition company and a deal with United Airlines, Inc. pursuant to which United has ordered $1 billion worth of aircraft."  *Id.* ¶ 1.

These allegations meet the specificity requirement because they specify "exactly what representations" Wisk made, "to whom," and "what exactly its 'improper and/or unlawful' methods of advocacy were."  *In re Outlaw Lab., LP Litig.*, 2019 WL 1205004, at *10 (quoting *Kottle*, 146 F.3d at 1063).  Wisk may take issue with whether these allegations are true, but that is not before the Court.  *See Netflix*, 2006 WL 2458717 at *8.  Archer has adequately raised the factual question of whether Wisk's lawsuit is a sham or not.  This alone precludes an award of immunity under the *Noerr-Pennington* doctrine on a motion to strike under Anti-SLAPP or on a motion to dismiss.  *Id.*; *Sonus Networks*, 2015 WL 4539814, at *2 (materially same); *In re Outlaw Lab., LP Litig.*, 2019 WL 1205004, at *10 (materially same).

### 2.   California's Litigation Privilege Does Not Apply

Wisk next contends that its out-of-court false and defamatory statements are protected by California's litigation privilege.  Mot. at 9–11.  That is incorrect and reflects a misunderstanding of the scope of that privilege.

California's litigation privilege extends to a publication or broadcast "made [i]n any . . . judicial proceeding . . . or in the initiation or course of any other proceeding."  Cal. Civ. Code § 47(b)(2).  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

Importantly, the communicative act "must function as a necessary or useful step in the litigation and process and must serve its purposes."  *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1146 (1996).  A publication does not meet this standard merely because its "*content* [is] related in some way to the subject matter of the litigation."  *Id.*  Accordingly, "the litigation privilege should not be extended to 'litigating in the press,'" because extension of the privilege to such extrajudicial statements would "not serve the purposes of the privilege; indeed, it would serve no purpose but to provide immunity to those who would inflict damage upon [the judiciary]."  *Id.* at 1146, 1149; *see also Canaday v. Peoples-Perry*, 2017 WL 6405618, at *6 (N.D. Cal. Dec. 15, 2017) (Corley, J.) (finding that no "reasonable trier of fact" could find that a "public post on the internet . . . further[ed] the objects of litigation"); *Argentieri*, 8 Cal. App. 5th at 784 (allegedly defamatory "e-mail to major news outlets was a publication to the general public through the press and therefore not protected by the litigation privilege").

Wisk attempts to sidestep this uniform precedent by invoking a tailored expansion of the privilege to cover "publication to nonparties with a substantial interest in the proceedings."  *Argentieri*, 8 Cal. App. 5th at 782; *see also* Mot. at 10–11.  Specifically, Wisk contends its blog posts and press release were "by their nature" "targeted toward parties that followed and maintained an active interest in the eVTOL industry and actively visited Wisk's website."  Mot. at 11.  But while Wisk is bound by its self-serving characterization, the fact is that its blog was and is accessible to

15

Gibson, Dunn &
Crutcher LLP

anyone in world with a connection to the internet and thus not immune.  *See Susan A.*, 2 Cal. App. 4th at 94 ("publication to the general public" not immune).  And the press release remains accessible online (Dkt. 90 ¶ 45 n.2–3), and was sent via PRNewswire (*id.* ¶ 45 n.3; Dkt. 90-2), whose "network reaches more than 4,500 U.S. websites," and extends well beyond the eVTOL industry.[6]  Wisk sought to manufacture public interest by publicizing false statements on its website, which Wisk made available to an audience far broader than just those with any financial interest in the litigation.

"[T]he litigation privilege does not apply to publications to the general public through the press," such as the blog posts and press release Wisk published here to the world.  *Abuemeira v. Stephens*, 246 Cal. App. 4th 1291, 1299 (2016); *Susan A. v. Cnty. of Sonoma*, 2 Cal. App. 4th 88, 94 (1991) (quoting *Silberg*, 50 Cal. 3d at 219) (the partial "expansion does not encompass publication to the general public through the press [because such] an expansion would swallow up the general rule" that the privilege does not extend to "'republications to nonparticipants in the action.'").  Indeed, a case that Wisk repeatedly relies on its motion—*Argentieri*—emphatically rejects Wisk's argument. There, like here, the moving party argued that its widely disseminated statement to the press was protected by the litigation privilege.  *Argentieri*, 8 Cal. App. 5th at 783.  The Court of Appeal in a published opinion disagreed, holding that by sending the statement to the press, it "was a publication to the general public," not to a group with a "substantial interest" in the litigation, and "therefore not protected by the litigation privilege."  *Id.* at 783–84.  A nonparty has a substantial interest in a litigation *only if* the litigation "actually affect[s] them," *id.* at 783, which certainly cannot be said for every news outlet receiving Wisk's press release and every visitor in the world to Wisk's website.

The Court of Appeal also rejected Wisk's argument in *GetFugu*.  There, the defendant in a defamation lawsuit argued that a press release distributed through Investor Wire necessarily "was directed to persons in the investment community," who would have a "substantial interest" in the investment scams the plaintiff was alleged to have been engaged in.  220 Cal. App. 4th at 154. The court found this argument "unpersuasive," explaining that "[d]issemination of these publications to a segment of the population as large as the 'investment community' is essentially the same as

---

[6] Cision PR Newswire, *About PR Newswire,* https://prnewswire.mediaroom.com/index.php (noting it includes "popular sites such as Yahoo! Finance").

Gibson, Dunn &
Crutcher LLP

disclosure to the general public." *Id.*  Here, Wisk also used a wire service, PR Newswire, which was not even limited to the investment community, and its blog was available worldwide.  This global distribution is worlds away from the targeting those individuals and entities that the litigation would "actually affect." *Argentieri*, 8 Cal. App. 5th at 783.

Avoiding the central holdings of *Argentieri*, *GetFugu*, and other published decisions on California law, Wisk turns to out-of-district and unpublished decisions that do nothing to advance its argument. *See* Mot. at 10–11.  In *Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*, 814 F. Supp. 2d 1033 (S.D. Cal. 2011), the district court held that the recipients of a targeted press release sent to the defendant's customers accusing the plaintiff of patent infringement had a substantial interest in the litigation such that the litigation privilege applied. *Id.* at 1041.  That "interest" was not intellectual curiosity; it was financial. *Weiland* involved only a counterclaim for intentional interference with prospective business advantage, and the only target audience members on which the court focused were "those that bought or have considered buying the track at issue" and were "potentially subject to infringement liability," as well as "those considering business with" the plaintiff. *Id.* at 1041.  Unlike this case, it was irrelevant in *Weiland* if the false statements were made to anyone else.[7]  As the court pointed out, "the *economic relationship* between [the plaintiff] and the third parties is one of buyer and seller of goods," and "[*i*]*n that context*, those who received the Press Release have a substantial interest in the outcome of this litigation." *Id.* (emphasis added).

In *FIVE Hotel FZCO v. Viceroy Hotels, LLC*, 2019 WL 91567 (Cal. Ct. App. Jan. 3, 2019), the challenged statements were not made to an "'unlimited worldwide audience,'" but rather were "placed on the [] webpage that had previously offered reservations to the hotel and now informed travelers why reservations were no longer offered on that page." *Id.* at *8.  In other words, the

---

[7] Notably, in explaining that the litigation privilege can apply to out-of-court statements to nonparties who have a substantial interest in the outcome of the litigation, *Weiland* relies on *Castaline v. Aaron Mueller Arts*, 2010 WL 583944, at *4 (N.D. Cal. Feb. 15, 2010) (Breyer, J.).  In *Castaline*, the counterclaim defendant sent a copy of the complaint to his distributors (satisfying prong one of the litigation privilege analysis), which in turn "notified the distributors of a lawsuit they could become a party to" (satisfying prong two), and "sought to further the primary objective of the litigation—stopping the [counterclaim plaintiffs] from unlawfully selling infringing products" (satisfying prong three). *Id.*  Wisk's internet postings bear no such relationship to Wisk's court claims.

Gibson, Dunn &
Crutcher LLP

defendant's statements were targeted toward a particular audience with a direct and substantial interest in the litigation.  Here, however, Wisk's statements were not targeted toward or disseminated to any particular audience, much less those with a "substantial interest" in the litigation.  As in *Argentieri* and *GetFugu*, the litigation privilege does not apply to Wisk's efforts to litigate in the press.

### 3.   California's Fair And True Reporting Privilege Does Not Apply

Next, Wisk claims that Archer's tortious interference and unfair competition claims (but not, apparently, its defamation claim) are barred by the California fair and true reporting privilege, because they are "based on the transmittal of Wisk's blog posts and press release to news outlets." Mot. at 11.  That is false.  Archer's claims are not based on the Wisk's "transmittal" of Wisk's blog posts and press release to "news outlets," but rather on Wisk's *own* publication of those false statements on its blog and in its press release.  *See, e.g.*, Dkt. 90 ¶ 45 ("[To ensure that Wisk's allegations received wide exposure and enhanced their chances of (a) disrupting Archer's publicly announced contracts; (b) discouraging highly qualified talent from joining Archer; and (c) discouraging existing and potential investors from investing in Archer, Wisk posted a lengthy blog post on its website and issued a press release that linked to the blog post falsely and recklessly accusing Archer of unlawful conduct.").

The fair and true reporting privilege applies to any "fair and true report in, or a communication to, a *public journal*, of a judicial . . . proceeding, or of anything said in the course thereof." Cal. Civ. Code § 47(d)(1) (emphasis added).  Neither Wisk's blog posts nor its press release were "fair and true reports in, or communications to, a public journal."  Rather, they were defamatory statements broadcast to the general public directly by Wisk itself, through its website. Dkt. 90 ¶ 45; Dkts. 90-1, 90-2.  Courts recognize that a company's own website does not constitute a "public journal" for purposes of the fair and true reporting privilege.  *See Am. Dental Ass'n v. Khorrami*, 2004 WL 3486525, at *3 (C.D. Cal. Jan. 26, 2004) (firm's website not a "public journal"); *Cole v. Patricia A. Meyer & Assocs., APC*, 206 Cal. App. 4th 1095, 1122 (2012) (same). Wisk cannot shoehorn false statements of fact that Wisk itself broadcast into a statutory privilege explicitly limited to true reports to *news outlets*.

18

Gibson, Dunn &
Crutcher LLP

Even putting aside that the statements were not made to "a public journal," Wisk's own authority shows that Wisk's statements in its blog and press release fall outside the scope of the fair and true reporting privilege.  In *Healthsmart Pacific, Inc. v. Kabateck*, 7 Cal. App. 5th 416 (2016), the Court of Appeal held that the fair and true reporting privilege only applies to "fair and true communications" *about* the lawsuit (*i.e.*, what was alleged), and does not immunize statements presented as facts.  *Id.* at 434–36; *see also Commodity Trucking Acquisition, LLC v. Aylott*, 2018 WL 6583843, at *9 (Cal. Ct. App. Dec. 14, 2018) (no immunity for "press reports [that] did not accurately capture the gist or sting of the claims made in the employment action, but unduly exaggerated them").

The inapplicability of the privilege is especially clear when the statement is not reporting on anything in the court proceeding.  Wisk's false and defamatory statement that the FBI and U.S. Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property" appears nowhere in either of its complaints.  *See* Dkts. 1, 45.  And while the false and defamatory statements that Archer's aircraft is a "copy" do appear in Wisk's complaint, Wisk's blog presents those claims as a matter of fact—not just as a recitation of the allegations made in the lawsuit.

For example, in the blog post, Wisk claims that "the massive downloads and other suspicious activity that occurred just before employee transitions to Archer, the copycat aircraft design, and Archer's startlingly short operational history – have led us to conclude Archer is improperly using Wisk's intellectual property" and then says that is "further detailed in the Complaint."  Dkt. 90-1.  Thus, Wisk presents those statements as true, and then says those so-called facts have been included in the complaint, as opposed to reporting that the complaint makes those allegations.  The press release also independently vouches for the truth of its allegations.  For example, it says "[a]s detailed in the complaint," Archer's "aircraft design appears to be a copy of a design Wisk developed."  *Id.*  That is quite different than saying "the complaint alleges …."  For this reason too, the fair and true reporting privilege does not apply.

Gibson, Dunn &
Crutcher LLP

19

1

### 4.   Archer Has Stated A Plausible Claim For Interference With Contract

2

Archer's allegations, which of course must be accepted as true for purposes of Wisk's motion,

3

plausibly state claims for relief from Wisk's tortious conduct, including interference with contract,

4

interference with prospective economic advantage, and unfair competition.  Archer addresses each of

5

its counterclaims (and Wisk's challenges) in turn below, with the exception of Archer's third

6

counterclaim for defamation, which Wisk does not challenge for pleading deficiencies.

7

Archer's interference with contract claim is properly plead.  Wisk claims that actual breach of

8

the contract is required to state such a claim.  Mot. at 12.  The California Supreme Court—and this

9

Court—have rejected that position and held that proof of disruption of the contractual relationship is

10

sufficient to state a claim.  *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1129

11

(1990); *see also Park Miller, LLC v. Durham Grp., Ltd.*, 2020 WL 1955652, at *10  (Orrick, J.).

12

Indeed, Wisk itself cites *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212 (2005), Mot.

13

at 12, which holds that "actual breach *or disruption* of the contractual relationship" is sufficient.  *Id.*

14

at 238 (emphasis added).  And this Court explicitly stated that "I follow the line of cases that requires

15

'actual breach *or* disruption of the contractual relationship' because that is how the California

16

Supreme Court has stated the element."  *Park Miller, LLC*, 2020 WL 1955652, at *10  (Orrick, J.)

17

(emphasis added).

18

Wisk tries to distract the Court with factual questions about the impact of the Atlas Crest

19

contract on other investors, whether the contract has been breached, or how Wisk caused the breach.

20

Mot. at 12–13.  But these are factual questions that will go to liability and damages, not whether

21

Archer has stated a claim.  *See, e.g.*, *Silicon Labs Integration, Inc. v. Melman*, 2010 WL 890140, at

22

*3 (N.D. Cal. Mar. 8, 2010) (Whyte, J.) (at pleading stage where all inferences are drawn in favor of

23

plaintiff, allegations that permit plausible causation to show liability and damages are sufficient).

24

What matters is that Archer has sufficiently alleged "(1) a valid contract between plaintiff and a third

25

party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce

26

a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

27

contractual relationship; and (5) resulting damage."  *See Pac. Gas & Elec. Co.*, 50 Cal.3d at 1129.

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
AND DISMISS DEFENDANT'S COUNTERCLAIMS
CASE NO. 3:21-CV-02450-WHO

Wisk itself chose to describe Archer's contractual relationship with Atlas Crest in its complaint that preceded the tortious public statements at issue here.

Wisk likewise chose to rely on Archer's active hiring as a reason it needed injunctive relief; whether or not Wisk knows by name who those employees would be is irrelevant. *See Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1203–04 (C.D. Cal. 2001) (holding that "there is no requirement that [defendant] know the specific identities of the contracting parties" and a plaintiff "does not have to identify the specific contractual relations which have allegedly been disrupted" to state a claim). Whether Wisk's acts were intended to and did disrupt Archer's contractual relationships, as Archer properly pleads, is a question for a fact-finder.

### 5.     Archer Has Stated A Plausible Claim For Interference With Prospective Economic Advantage

After declaring that Archer's claim for interference with prospective economic advantage ("IPEA") fails "for four reasons," Mot. at 14, Wisk lists only three. No matter; none of the three (nor any other reason) prevents Archer from pursuing its IPEA claim.

Wisk's first attack—that Archer has not identified a specific economic relationship—is false as shown above. Wisk itself already has demonstrated its knowledge of Archer's economic relationships with third parties. *See also* Dkt. 90 ¶¶ 41, 45, 67. Archer has adequately identified and demonstrated its actual (not potential) economic relationships with Atlas Crest for purposes of stating a claim. So has Wisk in its own complaint. No further specificity is required at this stage of the proceedings. *Cf. Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1090 (C.D. Cal. 2017) (insufficient that plaintiff merely averred "that it had relationships with its customers and prospective customers" and did not identify "*any* specific customer or economic relationship with which [defendant) had interfered" (emphasis added)).

Wisk then claims that Archer has not plead an independent tortious act, despite Archer's interference with contract, defamation and unfair competition claims doing exactly that. Archer's interference with prospective economic advantage claim itself properly incorporates those elements. Dkt. 90 ¶¶ 76–77 (describing "Wisk's false and reckless representations . . . [and] tortious conduct and unfair business practices"). And an independent tortious act is not required for negligent

interference with prospective economic advantage, as Wisk acknowledges. Mot. at 14 (listing elements for negligent interference claim). Regardless, Archer easily meets the pleading requirements for intentional interference as well, at the very least with its third counterclaim for defamation. *See Rausch v. Blair*, 2015 WL 13283839, at *2 (C.D. Cal. Oct. 1, 2015) ("Defamation is independently wrongful conduct that can support an action for interference with prospective economic advantage").

As to Wisk's final argument about proximate cause, Mot. at 16, Wisk surely knew when it cited *Parlour Enterprises, Inc. v. Kirin Grp., Inc.*, 152 Cal. App. 4th 281, 294 (2007), that case was an appeal of a damages award, after a jury trial—a world away from stating a claim at the pleading stage. Archer has adequately alleged causation for pleading purposes, and Wisk's factual arguments regarding whether that alleged causation is "reasonable," Mot. at 16, underscore the appropriateness of this argument for a factfinder. *See Silicon Labs Integration, Inc*, 2010 WL 890140, at *3 (IPEA claim sufficiently plead where allegations permit inference of plausible causation); *PAI Corp. v. Integrated Sci. Sols., Inc.*, 2008 WL 11404541, at *24 (N.D. Cal. Feb. 15, 2008) (Spero, J.) (where parties disagreed as to whether causation was established as a matter of law or was instead "merely speculative," summary judgment was inappropriate, as "the question of causation . . . involve[d] factual issues for the jury to decide").

### 6.   Archer Has Stated A Plausible Claim Under The UCL

In challenging Archer's UCL claim, Wisk omits key case law from the arguments it makes and key words from the case law it quotes. It is well-established that common law violations such as those alleged by Archer can serve as the predicate violations for UCL claims. *E.g.*, *AmeriPOD, LLC v. DavisREED Constr. Inc.*, 2017 WL 2959351, at *6–7 (S.D. Cal. July 11, 2017) (holding intentional interference with contract can form the basis of a UCL claim under Ninth Circuit case law); *Cortez v. Glob. Ground Support, LLC*, 2009 WL 4282076, at *3–4 (N.D. Cal. Nov. 25, 2009) (Conti, J.) (following decisions stating that common law torts can provide basis for UCL claim); *House of Leb. Org., Inc. v. House of Pac. Relations Int'l Cottages, Inc.*, 2017 WL 2380121, at *4 (S.D. Cal. June 1, 2017) (holding that breach of contract, being a violation of California common law, is sufficient "to sustain a claim under the unlawful prong of the UCL"); *Nestle USA, Inc. v. Crest Foods, Inc.*, 2017

22

Gibson, Dunn &
Crutcher LLP

WL 3267665, at *20 (C.D. Cal. July 28, 2017) (permitting "unlawful" claim based on the common law of breach of implied covenant of good faith and fair dealing); *Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1147–48 (2016) (permitting "unlawful" claim based on common law unconscionability for allegedly excessive contract pricing for hospital services).

Wisk omits the key language from *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010), that limits its holding to common law *breach of contract* violations. In fact, *Shroyer* goes on to quote *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074–75 (C.D. Cal. 2003), for the proposition that "a violation of common law can support a § 17200 claim, provided that the conduct is also unlawful, unfair, or fraudulent." *Shroyer*, 622 F.3d at 1044.  Archer's allegations of Wisk's unlawful conduct as detailed in its first and second counterclaims, including the elements of defamation—also separately plead in its third counterclaim—support a UCL violation by Wisk under the unlawful prong of the UCL.

Archer has also more than adequately alleged actionable conduct under the unfair and fraudulent prongs of the UCL.  As Wisk ignores, "the UCL's coverage is 'sweeping,' and its standard for wrongful business conduct 'intentionally broad.'"  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (Koh, J.) (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006)).  This makes UCL claims, particularly under the unfair prong, rarely susceptible to resolution on the pleadings.  *See In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 2020 WL 2214152, at *12 (S.D. Cal. May 7, 2020); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

For example, in *Luxul Technology*, Judge Koh held that a plaintiff had adequately stated a UCL claim based on allegations that its competitor made false statements to potential customers questioning the validity of its patents.  *Luxul*, 78 F. Supp. 3d at 1174.  Here, Archer alleges that Wisk widely publicized on its website and the news media far more inflammatory and false statements than those in *Luxul Technology*:  that Archer was the subject of a criminal investigation and that it had

1    "stolen" Wisk's technology.  Dkt. 90 ¶¶ 49, 57, 69, 80-89, 96.[8]  And the harm here is greater than in

2    *Luxul Technology*.  Whereas in *Luxul Technology*, the court found an allegation of "lost customers"

3    and "damage[]" to Plaintiff's brand sufficient, 78 F. Supp. 3d at 1174, Wisk's statements here have

4    not only smeared Archer's brand, but disrupted its go-public transaction with Atlas Crest, and hurt

5    Archer's recruitment of prospective employees.  Dkt. 90 ¶¶ 62, 66–68.  As detailed in Archer's

6    counterclaims, Wisk made these false statements knowing they were untrue.  Archer therefore has

7    adequately alleged a UCL claim under all three separate prongs: unlawful, unfair, and fraudulent.

8    ### 7.    Archer Has Plausibly Alleged Falsity

9              In a last-ditch effort to avoid liability, Wisk ironically contends that "truth matters," and that

10   "no reasonable jury could find that Wisk's truthful statements about this lawsuit . . . give rise to

11   liability for tortious interference or unfair competition based on tortious interference."  Mot. at 19–20

12   (not making this argument with respect to defamation).  Wisk does not explain why, and instead tries

13   to manufacture a basis for dismissal that equates to a fair and true report privilege without the

14   requirement of a communication to "a public journal."  The parties dispute whether statements on

15   Wisk's website are false, and whether they have caused Archer harm.  These are jury questions for

16   resolution at trial, after Archer has had the opportunity for full discovery.

17   ## II.    Archer Has Adequately Stated Its Claims

18             Wisk's alternative argument that Archer's first, second, third, and fourth counterclaims should

19   be dismissed under Rule 12(b)(6) fails for the same reasons as Wisk's primary arguments for striking

20   them.  Archer has plausibly stated all four claims for relief, and as demonstrated above, its

21   countercomplaint "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is

22   plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

23   *v. Twombly*, 550 U.S. 544, 570 (2007)).  Further, Wisk has not made any pleading deficiency

24   argument in its Motion as to Archer's third counterclaim for defamation.  Finally, should this Court

---

[8]   These allegations also provide the "who, what, where and how" required by Rule 9(b).  *See F.T.C. v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *10 (N.D. Cal. Apr. 4, 2011). They specify who made the statements (Wisk), what was said (false statements about "stolen" technology and the criminal investigation), where (on its blog and in a press release), and how (with knowledge the statements were false).

find any pleading deficiency with any of Archer's counterclaims, it should provide Archer leave to amend those counterclaims to cure any deficiency, as contemplated by Fed. R. Civ. P. 15(a) and the Ninth Circuit. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (finding that granting a defendant's anti-SLAPP motion without granting the plaintiff leave to amend "directly collide[s] with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment").

## CONCLUSION

For the foregoing reasons, Wisk's motion should be denied.

Respectfully submitted,


DATED:  August 10, 2021                      GIBSON, DUNN & CRUTCHER LLP


By:   /s/ *Josh A. Krevitt*
                                                        Josh A. Krevitt

                                         *Attorney for Defendant Archer Aviation Inc.*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
AND DISMISS DEFENDANT'S COUNTERCLAIMS
CASE NO. 3:21-CV-02450-WHO

Gibson, Dunn &
Crutcher LLP