JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
JOSHUA H. LERNER, SBN 220755
  jlerner@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: 650.849.5300
Facsimile:  650.849.5333

WAYNE BARSKY, SBN 116731
  wbarsky@gibsondunn.com
DIANA M. FEINSTEIN, *admitted pro hac vice*
  dfeinstein@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone: 310.552.8500
Facsimile:  310.551.8741

ORIN SNYDER, *admitted pro hac vice*
  osnyder@gibsondunn.com
DANIEL J. THOMASCH, *admitted pro hac vice*
  dthomasch@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
Attorneys for Defendant and Counterclaimant
ARCHER AVIATION INC.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>ARCHER AVIATION INC.,<br><br>             Defendant. | Case No.    5:21-cv-02450-WHO<br><br>**DEFENDANT ARCHER AVIATION INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND FIRST AMENDED COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant Archer Aviation Inc. ("Archer") hereby responds to the First Amended Complaint ("Complaint") filed by Plaintiff Wisk Aero LLC ("Wisk") and submits its First Amended Counterclaims as follows:

## INTRODUCTION

1.      This lawsuit is entirely without merit, and was filed for an obvious and impermissible purpose: to impede the runaway success of, and investment in, Archer and its state-of-the-art aircraft design.   Despite page after page of reckless innuendo and rank speculation—all designed merely to create fear and uncertainty—Wisk offers no plausible allegations tying any alleged trade secret to Archer.  Wisk's patent claims are equally meritless and improper: Archer does not infringe Wisk's patents, and Wisk has no basis to allege otherwise.

2.      Wisk's complaint lacks any evidence of misappropriation because there was no misappropriation.  Archer developed its own aircraft design independently, working with one of the country's leading eVTOL aircraft design consultants.  In fact, in spite of Wisk's baseless conjecture about former Wisk employees, the design of Archer's aircraft—the very design that Wisk claims looks similar to its design and on which Wisk bases its allegations—had already been developed and analyzed before a single former Wisk employee started work at Archer and before any former Wisk employee supposedly downloaded any secret information.  In fact, Archer's founders *disclosed* their prospective design to a senior Wisk engineer, who subsequently reported this information to the CEO of Wisk, after which the company retained a patent attorney and shortly thereafter filed the contrived patent application that forms the basis for Wisk's allegations.  This case has nothing to do with the design of Archer's aircraft and everything to do with the success of Archer's business—and the failure of Wisk.

3.      Archer is one of the leading aerospace companies in the world, and since its founding has relentlessly focused on its mission to design and build the best electric vertical takeoff and landing (eVTOL) aircraft.  Archer has assembled a world-class engineering team with over 200 years of combined eVTOL development experience, including some of the leading aerospace engineers on the planet from a wide range of private and government entities, including SpaceX, NASA, Tesla, Google, Wisk, Waymo, Airbus, Joby, Aerion Supersonic, and others.

4.      Archer has developed a best-in-class eVTOL aircraft design and has attracted an enviable list of investors.  Archer recently announced a merger with Atlas Crest Investment Corp., a transaction that is forecast to result in up to $1.1 billion in gross proceeds, which will fund future growth.  At the same time as the billion-dollar Atlas Crest announcement, Archer also announced an extraordinary $1 billion order from United Airlines for Archer's aircraft, the only deal of its kind and a testament to the confidence the market has in Archer's business and future, and the eagerness of the industry to invest in both.  With these recently announced billion-dollar transactions, along with its years of focused research and development efforts, Archer is poised for breakthrough success and a leadership position in the emerging and exciting eVTOL market.

5.      Wisk improperly seeks to interfere with Archer's billion-dollar transactions with this baseless lawsuit and simultaneous media campaign, both launched just after the transactions were announced.  That is because while Archer has soared, Wisk is at risk of crashing.  Despite the breathless innuendo and baseless speculation to which Wisk devotes its entire complaint, Archer's eVTOL aircraft design is not only the best eVTOL aircraft around, it is entirely Archer's design.

6.      Indeed, there is not a shred of evidence that Archer ever used, or even was aware of, any Wisk trade secret.  Despite its 73 pages and over 200 paragraphs, Wisk's complaint does not offer any plausible allegations tying any of its 52 alleged trade secrets to Archer.  Instead, Wisk's complaint boils down to an absurdly insufficient assertion that Archer's design resembles one of Wisk's supposedly undisclosed designs, and that it is "surprising" Archer could design its world-class vehicle in the time it did.  Incredibly, though, Wisk does not even allege that this purportedly undisclosed design is a trade secret.  Nor does Wisk allege that any former Wisk employee ever was aware of, let alone told anyone at Archer about, the design.  Nor does Wisk allege that Archer ever was aware of the design.

7.      As the market has recognized, Archer's design and business approach are superior to anything Wisk has designed, let alone anything Wisk has actually offered.  Wisk and its predecessors have suffered from years of disorganization and failed designs as well as defections, as talented employees fled Wisk to join promising companies like Archer.  Wisk is improperly attempting to weaponize the legal system to achieve through bad-faith litigation what it cannot accomplish through

fair competition.

8.      Archer intends to hold Wisk accountable for its anticompetitive conduct.  At the same time, Archer and its extraordinary team of world-class aerospace engineers will continue to do what they have relentlessly been focused on since the beginning: designing and building the best eVTOL aircraft in the world.

**ARCHER'S HISTORY**

9.      Archer was founded in October 2018 with the goal of achieving more environmentally sustainable short-distance air transportation.  Co-founders Brett Adcock and Adam Goldstein were inspired to find ways to move the world toward sustainable forms of transport and funded a research laboratory at the University of Florida, now called



"Archer Aviation eVTOL Lab."  Working with a grant from the University of Florida, Archer teamed up with a graduate facility with decades of experience in drones.  This team of experienced professors and graduate students specializes in technical fields such as aerodynamics, flight controls, avionics, flight test, and aircraft manufacturing.  As part of this collaboration, Archer pioneered its own eVTOL technology and designed, manufactured, and flight-tested three generations of eVTOL aircraft.

10.     To take the next leap in aircraft design, Archer hired a top-tier eVTOL aircraft design firm, FlightHouse Engineering, that specializes in the conceptual design of aircraft, in September 2019.  FlightHouse has its own proprietary software that allows it to simultaneously analyze numerous design disciplines (e.g., aerodynamics, propulsion, structures, mass properties, performance, and payload effectiveness) at varying levels of fidelity to generate optimized aircraft designs.

11.     It was FlightHouse that first presented to Archer the configuration that would become known as *Maker*.  By early December 2019, FlightHouse modeled a number of aircraft designs, including what FlightHouse referred to as the "12-tilt-6"—an aircraft with 12 rotors on a fixed wing,

the front six of which could tilt from a vertical to a horizontal position to allow the aircraft to hover like a helicopter for takeoff and landing, and cruise forward like a plane while in flight. This was before a single former Wisk employee joined Archer and more than two weeks before Jing Xue allegedly downloaded any files from Wisk. To be clear, on the day the first Wisk employee arrived (on December 6), FlightHouse had already modeled the 12-tilt-6 and was actively conducting simulations on this design. By December 12, FlightHouse identified the 12-tilt-6 as a top design contender based on the strong performance attributes reflected in simulations run in FlightHouse's proprietary software. Excerpts of FlightHouse's analysis and drawings are below.











12.     At the same time Archer was working tirelessly on its design with one of the best consultants in the field, it began to scale the business for success.  Archer teamed up with Marc Lore, known for having sold Jet.com to Walmart, to hire engineers, continue its design, and bring its vision to reality.  Archer also began recruiting the brightest and very best engineers.  Anticipating a successful hiring push in December of 2019, Archer devoted significant resources to hiring legal counsel to implement a robust recruiting and onboarding process to ensure that no trade secret or proprietary information came over with the new employees.  Archer wanted no part of its competitors' proprietary information, and it took extraordinary efforts to protect itself, its employees, and its competitors' confidential information.  For instance, potential new hires went through a lengthy onboarding process with a dedicated employment lawyer.  Among many other prophylactic measures, new hires were presented with a pre-hire document outlining Archer's position on not taking trade secrets:



Hi!  We are delighted you are joining Archer Aviation.  As you make plans to officially start, we want to remind you of a few things that make good sense but that may not be at the top of your mind.

**A. Prior Employers' Trade Secrets and/or Non-Compete Obligations**

First, we don't want you to violate any agreements you may have any current or former employer about non-competition, trade secrets, or confidential information.  This also includes non-solicitation obligations.

. . . .

Don't take materials in any format from your previous employer unless they are completely personal in nature.  This includes electronic or hardcopy documents.  It includes lists of contacts, clients, and suppliers, if that information isn't otherwise publicly available or commonly known.  Sending emails or documents to a personal email account with the intent of then forwarding them on to your new Archer email address or copying them/downloading them onto your Archer machines is simply not okay with us, and we feel confident that your previous employer won't like it either!  Also, don't destroy any documents or files belonging to your previous employer unless you have their agreement to do so.

13.     Archer's hires in early 2020 included some of the brightest, most experienced engineers in the industry from a wide-range of entities, including Airbus, Joby, NASA, Wisk, Aerion Supersonic, and Tesla.  One of the top technical hires by Archer was Dr. Geoff Bower, the former Chief Engineer for Airbus's Vahana eVTOL demonstrator at A[3] ("A Cubed"), Airbus's Silicon Valley innovation center.  Dr. Bower has a Ph.D. in aerospace engineering from Stanford University and joined Archer as its Chief Engineer on January 6, 2020.  Dr. Bower carefully evaluated the "12-tilt-6" design presented by FlightHouse along with a handful of other configurations, and after rigorous modelling and analysis Dr. Bower led the decision to ultimately select the "12-tilt-6" as the best configuration for the specific mission that Archer believed was commercially viable.

**ARCHER PUBLICLY REVEALS MAKER & ATTRACTS INVESTORS AND PARTNERS**

14.     Archer exited stealth mode and publicly posted in May 2020 a rendering of *Maker*. Archer's hard work did not go unnoticed.  On January 12, 2021, Archer announced a collaboration agreement with Fiat-Chrysler (FCA/Stellantis) to allow Archer to benefit from access to FCA's efficient supply chain, advanced composite material capabilities, and engineering and design experience.  This was significant not just because it showed Archer's commercial viability, but also because Archer could rely on a global manufacturer to assist with high volume manufacturing and supply components, drastically reducing the amount of time it would take to build a world-class aircraft.  With this announcement, Archer revealed the latest rendering of its aircraft:



15.     Archer's momentum kept growing.  On February 10, 2021, Archer announced it had entered into a business combination agreement with Atlas Crest Investment Corp., which provides approximately $1.1 billion of gross proceeds to the combined company to fund expected future

1  growth.  The transaction was set to close several months later and would result in Archer being

2  publicly listed on the New York Stock Exchange.  The same day, Archer also announced an aircraft

3  purchase agreement and a collaboration agreement with United Airlines that included an order for

4  $1 billion of Archer's future aircraft, with an option for an additional $500 million of aircraft.

5  Archer's fortunes were taking off.

6         16.     Today Archer is one of the leading aerospace companies in the world.  Its engineering

7  team boasts engineers from SpaceX, NASA, Tesla, Google, Wisk, Waymo, Airbus, and includes

8  nineteen PhDs.  Altogether, Archer has built up 200 years of combined eVTOL development

9  experience, including with Airbus Vahana's former Chief Engineer, Head of Aerodynamics, Head of

10  Flight Controls, Head of Flight Test, and Head of Avionics.  Archer's commercial aerospace

11  engineers include the previous Chief Test Pilot at Bell Helicopter, Head of FAA Certification at Piper

12  Aircraft, Head of Airframe at Hyundai Urban Air Mobility, Head of Quality at Triumph, and

13  Structures Lead at Cirrus Aircraft.  Archer's advisors include Mark Moore and Nikhil Goel, co-

14  founders of Uber Elevate and former NASA engineers.  It is the promise of this team and the designs

15  they have been working on that resulted in Archer becoming one of only three eVTOL companies to

16  publicly announce more than a billion dollars in funding, and Archer is the only eVTOL company to

17  secure a billion-dollar purchase order from a major U.S. airline.  Archer built the best eVTOL

18  company in the world; it does not want or need Wisk's (or anyone else's) alleged secrets.

19  **WISK FILES THIS LAWSUIT TO STOP ARCHER'S MOMENTUM**

20         17.     Wisk's business is reportedly in trouble, and it now seeks to misuse the legal systems

21  to unjustly hamper Archer's success.  Wisk's simultaneous and tortious media campaign against

22  Archer—including blog posts and a press release making false and misleading statements about

23  Archer—underscores Wisk's true motivation.

24         18.     Just like its false blog posts and press release, Wisk's entire case is built on innuendo,

25  not facts.  Wisk bases its complaint on the "striking resemblance" between Archer's design and a

26  design that Wisk put in a patent application in 2020.  As noted above, however, Wisk does not even

27  allege that its design in the patent application is a trade secret.  Or that any former Wisk employee

28  ever was aware of the design.  Or that any former Wisk employee ever told anyone at Archer about

the design.  Or that Archer ever was aware of the Wisk design at all before Wisk put a picture of it in its complaint.  Similarity between two images does not establish a trade secret, let alone that Archer misappropriated it.  There also is nothing secret about using 12 rotors on a fixed wing, tilting rotors, or a V tail.  The fact that Wisk filed this lawsuit based on superficial similarities between its design and Archer's captures both how baseless this case really is and how improper it was for Wisk to have brought it in order to interfere with Archer's success and imminent transactions.

19.     Equally specious is Wisk's purported "surprise" that Archer developed its design "inexplicably" quickly and Wisk's rank, nonsensical speculation that such a fast development would not have been possible without Wisk's trade secrets.  Archer built a world-class team from across the entire industry, and worked with one of the best consultants in the space to come up with its design.  Archer also did not have to start from scratch given the maturity in the industry and wide variety of publicly available designs.  Wisk's "surprise" about Archer's development timeline is no substitute for evidence that Archer relied on anything secret from Wisk.

20.     Much of Wisk's complaint is devoted to an attempt to taint Archer with the acts of a single former Wisk employee.  Despite Wisk's salacious, press-ready allegations about Wisk's former employee, Wisk has made its allegations against Archer without an iota of evidence that the former Wisk employee transferred a single secret to Archer or had any input whatsoever on Archer's design.

21.     The utter absence of evidence to support Wisk's claims can also be seen in Wisk's assertion that Archer's founders publicly admitted that they had engaged in a wanton scheme to steal Wisk's trade secrets when they acknowledged the hard work and designs done by other companies in the industry over the last decade.  Wisk's effort to contort simple, straightforward statements about public designs into sinister admissions of theft says everything about what this case is really about.

22.     It undoubtedly is difficult for Wisk to watch Archer take off, with some of its leading former employees on board, while Wisk stalls out on the runway.  But there is simply no evidence for Wisk's reckless claims—which Wisk has attempted to spread far and wide—designed to create uncertainty and doubt about Archer in order to interfere with Archer's success and upcoming transactions.  Wisk's failure is its own.  Just as Archer's success—and the incredible eVTOL aircraft

it has designed—is its own.

## GENERAL DENIAL

Except as expressly admitted in this Answer, Archer denies each and every allegation in the Complaint, including, without limitation, any allegations in the introduction, headings, subheadings, or footnotes of the Complaint, and specifically denies any liability to Wisk.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, moreover, allegations in the Complaint to which not responsive pleading is required shall be deemed to be denied.  Archer expressly reserves the right to seek to amend and/or supplement its Answer as may be necessary.[1]

## RESPONSE TO SPECIFIC ALLEGATIONS

## INTRODUCTION

1.      Archer admits that the Complaint purports to set forth an action for trade secret misappropriation and patent infringement.  Archer denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 1.

2.      Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 2, and therefore denies them.

3.      Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 3, and therefore denies them.

4.      Archer admits that in February 2021 it issued press releases titled, "Archer, A Leading Urban Air Mobility Company, To List on NYSE Through Merger With Atlas Crest Investment Corp." and "Archer Announces Commitment to Launching Its Urban Air Mobility Network in Los Angeles by 2024."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 4, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

5.      To the extent Paragraph 5 of the Complaint implicates legal conclusions, no response

---

[1]  Answers to each paragraph of the Complaint are made by Archer without waiving, but expressly reserving, all rights Archer may have to seek relief by appropriate motions directed to the allegations in the Complaint or any subsequent amended complaint.

is required.  To the extent that a response is required, Archer denies the allegations and characterizations contained in Paragraph 5, and specifically denies that it has committed or is committing any acts of patent infringement.

6.      To the extent Paragraph 6 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, Archer denies the allegations and characterizations contained in the first sentence of Paragraph 6, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.  Archer admits that, in January 2020, ten former Wisk engineers started employment at Archer.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 6, and therefore denies them.

7.      To the extent Paragraph 7 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, Archer admits that it denied any wrongdoing and denies the remaining allegations and characterizations contained in Paragraph 7, and specifically denies that it has committed or is committing any acts of trade secret misappropriation.

8.      Archer denies the allegations and characterizations contained in Paragraph 8, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

9.      Archer admits that Adam Goldstein and Brett Adcock have been interviewed regarding Archer, and refers to the publicly available transcripts of such interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 9.

10.     Archer denies the allegations and characterizations contained in Paragraph 10, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.

## THE PARTIES

11.     Upon information and belief, Archer admits the allegations contained in Paragraph 11.

12.     Archer admits the allegations in Paragraph 12.

## JURISDICTION AND VENUE

13.     To the extent Paragraph 13 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836, and supplemental jurisdiction pursuant to 18 U.S.C. § 1367.  Archer denies the remaining allegations and characterizations contained in Paragraph 13.

14.     Archer admits that it resides in this District and that venue is proper.  Archer denies that it has committed or is committing any act complained of in the Complaint, and therefore denies the remaining allegations and characterizations contained in Paragraph 14.

15.     Archer admits that its principal place of business is in California and that it is subject to personal jurisdiction in California.  Archer denies that it has committed or is committing any act complained of in the Complaint, and therefore denies the remaining allegations and characterizations contained in Paragraph 15.

**INTRADISTRICT ASSIGNMENT**

16.     Archer admits the allegations in Paragraph 16.

**FACTS COMMON TO ALL CLAIMS**

17.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 17, and therefore denies them.

18.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 18, and therefore denies them.

19.     The allegations and characterizations contained in Paragraph 19 include relative terms such as "recent" and "new", the intended scope of which is unclear, and on that basis Archer denies the allegations.

20.     The allegations and characterizations contained in Paragraph 20 include relative terms such as "promises", "clean", and "fast", the intended scope of which is unclear, and on that basis Archer denies the allegations.

21.     Paragraph 21 purports to characterize the contents of a 2018 Morgan Stanley research report.  To the extent a response is required, Archer refers to the 2018 Morgan Stanley research report for the complete and accurate contents thereof.

22.     Archer admits that an eVTOL aircraft must be certified by the FAA in order to fly in

the national airspace system and carry passengers in the United States.  The remaining allegations and characterizations contained in Paragraph 22 include relative terms such as "easily", "robust", "new", and "difficult", the intended scope of which is unclear, and on that basis Archer denies them.

23.     Archer admits that the images in Paragraph 23 are publicly available images of eVTOL aircraft designed by different members of the eVTOL market.  The allegations and characterizations contained in Paragraph 23 include relative terms such as "potentially", "predictably", and "recently", the intended scope of which is unclear, and on that basis Archer denies them.

24.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 24, and therefore denies them.

25.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 25, and therefore denies them.

26.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 26, and therefore denies them.

27.     Archer admits that the image in Paragraph 27 is a publicly available image of an aircraft viewable on Wisk's website, which has a fixed-wing, 12-rotor design.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 27, and therefore denies them.

28.     Archer admits that the image in Paragraph 28 is a publicly available image of an aircraft developed by Wisk called the Cora, which has a fixed-wing, 12-rotor design.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 28, and therefore denies them.

29.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 29, and therefore denies them.

30.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 30, and therefore denies them.

31.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 31, and therefore denies them.

32.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 32, and therefore denies them.

33.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 33, and therefore denies them.

34.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 34, and therefore denies them.

35.     Based on information disclosed to Archer through this litigation, Archer admits Wisk filed a confidential provisional patent application that contains the phrase "Aircraft with Tilting Fans" and discloses the images contained in Paragraph 35.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 35, and therefore denies them.

36.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 36 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

37.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 37 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

38.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 38 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

39.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 39 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.

40.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the first five and last sentences of Paragraph 40 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies them.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 40 regarding Wisk, and on that

basis Archer denies them.

41.     Archer denies the allegations in the fourth sentence contained in Paragraph 41. Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the fifth sentence of Paragraph 41 regarding Wisk, and therefore denies the allegations.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 41 because they are vague and untethered to any specific eVTOL design or aircraft, and therefore denies the allegations.

42.     Archer denies the allegations and characterizations contained in the first sentence of Paragraph 42.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 42 regarding Joby Aviation, and therefore denies them.

43.     Paragraph 43 purports to characterize Lilium's public statements.  To the extent a response is required, Archer refers to Lilium's public statements for the complete and accurate contents thereof.  Archer further denies the allegations and characterizations contained in the first sentence of Paragraph 43.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 43 regarding Lilium, and therefore denies them.

44.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 44, and therefore denies them.

45.     Archer denies the allegations and characterizations contained in Paragraph 45.

46.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 46, and therefore denies them.

47.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 47, and therefore denies them.

48.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 48, and therefore denies them.

49.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 49, and therefore denies them.

50.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 50, and therefore denies them.

51.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 51, and therefore denies them.

52.     Archer denies the allegations and characterizations contained in Paragraph 52, and specifically denies that it has committed or is committing any acts of trade secret misappropriation or patent infringement.

53.     Archer admits that its co-founders, Brett Adcock and Adam Goldstein, both attended the University of Florida, previously worked in the finance industry, and founded an online hiring marketplace called Vettery in 2012.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 53.

54.     Archer admits that it was incorporated on October 16, 2018, partnered with the University of Florida (which co-founders Brett Adcock and Adam Goldstein both attended), and listed contact information in New York City.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 54.

55.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the vague allegations and characterizations contained in Paragraph 55, and therefore denies them.

56.     Archer admits that it recruited Thomas Muniz, who served as Wisk's Vice President of Hardware Engineering, in late 2019, that Mr. Muniz joined Archer in December 2019, and that Mr. Muniz is referenced in certain Archer investment materials along with other Archer team members. Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 56.

57.     Archer denies the allegations and characterizations contained in Paragraph 57, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

58.     Based on information disclosed to Archer through this litigation, Archer admits the design contained in Paragraph 58 is disclosed in Wisk's patent application.  Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 58, and therefore denies them.

59.     Archer admits that in January 2020, 10 former Wisk employees began work at Archer. Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 59.

60.     Archer denies the allegations and characterizations in Paragraph 60.

61.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 61, and therefore denies them.

62.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 62, and therefore denies them.

63.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 63, and therefore denies them.

64.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 64, and therefore denies them.

65.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 65, and therefore denies them.

66.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 66, and therefore denies them.

67.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 67, and therefore denies them.

68.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 68, and therefore denies them.

69.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 69, and therefore denies them.

70.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in the first sentence of Paragraph 70, and therefore denies them.  Archer denies the remaining allegations and characterizations contained in Paragraph 70, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

71.     Archer denies the allegations and characterizations contained in Paragraph 71, and

specifically denies that it has committed or is committing any act of trade secret misappropriation.

72.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 72, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

73.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 73, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

74.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations in Paragraph 74, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

75.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 75, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

76.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 76, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

77.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 77, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

78.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 78, Archer lacks knowledge or information sufficient to

form a belief regarding the truth of such allegations, and therefore denies them.

79.     Archer denies the allegation that it has obtained or benefited from any trade secrets purportedly misappropriated from Wisk.  With respect to the remaining allegations and characterizations contained in Paragraph 79, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

80.     Archer denies the allegations and characterizations contained in Paragraph 80, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

81.     Archer admits that in May 2020 it released the rendering in the right quadrant contained in Paragraph 81.  Based on information disclosed to Archer through this litigation, Archer admits Wisk's confidential, provisional patent application discloses the image in the left quadrant contained in Paragraph 81.

82.     Archer admits that it filed with the SEC a document entitled, "Archer Investor Deck 2021,"  and that the rendering in the bottom-right quadrant contained in Paragraph 82 appears in "Archer Investor Deck 2021."  Based on information disclosed to Archer through this litigation, Archer admits Wisk's confidential, provisional patent application discloses the images in the left quadrants contained in Paragraph 82.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 82.

83.     Archer admits that the rendering of Archer's aircraft has six front rotors, each of which consist of five blades that can tilt to be positioned either horizontally or vertically, and six rear rotors, each of which consist of two blades that remain fixed in a vertical position.  Archer further admits that the rendering of Archer's aircraft has a V-tail.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 83, and specifically denies that it has committed or is committing any acts of trade secret misappropriation.

84.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 84, and therefore denies them.

85.     To the extent the allegations reference Archer's "Archer Investor Deck 2021", Archer refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Archer denies the remaining allegations and characterizations contained in Paragraph 85.

86.     Archer denies the allegations and characterizations contained in Paragraph 86.

87.     To the extent the allegations reference Archer's "Archer Investor Deck 2021" publicly filed with the SEC, Archer refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  With respect to the remaining allegations and characterizations in Paragraph 87, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations regarding the timing and process of eVTOL competitors' aircraft development process, and therefore denies them.  Archer denies all remaining allegations and characterizations contained in Paragraph 87, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

88.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 88, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

89.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 89, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

90.     Archer admits that Adam Goldstein was interviewed in February 2021 regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 90, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

91.     Archer admits that Adam Goldstein and Brett Adcock have been interviewed regarding Archer, and refers to the publicly available transcripts of those interviews for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 91, and specifically denies that it has committed or is

committing any act of patent infringement or trade secret misappropriation.

92. Archer denies the allegations and characterizations contained in Paragraph 92, and specifically denies that it has committed or is committing any act of patent infringement or trade secret misappropriation.

93. Archer denies the allegations and characterizations contained in Paragraph 93, and specifically denes that it has committed or is committing any act of trade secret misappropriation.

94. Archer admits, based on publicly available information, that Wisk has been granted patents. With respect to the remaining allegations and characterizations contained in Paragraph 94, Archer lacks knowledge or information sufficient to form a belief regarding the truth of such allegations, and therefore denies them.

95. Archer admits that its current engineering team consists of 75 engineers, 17 of whom more recently worked at Wisk. Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 95, and specifically denies that it has committed or is committing any act of patent infringement.

96. To the extent Paragraph 96 implicates legal conclusions, no response is required. The '036 Patent speaks for itself. To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,364,036 is attached as Exhibit A. Archer admits that the patent is entitled "Multicopter with Boom-Mounted Rotors." Archer admits that the '036 Patent at 1:6-8 states, "Multicopter aircraft typically include a plurality of horizontally oriented rotors, sometimes referred to as 'lift fans,' to provide lift, stability, and control." Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 96.

97. To the extent Paragraph 97 implicates legal conclusions, no response is required. The '036 Patent speaks for itself. To the extent a response is required, Archer admits that the '036 Patent states, "An aircraft typically is considered to have six degrees of freedom of movement, including forces in the forward/back, side/side, and up/down directions (e.g., Fx, Fy, and Fz) and moments about the longitudinal (roll) axis, the transverse (pitch) axis, and the vertical (yaw) axis (e.g., Mx, My, and Mz)" at 1:25-30. Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 97.

98.     To the extent Paragraph 98 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent at 4:59-65 states, "FIG. 2B is a block diagram showing a front view of the multicopter aircraft 200 of FIG. 2A.  Coordinate axes in the z (vertical) and y (side) direction are indicated.  The front view shown in FIG. 2B illustrates the respective angles off the vertical axis (z axis as labeled), sometimes referred to herein as 'cant angles', at which the outboard, middle, and inboard pairs of lift fans 206 are oriented."  Archer admits that the '036 Patent at 5:51-55 states, "For example, lift fans mounted at an angle relative to the horizontal plane of the aircraft would generate a horizontal force component and a vertical force component, and each force may generate a corresponding moment about one or more axes of the aircraft, depending on the location at which the fan is mounted relative to the center of gravity of the aircraft."  Archer admits that the image of Fig. 2B in the Complaint appears to be the same as Fig. 2B in the '036 patent.  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 98.

99.     To the extent Paragraph 99 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent at 5:1-4 states, "different combinations of fans may be used to exercise yaw control (e.g., rotate around z axis), to slip sideways or counteract the force of wind while in a hover (y axis), etc."  Archer admits that the '036 Patent at 8:3-6 states, "angling rotors as disclosed herein may provide a degree of authority over (ability to control or influence) yaw of the aircraft, e.g., during hover or vertical takeoff (lift) or landing operations."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 99.

100.    To the extent Paragraph 100 implicates legal conclusions, no response is required.  The '036 Patent speaks for itself.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 100.

101.    To the extent Paragraph 101 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 101.

102.    To the extent Paragraph 102 implicates legal conclusions, no response is required.

The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 9,764,833 is attached as Exhibit B.  Archer admits that the patent is entitled "Ventilated Rotor Mounting Boom for Personal Aircraft."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 102.

103.    To the extent Paragraph 103 implicates legal conclusions, no response is required. The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 1:15-22 states, "Taking off and landing vertically, instead of using a runway to develop sufficient velocity on the ground for wings to provide adequate lift, requires an aircraft to provide both vertical and forward thrust.  Thrust produced in the vertical direction provides lift to the vehicle; thrust produced horizontally provides forward movement.  A vertical takeoff and landing (VTOL) aircraft can produce both vertical and horizontal thrust, and is able to control these forces in a balanced fashion."  Archer admits that the '833 Patent at 1:40-51 states, "Helicopter rotors are large and unprotected from hitting nearby obstacles.  Additionally, they utilize mechanically complex systems to control both the collective and cyclic blade angles.  Such rotors are mechanically complex and require maintenance.  The rotors generally rotate at a low speed; this results in heavy transmissions between the rotor and motor.  The transmissions, or gearboxes, decrease the vehicle payload potential, as well as vehicle safety.  Because of the mechanical complexity across the entire vehicle system, many parts are single points of failure.  Because of this lack of redundancy, frequent inspections and maintenance are required to keep the vehicle safe."  Except as expressly admitted, Archer denies the remaining allegations contained in Paragraph 103.

104.    To the extent Paragraph 104 implicates legal conclusions, no response is required. The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833 Patent at 1:52-53 states, "Other types of VTOL aircraft have multiple rotors to reduce the single points of failure."  Archer admits that the '833 Patent at 1:52-62 states, "Other types of VTOL aircraft have multiple rotors to reduce the single points of failure.  However, many vital components, such as motor controllers, are not duplicated, and are thus still single points of failure.  These components are not duplicated due to design complexity, weight issues, and maintenance concerns. For example, a motor controller typically needs to be cooled, and including multiple conventional

cooling systems on an aircraft increases design complexity and aircraft weight.  Additionally,

including multiple conventional cooling systems increases the chances that an aircraft will be taken

out of service for maintenance."  Except as expressly admitted, Archer denies the remaining

allegations contained in Paragraph 104.

105.     To the extent Paragraph 105 implicates legal conclusions, no response is required.

The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833

Patent at 4:32-59 states, "Vertical lift rotor assemblies 101, 102 are mounted on each side of aircraft

100.  In one embodiment, rotor mounting booms 114 (FIG. 2) are secured to the wing 104 via a boom

attachment interface 206.  In this embodiment, a forward vertical lift rotor assembly 101 and an aft

vertical lift rotor assembly 102 are attached to each rotor mounting boom 114.  In one embodiment,

the boom attachment interface 206 (FIG. 2) allows the rotor mounting boom 114 to be attached to the

wing 104 using releasable fasteners, such as screws or bolts, so that the rotor mounting boom may be

easily removed from the wing for efficient repair or replacement."  Archer admits that the '833 Patent

at 5:44-52 states, "In various embodiments, the rotor controller assemblies 506 include heat

exchangers 570, such as a folded-fin heat exchanger to dissipate heat from the other components of

the rotor controller assembly.  The enclosure 510 may include one or more ventilation openings to

allow air to more effectively circulate within the enclosure, allowing for increased performance of the

heat exchanger 570.  The enclosure 510 may further include airflow channels to direct air within the

enclosure.  In one embodiment, one or more air inlets 514 and one or more air outlets 516 are

disposed on the enclosure 510 to facilitate airflow through the enclosure."  Except as expressly

admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 105.

106.     To the extent Paragraph 106 implicates legal conclusions, no response is required.

The '833 Patent speaks for itself.  To the extent a response is required, Archer admits that the '833

Patent at 8:21-33 states, "The rotor mounting boom of FIG. 8 includes an air inlet 814 at a forward

end of the boom.  The air inlet 814 is coupled to a forward duct 850A such that airflow flowing into

the air inlet 814 continues into the forward duct 850A.  The forward duct 850A is coupled to the

controller enclosure 810 such that airflow through the forward duct passes through the controller

enclosure.  The enclosure 810 is coupled to an aft duct 850B such that air passing through the

controller enclosure passes through the aft duct 850B.  The aft duct 850B is coupled to an air outlet 816 such that the airflow through the aft duct 850B passes through the air outlet 816 and out of the boom.  The airflow through the boom is indicated by the dashed lines of FIG. 8."  Archer admits that the image of "Fig. 8" in the Complaint appears to be the same as Fig. 8 in the '833 patent.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 106.

107.    To the extent Paragraph 107 implicates legal conclusions, no response is required.  The '833 Patent speaks for itself.  Archer denies the allegations and characterizations contained in Paragraph 107.

108.    To the extent Paragraph 108 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 108.

109.    To the extent Paragraph 109 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,110,033 is attached as Exhibit C.  Archer admits that the patent is entitled "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 109.

110.    To the extent Paragraph 110 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph 110 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 110.

111.    To the extent Paragraph 111 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph 111 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 111.

112.    To the extent Paragraph 112 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself, and Archer admits that the sentence fragments quoted in Paragraph

112 are present in the '033 Patent.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 112.

113.    To the extent Paragraph 113 implicates legal conclusions, no response is required. The '033 Patent speaks for itself.  Archer denies the allegations and characterizations contained in Paragraph 113.

114.    To the extent Paragraph 114 implicates legal conclusions, no response is required. The '328 Patent speaks for itself.  To the extent a response is required, Archer admits that an uncertified copy of what appears to be U.S. Patent No. 10,333,328 is attached as Exhibit D.  Archer admits that the patent is entitled "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 114.

115.    To the extent Paragraph 115 implicates legal conclusions, no response is required. The '328 and '033 Patents speak for themselves.  To the extent a response is required, Archer admits that the '328 Patent on its face states, "Continuation of application No. 15/885,303, filed on Jan. 31, 2018, now Pat. No. 10,110,033."  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 115.

116.    To the extent Paragraph 116 implicates legal conclusions, no response is required. The '328 and '033 Patents speak for themselves.  To the extent a response is required, Archer admits that the '328 Patent at 2:31-33 states, "Various embodiments of a charger which charges a battery system with a plurality of battery sub-modules on a common power bus are described herein." Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 116.

117.    Archer admits that it publicly filed with the SEC a document entitled, "Archer Investor Deck 2021," and refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 117.  Archer specifically denies that it has committed or is committing any act of trade secret misappropriation or patent infringement.

118.    To the extent Paragraph 118 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer admits that it publicly filed with the SEC a document entitled, "Archer Investor Deck 2021," and refers to the "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 118.

119.    Archer denies the allegations contained in Paragraph 119.  Archer admits that it issued a press release on February 10, 2021, and refers to the press release for the complete and accurate contents thereof.

120.    To the extent the allegations in Paragraph 120 pertain to a publicly filed document with the SEC, Archer refers to that publicly filed document for the complete and accurate contents thereof.

121.    To the extent Paragraph 121 purports to quote from press reports, Archer refers to those press reports for the complete and accurate contents thereof.  Archer denies the remaining allegations and characterizations contained in Paragraph 121.

122.    Archer admits that Mr. Furman began working at Archer as Chief Avionics Architect in January 2020, previously worked at Wisk and Kitty Hawk Corp. as Chief Avionics Architect, and is a named inventor on two patents identified in the Complaint: the '033 and '328 Patents.  Except as expressly admitted, Archer denies the allegations and characterizations of Paragraph 122, and specifically denies that it has committed or is committing any act of patent infringement.

123.    Archer denies the allegations and characterizations contained in Paragraph 123, and specifically denies that it has committed or is committing any act of patent infringement.

## FIRST CAUSE OF ACTION

### Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

124.    Archer incorporates by reference its responses to Paragraphs 1–123 of the Complaint.

125.    To the extent Paragraph 125 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 125, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

126.    To the extent Paragraph 126 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 126, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

127.   To the extent Paragraph 127 implicates legal conclusions, no response is required.  To the extent a response is required, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 127, and therefore denies them, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

128.   To the extent Paragraph 128 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 128, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

129.   To the extent Paragraph 129 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 129, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

130.   To the extent Paragraph 130 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 130, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

131.   To the extent Paragraph 131 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 131, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

132.   To the extent Paragraph 132 purports to summarize the damages sought by Wisk, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 132, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

1

**SECOND CAUSE OF ACTION**

2

**Violation of California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 *et seq.***

3

     133.    Archer incorporates by reference its responses to Paragraphs 1–132 of the Complaint.

4

     134.    To the extent Paragraph 134 implicates legal conclusions, no response is required.  To

5

the extent a response is required, Archer denies the allegations and characterizations contained in

6

Paragraph 134, and specifically denies that it has committed or is committing any act of trade secret

7

misappropriation.

8

     135.    To the extent Paragraph 135 implicates legal conclusions, no response is required.  To

9

the extent a response is required, Archer denies the allegations and characterizations contained in

10

Paragraph 135, and specifically denies that it has committed or is committing any act of trade secret

11

misappropriation.

12

     136.    To the extent Paragraph 136 implicates legal conclusions, no response is required.  To

13

the extent a response is required, Archer denies the allegations and characterizations contained in

14

Paragraph 136, and specifically denies that it has committed or is committing any act of trade secret

15

misappropriation.

16

     137.    To the extent Paragraph 137 implicates legal conclusions, no response is required.  To

17

the extent a response is required, Archer lacks knowledge or information sufficient to form a belief

18

regarding the truth of the allegations and characterizations contained in Paragraph 137, and therefore

19

denies them, and specifically denies that it has committed or is committing any act of trade secret

20

misappropriation.

21

     138.    To the extent Paragraph 138 implicates legal conclusions, no response is required.  To

22

the extent a response is required, Archer denies the allegations and characterizations contained in

23

Paragraph 138, and specifically denies that it has committed or is committing any act of trade secret

24

misappropriation.

25

     139.    To the extent Paragraph 139 implicates legal conclusions, no response is required.  To

26

the extent a response is required, Archer denies the allegations and characterizations contained in

27

Paragraph 139, and specifically denies that it has committed or is committing any act of trade secret

28

misappropriation.

Gibson, Dunn &
Crutcher LLP

140.     To the extent Paragraph 140 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 140, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

141.     To the extent Paragraph 141 purports to summarize the damages sought by Wisk, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 141, and specifically denies that it has committed or is committing any act of trade secret misappropriation.

## THIRD CAUSE OF ACTION

### Infringement of U.S. Patent No. 10,364,036

142.     Archer incorporates by reference its responses to Paragraphs 1–141 of the Complaint.

143.     To the extent Paragraph 143 implicates legal conclusions, no response is required. The '036 Patent speaks for itself.  To the extent a response is required, Archer admits that the '036 Patent bears the title "Multicopter with Boom-Mounted Rotors" and reflects an issue date of July 30, 2019.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations and characterizations contained in Paragraph 143, and therefore denies them.

144.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 144, and therefore denies them.

145.     To the extent Paragraph 145 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 145.

146.     To the extent Paragraph 146 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 146, and specifically denies that it has committed or is committing any act of patent infringement.

147.     To the extent Paragraph 147 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in

Paragraph 147, and specifically denies that it has committed or is committing any act of patent infringement.

148.    To the extent Paragraph 148 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 148 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 148, and specifically denies that it has committed or is committing any act of patent infringement.

149.    To the extent Paragraph 149 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 149 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 149, and specifically denies that it has committed or is committing any act of patent infringement.

150.    To the extent Paragraph 150 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in paragraph 150 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 150, and specifically denies that it has committed or is committing any act of patent infringement.

151.    To the extent Paragraph 151 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 151 and specifically denies that it has committed or is committing any act of patent infringement.

152.    To the extent Paragraph 152 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 152 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete

and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 152, and specifically denies that it has committed or is committing any act of patent infringement.

153.    To the extent Paragraph 153 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 153 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 153, and specifically denies that it has committed or is committing any act of patent infringement.

154.    To the extent Paragraph 154 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 154 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 154, and specifically denies that it has committed or is committing any act of patent infringement.

155.    To the extent Paragraph 155 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 155 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 155, and specifically denies that it has committed or is committing any act of patent infringement.

156.    To the extent Paragraph 156 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 156 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 156, and specifically denies that it has committed or is committing any act of patent infringement.

157.    To the extent Paragraph 157 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer admits that the image shown in paragraph 156 can be found

in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete

and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and

characterizations contained in Paragraph 157, and specifically denies that it has committed or is

committing any act of patent infringement.

158.     The allegations in the first two sentences of Paragraph 158 state legal conclusions to

which a responsive pleading is not required.  Archer admits that it has notice of the '036 Patent based

on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining

allegations contained in Paragraph 158 and specifically denies that it has committed or is committing

any act of patent infringement.

159.     To the extent Paragraph 159 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer denies the allegations and characterizations contained in

Paragraph 159 and specifically denies that it has committed or is committing any acts of patent

infringement.

## **FOURTH CAUSE OF ACTION**

### **Infringement of U.S. Patent No. 9,764,833**

160.     Archer incorporates by reference its responses to Paragraphs 1–159 of the Complaint.

161.     To the extent Paragraph 161 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer admits that the '833 Patent bears the title "Ventilated Rotor

Mounting Boom for Personal Aircraft" and reflects an issue date of September 19, 2017.  Except as

expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the

truth of the allegations and characterizations contained in Paragraph 161, and therefore denies them

162.     Archer lacks knowledge or information sufficient to form a belief regarding the truth

of the allegations contained in Paragraph 162, and therefore denies the allegations.

163.     To the extent Paragraph 163 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer denies the allegations of Paragraph 163.

164.     To the extent Paragraph 164 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer denies the allegations of Paragraph 164 and specifically

denies that it has committed or is committing any acts of patent infringement.

165.   To the extent Paragraph 165 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 165 and specifically denies that it has committed or is committing any acts of patent infringement.

166.   To the extent Paragraph 166 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 166 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 166, and specifically denies that it has committed or is committing any act of patent infringement.

167.   To the extent Paragraph 167 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 167 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 167, and specifically denies that it has committed or is committing any act of patent infringement.

168.   To the extent Paragraph 168 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 168 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 168, and specifically denies that it has committed or is committing any act of patent infringement.

169.   To the extent Paragraph 169 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 169, and specifically denies that it has committed or is committing any act of patent infringement.

170.   To the extent Paragraph 170 implicates legal conclusions, no response is required.  To

Gibson, Dunn & Crutcher LLP

the extent a response is required, Archer admits that the image shown in Paragraph 170 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 170, and specifically denies that it has committed or is committing any act of patent infringement.

171.    To the extent Paragraph 171 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 171 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 171, and specifically denies that it has committed or is committing any act of patent infringement.

172.    To the extent Paragraph 172 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 172 can be found in the video at www.archer.com/maker.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 172, and specifically denies that it has committed or is committing any act of patent infringement.

173.    To the extent Paragraph 173 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 173 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 173, and specifically denies that it has committed or is committing any act of patent infringement.

174.    To the extent Paragraph 174 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 174 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 174, and specifically denies that it has committed or is committing any act of patent infringement.

175.     The allegations in the first two sentences of Paragraph 175 state legal conclusions to which a responsive pleading is not required.  Archer admits that it has notice of the '833 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining allegations of Paragraph 175 and specifically denies that it has committed or is committing any act of patent infringement.

176.     To the extent Paragraph 176 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 176 and specifically denies that it has committed or is committing any acts of patent infringement.

## FIFTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 10,110,033

177.     Archer incorporates by reference its responses to Paragraphs 1–176 of the Complaint.

178.     To the extent Paragraph 178 implicates legal conclusions, no response is required.  The '033 Patent speaks for itself.  To the extent a response is required, Archer admits that the '033 Patent bears the title "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging" and reflects an issue date of October 23, 2018.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 178, and therefore denies the allegations.

179.     Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in Paragraph 179, and therefore denies the allegations.

180.     To the extent Paragraph 180 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 180.

181.     To the extent Paragraph 181 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 181 and specifically denies that it has committed or is committing any acts of patent infringement.

182.     To the extent Paragraph 182 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 182 and specifically denies that it has committed or is committing any acts of patent infringement.

183.     To the extent Paragraph 183 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 183 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 183, and specifically denies that it has committed or is committing any act of patent infringement.

184.     To the extent Paragraph 184 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 184 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 184, and specifically denies that it has committed or is committing any act of patent infringement.

185.     To the extent Paragraph 185 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 185 can be found at https://newatlas.com/aircraft/archer-aviation-evtol-united/, in "Archer Investor Deck 2021," or RTCA-DO-311A (December 19, 2017), and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/, "Archer Investor Deck 2021," and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 185, and specifically denies that it has committed or is committing any act of patent infringement.

186.     To the extent Paragraph 186 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 186 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 186, and specifically denies that it has committed or is committing any act of patent infringement.

187.     To the extent Paragraph 187 implicates legal conclusions, no response is required.  To

the extent a response is required, Archer admits that the images shown in Paragraph 187 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 187, and specifically denies that it has committed or is committing any act of patent infringement.

188.    To the extent Paragraph 188 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 188 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 188, and specifically denies that it has committed or is committing any act of patent infringement.

189.    To the extent Paragraph 189 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 189 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 189, and specifically denies that it has committed or is committing any act of patent infringement.

190.    To the extent Paragraph 190 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 190 can be found in "Archer Investor Deck 2021" or RTCA-DO-311A (December 19, 2017), and Archer refers to "Archer Investor Deck 2021" and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 190, and specifically denies that it has committed or is committing any act of patent infringement.

191.    Archer admits that Scott Furman is a named inventor of the '033 Patent and joined Archer in January 2020.  The allegations in the first two sentences of Paragraph 191 state legal conclusions to which a responsive pleading is not required.  Archer admits that it has notice of the '033 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the

remaining allegations of Paragraph 191 and specifically denies that it has committed or is committing any acts of patent infringement.

192.    To the extent Paragraph 192 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 192 and specifically denies that it has committed or is committing any acts of patent infringement.

## SIXTH CAUSE OF ACTION

### Infringement of U.S. Patent No. 10,333,328

193.    Archer incorporates by reference its responses to Paragraphs 1–192 of the Complaint.

194.    To the extent Paragraph 194 implicates legal conclusions, no response is required. The '328 Patent speaks for itself.  To the extent a response is required, Archer admits that the '328 Patent bears the title "Multi-battery charging station which selectively connects battery sub-modules to a common power bus for charging" and reflects an issue date of June 25 2019.  Except as expressly admitted, Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations and characterizations contained in Paragraph 194, and therefore denies them.

195.    Archer lacks knowledge or information sufficient to form a belief regarding the truth of the allegations contained in Paragraph 195, and therefore denies the allegations.

196.    To the extent Paragraph 196 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations of Paragraph 196.

197.    To the extent Paragraph 197 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 197, and specifically denies that it infringed any patents.

198.    To the extent Paragraph 198 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 198 and specifically denies that it has committed or is committing any acts of patent infringement.

199.    To the extent Paragraph 199 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 199 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck

Gibson, Dunn & Crutcher LLP

2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 199, and specifically denies that it has committed or is committing any act of patent infringement.

200.    To the extent Paragraph 200 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 200 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 200, and specifically denies that it has committed or is committing any act of patent infringement.

201.    To the extent Paragraph 201 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 201 can be found at either https://newatlas.com/aircraft/archer-aviation-evtol-united/ or in "Archer Investor Deck 2021," and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/ and "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 201, and specifically denies that it has committed or is committing any act of patent infringement.

202.    To the extent Paragraph 202 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 202 can be found at https://newatlas.com/aircraft/archer-aviation-evtol-united/, in "Archer Investor Deck 2021," or RTCA-DO-311A (December 19, 2017), and Archer refers to https://newatlas.com/aircraft/archer-aviation-evtol-united/, "Archer Investor Deck 2021," and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 202, and specifically denies that it has committed or is committing any act of patent infringement.

203.    To the extent Paragraph 203 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the image shown in Paragraph 203 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete

and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 203, and specifically denies that it has committed or is committing any act of patent infringement.

204.     To the extent Paragraph 204 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 204 can be found in "Archer Investor Deck 2021" or RTCA-DO-311A (December 19, 2017), and Archer refers to "Archer Investor Deck 2021" and RTCA-DO-311A (December 19, 2017) for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 204, and specifically denies that it has committed or is committing any act of patent infringement.

205.     To the extent Paragraph 205 implicates legal conclusions, no response is required.  To the extent a response is required, Archer admits that the images shown in Paragraph 205 can be found in "Archer Investor Deck 2021," and Archer refers to "Archer Investor Deck 2021" for the complete and accurate contents thereof.  Except as expressly admitted, Archer denies the allegations and characterizations contained in Paragraph 205, and specifically denies that it has committed or is committing any act of patent infringement.

206.     Archer admits that Scott Furman is a named inventor of the '328 Patent in January 2020.  The allegations in the first two sentences of Paragraph 206 state legal conclusions to which a responsive pleading is not required.  To the extent that a responsive pleading is deemed required, Archer denies the allegations and characterizations contained in Paragraph 206.  Archer admits that it has notice of the '328 Patent based on the service of the Complaint.  Except as expressly admitted, Archer denies the remaining allegations and characterizations contained in Paragraph 206 and specifically denies that it has committed or is committing any acts of patent infringement.

207.     To the extent Paragraph 207 implicates legal conclusions, no response is required.  To the extent a response is required, Archer denies the allegations and characterizations contained in Paragraph 207 and specifically denies that it has committed or is committing any acts of patent infringement.

**PRAYER FOR RELIEF**

208.    Paragraph 208 sets forth the statement of relief requested by Wisk to which no response is required.  Archer denies that Wisk is entitled to any relief against Archer and requests that the Court dismiss all claims with prejudice and order such further relief as the Court deems just and proper, including but not limited to attorney's and expert fees pursuant to California Civil Code § 3426.4 and/or 18 U.S.C. § 1836(b)(3)(D).

**AFFIRMATIVE DEFENSES**

209.    Archer asserts the following affirmative defenses, without assuming the burden of proving any fact, issue, or element of a claim where such burden properly belongs to Wisk.  In addition to the affirmative defenses described below, Archer specifically reserves all rights to assert additional affirmative defenses as additional information becomes available.  Archer reserves the right to seek leave to amend its Answer to plead additional defenses and counterclaims and/or to supplement its existing defenses if information developed through discovery, trial, or otherwise, merits such additional defenses, counterclaims, or supplementation.  Pursuant to Federal Rule of Civil Procedure 8(c), Archer, without waiver, limitation, or prejudice, hereby asserts the following affirmative defenses:

**First Affirmative Defense**

**Non-Infringement of U.S. Patent No. 10,364,036**

210.    Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '036 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

**Second Affirmative Defense**

**Non-Infringement of U.S. Patent No. 9,764,833**

211.    Archer has not directly infringed, induced infringement, or contributed to infringement, and does not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the '833 Patent directly or indirectly, literally, or by equivalents, and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

1

**Third Affirmative Defense**

2

**Non-Infringement of U.S. Patent No. 10,110,033**

3     212.    Archer has not directly infringed, induced infringement, or contributed to

4  infringement, and does not directly infringe, induce infringement, or contribute to infringement, of

5  any valid and enforceable claim of the '033 Patent directly or indirectly, literally, or by equivalents,

6  and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

7

**Fourth Affirmative Defense**

8

**Non-Infringement of U.S. Patent No. 10,333,328**

9     213.    Archer has not directly infringed, induced infringement, or contributed to

10  infringement, and does not directly infringe, induce infringement, or contribute to infringement, of

11  any valid and enforceable claim of the '328 Patent directly or indirectly, literally, or by equivalents,

12  and has not otherwise committed and is not committing any acts in violation of 35 U.S.C. § 271.

13

**Fifth Affirmative Defense**

14

**Invalidity of U.S. Patent No. 10,364,036**

15     214.    Each asserted claim of the '036 Patent is invalid for failure to comply with one or

16  more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C.

17  §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S.

18  Code.

19

**Sixth Affirmative Defense**

20

**Invalidity of U.S. Patent No. 9,764,833**

21     215.    Each asserted claim of the '833 Patent is invalid for failure to comply with one or

22  more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C.

23  §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S.

24  Code.

25

**Seventh Affirmative Defense**

26

**Invalidity of U.S. Patent No. 10,110,033**

27     216.    Each asserted claim of the '033 Patent is invalid for failure to comply with one or

28  more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C.

§§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

## Eighth Affirmative Defense

### Invalidity of U.S. Patent No. 10,333,328

217.    Each asserted claim of the '328 Patent is invalid for failure to comply with one or more requirements for patentability under the patent laws, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, or any other applicable statutory provisions of Title 35 of the U.S. Code.

## Ninth Affirmative Defense

### Limitations on Damages and Costs

218.    To the extent that Wisk, and/or any predecessors in interest or any licensees to the patents forming the bases for Wisk's patent infringement claims, failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Archer's actions allegedly infringe the patents, Archer is not liable to Wisk for the acts alleged to have been performed before Archer received actual notice that the accused devices were allegedly infringing the asserted patents.  Wisk's claims for relief are further barred, in whole or in part, under 35 U.S.C. §§ 286 and 288.  Wisk failed to give proper notice to Archer of its claims under the patent laws of the United States and have failed to establish any basis for damages and/or liability prior to patent issuance.

## Tenth Affirmative Defense

### Patent Misuse

219.    The patents at issue are unenforceable under the doctrine of patent misuse because Wisk has misused the patents at issue by engaging in a course of conduct that includes prematurely asserting the patents in bad faith before Archer could possibly have engaged in any infringing acts, impermissibly broadening the physical or temporal scope of the patent grant with anticompetitive effect, and attempting to enforce knowingly invalid, unenforceable, and/or noninfringed patents with anticompetitive effects.

**Eleventh Affirmative Defense**

**Unclean Hands**

220.    Wisk's claims for relief are barred, in whole or in part, under the doctrine of unclean hands.  On December 9, 2019, Archer's founders disclosed to a senior engineer at Wisk their plans for a 12-rotor, fixed wing aircraft with some number of rotors on the forward side of the wing tilting during transition.  Wisk's senior engineer reported this information to Wisk's CEO and CTO, and just one month later, Wisk filed the provisional patent containing the design it now claims Archer stole from it.  Wisk's course of conduct demonstrates that it misused the patent application process to manipulate the record and give the false impression of trade secret theft.

221.    Wisk also leveraged its theft of Archer's design by misleading ██████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████

222.    Wisk's entire course of conduct demonstrates a calculated and coordinated plan to impugn Archer's reputation and disrupt its business prospects on the basis of contrived allegations of misappropriation.  Wisk's unclean hands preclude it from obtaining equitable relief.

**Twelfth Affirmative Defense**

**Independent Development**

223.    To the extent there is any evidence that Archer used any of the alleged trade secrets, Wisk cannot prevail against Archer on its claims of misappropriation, in whole or in part, because Archer independently developed all components of its eVTOL aircrafts and aircraft designs.

224.    For the design of the *Maker* aircraft, Archer hired a top-tier eVTOL aircraft design firm, FlightHouse Engineering, that specializes in the conceptual design of aircraft, in September 2019.  FlightHouse has its own proprietary software that allows it to simultaneously analyze numerous design disciplines (e.g., aerodynamics, propulsion, structures, mass properties,

performance, and payload effectiveness) with varying levels of fidelity to generate optimized aircraft designs.  It was FlightHouse that suggested to Archer that it consider using a "12-tilt-6" design—an aircraft with 12 rotors on a fixed wing, the front six of which could tilt from a vertical to a horizontal position to allow the aircraft to hover like a helicopter for takeoff and landing, and cruise forward like a plane while in flight.

225.    Archer also hired a well-known industrial designer named Frank Stephenson to work on the overall look and feel of the *Maker* aircraft aesthetically.  Stephenson selected the V-tail design of the *Maker* in order to make the overall aircraft look more appealing.  Stephenson also selected the 5-bladed rotor for the front-wing rotors because of their aesthetic appeal.

226.    In addition, several components of the *Maker* are provided entirely by third parties. For example, Archer buys its motors from a third party, MAGicALL, who does not disclose many of the proprietary elements of its motors.  MAGicALL's motors are integrated with the motor controllers.  Thus, any components of the *Maker* that are alleged to have been derived from Wisk's Motor Optimization model, ███ Motor Design, or Motor Controller Design were independently developed.  Likewise, Archer purchases its batteries from third-party EP-S.  Thus, any components of the *Maker* that are alleged to have been derived from Wisk's Battery Management System or other components of Wisk's battery design were independently developed.  Archer also purchases its flight control computers from Curtiss-Wright Corporation, inertial navigation systems from Safran and another vendor, and air data computers from Aeroprobe.  Thus, any components of the *Maker* that are alleged to have been derived from Wisk's avionics systems were independently developed.

### Thirteenth Affirmative Defense

### Defendant's Good Faith

227.    Wisk's claim for misappropriation of trade secrets is barred because Archer acted in good faith and had no reason to believe that the former Wisk employees that Wisk points to in the Complaint retained any alleged confidential information.  Moreover, Archer took affirmative steps to prevent the unintentional receipt of third-party confidential information.  Every employee who began work for Archer on or after January 1, 2020 was required to sign documents warning them not to bring or use any proprietary information from their prior employer to Archer.  Additionally, to help

1   ensure that new employees understood what information might be confidential to a former employer,

2   and how to thoroughly remove the information to ensure it is never used at Archer, Archer also

3   retained, at its own cost, an attorney to personally represent all incoming employees.  This attorney

4   walked through a checklist to ensure that the employees had not retained or brought with them

5   confidential information from their past employers and advised new hires on steps to take to remove

6   any information that was discovered before the employee began work for Archer.

7                                    **Fourteenth Affirmative Defense**

8                                              **Wisk's Bad Faith**

9           228.    Wisk's claims for misappropriation of trade secrets are frivolous, unreasonable,

10  groundless, and in bad faith and therefore Wisk is barred from any recovery for such claims.

11          229.    On December 9, 2019, Archer's founders disclosed to a senior engineer at Wisk their

12  plans for a 12-rotor, fixed wing aircraft with some number of rotors on the forward side of the wing

13  tilting during transition.  Wisk's senior engineer reported this information to Wisk's CEO and CTO,

14  and just one month later, Wisk filed the provisional patent containing the design it now claims Archer

15  stole from it.  Wisk's course of conduct demonstrates that it misused the patent application process to

16  manipulate the record and give the false impression of trade secret theft.

17          230.    Wisk also leveraged its theft of Archer's design by misleading ███████████

18  ████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████

23  ████████████████████████

24          231.    Wisk's entire course of conduct demonstrates a calculated and coordinated plan to

25  impugn Archer's reputation and disrupt its business prospects on the basis of contrived allegations of

26  misappropriation.  Wisk is barred from recovery on its claims for misappropriation of trade secrets

27  based on its bad faith.

28

**Fifteenth Affirmative Defense**

**Adequate Remedy at Law**

232.     Wisk is not entitled to injunctive relief, because, at a minimum, it has no irreparable injury, it has an adequate remedy at law for Archer's alleged infringement and/or misappropriation, the balance of hardships does not tip in its favor, and the public interest would be disserved by an injunction. There is no risk that Archer's possession, or even use, of the specific trade secrets that Wisk alleged would result in those secrets being shared with the wider public.

**Sixteenth Affirmative Defense**

**Readily Ascertainable**

233.     Wisk's alleged trade secrets do not qualify for trade secret protection because they are readily ascertainable by proper means and thus are not protectable as trade secrets.

234.     Dr. Marilyn Smith, a leading authority on aerospace engineering, examined each of the trade secrets alleged by Wisk in its motion for a preliminary injunction to have been misappropriated by Archer.  Dr. Smith provided an opinion on the issue of whether Wisk had identified those trade secrets with reasonable particularity to persons skilled in the eVTOL field.  In the course of doing so, Dr. Smith offered several critical observations about the generic nature of Wisk's trade secrets, including that all of the trade secrets alleged in the motion for a preliminary injunction to have been misappropriated by Archer were readily ascertainable.

235.     For example, Trade Secrets 1-4—relating to Wisk's aerodynamic testing and simulations—are readily ascertainable.  Testing data from computational fluid dynamic ("CFD") analyses (including FUN3D and OVERFLOW) are known to persons of skill in this trade.  Both FUN3D and OVERFLOW are NASA-developed CFD tools to which U.S. companies, universities, and individuals can obtain access.  As made clear by review of the 432-page FUN3D User's Manual, and as is evident to anyone who uses CFD tools, NASA-developed CFD testing and simulation software is complex and high-quality, and its users regularly employ intensive CPU processing operations to produce detailed data.

236.     Trade Secrets 9, 12, 14, and 15—█████████████████████████████
████████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1    ███████████████████████—are readily ascertainable.  Motors for converting electrical to

2    mechanical energy and driving the vertical and horizontal propulsions systems is known to persons of

3    skill in this trade, and similarly that ███████████████████████████████

4    ████████████████████████████████ is new.

5          237.    Trade Secrets 16, 20, and 21—relating to Wisk's design for a motor controller, which

6    ████████████████████████████████████████████████████

7    █████—are readily ascertainable.  Rotor motors were well known in the art, and any such motors

8    would necessarily have required associated controllers.  Indeed, many of Wisk's own patents discuss

9    motor controllers, presuming that persons skilled in the trade would know how to make a motor

10   controller.

11         238.    Trade Secrets 29–32—relating to Wisk's design for a battery system including the

12   ████████████████████████████████████████████████████

13   ██████████████████████████████████—are readily

14   ascertainable.  Batteries and battery management systems suitable for use in electric aircraft are

15   known to persons of skill in the trade.  Moreover, suitable batteries and battery management systems

16   may be purchased from experienced manufacturers such as Electric Power Systems (EP-S).

17         239.    Trade Secrets 44 and 46—relating to Wisk's avionics system ████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ██████████████████████████████ Avionic equipment has been produced

21   by various manufacturers for many years, by companies such as Rockwell-Collins, Honeywell,

22   Safran, SBG, Curtiss-Wright Corporation, Aeroprobe, and others.

23         240.    Similar evidence exists or is likely to be obtained in discovery for each of the 52 trade

24   secrets Wisk has alleged.

25                          **Seventeenth Affirmative Defense**

26                            **No Willful Infringement**

27         241.    Archer has not willfully infringed, and will not willfully infringe, any claim of the

28   patents-in-issue, nor has Archer willfully or maliciously misappropriated any of Wisk's alleged trade

secrets. Archer hereby realleges and incorporates by reference in full the allegations set forth above for its Fourteenth Affirmative Defense. Archer took every reasonable step it could to prevent trade secrets from entering the company.  Even if an employee violated their agreement with Archer, Archer could not have known that any trade secrets entered Archer given the better-than-best practices Archer employed to prevent such confidential information from infecting Archer.

### Eighteenth Affirmative Defense

### Failure to Mitigate

242.   To the extent Wisk may have suffered any damages, Wisk has failed to take reasonable steps to mitigate such damages.

243.   Despite alleging that it was aware of Xue's alleged "theft" immediately after his departure, Wisk waited two months before even asking for the information back, and waited another two months to report the alleged theft to law enforcement authorities. Wisk took no action directed toward Archer for 15 months after Wisk supposedly became aware of Xue's supposed theft and employment at Archer.  Wisk delayed despite alleging that its senior engineer recognized Archer's 12-tilt-6 design as similar to a confidential Wisk design when he met with Archer's founders in December 2019.

### Nineteenth Affirmative Defense

### Estoppel

244.   Wisk's requested relief is barred, in whole or in part, by the doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel arising from the patentee's actions, representations, or conduct before the U.S. Patent and Trademark Office during prosecution of the patents-in-suit.

245.   Wisk is estopped from construing any valid claim of the patents-in-suit to be infringed or to have been infringed, either literally or by application of the Doctrine of Equivalents, by any product made, used, imported, sold, or offered for sale by Archer in view of prior art and/or because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the patents-in-suit or any related patent, because of disclosures or language in the specifications of the patents-in-suit, and/or because of limitations in the claims of

1    the patents-in-suit.

## **ARCHER'S FIRST AMENDED COUNTERCLAIMS**

Counterclaimant Archer Aviation Inc. ("Archer"), by its undersigned counsel, brings these first amended counterclaims against Plaintiff and Counterdefendant Wisk Aero LLC ("Wisk") and alleges as follows[2]:

### **Introduction**

1.      Wisk initiated this baseless lawsuit with the clear intended purpose to disrupt Archer's business and impede Archer's growth as a competitor in the field of electrical vertical takeoff and landing ("eVTOL") vehicles.  Following Archer's announcement in February 2021 of two significant business deals—a billion-dollar merger into a special purpose acquisition company and a deal with United Airlines, Inc. pursuant to which United has ordered $1 billion worth of aircraft—Wisk filed its inflammatory complaint accusing Archer of conspiring with former Wisk employees to misappropriate Wisk's trade secrets and "copy" Wisk's own aircraft design.  A month later, Wisk moved for a preliminary injunction of such breadth that could, if granted in the form proposed by Wisk, effectively expel Archer from the industry during the pendency of this litigation.

2.      But Wisk's efforts to impugn Archer's reputation extend beyond this litigation.  Wisk has made public misrepresentations about purported "evidence" in its possession showing misappropriation by Archer, and stated publicly that Archer is currently being investigated by federal authorities for misappropriation of trade secrets.  These statements were false and were issued with the clear intent to tarnish the reputation of Archer and interfere with its business contracts.

3.      Among the misrepresentations Wisk has publicly made about Archer are its claims that the FBI and Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property," that Archer "is seeking to gain a foothold in this industry without respecting the rules of fair competition," and that Archer's *Maker* aircraft is a "copy" of a design Wisk submitted in a confidential patent application in January 2020.  All of these statements are false.

4.      Moreover, Wisk *knows* these statements are false.  Archer's founders *told* Wisk's lead

---

[2]   Archer's First Amended Counterclaims are the subject of a pending motion to dismiss.  Archer is including its First Amended Counterclaims in this pleading so as to avoid any suggestion of waiver.

1    engineer in December 2019 that they were working with third-party consultants to design an aircraft

2    with tiltable rotors.  The chief engineer promptly reported that conversation to the CEO of Wisk.  Just

3    a month later, in January 2020, Wisk filed the patent application that it places at the center of its

4    media campaign.  That application included *several* potential aircraft designs with tiltable rotors.

5         5.      It is clear now that the patent application Wisk relies on so much for its case is nothing

6    more than a litigation prop, hastily pulled together upon learning of Archer's designs to try and

7    interfere with Archer's business.

8         6.      This gambit fails for all the reasons explained in Archer's motion to dismiss and

9    opposition to Wisk's motion for a preliminary injunction, but Wisk's conduct outside the courtroom

10   is independently actionable.  Wisk's defamatory statements were issued with reckless disregard for

11   the truth and with the intent to interfere with Archer's business relationships.  These statements were

12   not issued in the course of a judicial proceeding, but rather separately made in blog posts released on

13   Wisk's website for the purpose of spreading falsehoods about Archer.  Wisk should be held to

14   account for its false representations regarding Archer.

15                                         **Parties**

16        7.      Archer is a corporation organized under the laws of the State of Delaware, with its

17   principal place of business located at 1880 Embarcadero Road, Palo Alto, California 94303.

18        8.      On information and belief, Wisk is a limited liability company organized under the

19   laws of the State of Delaware, with its principal place of business located at 2700 Broderick Way,

20   Mountain View, California 94043.

21                                  **Jurisdiction and Venue**

22        9.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1338(a).  The Court also

23   has supplemental subject-matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

24        10.     Venue is proper in this District under the provisions of 28 U.S.C. § 1391(b), because a

25   substantial portion of the events or omissions giving rise to the claims occurred in this judicial

26   district, the intellectual property that is the subject of this suit is situated in this judicial district, and

27   Wisk resides in this District for the purposes of 28 U.S.C. § 1391.  Venue is also proper in this

28   District under the provisions of 28 U.S.C. § 1400(b), because this is the judicial district where Wisk

1     "resides" and/or where Wisk has committed acts of tortious interference and unfair competition and

2     "has a regular and established place of business."

3         11.     This Court has personal jurisdiction over Wisk because Wisk has continuous and

4     systematic contacts with the State of California, including because its principal place of business is

5     located within this judicial District. Additionally, and on information and belief, Wisk has

6     intentionally targeted its improper behavior at Archer in this District.

7                       **Factual Background**

8        ***Archer Leverages Its World Class Talent And Third-Party Partners To Design An***

9                       ***Industry-Leading eVTOL Aircraft***

10         12.     Archer was founded by Brett Adcock and Adam Goldstein in October 2018 with the

11     goal of developing a commercially viable, piloted eVTOL vehicle.

12         13.     After founding and selling a successful start-up, Adcock and Goldstein negotiated an

13     agreement with their alma mater, the University of Florida, to fund research through what later

14     became known as the Archer Aviation eVTOL Lab (the "Lab"). The Lab produced several potential

15     eVTOL aircraft designs for Archer, and by June 2019, Archer had an eVTOL aircraft design that it

16     believed could be successful.

17         14.     Following their work at the Lab, Adcock and Goldstein began recruiting and

18     partnering with leading experts in the eVTOL field.

19         15.     In September 2019, Archer engaged FlightHouse Engineering, LLC—an industry

20     leader that worked with Airbus and others to develop an eVTOL aircraft—to help design an eVTOL

21     aircraft that would meet Archer's needs.

22         16.     FlightHouse advised Archer that the design produced in consultation with the Lab was

23     not optimal to achieve Archer's objectives, and thereafter spent several months working to develop

24     different potential aircraft configurations for Archer.

25         17.     No later than November 22, 2019, FlightHouse suggested to Archer the idea of using

26     tiltable rotors on its eVTOL aircraft.

27

28

1      18.      On December 6, 2019, FlightHouse provided Archer with a presentation deck that

2   include a "12-tilt-6" design—an aircraft with twelve rotors, six of which tilt:



## Round 2 Config Sizing

1. 8 rotors, front four tilt
2. 8 coax rotors, separate push system
3. 12 rotors, front six tilt

Common Assumptions (used for Round 1)

- Cruise CL = 1.1 @ 120 mph
  - wing area 186 ft²
  - Span = 45 ft
  - 6500 lbs MTOW
- MF_struct = 22%
- FOM
  - 0.7 un-stacked
  - 0.75 coax

FlightHouse Engineering LLC - Proprietary                                    157

16      19.      At the same time it was working with FlightHouse to identify a potential aircraft

17   configuration, Archer also began to recruit what it believed to be the most talented engineers in the

18   eVTOL industry from a wide variety of private and governmental entities, including Airbus, Harris

19   Corporation, Joby, Piper, the Army, and Wisk.

20      20.      Archer first hired Tom Muniz from Wisk to be its Vice President of Engineering.

21      21.      On January 6, 2020, Geoff Bower joined Archer from Airbus as Archer's Chief

22   Engineer.

23      22.      Over the next two months, Bower evaluated the various configurations that

24   FlightHouse had proposed—all of which used tiltable rotors—and concluded that the 12-tilt-6 design

25   was the best design for Archer's needs.

26      23.      The 12-tilt-6 design that Bower adopted ultimately became the design used in

27   Archer's *Maker* aircraft.

28      24.      Archer relied on several other third parties to help complete the design of the *Maker*.

25.     Industrial designer Frank Stephenson—who has worked with Ferrari, BMW and eVTOL company Lilium Aviation—designed the *Maker*'s sleek shape, five-blade front propellers, and V-tail.

26.     Archer sourced the motors for the *Maker* from MAGicALL, Inc., an independent third-party vendor that keeps the core structure of its motors confidential (even from its customers).

27.     Archer sourced the battery systems for the *Maker* from Electric Power Systems, Inc., another independent third-party vendor that keeps the core structure of its batteries confidential (even from its customers).

### Archer Discloses Its Design To Wisk In Advance Of The 2020 Patent Application

28.     On December 9, 2019—three days after the meeting with FlightHouse that included a deck containing the 12-tilt-6 design—Adcock and Goldstein met with Geoff Long, a senior engineer at Wisk, in Palo Alto to potentially recruit Long to join Archer.  At that time, Archer had not yet determined whether it would adopt the 12-tilt-6 design or some other design.

29.     Adcock and Goldstein told Long they were working with Calder Hughes (of FlightHouse) to design an eVTOL aircraft, and that they planned to use a fixed-wing aircraft with a 12-rotor tiling design.

30.     Adcock and Goldstein also told Long they were considering a design that would have six rotors along the front of a fixed wing, with up to all six front rotors capable of tilting, and six stationary lift fans arranged aft of the wing (i.e., 12-tilt designs).

31.     Adcock and Goldstein believed that the information they shared with Long would be kept confidential.

32.     A few days later, Long told Wisk's CEO, Gary Gysin, and Wisk's Chief Technology Officer, Jim Tighe, about Archer's plans for a 12-rotor tilting design.

33.     Long also told Gysin and Tighe that Archer was working with a third-party consultant to design its eVTOL aircraft.

34.     On January 31, 2020, Wisk filed a provisional patent application containing, among several other designs, the 12-tilt-6 design that Wisk repeatedly reproduces in its pleadings and media campaign.

***Archer Attracts Major Investors***

35.     From the start, Archer's goal has been to obtain FAA certification and bring a commercially viable eVTOL vehicle to market as soon as possible.

36.     Archer currently projects that it will be able to obtain FAA certification in 2024.

37.     In January 2021, Archer announced an agreement with Fiat-Chrysler (FCA/Stellantis) that will allow Archer to access the resources and expertise of an established and recognized global manufacturer.

38.     On February 10, 2021, Archer publicly announced it entered into a definitive agreement for a business combination with the special purpose acquisition company Atlas Crest Investment Corp ("ACIC") and its intent to raise $1.1 billion from investors to fund Archer's operations.  If the agreement is approved by ACIC stockholders and other closing conditions are satisfied, Archer would become a public company listed on the New York Stock Exchange.  As part of the $1.1 billion in anticipated funding, certain investors have entered into subscription agreements to purchase an aggregate of 60 million shares for $10 per share.

39.     Also on February 10, 2021, Archer publicly announced an aircraft purchase agreement and collaboration agreement with United Airlines, Inc. that included an order for $1 billion of Archer's future aircraft, with an option for an additional $500 million of aircraft.

40.     As part of these announcements, Archer released a conceptual mock-up of the aircraft design it had been working on.  The design included twelve rotors, six of which tilt.

***Archer Initiates Its Campaign Against Archer***

41.     On April 6, 2021, Wisk filed a lawsuit recklessly accusing Archer of stealing trade secrets and infringing Wisk's patents.  (Dkt. 45.)  Wisk's lawsuit referenced Wisk's knowledge of Archer's contractual relationships with ACIC and United Airlines.  (Dkt. 45 ¶¶ 4, 118, 119, 119 n.2.)

42.     The crux of Wisk's lawsuit is its claim that some Wisk employees departed Wisk to work for Archer, and that two of those employees may have taken some confidential Wisk files with them, shared those files with Archer, and then used those files to design Archer's aircraft. Throughout its pleadings, Wisk includes a side-by-side image of one of the several designs contained in its January 2020 patent application next to the design Archer released in February 2021.

43.     There are no plausible allegations in Wisk's pleadings of any trade secret misappropriation, and certainly no plausible allegations that *Archer* misappropriated any trade secrets.  Instead, Wisk's allegations are premised entirely on speculation and innuendo, accusing Archer of stealing its trade secrets based solely on the fact that two Wisk employees downloaded certain files to their personal devices *while they were still at Wisk*.  There are no plausible allegations that those employees retained those files, that those employees brought those files with them to Archer, that those employees used those files in connection with their work at Archer, or that Archer had any knowledge of such retention or use.

44.     Notwithstanding the absence of any good-faith basis for its allegations, Wisk has taken steps beyond the mere filing of this lawsuit to inflict maximum damage on Archer's reputation.

45.     To ensure that Wisk's allegations received wide exposure and enhanced their chances of (a) disrupting Archer's publicly announced contracts; (b) discouraging highly qualified talent from joining Archer; and (c) discouraging existing and potential investors from investing in Archer, Wisk posted a lengthy blog post on its website[3] and issued a press release that linked to the blog post[4] falsely and recklessly accusing Archer of unlawful conduct.  Wisk timed its public mudslinging campaign, coinciding with the filing of its reckless lawsuit, to maximize harm to Archer after learning of Archer's impending financial success.

46.     Wisk then published a second blog post on the "News & Insights" tab of its website on May 19, 2021, continuing its false, reckless, and unfounded statements of purported fact in an effort to interfere with Archer's success.[5]

---

[3]  A copy of which is attached as **Exhibit 1** and is also available at https://wisk.aero/news/blog/040621-blog-post/.

[4]  A copy of which is attached as **Exhibit 2** and is also available at https://www.prnewswire.com/news-releases/wisk-aero-sues-archer-aviation-for-theft-of-trade-secrets-and-patent-infringement-301263146.html.

[5]  The second blog post is available at the link referenced in footnote 2, *supra*, and the corresponding exhibit.  *See* Ex. 1.

47.     Wisk's blog posts were not made in furtherance of the litigation, and instead were made to defame Archer, tortiously interfere with Archer's current and prospective contractual and economic relationships, and stifle fair competition.

48.     In its blog posts and press release, Wisk made numerous unsupported and false assertions that expose its true intentions to derail a more successful competitor by interfering with Archer's contracts, existing and prospective business relationships, and recruiting efforts.

49.     On April 6, 2021, Wisk published a statement that Archer is using "stolen Wisk technology" and "infringing our patents," despite knowing or recklessly disregarding that Archer does not have an infringing device.

50.     Wisk's blog post claimed that Archer's computer-generated image somehow "indicates Archer's use of more detailed design features, including features related to aircraft propulsion, power management, avionics, flight control, and manufacturing methodology."  This claim is false:  A single, shadowed, computer-generated image of Archer's aircraft design cannot indicate underlying propulsion, power management, or other technical methodology.

51.     Wisk also baselessly stated in its blog post that the similarity between the aircraft design in Wisk's patent application and the aircraft design in Archer's investor materials "could not have been a coincidence."  This assertion—which effectively calls Archer a thief of trade secrets and patented technology based on the similarity of two computer-generated pictures—ignores the fact that Wisk *knew* Archer was contemplating design of a 12-tilt-6 aircraft in December 2019, over a month before Wisk filed its patent application

52.     In fact, the evidence suggests that Wisk strategically filed its patent application for the purpose of creating a litigation prop in its effort to tarnish the reputation of Archer.  Tellingly, Wisk does not even claim in this lawsuit that its aircraft design *is* a secret at all.

53.     Wisk also tried to obscure details about aircraft design and the industry, catering its blog post to industry outsiders like Archer's business partners and investors.  For example, Wisk stated:  "The design of the aircraft submitted in Wisk's patent application is not a result of common knowledge among the industry or basic eVTOL aircraft design."  This is deceptive and objectively

untrue.  Relevant aspects of Wisk's aircraft design have been publicly available and are common knowledge among the industry, representing basic eVTOL aircraft design.

54.     Wisk also falsely, or in reckless disregard of the truth, asserted that it is "virtually impossible" for Archer to have made the progress it has in its aircraft design in the amount of time in which it has achieved that progress.

55.     Wisk knew in December 2019 that Archer was working with FlightHouse to design its aircraft configuration and had recruited some of the best engineers in the industry to develop its aircraft.  Long's notes to himself written the morning after his December 9 recruiting meeting with Adcock and Goldstein reflect that knowledge.

56.     Wisk was, or should have been, well aware that it is common within the industry to utilize the services of consultants to assist in various parts of aircraft design, underscoring the falsity and recklessness of its statements.

57.     Wisk's second blog post falsely claimed that the FBI and U.S. Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property."  *See* Ex. 1.

58.     That is a false statement that Wisk knew or should have known was untrue when Wisk posted it and that remains untrue today.

59.     Archer is not currently and has never been the target of a criminal investigation.

60.     Wisk made this false statement to intentionally or recklessly further interfere with Archer's contracts and deter would-be employees from joining Archer, to scare off potential Archer investors and customers, and to cause further reputational and economic harm to Archer.

61.     On information and belief, Wisk pushed its salacious blog post to media outlets, which picked up the false and damaging claim that Archer was the subject of a criminal investigation, harming Archer's reputation and goodwill, as Wisk intended.  Archer was forced to expend significant time and resources to correct the misstatements in an effort to prevent further harm.  But the corrections by certain media outlets to their stories could not undo the damage Wisk's tortious statement already caused to Archer, damage that continues with Wisk's active blog post.

62.     As intended, Wisk's anticompetitive and tortious conduct has already harmed Archer and will continue to do so.  Wisk's public statements on its website have disrupted Archer's current contractual relationships, making them more burdensome and expensive, as well as prospective opportunities for investment and financial success, and have harmed Archer's valuable goodwill and reputation at a critical time for Archer's funding and success.

63.     Wisk's tortious and anticompetitive conduct has also directly impacted Archer's recruiting efforts.  For example, several recruitment prospects were no longer interested in joining Archer after Wisk's misrepresentations were published, including at least one prospective employee who had signed an employment contract to join Archer but then backed out, citing Wisk's false blog post as the impetus for his withdrawal.  As a result of Wisk's conduct, Archer has already lost, and will continue to lose, talent as well as the funds, time, and effort expended to recruit these individuals.

64.     Wisk's tortious and unlawful actions have caused and continue to cause significant financial damages and harm to Archer going forward, which actual and final amounts will be proven at trial.

### First Counterclaim

(INTERFERENCE WITH CONTRACTUAL RELATIONS)

65.     Archer incorporates Paragraphs 1–64 of the Counterclaims as though fully set forth herein.

66.     Archer entered into a contract with ACIC, and many investors purchased stock in ACIC.  Archer had also reached agreement with at least one prospective employee who had agreed to join Archer before Wisk published its blog posts.

67.     Wisk knew of these contracts, or in the case of the employee, knew on information and belief that Archer was hiring and therefore likely had pending employee contracts.  Wisk's misleading and false blog posts disrupted these contractual relationships, causing the employee to withdraw the acceptance of a job offer from Archer, and making performance of the contracts more expensive, difficult, and burdensome.

68.     By accusing Archer of misconduct and making misleading and false claims in the blog posts and press release intended to obscure the issues for industry outsiders, Wisk intended to disrupt (or, at the very least, failed to act with reasonable care to prevent the disruption of), and did disrupt, these contracts.  Wisk also knew that (or, at the very least, recklessly disregarded whether) disruption of performance was certain or substantially certain to occur.  Wisk has engaged and continues to engage in tortious acts against Archer through which Wisk has intentionally interfered and continues to intentionally interfere with the contractual relations between Archer and its existing investors and recruits.  Wisk intends that such interference would induce breaches or disruption of Archer's contractual relationships.

69.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, has not infringed any Wisk patents, and is not under criminal investigation.  Wisk had no reasonable basis for stating otherwise.  Nonetheless, Wisk falsely represented to the marketplace—indeed to the world—through its blog posts and press release that Archer stole trade secrets, is infringing Wisk's patents, and is under criminal investigation for the anticompetitive purpose of causing harm to Archer's business by, among other things, interfering with Archer's contracts.

70.     Wisk's tortious conduct has caused Archer considerable damage, including but not limited to loss of an employment contract and additional costs and burdens associated with enjoyment of the ACIC contract.

71.     In addition to the damages already suffered, Wisk's ongoing tortious conduct continues to cause Archer harm in an amount to be proven at trial.

## Second Counterclaim

(INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

72.     Archer incorporates Paragraphs 1–71 of the Counterclaims as though fully set forth herein.

73.     Archer was in economic relationships with potential investors, lenders, and employees that would have resulted in economic benefits to Archer.

74.     Wisk knew of these economic relationships, or in the case of potential employee hires, knew on information and belief that Archer was hiring and therefore likely would have pending or

prospective employee contracts.  Nonetheless, Wisk falsely represented to the marketplace—indeed to the world—through its blog posts and press release that Archer stole intellectual property, is infringing Wisk's patents, and is under criminal investigation for the anticompetitive purpose of causing harm to Archer's reputation and business by, among other things, interfering with Archer's prospective economic benefits.

75.     By falsely and unfairly accusing Archer of misconduct and making misleading and false claims intended to obscure the issues for industry outsiders, Wisk intended to disrupt (or, at the very least, failed to act with reasonable care in whether it would disrupt) the economic relationships with potential investors, lenders, and employees.  Wisk also knew that (or, at the very least, recklessly disregarded whether) disruption of these relationships was certain or substantially certain to occur.  The relationships, as a result, were disrupted.

76.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, not infringed any Wisk patents, and is not under criminal investigation, and had no reasonable basis for stating otherwise.  Wisk's false and reckless representations in its blog posts and press release that Wisk knew or should have known were false or misleading were made for the purpose of causing harm to Archer's business.

77.     Wisk's tortious conduct and unfair business practices have caused considerable damage to Archer by interfering with potential investors, potential lenders, and potential employee relationships, including but not limited to lost actual and potential investors, loans, and lost recruits, in addition to the damage caused to Wisk's reputation and goodwill.

78.     In addition to the damages already suffered, Wisk's ongoing tortious conduct continues to cause Archer harm in an amount to be proven at trial.

**Third Counterclaim**

(DEFAMATION)

79.     Archer incorporates Paragraphs 1–78 of the Counterclaims as though fully set forth herein.

80.     On April 6, 2021, Wisk published a statement on its website that Archer is using "stolen Wisk technology" and "infringing our patents."

81.     That statement is false and defamatory, and Wisk knew or recklessly disregarded the truth in issuing it.

82.     On April 6, 2021, Wisk published a statement on its website that Archer's computer-generated image somehow "indicates Archer's use of more detailed design features, including features related to aircraft propulsion, power management, avionics, flight control, and manufacturing methodology."

83.     That statement is false and defamatory, and Wisk knew or recklessly disregarded the truth in issuing it.

84.     On April 6, 2021, Wisk published a statement on its website that the similarity between the aircraft design in Wisk's patent application and the aircraft design in Archer's investor materials "could not have been a coincidence."

85.     That statement is false and defamatory, and Wisk knew or recklessly disregarded the truth in issuing it.

86.     On April 6, 2021, Wisk published a statement on its website that it is "virtually impossible" for Archer to have made the progress it has in its aircraft design in the amount of time in which it has achieved that progress.

87.     That statement is false and defamatory, and Wisk knew or recklessly disregarded the truth in issuing it.

88.     On May 19, 2021, Wisk published a statement on its website that the FBI and U.S. Department of Justice are conducting a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property."

89.     That statement is false and defamatory, and Wisk knew or recklessly disregarded the truth in issuing it.

90.     The above statements are defamatory on their face because they tend to suggest—or outright claim—that Archer engaged in unlawful conduct and/or is the subject of a criminal investigation.

91.     Individually and collectively, the above statements have injured Archer's reputation. In particular, Archer's has been impaired in its ability to recruit new engineers to join the company and also will be impaired in its ability to raise additional funding for the company.

### Fourth Counterclaim

(UNFAIR COMPETITION—CALIF. BUSINESS & PROFESSIONS CODE § 17200)

92.     Archer incorporates Paragraphs 1–91 of the Counterclaims as though fully set forth herein.

93.     The acts and conduct of Wisk as alleged above constitute methods of unlawful or unfair business practices as defined by California Business & Professions Code Section 17200.

94.     Wisk's acts or practices are unlawful in violation of Section 17200, as described in Counterclaims 1 and 2, above.

95.     Wisk's acts or practices are unfair in violation of Section 17200 because they are unlawful, unfair, and/or fraudulent as alleged here, and significantly threaten and harm competition at least in the following aspects:  Archer has lost employees and has been forced to divert substantial resources to fight the false statements Wisk has made in its blog posts and press release regarding Archer's use of Wisk's trade secrets and patents, and Archer's contractual relationships have been disrupted and made more burdensome.  The severity of harm to Archer resulting from Wisk's unfair conduct outweighs any public utility or Wisk's justification for engaging in those acts or practices.

96.     Wisk knew or should have known that Archer has not misappropriated Wisk's trade secrets, not infringed any Wisk patents, and is not under criminal investigation.  Wisk has no reasonable basis for stating otherwise.  Wisk's false and reckless representations in its blog posts and press release that it knew or should have known were false and misleading were for the purpose of causing harm to Archer's business.

97.     Wisk's tortious behavior has caused Archer considerable damage, including lost employees, potential investors, potential lending relationships, and lost recruits.

98.     Archer has been harmed and is continuing to be harmed as a result of Wisk's unlawful or unfair acts.

### Fifth Counterclaim

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '036 PATENT)

99.     Archer incorporates Paragraphs 1–98 of the Counterclaims as though fully set forth herein.

100.     A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 10,364,036, or '036 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

101.     Archer denies infringement of any valid and enforceable claim of the '036 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '036 Patent.

102.     Each asserted claim of the '036 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

103.     A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '036 Patent.

104.     Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '036 Patent.

105.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '036 Patent are invalid.

106.   Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '036 Patent.

**Sixth Counterclaim**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '833 PATENT)

107.   Archer incorporates Paragraphs 1–106 of the Counterclaims as though fully set forth herein.

108.   A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 9,764,833 or '833 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

109.   Archer denies infringement of any valid and enforceable claim of the '833 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '833 Patent.

110.   Each asserted claim of the '833 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

111.   A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '833 Patent.

112.   Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '833 Patent.

Gibson, Dunn & Crutcher LLP

113.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '833 Patent are invalid.

114.     Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '833 Patent.

## **Seventh Counterclaim**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '033 PATENT)

115.     Archer incorporates Paragraphs 1–114 of the Counterclaims as though fully set forth herein.

116.     A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 10,110,033 or '033 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

117.     Archer denies infringement of any valid and enforceable claim of the '033 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '033 Patent.

118.     Each asserted claim of the '033 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

119.     A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '033 Patent.

120.     Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly,

indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '033 Patent.

121.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '033 Patent are invalid.

122.    Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '033 Patent.

**<u>Eighth Counterclaim</u>**

(DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF THE '328 PATENT)

123.    Archer incorporates Paragraphs 1–122 of the Counterclaims as though fully set forth herein.

124.    A definite and concrete, real and substantial, justiciable, and continuing case or controversy exists between Archer and Wisk regarding, inter alia, the noninfringement of any valid and enforceable claim of the U.S. Patent No. 10, 333,328 or the '328 Patent with respect to the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing.  This controversy is sufficiently immediate and real to warrant the issuance of Declaratory Judgment.

125.    Archer denies infringement of any valid and enforceable claim of the '328 Patent and alleges that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '328 Patent.

126.    Each asserted claim of the '328 Patent is invalid for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 132.

127.    A judicial declaration is necessary and appropriate so that Archer may ascertain its rights regarding the '328 Patent.

128.    Archer is entitled to a judicial declaration that the manufacture, use, sale, offer for sale, or importation of the aircraft that Archer is developing has not infringed, does not infringe, and

would not, if manufactured, used, sold, offered for sale, or imported, infringe, either directly, indirectly, or contributorily, and would not induce infringement of, any valid and enforceable claim of the '328 Patent.

129.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Archer requests the Court's declaration that the claims of the '328 Patent are invalid.

130.    Accordingly, Archer seeks a judgment declaring that it does not infringe, and has not infringed, directly or indirectly, contributorily or by inducement, any valid claim of the '328 Patent.

## DEMAND FOR JURY TRIAL

131.    Archer demands a jury trial.

## PRAYER FOR RELIEF

132.    An award of damages to Archer;

    a.    Injunctive relief to enjoin Wisk from continuing to interfere with contractual relations and prospective economic advantage;

    b.    Restitution under Section 17200 and an injunction to enjoin Wisk from continuing its unlawful and unfair practices;

    c.    An order awarding Archer compensation for any and all damages, injury, or harm;

    d.    An order directing Wisk to pay full restitution and/or disgorgement of all profits and benefits that may have been obtained as a result of its wrongful conduct;

    e.    An order awarding Archer treble and/or increased damages resulting from Wisk's willful and intentional conduct;

    f.    An order awarding Archer its costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure;

    g.    Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Archer its costs and reasonable attorney fees; and

133.    An order awarding Archer such further relief as the Court may deem appropriate under the circumstances.

DATED:        SEPTEMBER 7, 2021        GIBSON DUNN & CRUTCHER, LLP


                                       BY:     /s/ Josh A. Krevitt
                                               Josh A. Krevitt

                                               Attorney for Defendant
                                               and Counterclaimant
                                               ARCHER AVIATION INC.

Gibson, Dunn &
Crutcher LLP