October 18, 2021

The Honorable Donna M. Ryu, Magistrate Judge of the Northern District of California

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO

Dear Magistrate Judge Ryu,

Plaintiff Wisk Aero LLC ("Wisk") and Defendant Archer Aviation Inc. ("Archer") respectfully submit this joint letter brief pursuant to the Court's Standing Order. The parties exchanged extensive correspondence and held Zoom meet and confers on Sept. 29 and Oct. 11, 2021.

The relevant case management deadlines are as follows. Wisk's opening claim construction brief is due January 6, 2022; Archer's responsive claim construction brief is due January 20, 2022; Wisk's reply claim construction brief is due February 3, 2022; the claim construction hearing is set for February 22, 2022; fact discovery closes June 24, 2022; expert discovery closes September 2, 2022; the hearing on dispositive motions is set for October 26, 2022; and the pretrial conference and trial are set for December 19, 2022 and January 30, 2023, respectively.

## Issue 1: Archer's Relevance Objections

**Wisk's Statement**. The Court should overrule Archer's new round of previously undisclosed "relevance" objections to 70 of Wisk's RFPs. Not only did these objections appear *two months* after Archer's original responses were due; they were asserted *only* after meet-and-confer, briefing, and resolution of Archer's original objection that Wisk's 2019.210 statement was insufficient.

It is well established that a party waives all objections—and particularly relevance objections—that are not included in its initial discovery responses. *See, e.g. Schwartz v. Bai Brands LLC*, 2020 WL 6526364, at *3 (C.D. Cal. July 21, 2020) ("Plaintiff waived any relevancy objection by failing to include it in his original discovery responses."); *Johnson v. Ameriprise Fin.*, 2008 WL 11417641, at *1 (N.D. Cal. Aug. 19, 2008) (quoting *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409-10 (C.D. Cal. 2005)); *see also Tamburri v. SunTrust Mortg. Inc.*, 2013 WL 1616106, at *5 (N.D. Cal. Apr. 15, 2013) (Ryu, Mag.). Archer attempts to distinguish these cases, but cites *no contrary authority*; Archer's only case, *Brown v. Stroud*, 2010 WL 3339524 (N.D. Cal. Aug. 24, 2010), examined a party who (i) moved for a protective order and (ii) identified "non-frivolous grounds" to challenge the court's jurisdiction—two issues not present here. The reason for Archer's lack of apposite caselaw is simple: objecting litigants must provide prompt notice of their objections. Otherwise, parties could "stage" their objections, delaying resolution indefinitely.

Wisk served its first sets of discovery requests on June 15, 2021. On July 17, Archer served responses that objected to 8 out of 10 interrogatories and 101 out 107 document requests on the basis of California Civil Procedure Code § 2019.210. *See* Dkt. 117 at 7. *Archer's July 17 discovery responses did not assert any relevance objections, or state that it was limiting its responses on such grounds.* Archer presented its 2019.210 objection to the Court on June 16, 2021 (*see* Dkt. 50) and in the interim refused to produce basic, non-technical discovery unconnected to the asserted trade secrets. As an example, Archer refused to produce its corporate organization charts (Wisk RFP Nos. 1 and 2) on the basis of its 2019.210 objection. Archer's withholding of documents not only prejudiced Wisk by delaying discovery; it was directly contrary to established law holding that "[s]ection 2019.210 only supports a stay of discovery relating to the trade secrets." *Loop AI Labs Inc v. Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (Ryu, Mag.). On August 24, Judge Orrick overruled Archer's 2019.210 objection. *See* Dkt. 133 at 18-22. But, even then, Archer delayed an additional three weeks before serving "amended" discovery responses on September 13, which asserted brand-new relevance objections to 70 of Wisk's RFPs.

Archer's amended responses objected to Wisk's Request Nos. 3, 4, 7, 10, 11, 18, 19, 21, 22, 23, 25, 25, 27, 30, 33, 36, 39, 45, 51, 72, 74, 76, 77, 87, 93, 95, 96, and 98, claiming that documents created after the complaint are not relevant; objected to Wisk's Request Nos. 3, 8, 26, 29, 32, 35, 38, 43, 44, 45, 46, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 69, 70, 71, 72, 73, 74, 75, 78, 79, 80, 81, 86, and 89 by claiming only documents related to Archer's "Maker" aircraft are relevant (not other aircraft); and refused to provide any response to Request Nos. 8, 16, 25, 26, 28, 29, 31, 32, 34, 35, 37, 38, 40, 41, 43, 44, 45, 46, 47, 50, 52, 53, 54, 55, 56, 60, 61, 62, 63, 66, 69, 71, 79, and 94, by arguing those Requests needed to be narrowed "to a set of definable documents that are actually tethered to the [IP] at issue in this litigation."

There is no reason why Archer could not have asserted its "relevance" objections with its initial responses on July 17. Nothing in 2019.210 permits a party to hold back other objections while the Court considers the adequacy of a trade secret disclosure or otherwise deems it a "threshold objection"; nor does it provide *three weeks* to respond after a 2019.210 objection is overruled. By staging objections, Archer deprived Wisk of months during which the parties could have attempted to resolve these objections. Fact discovery in this case closes just eight months from now; any delay is prejudicial; and it is clear that Archer staged its objections to slow production.

The Court should not be misled by Archer's claims that it has offered meaningful compromises. Wisk conferred multiple times, trying to cut through the thicket of Archer's newly asserted objections, but Archer continues to limit or withhold documents in response to the vast majority of the RFPs at issue on grounds that should have been addressed *months* ago. Archer's statements about the parties' relative document productions are also misleading—Wisk's expedited discovery productions were much larger than Archer's, and Wisk has produced 10 times the number of documents Archer implies. Archer has also inflated its production by producing at least *4000 duplicate documents* (at a 95% match). This is not a case where a *pro se* litigant inadvertently served its responses a few days late. Archer alleges it is a billion-dollar company (Dkt. 154 ¶ 4), and it is represented by a well-known law firm with 1500+ lawyers. The Court should hold Archer's belated objections waived, and order full responses to Wisk's first set of discovery.

**Archer's Statement.**   The Court recently cautioned the parties to avoid litigating discovery disputes that are resolvable by conferring and compromising.  Dkt. 159.  Consistent with that admonition, Archer has made strenuous efforts to compromise so the Court would not be burdened with these issues; indeed, Archer voluntarily withdrew most of the objections that Wisk now claims were waived.  Wisk's waiver arguments are not only meritless, they represent a continued refusal to reach reasonable compromises on discovery issues.  Archer has engaged meaningfully in discovery at every turn.  Archer *voluntarily* engaged in expedited discovery as part of the preliminary injunction motion, made its witnesses available for 11 depositions (several witnesses more than once), and scoured the company for evidence of *any* Wisk documents.  Since the July 21 hearing on Wisk's preliminary injunction motion, Archer has produced almost 14,000 documents, while Wisk has produced only 1,084 documents.  Wisk's attempt to paint Archer as seeking discovery delay is as cynical as it is unnecessary.

CCP § 2019.210 provides that in a trade secret action, "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity."  Archer timely asserted this threshold objection, among others, to the document requests at issue, while simultaneously moving to strike Wisk's Section 2019.210 Statement for lack of particularity.  Dkt. 50.  The effect of Archer's motion to strike, had it been granted, would have been identical to the granting of a motion for a protective order given the plain language of Section 2019.210.  A core purpose of Section 2019.210 is to "provide reasonable guidance in ascertaining the scope of appropriate discovery." *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-CV-253-WHO, 2018 WL 2117424, at *4 (N.D. Cal. May 8, 2018) (alteration and quotation marks omitted).  That purpose would be severely compromised if a trade secret defendant, while awaiting a decision on a motion to strike the plaintiff's Section 2019.210 Statement, was required to undertake the burden of responding to discovery requests that are not proper before the plaintiff

identified with reasonable particularity the trade secrets at issue. Here, that burden would have been massive, as Wisk had served 108 RFPs (now up to 238 and counting) and dozens of other discovery requests. Thus, Archer asserted, among other specific objections, a good-faith objection that Wisk had "not identified [its trade secrets] with reasonable particularity, and therefore is not permitted to commence any discovery relating to its trade secret misappropriation claims and any other claims that are factually dependent on Plaintiff's misappropriation allegations." Archer wrote in its initial responses that "[i]f the Court ultimately determines that Plaintiff has identified its alleged trade secrets with reasonable particularity, . . . Archer will revise its response to address the appropriate scope of discovery." On August 24, 2021, the Court denied Archer's motion to strike. *See* Dkt. 133. As promised, Archer then served the revised objections at issue here.

Wisk cites no case—not one—to support its contention that a party waives all other objections by making a timely Section 2019.210 objection *first*. That this manufactured dispute is avoidable is clear, as Judge Orrick never remotely suggested that Archer's motion to strike Wisk's Section 2019.210 statement was in any way improper. *See id.* Regardless, Wisk's hand-waving assertions of prejudice based on incredible claims of "delay" cannot justify Wisk's effort to have this Court make new law affecting a core purpose of an important state statute—namely, whether discovery can move forward at all without a proper Section 2019.210 statement.

The cases Wisk cites do not support waiver under these circumstances. Three involved a party raising its objections for the first time in opposition to a motion to compel. *See Schwartz*, 2020 WL 6526364, at *3; *Tamburri*, 2013 WL 1616106, at *5; *Johnson*, 2008 WL 11417641, at *1. That plainly is not the case here—Archer made its Section 2019.210 objection on July 15, 2021 and served its more particularized objections on September 13, 2021. The remaining case—*Loop AI Labs*—does not relate to waiver at all; it stands merely for the proposition that "Section 2019.210 only supports a stay of discovery relating to the trade secrets." 2015 WL 9269758, at *4. Wisk also cites *nothing* to support its claim that waiver may be inferred from Archer's purported 20-day delay in amending its responses following the District Court's order on Archer's motion to strike.

To the extent this Court disagrees with Archer's position and finds the amended objections untimely, it still may excuse the failure to timely object for good cause. *See Brown v. Stroud*, No. 08-CV-2348-VRW DMR, 2010 WL 3339524, at *2 (N.D. Cal. Aug. 24, 2010). The pendency of Archer's motion to strike qualifies as good cause, where even if Archer had raised all objections to the discovery requests when first served, there would have been no basis for the parties to meet and confer at that time, because *no* trade secret discovery could take place prior to resolution of the motion to strike.

**Issue 2: Archer's Possession, Custody, and Control Objections**

**Wisk's Statement**. Archer refuses to search for documents located on devices (*e.g.* laptops, phones, tablets) and online accounts (email, cloud storage, etc.) owned by its employees, even if (i) Archer has a contractual right to search those sources, (ii) the employees use those sources in the course of working for Archer, and/or (iii) Archer has previously used the threat of adverse employment action to "control" those same sources. Archer's position is contrary to law, evades its obligation to search for additional Wisk documents on the many former Wisk employee sources that have not been searched, and is apparently asserted so that Archer may claim it "does not have" the stolen Wisk documents that have already been produced from a limited number of sources. Nor is this "the third time" this issue has been addressed; in fact—and contrary to Archer's suggestion—Judge Orrick *specifically referred Archer's "control" objection to the assigned magistrate*. *See* August 11, 2021, Hg. Tr. at 43:16-47:11 (concluding "I am going to refer this to a magistrate judge for discovery.").

"Control is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). A contractual right to review documents demonstrates "control" over those documents. *E.g. Lofton v. Verizon Wireless (Vaw) LLC*, 2014 WL 10965261, at *1 (N.D. Cal. Nov. 25, 2014). Here, Archer's employee contracts specifically grant Archer "the

right to review *any materials* on [an employee's] computer and other devices that connect to [Archer's] network." *See* Archer-NDCA-00010782 (emphasis added). In addition to demonstrating control, Archer's contracts also preclude any conflict with the California Constitution or Labor Code § 980. *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 452 (2002) (a contract permitting a search "defeats [any] claim [the employee] had a reasonable expectation of privacy"). That is why courts routinely permit searches of employee personal devices. *E.g. Wachtell v. Cap. One Fin. Corp.*, 2006 WL 8446017, at *10 (D. Idaho 2006) (ordering search of personal devices). Archer attempts to avoid its own contracts by selectively quoting *a different section of the document*—if requested, Wisk will file the contract on the docket, so that the Court may examine the whole agreement.

Similarly, "[n]umerous courts have found that corporations have control over their officers and employees and … may be required to produce documents in their possession." *Miniace v. Pac. Martime Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006). For example, where an employee uses a "personal" device or account to conduct corporate business, then the corporation must search that device or account. *E.g. Tradeshift, Inc. v. BuyerQuest, Inc.*, 2021 WL 1586283, at *2 (N.D. Cal. Apr. 23, 2021) (company was required to search personal email account used to conduct company business); *Proofpoint, Inc. et al v. Vade Secure*, Incorporated et al, Case No. 3:19-cv-04238-MMC (N.D. Cal.), Dkt. 566 at 14 (corporation was required to produce source code stored on employee's personal computer). That is the case here: Archer requires its employees to use personal cell phones for company business. *E.g.* Dkt. 92-64; *see also* Dkt. 117 at 3.

Indeed, Archer has conceded that it has control of *all* document repositories within the possession of its employees. During the parties' meet and confer, Archer made clear that it had the authority to, and *would* in fact, search for and produce non-duplicative *Archer* documents "wherever they lie"—even if on an employee's personal devices. But Archer will *not* produce stolen Wisk documents even if those documents reside on the *very same device*. Archer should not be permitted to bury its head in the sand when it comes to stolen Wisk documents. There is no legal, practical or rational reason to force Wisk to subpoena dozens of Archer employees over whom Archer clearly has control.

In fact, Archer employees testified that Archer required them to turn over personal devices for imaging *as a condition of employment*. Muniz Depo. Tr. 98:12-100:5.[1] If a company can require an employee to turn over a device as a condition of employment, then it controls that device. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2123560, at *14 n. 9 (N.D. Cal. May 15, 2017). The Court should overrule Archer's PCC objections and order that Archer's obligations in this case extend to employee devices and accounts over which it has legal and practical control.

**Archer's Statement.** This is the third time Wisk has implored the Court to require Archer to produce documents that are not Archer documents and are not maintained on Archer's servers. Judge Orrick did not accept Wisk's argument on either of the two prior occasions, and there is no reason for this Court to reexamine the issue, much less come to a different conclusion. Wisk first raised this issue in connection with expedited discovery in a joint discovery letter to Judge Orrick on June 8, 2021. *See* Dkt. 36 at 3, 5. Judge Orrick did not grant Wisk the relief it sought. *See* Dkt. 37. Wisk now complains that Judge Orrick did not directly address the issue, but Wisk made no motion for reconsideration at the time. Instead, Wisk served Rule 45 subpoenas on four Archer employees who previously worked at Wisk, and Wisk successfully obtained documents from all four employees. Two months later, during regular discovery, Wisk again raised the broad issue during the case management conference that followed the hearing on Archer's motion to dismiss. Archer made clear that it would (again) facilitate service of subpoenas. Judge Orrick proposed that Wisk "provide subpoenas for each of [its] former employees for that information; that service would be completed by Archer." Hr'g Tr. 44:9–16 (Aug. 11, 2021). Now, over two months after Judge Orrick's practical suggestion on how to proceed—and during that time having served no Rule 45

---

[1] As with its employment contracts, Archer also attempts to mislead the court about the contents of Mr. Muniz's deposition; Wisk will gladly submit the transcript to the Court upon request.

subpoenas on Archer employees—Wisk raises the exact same issue (but with respect to more than a dozen other former Wisk employees) in the hope that this Court will reach a different conclusion.

Wisk gives the Court no good reason to review this issue a third time. Regardless, the law is clear that Archer cannot be compelled to produce non-Archer documents that do not reside on Archer servers. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2015 WL 8482256, at *4 (N.D. Cal. Dec. 10, 2015) (finding no "authority under which [an employer] could force employees to turn [their devices] over").[2] The requested documents, to the extent any even exist on the personal devices of the former Wisk employees, are within the possession, custody, and control of those employees, not Archer. Any such non-privileged documents are accessible to Wisk through Rule 45 subpoenas directed to those individuals, which would afford the subpoenaed individuals an opportunity to be heard and, if warranted, object to the subpoenas.

Instead, Wisk has taken an approach that is unsupported by case law[3] and fundamentally at odds with employees' right to privacy under the California Constitution. Wisk seeks to have this Court order Archer to demand of more than a dozen employees hand over their personal devices and access to their personal accounts. The employees' compliance with such a demand would expose to Archer's inspection the employees' personal data, ranging from photographs of their children, to privileged communications, to personal financial records. And Wisk argues that Archer should thereafter be required to produce any Wisk-originated documents located after its invasive search, notwithstanding that such documents, if any exist, do not belong to Archer and do not relate to the employees' work. Archer has serious concerns about the legality of such a demand. *See* Cal. Labor Code § 980. Wisk misconstrues Archer's employment agreements in an attempt to circumvent the employees' legitimate privacy concerns and Archer's effort to avoid invading their privacy. The agreement at issue states in relevant part: "[I]f you have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare, or transmit any company information, including, but not limited to, Confidential Information, *you agree to make a prompt and reasonable search for such information in good faith* ...." Archer-NDCA-00010782 (emphasis added). Thus, Archer has a conditional right to require its employees to "make a prompt and reasonable search for" confidential ***Archer*** documents. It does not have a legal right to inspect an employee's personal device for *any* reason it chooses.

Wisk's misleading citation to Mr. Muniz's testimony offers no support for its position. Mr. Muniz testified that the onboarding process for employees does *not* require them to turn over their personal devices to Archer. Muniz Dep. Tr. 101:24–102:16. Mr. Muniz voluntarily gave his personal devices to independent counsel, not to Archer. *Id.* at 98:12–100:9.

Nothing on this issue has changed except the identities of the employees in question and the number of employees at issue. Wisk's refusal to follow Judge Orrick's suggestion reveals that Wisk's intent is not to obtain the documents in question (if they exist), but to do so in a manner that will allow Wisk to characterize those documents as "Archer documents." That is not a legitimate basis for relitigating this discovery issue.

---

[2] Wisk's cases are inapposite. Neither *Miniace* nor *Tradeshift* discussed employers' control over their employees' *devices*, and both involved the production of work-related documents. And *Proofpoint* involved sprawling allegations of evidence spoliation not present here, and in any event the order that Wisk cites is a report and recommendation that the district court largely rejected. *See* Pls.' Renewed Mot., *Proofpoint*, No. 19-CV-4238 (Aug. 12, 2021) (Dkt. 784).

[3] The *TBG Ins.* case Wisk cites for the proposition that Archer's contracts waive its employees' constitutional rights involved a policy that barred employees from using an *employer-owned* computer for personal use. That case could not be more off point.

DATED: October 18, 2021

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By <u>/s/ Yury Kapgan</u>
Yury Kapgan
Robert M. Schwartz
Michael T. Zeller
Diane Cafferata
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By <u>/s/ Josh A. Krevitt</u>
Josh A. Krevitt
Daniel J. Thomasch
Wayne Barsky
Joshua H. Lerner
Michael H. Dore
Diana M. Feinstein
*Attorneys for Defendant Archer Aviation Inc.*

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

                                                                                                  */s/ Yury Kapgan*