QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WISK AERO LLC,<br><br>           Plaintiff,<br><br>    vs.<br><br>ARCHER AVIATION INC.,<br><br>           Defendant. | CASE NO. 3:21-cv-02450-WHO<br><br>**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS IN REGARD TO ELECTRO.AERO PTY LTD. (AUSTRALIA)** |

GREETINGS:

In conformity with Article 3 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), Federal Rule of Civil Procedure 28(b), and 28 U.S.C.A. 1781(b), the undersigned authority respectfully has the honor to submit the following:

| | |
|---|---|
| 1. Sender | The Honorable Judge William H. Orrick for the Northern District of California, San Francisco Division<br>San Francisco Courthouse<br>Courtroom 2 – 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |
| 2. Central Authority of the Requested State | In compliance with provisions of the Code of Civil Procedure of the requested state, the letter of request may be addressed to:<br><br>Private International Law Section<br>Australian Government<br>Attorney-General's Department<br>3-5 National Circuit<br>BARTON ACT 2600<br>Australia |
| 3. Person to whom the executed request is to be returned | The executed request Court; representatives of the parties as indicated below; the witnesses from whom evidence is requested as indicated below; such other person(s) that you deem proper. |
| 4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request | April 14, 2022 |

| 5. | |
|---|---|
| a. Requesting Judicial Authority (Article 3, a) | The Honorable Judge William H. Orrick for the Northern District of California, San Francisco Division<br>San Francisco Courthouse<br>Courtroom 2 – 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |
| b. To the competent Authority of (Article 3, a) | Australia |
| c. Names of the case and any identifying number | *Wisk Aero LLC v. Archer Aviation Inc.*<br><br>Case No. 3:21-cv-02450, United States District Court for the Northern District of California |

6. Names and addresses of the parties and their representative (including representatives in the requested State) (Article 3, b)

| a. Plaintiff | Wisk Aero LLC ("Wisk") |
|---|---|
| Representatives | Wisk Aero LLC is represented by:<br><br>Yury Kapgan<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Fax: (213) 443-3100<br>Email: yurykapgan@quinnemanuel.com<br><br>Steven Geoffrey Madison |

Quinn Emanuel Urquhart and Sullivan LLP
865 S Figueroa St., 10th Floor
Los Angeles, CA 90017
213-443-3000
Fax: 213-443-3100
Email: stevemadison@quinnemanuel.com

Robert Michael Schwartz
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
213-443-3675
Fax: 213-443-3100
Email: robertschwartz@quinnemanuel.com

Michael Thomas Zeller
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017
213-443-3180
Fax: 213-443-3100
Email: michaelzeller@quinnemanuel.com

Patrick Thomas Schmidt
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa, St.
Los Angeles, CA 90017
213-443-3000
Email: patrickschmidt@quinnemanuel.com

Diane Cafferata
Quinn Emanuel Urquhart and Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

| | |
|---|---|
| | 213-443-3666 |
| | Fax: 213-443-3100 |
| | Email: dianecafferata@quinnemanuel.com |
| | |
| | Michael Francis LaFond |
| | Quinn Emanuel Urquhart & Sullivan, LLP |
| | 555 Twin Dolphin Drive, 5th Floor |
| | Redwood City, CA 94043 |
| | 650-801-5000 |
| | Fax: 650-801-5100 |
| | Email: michaellafond@quinnemanuel.com |
| | |
| | Paul D Evans |
| | Quinn Emanuel Urquhart & Sullivan, LLP |
| | Level 41, 108 St Georges Terrace |
| | Perth  WA  6000 |
| | Australia |
| | +61 8 6382 3010 |
| | Email: pauldevans@quinnemanuel.com |
| b. Defendant | Archer Aviation Inc. ("Archer") |
| Representatives | Archer Aviation Inc. is represented by: |
| | |
| | Benjamin Wagner |
| | Gibson Dunn & Crutcher LLP |
| | 1881 Page Mill Road |
| | Palo Alto, CA 94304 |
| | 650-849-5395 |
| | Email: bwagner@gibsondunn.com |
| | |
| | Josh A. Krevitt |
| | Gibson, Dunn & Crutcher LLP |
| | 1881 Page Mill Road |
| | Palo Alto, CA 94304-1211 |
| | 650-849-5300 |

Fax: 650-849-5333

Email: jkrevitt@gibsondunn.com

Joshua H. Lerner

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road

Palo Alto, CA 94304-1211

650-849-5300

Fax: 650-849-5333

Email: jlerner@gibsondunn.com

Orin Snyder

Gibson Dunn & Crutcher, LLP

200 Park Avenue

New York, NY 10166

(212) 351-2400

Email: osnyder@gibsondunn.com

Daniel J Thomasch

Gibson Dunn Crutcher LLP

200 Park Avenue

New York, NY 10166

212-351-3800

Fax: 212-351-6200

Email: dthomasch@gibsondunn.com

Diana Michelle Feinstein

Gibson, Dunn & Crutcher LLP

333 S. Grand Avenue

Los Angeles, CA 90071

213-229-7351

Email: dfeinstein@gibsondunn.com

Frank P Cote

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive

Irvine, CA 92612

949-451-3800

Fax: 949-451-4220

Email: fcote@gibsondunn.com

Kory J Hines

Gibson, Dunn & Crutcher LLP

200 Park Avenue

New York, NY 10166

212-351-2453

Email: KHines@gibsondunn.com

Michael H. Dore

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue

Los Angeles, CA 90071

213-229-7085

Fax: 213-229-7520

Email: mdore@gibsondunn.com

Stuart Mattison Rosenberg

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road

Palo Alto, CA 94304

650-849-5389

Email: srosenberg@gibsondunn.com

Wayne M. Barsky

Gibson, Dunn & Crutcher, LLP

2029 Century Park East, Suite 4000

Los Angeles, CA 90067-3026

310-552-8500

Fax: 310-551-8741

Email: wbarsky@gibsondunn.com

| c. Other parties | N/A |
|---|---|
| Representatives | N/A |
| 7. | |
| a. Nature of the proceedings (Article 3, c) | Civil action alleging misappropriation of trade secrets under the laws of the United States and under the laws of the State of California, and alleging patent infringement under the patent laws of the United States |
| b. Summary of complaint | Discovery sought in this Letter of Request is relevant in Case No. 3:21-cv-02450.  Wisk contends that Archer has misappropriated its trade secrets and also infringed multiple Wisk patents, including  U.S. Patent Nos. 10,364,036 ("the '036 patent"), 9,764,833 ("the '833 patent"), 10,110,033 ("the '033 patent"), 10,333,328 ("the '328 patent"), 10,370,099 ("the '099 patent"), and 11,344,441 ("the '441 patent") (collectively, the Asserted Patents"). |
| c. Summary of defense and counterclaim | In defense against Wisk's claims, Archer asserts, *inter alia*, that it does not infringe any of the asserted patents and has not misappropriated any trade secrets. |
| d. Other necessary information or documents | Electro.Aero Pty Ltd.'s ("Electro.Aero") current address is:<br><br>Electro.Aero Pty Ltd<br>4B Maule Road |

| | |
|---|---|
| | JANDAKOT  WA 6164<br><br>info@electro.aero<br><br>A Protective Order governing the production and disclosure of confidential information in connection with this legal proceeding is attached as **Exhibit C**. Confidential documents or testimony provided in this proceeding would be protected pursuant to the terms of the Protective Order. |
| 8. | |
| a. Evidence to be obtained or other judicial act to be performed (Article 3, d) | In order to present that the '033 patent and the '328 patent are infringed valid, and enforceable, and to determine any alleged damages, Wisk seeks certain documents and source code from Electro.Aero for use at trial relevant to the charging systems Electro.Aero built for Archer's eVTOL aircraft, including the Electro Management System that Electro.Aero built for Archer's Maker aircraft.<br><br>Attached as **Exhibit A** is a request for production of certain documents for use at trial that Wisk believes are likely to be in the possession, custody, or control of Electro.Aero.<br><br>To further clarify the evidence sought for use at trial, attached as **Exhibit B** is an outline of the topics and issues about which counsel for Wisk intend to inquire of Electro.Aero. |

| b. Purpose of the evidence or judicial act sought | The purpose of the judicial act is to elicit evidence from Electro.Aero for use at trial. Two of Wisk's patents—the '033 and '328 patents—relate to an improved battery system and an improved charging algorithm that uses battery metrics (such as voltage, current, and temperature) to control charging. Electro.Aero provides Archer with portions of the battery system, including the charger, that are built to Archer's requirements and specifications.  Wisk has attempted to obtain detailed technical documents regarding the operation of the Archer charger provided by Electro.Aero from Archer, but Archer has claimed that this information (including the manner in which metrics are used in the charging system) are in the possession, custody and control of Electro.Aero, not Archer.<br><br>Thus, with respect to Wisk's '033 and '328 patents, Electro.Aero has information and knowledge relating to, among other things: how the Electro Management System works in Archer Aviation Inc.'s eVTOL aircraft, including the charging algorithm that is used for the battery system in Archer's eVTOL aircraft. |
|---|---|
| 9. Identity and address of any person to be examined (Article 3, e) | Electro.Aero Pty Ltd<br><br>Jandakot Airport<br>Perth, Western Australia<br><br>Joshua Nathaniel Portlock |

| | |
|---|---|
| | 28 Egina Street, MOUNT HAWTHORN WA 6016<br><br>Or,<br><br>Such other person as may be identified following conferral between the representatives of Wisk and Electro.Aero or their representatives. |
| 10. Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (Article 3, f) | *See* **Exhibit B** |
| 11. Documents or other property to be inspected (Article 3, g) | *See* **Exhibit A** |
| 12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, h) | We respectfully request that the testimony be taken under oath. |
| 13. Special methods or procedure to be followed (e.g., oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (Article 3, i and 9) | This Court respectfully requests that, pursuant to Order 39, Rule 2(1) of the *Rules of the Supreme Court 1971* (WA), Paul D Evans, WA legal practitioner, be granted leave to commence proceedings for an order under section 116 of the *Evidence Act 1906* (WA).<br><br>This Court respectfully requests that Electro.Aero be directed to produce the documents identified in **Exhibit A** electronically or by email to Wisk's representatives. |

This Court respectfully requests that Electro.Aero be directed to produce the documents identified in **Exhibit A** at

Quinn Emanuel Urquhart & Sullivan
Level 41
108 St Georges Terrace
Perth WA 6000
Australia

This Court respectfully requests that the Central Authority direct a representative of Electro.Aero to appear on or before April, 1, 2022.

This Court respectfully requests that attorneys of Wisk and Archer each be permitted to examine and cross-examine a representative of Electro.Aero, and that the witness be directed to answer such questions, relating to matters outlined in attached **Exhibit B**.

This Court respectfully requests that the examination be permitted to be conducted in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure to prevail in the event of a conflict.

This Court respectfully requests that the examination be (partially) conducted via video conference to allow U.S. counsel to join the hearing.

| | This Court respectfully requests that the testimony be video recorded and also transcribed verbatim. |
| --- | --- |
| | This Court respectfully requests that the testimony be taken in English language if the examined person(s) agree, and that, if need be, simultaneous translation be provided. |
| | Costs incurred in relation to the deposition examination (court reporter, video recorder, simultaneous translation) shall be at Wisk's expense. |
| 14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (Article 7) | This Court respectfully requests that you notify this Court; the representatives of the parties as indicated above; the witness from whom evidence is requested as indicated above; and such other person(s) that you deem proper. |
| 15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8) | No judicial personnel of the requesting authority will attend or participate. |
| 16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, b) | Wisk believes that Electro.Aero does not benefit from any privilege and does not endorse the assertion of any such privilege or duty. |
| 17. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by | Wisk will bear the reasonable reimbursable costs associated with this request in accordance with the provisions of the Hague Convention. |

Date of Request: February 18, 2022

Signature and Seal of Requesting Authority:

Hon. William H. Orrick
Judge of the United State District Court
Northern District of California

**EXHIBIT A**

**DEFINITIONS**

Wisk Aero LLC requests the following documents or things be produced.  The following definitions are applicable herein, regardless of whether upper or lower case letters are used:

a. "You," "Your" and "Electro.Aero" means Electro.Aero Pty Ltd ABN 92 602 202 746.

b. "Archer" shall mean Archer Aviation, Inc.

c. "EMS User Manual V2" means "Electro Management System User Manual V2 For Archer Aviation Inc."

d. "Electro Management System" refers to the system for managing aircraft charging described throughout the EMS User Manual V2.

e. "Charging Stage" refers to the operational stage described on page 40 of the EMS User Manual V2 under the heading "5.2.6 Charging Stage."

f. "Max Module Current" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.8 Max Module Current."

g. "Charge Current" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.7 Charge Current."

h. "Max Pack Voltage" refers to the editable setting described on page 27 of the User Manual under the heading "3.6.2.11 Max Pack Voltage."

i. "Max Cell Voltage" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.3 Max Cell Voltage."

j. "Min Cell Voltage" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.2 Min Cell Voltage."

k. "Max Temp settings" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.12 Max Temp."

l. "Idle Stage" refers to the operational stage described on page 38 of the EMS User Manual V2 under the heading "5.2.1 Idle Stage."

m.      "Handshake Stage" refers to the operational stage described on page 38 of the EMS User Manual V2 under the heading "5.2.2 Handshake Stage."

n.      "Identification Stage" refers to the operational stage described on page 39 of the EMS User Manual V2 under the heading "5.2.3 Identification Stage."

o.      "Parameter Setting Stage" refers to the operational stage described on page 39 of the EMS User Manual V2 under the heading "5.2.4 Parameter Setting Stage."

p.      "Pre-charging Stage" refers to the operational stage described on page 40 of the EMS User Manual V2 under the heading "5.2.5 Pre-charging Stage."

q.      "Charge Ended Stage" refers to the operational stage described on page 41 of the EMS User Manual V2 under the heading "5.2.7 Pre-charging Stage."

r.      "State of Charge" refers to the metric described in the EMS User Manual V2 on page 16 under the heading "3.1 Overview Bar," on page 17 under the heading "3.1.6 State of charge icon," on page 18 under the heading "3.3.1.1 Voltage, SoC, and Current information:," on page 20 under the heading "3.4.2 Module overall statistics," and on page 24 under the heading "3.5.2 Time and state of charge section."

s.      The term "electronically stored information" means any documents or information that are stored in electronic form.

t.      The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

u.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside their scope.

v.      The terms "any" and "all" shall be construed as "any and all."

w.      The singular form of any word shall be construed to include the plural, and the plural form of any word shall be construed to include the singular.

## **INSTRUCTIONS**

a.      You are to produce all requested documents in your possession, custody or control.

b.     If you contend that you are not required to produce certain documents called for by these Requests on the grounds of a privilege or protection that you are not prepared to waive, identify each such document and provide the following information:

       (i)     the date and type of the document, the author(s) and all recipients;

       (ii)    information sufficient to identify the privilege or protection that YOU claim permits you to withhold the document;

       (iii)   the title and subject matter of the document;

       (iv)    any additional facts on which you base your claim of privilege or protection; and

       (v)     the identity of the current custodian of the original of the document.

c.     Pursuant documents should be retained and produced in their original form and sequence, including file folders, to the maximum extent feasible.  Alternatively, each document produced in response to any of the Requests below shall be organized and labeled to correspond to the specific Request to which it is responsive.

d.     The documents should be produced in their complete and unaltered form.  All associated metadata and other electronically stored information  relating to a document in electronic form should be produced.  Attachments to documents should not be removed.  The documents should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged non-relevance.  If e-mails are produced that have attachments, the attachments shall be attached when produced.

e.     Documents in electronic form shall be produced in that form, together with all associated metadata.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

User manuals, specifications, requirement documents, drawings, schematics, and flow diagrams for the Electro Management System that Electro.Aero provided to Archer, in Electro.Aero's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 2:**

All drafts or prior versions of the EMS User Manual V2 For Archer Aviation Inc, in Electro.Aero's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 3:**

Charging diagrams prepared by Electro.Aero of the Electro Management System for Archer, in Electro.Aero's possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 4:**

Documents in Electro.Aero's possession, custody, or control that contain a statement describing the metrics (*e.g.*, voltage, current, temperature, or State of Charge) received and monitored in the "Charging Stage" of the Electro Management System for Archer, and the use of those metrics in connection with Max Module Current, Charge Current, Max Pack Voltage, Max Cell Voltage, Min Cell Voltage, and Max Temp settings.

**REQUEST FOR PRODUCTION NO. 5:**

Documents in Electro.Aero's possession, custody, or control that contain a statement describing how batteries, modules, or strings are selected by Electro.Aero for connection to the charging system of the Electro Management System for Archer, including metrics (e.g., voltage, current,  temperature, or State of Charge) that are used in the selection.

**REQUEST FOR PRODUCTION NO. 6:**

Documents in Electro.Aero's possession, custody, or control that contain a statement describing the operation of the "Idle Stage," "Handshake Stage," "Identification Stage," "Parameter Setting Stage," "Pre-charging Stage," "Charging Stage," and "Charge Ended Stage" of the Electro Management System for Archer.

**REQUEST FOR PRODUCTION NO. 7:**

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Source code for the Electro Management System for Archer, including for the "Charging Stage" of the Electro Management System for Archer, in Electro.Aero's possession, custody, or control.

**EXHIBIT B**

**DEFINITIONS**

Wisk Aero LLC designates the matters identified below for examination.  In construing these topics, the following definitions shall apply:

a.      "You," "Your" and "Electro.Aero" means Electro.Aero Pty Ltd ABN 92 602 202 746.

b.      "Archer" shall mean Archer Aviation, Inc.

c.      "Wisk" shall mean Wisk Aero LLC.

d.      "EMS User Manual V2" means "Electro Management System User Manual V2 For Archer Aviation Inc."

e.      "Electro Management System" refers to the system for managing aircraft charging described throughout the EMS User Manual V2.

f.      "Charging Stage" refers to the operational stage described on page 40 of the EMS User Manual V2 under the heading "5.2.6 Charging Stage."

g.      "Max Module Current" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.8 Max Module Current."

h.      "Charge Current" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.7 Charge Current."

i.      "Max Pack Voltage" refers to the editable setting described on page 27 of the User Manual under the heading "3.6.2.11 Max Pack Voltage."

j.      "Max Cell Voltage" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.3 Max Cell Voltage."

k.      "Min Cell Voltage" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.2 Min Cell Voltage."

l.      "Max Temp settings" refers to the editable setting described on page 27 of the EMS User Manual V2 under the heading "3.6.2.12 Max Temp."

m.      "Idle Stage" refers to the operational stage described on page 38 of the EMS User Manual V2 under the heading "5.2.1 Idle Stage."

n.      "Handshake Stage" refers to the operational stage described on page 38 of the EMS User Manual V2 under the heading "5.2.2 Handshake Stage."

o.      "Identification Stage" refers to the operational stage described on page 39 of the EMS User Manual V2 under the heading "5.2.3 Identification Stage."

p.      "Parameter Setting Stage" refers to the operational stage described on page 39 of the EMS User Manual V2 under the heading "5.2.4 Parameter Setting Stage."

q.      "Pre-charging Stage" refers to the operational stage described on page 40 of the EMS User Manual V2 under the heading "5.2.5 Pre-charging Stage."

r.      "Charge Ended Stage" refers to the operational stage described on page 41 of the EMS User Manual V2 under the heading "5.2.7 Pre-charging Stage."

s.      "State of Charge" refers to the metric described in the EMS User Manual V2 on page 16 under the heading "3.1 Overview Bar," on page 17 under the heading "3.1.6 State of charge icon," on page 18 under the heading "3.3.1.1 Voltage, SoC, and Current information:," on page 20 under the heading "3.4.2 Module overall statistics," and on page 24 under the heading "3.5.2 Time and state of charge section."

t.      "Business Records" refers to a record that (1) was made at or near the time by — or from information transmitted by — someone with knowledge, (2) was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit, and (3) making the record was a regular practice of that activity.

u.      The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

v.      The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside their scope.

w.      The terms "any" and "all" shall be construed as "any and all."

x.      The singular form of any word shall be construed to include the plural, and the plural form of any word shall be construed to include the singular.

## DEPOSITION TOPICS

**TOPIC NO. 1:**

Your development of user manuals, specification, requirement documents, drawings, schematics, and flow diagrams for the Electro Management System that Electro.Aero provides to Archer.

**TOPIC NO. 2:**

Your development of the EMS User Manual V2.

**TOPIC NO. 3:**

Your development of charging diagrams for the Electro Management System for Archer.

**TOPIC NO. 4:**

The metrics (*e.g.*, voltage, current, temperature, or State of Charge) received and monitored in the "Charging Stage" of the Electro Management System for Archer, and the use of those metrics in connection with Max Module Current, Charge Current, Max Pack Voltage, Max Cell Voltage, Min Cell Voltage, and Max Temp settings.

**TOPIC NO. 5:**

How batteries, modules, or strings are selected by Electro.Aero for connection to the charging system, including metrics (e.g., voltage, current,  temperature, or State of Charge) that are used in the selection.

**TOPIC NO. 6:**

The operation of the "Idle Stage," "Handshake Stage," "Identification Stage," "Parameter Setting Stage," "Pre-charging Stage," "Charging Stage," and "Charge Ended Stage" in the Electro Management System for Archer.

**TOPIC NO. 7:**

Your development of the source code for the Electro Management System for Archer, including for the "Charging Stage" of the Electro Management System for Archer.

**TOPIC NO. 8:**

The authenticity of any documents produced in response to Wisk's requests for production of documents.

**TOPIC NO. 9:**

That the documents produced in response to Wisk's requests for production of documents are genuine Business Records.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ARCHER AVIATION INC.<br><br>　　　　　　　Defendant. | Case No. 3:21-CV-02450-WHO (DMR)<br><br>STIPULATED PROTECTIVE ORDER<br>　***AS MODIFIED IN SECTION 6.3***<br><br>Judge: Hon. William H. Orrick<br>Magistrate Judge: Hon. Donna M. Ryu |

## 1.　PURPOSES AND LIMITATIONS

　　　　Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. This Order does not confer blanket protections on all disclosures or responses to discovery and the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. As set forth in Section 14.4 below, this Protective Order does not entitle the Parties to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

## 2.　DEFINITIONS

　　　　2.1　Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

　　　　2.2　"CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

　　　　2.3　Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     <u>Designated House Counsel</u>: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.

2.5     <u>Designating Party</u>: a Party or Non-Party that designates information or items produced or disclosed in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.6     <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7     <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8     <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9     <u>"HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items</u>: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.10     <u>House Counsel</u>: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11     <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12   <u>Outside Counsel of Record</u>: attorneys, and their employees and supporting staff working at the direction of such attorneys, who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13   <u>Party</u>: any party to this action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staffs).

2.14   <u>Producing Party</u>: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15   <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., e-discovery services, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16   <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.17   <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party.

## 3.   SCOPE

The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of

confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

**4.    DURATION**

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) entry of final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, post-trial motions, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

**5.    DESIGNATING PROTECTED MATERIAL**

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or

Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)  for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material.

(b)  for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party or Non-Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. Alternatively, within 45 days of receipt of a final transcript or recording of a deposition or other pretrial proceeding (unless the deposition or other pretrial proceeding occurs within 60 days of the operative deadline to file dispositive motions, in which case a 21-day period to designate applies instead of a 45-day period), the designating Party or Non-Party may designate the specific portions of the testimony as to which protection is sought and specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 45 days (or 21 days, if the deposition or other pretrial proceeding occurs within 60 days of the operative deadline

to file dispositive motions), subject to any other time periods agreed upon by the Parties and Non-Parties, shall be covered by the provisions of this Protective Order. Alternatively, a Designating Party or Non-Party may specify, at the deposition or other pretrial proceeding, or up to 45 days after receipt of the final transcript or recording (or 21 days after receipt of the final transcript or recording, if the deposition or other pretrial proceeding occurs within 60 days of the operative deadline to file dispositive motions) if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 45-day (or, as applicable, 21-day) period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, and any extensions agreed upon by the Parties (and Non-Parties where applicable), the transcript shall be treated only as actually designated.

(c)     for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right

to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging, citing the specific applicable Bates numbers or transcript page and line number, and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice via email. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without court intervention, the parties shall comply with the court's Standing Order regarding resolution of discovery disputes and present the dispute in a joint letter to the court. ~~er Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process~~

will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

**7.     ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1     <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action;

(b)    the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    the court and its personnel,

(e)    any mediators, settlement officers, or arbitrators mutually agreed upon by the Parties, or appointed special masters, and the respective personnel of the mediators, settlement officers, arbitrators, or appointed special masters, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)    court reporters and their staff, professional jury or trial consultants, mock jurors or focus groups, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)    during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order;

(h)    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(i)    any other person with the prior written consent of the Designating Party.

**7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items**. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action;

(b)    Designated House Counsel of the Receiving Party (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed;[1]

(c)    Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed;

(d)    the court and its personnel;

(e)    court reporters and their staff, professional jury or trial consultants, mock jurors or focus groups, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f)    the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(g)    any mediators, settlement officers, or arbitrators mutually agreed upon by the Parties, or appointed special masters, and the respective personnel of the mediators, settlement officers, arbitrators, or appointed special masters, to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(h)    any other person with the prior written consent of the Designating Party.

---

[1] This Order contemplates that Designated House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL – SOURCE CODE."

7.4     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Designated House Counsel or Experts.

(a)(1)   Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making.

(a)(2)   Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[2] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has

---

[2] If the Expert believes any of this information is subject to a confidentiality obligation to a third party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b)     A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c)     A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel or the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why disclosure to Designated House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

## 8. PROSECUTION BAR

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents

asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[3] To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging or defending a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, an *inter partes* review proceeding, and/or any similar administrative proceeding pertaining to an issued patent). For the avoidance of doubt, "defending" a patent does not include involvement in drafting any new claims or claim amendments, which is not permitted under the previous sentence.  This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

**9.     SOURCE CODE**

(a)     To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL – SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)     Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in Paragraph 8, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4, with the exception of Designated House Counsel.

(c)     Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually

---

[3] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Receiving Party shall be entitled to take notes during source code review, including notes by electronic means, but shall not transcribe entire lines of source code in such notes.  The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide all such source code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by either the Producing Party or the Receiving Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

10.     **PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," that Party must:

(a)     promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[4]

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

11.     **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

(a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'

---

[4] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.     promptly provide the Non-Party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.     make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[5] Absent a court order or agreement to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

## 12.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve or destroy all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the

---

[5] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

**13. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

When Receiving Parties receive notice that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege, work product protection, common-interest privilege, or mediation privilege, the parties may incorporate their agreement in a stipulated protective order submitted to the court.

**14. MISCELLANEOUS**

14.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

14.2    <u>Right to Assert Other Objections</u>. No Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3    <u>Export Control</u>. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

14.4    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal

pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the court.

## 15.    FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports, attorney work product, Expert work product, work product of Professional Vendors, and work product of jury consultants, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

DATED: _____Oct. 6, 2021_____                    _____

Donna M. Ryu

United States Magistrate Judge

*(Seal: UNITED STATES DISTRICT COURT · NORTHERN DISTRICT OF CALIFORNIA · IT IS SO ORDERED · Judge Donna M. Ryu)*

1

EXHIBIT A

2

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

3

I, _____ [print or type full name], of _____

4

_____ [print or type full address], declare under penalty of perjury

5

that I have read in its entirety and understand the Protective Order that was issued by the United

6

States District Court for the Northern District of California on _____ [date] in the case

7

of Wisk Aero LLC v. Archer Aviation Inc., Case No. 3:21-cv-02450-WHO (DMR). I agree to

8

comply with and to be bound by all the terms of this Protective Order, and I understand and

9

acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of

10

contempt. I solemnly promise that I will not disclose in any manner any information or item that is

11

subject to this Protective Order to any person or entity except in strict compliance with the provisions

12

of this Order.

13

I further agree to submit to the jurisdiction of the United States District Court for the

14

Northern District of California for the purpose of enforcing the terms of this Protective Order, even if

15

such enforcement proceedings occur after termination of this action.

16

I hereby appoint [print or type full name] of _____

17

_____ [print or type full address and telephone number] as my California

18

agent for service of process in connection with this action or any proceedings related to enforcement

19

of this Protective Order.

20

Date: _____

21

City and State where sworn and signed:

22

_____

23

Printed name: _____

24

[printed name]

25

Signature: _____

26

[signature]

27

28