UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ARCHER AVIATION INC.,<br><br>    Defendant. | Case No. 21-cv-02450-WHO (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 167 |

The parties filed a joint discovery letter on two disputes. [Docket No. 167 (Jt. Letter).] They subsequently withdrew the first one and requested a ruling on the second, in which Plaintiff Wisk Aero LLC ("Wisk") moves for an exception to the undersigned's Standing Order on privilege logs. [Docket Nos. 182, 184, 186.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Wisk's motion is denied.

**I.    BACKGROUND**

Wisk sued Defendant Archer Aviation Inc. ("Archer") in April 2021 alleging claims for misappropriation of trade secrets and patent infringement. Wisk and Archer "are competitors in the budding electronic vertical takeoff and landing ('eVTOL') aircraft industry—products sometimes called 'air taxis.'" [Docket No. 133 (Aug. 24, 2021 Order on Prelim. Inj.) 1.] Wisk has been developing eVTOL vehicles for over ten years. [Docket No. 148 (Second Amended Complaint, SAC) ¶ 2.] It is currently developing its sixth-generation aircraft. *Id*.

Archer was founded in 2018. In 2019 and 2020, Archer hired ten engineers from Wisk, including Wisk's VP of engineering and chief engineer. Order on Prelim. Inj. 4-5; SAC ¶ 6. In February 2021, Archer announced that it would soon release its own eVTOL aircraft. SAC ¶ 4. Wisk alleges that the announcement was "surprising" because Archer appeared to have had "little

or no meaningful operations" and had only a fraction of the number of engineers employed by its competitors just one year prior to the announcement. Wisk further alleges that the design Archer released for its eVTOL aircraft "appeared to be a copy of a potential design that Wisk had developed for its next-generation aircraft and submitted in a confidential patent application" in January 2020 to the U.S. Patent and Trademark Office. *Id*. Specifically, Wisk alleges that Archer's aircraft has "the same overall aircraft configuration" disclosed in the patent application, even though that configuration has not been publicly disclosed. *Id*. at ¶ 83. Wisk asserts that Archer's design "infring[es] at least several patents issued to Wisk[.]" *Id*. at ¶ 5. According to Wisk, the resemblance between Archer's aircraft design and Wisk's aircraft "could not have been a coincidence" given Archer's "targeted recruiting" of Wisk's engineers. *Id*. at ¶ 6.

Wisk alleges that after its engineers departed to work for Archer, Wisk hired a third party to conduct a forensic investigation. The investigation allegedly showed that one of the engineers, Jing Xue, "surreptitiously downloaded thousands of files" shortly before announcing his departure from Wisk for Archer. According to Wisk, the files contain "immensely valuable trade secrets and confidential information about Wisk's aircraft development." *Id*. at ¶¶ 6, 61, 63-66, 70; Order on Prelim. Inj. 9. Wisk turned over the information it learned about Xue's actions "to local prosecutors, raising the issue of trade secret theft, who turned it over to the federal government." The FBI executed a search warrant at Xue's home in March 2021 and seized his personal devices and laptop. Order on Prelim. Inj. 9-10.

Wisk asserts claims under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.; California's Uniform Trade Secrets Act, California Civil Code sections 3426 et seq.; and infringement of six patents.

The discovery dispute at issue is whether Wisk must comply with the undersigned's privilege log requirements with respect to the pre-complaint communications of its in-house counsel Greg Bibbes.

## II.   DISCUSSION

The undersigned's Standing Order requires detailed privilege logs to facilitate the assessment of whether a party properly asserted privilege:

> If a party withholds responsive information by claiming that it is privileged or otherwise protected from discovery, that party shall produce a privilege log as quickly as possible, but no later than fourteen days after its disclosures or discovery responses are due, unless the parties stipulate to or the court sets another date. Privilege logs must be sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified. Unless the parties agree to alternative logging methods, the log should include: (a) the title and description of the document, including number of pages or Bates-number range; (b) the subject matter addressed in the document; (c) the identity and position of its author(s); (d) the identity and position of all addressees and recipients; (e) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than its author(s); and (f) the specific basis for the claim that the document is privileged or protected.
>
> Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Failure to promptly furnish a privilege log may be deemed a waiver of the privilege or protection.

[Docket No. 129 (Notice of Reference and Order re: Discovery Procedures) 4-5 (emphasis removed).]

Wisk seeks what it characterizes as a "common-sense variation" from the privilege log requirements: "if a party's in-house counsel is selected as a document custodian—meaning in-house counsel's entire email box will be searched—a categorical privilege log may be used to log those documents." Jt. Letter 4. Wisk seeks this exception because Archer has identified Wisk's in-house counsel, Greg Bibbes, as a custodian. Wisk represents that it has run test searches on Bibbes' communications using three search terms, which returned over 10,000 "hits" on his pre-complaint emails. Based on these test results, Wisk fears that it may be required to individually review thousands of Bibbes's communications. *Id*. Wisk disputes that Bibbes is an appropriate custodian and argues that "any burden from individually logging his documents outweighs the probative value of such a log." *Id*. at 5.

In response, Archer argues that Bibbes is a critical fact witness, particularly with respect to its counterclaims for tortious interference with contractual and economic relations, defamation, and unfair business practices, and its defenses of bad faith and unclean hands. These counterclaims and defenses are based in part on Wisk's public statements that Archer was the subject of a federal criminal investigation, as well as Wisk's January 2020 patent application. Jt.

3

Letter 5.

Archer cites two categories of evidence and allegations to support its position that Bibbes is an important witness.  First, Bibbes signed a document that Wisk submitted to the Santa Clara District Attorney accusing Xue of trade secret misappropriation.  [*See* Docket No. 57-11 (under seal).]  Archer asserts that after initiating a criminal investigation of Xue, Wisk misrepresented the matter to the public "as an investigation into Archer."  Specifically, a May 19, 2021 blog post on Wisk's online blog stated that "Wisk is fully cooperating with the FBI and Department of Justice in their *criminal investigation into Archer* relating to the theft and use of Wisk's intellectual property."  In a previous order, the Honorable William W. Orrick noted that it was undisputed that the statement "that there was a federal criminal investigation 'into' Archer" is "not true," and observed that "[t]here is no evidence on this record that Archer is the target of a criminal investigation."  [Docket No. 146 at 4, 21 (emphasis added).]

Second, Archer asserts that Bibbes signed the January 2020 patent application "that Wisk placed at the center of its trade secret claims," and argues that Wisk "created and filed" the application "for improper purposes and about which Wisk made material misstatements to the Court."  Jt. Letter 5.  This assertion refers to Wisk's allegation in the SAC that it filed a confidential, provisional patent application with the U.S. Patent and Trademark Office in January 2020, and that in May 2020, "Archer released a cropped rendering of its aircraft that appeared quite similar to one of the figures from Wisk's" January 2020 application.  SAC ¶¶ 4, 35, 81.  Archer answered this allegation by asserting that "Archer's founders disclosed their prospective design to a senior Wisk engineer, who subsequently reported this information to the CEO of Wisk, after which the company retained a patent attorney and shortly thereafter filed the contrived patent application that forms the basis for Wisk's allegations."  [Docket No. 153-4 (Archer's Answer to SAC and 2d Am. Counterclaims ¶ 2) (emphasis removed).]  Archer alleges that "Wisk's course of conduct demonstrates that it misused the patent application process to manipulate the record and give the false impression of trade secret theft."  *Id*. at ¶ 268; *see also id*. at ¶ 277.[1]

---

[1] In his August 24, 2021 order denying a preliminary injunction, Judge Orrick noted that Wisk's motion for a preliminary injunction "relied heavily on the apparent visual similarity between the

4

Given Bibbes' involvement in these events, Archer argues that "[a] privilege log of Bibbes' communications would thus not only facilitate any appropriate challenges, it could also itself provide admissible evidence." *Id.* (citing *Siemens v. Seagate Tech.*, No. SACV 06-788JVS ANX, 2009 WL 8762978, at *8 (C.D. Cal. Apr. 27, 2009) (noting that privilege logs were admissible under FRE 807 "for the truth of the events which they purport to record; namely, that a communication was made of a date certain during the prosecution process.")). Archer also argues that Wisk has not shown an undue burden associated with logging documents individually.

Wisk responds that it disputes Archer's claims that Bibbes is a "critical fact witness," that Wisk "made 'misrepresentations' to the FBI or the Court,"[2] and that Wisk filed any patent application for an improper purpose. Jt. Letter 4.

Archer has the better argument. Bibbes's conduct is at issue in this case. Wisk's representations about the criminal investigation, which it initiated by means of a document signed by Bibbes, are a factual basis for Archer's counterclaims. Second Amended Counterclaims ¶¶ 3, 4, 46-48, 57-64, 68-69, 74-76, 88-90, 95-96. Archer's allegations about the improper provisional patent application, also signed by Bibbes, support its unclean hands and bad faith affirmative defenses. Answer to Second Amended Complaint ¶¶ 268-69; 277-78. Thus, Bibbes's alleged conduct (and thus his communications) are relevant to Archer's claims and defenses in this action. Given the nature of the allegations, including Archer's contention that Wisk filed a "contrived patent application" after learning of Archer's prospective aircraft design, the timing of Bibbes's communications are also potentially relevant. A detailed privilege log could provide evidence of such timing.

Wisk does not respond to Archer's relevance arguments. Instead, it argues that "any burden from individually logging his documents outweighs the probative value of such a log." Jt.

---

aircraft in Wisk's January 2020 Patent Application and [Archer's aircraft] Maker" but that Wisk omitted this argument in its reply, which followed "robust early discovery." [Docket No. 134 at 43-45.]

[2] This is a mischaracterization of Archer's argument in this letter. Archer contends that Wisk made misrepresentations *to the public* that Archer was under investigation for theft of trade secrets, and Judge Orrick found that such representations were not true.

Letter 5. Although Wisk seeks an exception to the Standing Order, it fails to provide convincing support for the alleged burden associated with logging Bibbes's communications. Its estimate of the volume of communications is speculative; the number of test run "hits" could turn out to be dramatically higher than the number of privileged, responsive documents that actually need to be logged.[3] Moreover, the addition of search terms would likely narrow the number of documents which would need to be reviewed for privilege and responsiveness.

Wisk cites *Narayan v. EGL, Inc.*, No. C05-04181 RMW HRL, 2006 WL 3050851, at *2 (N.D. Cal. Oct. 24, 2006), for the court's observation that "categorical descriptions of privileged documents may be appropriate in situations where the volume of privileged documents is demonstrably large." However, Wisk omits the fact that the logging party in *Narayan* "made no effort to describe the volume of documents in the 'in-house counsel's working file,' nor ha[d] it given the court a picture of the categorical scheme that might be employed." Wisk is a high-tech client represented by sophisticated lawyers. As previously noted, it provided a general reference to the number of "hits" in test searches but made no serious effort to quantify the likely burden associated with logging Bibbes's communications in conformance with the Standing Order. In light of the undisputed relevance of Bibbes to the case, as well as the absence of a clear picture of the burden associated with logging his individual communications, Wisk's argument that it should be granted an exception from this court's privilege log requirements is unconvincing.

//
//
//
//

---

[3] The court expresses no opinion regarding the extent to which the attorney-client privilege may apply to Bibbes's communications. As in-house counsel, Bibbes's communications may include "dual-purpose communications," involving "both legal and non-legal analyses." *In re Grand Jury*, 23 F.4th 1088, at *2-3 (9th Cir. 2021). The Ninth Circuit recently clarified that for dual-purpose communications, courts must apply the "primary purpose" test to determine whether the communications are covered by the attorney-client privilege. *Id*. *3. Under the primary purpose test, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice." *Id*. at *2.

### III. CONCLUSION

For the foregoing reasons, Wisk's motion for an exception to the court's Standing Order regarding privilege logs is denied.

**IT IS SO ORDERED.**

Dated: February 22, 2022



Donna M. Ryu
United States Magistrate Judge