Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Plaintiff Wisk Aero LLC ("Wisk") previously moved to compel neutral forensic examination of personal devices owned by current Archer employees Thomas Muniz, Johnny Melack, Diederik Marius, and Scott Furman ("Archer Employees"). ECF 191 (brief), ECF 199 (proposed forensic protocol). The Court denied the motion without prejudice and invited additional briefing, including to present new evidence. The relevant case deadlines are: fact discovery closes August 24, 2022; expert discovery closes November 2, 2022; the hearing on dispositive motions is set for January 11, 2023; and the pretrial conference and trial are set for March 13 and April 17, 2023.

**Wisk's Statement.** The evidence gathered to date has identified specific devices used by the Archer Employees to store confidential Wisk documents reflecting Wisk's asserted trade secrets. *See* ECF 191 (describing documents); Ex. B (sample metadata). Wisk seeks a targeted forensic inspection into those devices because such an inspection is the ***only way*** to determine whether files were improperly copied or transferred to or from those devices. **Wisk requests expedited hearing**.

The Court has stated its concern about "privacy interests of non-parties." Mar. 10 Hr'g at 9. And, the employees claim the devices have "sensitive data." Muniz ¶9/Melack ¶13/Marius ¶12. To address these concerns, Wisk proposes a protocol that is minimally invasive. Wisk will not see personal files, but only forensic data. The employees can also screen out private information. This has already been put into practice. After Furman admitted to deleting documents while under subpoena (discussed below), Furman consented to forensic examination, agreed the neutral examiner could provide Wisk with "red flag reports as well as all underlying data relied upon to generate the reports," and reserved the right to object to private material. Ex. K. The initial forensic inspection included emails, text messages, and calendar entries—items Wisk did not anticipate would be included. Furman objected, Wisk did not oppose, and the parties instructed the examiner to exclude all such items from review. The Employees argue Wisk "misled this Court" about the inspections, but in fact, the experience with Furman proves inspections can go forward without privacy invasion. Finally, Wisk has tailored its request to only devices ***known to have retained*** Wisk confidential information. These circumstances justify Wisk's request, particularly because there is no dispute on relevance or burden. *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) ("The right to informational privacy, however, is not absolute…."); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (litigation can trump privacy concerns).

The evidence of malfeasance gathered so far confirms additional investigation is warranted. For example, the produced metadata shows Marius stored a detailed Wisk motor design specification on a flash drive, and "last accessed" that specification on January 15, 2020—a week before he started at Archer and after resigning from Wisk. Ex. C (DM-000428); Ex. A ¶ 13(a). Soon after, on February 7, Marius provided key motor design parameters to an Archer vendor for use in building a motor for Archer. Ex. D (MAGicALL0000069). Motor design takes years of research, but Marius provided these technical parameters for Archer within three weeks of working there. Neither Marius nor Archer has produced documents showing legitimate internal development of these parameters. Marius offers no explanation why he held on to the Wisk motor specification other than he "apparently failed to delete" it. Marius Decl. ¶ 9a. Similarly, he claims he "accidentally retained" photos of Wisk computers displaying source code and testing information, last accessed on a personal hard drive on January 8, 2020—shortly before his employment at Archer began. Ex. E, DM-0001520-37; Ex. A ¶ 14; Marius Decl. ¶ 9f.

Wisk needs additional forensic evidence because the metadata produced so far contains only "Last

1

Accessed" information that shows when the employees last accessed a particular version of a file on a particular device. Ex. B; Ex. A ¶¶ 8-10. This data cannot show other use prior to the "last access" date, cannot show if the employee transferred files to another source for later use, and cannot show whether the employee deleted files—but forensic analysis often can. *Id.* ¶¶ 18-19.

The metadata shows other suspicious activity as well. On October 28, 2020, Melack accessed a photograph of a confidential Wisk schematic relating to Wisk's "battery pack, lower BMS." Ex. F (JM-000183); Ex. A ¶ 15(b). BMS refers to the "battery management system," a key subject-matter area for multiple Wisk trade secrets. *See* Dkt. 17-10 at 45. Melack claims this occurred because he restored a "backup" from his old iPhone to a new phone. Melack Decl. ¶ 9a. He fails to explain why he had this photo in October 2020, ten months after joining Archer.

The metadata for several other documents bear "last access" dates in April 2021, long after the employees joined Archer. Ex. A ¶¶ 15-16. Such documents include (i) a 17-page detailed aircraft specification retained by Melack, Ex. G (JM-000084), Ex. A ¶ 15(a); (ii) photographs of confidential Wisk materials retained by Muniz, Ex. H (MUNIZ-DOJ-0000428), Ex. A ¶ 16, and (iii) photographs of confidential Wisk materials retained by Furman. Ex. I; Ex. A ¶ 17. The Archer Employees maintain these April dates relate to the collection of the documents in response to grand jury subpoenas, but cannot explain why these collection dates apply to some, but not all retained documents. And if true, the April collection "reset" the "Last Accessed" date to April, obscuring any evidence of prior improper access. Forensic inspection is the ***only way*** to "reveal earlier, deleted versions of the same file[s] that were accessed on earlier dates." Ex. A ¶ 18b.

The Employees say they retained these documents inadvertently and did not use the files at Archer, but such claims are easily made when Wisk is prevented from accessing the ***very source*** of information—forensic data—necessary to challenge them. *See Williamson v. U.S.*, 512 U.S. 594, 600 (1994) ("Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false."). Claiming inadvertence does not immunize a witness from forensic discovery into devices used to retain confidential information. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012) (forensic analysis relevant to "testing the veracity" of defendant's claims of no misappropriation). Thus, Wisk's proposed forensic examination would be appropriate even if the Employees' credibility were unimpeachable. But here, that is not the case.

For example, after Archer repeatedly told this Court that no Wisk documents ever made it to Archer,[1] it came to light that Furman transferred Wisk documents to Archer by synching his personal email account to his Archer-issued computer and accessing Apple's iCloud from his work computer. ECF 224 at 1 n.1. Archer chalked up its prior misstatements to "an oversight." ECF 224. Furman then admitted he had ***deleted*** Wisk confidential information from his personal accounts/devices as recently as January 13, 2022, while under subpoena. As another example, Wisk reached out to the Archer Employees shortly after they departed Wisk about suspicious activity on their Wisk computers, and the Employees provided evasive responses. Exs. L, M, N. As it turns out, Wisk's concerns were well-founded, as three of the Archer Employees located Wisk documents in their possession last Spring when they responded to grand jury subpoenas, yet did not inform Wisk they had those documents until served with subpoenas months later in this action. Melack gave sworn deposition testimony on July 1, 2021 that he "deleted" the "Wisk files on my personal devices …before starting at Archer," only to produce ***thousands*** of Wisk files

---

[1] *E.g.*, Dkt. 57-5 at 1 (Archer: "not a *single* confidential Wisk document exists at Archer); Dkt. 194 at 3 ("[T]here is no evidence—*none*—that any confidential Wisk documents made their way onto Archer's systems."). Citing the Harrison declaration, the Employees claim the documents at issue did not reach Archer's systems, but that is irrelevant because Wisk seeks evidence they were used outside of Archer's systems.

from his personal devices over the following few months. Ex. J (Melack Tr.) at 54:4-12.

The Archer Employees have sought to distinguish *Brocade* on the ground that the device at issue was in the possession of an individually named defendant, not a "third party." But *Brocade* did not depend on that distinction. The hard drive in *Brocade* was ***a personal device*** that the individual employee used for work. *Id.* at *2. Judge Koh ordered the forensic examination based on the ***relevance*** of the device, rather than any distinction between work and personal devices. *Brocade* does ***not*** require a heightened standard in seeking forensic examination of a personal device.

Further, the Archer Employees are not "true" third parties. They work for Archer, they are Archer's agents, and Archer has control over what they do because it can fire them where, as here, they have engaged in misconduct. *See* Dkt. 173-1 ¶¶ 1, 3 (stating "Archer can terminate you at any time" and that the employee "may not bring with you, or use … any information or material from any other person or company"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("Control is defined as the legal right to obtain documents upon demand."); *Waymo v. Uber*, Dkt. 131 at 31:18-21 ("You can say, 'You're our employee. You're an important employee. This is an important case to us. You either testify or we may fire you.' Of course, you've got the right to do that."). The Archer Employees were subpoenaed in this case only because Archer itself refused to search their documents even though it had the right to collect and search at least some of them.

At the prior hearing on this issue, the Court distinguished the *Waymo v. Uber* case, noting the allegations against Mr. Levandowski were more extreme than those against the Archer Employees. But in *Waymo*, Judge Corley also ordered other former employees to turn their devices over to Waymo. *Waymo* Dkt. 566 at 1, Dkt. 670 at 9. The Archer Employees claim those Waymo employees did not object to turning over their devices; but the Waymo employees "did not object" only after the district court clearly endorsed forensic examinations. *See, e.g.*, *Waymo* Dkt. 424 (May 11 Hr'g) at 31:16-19 (THE COURT: "Whenever you have trade secret cases like this, often one way to try to get to the nub of the matter is to hire some neutral, neutral, neutral person to go in and do the forensic examination of the servers and the like."). The Court further ordered production of text messages from personal phones. *Waymo* Dkt. 1012 (Jul. 20 Hr'g) at 8:10-9:6 ("[A]ll hands on deck, that stuff needs to be produced."). Thus, the requested relief is not unprecedented. It is in fact supported by on-point authority within this District. Wisk has also previously distinguished the *Stonebridge* and *Memry* cases cited below by the employees, which are not trade secret cases. *See* Dkt. 191 at 3 n. 4. The Employees have not cited a single trade secret case in which an alleged misappropriator, party or non-party, successfully opposed forensic inspection of devices known to have been used to store the plaintiff's confidential material.

**Third Parties' Statement.** Wisk has misled this Court regarding "Red Flag Reports," calling them "minimally invasive." In fact, the reports include summaries of all emails and text messages, and review personal internet browsing history, Google Maps searches, internet research, and use, and utilization of personal applications. *No court* has ordered such reports for personal devices.

Wisk sought additional briefing to present "new information" regarding Third Parties, who Wisk claims engaged in malfeasance because 17 documents Wisk focuses on were not deleted from their personal devices. There is no credible evidence that they were purposely retained, or ever used at Archer. Indeed, Archer has run searches over millions of Archer documents and terabytes of data from the co-founders, Chief Engineer and every former Wisk employee at Archer, and none of the 17 documents were found. (Harrison (FTI) Decl. ¶¶ 4-6.) There is no evidence of malfeasance.

Wisk ignores Judge Corley's decision in *Lee v. Stonebridge Life Ins. Co.*, 2013 WL 3889209 (N.D. Cal. Jul. 30, 2013). In that case, the defendant sought to compel images of the plaintiff's cell phone and computer. Judge Corley denied the motion. "Because personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause." *Id.* at *1. She noted that the plaintiff—like the Third Parties here—had already provided considerable

discovery. She correctly observed that defendant "essentially requests that the Court condone a fishing expedition of Plaintiff's personal computer." *Id.* at *2. She concluded that "absent a showing of misconduct on Plaintiff's part such that serious questions exist as to the reliability and completeness of Plaintiff's expert's search, [defendant] is not entitled to a forensic examination of Plaintiff's personal computer." *Id.* Here, as in *Stonebridge*, there is no cause to warrant the "extreme step" of compelling images from personal devices. *Id.* at *1. The reason to extend Judge Corley's decision to the instant case is even more compelling because the targets are third parties.

This Court has noted that "it's fairly extraordinary to seek forensic review of private devices of non-parties." (Mar. 10 Hr'g Tr. 7:22-23.) We have found no case—and Wisk cites none—where *third parties* have been ordered to produce images of *personal* computers for the creation of Red Flag Reports. Wisk continues to rely on *Waymo v. Uber*, where an employee downloaded more than 14,000 proprietary files and pled guilty to misappropriation. (*Waymo* ECF 23 at 3.) In addition, other employees were accused of "downloading additional Waymo trade secrets *in the days and hours prior to their departure*." (*Id*. at 4, emphasis added.) The former *Waymo* employees profited about "half a billion dollars" as a result of this theft. (*Id*. at 2.) That is not the case here where there is no evidence of last minute downloading, the individuals have submitted declarations (ECF Nos. 58-22, ¶¶ 5, 15-17; 98-17 ¶¶ 9-10; 98-18 ¶ 4; 98-19 ¶ 4), submit sworn declarations here again, and have testified that they did not intentionally hold on to Wisk materials.

Moreover, *Waymo* did not involve Red Flag Reports and the employees **did not object** to the production of the old personal devices at issue. (*See Waymo* ECF 670 at 9. ["neither Ron nor any other diligenced employee (other than Levandowski) has objected to their production"].) In a gross distortion, Wisk cites to a statement by Judge Corley about having a neutral "do the forensic examination of the servers and the like." (ECF 424 at 31:18-19.) Wisk's counsel know (because they represented Waymo) that this was the initial conference with Magistrate Corley, that her comment was "totally off topic," and that she was discussing Uber's computers, not personal devices. Wisk also cites to another hearing before Judge Corley where she ruled that text messages from the Uber CEO had to be produced. But that is not the issue before this Court. The Third Parties here have already produced responsive text messages. In sum, there is *no* support for Wisk's insistence that their motion "is in fact supported by on-point authority within this District."

Unlike cases relied on by Wisk, there is no malfeasance here. Wisk encouraged the use of personal devices; it reimbursed employees for their cell phones because it expected them to use their phones at and for work. (Melack ¶ 3; Marius ¶ 2.) Given this practice, it is not surprising—and certainly not malfeasance—for engineers to have documents from prior employers on personal devices, especially where Wisk made no effort to prohibit the practice and rushed employees out the door.

A quick review of the evidence advanced by Wisk demonstrates the lack of malfeasance. Wisk raises **one** email regarding Muniz, and claims it was "modified" on April 15, 2021, and "last accessed" on April 19, 2021. (Kunkel ¶ 16.) Those dates correspond with the dates that MoFo's forensic consultant, KLDiscovery ("KLD"), collected documents in response to a federal subpoena. (Merlino Decl. (KLD) ¶ 24; Muniz ¶ 7.) The email at issue was sent by Muniz to Melack in connection with clearing out a Wisk storage warehouse of old supplies and has no text. (Muniz ¶ 6.) And perhaps most importantly, Wisk does not contend that this email (or its photo attachments) are trade secrets or that Archer has used them. There is no malfeasance here.

Wisk raises **three** documents regarding Melack. (Kunkel ¶ 15.) One has a "last accessed" date on April 21, 2021, when KLD collected data from Melack's personal devices in response to a federal subpoena. (KLD ¶ 29; Melack ¶ 9(b).) The second, JM-000183, reflects a "last modified" date of October 28, 2020. Melack bought a new Apple iPhone 12 on October 27, 2020, and set up his new iPhone with a backup of all the material on his previous iPhone on the days surrounding October 27, 2020. (Melack ¶ 9(a).) Thus, Melack did not open, access, or modify this inadvertently retained photo on October 28, 2020; rather, the automatic processes of restoring a backup onto a new phone

4

updated the metadata on this photo. (KLD ¶¶ 26-28.) The last access date of this photo was May 16, 2021, which was the date KLD processed this document. (*Id.* ¶¶ 27-28.) The third document, MELACK-DOJ-0009071, raised in Wisk's expert's declaration but not by Wisk in this brief, was "last accessed" on January 9, 2020; it was found in Melack's trash folder, which is not surprising, since January 9 is when Melack went through his personal devices to delete Wisk documents before his Archer start. (Melack ¶ 9(c); KLD ¶¶ 30-32.) Moreover, although Wisk claims that Melack produced "thousands" of Wisk documents, it fails to mention that those files are generic "Solidworks" part files, publicly available on the internet. (Melack ¶ 10.) There is no malfeasance.

Wisk raises **13** documents regarding Marius. (Kunkel ¶¶ 13-14.) Marius worked at Wisk for 8.5 years. He collected the Wisk information he could find and returned it to Wisk on a hard drive, along with an email summarizing the documents. (Marius Ex. 1.) He believed he had deleted those documents from his devices. Per Wisk's forensic expert, six of the documents were "last accessed" on January 8, 2020, Marius' last day at work. That day Marius worked alongside Wisk IT to remove personal items from his Wisk laptop and transfer Wisk materials to the hard drive that he ultimately returned to Wisk on January 16. (Marius ¶ 3.) These six images were likely linked to those efforts, and either Wisk IT told Marius he could keep these documents or they were overlooked by both Wisk IT and Marius. (*Id.* at ¶ 9(f).) Five of the documents were "last accessed" on January 15, the day before Marius returned Wisk documents to Wisk. (*Id.* at ¶ 9(a), (d), (e).) Marius apparently failed to delete or transfer these documents among the large volume of documents he returned to Wisk. The final two documents were "last accessed" on April 14, 2021, when KLD collected Marius's documents in response to a federal subpoena. (KLD ¶¶ 33-35; Marius ¶ 9(b), (c).) Moreover, Wisk has distorted the record with respect to Marius. Nothing in the inadvertently retained DM-000428 bears any resemblance to the specifications provided to Archer's motor vendor MAGicALL, and Archer's independent development of those specifications (which came from Archer's Chief Engineer, not Marius) is well documented. *See, e.g.*, Marius ¶ 9(a); ECF 58-20 ¶¶ 14-24, 30-32; ECF 92-16 at 120:2-121:25; ECF 98-17 ¶¶ 3-9; Archer-NDCA-01642218; Archer-NDCA-00406456.) In sum, Marius returned hundreds—perhaps thousands—of documents to Wisk. The handful Wisk raises were inadvertently retained and there is no evidence that any have been used at Archer.

Wisk's assertion that it needs images to determine whether the documents were transferred to anyone is untethered to any precedent and would expose every personal device for inspection any time documents were inadvertently retained. Privacy is one of our "inalienable rights." *Semore v. Pool*, 217 Cal.App.3d 1087, 1093 (1990); *see also Memry Corp. v. Kentucky Oil Tech.*, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007) (denying request for inspection of devices, noting "the Tenth Circuit has ruled a mere desire to check that the opposition has been forthright in its discovery responses is not a good enough reason"). This is especially true here where the Third Parties' forensic consultant has *already* run forensic analyses on the sources at issue and determined—where possible to do so—that there is no evidence of malfeasance, including transfer of files or contemporaneous use of USB devices. (KLD ¶¶ 9-13.) Moreover, for several of the sources at issue, there is no analysis to be done that could show if "documents were transferred." (*Id.* at ¶ 13.) Thus, forensic examination of the personal devices storing the subject files would be unlikely to yield any additional evidence beyond that already disclosed to Wisk. (KLD ¶ 14.)

Finally, Wisk argues that Archer has "control" over the Third Parties' personal devices. The Third Parties have not, and do not, authorize Archer to provide its personal devices to a third party. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2015 WL 8482256, at *4 (N.D. Cal. Dec. 10, 2015) (no "authority under which [an employer] could force employees to turn [their devices] over").

In sum, Wisk has failed to show that there is good cause for this type of unprecedented intrusion.

| | |
|---|---|
| DATED: May 4, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By: */s/ Yury Kapgan*<br>Yury Kapgan<br>Robert M. Schwartz<br>Michael T. Zeller<br>Diane Cafferata<br>Patrick Schmidt<br>Michael LaFond<br>*Attorneys for Plaintiff Wisk Aero LLC* |
| Dated: May 4, 2022 | MORRISON & FOERSTER LLP<br><br>By: */s/ Arturo J. González*<br>Arturo J. González<br>Shaelyn K. Dawson<br>*Attorneys for Third Parties* |

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Patrick Schmidt*

Patrick Schmidt