Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Plaintiff Wisk Aero LLC ("Wisk") moves to compel forensic examination into devices belonging to former employee Jing Xue. The relevant case deadlines are: fact discovery closes August 24, 2022; expert discovery closes November 2, 2022; the hearing on dispositive motions is set for January 11, 2023; and the pretrial conference and trial are set for March 13 and April 17, 2023.

**Wisk's Statement.** Wisk seeks to compel forensic inspection and red flag reports for the electronic devices of former Wisk, now Archer employee, Jing Xue that were not available to the parties when Judge Orrick previously ordered forensic inspection and red flag reports for Xue's Archer-issued work laptop. Dkts. 37, 88.    These devices were not available at the time Judge Orrick last granted relief due to the fact that they were in the custody of the DOJ and FBI, who were investigating Xue's illicit Christmas 2019 download of 4,977 files from Wisk's Google Drive repository on his way out the door. Dkt. 16-24 ¶¶ 10-11. Recently these devices (the "seized devices") were released to Xue's personal counsel, who has refused to permit the requested forensic inspection and red flag reports.

Based on conversations with the DOJ and FBI, the seized devices include *the* computer used to download the 4,977 files (*see* Dkt. 133 at 10) and they also include evidence of the downloads' subsequent deletion, presumably by Xue.[1] This makes the requested inspection and reports even more relevant than the previous inspection ordered by Judge Orrick of Xue's Archer-issued work computer. Other precedent also supports Wisk's requested inspection, particularly given the high relevance of the seized devices. "[W]here, as here, the electronic information on [] hard drives is relevant to a plaintiff's claims of trade secret misappropriation," then a device inspection is appropriate. *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012). Xue's conduct resembles that of Anthony Levandowski, who was shown in the *Waymo v. Uber* case to have downloaded 14,000 files from his employer shortly before leaving, and whose objections to forensic examinations were overruled. *See, e.g.*, *Waymo* Dkt. 566; *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1355 (Fed. Cir. 2017).

Notably, the issues surrounding these devices has already been the subject of an adverse inference taken against Xue by Judge Orrick. Judge Orrick previously found that "the evidence adequately supports a finding that Xue downloaded the 5,000 files at issue and retained them." Dkt. 133 at 40. That order noted Xue may have also transferred the downloaded files to an external USB drive, but the evidence was not conclusive on that point, even though it showed that Xue connected a USB drive to his computer at the same time of the downloading. *Id.* at 40-41. Nonetheless, finding it "likely—though not certain—that Xue retained the files when he left Wisk," and in light of the fact that Xue took the Fifth Amendment in response to deposition questions about the downloads, Judge Orrick granted an adverse inference against *Xue*. *Id.* at 41. Forensic inspection of these devices can shed light on Judge Orrick's determination as to whether the adverse inference should further run against Archer, and at the very least should provide Wisk with information as to what happened to the files after Xue's downloads.

Although the Department of Justice has not filed charges against Xue at this time, its interest in the seized devices underscores their relevance, and the decision whether to indict should not be

---

[1] Xue does not dispute this. Xue argues without support or logic that it is "beside the point" whether Xue used the devices in question to improperly download and retain Wisk information.

1

compared to whether evidence is relevant in a civil case. Nor is there any concern that permitting forensic inspection in this litigation would "unfairly expand the scope of criminal discovery," *In re Zinnel*, No. 2:12-CV-01541-TLN, 2013 WL 2449546, at *5 (E.D. Cal. June 5, 2013), given that the FBI already analyzed the devices.

Because of Xue's malfeasance and the indisputable relevance of the devices at issue, Wisk should be entitled to forensic discovery into Xue's devices. As explained in Wisk's recent letter brief regarding forensic inspections of personal devices issued to several Archer employees, the requested forensic examination into the seized devices is "the *only way* to determine whether files were improperly copied or transferred to or from those devices." Dkt. 263 at 1. This evidence, which may show what Xue did with the 4,977 files after he downloaded them, is otherwise unavailable to Wisk, in part because Xue has taken the Fifth Amendment in response to questioning on the downloads.

To the extent Xue has any privacy concerns, Wisk proposes an inspection protocol that is minimally invasive, the same "red flag report" inspection protocol previously ordered by Judge Orrick. *See* Dkt. 88 ("The third-party neutral is permitted to carry out Red Flag Reports… which appear at least potentially relevant and would be discoverable in the ordinary course."). Pursuant to that protocol, Wisk does not see any substantive documents, but receives only forensic reports that evidence things like file transfer and deletion. Moreover, Xue can screen to remove private information before the reports are shared with Wisk. These circumstances more than justify the requested examinations, particularly because there is no dispute on relevance or burden. *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) ("The right to informational privacy, however, is not absolute…."); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) (litigation needs can trump right of privacy).

At a prior hearing on forensic inspections, the Court distinguished the *Waymo v. Uber* case, noting the inspections were granted because allegations against Mr. Levandowski were more extreme than those against certain other Archer Employees. Given that it has been shown that Jing Xue surreptitiously downloaded almost 5,000 files from Wisk, even if extreme facts were required, this fact alone would justify the requested relief. But that is not the test. In *Waymo*, Judge Corley also ordered several other former employees *besides Mr. Levandowski* to turn over their devices to Waymo. *Waymo* Dkt. 566 at 1, Dkt. 670 at 9. The Federal Circuit also ruled Waymo was entitled to the data from those devices. *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1355 (Fed. Cir. 2017). Thus, the requested relief as to all the seized devices is supported by on-point authority within this District. Xue points below to the *Stonebridge* case, which was not a trade secret case, in which Judge Corley indicated that the party seeking forensic review should make a "showing of misconduct." As Judge Orrick has ruled, that showing has been made. Dkt. 133 at 40-41. The *Memry* case that Xue cites is also not a trade secret case, and further, that ruling acknowledges that forensic inspection is proper "where computers have a special connection to the lawsuit," which aptly describes the computers subject to this motion. *Memry*, 2007 WL 832937, at *4.

Xue's counsel proposes that it have its own discovery vendor search the seized devices for Wisk material, return those devices to Xue that have none, and then produce whatever material they find. The problem with this proposal is that Wisk understands from the FBI that Xue deleted the files that he improperly downloaded from Wisk.[2] Thus, this proposal would not identify the device used by Xue to perform his downloads, and would not surface evidence of the downloads and subsequent deletions. Only a forensic inspection will surface this evidence.

---

[2] Dr. Xue's counsel contends that this assertion is "unspecified and unsubstantiated." That is exactly why Wisk needs the requested forensic discovery; Wisk must be allowed to substantiate the statements of the FBI and obtain admissible evidence to demonstrate these facts.

Xue's counsel further notes there are 37 separate devices that were seized by the FBI. What Xue's counsel fails to mention, however, is that Wisk proposed exploring a two-staged forensic protocol, where the neutral would take initial steps to identify potentially relevant devices, and then only perform a deeper forensic inspection on those devices likely to have been used to store Wisk information. Xue's counsel rejected this proposal, and this letter brief followed.

Xue complains it is improper for a "stranger" come through his emails, texts, etc. But Xue has made no showing that the neutral forensic examiner would do this. Moreover, Xue proposes that his own forensic examiner will "conduct a thorough and reliable search." Xue does not explain why it is permissible for a stranger that he hires to search his devices, but impermissible for a stranger hired as a neutral to do the same.

To be clear, Wisk has no desire to pry into devices that "contain[] only baby photos and ha[ve] nothing whatsoever to do with Wisk." That is why Wisk has gone to great lengths here (and with the other employees) to propose a neutral forensic examiner, subject to a tightly defined search protocol, entitling Wisk to only forensic evidence and artifacts and only after the employees have exercised an initial opportunity to screen the production of information.  When, however, the facts demonstrate a relevant "needle" in a "haystack" of devices (as is unquestionably the case here), Wisk cannot even begin to have the third-party neutral search for the needle until they have access to the haystack. This is not an issue of Wisk's making—it was the decision of Xue (and the other employees) to comingle Wisk information with their personal information and then improperly retain that information upon their departure from Wisk.

In sum, the forensic evidence that Wisk seeks is highly targeted and relevant, more so than for certain devices as to which the same relief was granted by Judge Orrick, and any privacy concerns have been minimized. The Court should grant the requested inspections and reports.

**Mr. Xue's Statement.** It is misleading to assert that Dr. Xue's counsel have "refused to permit the requested forensic inspection and red flag reports." What actually happened is this: after the government informed Dr. Xue's counsel (and Wisk) that it was closing its criminal investigation,[3] counsel for the government informed the undersigned that it proposed to "remove data that may belong to Wisk" before returning Dr. Xue's personal devices to him. Counsel for Dr. Xue responded that we could not agree to that, because to the extent any of those personal devices might contain information relevant to the civil case, it needed to be preserved. Wisk suggested, as it proposes again here, that Dr. Xue's devices should all be released to a neutral forensic investigator—specifically, the team at Lighthouse Global—"for a full forensic analysis and 'Red Flag Report." We countered by suggesting that those personal devices should instead be released to Dr. Xue's counsel so that we could "have them reviewed by our vendor and respond to civil discovery requests in the ordinary course." (We also noted that Your Honor was considering a similar proposal with respect to other Archer employees and that we wanted to wait to see how this Court ruled before engaging further on Wisk's proposal.)

Almost a month went by. The government reached out again, asking whether we had arrived at an agreement on how to handle the return of Dr. Xue's devices. Wisk proposed that all of Dr. Xue's devices be "be sent to a neutral for imaging and wiping, then have the neutral return the wiped

---

[3] Wisk writes above, "Although the Department of Justice has not filed charges against Xue *at this time* [emphasis added]," that phrasing is misleading. The government informed Wisk's counsel that it was **closing its investigation**—that is why Dr. Xue's seized devices were being returned to him. Wisk has reportedly requested an opportunity to go back to the government and try to convince them to re-open the investigation (a request that might itself have Fifth Amendment implications as discovery proceeds, though that is beyond the scope of this brief), but Wisk's desire for the government to make a different decision does not justify the false implication that the government's investigation is ongoing.

devices to Dr. Xue," pending further agreement, or a ruling from this Court, regarding how those devices should be handled. This proposal made no distinction between devices that had been identified as potentially containing Wisk material and those that contained only personal files. We responded that our vendor should first have an opportunity to conduct a preliminary review: "We would then instruct our vendor to image every device and search them for potential Wisk material. Those that have none would simply be returned to Dr. Xue, unwiped; we see no reason to (for example) wipe an external hard drive that contains only baby photos and has nothing whatsoever to do with Wisk. For those images that do potentially have Wisk material, we would wipe the original device entirely before returning it to Dr. Xue and then use the images to respond to your discovery requests, again using our own vendor."

This seems a fair and reasonable way to proceed. Despite Wisk's efforts at demonization ("*Xue's illicit Christmas 2019 download of 4,977 files from Wisk's Google Drive repository on his way out the door*"), there is no reason to treat Dr. Xue differently from the other Archer employees. The dispute as to those individuals deals only with personal devices that have already been determined to possess (however inadvertently) Wisk material. But Wisk would have this Court apply a different standard to Dr. Xue, perhaps on the theory that one who invokes his Fifth Amendment privilege thereby surrenders any right to personal privacy.

Wisk provides no support for that draconian proposition, because none exists. A forensic inspection of devices in the possession of an opposing party is the exception, not the rule, reserved only for "extreme situation[s]." *Memry Corp. v. Ky. Oil Tech., N.V.*, 2007 WL 832937 (N.D. Cal. Mar. 19, 2007). Judge Corley agreed in *Lee v. Stonebridge Life Ins. Co.,* 2013 WL 3889209 (N.D. Cal. Jul. 30, 2013). "Because personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause." *Id.* at *1. Judge Corley went on to conclude that "absent a showing of misconduct on Plaintiff's part such that serious questions exist as to the reliability and completeness of Plaintiff's expert's search, [defendant] is not entitled to a forensic examination of Plaintiff's personal computer." *Id*.

Wisk calls this procedure "minimally invasive," but there is nothing "minimal" about having a stranger comb through all of Dr. Xue's emails, text messages, internet browsing history—and, yes, photos of his young child—simply because there might be Wisk material on one of his personal devices.

And lest Wisk respond that "serious questions" do exist here (because Dr. Xue is allegedly the second coming of Anthony Levandowski—who, not for nothing, was the founder of Otto Trucking, a named defendant in that case, unlike Dr. Xue, who is a third-party in this one[4]), it is important to note that Judge Corley was focused on questions pertaining to the "reliability and completeness of *Plaintiff's expert's search*." (emphasis added) Here, Wisk would deprive Dr. Xue and his counsel the opportunity to even conduct their own examination. The focus, therefore, should not be on Dr. Xue at all; it should be on his counsel: can we and our vendor be trusted to conduct a thorough and reliable search of Dr. Xue's personal devices, as happens every day in

---

[4] It is worth mentioning that Wisk decided whom to name as a defendant. Their counsel surely had strategic and tactical reasons for not naming individuals, but Wisk can't have it both ways: Dr. Xue is a "third party" **when it suits Wisk**. For example, when we sought to review Wisk's communications to law enforcement to assist in deciding whether and to what extent Dr. Xue should invoke his Fifth Amendment privilege at deposition, Wisk's response made it very clear where he stood: "To put this 'request' into the proper context, Dr. Xue is a third-party witness who has improperly scuttled his own court-ordered deposition . . . by conditioning his appearance on access to materials to which he has no entitlement." (Dkt. 69) But now that Wisk wants something from Dr. Xue, we can expect them to argue the exact opposite: that Dr. Xue is not a "true" third party (*see* Dkt. 263), but rather that he is so closely aligned with Archer as to be a defendant in all but name.

trade secret disputes? We would like to think the answer, from all parties, is an unqualified yes—after all, we are the ones who pushed back when the government wanted to wipe information from Dr. Xue's devices, as we recognized that doing so might deprive the civil parties of information to which they were entitled.

Wisk cites to unspecified and unsubstantiated "conversations with the DOJ and FBI" to allege that among Dr. Xue's personal devices are "***the*** computer used to download the 4,977 files . . . and they also include evidence of the downloads' subsequent deletion, presumably by Xue." Dr. Xue's counsel were of course not privy to the government's discussions with Wisk; all we know is that, whatever the government found, it was deemed insufficient to support a criminal prosecution. That does not mean, of course, that there isn't information on at least one of Dr. Xue's personal devices that Wisk will eventually be entitled to obtain in discovery—there might be and there might not.

For now, however, we would respectfully submit that this is beside the point, as there is no justification to eviscerate Dr. Xue's privacy by ordering him to surrender each and every one of the seized devices to forensic inspection by a neutral third-party. Wisk counters that, because the FBI allegedly found evidence "of the downloads' subsequent deletion," this somehow means only a neutral can "identify the device used by Xue to perform his downloads, and . . . surface evidence of the downloads and subsequent deletions." This is disingenuous. We are not proposing to send Dr. Xue's devices to Jiffy Lube to see if their highly trained oil-change specialists can find evidence of Wisk's materials on his personal drives. We would employ a qualified forensic examiner to conduct that review. There is no reason to believe our vendor would not be able to find the same evidence Lighthouse would. If Wisk materials exist on any of Dr. Xue's devices—even files that were once present and subsequently deleted—our vendor will be able to find them.

Wisk closes by asserting that the "forensic evidence [it] seeks is highly targeted and relevant." Nothing could be further from the truth. The property receipt the FBI returned to Dr. Xue's investigator listed 37 separate devices, including two Dell laptops, three Lenovo Thinkpad laptops, four iPhones, an iPad, and 20 thumb drives. Even if that collection does include, as the government reportedly conveyed to Wisk, "***the*** computer" used to download Wisk materials, shouldn't Dr. Xue's counsel have the opportunity to determine which device that is before surrendering all 37 of them to a neutral party? We respectfully submit the answer is yes.

Wisk counters that to find the "needle" (the device that contains Wisk material) it needs the entire "haystack" (all of Dr. Xue's personal devices). Respectfully, that is nonsense. Wisk is not seeking the same from the other Archer employees; instead, the dispute there is whether to order *devices that have already been determined to contain Wisk material* to be turned over to a neutral.[5] Notably, in the case of those other employees, the "specific devices" at issue were identified by examiners working with . . . Morrison & Foerster, counsel for the employees. All Dr. Xue asks is for the same opportunity to have his counsel take the first crack at finding the "needle."

---

[5] *See* Dkt. 263, where Wisk's statement begins: "The evidence gathered to date has identified ***specific devices*** used by the Archer Employees to store confidential Wisk documents reflecting Wisk's asserted trade secrets. [citations] Wisk seeks a targeted forensic inspection into ***those devices*** because such an inspection is the ***only way*** to determine whether files were improperly copied or transferred to or from ***those devices***." (emphasis added, except for "the ***only way***," where it appears in the original)

| | |
|---|---|
| DATED: May 24, 2022 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By */s/ Yury Kapgan*<br>Yury Kapgan<br>Robert M. Schwartz<br>Michael T. Zeller<br>Diane Cafferata<br>Patrick Schmidt<br>Michael LaFond<br>*Attorneys for Plaintiff Wisk Aero LLC*<br><br>GOODWIN PROCTER LLP<br><br>By */s/ David R. Callaway*<br>David R. Callaway<br>Grant P. Fondo<br>Nicole L. Chessari<br>*Attorneys for Third-Party Dr. Jing Xue* |

6

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

                                                          */s/ Patrick D. Schmidt*

                                                          Patrick D. Schmidt