Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Wisk Aero LLC ("Wisk") and Archer Aviation Inc. ("Archer") respectfully submit this joint letter brief regarding the Protective Order in this case (Dkt. 161) ("PO"). The parties met and conferred via Zoom on May 26 and June 17, 2022. *Fact discovery closes August 24, 2022*; expert discovery closes November 2, 2022; dispositive motions are to be heard by January 11, 2023; and the pretrial conference and trial are set for March 13, 2023 and April 17, 2023, respectively. **The following dispute impacts pending depositions; the parties thus seek an expedited hearing**.

**Archer's Statement.** Wisk contends that specific individuals were involved in developing and using specific alleged trade secrets while employed by Wisk and misappropriated that information in their subsequent work at Archer. But having designated its Section 2019.210 Statement (Dkt. 148-7) and other litigation documents describing those alleged trade secrets and contentions as Highly Confidential – Attorneys' Eyes Only ("AEO"), Wisk seeks to deny Archer the ability to develop factual evidence from percipient witnesses in the defense of those misappropriation allegations. The parties disagree as to the PO's application to these documents, but, in light of that disagreement, Archer is refraining from showing Wisk's description of the trade secrets to the very individuals who Wisk alleges knew, developed, and/or misappropriated the trade secrets at issue; instead, Archer asks the Court to modify the existing PO to make clear its right to interview its own accused employees about the accusations against them, by adding the following provision:

> *If Wisk identifies or alleges that an individual was involved in the development, use, misappropriation, or otherwise possessed or knew of a specific alleged trade secret, then Archer's outside counsel may disclose to that individual (1) the portion of Wisk's Section 2019.210 statement describing that alleged trade secret, and (2) portions of Wisk's litigation documents served or filed in the case (e.g., interrogatory responses, declarations/reports, briefs, etc.) that relate to the alleged trade secret; provided that such individual agrees to be bound by the Protective Order and views a copy of the relevant portion(s) of those documents solely in the presence of Archer's outside counsel.*

*Brown Bag Software v. Symantec Corp.* sets forth the framework to review protective orders, which is to "balance the risk to [Wisk] of inadvertent disclosure of trade secrets to competitors against the risk to [Archer] that protection of [Wisk's] trade secrets [will] impair[] prosecution of [Archer's] claims." 960 F.2d 1465, 1470 (9th Cir. 1992); *Water, Inc. v. Everpure, Inc.*, 2011 WL 13186051, at *2–3 (C.D. Cal. June 17, 2011) (applying *Brown Bag* and permitting *defendant's employees* to view AEO documents to "defend itself or pursue its claims" because prejudice to defendant from "denial of access to critical and relevant information" outweighed risk of vague claims of competitive harm). That balance, as in *Water*, favors Archer's requested relief.

Wisk's section of this letter misstates *Brown Bag* and does not address this balance. Instead, Wisk argues wrongly that the decision in *UCAR, Inc. v. Yan Li* (No. 17-cv-01704 EJD (NC)) has already decided the issue here. It has not. In *UCAR*, defendants argued that the PO permitted disclosure of an AEO expert declaration to the individual defendants, which would expedite their expert's analysis. *Id.* Dkt. 135. In its brief order, the court found only that, on the facts presented, there was no good cause to allow the requested disclosures because "Defendants' expert witness [] has

1

already opined on plaintiffs' trade secret disclosures and should be able to respond." *Id*. Dkt. 142. Here, no expert can substitute for the percipient witness's personal knowledge of facts that can only be discovered through disclosure of the underlying allegations to them. *UCAR* did not create a blanket rule applicable here, and any such ruling would have been in error.

Under the PO, "the *author or recipient* of a document containing the information or a custodian *or other person who otherwise possessed or knew the information* …" may access that AEO information. Dkt. 161, § 7.3(f). Thus, Archer may disclose an AEO document to a current Archer employee who authored or received the document during their previous employment at Wisk, even if that document reflects Wisk's alleged trade secret.[1] Archer now seeks modification of the PO to also be able to discuss with its accused employees their conduct and knowledge that Wisk alleges as the bases for its misappropriation claims, including the employees' alleged involvement in developing or using the alleged trade secret while at Wisk. The employees are percipient witnesses of critical facts, and Archer has both a need for and a right to their evidence. Wisk's allegation that Archer employees already know of its trade secrets is an ample basis for interpreting or modifying § 7.3(f) to permit disclosure of Wisk's 2019.210 Statement and other litigation documents to these individuals who Wisk alleges knew, developed, or misappropriated the given trade secret, as such disclosures pose no additional risk of harm to Wisk. *TherapeuticsMD, Inc. v. Evofem Biosciences, Inc.*, 2021 WL 8444926, at *1 (S.D. Fla. Sept. 17, 2021) (construing the same § 7.3(f) language as permitting disclosure of plaintiff's confidential information to nonparties to whom *plaintiff had attributed* that information); *Softketeers, Inc. v. Regal W. Corp.*, 2019 WL 9047106, at *4 (C.D. Cal. Dec. 5, 2019) (requested recipients of trade secret source code "'otherwise possessed or knew the information' … because *Plaintiff had alleged as much* …."); *Profil Institut v. ProSciento, Inc.*, 2017 WL 11679187 (S.D. Cal. July 3, 2017) ("information or data that *Plaintiff claims Defendant misappropriated* should not be designated" AEO).

The general principle of permitting disclosure to individuals who "possessed or knew the information" aligns with a litigant's due process right to understand the specific allegations made against it. "[T]o enable [a defendant] to prepare a defense against claims that it has misappropriated trade secrets, it will need to know the *substance* of the secrets it has allegedly stolen." *VIA Techs., Inc. v. Asus Comput. Int'l*, 2016 WL 5930280, at *3 (N.D. Cal. Oct. 12, 2016). Here, Archer's alleged misappropriation was allegedly carried out by certain former Wisk employees—both Archer and the accused employees are entitled to "know broadly what trade secrets are at issue in order to address whether they had access to that information while employed at [Wisk], whether that information was treated as confidential, and whether their knowledge of that information came from [Wisk] or some other source." *Mitchell Int'l, Inc. v. Healthlift Pharm. Serv.*, LLC, 2020 WL 2736094, at *3 (D. Utah May 26, 2020). To deprive Archer access to the facts known only by the individuals concerning the substance of Wisk's allegations against them would violate due process and fundamental fairness, and prejudice Archer's defense. *See DIRTT Env'l Sols., Inc. v. Henderson*, 2020 WL 6263039, at *2 (D. Utah Oct. 23, 2020) (permitting review of an AEO interrogatory response because "[i]t would be inherently unfair to allow Plaintiff to assert that [the interrogatory answer] demonstrates a stealing of trade secrets, without allowing Defendant to test this assertion. A litigant cannot use [AEO designations] as a sword and shield.").

---

[1] Wisk's argument that this Court has held that an author of a document cannot see that document under the Court's Model PO is wrong and in flat contradiction of the terms of the PO.

*Core Laboratories LP v. AmSpec* is instructive. 2017 WL 3585420, at *1–3 (S.D. Ala. Aug. 18, 2017). There, the court de-designated AEO expert reports, permitting an individual defendant access to trade secrets *he* allegedly took to the defendant corporation. The *Core Labs.* court noted that "Plaintiffs essentially accuse Defendants of having taken the information but do not want Defendants to be able to see the information Plaintiffs claim Defendants stole." *Id*. at *3. Rejecting Plaintiffs' position, which was nearly identical to Wisk's here, the court reasoned: "The Plaintiffs are the parties who have put trade secrets … at issue through the … complaint []. Having done so, they may not then prejudice the Defendants' ability to defend against those claims by insisting that the Defendants not be able to examine and consult with their counsel about such key evidence that is being presented against them." *Id*. at *1. The same reasoning applies in full force here.

Unlike the cases cited by Wisk, including *Brown Bag*, the fact witnesses themselves—not an expert—are uniquely positioned to provide meaningful input to Archer's counsel to defend against Wisk's accusations (*e.g*., did the individual know the alleged trade secret, was that information kept secret at Wisk, and did the information originate from Wisk or some other source). *See Defazio v. Hollister, Inc.*, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007) (AEO not appropriate where party has "meaningful input" to defense or "determining the bona fides of" the opposing party's evidence and allegations). As recognized in *Mitchell*, "[t]hose issues can be addressed only by the parties themselves, not by retained experts." 2020 WL 2736094, at *3. Wisk's additional authority is inapposite in this regard: *Bradford* (contempt proceedings); *Medina* (denying *pro se* patent plaintiff blanket access to all defendant AEO information); *RPA* (defendant's "motion contains no legal authority or facts supporting his position"); *Intel* (in-house counsel not alleged to have any personal knowledge of AEO documents); *Acer* (denying blanket motion "deal[ing] only with generalities"). Judge Orrick's denial of Jing Xue's earlier motion also is not comparable: Dr. Xue sought communications between Wisk and the Government, which were not needed for Dr. Xue to decide whether to testify or not—Archer's defense was not implicated.

Archer has a compelling need to make the requested disclosures, and Wisk nowhere shows how it would suffer competitive harm from disclosures to the individuals who Wisk accuses of already knowing and having used its trade secrets. Good cause exists to modify the Protective Order.

**Wisk's Statement.** Archer's portion of this letter is premised on multiple misstatements. The most obvious are Archer's attempts to downplay both Judge Orrick's refusal to permit Archer employee Jing Xue to review *precisely this information* earlier in this case and Magistrate Judge Cousins' 2018 ruling considering and rejecting Archer's *exact arguments* in holding that litigation materials detailing a plaintiff's trade secrets may not be disclosed to its former employees—even if those former employees were alleged to have invented the trade secrets.

In *UCAR, Inc. v. Yan Li*, UCAR sued four former employees for trade-secret misappropriation, alleging the former employees stole source code they wrote and gave that code to a competitor. *See* No. 17-cv-01704 EJD (NC), Dkt. No. 1 ¶ 1 (alleging that the defendants "took" "all the work they had done for UCAR"). As in this case, Judge Cousins entered a protective order based on the N.D. Cal. Model Order, which allowed "the author or recipient of a document" to review that document, even if it was designated "Attorneys' Eyes Only." *Id*. Dkt. No. 80 ¶¶ 7.2(g), 7.3(e). Relying on that language, the *UCAR* defendants argued—as Archer does here—that the former employees should be permitted to see the trade-secret documents that the defendants were alleged to have written. *Id*. Dkt. No. 135 at 2 (letter brief arguing "Defendants already saw the code when they wrote it"). But Judge Cousins rejected that argument, holding that it was enough for the

3

defendants' expert to see the code. *Id*. Dkt. No. 142. Judge Cousins' decision in *UCAR* is on all fours, and rejects Archer's arguments.[2] Indeed, unless Archer admits that *all* the former Wisk employees authored, received, possessed or knew *all* of the trade secrets at issue, ¶ 7.3(f) of the Protective Order has no application.  That is why Archer seeks to modify the Protective Order.

Archer is not entitled to that modification. The longstanding rule in the Ninth Circuit is that a party's employees should be restricted from reviewing its adversary's trade secrets as long as the party has access to *independent consultants or experts* who are allowed to review the trade-secret information and consult with the party's counsel. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471–72 (9th Cir. 1992) (concluding that such an arrangement "strikes a reasonable balance" between the "conflicting interests" of preserving the confidentiality of the plaintiff's trade secrets and the other side's ability to mount a defense). The Ninth Circuit explained that granting the defendant's employee access to the plaintiff's trade secrets would be untenable, because the employee's future work "would necessarily entail advising his employer in areas relating to [the plaintiff's] trade secrets," creating a risk that the plaintiff's trade secrets would be used. *Id*. at 1471.

Archer's motion presents the same risk here. The individual employees to whom Archer wants to show Wisk's trade-secret disclosure are skilled engineers, working *for a competitor to develop a competing product*. Wisk's detailed trade-secret disclosure contains nearly eighty pages of engineering schematics and diagrams that an engineer could use to duplicate Wisk's designs. If—as Archer contends—its employees did not *already* steal Wisk's trade secrets to benefit Archer, disclosing Wisk's 2019.210 statement to them *would necessarily* put the information necessary to do so in their heads. To use the Ninth Circuit's language, their "employment [at Archer] would necessarily entail advising [Archer] in areas relating to [Wisk's] trade secrets." *See id*. at 1471. Indeed, this Court has repeatedly recognized the harm inherent in disclosing a party's trade secrets to a competitor's technical employees. *See, e.g.*, *Bradford Techs., Inc. v. NCV Software.com*, 2013 WL 75772, at *1, 6–8 (N.D. Cal. Jan. 4, 2013) (explaining that "the central purpose of the [protective order is] to protect against disclosure of highly confidential source code to a direct competitor while allowing *expert discovery* necessary to resolving the trade secret and copyright claims regarding that source code") (emphasis added).

Taking a step back, denying Archer's requested modification to the Protective Order will not prejudice Archer. The Wisk employees Archer poached *know exactly* what they did or did not take from Wisk. They *know exactly* what Wisk information they incorporated (or didn't) into Archer's competing products. They *know exactly* what they were obligated to keep confidential. As Judge Orrick previously ruled regarding Archer employee Dr. Xue, the former employees' memories should be *more than sufficient* to assist Archer's preparation of its defense. *See* Dkt. No. 70 ("Dr. Xue's own knowledge of his conduct and actions are sufficient to allow him and his counsel" to prepare for his deposition).[3] They do not need to review Wisk's detailed trade-secret disclosure to

---

[2]   Archer attempts to avoid *UCAR*'s holding with the bald assertion that "[h]ere, no expert can substitute for the percipient witness's personal knowledge of facts that can only be discovered through disclosure of the underlying allegations to them." But Archer doesn't attempt to explain how those considerations are *any different* than those presented to Judge Cousins in *UCAR*.

[3]   Archer's attempt to distinguish Judge Orrick's order regarding Dr. Xue fails. Dr. Xue sought access to *all* of Wisk's communications with the government as of July 1, 2021, and by that date

know whether they gave Wisk's information to Archer.

Indeed, multiple courts in this Circuit have held that it is improper to disclose trade-secret information to adverse individuals, including the employees of an adverse party, belying Archer's claim that deep "fairness" or "due process" issues are implicated here.[4] For example, in *Medina v. Microsoft Corp.*, Judge Corley rejected a plaintiff's attempt to access a competitor's designated materials by arguing his claimed inability to afford an expert outweighed his counter-party's "undeniable interest in keeping its highly confidential information out of the hands of competitors or potential competitors." 2014 WL 3884506, at *2–3 (N.D. Cal. Aug. 7, 2014); *see also RPA Int'l Pty Ltd. v. Compact Int'l, Inc.*, 2007 WL 4105725, at *3 (S.D. Cal. Nov. 16, 2007) (rejecting a request to review trade-secret information designated under the operative Protective Order because an expert could review the information instead); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530–31 (N.D. Cal. 2000) (denying a requested modification to a protective order to permit an employee to review designated information); *Acer Am. Corp. v. Tech. Props.*, 2009 WL 1363551, at *4 (N.D. Cal. May 14, 2009) ("[T]he court is skeptical about allowing even the most trustworthy of defendants' employees to view such sensitive information. That is usually why parties retain experts."). *Brown Bag Software* is binding here, and it strikes a fair balance. Archer's counsel is free to consult with the retinue of experts and consultants that it has already hired—who will be bound by the Protective Order—in order to analyze Wisk's trade-secret claims.[5]

As for Archer's authorities, most are out-of-circuit cases issued by courts not bound by *Brown Bag Software*. Because there is Ninth Circuit precedent directly on point, they are irrelevant here. And Archer's remaining smattering of in-circuit cases address modifications and alterations to protective orders permitting *parties to a case* to access designated information. But those are inapplicable, because Archer has previously succeeded in resisting discovery by arguing that Archer's employees are *third parties*. As the Court will recall, Archer has repeatedly leveraged the supposed third-party status of these employees by refusing to search their personal devices for retained Wisk documents and requiring Wisk to serve third-party subpoenas, which has greatly complicated Wisk's investigation. Archer cannot now claim these employees are party witnesses.

Wisk filed this suit to *preclude* its former employees from using its valuable intellectual property in their work for a competitor. Archer's request seeks to grant those same individuals access to *that exact information*. This Court should deny Archer's requested modification.

---

Wisk had already provided the government a copy of its 2019.210 statement. Thus Dr. Xue unsuccessfully sought to access the *exact same* document that is at issue on this motion.

[4] Indeed, Archer's *agreed* to use the Court's standard Protective Order *knowing* that its employees would not be permitted to see Wisk's trade secrets any more. The suggestion that requiring Archer to abide by the process it *stipulated to* somehow renders this matter fundamentally unfair is risible.

[5] That obvious point renders *Water, Inc. v. Everpure, Inc*. inapposite. In *Water*, the defendant, Everpure, had not hired any experts to analyze the confidential materials at issue, and the magistrate judge tasked with analyzing the plaintiff's confidentiality designations "decline[d] to force Everpure to hire an expert, train the expert in the particularities of the distribution arrangement between Water and Everpure, and solicit his/her expert opinion." 2011 WL 13186051, at *3 (C.D. Cal. June 17, 2011). Here, Archer has hired *a team of experts* to analyze Wisk's trade-secret claims, and they have *already opined on their merits*.

DATED: June 17, 2022                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By <u>/s/   Yury Kapgan</u>
Yury Kapgan
Robert M. Schwartz
Michael T. Zeller
Diane Cafferata
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By <u>/s/   Josh A. Krevitt</u>
Josh A. Krevitt
Daniel J. Thomasch
Wayne Barsky
Paul Torchia
Joshua H. Lerner
Michael H. Dore
Diana M. Feinstein
*Attorneys for Defendant Archer Aviation Inc.*

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Josh A Krevitt*

Josh A. Krevitt
