Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Plaintiff Wisk Aero LLC and Defendant Archer Aviation Inc. respectfully submit this joint letter brief regarding their dispute over the number of deposition hours in this case. The parties met and conferred via Zoom on June 14 and July 1, 2022. Fact discovery closes August 24, 2022; expert discovery closes November 2, 2022; the court will hear dispositive motions on January 11, 2023; and the pretrial conference and trial are set for March 13 and April 17, 2023, respectively. **The following dispute impacts pending depositions; the parties thus seek an expedited hearing**.

**Wisk's Statement.** This litigation is the first major case between companies in the nascent, highly competitive eVTOL aircraft industry, projected to have a future market value reaching one *trillion* dollars. The parties have exchanged *millions* of pages of documents, collectively served more than *forty* subpoenas, and engaged in intensive forensic and source-code review. Archer alone has disclosed nearly *five dozen* witnesses whom it represented have knowledge about Archer's claims or defenses (and that is to say nothing of the Wisk employees that Archer also identified). All told, the parties have disclosed approximately 80 unique fact witnesses with relevant knowledge.

This dispute arises from the parties' inability to agree on an appropriate scope of depositions to match the breadth of this case, which includes 20 trade secrets, 4 patents, and multiple counterclaims. Wisk has mapped out the minimum witnesses and time it will need. Based on that analysis, Archer's identification of witnesses, and discovery to date, Wisk requires: (i) 68 hours for Archer employees and engineers (including former Wisk employees); (ii) 46 hours for Archer vendors and consultants related to pertinent technology; (iii) 24 hours for Archer's counterclaims; (iv) 14 hours for 30(b)(6) witnesses designated beyond those individually noticed; and (v) 8 hours for cross examination of witnesses likely to be noticed by Archer, totaling 160 hours. This proposal does not include even half the witnesses Archer identified, but it does include at minimum the following: A. Goldstein; B. Adcock; J. Melack; C. Zhang; D. Marius; T. Muniz; S. Furman; A. Bajovic; J. Xue; G. Bower; D. Stewart; S. Brajovic; M. Divaker; J. Wang; R. Ormiston; Z. Hazen; C. Hughes; M. Spellacy; EPS; Electro.Aero; MagicAll; Allocor; and Archer's PR firms.

Archer has rejected any more than 80 hours of deposition testimony per side, with each noticed deposition counting a minimum of four hours. That is about 11 depositions of seven hours each, or 16 depositions of five hours each. That is not nearly enough. At the initial case management conference, Judge Orrick concurred with Wisk's observation that "we already see that 15 [depositions] is going to be inadequate no matter what," saying "*[t]hat sounds like it. I agree*."[1] Aug. 11, 2021 Hrg. Tr. at 54:21–23 (emphasis added); *see also id*. at 53:16–19 (Judge Orrick noting that "this case is clearly going to require *a lot more—a significant amount of just deposition testimony beyond the 10* that are allowed by the local—by the Federal Rules") (emphasis added).

To put a finer point on it: Archer has premised its defense on its supposed independent

---

[1] While Archer argues that these comments were made before narrowing, the Court noted at the same hearing that it already had in mind a narrowing process. *See* 8-11-21 Hrg. Tr. at 48:16-21.

1

development of the aircraft designs and technologies Wisk alleges Archer misappropriated. Archer claims it developed its competing technologies using various third parties, rather than by extracting Wisk's intellectual property from the dozen-plus Wisk employees that Archer hired. But even deposing *that limited subset* of individuals would exhaust the 80-hour cap that Archer seeks to impose. Even assuming only five hours per deposition, Wisk would hit its time limit after taking the testimony of *just sixteen people* and would not be able to depose the bare minimum number of witnesses set forth above on which Archer has staked its alibi. Beyond that, Archer has disclosed *still more* witnesses—including its public-relations firms—as having knowledge to substantiate the supposed reputational harm underlying Archer's counterclaims. Thus, Wisk's proposal that the parties agree to 160 hours of deposition testimony per side is reasonable. That would permit roughly 22 full-day depositions—less than half of the number of people Archer has identified.[2] Cutting off Wisk's ability to test Archer's independent-creation claims under the penalty of perjury risks depriving Wisk of crucial evidence. Depositions will likely be Wisk's primary opportunity to develop evidence in response to Archer's anticipated summary-judgment motion, and gather impeachment material for trial. Wisk will be disproportionately prejudiced if Archer is permitted to submit testimony from witnesses whom Wisk had no opportunity to depose. And, unless the Court grants relief soon, Wisk must begin executing a truncated deposition plan, omitting key witnesses and cutting examinations short.

Under Federal Rules of Civil Procedure 26(b) and 30(a)(2), courts routinely expand the scope of permissible depositions in complex cases with numerous witnesses, or where complicated technical concepts are at issue. *See, e.g.*, *Newport v. Burger King Corp.*, 2011 WL 3607973, at *2 (N.D. Cal. Aug. 16, 2011) (Ryu, J.) (permitting ten additional, four-hour depositions to account for the large number of parties); *Thykkuttathil v. Keese*, 294 F.R.D. 601, 603 (W.D. Wash. 2013) (permitting seven additional depositions because the plaintiffs "disclosed in excess of thirty potential lay witnesses"); *C & C Jewelry Mfg., Inc. v. West*, 2011 WL 767839, at *2 (N.D. Cal. Feb. 28, 2011) (permitting nine additional depositions of individuals whose "experience or knowledge . . . [are] relevant to its obviousness and non-infringement defenses"). Importantly, Archer does not claim that Wisk's request is disproportionate to the needs of a case of this magnitude. Instead, Archer's primary argument is that Wisk's request comes too late. That argument ignores that Wisk has requested additional deposition time from the Court *twice before* (Dkt. No. 117 at 9; Dkt. No. 242 at 16), and now makes this *third* request after complying with this Court's instructions to confer with Archer before seeking judicial intervention.

Archer also disregards that it (and the former Wisk employees it hired) produced *138,423 total pages of discovery* in *just the month prior* to Wisk serving deposition notices, and 162,619 pages

---

[2]  A quick search of patent and trade-secret cases involving Archer's counsel reveals numerous instances of orders permitting 120 to 200 hours of deposition time, in cases that appear no more complex than this one. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, Dkt. No. 104 (D. Del. May 12, 2010); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-620, Dkt. No. 160 (N.D. Cal. May 2, 2012); *Sprint Commc'ns, Co. v. Charter Commc'ns, Inc.*, No. 20-2161, Dkt. No. 287 (D. Kan. Sept. 10, 2021). Archer was previously willing to agree that the parties could take *200 hours* of total depositions per side, conditioned on Wisk's agreement that the parties could allocate as much of that time as they wished to 30(b)(6) depositions. Wisk has since offered to agree.

since the March 22 CMC.[3] As Archer conceded at the last CMC, one-third of its document production did not arrive until March. Since the CMC, Wisk learned that Archer unilaterally decided to withhold technical documents created or acquired after January 2022, despite its ongoing aircraft development central to the claims at issue. After extensive conferring on Archer's duty to supplement under the Federal Rules, Archer only backed off that position *last week*—after Wisk served its half of a joint letter. Despite critical discovery continuing to emerge, Wisk served its first seven deposition notices on June 10, over 10 weeks before the close of fact discovery. Archer delayed a full 2 weeks before providing availability for its first witnesses, and the earliest date offered (July 7, and even that has been withdrawn) was *nearly a month* after Wisk served its notices. The issue here is not any lack of diligence on Wisk's part; it is *Archer's* delay. Finally, this letter brief comes after extensive negotiations. In an effort to avoid burdening the Court, Wisk made real concessions, reducing its initial request from 200 hours to as few as 130 hours as an interim measure, in the interest of reaching an agreement. Wisk reasonably believed that the parties could reach a compromise on deposition hours. There was no unreasonable delay in filing this brief. Wisk respectfully requests an order that the parties may take up to 160 hours of depositions per side. This relief is required now to provide clarity and inform a comprehensive deposition plan.

**Archer's Statement.** While Wisk purportedly considers this a seminal and extraordinarily high-value case, and initially pressed for a ***January 2022*** trial date, it has inexplicably not taken a single deposition in the *11 months* since Judge Orrick denied its motion for a preliminary injunction. Nor during that time has Wisk moved the Court to exceed the deposition limits set by Rule 30(a), even though Judge Orrick twice advised it to do so. Indeed, having allowed 11 months to slip by, Wisk now runs to Court with fewer than 60 days of fact discovery remaining, with no explanation for why it sat on its hands for so long.

Wisk correctly notes that Judge Orrick contemplated more than 10 depositions would be needed in this case during the initial case management conference *last August*. But Judge Orrick made that comment when there were still nine months left before the prior discovery deadline, and Wisk had 52 sweeping trade secret claims and more than 57 patent claims in six patents. But the parties are now fewer than 60 days from the discovery deadline, and Wisk's claims are narrower (20 trade secrets and 10 patent claims) and will be further narrowed on September 1. Dkt. 257. Even if Wisk could have justified 160 deposition hours back then, it cannot do so now, particularly in view of the enormous burden that would be imposed on Archer by Wisk's inexcusable delay.[4]

---

[3]  Below, Archer claims that "the vast majority" of those productions responded to RFPs and subpoenas served after (or just before) the March 2022 CMC. That doesn't square with Archer's production correspondence, which represented that its April 1, 2022 production contained documents responsive to Wisk's ***first*** set of RFPs from *June 2021*. Or its April 13 production letter, which said the same thing. Or its April 18 production letter. Or its May 5 production letter. Or its *May 18, May 20, May 27, June 3, and June 16 production letters*, **all of which** represented that they accompanied documents responsive to Wisk's ***first*** set of RFPs. If it would assist the Court's analysis, Wisk would be more than willing to submit Archer's correspondence for the record.

[4]  Archer's proposal of 80 additional hours of deposition testimony is not inconsistent with Judge Orrick's comment. By moving to an hours-based approach, the 80 hours proposed by

The issue here is not about the right number of deposition hours in a case of this purported magnitude; it is the appropriate number of deposition hours to be conducted in the *55 days* remaining for fact discovery. Archer's proposal of 80 additional hours of depositions per side is more than reasonable, as it would allow the parties sufficient time to obtain all necessary discovery and complete fact discovery by the August 24 fact discovery deadline. This is particularly true given that Wisk has already taken 11 depositions—totaling 40 hours—during the preliminary injunction phase of this case. Wisk's proposal, by contrast, is unduly burdensome and logistically impossible to conduct in the short time remaining. If that fact poses a problem for Wisk, it is one entirely of its own making. The Court should not reward Wisk's unjustified delay at great inconvenience and expense to Archer and the many witnesses Wisk seeks to depose. Nor should the Court condone Wisk's effort to obtain a massive number of deposition hours and then use that ruling to leverage an extension of the discovery cutoff date, which is no doubt its strategy.

Wisk has known for more than *a year* the number of vendors, consultants, and employees Archer relied on to independently develop its eVTOL aircraft. *See* Archer's June 1, 2021 Answer (Dkt. 31); Archer's June 23, 2021 Opp'n to P.I. Mot. (Dkt. 58); Archer's June 29, 2021 Initial Disclosures. Wisk has also known of Archer's current proposal regarding deposition limits since, at the very least, the parties filed a joint CMC statement on March 16, 2022 (and Wisk was no doubt aware of the default limits under Rule 30(a) long before then). Dkt. 242. At the March 22 CMC, Judge Orrick instructed the parties to bring the issue before Your Honor if they could not agree, suggesting that the parties "start with whatever you can agree to and then identify specifically why you need more." Dkt. 256 at 25:2–8. Despite all of this, Wisk did not once reach out to Archer to discuss a compromise. Instead, it served a 99-topic Rule 30(b)(6) notice and seven Rule 30(b)(1) notices for current Archer employees on June 10—nearly *three months after* the March 22 CMC. Archer promptly responded, informing Wisk that the dates it had unilaterally selected for the Rule 30(b)(1) witnesses were unworkable but that Archer would provide alternative dates and meet and confer regarding the Rule 30(b)(6) notice once it had fully reviewed the 99 topics, which meet and confer occurred on June 27. Archer further informed Wisk that Archer's position on deposition hours had not changed from its position at the March CMC. Only now, 55 days before the close of fact discovery, has Wisk finally made its motion.

Wisk's delay is inexcusable and its request is wildly excessive given the remaining time in the schedule and its do-nothing approach to this litigation. Archer should not be required to incur substantial expense and burden to comply with Wisk's unreasonable proposal at this late hour. *See Acosta v. Sw. Fuel Mgmt., Inc.*, 2018 WL 1913772, at *6–7 (C.D. Cal. Mar. 28, 2018) (denying request for 140 deposition hours filed on the eve of the close of discovery, noting that given "the time required for ... the scheduling of depositions, there is no way the depositions could have been completed before the discovery cut-off even if" the motion was granted "on the day the motion was ready to be ruled upon"); *Nat. Res. Def. Council, Inc. v. Winter*, 2008 WL 11338647, at *2 (C.D. Cal. July 11, 2008) (denying request where defendant was on notice of potential witnesses and did not demonstrate "why it could not have completed or sought leave to depose" those witnesses during the discovery period). Nor should the Court give any credence to Wisk's attempts to blame everyone but itself for its own yearlong delay. For example, Wisk fails to mention that

---

Archer would allow each party to take up to 20 depositions (at the minimum of four hours per deposition). This is of course in addition to the 11 depositions (totaling 40 hours) that Wisk already took during the preliminary injunction phase of the case.

the vast majority of the 162,619 pages Archer and its employees have produced since the March 22 CMC consisted of documents responsive to Wisk RFPs and subpoenas served *after (or very shortly before) March 22*, ESI searches Wisk requested *after March 22*, hyperlinked documents and historical versions of documents Wisk requested *after March 22*, and partially privileged documents produced in tandem with Archer's privilege logs.[5]  Nor should Wisk be heard to complain about Archer's recent supplemental production of very recently created (as recent as last week) technical documents after completing its production earlier this year, when Wisk itself did not even begin producing in earnest any of its technical documents related to its fifth- or sixth-generation aircrafts until the last few weeks (only after Archer filed a motion to compel (Dkt. 271)).  Archer is not to blame for Wisk's failings, and it is simply not credible that Wisk was unable to take a single deposition in this case since last summer.

To justify its extensive request, Wisk "must make a *particularized showing* of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (emphasis added).  Wisk fails to come close.  Wisk's primary argument is that the number of individuals disclosed by Archer in its initial disclosures necessitates more than 80 additional deposition hours.  But even if many months were left in the discovery schedule, Wisk's reliance on the number of individuals identified in Archer's initial disclosures is inapposite.  Rule 30(a) has a presumptive limit of 10, seven-hour depositions per side irrespective of how many individuals are identified in initial disclosures.  Archer disclosed individuals likely to have discoverable information, and it should not be penalized for thoroughly complying with this obligation (particularly given the sweeping breadth of Wisk's claims).  Courts have routinely rejected parties' attempts to expand the number of depositions based on the number of individuals identified in initial disclosures.  *See, e.g.*, *In re At Home Corp.*, 2005 WL 289976, at *3 (N.D. Cal. Feb. 4, 2005) ("The number of potential witnesses does not justify deposing every one.  Many of them may duplicate each other's testimony."); *Acosta*, 2018 WL 1913772, at *8 & n.8 (rejecting defendants' request for 140 deposition hours based on defendants' "mischaraterization [*sic*] of plaintiff's disclosure of more than 700 witnesses in his initial disclosures as 'trial witnesses'").

Most importantly, Wisk's proposal is simply unworkable as a practical matter.  Wisk has not explained how it is logistically possible to take and defend a collective 320 hours of deposition testimony in less than two months (during peak vacation season).  Archer's proposal, in contrast, is reasonable and proportionate to the needs of this case, particularly in light of the (previously extended) fact discovery cutoff date.  It will allow the parties sufficient time to obtain all testimony necessary for summary judgment and trial without imposing undue burden or expense on the parties, third parties, witnesses, or Court.  And critically, it will allow the parties to complete fact discovery by August 24—allowing this case to proceed apace.

---

[5] The accuracy of this statement is not undermined by Archer's production cover letters.  Archer's production of the document categories identified above supplemented Archer's earlier productions responsive to Wisk's RFP Sets 1–3, which were made predominantly in response to post-March 22 follow-up requests from Wisk.

DATED: July 1, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Yury Kapgan*
Yury Kapgan
Robert M. Schwartz
Michael T. Zeller
Diane Cafferata
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By /s/ *Josh A. Krevitt*
Josh A. Krevitt
Daniel J. Thomasch
Wayne Barsky
Paul Torchia
Michael H. Dore
Diana M. Feinstein
*Attorneys for Defendant Archer Aviation Inc.*

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Yury Kapgan*