QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted *pro hac vice*
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael H. Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone: 310.552.8500

Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC, | CASE NO. 3:21-cv-02450-WHO |
| Plaintiff, | **THIRD JOINT CASE MANAGEMENT STATEMENT** |
| vs. | |
| ARCHER AVIATION INC., | |
| Defendant. | |

**JOINT CASE MANAGEMENT STATEMENT**

I.     **Current Status of the Case**

*Plaintiff Wisk's Statement.*  With the parties preparing for depositions in the coming weeks, Wisk needs resolution as to two issues in particular to ensure it gets the discovery it needs before the close of fact discovery on August 24.  The first issue concerns appropriate deposition limits.  Although the briefing of that issue is pending before Judge Ryu, Wisk mentions it here because it may affect the case schedule—including through a potential Rule 56(d) motion.[1]  The second issue is when, and to what extent, Archer will narrow its prior art and trade secret references now that Wisk has narrowed its claims.  Wisk respectfully seeks the Court's assistance on that issue:  although Archer suggests it is inappropriate to raise here, Archer asked for claim narrowing in a previous CMC statement and received that relief.  Until these two issues are resolved, Wisk will continue to be seriously impaired in obtaining the evidence it needs to prove its case and defend against Archer's counterclaims.

*Defendant Archer's Statement*.  Since the last Case Management Conference, Archer has continued to pursue written and documentary discovery aimed at its anticipated summary judgment motion(s).  Wisk has presented numerous obstacles to the completion of that discovery, necessitating the preparation of more than a half-dozen motions to compel that are in the joint letter briefing process in advance of submission to Judge Ryu.  Wisk should not be asking this Court to intervene in matters pending before Judge Ryu, such as Wisk's belated request for an increase in deposition limits that is incompatible with the time remaining for fact discovery; Archer has its own concerns about Wisk's discovery positions and tactics, but it is directing those concerns to Judge Ryu.   And, Wisk's previously-unannounced but now-urgent need for substantive limitations on prior art—including an unprecedented request for limiting the number of trade secret references to public information— affects Archer's substantive rights, making it more appropriate for full briefing on an appropriate motion than resolution via a CMC Statement.

---

[1]   Archer's claim that Wisk is asking this Court for discovery relief that should be pending before Judge Ryu has no basis; Wisk has multiple discovery disputes before Judge Ryu, including the deposition limit issue.  Moreover, it is a particularly odd charge, given Archer's motion in section IV seeking an exception to one-lawyer questioning for 30(b)(6) depositions, clearly a discovery-related issue.

## II.     Motions

The pending motions and letter briefs are: (a) Wisk's motion to compel neutral forensic examinations of personal devices owned by current Archer (former Wisk) employees Thomas Muniz, Johnny Melack, Diederik Marius, and Scott Furman (Dkt. 263), for which Judge Ryu has scheduled a hearing on July 14, 2022 (Dkt. 270); (b) Wisk's motion to compel forensic examination of personal devices belonging to Jing Xue (Dkt. 273), for which Judge Ryu has scheduled a hearing on July 14, 2022 (Dkt. 275); (c) Wisk's unopposed administrative motion to seal its responses to four Archer interrogatories filed in connection with Archer's motion to compel supplemental responses to those interrogatories (Dkt. 234); (d) unopposed administrative motions to seal filings made in connection with Wisk's motion to compel forensic inspections of certain personal devices of four Archer employees (Dkt. 261); (e) Wisk's motion seeking 160 hours of deposition testimony (Dkt. 280), for which the parties jointly requested an expedited hearing, though no hearing has been scheduled yet; (f) Archer's challenges to certain clawbacks by Wisk (Dkts. 281, 282); and (g) Wisk's motion accusing Archer of mishandling Wisk's clawbacks (Dkt. 284).

***Plaintiff Wisk's Statement.***   Wisk may file the following motions and perhaps others: (a) a motion to compel Archer to search for and produce documents related to the hardware and circuit design for its motors and motor controllers for Wisk Requests for Production Nos. 138-39; (b) a motion to compel Archer to produce documents responsive to Wisk Request for Production No. 274, which seeks the basis for its counterclaims; (c) a motion to compel Archer to supplement its responses to Wisk's Interrogatories 18, 19, 20 and 21 regarding the basis of Archer's counterclaims; (d) a motion challenging Archer's claims of common-interest privilege over its communications with an adverse third party; (e) a motion to compel Archer to supplement its response to Wisk Interrogatory No. 15 regarding information about Archer's motor tools; (f) a motion for summary judgment on Archer's counterclaims; (g) a motion for sanctions and other relief related to former-Wisk, now-Archer employee Scott Furman's intentional destruction of Wisk documents *after* he was served with a subpoena; and (i) a motion for summary judgment on certain elements of Wisk's affirmative claims.

***Defendant Archer's Statement.***   At this time, Archer anticipates filing, *inter alia*, (a) a motion to compel Wisk to produce documents and RFA responses related to documents cited in Wisk's

Section 2019.210 statement; (b) a motion to modify the Stipulated Protective Order to allow former Wisk/current Archer employees alleged to have had access to or misappropriated trade secrets to review the "Highly Confidential – Attorneys Eyes Only"-designated allegations against them;[2] (c) a motion to compel Wisk to search for and produce documents responsive to Archer's seventh set of RFPs, which relate to Wisk's knowledge that Archer used third-party technology—and thus did not use Wisk's trade secrets—when Wisk filed this case, and Wisk's use of third-party technology to supplement or replace Wisk's use of its own trade secrets in its sixth generation aircraft; (d) a motion to compel Wisk to supplement its responses to Archer's Interrogatory No. 9 (the identification of Wisk's alleged trade secrets used or planned to be used in Wisk's sixth generation aircraft) and No. 11 (the identification of individuals that had access to Wisk's alleged trade secrets), which Archer first raised with Wisk in March and for which Wisk promised on May 20 to supplement by June 10 (Wisk still has not provided the promised supplemental responses as of July 5); (e) a motion to compel Wisk to supplement its responses to Archer's Interrogatory Nos. 1, 3, and 23 to provide trade secret-by-trade responses, as opposed to Wisk's current contention responses that group multiple asserted trade secrets together in collective subheadings that obscure which part of Wisk's contentions relate to which individually asserted trade secret within those subgroupings of multiple alleged trade secrets; (f) a motion to compel the production of improperly withheld documents identified on Wisk's privilege logs; (g) a motion to compel Wisk to produce patent-related documents; (h) a motion to compel Wisk to produce documents responsive to Archer's RFP Nos. 156–165, which seek documents related to Wisk's funding and specific provisions in Wisk's operating agreements; (i) motions to compel Kitty Hawk Corporation and The Boeing Company to produce documents responsive to Archer's subpoenas to those third parties (which co-own Wisk); (j) a motion for

---

[2]   Archer filed a joint letter brief on this issue on June 17, 2022 (Dkt. 278), for which the parties jointly requested an expedited hearing.  On July 1, 2022, Judge Ryu denied the motion without prejudice, requesting the parties meet and confer and resubmit a joint letter brief by July 6, 2022, providing more detail regarding the particular employees and allegations at issue, why Archer's defense would be hampered if prevented from sharing Wisk's AEO-designated information with its employees, the particular harm that Wisk contends will result from Archer sharing AEO-designated information with certain employees, and why the risk of harm outweighs the risk that Archer's defense may be impaired if the protective order is not modified.  Dkt. 279.

1  summary judgment in Archer's favor on Wisk's claims; and (k) pretrial motions, including *Daubert*
2  motions and motions *in limine*.

3  **III.    Amendment of Pleadings**

4        ***Plaintiff Wisk's Statement.***  Plaintiff Wisk has already amended its complaint twice.  (*See*
5  Dkt. 45; Dkt. 148.)  Although Wisk may consider further amendments based on information learned
6  in discovery, Wisk does not anticipate further amendments at this time.

7        ***Defendant Archer's Statement***.  Archer agrees that, given the advanced stage of the case,
8  neither party should be granted leave to amend.

9  **IV.    Depositions**

10       ***Plaintiff Wisk's Statement.***  In view of the number of patents and trade secrets at issue and
11  the various individuals and third parties with evidence related to this action's claims and
12  counterclaims, Wisk believes that the discovery limitations set forth in the Federal Rules of Civil
13  Procedure will need to be expanded to permit additional depositions.  On June 23, 2022, Archer served
14  its amended initial disclosures, identifying over 50 fact witnesses who have relevant knowledge—25
15  party witnesses and at least 28 third party witnesses.   Also, in this case in particular, third-party
16  testimony will be very important given the nature of Archer's defenses, *i.e.*, Archer's contention that
17  it relied on multiple third parties to independently develop the technology at issue, rather than relying
18  on intellectual property provided by the dozen-plus Wisk employees Archer hired.  The parties have
19  attempted to compromise on deposition limits with no success.[3]

20       Wisk has mapped out the minimum witnesses and time it will need for depositions in this case.
21  Based on that analysis, Archer's identification of witnesses, and discovery to date, Wisk anticipates
22  that it will require: (i) 68 hours for Archer employees and engineers (including former Wisk
23  employees); (ii) 46 hours for Archer vendors and consultants related to pertinent technology; (iii) 24
24  hours for Archer's counterclaims; (iv) 14 hours for 30(b)(6) witnesses designated beyond those

---

[3]   As noted above and below, Wisk has submitted this dispute for a ruling by and defers to Judge Ryu
(Dkt. 280).  Given the nature of the issues to be discussed during the case management conference,
however, Wisk brings this issue to the Court's attention as it relates to case management issues more
generally.

individually noticed; and (v) 8 hours for cross examination of witnesses likely to be noticed by Archer, totaling 160 hours. That includes at minimum the following: Adam Goldstein; Brett Adcock; Johnny Melack; Ke Zhang; Diederik Marius; Tom Muniz; Scott Furman; Andrew Bajovic; Jing Xue; Geoff Bower; Donald Stewart; Sonja Brajovic; Moses Divaker; James Wang; Robert Ormiston; Zach Hazen; Calder Hughes; M. Spellacy; EPS; Electro.Aero; MagicAll; Allocor; and Archer's PR firms.

Wisk asked for 250 hours of deposition time per side in the original Case Management Statement, while Archer asked for 15 fact witness depositions, *excluding* third parties (*i.e.*, ~105 hours for party witnesses alone). (Dkt. 117 at 9.)  The Court recognized, at the first CMC hearing, that the scope of this case would require more than the 15 depositions Archer was proposing.  (8/11/2021 Hr'g Tr. at 54:8-55:8.)  However, the Court asked the parties to confer in an effort to resolve the issue. Consistent with the Court's instructions, the parties continued their meet and confer efforts regarding deposition limits, and came close to reaching an agreement that would permit 200 hours of depositions per side, with the only disagreement being the allocation of 30(b)(6) time.

Consistent with the parties' prior discussions, Wisk asked for the 200 hours per side in its Second Case Management Statement.  (Dkt. 242 at 16.)  However, Archer substantially lowered its position and proposed only 80 hours per side including third-party testimony (Dkt. 242 at 16-17)— which is significantly less than the 105 hours for party witnesses that would have been permitted by the 15 deposition limit in Archer's original proposal (with unlimited third party testimony), let alone the 200 hours which Archer seemed to previously recognize as acceptable (the main dispute having been allocation of 30(b)(6) time).

After the Second Case Management Conference, and in further effort to reach compromise, Wisk proposed a limit of 160 hours of depositions per side (including third parties), a significant concession from its original ask of 250 hours; and Wisk also acceded to Archer's proposal regarding allocation of 30(b)(6) time.  But Archer refused to move from its 80 hour proposal.  In a final effort at compromise, Wisk proposed that the parties agree to as few as 130 hours, with leave to take additional depositions upon a showing of good cause, but Archer still would not agree.  Given the *more than 50* fact witnesses that Archer identified, Wisk also suggested the parties agree that neither side would be permitted to submit testimony at summary judgment or trial from any witness who

could not be deposed due to time limitations.  Archer did not respond to this proposal.  Throughout these negotiations, Wisk has offered compromise after compromise.  Archer's 80 hour proposal is not workable.  Even if Wisk spent only *half* the time allotted for each deposition under the Federal Rules (*i.e.*, 3.5 hours each), it would take over 185 hours to depose the witnesses identified in Archer's amended initial disclosures.

Without an agreement on deposition limits, Wisk is facing a Hobson's choice: either (1) limit the number and duration of depositions at the expense of obtaining sufficient evidence to prove its case and defend against Archer's counterclaims, or (2) proceed as it had planned assuming it will obtain sufficient relief from the Court to take the depositions it needs, at the risk of being limited from doing so once it reaches the 80 hours which Archer has proposed.  Despite this uncertainty, and in the interest of moving towards completion of fact discovery, Wisk served multiple deposition notices and a comprehensive 30(b)(6) deposition notice on June 10, 2022, and began arranging for the third-party depositions of multiple Archer vendors, all while the parties continued to negotiate deposition limits.  In all, thus far Wisk has informed Archer that it intends to take the depositions of at least the 23 witnesses noted above, plus any additional witnesses whom Archer designates as its 30(b)(6) representatives.  And now, after nearly a month has passed since Wisk sent Archer its deposition notices, Archer has provided availability for only two witnesses, and has failed to designate a single witness on the 30(b)(6) topics Wisk served.

Given the volume and timing of technical discovery and ESI in this case, Wisk could not have reasonably begun noticing these depositions earlier.  In just the last month, Archer and the former Wisk employees produced more than 115,000 pages of documents.  Critically, until June 24, 2022—after Wisk served Archer with a letter brief on the subject—Archer refused to produce technical documents for its production aircraft (or any documents created after January 2022), a central product at issue in this case.  All of those documents should have been produced *months* ago, but are only being produced now (supposedly); depositions could not reasonably begin without such critical

documents.[4]  Moreover, because the parties' prior negotiations about deposition limits were centered on a limit in the 200-hour range, Wisk reasonably abstained from burdening the Court with motion practice earlier in anticipation that the parties would work out a reasonable agreement.  Now that depositions are imminent, and the parties have been unable to come to agreement, the parties have submitted a joint letter brief to Judge Ryu, in which Wisk seeks 160 hours of deposition time per side (Dkt. 280).  Wisk is ready to notice further depositions on technical issues, damages, and Archer's counterclaims, upon receiving the necessary time to fully investigate the issues in this case.  Given the scope of this case and the current fact discovery cutoff of August 24, Wisk has sought quick resolution of this issue so that it can decide how to plan depositions and how long it should spend on the depositions requested thus far.  If Wisk cannot obtain all of the depositions it needs prior to the close of fact discovery, Wisk may need to seek to take depositions out of time, seek an extension of the fact discovery cutoff (which Wisk does *not* prefer), and/or file a Rule 56(d) motion in response to any summary judgment motion Archer may later bring.  *See, e.g. Aparicio v. Comcast, Inc.*, 2017 WL 7087498, at *3 (N.D. Cal. June 14, 2017) (Rule 56(d) relief was appropriate where party submitted discovery dispute requesting extra depositions before summary judgment).[5]

Separately, Wisk opposes Archer's request to depart from single-attorney questioning where a witness testifies under Rule 30(b)(6) on multiple topics.  First, this is a discovery issue that should have been raised before Judge Ryu and not by CMC statement, where Wisk has limited ability to respond.   Second, it is "typical practice … for only one attorney to question a witness at a deposition[.]"  *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF (SVK), Dkt. 354 at *2 (N.D. Cal. Sep. 9, 2019) (Order on Joint Discovery Letter Brief re Expert Depositions of Drs. Mitzenmacher, Jaeger, and Orso).  Archer has not made any showing of circumstances necessary to warrant departure

---

[4]  This serves as just one example of the parties' disputes about the appropriate scope of document discovery that have caused delays in Wisk's ability to notice and prepare for depositions.  The various letter briefs Wisk intends to file addressing these issues are outlined in the Motions section.

[5]  Archer's claim that Wisk "failed to find any evidence of misappropriation" is demonstrably untrue, as explained in Wisk's extensive interrogatory responses.  But a case management statement is not the place to discuss the merits of the litigation.

from this practice. *See id.* Nor is Archer's reliance on *Rockwell* persuasive, as that case examined a situation where a non-party was ordered to answer questions asked by two attorneys after the non-party failed to show up to two, separate motion to compel hearings and the third party agreed to be deposed by both counsel. *See Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*, 712 F.2d 1324, 1325-26 (9th Cir. 1983). This is inapposite to *Cisco*, as under *Cisco*, it is inappropriate to have two different attorneys ask questions at a deposition. *See Cisco Sys. Inc.*, No. 17-cv-00072-BLF (SVK), Dkt. 354 at *2. Archer's bare assertion that there is no prejudice to Wisk or its witnesses from deviating from the typical practice of single-attorney questioning is not enough justification for allowing Archer to depart from such practice just because it wishes to do so, and particularly by trying to jump the line in front of numerous other discovery disputes that were properly teed up before Judge Ryu.

**Defendant Archer's Statement.** Wisk's motion for 160 hours of deposition testimony per side is currently pending before Judge Ryu, and the parties have jointly requested an expedited ruling on the issue. *See* Dkt. 280.[6] Inexplicably, Wisk waited until July 1—more than *three months after* this Court instructed the parties to bring the issue before Judge Ryu at the March 22 CMC if they could not reach an agreement—to file its motion. *See* Dkt. 256 at 25:2–8. In the interim, Wisk did not once reach out to Archer to discuss a compromise but instead waited until June 10 to serve its first deposition notices to Archer—a 99-topic Rule 30(b)(6) notice and seven Rule 30(b)(1) notices for current Archer employees. Wisk's eleventh-hour request is not feasible: Wisk does not explain how it would even be logistically possible to take and defend a total of 320 hours of deposition testimony in the 50 days remaining in the fact discovery period (during peak vacation season as well). Archer believes that 80 hours of deposition testimony per side is reasonable and proportionate to the needs of this case and would allow the parties to complete depositions by the August 24 the fact discovery deadline set by the Court, although doing so will be challenging. Any higher number of

---

[6] Archer understood from the last CMC that the Court does not wish to address the issue of deposition limits. However, because Wisk has effectively re-briefed this issue in the CMC statement, Archer feels compelled to respond. Archer respectfully refers the Court to Archer's more fulsome response on deposition limits reflected in the joint letter brief currently pending before Judge Ryu. Dkt. 280.

deposition hours per side inevitably would impose immense burden and expense on the parties, third parties, and the Court.

Wisk's reliance on the number of individuals identified in Archer's initial disclosures (which Wisk incorrectly labels "fact witnesses") is unavailing.  Rule 26(a)(1) obligates a party to identify individuals "likely to have discoverable information," and Archer should not be penalized for thoroughly complying with this obligation, particularly given the sweeping breadth of Wisk's claims.  As Archer sets forth more fully in its opposition to Wisk's motion to expand deposition limits (including citation to case law), courts have routinely rejected parties' attempts to expand the number of depositions based on the number of individuals identified in initial disclosures.  Further, the fact that Archer relied on a number of vendors, consultants, and employees to independently develop its eVTOL aircraft is not new information to Wisk.  *See* Archer's June 1, 2021 Answer (Dkt. 31); Archer's June 23, 2021 Opp'n to P.I. Mot. (Dkt. 58); Archer's June 29, 2021 Initial Disclosures. Given Wisk has been on notice of this information for over a year, that is all the more reason Wisk should have gotten started many months ago, and not waited until less than 60 days are left in fact discovery to cram in all fact depositions that it seeks to take in this case.

Wisk's suggestion that it could not take depositions earlier (or move for relief for more than the 80 hours of additional deposition testimony Archer agreed to) because of Archer's alleged delay in producing documents—specifically, technical documents related to its future production aircraft— is demonstrably wrong.  Having failed to find any evidence of misappropriation regarding the *Maker* demonstrator aircraft at the center of Wisk's three complaints, Wisk is now aggressively pushing for production of recently created technical documents related to its future production aircraft *viz.*, documents that did not exist at the time of Archer's massive collection and production of technical documents and ESI in January 2022.  Archer will make a supplemental production of those newly created documents, but that provides no basis for Wisk's delay in moving to increase the number of deposition hours beyond that provided by the Rules to a total far in excess of the total to which Archer

1  indicated it would agree.[7]  Wisk needs to start taking accountability for its own actions (or lack

2  thereof).

3        ***Separately***, Archer requests that the Court provide clarity with respect to a procedural

4  deposition issue that has arisen between the parties.  Where circumstances are appropriate, such as

5  where a witness testifies under Rule 30(b)(6) on multiple topics—including trade secret and patent

6  topics—Archer believes the parties should be permitted to depart from the general practice of single-

7  attorney questioning.  Wisk has stated it will oppose this practice unless Archer agrees to the

8  additional deposition hours Wisk seeks.  It is not clear to Archer how Wisk's opposition will manifest

9  itself in practicality (*i.e.*, will Wisk's counsel direct witnesses not to answer questions put forward by

10  a second examining lawyer?), but Archer raises this issue now to avoid disputes during the precious

11  time the parties have left to take depositions.

12        There is established precedent in the Ninth Circuit for permitting more than one attorney to

13  examine a witness on clearly distinct claims.  *See Rockwell Int'l, Inc. v. Pos-A-Traction Indus., Inc.*,

14  712 F.2d 1324, 1325 (9th Cir. 1983) (holding that it was "not a per se abuse" to have two attorneys

15  question a fact witness); *see also Finjan, Inc. v. Cisco Sys. Inc.*, 2019 WL 7753437, at *1–2 (N.D.

16  Cal. Sept. 9, 2019) ("[c]ircumstances may warrant allowing more than one attorney to ask questions

17  at a deposition, such as where the witness is being deposed on clearly distinct claims").  Here, Wisk

18  has brought both patent and trade secret claims, which are distinct in the technologies at issue.  In

19  addition, depending on who Wisk designates for multiple Rule 30(b)(6) topics, there are non-

20  technical issues that are implicated by Archer's counterclaims and affirmative defenses (including

21  but not limited to its bad faith and unclean hands affirmative defenses) that are wholly unrelated to

22  the technical issues in the case.  Importantly, there is no prejudice to Wisk or its witnesses from

23  deviating from the single-attorney questioning practice in the limited circumstances described above.

24  Accordingly, Archer requests that the Court direct that no party may prohibit its witnesses from

25

26     [7]  The other documents produced by Archer and its employees in the past month (and indeed since
27  the March 22 CMC) consisted predominantly of documents responsive to Wisk RFPs and subpoenas
     served after (or very shortly before) March 22, ESI searches Wisk requested after March 22,
28  hyperlinked documents and historical versions of documents Wisk requested after March 22, and
     partially privileged documents produced in tandem with Archer's privilege logs.

answering questions from a second examining lawyer in those limited circumstances where the examining party's counsel believes in good faith that the examination is directed to clearly distinct claims.

**V.      Narrowing Prior Art References**

*Plaintiff Wisk's Statement.*   The Court previously ordered that Wisk narrow its patent and trade secret claims (Dkt. 257).  As this Court has previously recognized, an order to narrow the claims at issue necessarily makes it appropriate to *also* narrow the number of prior art references that the defendant is allowed to assert.  *Finjan, Inc. v. Proofpoint, Inc*., 2015 WL 9460295, at *2 (N.D. Cal. Dec. 23, 2015); *see also Thought, Inc. v. Oracle Corp.*, 2013 WL 5587559, at *4 (N.D. Cal. Oct. 10, 2013) (Orrick, J.).  This rationale applies equally to trade secret claims and the corresponding references challenging the secrecy of those trade secrets, as courts have broad authority to limit trade secret claimants to a set of representative claims, just as courts have broad authority to limit patent claimants to a set of representative claims, so that the court may "manage the case[] before it[.]"  *In re Katz Interactive Call Processing Pat. Lit.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011).

On June 3, 2022, Wisk provided Archer with its narrowed selection of 20 trade secret claims and 12 patent claims.  However, Archer has not narrowed its prior art references.  Wisk made an appeal to Archer that it drop its prior art references to 15 total references, which it rejected outright. To date, Archer has only made one offer to narrow its prior art references related to Wisk's patent claims that would result in very little (if any) actual narrowing from Archer—that it "narrow" to 18 references *per* patent.  While Archer informed Wisk it would defer its decision about how much Archer would narrow after Wisk did its claim narrowing on June 3, Archer has still not narrowed its prior art or trade secret references.

Given that the parties are quickly approaching the end of fact discovery, and the parties need to know where to best focus their efforts moving forward, Archer should be required to drop some of its prior art references and references with respect to its trade secrets claims within a week of the July 12 Case Management Conference.  Wisk proposes that Archer narrow its patent prior art references

to 15 references total (125% of the 12 claims at issue).[8]  When Wisk narrows to 8 patent claims on September 1, Archer should be required to narrow to 10 total prior art references in advance of the parties serving expert disclosures on September 15.  Additionally, Archer should be required to narrow the references it claims demonstrates that Wisk's 20 trade secrets are "generally known" or "readily ascertainable" to 25 total references, and when Wisk narrows to 10 trade secrets on September 1 further narrow its trade secret references to 13 total references.

Archer tacitly concedes that it must narrow its patent prior art references, but categorically refuses to narrow its trade secret references.  Archer's argument ignores the reasons *why* courts order defendants to drop prior art references.  As this District has explained, dropping references serves the goals of "narrowing the issues before trial" and "increasing efficiency and streamlining the litigation process."  *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9460295, at *2 (N.D. Cal. Dec. 23, 2015); *see also Thought, Inc.*, 2013 WL 5587559, at *4 (rejected proposal to drop prior art references that "is not limited enough").  Allowing a defendant to "[m]ix[] and match[] references from a broad 'menu,'" multiplies the issues and does not streamline anything—and that is why dropping prior art references is appropriate.  *Proofpoint, Inc.*, 2015 WL 9460295, at *2.  Moreover, to the extent that the defendants believe "they would be prejudiced at trial if they are precluded from asserting some additional subset of the references identified in the final election" they may "seek leave to assert, those specific subsets" (*Proofpoint, Inc.*, 2015 WL 9460295, at *2)—just as the Court ruled that Wisk may "seek leave" to assert additional patent claims or trade secrets omitted from its elections.  (March 22, 2022 Hg. Tr. at 17:22-18:14.)  There is no reason why this process should not apply to Wisk's trade secret claims.

For example, and as stated in its response to Wisk's Interrogatory No. 8,[9] Archer intends to assert *ten or more* references—both alone and in combination—against at least Wisk's Narrowed Trade Secret Nos. 15, 26, and 29.  Archer has also identified *six or more* references—both alone and

---

[8]     This ratio is in-line with model orders from other jurisdictions.  *See* https://www.txed.uscourts.gov/sites/default/files/goFiles/13-20.pdf (providing a final narrowing to 16 total claims and 20 total prior art references).

[9]   If it would assist the Court, Wisk would agree to file Archer's response to Wisk's Interrogatory No. 8 under seal on the docket.

in combination—it intends to assert against Wisk's Narrowed Trade Secret Nos. 1, 3, 16, and 17.  The trial in this matter will not be "efficient," "streamlined," or "narrow" if Archer proceeds by mixing-and-matching six, ten, or *more* references against each asserted trade secret.  Narrowing the trade secret references is appropriate as to Wisk's trade secrets for the same reasons it is appropriate for patent claims.  *See, e.g.*, *Proofpoint, Inc.*, 2015 WL 9460295, at *2.[10]

At the last CMC, Archer insisted that narrowing was necessary to render this case manageable; now that Wisk has narrowed, Archer should not be permitted to backtrack by claiming the right to assert a *limitless* number of references (and combinations) against Wisk's remaining patent claims and trade secrets.  Archer's proposal of narrowing at the time of invalidity reports is without justification and would allow Archer an unfair advantage in its own narrowing that Wisk did not receive.  What is fair for Wisk is now fair for Archer.

**Defendant Archer's Statement.**  Wisk's narrowing proposal conflates two separate issues: (1) prior art to the asserted patents and (2) documents showing that Wisk's alleged trade secrets are generally known or readily ascertainable.  Wisk's proposal is improper on both issues.

*Prior Art*.  As to the patent issue, Wisk chose not to ask for prior-art narrowing when the parties and the Court addressed case narrowing at the last Case Management Conference, and Wisk should not be given special solicitude to revisit the narrowing schedule now.  Moreover, Wisk is incorrect in its assertion that an order limiting the number of asserted patent claims necessarily requires a parallel narrowing of prior art references.  Although the Federal Circuit in *Katz* recognized that it is appropriate for district courts to narrow the number of asserted claims as a matter of case management (with the remaining asserted claims available for a subsequent action), the Federal Circuit did not, *in that case or any other case*, say that the same principles apply to limit prior art.  Wisk also misrepresents this Court's order from the *Thought* case, which does *not* hold that "an order to narrow the claims at issue *must* also narrow the number of prior art references."  Rather, in *Thought*

---

[10]  To the extent Archer complains that other courts have not required defendants to drop trade secret references, that argument only goes so far.  As recently as 2012, this district noted that requiring patent defendants to drop prior art references was "without precedent."  *Rambus, Inc. v. LSI Corp.*, 2012 WL 13070209, at *2 (N.D. Cal. Dec. 28, 2012).  One year later, it was *de rigeur*.  *Thought, Inc.*, 2013 WL 5587559, at *4 (Orrick, J.).  As explained above, narrowing is appropriate here.

1    the defendant had *agreed* to limit its prior art references, and the Court set out a schedule for that

2    process.  *See* 2013 WL 5587559, at *4.

3              Here, as Wisk already knows, Archer would be willing to agree to the same numbers for initial

4    narrowing of primary and secondary prior-art references as the Court ordered in the *Thought* case:

5    "no more than 18 prior art references against each patent, and not more than 50 in total."  *Id*.  But

6    Wisk, despite purporting to rely on the *Thought* case, has refused to follow it and instead asks the

7    Court to impose a draconian limit of  15 total prior-art references now and 10 after fact discovery.

8    Those low numbers are unworkable, especially given Wisk's refusal to narrow the number of asserted

9    patents.  Indeed, Wisk is continuing to assert claims from all four of the patents-in-suit, all of which

10   require different sets of prior art with minimal overlap.  Therefore Wisk's proposal would unfairly

11   limit Archer to *fewer than three* references per patent on average before expert disclosures, a number

12   that is not supported by any of Wisk's cited cases.  Further, Wisk has not identified any reason that

13   *any* narrowing of prior art would be necessary during fact discovery in this case, as opposed to later

14   at the time of invalidity reports.  The number of *asserted claims* clearly affects the scope of fact

15   discovery—for example, if Wisk alleges that Archer's *Maker* includes the limitations of a particular

16   claim, then the parties need to conduct discovery regarding that alleged aspect of the *Maker*—but the

17   number of prior art references does not have the same impact in this case.  Indeed, Wisk has not

18   identified any fact discovery it purports to need relating to Archer's prior art references.  Thus, the

19   Court should reject Wisk's narrowing proposal on prior art.  If the Court does order narrowing, it

20   should be on a per-patent basis and should allow a reasonable number of references, no fewer than in

21   the *Thought* case.

22             *Trade Secret References*.  As to the trade secret issue, Wisk's narrowing request is both

23   improper and unprecedented.  As an initial matter, Wisk's request should be denied because it is an

24   ambush.  The first time Wisk ever suggested that Archer should narrow its references for purposes of

25   the trade secret case was in Wisk's initial draft of this CMC statement.  Moreover, although Wisk

26   tries to leave the Court with the impression that there is legal authority for the relief it requests, in

27   reality there is none. Wisk has cited no case where any court has ever forced a numerical limit on

28   references upon a Defendant in a trade secret case.  Archer too searched across all state and federal

jurisdictions did not turn up a single case in which that has ever happened.  Indeed, Wisk concedes that it is asking this Court to make new law.  *See supra* note 10.  Plainly, given the novelty of the issue, the seriousness of this request and its impact on Archer's defenses, it is inappropriate for Wisk to present it for the first time, without any notice, in a draft CMC statement.

In any event, there are many reasons why no court has ever forced a trade secret defendant to narrow references.  The most obvious is that, unlike in a patent case, it is the plaintiff who bears the burden to show that a purported a trade secret is actually a secret and has value over what is generally known.  To date, Wisk has failed to make this showing, despite Archer's efforts to seek Wisk's contentions on those issues through interrogatories.  For example, Wisk has failed to explain how a number of its purported trade secrets could possibly qualify for protection given that Wisk has disclosed them in Wisk patents.  To the extent Wisk meaningfully attempts to distinguish its trade secrets from what is known in the art (including Wisk's patents), Archer may need additional art to show that these distinctions are baseless. Archer cannot be expected at this stage of the case to know the full universe of what references it will need to respond to Wisk's undisclosed showing, let alone limit itself to a specific number.  And notably, despite Archer inviting Wisk to say so in this CMC statement, Wisk has not asserted that it has served its final and binding contentions on this issue.

In addition, the numerical limits that Wisk proposes are supported by nothing.  Wisk proposes that Archer should be limited to 1.25 references per trade secret.  Although Wisk provides some examples of numbers of references that Archer disclosed in its interrogatory responses, Wisk makes no showing that these numbers are unreasonable given the nature of the purported trade secrets at issue.  Indeed, Wisk does not even discuss the nature of the purported trade secrets, or the references. Rather, Wisk simply asks the Court to find in the abstract that six to ten references for one trade secret is too many.  It is not.  In any event, there is no conceivable set of circumstances that would make the severe limitations Wisk proposes fair or appropriate. Not only do the 20 purported trade secrets remaining in the case relate to different technologies, there are multiple different technologies to address even within individual trade secrets.  Twenty-five total references for 20 purported trade secrets is not a serious proposal, and it should be rejected.

1    Accordingly, Archer requests that the Court deny Wisk's procedurally improper, legally

2    unprecedented, factually unsupported, and facially unreasonable request to narrow the number of

3    references Archer can present in the trade secret case.  In the event the Court is inclined to consider a

4    narrowing proposal with respect to trade secret references, Archer respectfully requests that the Court

5    order Wisk to (1) serve final, binding contention interrogatory responses where Wisk sets forth its

6    bases, on a trade-secret-by-trade-secret basis, for Wisk's assertions that each purported trade secret is

7    not known or readily ascertainable, and (2) file a fully briefed motion setting forth Wisk's narrowing

8    proposal, in the context of Wisk's purported trade secrets (as defined in Wisk's 2019.210 statement),

9    Wisk's final interrogatory responses, and the references at issue.

10   **VI.    Status of Parties' Ability to Complete Fact Discovery by August 24**

11        ***Plaintiff Wisk's Statement.***  There are various discovery issues that may impact the parties'

12   ability to complete fact discovery by August 24.  First, there are still multiple disputes between the

13   parties about what the parties are willing to produce in response to each party's Requests for

14   Production that need to be resolved before each party has a complete set of responsive documents.

15   Should the disputes not be resolved in a timely fashion, the schedule may be impacted.

16        Second, Wisk is still working with Australia-based third-party Electro.Aero to obtain all of

17   the responsive evidence in its possession.  Since the previous Case Management Conference,

18   Electro.Aero has produced documents, which Wisk is currently reviewing, and has also made source

19   code available for inspection, which Wisk is in the process of analyzing.  Wisk is cautiously optimistic

20   that it will get the discovery it needs under the Letter of Foreign Request such that case deadlines will

21   not need to be altered for Wisk to get the discovery it needs from Electro.Aero prior to August 24.

22        ***Defendant Archer's Statement.***  While Archer does not currently anticipate needing to

23   modify the August  24 fact discovery deadline, the resolution of pending (and impending) discovery

24   motions may impact the deadline.  Archer disagrees that the deposition of third party Electro.Aero

25   (confirmed for July 14) will impact the current August 24 deadline.

26   **VII.   Summary Judgment Briefing**

27        ***Defendant Archer's Statement.***  Archer notes that the Civil Local Rules and the Court's

28   standing order, taken together, limit each party to a single, 25-page motion for summary judgment,

1  followed by 25-page oppositions and 15-page replies.  Civil L.R. 7-2(b), 7-3(a), (c); Standing Order

2  ¶ 7.  Even with the September 1, 2022 Court-ordered narrowing limiting Wisk to 10 trade secrets and

3  eight patent claims (Dkt. 257), Archer does not believe these limits will suffice for the parties to brief

4  summary judgment on both Wisk's patent and trade secret claims.  Archer believes the parties should

5  confer on these issues and make a joint submission to the Court reflecting the parties' respective

6  positions.  Archer further believes it would be helpful for the Court to set a date and parameters for

7  that submission at the upcoming CMC.

8       ***Plaintiff Wisk's Statement.***  Wisk believes that any change to the summary judgment process

9  is premature at this time. Fact discovery remains ongoing, expert discovery has not yet begun, and

10  Wisk has not finalized its claims. The parties should confer on summary judgment procedure once

11  the case is further along, and if they cannot reach agreement, seek relief from the Court at that time.

12  **VIII.   Preservation of Electronically Stored Information**

13       ***Plaintiff Wisk's Statement.***   As the Court is aware (Dkt. 260 at 1-2), after receiving a

14  subpoena from Wisk, Archer employee Scott Furman destroyed Wisk documents on at least his

15  personal devices.  Since learning this on March 30, 2022, almost a month after Archer learned of the

16  same from Mr. Furman's counsel, Wisk has sought clarification from Archer and Furman's personal

17  lawyers regarding the circumstances surrounding Mr. Furman's spoliation, and any efforts taken to

18  address this spoliation.  Both Archer and Mr. Furman, however, have refused to provide any details

19  because they claim that information relating to the spoliation is privileged, and that Wisk is only

20  entitled to seek this information from Mr. Furman himself at deposition.  Wisk intends to do so when

21  Mr. Furman is provided for deposition in response to Wisk's June 10 notice.  Depending on what

22  Wisk learns regarding Mr. Furman's spoliation, Wisk alerts the Court that it may file for appropriate

23  sanctions and other relief against Mr. Furman, Archer, or both and will need a briefing schedule

24  prepared to that end.

25       Separately, Archer's assertion that Wisk has been anything less than cooperative with

26  Archer's inquiries regarding Wisk's document retention procedures is incorrect, as is its

27  characterization of the parties' discussions regarding this issue.  For instance, Archer's claim that on

28  June 6 Wisk "promised" to produce a chart of documents showing which of the April 12 requests

were no longer available is false and misrepresents communications between the parties.  The "June 6 email" Archer refers to states only that Wisk intended to identify which documents it had produced, as well as which requested documents either did not exist or could not be located after a reasonable search.  The email contains no agreement to continuously update a chart for Archer's benefit.  Wisk offered that chart only as part of a larger agreement between the parties that would have included expanded deposition limits and other discovery compromises.  However, the parties were not able to reach agreement on any compromise, and so the parties never came to an "agreement" on obligations each party would be required to fulfill to resolve the discovery disputes.  Wisk is not now obligated to fulfill its proposed compromise of providing Archer with this chart after Archer failed to provide any real compromises of its own.  Further, to the extent Archer identified Wisk design reviews for its Cora X aircraft prepared in the week before Wisk filed the provisional patent application, such documents were produced, and Archer is mistaken if it believes these documents to be "missing." And again, if there were a real discovery issue that merits discussion, Archer would have, or should have, raised it with Judge Ryu.

***Defendant Archer's Statement***.  Mr. Furman appears to have deleted some Wisk data that he inadvertently retained when Wisk ushered him out the door upon being informed by Mr. Furman that he was taking a new job at Archer. It appears that when Mr. Furman realized he had failed to delete all such files from his personal accounts, he impulsively reacted to belatedly accomplish what he thought he had done when leaving Wisk—deleting Wisk files that he put on his personal devices and accounts in the course of his work at Wisk (as Wisk had permitted).  To be clear, the deletions were on Mr. Furman's personal devices and from his personal accounts, neither of which is within Archer's control.  Archer learned of the deletions from Mr. Furman's counsel, just like Wisk did.  Archer then promptly investigated the matter and disciplined Mr. Furman for his failure to inform Archer that he had inadvertently retained Wisk-related materials on his personal devices and accounts, and his apparent deletion of those materials rather than arranging for their return to Wisk.  Archer notified Wisk of these steps more than two months ago and separately provided two forensic images of Mr. Furman's Archer-issued laptop to a neutral forensic consultant who then passed along "red flag" data to Wisk.  That also was months ago.  Mr. Furman's counsel suggested on March 30 that Wisk pose

1   its questions to Mr. Furman in deposition because requests for information obtained from Mr. Furman

2   in conversations with counsel was privileged.  Mr. Furman's deposition is scheduled for July 21 and

3   Wisk will have a full opportunity to explore the relevant facts.

4           In contrast to Archer's conduct in regard to an employee's alleged spoliation, Wisk has refused

5   to cooperate with Archer's inquiries about the basic parameters of Wisk's document retention for

6   several months.  Since January, prompted by Wisk's failure to identify specific emails of interest,

7   Archer has sought, but not obtained, a clear answer to the question of when Wisk began preserving

8   documents in anticipation of litigation against Archer.  Wisk's claim that Wisk did not anticipate

9   trade secret litigation against Archer in (or before) December 2020 is incompatible with Wisk having

10  sent a demand letter to Archer eleven months earlier expressing Wisk's "concern" that Archer may

11  have "misappropriated Wisk's trade secrets" and demanding that Archer preserve documents relating

12  to "any information belonging to Wisk which may have made its way into Archer's possession."

13  Later, on April 12, 2022, Archer sent Wisk a list of more than 70 documents that Wisk's produced

14  documents had referenced but that were not themselves produced.  After ignoring Archer's request

15  for weeks, on June 3, Wisk orally represented to Archer that it would provide Archer one week later

16  with a list of documents from Archer's list that Wisk did not have or that it could not locate.  Wisk's

17  commitment was confirmed a June 6 email.  Wisk did not provide that list as promised, nor

18  subsequently, despite multiple requests for the same.  Contrary to Wisk's claim, this was not part of

19  a larger potential agreement.  Indeed, Wisk did not even re-raise deposition limits with Archer until

20  after Wisk first served deposition notices on June 10 (as more fully discussed above).  Archer did not

21  move to compel in expectation that Wisk would honor its commitment, which it only now has

22  expressly disclaimed.  Among the specific documents that Archer has not received, and about which

23  it seeks to understand whether Wisk deleted, are several slide decks related to the Cora X aircraft

24  prepared in the week before Wisk filed the provisional patent application that Wisk put at the heart

25  of its Complaint.  Archer continues to seek further information about apparently deleted Wisk ESI

26  and will seek appropriate relief if the parties are unable to resolve the issues informally.

27  **IX.    <u>Trial</u>**

28          ***Plaintiff Wisk's Statement.***  Given the claims and counterclaims at issue in this litigation,

Wisk estimates that the length of the trial will be approximately 15 days.

    ***Defendant Archer's Statement.***  Factoring in the Court's use of a five-hour trial day, Archer estimates that the length of trial will be at least 20 Court days.

## X.    <u>Disclosure of Non-Party Interested Entities or Persons</u>

    Both Wisk and Archer have filed corporate disclosure statements and certificates of non-party interested entities and persons.  *See* Dkts. 4, 23, 24, 259, 272.

## XI.    <u>Professional Conduct</u>

    The undersigned have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XII.    <u>Other</u>

    There are no additional matters to address.

Respectfully submitted,
Dated: July 6, 2022

 /s/ Patrick Schmidt
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

 /s/ Josh A. Krevitt
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted *pro hac vice*
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael H. Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
Telephone: 310.552.8500

GIBSON, DUNN & CRUTCHER LLP

Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.

### **Local Rule 5-1 Certification**

In accordance with Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Patrick Schmidt*
Patrick Schmidt