# EXHIBIT A

Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Pursuant to Your Honor's July 1, 2022 Order [Dkt. 279], Wisk Aero LLC ("Wisk") and Archer Aviation Inc. ("Archer") respectfully submit this joint letter brief regarding modification to the Protective Order [Dkt. 161] ("PO").  The parties met and conferred via Zoom on July 6 and 8, 2022, but were unable to finalize this joint letter by the Court's July 6 deadline, and request that the Court accept this submission.  *Fact discovery closes August 24, 2022*; expert discovery closes November 2, 2022; dispositive motions are to be heard by January 11, 2023; and the pretrial conference and trial are set for March 13, 2023 and April 17, 2023, respectively.  **This dispute impacts pending depositions; the parties thus seek an expedited hearing**.

**Archer's Statement.**  Archer sought to modify the PO with a proposal of general applicability consistent with existing terms that already permit disclosure of AEO information (*e.g.*, trade secret information) to a "*person who otherwise possessed or knew the information*…" PO, § 7.3(f); Dkt. 278 at 1–3.[1]  In its July 1 Order, the Court sought clarity regarding what Archer sought to disclose, and to whom, and why Archer's counsel needed to make these disclosures.  Dkt. 279.  As discussed below, Archer has arrived at a concrete proposal that is narrowly tailored to enable Archer to defend itself while minimizing any risk to Wisk.  Archer's best compromise proposal is:

> *If Wisk contends that an individual developed or used a specific alleged trade secret while at Wisk, then Archer's outside counsel may disclose to that individual (1) the portion of Wisk's 2019.210 Statement (Dkt. 148-7) describing that alleged trade secret, and (2) the portions of Wisk's responses to Archer's Interrogatory Nos. 1, 23–25 where Wisk makes its contentions that relate to that alleged trade secret; in each case limited to the specific portions of those documents under the headings that include that alleged trade secret and provided that the individual agrees to be bound by Section 7.1 of the PO,[2] and views a copy of those portions of those documents solely in the presence of Archer's outside counsel.[3]*

Thus, the modified Protective Order would make clear that if Wisk contends that Individual X developed or used Trade Secret Y while at Wisk,[4] then Archer will be permitted to disclose to

---

[1]   Archer's Counsel has not disclosed Wisk's alleged trade secrets to Archer's employees, or anyone else.  Dkt. 278 at 1.  Wisk's speculation to the contrary is unfounded.

[2]   The percipient witnesses should not be forced to agree to the patent prosecution bar in the PO (Section 8) as the price of assisting Archer in the defense of this litigation.  That bar is far broader than prohibiting the use of any Wisk AEO information, to which the witnesses will agree.

[3]   Archer will file Wisk's responses to Archer's Interrogatories upon request.  Interrogatory No. 1 identifies who developed or used the trade secret at Wisk; No. 23 provides Wisk's misappropriation contentions and further identifies individuals' alleged development or use of the trade secret at Wisk; Nos. 24 and 25 provide Wisk's contentions why the trade secret is allegedly not publicly known or readily ascertainable.  In each case, Archer understands the interrogatory responses are designated AEO (as to Archer) because they describe the alleged trade secret at issue.

[4]   Wisk's allegation that an individual already knows a particular trade secret provides ample basis for interpreting or modifying § 7.3(f) to permit disclosure of that information to that individual who Wisk alleges knew, developed or used the given trade secret at Wisk.  *See Softketeers, Inc. v.*

Individual X: (a) the description of Trade Secret Y in Wisk's Section 2019.210 Statement (but not the cited documents), and (b) the portions of Wisk's interrogatory responses reflecting Wisk's contentions regarding Trade Secret Y. This compromise is narrowly tailored in that it identifies below the ten percipient fact witnesses who Wisk contends developed or used an alleged trade secret while employed at Wisk. In so doing, Archer is limiting its disclosures to individuals who Wisk alleges *knew or possessed* the information before the requested disclosure.

The individuals (each represented by Archer's counsel) and associated alleged trade secrets (among the 20 secrets Wisk selected to proceed with on June 3) that Archer seeks relief are:

- Bajovic, Andrew – Systems Engineer (Jet Propulsion Laboratory- NASA): TS 50
- Bower, Geoff – Chief Engineer: TS 8, 15
- Chen, Alan – Guidance, Navigation, and Control Lead: TS 1, 3, 49
- Furman, Scott – Chief Avionics Architect: TS 33, 44, 45, 49, 50
- Marius, Diederik – Electrical Propulsion Lead: TS 12, 15, 16, 17, 19, 26, 28, 50
- Melack, Johnny – Director of Engineering: TS 29, 30, 31, 39, 49, 50
- Moore, Robert – Sr. Staff Mechanical Engineer: TS 12
- Muniz, Tom – Chief Operating Officer: TS 15, 29, 30, 31, 33
- Wong, Sheldon – Sr. Mechanical Engineer: TS 44, 45, 49
- Xue, Nansi – Sr. Engineer, Controls Group: TS 1, 3, 29

Archer has no objection to the Court permitting Wisk to reduce Archer's list through service of a written statement within three business days that Wisk does ***not*** contend that a specific individual was involved in the development or use of a specific alleged trade secret while employed at Wisk.

Archer needs to disclose Wisk's descriptions of, and contentions relating to, these trade secrets to these percipient witnesses so that Archer can develop factual evidence—*that is available only from them*—in the defense of Wisk's trade secret claims. These individuals—not Wisk's witnesses and not Wisk's or Archer's experts—are the source of *facts* relating to that individual's alleged development or use of that information while employed at Wisk; whether that information was treated a secret at Wisk; and whether that information originated from Wisk or some other source. *See Mitchell Int'l, Inc. v. Healthlift Pharm. Serv.*, LLC, 2020 WL 2736094, at *3 (D. Utah May 26, 2020). The disclosures of this information to these individuals pose no additional risk of harm to Wisk because, according to Wisk, these individuals each *possessed or knew the information* Archer seeks to disclose to them while they were employed by Wisk. Indeed, Wisk's assertion that disclosure presents a risk of future misappropriation is directly at odds with Wisk's allegations that these individuals are engaged in on-going misappropriation. Archer disputes Wisk's contentions but, *if* true, there is no further risk of harm to Wisk. Wisk can't have it both ways.

For example, Wisk describes its Trade Secret No. 12 as a "Motor Optimization Model" that covers a particular simulation tool for evaluating its motors. *See* Dkt. 148-7 at 12–13; Dkt. 134 (PI Order)

---

*Regal W. Corp.*, 2019 WL 9047106, at *4 (C.D. Cal. Dec. 5, 2019); *Profil Institut v. ProSciento, Inc.*, 2017 WL 11679187 (S.D. Cal. July 3, 2017); *TherapeuticsMD, Inc. v. Evofem Biosciences, Inc.*, 2021 WL 8444926, at *1 (S.D. Fla. Sept. 17, 2021). Unlike *Brown Bag Software v. Symantec Corp.*, this is not a request to grant a party's in-house counsel "unfettered" access to *all* litigation documents in order to facilitate efficient discovery. 960 F.2d 1465, 1470-1472 (9th Cir. 1992). The individuals here are alleged to have knowledge of the information Archer seeks to disclose.

at 34.  In its responses to Archer's Interrogatory Nos. 1 and 23, Wisk contends that Mr. Marius developed and used Wisk's Trade Secret No. 12 at Wisk.  If true, then Mr. Marius is the single best source of evidence concerning whether what Wisk describes as its trade secret is accurate; whether Mr. Marius in fact knew, developed or used at Wisk what Wisk describes as its trade secret; whether that particular motor model was maintained as a secret at Wisk; and whether his development of the model was based on Wisk confidential information or public sources. Moreover, in response to Archer's Interrogatory No. 25, Wisk contends that its trade secret motor model comprises a number of additional features—not described in its 2019.210 Statement— including use of a specific equation from a public text book that Wisk asserts is "an unconventional application of the equation."  Again, Mr. Marius is uniquely situated to testify as to whether and how Wisk employed this equation, and whether the (alleged) use of this equation was "unconventional" for this or similar applications.  Without disclosing to Mr. Marius Wisk's description of, and contentions relating to, Trade Secret No. 12, Archer's counsel is unable to obtain this factual evidence and is handcuffed to elicit exculpatory evidence from Mr. Marius at trial.  The requested disclosure presents no additional harm to Wisk because, according to Wisk, Mr. Marius *already knows* the information that Wisk alleges comprises Trade Secret No. 12.

Disclosure to the above-listed individuals of information that Wisk contends those individuals developed or used while at Wisk is a necessary predicate for Archer's ability to defend itself by allowing its counsel to learn critical facts from its current employees who Wisk accuses of misappropriation. These individuals—not an expert—are uniquely positioned to provide this factual input to Archer's counsel to defend against Wisk's allegations for each alleged trade secret listed next to their name above.  *See Defazio v. Hollister, Inc.*, 2007 WL 2580633, at *2 (E.D. Cal. Sept. 5, 2007) (AEO not appropriate where party has "meaningful input" to defense or "determining the bona fides of" the opposing party's evidence and allegations).  To deprive Archer access to the facts known only by the individuals concerning the substance of Wisk's allegations would violate due process and fundamental fairness, and prejudice Archer's defense.

**Wisk's Statement.**[5]  Archer cannot show it is in such a unique or special position that the dictates of *Brown Bag Software* do not apply. Archer can and will depose Wisk's witnesses about Wisk's trade secrets and about the Archer employees' knowledge of and work on those trade secrets. Archer has experts who can analyze Wisk's disclosure, and can depose Wisk's experts; in fact, Archer already did so earlier in this case. The Ninth Circuit found these circumstances make it unnecessary and inappropriate for a defendant's employees—even non-engineer employees such as in-house counsel—to review their former employer's trade-secret disclosure.

Despite this, Archer not only insists (wrongly) that its defense is prejudiced by not being able to show its employees Wisk's trade secret information, but *refuses to agree* that *they would be bound*

---

[5]  In derogation of this Court's order, Dkt. 279 at 1–2, Archer did not meet and confer in advance of serving its half of a joint letter on this subject, let alone "immediately." Its refusal to meet and confer resulted in Wisk being forced to prepare three responsive letter briefs, and missing the Court's deadline because Archer sent its first proposal the afternoon before the joint submission was due, and then kept changing its position each time it read Wisk's side of the story in its half of the joint brief (instead of properly meeting and conferring).  Archer's violation of the Court's order warrants denial of this motion. *See Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012); *Wyles v. Sussman*, 445 F. Supp. 3d 751, 755–56 (C.D. Cal. 2020).

*by the prosecution bar in the Protective Order the parties stipulated to.* This means Archer's employees *would be able to study Wisk's trade-secret information while continuing to prosecute Archer's pending patent applications in the very same technology areas.* Archer's assurances that there is "no further risk" of harm are wishful thinking at best, given that these employees should not have seen the details of Wisk's trade secrets for almost two years now, and would be amply refreshed on those details by being able to see Wisk's litigation disclosures.

The prosecution bar in the Protective Order in this case is identical to this District's model order, which multiple courts—*including this one*—have held is "presumptively reasonable." *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 930317, at *3 (N.D. Cal. Mar. 9, 2017) (Ryu, J.) (declining a requested modification to the model order). Wisk obviously cannot allow its trade secret information to be shared with individuals not bound by the Protective Order—*let alone* employees who are working on competitive technologies—*and especially* those involved in the prosecution of *Archer* patent applications on technology related to Wisk's trade secrets. *No one* with access to AEO information in this case should be involved in filing for patents on behalf of either party, which is *exactly why* the Protective Order *contains a prosecution bar*. Archer's claim that its *competitive decision-makers* should be exempt from the bar that applies to *both sides' attorneys, experts, and consultants* is just ridiculous.

Archer argues that showing Wisk's trade secret disclosure to Marius[6] is necessary because it needs Marius's unique take on whether Wisk's Motor Optimization Model was actually kept secret, whether he "knew, developed, or used" it, what it was based on, and how Wisk incorporated information into it.[7] But why would it have *to show Wisk's disclosure* to Marius to get *any of* that information from him? If, as Archer claims, he is *already* the best source of information on Wisk's trade secrets that he worked on, then he should not have to study Wisk's trade secrets any further. Archer then stretches further to claim that "[t]hese individuals—**not Wisk's witnesses and not Wisk's or Archer's experts**—**are the source of *facts*** relating to that individual's alleged development or use of that information while employed at Wisk . . . ." (emphasis added). But Archer's employees simply do not have indispensable, unique knowledge necessary for Archer's fair defense. For example, all the information in the very interrogatory response Archer cites came from Wisk—*not Archer*—witnesses, who provided pages and pages of information about Marius's work on Trade Secret 12. Wisk's personnel and its documents are the best, or at least an extremely substantial, source of information on Wisk's trade secrets, who developed them, whether and how they were kept secret, their value, and what work was done with them. Archer's complete denial of this fact reveals the weakness of its position. Moreover, Archer has also (wrongly) alleged that Wisk's trade secrets are generally known—if that were so, then Archer could simply ask its engineers about the state of the art to collect the information it claims to need. Archer's claim that Wisk's trade secrets are generally known while insisting that it needs to show Wisk's trade-secret disclosure to its employees shows Archer talking out of both sides of its mouth.

---

[6] Marius is discussed here only as an example, and because Archer's portion discusses Marius. But the same reasoning applies to <u>all</u> of the former Wisk employees, and is not limited to Marius.

[7] Archer points to Wisk's response to Interrogatory No. 23 discussing Marius' role in developing Trade Secret 12 to imply that only Marius, and no one else, is a witness for that trade secret. But that interrogatory sought only Wisk's contentions about Archer's acts of misappropriation, and did not call for all the other witnesses who can, and will, testify about Trade Secret 12.

Giving disloyal former employees renewed access to Wisk's trade secrets would facilitate and perversely encourage further misappropriation. Marius, like the other former Wisk employees with whom Archer seeks to share Wisk's trade secrets, is an engineer working on *the same aircraft subsystems* at Archer in which Wisk claims trade secrets—Archer identifies him as its "Electrical Propulsion Lead," and Archer wants to show him Wisk's trade secrets *about electrical propulsion*. That is exactly why the Ninth Circuit adopted the *Brown Bag Software* rule restricting such disclosures. Granting a defendant's employee access to the plaintiff's trade secrets is untenable, because his future work "would necessarily entail advising his employer in areas relating to [the plaintiff's] trade secrets," creating a risk that the plaintiff's trade secrets would be used, even inadvertently. 960 F.2d 1465, 1471 (9th Cir. 1992).

*Brown Bag Software* in fact addressed a situation that presented *significantly less* risk of misappropriation than is the case here: the individual at issue there was an in-house counsel; here, Archer is seeking permission to share Wisk's *engineering trade secrets* with Archer's *engineers*, who are actively working to develop products to *compete with Wisk and are prosecuting patent applications in the same space*. Even faced with a lower degree of potential misappropriation, the Ninth Circuit still agreed that denying disclosure to the employee was correct. The compromise the Ninth Circuit endorsed—denying party employees access to trade-secret materials because the party's counsel could consult with retained experts—protects all sides. *Acer Am. Corp. v. Tech. Props.*, 2009 WL 1363551, at *4 (N.D. Cal. May 14, 2009) ("[T]he court is skeptical about allowing even the most trustworthy of defendants' employees to view such sensitive information. That is usually why parties retain experts."). The process contemplated in *Brown Bag Software* underlies Judge Orrick's previous denial of Archer employee Dr. Xue's request for Wisk's trade-secret disclosure. The harm contemplated by Archer's proposal is significant and irreparable. The parties here are fierce competitors attempting to dominate what is projected to be a trillion-dollar industry. Even *refreshing these employees' recollections* about the specifics of Wisk's designs and specifications risks further misappropriation, especially given that they left Wisk more than two years ago, and they are undisputedly working in *nearly identical* roles to develop *the same aircraft subsystems* for Archer. The infringement and misappropriation that Wisk has alleged in this case *is ongoing*, and giving these employees a detailed primer on Wisk's trade secrets would risk precisely the misuse of Wisk's information that Wisk filed this suit *to stop*.

Wisk's final compromise is that it will agree not to show its trade-secret disclosure to Archer's employees at their depositions, resolving any issues of "unfair surprise." However, *if* the Court is inclined to permit Archer to share Wisk's trade secret disclosure, it should impose the following conditions: (1) every individual must execute the attachment to the Protective Order, *including* to the terms of the prosecution bar, and may only view the trade secret disclosure in the presence of Archer's outside counsel; (2) this Court should enjoin any use by Archer or its employees of the disclosed information, including having to withdraw its pending patent applications on technologies in the same subject matter area; and (3) to effectuate point (2), following the close of fact discovery, Archer's counsel will disclose which of the former Wisk employees it shared Wisk's trade-secret disclosure with, each of whom will then sit for an additional deposition about their use of the information contained in the disclosure, and those additional depositions will not count against Wisk's time limit. Because of the significance of this issue and the certainty that any attempt by Wisk to seek review would be obviated by Archer showing Wisk's disclosure to Archer's employees, Wisk respectfully requests that if this Court grants Archer's motion without all of the above conditions, it stay its order by fourteen days to permit Wisk time to seek review.

5

DATED: July 8, 2022                         QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

                                            By */s/ Diane Cafferata*
                                            Yury Kapgan
                                            Robert M. Schwartz
                                            Michael T. Zeller
                                            Diane Cafferata
                                            Patrick Schmidt
                                            Michael LaFond
                                            *Attorneys for Plaintiff Wisk Aero LLC*

                                            GIBSON, DUNN & CRUTCHER LLP

                                            By */s/ Daniel J. Thomasch*
                                            Josh A. Krevitt
                                            Daniel J. Thomasch
                                            Wayne Barsky
                                            Paul Torchia
                                            Michael H. Dore
                                            Diana M. Feinstein
                                            *Attorneys for Defendant Archer Aviation Inc.*

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

/s/ Josh A. Krevitt

Josh A. Krevitt