QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ARCHER AVIATION INC.,<br><br>　　　　　Defendant. | CASE NO. 3:21-cv-02450-WHO<br><br>**PLAINTIFF WISK AERO LLC'S MOTION FOR RELIEF FROM JULY 14, 2022, NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(a), 28 U.S.C. § 636(b)(1)(A), and L.R. 72-2, Plaintiff Wisk Aero hereby objects to portions of Magistrate Judge Ryu's nondispositive order of July 14, 2022. Dkt. 295 (the "Order"). Specifically, Wisk objects to the Order's denial of its Motion at Dkt. 263, insofar as that Motion sought relief from Defendant's employees John Melack and Diederik Marius.

The Order concerns Wisk's requests for limited forensic examinations into electronic storage devices. After learning that key former employees had retained confidential Wisk information after leaving Wisk to join Archer, Wisk sought targeted forensic data to determine whether the employees had transferred those files to other devices (from which the employees could continue to access the files while working for Archer), or deleted files from those devices (to prevent their discovery in this litigation). Wisk employed stringent measures to minimize any potential privacy intrusion. Wisk proposed a limited inspection by a neutral examiner of *only* those devices that were admittedly used to retain and store confidential Wisk information of interest. Wisk proposed a protocol that would entitle Wisk to only forensic data, not substantive files. Wisk gave the former employees broad rights to redact private information before the forensic data would be shared with Wisk. Wisk agreed that the examiners would not use certain tools that extract personal data such as email communications. Wisk maintained that its sole interest was to investigate evidence of file transfer and/or deletion.

The Order denied-in-part Wisk's requests. Wisk objects specifically to the portion of the Order that imposed a "heightened showing of good cause" standard and required Wisk to show "malfeasance." Wisk also objects to the Order's finding that Wisk failed to meet the putative standard as applied to devices belonging to Melack and Marius, and respectfully requests that the Court order targeted forensic inspections into certain devices belonging to Melack and Marius, with appropriate privacy protections akin to those Wisk has suggested.

## II. STATEMENT OF REASONS AND SUPPORTING AUTHORITY

Melack and Marius are former Wisk engineers who now work on similar technology for Archer. In response to previous discovery requests, Melack and Marius produced highly confidential Wisk files that they retained on certain "personal" devices after joining Archer. These files were apparently available to the employees for at least their first sixteen months at Archer. The employees

identified many of the files by April 2021 in response to DOJ subpoenas, but did not disclose the files to Wisk until July 2021, in response to subpoenas served during preliminary injunction proceedings.

As part of the subpoena negotiations, Wisk and counsel for the employees agreed to a procedure in which Wisk identified an isolated set of "Target Documents" from the produced files that Wisk contended were related to its trade secret claims. The employees agreed to identify the devices used to retain these Target Documents, and to provide available metadata. Dkt. 191 at 1. The metadata for the Target Documents, however, did not include information regarding file transfers and deletions. Thus, Wisk asked Melack and Marius to permit a neutral forensic expert to inspect *only* the devices used to store the Target Documents, subject to a tightly controlled forensic protocol. As Wisk explained (and the employees do not dispute), forensic inspection is the *only* way to determine whether Melack and/or Marius had transferred the files to other devices that have not yet been introduced into this litigation. If they did, Melack and Marius could be referencing those files today while building similar technology for Archer, unbeknownst to Wisk or the Court. Wisk also sought evidence of file deletion, which could indicate a cover-up of prior misuse. This District has previously approved forensic examinations under similar safeguards. *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) ("Here, the protections of the Protocol lessen the intrusion to Plaintiffs' privacy.").

The devices that had been used to store the Target Documents had "already been imaged," so Marius and Melack did not face additional cost or undue burden in providing copies of the images to Wisk. Dkt. 191 at 2; Fed. R. Civ. P. 26(b)(2)(B). Nonetheless, Marius and Melack did not agree to provide copies of the images to a neutral examiner, causing Wisk to raise the issue before Judge Ryu. The parties submitted a first joint brief. Dkt. 191. At a first hearing, Judge Ryu ordered additional briefing before ruling, which the parties submitted. Dkt. 260. Judge Ryu heard the dispute again on July 14, 2022 and denied relief as to Marius and Melack. Dkt. 295. The Order errs by requiring, "contrary to law," Fed. R. Civ. P. 72(a), that Wisk show "heightened good cause" to justify the requested inspection. The Order also errs in determining that Wisk did not meet the correct standard.

Judge Ryu quoted the "heightened good cause" standard from *Lee v. Stonebridge Life Ins. Co.*, No. 11-CV-43 RS (JSC), 2013 WL 3889209 (N.D. Cal. July 30, 2013). Order at 1. *Lee*, a decision by

Judge Corley that did *not* involve trade secrets, involved whether the plaintiff had consented to receiving a text message on her phone. *Lee*, 2013 WL 3889209, at *1. Defendant sought inspection of plaintiff's phone and personal computer. *Id.* Judge Corley wrote that "[b]ecause personal computers contain highly personal and sensitive material courts generally require a heightened showing of good cause" to justify forensic inspection. *Id.*

Judge Ryu erred by applying the "heightened" standard to this dispute. *Lee* instructs that the standard applies "generally," not always, and in support cited to *Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C04-03843RMWHRL, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007). *Memry* noted that courts allow forensic inspection in the "extreme situation … where computers have a special connection to the lawsuit." *Id.* Thus, based on *Memry*—the foundation for the cited holding of *Lee*—forensic inspection is warranted here. The devices at issue "have a special connection" to this trade secret misappropriation lawsuit because Melack and Marius used the devices to retain Wisk files after leaving Wisk, and Wisk alleges that they used those files to build competing products for Archer.

Judge Ryu further erred by interpreting the "heightened" standard to require a showing of "malfeasance." Dkt. 298 (7/14 Hr'g Tr.) at 4:13-16 ("So the party seeking forensic review has to provide evidence that is at least suggestive of malfeasance or misconduct rather than something that is less culpable, like inadvertence."); *id.* at 37:11-24 (standard). *Lee* did not include malfeasance in the factors that it considered to determine whether the defendant met the "heightened" standard. Nor did *Lee* suggest that evidence "suggestive of misconduct" was required. In fact, *Lee*'s analysis focused first on basic relevance. In *Lee*, which was not a trade secret case, the defendant sought to inspect a phone that was "not the phone on which Plaintiff received the at issue text message." *Id.* at *1 ("Thus, the Court does not discern any relevance in forensic imaging of Plaintiff's current iPhone.").

*Lee* also ruled that the defendant had not met a "heightened" showing because it had means aside from forensic imaging to obtain the requested evidence: (1) the plaintiff "offered to search for and provide [the defendant] with the information it seeks off her computer"; (2) "a back-up of [plaintiff's] prior iPhone exists on her personal computer further undermining any claim that review of her current iPhone is warranted"; (3) the defendant could have first "attempted to obtain information regarding the text message from the entity that allegedly sent it," which was the co-defendant. *Id.* at

\*1-\*2. Moreover, the defendant sought unbounded discovery, stating "that it cannot tell what, if anything, is missing without first looking at the computer." *Id.* at \*2.

This dispute presents opposite facts: (1) Melack and Marius have not offered to search for evidence of file transfer and deletion; (2) the device information is not backed up to any device available to Wisk; and (3) Wisk cannot obtain the information from another source. As for breadth of discovery, Wisk sought inspection only into devices known to have stored Wisk confidential information, and only into file transfer and deletion. Dkt. 263 at 2. Because, unlike in *Lee*, Wisk has no other way to obtain evidence of file transfer or deletion, a showing of "malfeasance" places Wisk in quite the dilemma. As Wisk explained, without forensic inspections, Wisk cannot gather direct evidence of the very misappropriation that Wisk alleges—that the employee "transferred files to another source for later use," or "deleted files." Dkt. 263 at 2 (citing supporting expert declaration).

Melack and Marius claimed to be third parties who had retained the files accidentally and not used them. Dkt. 263 at 4-5. Wisk countered that claims of inadvertence are easily made when Wisk is prevented from accessing the very source of information—forensic data—necessary to challenge those statements. Dkt. 263 at 2 (citing *Williamson v. U.S.*, 512 U.S. 594, 600 (1994) ("Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false.")). Wisk also countered that Melack and Marius, as party employees accused of misappropriating Wisk's trade secrets to benefit Archer, are not "true" third parties because "they are Archer's agents, and Archer has control over what they do…." *Id.* at 3; *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("Control is … the legal right to obtain documents upon demand.").

At the hearing, Judge Ryu credited the employees' claimed inadvertence and ruled based on whether Wisk had shown evidence suggestive of misconduct. *See* Dkt. 298 at 4:2-12, 17:2-12, 37:11-24. But, neither *Lee* nor any other cited case supports the decision to require such a showing to justify targeted forensic discovery into devices known to have retained confidential information of a former employer, on the strength of a proclamation of innocence by the accused wrongdoers in a trade secret case. *See, e.g.*, *Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291 at \*4 (E.D. Mo. 2006) ("[A]llegations that a defendant downloaded trade secrets onto a computer provide a sufficient nexus between plaintiff's claims and the need to obtain a mirror image of the computer's hard drive.").

The most apt case on these facts, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012), supports Wisk. *Brocade* is a trade secret case in which the plaintiff sought forensic inspection of a hard drive that a former employee (and named defendant) brought to a new employer, and used to retain confidential files. *Id.* at *2. Like here, the employee claimed he "did not know" he had kept the files. *Id.* Applying a "good cause" standard, Judge Koh noted "several cases in which sister courts have found forensic inspection of computer hard drives to be justified in cases, where, as here, the electronic information on the hard drives is relevant to a plaintiff's claims of trade secret misappropriation." *Id.* at *1 (collecting cases). She ordered the inspection, reasoning that "forensic imaging and analysis of the deleted files is relevant to at least [the] trade secret misappropriation" claims. *Id.* at *2. *Brocade* focused on the relevance of the devices to the dispute, and did not discuss the former employee's status as a named party or distinguish between allegedly "personal" or "work" devices. *Id.* In fact, Judge Koh ordered the inspection based on evidence gathered from the ***corporate*** defendant A10, and to "testing the veracity of ***A10's claims***" that it did not use files on the device. *Id.* at *2 (emphasis added). Judge Koh also noted the plaintiff's inability to get the information "from other sources." *Id.*

Under the proper legal standard, Wisk fully justified its request for forensic analysis. Wisk explained that (i) Melack and Marius retained critical documents such as aircraft design specifications and apparently did not return those documents immediately to Wisk when they were first found; (ii) Archer developed similar specifications in an extremely short period without producing evidence of legitimate internal development; (iii) for certain documents, the employees had no excuse for their retention other than claiming to have "apparently failed to delete" them; (iv) some existing metadata indicates access of files after leaving Wisk, and other metadata was overwritten or unavailable making it impossible to tell from metadata alone whether the documents were improperly accessed; and (v) Melack testified at deposition to have deleted Wisk files "on my personal devices … before starting at Archer," but then produced thousands of Wisk files from his personal devices. Dkt. 263 at 1-3.

### III. CONCLUSION

For the foregoing reasons, Wisk respectfully asks this Court to order targeted forensic inspections into certain devices belonging to John Melack and Diederik Marius.

DATED: July 28, 2022            Respectfully submitted,

                                QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                By  */s/ Yury Kapgan*
                                    Yury Kapgan
                                    Robert M. Schwartz
                                    Michael T. Zeller
                                    Diane Cafferata
                                    Patrick Schmidt
                                    Michael LaFond

                                Attorneys for Plaintiff Wisk Aero LLC