GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted *pro hac vice*
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>ARCHER AVIATION INC.,<br><br>                    Defendant. | CASE NO. 3:21-CV-02450-WHO (DMR)<br><br>**ARCHER'S NOTICE OF MOTION AND MOTION TO COMPEL WISK TO PRODUCE CLAWED-BACK DOCUMENTS**<br><br>Hon. Donna M. Ryu |

**TO THIS COURT, ALL PARTIES AND THEIR ATTORNEYS:**

Please take notice that, pursuant to the Court's July 13, 2022 order (Dkt. 292), on **October 13, 2022 at 1:00 p.m.**, or as soon as the matter may be heard, in the courtroom of the Honorable Donna M. Ryu at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Defendant Archer Aviation Inc. ("Archer") will move the Court for an Order compelling Plaintiff Wisk Aero LLC ("Wisk") to produce certain documents Wisk produced but later clawed back on purported privilege grounds. Archer will also move for *in camera* review of those documents by the Court. This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Daniel J. Thomasch and exhibits thereto, all cited authorities, and all pleadings and papers on file in this action.

Respectfully submitted,

DATED:  August 11, 2022         GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Daniel J. Thomasch_____
         Daniel J. Thomasch

*Attorneys for Defendant Archer Aviation Inc.*

i

# I. INTRODUCTION

At issue in this motion are three documents (the "Clawback Documents") Wisk originally produced in full, but clawed back in part as attorney-client privileged. Specifically, Archer challenges Wisk's clawbacks of: (1) a single sentence within a 38-page slide deck presented by Wisk Management to the Wisk Board of Managers, dated November 2, 2020 ("November 2020 Board Deck") (Thomasch Decl., Ex. 1 at -615); (2) a single line from a set of comments to the November 2020 Board Deck ("Comments") (*id.*, Ex. 2 at -194); and (3) parts of two slides from multiple versions of a June 2021 slide deck alternatively titled "Wisk Funding Request" and ▮▮▮▮▮ ("June 2021 Funding Request") (*id.*, Ex. 3 at -822–823).

The redacted information in the two slide decks (and the associated Comments) all concern the same subject matter: Wisk's expectation that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Although Wisk contends the clawed-back information at issue came from Greg Bibbes, Wisk's General Counsel (who apparently holds at least three titles), each Clawback Document reflects primarily a business, not legal, purpose. To allow the Court to evaluate Wisk's privilege assertions and Archer's challenges thereto (including waiver), Archer respectfully asks the Court to order Wisk to lodge the complete, unredacted Clawback Documents with the Court for *in camera* review, consistent with Federal Rule of Civil Procedure 26(b)(5)(B) and the parties' ESI Stipulation and Stipulated Protective Order.

# II. FACTUAL BACKGROUND

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████████████████████████
2 ████████████████████████████████████████████████████████████
3 ████████████████████████████████████████████████████████████
4 ████████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████████
6 ████████████████████████████████████████████████████████████
7 ████████████████████████████████████████████████████████████
8 ████████████████████████████████████████████████████████████

Archer's demonstrator aircraft (*Maker*) ████████████████████ ████████████████████████ in which all 12 rotors are employed to lift the aircraft vertically, and six of those rotors tilt to propel the aircraft forward—no separate rotors independently propel the aircraft forward. This design is in stark contrast to the ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

Since before it filed this case, Wisk has promoted a narrative—████████████—that Archer stole Wisk's 12-tilt-6 aircraft design, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Thomasch Decl. ¶ 59. And when it filed its original complaint on April 6, 2021, Wisk alleged it already "*had developed* for its next-generation aircraft" the tilt-rotor design reflected in Wisk's January 2020 patent application. Dkt. 1 ¶ 4 (emphasis added). Archer contends that Wisk's underlying case narrative is false, and indeed contrived for the purpose of causing competitive injury to Archer. Contrary to ████████████████████████████████ ████████ and contrary to what Wisk told the Court and the public, ████████████████ ████████████████ at the time it filed its complaint. Indeed, as relevant to this motion, and as evidence of just how far Wisk was from having "developed" a 12-tilt-6 aircraft when it filed its patent application in January 2020, Archer contends that ████████████████████████ ████████████████████████████████████████

Archer selected and began developing a 12-tilt-6 design well before Wisk, and indeed Archer's co-CEOs informed Wisk's Chief Engineer (Geoff Long) of that design in a meeting on December 9, 2019, in an unsuccessful attempt to recruit Mr. Long to Archer—a disclosure that led to Wisk's rushed January 2020 patent application. Dkt. 153-4 ¶ 2. As Judge Orrick noted in denying Wisk's preliminary injunction motion: "[T]he parties dispute who first invented the design .... The evidence appears to be highly contextual and based on credibility, so it is better left to a factfinder." Dkt. 134 at 43–44.

To develop evidence for the jury substantiating Archer's position that Wisk's claim that it "had developed" a 12-tilt-6 aircraft by January 2020 is a fraud, Archer sought discovery concerning Wisk's internal analysis and external messaging regarding aircraft design considerations dating back to Wisk's April 2019 formation as an LLC. Thomasch Decl. ¶ 57. Archer has obtained overwhelming documentary evidence that ███████████████████████████████████████ ███████████████████████████████████ (*id.*), when (as reflected in non-clawed-back portions of the November 2020 Board Deck) Wisk undertook ███████████ ████████████████████████████████████████████████████████████████. Thomasch Decl., Ex. 1 at -599, -615, -618. ████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████ Wisk's recognition ████████████████████████████████████ ██████████████████ is integral to Archer's defense against Wisk's design theft narrative.

### III. PROCEDURAL HISTORY

Wisk's serial clawbacks have played out in a chain reaction across nearly four months. On April 12, 2022 Wisk clawed back a copy of the June 2021 Funding Request that Archer had cited by Bates number in RFPs served 13 days earlier. Thomasch Decl. ¶¶ 10–11. The next day (April 13), Archer (a) advised Wisk that it was destroying or sequestering the clawed-back document, (b) identified two other copies of the June 2021 Funding Request that Wisk had produced, which Wisk then clawed back on April 15, and (c) informed Wisk that Archer intended to challenge Wisk's privilege claim. *Id.* ¶¶ 12, 15. The parties had a transcribed meet-and-confer session on April 18, and Archer sent Wisk its portion of a draft joint letter brief on April 21. *Id.* ¶¶ 21, 25 & Ex. 7. That same day, Wisk sent a letter accusing Archer's counsel of "brazenly refer[ring]" to the clawed-back material

in the draft. *Id.*, Ex. 8 at 1. Archer responded on April 22, denying Wisk's accusations and citing authority showing that Archer's conduct complied with all ethical obligations. *See generally id.*, Ex. 9. Archer's letter also cited the November 2020 Board Deck by Bates number as an example of a non-privileged produced document that revealed "essentially the same information" as the June 2021 Funding Request. *Id.*, Ex. 9 at 2 n.1.

On May 4, 2022—12 days after receiving Archer's April 22 letter—Wisk clawed back a single sentence from the November 2020 Board Deck. Thomasch Decl. ¶ 31. Archer promptly sequestered or destroyed all copies of the November 2020 Board Deck and notified Wisk of its intent to challenge this second clawback as well. *Id.* ¶¶ 32–33. At this point, Archer specifically searched Wisk's productions for any additional documents that might relate to the privilege dispute. *Id.* ¶ 34. In doing so, Archer identified 19 documents unrelated to the dispute that appeared possibly privileged, and Archer notified Wisk of the same in letters dated May 18 and 20. *Id.* ¶ 35. Wisk subsequently clawed back 16 of the 19 documents. *Id.* ¶ 37.

In addition to the 19 documents, Archer's search turned up the Comments, which Archer did not (and does not) consider to be privileged, but which Archer brought to Wisk's attention by citing them in a June 2 version of Archer's draft joint letter brief challenging Wisk's clawback of the November 2020 Board Deck. *Id.* ¶¶ 36, 38. Wisk clawed back the Comments six days later (June 8), and on June 10 Wisk sent Archer a letter again accusing Archer's counsel of ethical misconduct, leading to three joint letter briefs. *Id.* ¶¶ 39–40, 45; Dkts. 281, 282, 284. Additionally, Archer moved for *in camera* review of the unredacted documents at issue. Dkt. 286. On July 13, this Court denied all pending clawback-related motions without prejudice, granting Archer leave to file a single motion challenging Wisk's clawbacks and seeking *in camera* review. Dkt. 293.

On August 2, while Archer was preparing this motion, Wisk produced **two more unredacted versions** of the June 2021 Funding Request, bringing the total number of versions to five. Thomasch Decl. ¶¶ 54, 63. The two versions produced on August 2 contained what appeared to be the exact same material Wisk had clawed back from the first three versions of the June 2021 Funding Request. *Id.* ¶ 54. On August 4, Archer notified Wisk of this presumably inadvertent production, and Wisk clawed back the same two slides from each of the two new versions on August 8. *Id.* ¶¶ 55–56.

## IV.   GOVERNING LAW

A.   **Federal Privilege Law Applies**

Wisk has brought claims against Archer under the federal Defend Trade Secrets Act (18 U.S.C. §§ 1836 *et seq.*) and federal patent law, giving the Court federal question subject matter jurisdiction under 28 U.S.C. § 1331. Dkt. 148 ¶¶ 137–147, 159–251. While both Wisk and Archer have also raised California state law claims (*id.* ¶¶ 148–158; Dkt. 153-4 ¶¶ 65–98), where "there are federal question claims and pendent state law claims … the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (citations omitted). In addition to substantive federal law, federal procedural rules apply here by virtue of Federal Rule of Evidence 502(f) and the parties' agreement: In the ESI Stipulation (Dkt. 167-1 ¶ 23(c)) and the Court-ordered Stipulated Protective Order (Dkt. 161 § 13), the parties agreed to abide by the clawback procedures set forth in Rule 26(b)(5)(B). Federal law therefore governs this motion in all respects.

B.   **Legal Standard**

As communications purportedly involving Wisk's in-house counsel (Greg Bibbes), the Clawback Documents must be scrutinized to determine "'whether the primary purpose of the communication is to give or receive legal advice, as opposed to business … advice.'" Dkt. 222 at 6 n.3 (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)). "[W]here there is a clear business purpose in the environment in which the communications occurred[], the court should sustain an assertion of privilege only when there is a clear evidentiary predicate for concluding that *each* communication in question was made *primarily* for the purpose of generating legal advice." *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990). In making that determination, the Court must review the "content, the purposes of the communications, and the context in which they were written" to determine whether privilege applies—not only the assertedly privileged portions. *Bio-Rad Lab'ys, Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 126 (N.D. Cal. 1990). Wisk bears the burden of showing that all eight elements of the attorney-client privilege. *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 24859, at *6 (N.D. Cal. Jan. 3, 2017). Similarly, with respect to each inadvertent production, Wisk bears the burden of showing that all three elements of Federal Rule of Evidence 502(b) are met, including that it "took reasonable steps to prevent disclosure." *Id.* at *7.

## V. ARGUMENT

### A. The Clawback Documents Are Not and Were Never Privileged

Wisk claims the clawed-back portions of the Clawback Documents were drafted by Greg Bibbes—Wisk's Chief Compliance Officer, General Counsel, and Secretary of the Board and/or Company. Thomasch Decl. ¶ 11, 31, 61. Archer contends that all three Clawback Documents were drafted primarily for business, rather than legal, purposes. None is privileged.

***November 2020 Board Deck & Comments.*** The November 2020 Board Deck is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Thomasch Decl., Ex. 1 at -600. The November 2020 Board Deck as a whole apparently was prepared by Wisk's non-lawyer Chief Marketing Officer, Becky Tanner. The clawed-back portion of the November 2020 Board Deck appears in a section addressing ▇▇▇▇▇▇ *Id.* at -598. The document describes the ▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at -599. Relatedly, the clawed-back portion of the Comments is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, Ex. 2 at -194. ▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, Ex. 1 at -615. Mr. Gysin was not requesting legal advice.

Nothing in the November 2020 Board Deck or the Comments indicates Wisk treated any portion of either as privileged. Thomasch Decl. ¶¶ 30, 36. That is not surprising, as ▇▇▇▇ was a business, not legal, decision. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ███ *In re Currency Conversion Antitrust Litig.*, 2010 WL 4365548, at *9 (S.D.N.Y. Nov. 3, 2010).

4  Furthermore, Wisk's claim that Mr. Bibbes was providing legal advice in the November 2020

5  Board Deck is belied by the Comments, ████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████ Thomasch Decl., Ex. 2 at -194. ████████████████

8  ████████████████████████████████████████████ *Id.* ████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ██████████████████████████████ *Id.*  No documentary evidence—let alone a "clear evidentiary

12 predicate"—supports Wisk's claim that Mr. Bibbes's ███████████████

13 ████████████████████████████████████████████████████████

14 were posed "***primarily*** for the purpose of generating legal advice." *McCaugherty*, 132 F.R.D. at 238.

15       Moreover, an undisputedly non-privileged Wisk document supports Archer's view that what

16 Wisk clawed back as purported "legal advice" was primarily the presentation of a business strategy by

17 Wisk to its Board. ███████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████ is not privileged.

23       As the November 2020 Board Deck shows, ████████████████████

24 ████████████████████████████████████████████████████████

25 ██████████████ Thomasch Decl., Ex. 1 at -615.  Critically, ████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████ Because the communications at issue had the primary purpose of

1  "further[ing] a business objective," they are not privileged. *In re Chase Bank USA, N.A. "Check Loan"*
2  *Cont. Litig.*, 2011 WL 3268091, at *2 (N.D. Cal. July 28, 2011).

3  **June 2021 Funding Request.** ████████████████████████████
4  ████████████████████████████████████████ Thomasch Decl., Ex. 3
5  at -815 ████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████ Thomasch Decl.
8  ¶ 63. Like the November 2020 Board Deck, the June 2021 Funding Request bears no markings
9  identifying it as legal advice. *Id.* ¶ 61. Its recipients reasonably would have understood its purpose as
10 detailing a Wisk business objective, not providing unmarked legal advice from an unidentified attorney.

11  That Mr. Bibbes drafted the two partially clawed back slides at issue does not make ***Mr. Gysin's***
12 communications to the Board privileged. Both slides, like the June 2021 Funding Request as a whole,
13 clearly serve a business, not legal, purpose████████████
14 ████  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 1589974,
15 at *8 (N.D. Cal. Apr. 11, 2019) (Ryu, Mag. J.) (finding communications with "requests for funding"
16 not privileged). This is further reflected in an email Mr. Gysin ***sent only to himself*** on May 27, 2021—
17 shortly before the June 2021 Funding Request—that referred to █████████████
18 ████████████████████ Thomasch Decl. ¶ 64. Wisk should not be permitted to
19 cloak business decisions in privilege, hindering Archer's development of its defenses.

20  Finally, even if privileged, Wisk waived any privilege when Mr. Gysin sent a version of the
21 June 2021 Funding Request to Mr. Neveril, then the Senior Director of Enterprise Corporate
22 Development at Boeing. Ex. 4. ████████████████████████ making that
23 transmission a waiver of any privilege. *Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 484 (D. Or.
24 2012) (rejecting common-interest privilege over investment-seeking documents because the
25 "disclosure was not made for the purpose of securing representation … but instead … to solicit
26 investment capital"). Mr. Bibbes was not Boeing's counsel and thus any legal advice in the June 2021
27 Funding Request was not legal advice ***to Boeing***. And at the time of the disclosure, Boeing,
28 Mr. Neveril's employer, was ***not*** a member of the LLC; instead, ***HorizonX*** was the LLC member. Ex. 7

at 181:9–24.  Any privileged relationship Wisk may have had with HorizonX, if it even had one, did not extend to Boeing, and thus any privileged information in the June 2021 Funding Request was waived by Mr. Gysin's transmission of the unredacted document to Mr. Neveril.

Lastly, Wisk's August 2 production of two more unredacted versions of the June 2021 Funding Request simply cannot be squared with its continuing assertion of privilege.  Thomasch Decl. ¶ 54.  Wisk has been on notice for months of Archer's challenge to Wisk's assertion of privilege over that document, and its repeated production of its supposedly privileged material effects a waiver.  *Audubon Soc'y of Portland v. Zinke*, 2018 WL 1522691, at *4 (D. Or. Mar. 27, 2018) (finding waiver where, among other factors, the asserting party "disclosed the [privileged] comment at issue in three separate iterations"); *Ecological Rts.*, 2017 WL 24859, at *7 (finding waiver where clawing back party "ha[d] not demonstrated that it took reasonable steps in order to prevent inadvertent disclosure").

## B. Archer's Counsel Strictly Complied with All Ethical Obligations

Wisk has alleged publicly that Archer "misused" Wisk's assertedly privileged material in challenging Wisk's spree of clawbacks.  Dkt. 284.  Although baseless, Archer addresses that accusation with care here and in the Thomasch Declaration because Archer's counsel takes seriously even frivolous allegations of ethical misconduct.  Archer first notes two significant facts:  *First*, of the 24 documents Wisk has clawed back since April 12, **Archer brought 23 of them to Wisk's attention**.  Thomasch Decl. ¶¶ 10–12, 30–31, 35, 37–39, 55.  *Second*, Archer's only post-clawback "use" of any of those documents has been in challenging Wisk's privilege claims over the Clawback Documents.  *Id.* ¶ 65.  Seeking a ruling under Rule 26(b)(5)(B) as to a claim of privilege is not an ethical violation.

Regardless of the merits of Archer's clawback challenges, Wisk's accusation of ethical misconduct is wrong.  Archer has not, as Wisk has claimed, "used" any of Wisk's assertedly privileged material *except* in challenging Wisk's clawbacks in a manner consistent with its ethical responsibilities.  As Archer's counsel made clear to Wisk in his April 22 letter (Thomasch Decl., Ex. 9 at 5–6), a court of this District has rejected Wisk's claim that a party challenging a clawback may not explicitly "discuss[]" that material in its challenge.  *TVIIM, LLC v. McAfee, Inc.*, 2014 WL 12975835, at *3–4 (N.D. Cal. Aug. 14, 2014).  Nevertheless, as Archer told Wisk in that same letter, Archer instead followed the rule in *In re Lidoderm Antitrust Litigation* (Thomasch Decl., Ex. 9 at 1–2), where Judge

Orrick permitted attorneys representing a party challenging a clawback to use the clawed-back material only "from their recollection prior to [the] claw back." No. 14-MD-2521-WHO, at *1 (N.D. Cal. Jan. 12, 2016) (Dkt. 367). Archer has fully complied with the *Lidoderm* rule. Thomasch Decl. ¶ 65.

Wisk also alleged Archer committed an ethical breach **by sending Wisk** a June 14 **redline** of the November 2020 Board Deck joint letter brief **showing Archer's deletion of Wisk's assertedly privileged material in the Comments** from the prior (pre-clawback) draft. *Id.* ¶¶ 44–46. The antithesis of an ethical violation, Archer's provision of a redlined document was a professional courtesy—conduct consistent with this District's Guidelines of Professional Conduct. *See* N.D. Cal. Guideline of Pro. Conduct 19 ("Redlining: A lawyer should clearly identify for other counsel or parties **all** changes that a lawyer makes in documents." (emphasis added)). Wisk's attempt to weaponize Archer's professional courtesy is indicative of Wisk's unacceptable, no-holds-barred approach to this litigation.

There is no justification for Wisk's misuse of ethical rules as a tactical weapon to try to intimidate Archer into forgoing a privilege challenge. Archer therefore requests an award of monetary sanctions for having to oppose Wisk's original joint letter brief (Dkt. 284). Fed. R. Civ. P. 37(a)(5).

## VI.  REQUEST FOR IN CAMERA REVIEW

Archer is entitled to have the Clawback Documents reviewed *in camera* under Rule 26(b)(5)(B), which permits a party challenging a clawback to "promptly present the information to the court under seal for a determination" of the privilege claim. The parties adopted the Rule 26(b)(5)(B) procedure in both the ESI Stipulation (Dkt. 167-1 ¶ 23(c)) and the Court-ordered Stipulated Protective Order (Dkt. 161 § 13). Courts analyzing clawback challenges routinely review the disputed documents *in camera*, *see, e.g.*, *In re Google RTB Consumer Priv. Litig.*, 2022 WL 1316586, at *3 (N.D. Cal. May 3, 2022), especially where, as here, the associated burden is "manageable" and the documents "could be important." *Genentech, Inc. v. Insmed, Inc.*, 234 F.R.D. 667, 673 (N.D. Cal. 2006) (granting *in camera* review of two documents). Because Wisk objects to Archer presenting the complete, unredacted Clawback Documents to the Court (Thomasch Decl. ¶ 48), Archer respectfully asks the Court to order Wisk to lodge those documents for *in camera* review.

## VII.  CONCLUSION

Archer respectfully requests that the Court grant this motion in all respects.

Gibson, Dunn & Crutcher LLP

Respectfully submitted,

DATED: August 11, 2022        GIBSON, DUNN & CRUTCHER LLP

By: */s/ Daniel J. Thomasch*
 Daniel J. Thomasch

*Attorneys for Defendant Archer Aviation Inc.*