ARTURO J. GONZALEZ (CA SBN 121490)
AGonzalez@mofo.com
SHAELYN K. DAWSON (CA SBN 288278)
ShaelynDawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482, U.S.A.
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Non-parties
JOHN MELACK AND DIEDERIK MARIUS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>               Plaintiff,<br><br>     v.<br><br>ARCHER AVIATION INC.,<br><br>               Defendant. | Case No.   3:21-cv-02450-WHO<br><br>**NON-PARTIES JOHN MELACK'S AND DIEDERIK MARIUS' OPPOSITION TO WISK'S MOTION FOR RELIEF FROM NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE** |

Wisk is incorrect on both bases on which it brings its motion for relief ("Mot."). First, Judge Ryu applied the proper legal standard for the highly invasive forensic inspection of personal devices Wisk seeks. Second, Judge Ryu correctly found that Wisk had not met that legal standard. All Wisk has is the fact that Non-Parties John Melack and Diederik Marius (the "Third Parties") inadvertently retained 16 Wisk documents. Despite Wisk's hand waving and misleading statements to the contrary, it is no surprise that Third Parties—who worked at Wisk for many years—had Wisk documents on their personal devices. In fact, Wisk reimbursed its employees for use of personal cell phones at work and rushed Third Parties out the door when they gave notice they were leaving Wisk. Judge Ryu's carefully considered order should stand as it is not "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

## BACKGROUND

In response to personal subpoenas served by Wisk, Melack searched 53 personal devices and electronic sources and produced responsive documents; Marius searched 18 personal devices and electronic sources and produced responsive documents. Melack was deposed on July 1 and July 6, 2021, and Marius was deposed on July 6 and August 11 in 2022. Melack will be deposed again in the next month. On December 20, 2021, Wisk moved to compel Third Parties to produce forensic images of certain personal devices. Dkt. 191. Based on the initial evidentiary record, Judge Ryu denied Wisk's motion without prejudice. Dkt. 233.[1] On May 4, 2022, Wisk moved again for forensic inspection. Dkt. 260. During an hourlong hearing, Judge Ryu methodically examined "one by one" the documents constituting Wisk's so-called "newly obtained evidence" and found no credible evidence to justify Wisk's "fairly extraordinary" request. Dkt. 298 at 11:11.

## ARGUMENT

"Th[e] standard [for reviewing a magistrate's nondispositive ruling] is highly deferential—the district judge may not simply substitute his or her judgment for that of the

---

[1] Wisk misstates the procedural history. Judge Ryu did not order "additional briefing" on Wisk's first motion for forensic inspection. Mot. at 2. Judge Ryu *denied* Wisk's first motion, but permitted Wisk to file a new motion based on Wisk's claim about "newly obtained evidence." Dkt. 233. This motion is Wisk's appeal of the *denial* of its second motion for forensic inspection of Third Parties' personal devices. Dkt. 298 at 49:6–14.

magistrate judge." *In re Appl. of Mahltig Mgmt. und Beteiligungsgesellschaft mbH*, 2018 WL 2770894, at \*2–3 (N.D. Cal. June 11, 2018); *see* Fed. R. Civ. P. 72(a).

## I.      Judge Ryu Applied the Correct Legal Standard

The legal standard from *Lee v. Stonebridge Life Insurance Co.* is clear: "Because personal computers contain highly personal and sensitive material[,] courts generally require a heightened showing of good cause" before permitting forensic inspection. 2013 WL 3889209, at \*1 (N.D. Cal. July 30, 2013). *Lee* applies here because Wisk seeks forensic inspection of Third Parties' *personal* devices. There is no question the devices at issue are personal and contain personal and sensitive information. Wisk's belated attempts to distinguish *Lee* fail.

First, Wisk's argument that *Lee* is inapplicable because it did not involve trade secrets is unavailing. Mot. at 3. The personal nature of the devices is what gives rise to the heightened standard, not the subject matter of the underlying legal claims. *Lee*, 2013 WL 3889209, at \*1.

Second, Wisk's argument that Judge Ryu erred in applying the heightened *Lee* standard and instead should have applied the "special connection" standard articulated in *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL 832937 (N.D. Cal. Mar. 19, 2007) is nonsensical. Mot. at 3. *Memry* does not set out a different legal standard for assessing the propriety of forensic inspection of personal devices. Rather, consistent with the heightened good cause *Lee* standard, *Memry* makes clear that forensic inspection of devices is the exception, not the rule, reserved only for an "extreme situation where data is likely to be destroyed or where computers have a special connection to the lawsuit." *Memry*, 2007 WL 832937, at \*3. Neither extreme situation is here.[2]

The only connection between Third Parties' personal devices and this litigation is that 16 inadvertently retained Wisk documents reside on those devices. But the 16 documents and associated metadata were produced to Wisk. And Third Parties submitted sworn declarations stating they never used the documents at Archer and did not know they had them until the litigation. Dkt. 260-18 at ¶ 10; Dkt. 260-19 at ¶ 11. Archer's forensic expert also submitted a declaration stating there was no evidence of the 16 Wisk documents at Archer. Dkt. 260-16. Judge Ryu appropriately credited this testimony. Dkt. 298 at 11:12–19, 16:3–4, 48:24–25.

---

[2] Wisk does not argue risk of data destruction. The devices at issue have been preserved.

Wisk's assertion that Third Parties' devices "have a special connection" to this trade secret case because they stored Wisk files that Wisk "believes" were used to build competing products at Archer (Mot. at 3) would expose personal devices of third-party former employees to inspection any time documents are inadvertently retained.  That result is inconsistent with settled precedent, where a special connection is found *only* where a particular device was used in committing the alleged offense in a way that requires forensic inspection to determine how the device was used or manipulated.  *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) (permitting inspection of personal iPhones where plaintiffs' sole allegation of harm was software caused those iPhones to perform more slowly); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291 at *14-15 (E.D. Mo. Dec. 27, 2006) (inspection of work computers permitted where main allegation was defendants improperly used their employer's computers to sabotage the plaintiff's business).

Finally, Wisk's fixation on Judge Ryu's use of the term "malfeasance" when applying the heightened *Lee* standard is a red herring.  In *Lee*, Judge Corley held that "absent a showing of misconduct on Plaintiff's part such that serious questions exist as to the reliability and completeness of Plaintiff's expert's search, [defendant] is not entitled to a forensic examination of Plaintiff's personal computer."  2013 WL 3889209, at *2.  Wisk confuses *sufficiency* for *necessity*:  Judge Ryu identified malfeasance as *a type* of misconduct that would show heightened good cause, not an entirely different standard.  Dkt. 298 at 4:13–16 (J. Ryu: Wisk must "provide evidence that is at least suggestive of malfeasance or misconduct rather than something that is less culpable, like inadvertence"); 37:14–18 (J. Ryu: "You don't have to show there was misconduct.  You don't have to show there was trade secret misappropriation.  Nothing close to that.  You do have to show there's something seriously fishy going on.").  Here, as in *Lee*, Judge Ryu found no evidence of misconduct or malfeasance to warrant the "extreme step" of compelling inspection of personal devices.  *Lee*, 2013 WL 3889209, at *1.  Judge Ryu's use of "malfeasance" rather than Judge Corley's use of "misconduct" when applying the heightened good case standard was not "clearly erroneous."  Fed. R. Civ. P. 72(a).

## II.   Judge Ryu Correctly Held that Wisk Did Not Meet the Heightened *Lee* Standard

### A.   Wisk Has Not Shown Misconduct by Either of the Third Parties

After patiently walking through Wisk's purported evidence during an hourlong hearing, Judge Ryu correctly found Wisk had not shown misconduct by Third Parties. *See, e.g.*, Dkt. 298 at 28:10–22; 48:6–49:5. Although Third Parties did retain some Wisk documents, Judge Ryu correctly found the retention was inadvertent. *Id.* She also correctly found that nothing in the inadvertently retained documents was suggestive of misconduct by Third Parties. *Id.* She also properly rejected Wisk's claim that the metadata fields showed such misconduct. *See, e.g.*, *id*. at 12:3-16; 25:6-13; 28:10-17. Again, Wisk omits that Third Parties' forensic expert submitted a declaration explaining these metadata fields, which Judge Ryu credited. Dkt. 298 at 11:12-19. Similarly, Wisk refers to Melack producing "thousands" of Wisk files, Mot. at 5, but fails to mention the files are publicly available and downloadable from the Internet. Dkt. 260-19 at ¶ 10.

Importantly, Judge Ryu did not base her decision on a "proclamation of innocence," as Wisk claims (Mot. at 4), but rather on a mountain of unrebutted evidence: hours of deposition testimony, declarations made under penalty of perjury, and contemporaneous emails reflecting Third Parties' efforts to rid their personal devices of Wisk materials. Dkts. 98-17; 98-18; 260-18; 260-19. Third Parties' forensic expert also submitted a declaration corroborating their testimony that they had not accessed the Wisk documents in years. Dkt. 260-17 at ¶¶ 26–37. Giving no reason to doubt Judge Ryu's view of this evidence, Wisk's Motion is merely a request to "substitute" this Court's judgment for Judge Ryu's. *In re Mahltig*, 2018 WL 2770894, at *2–3.

### B.   Wisk Has Already Obtained the Discovery It Seeks

Wisk's argument that it has satisfied the heightened good cause standard because—unlike the moving party in *Lee*—Wisk has no other means to access the requested information (Mot. at 3) is a misrepresentation. The very forensic analysis that Wisk demands to identify any deletion or file transfer history of the 16 subject documents was already performed by Third Parties' forensic expert (to the extent technologically possible) and the findings were disclosed to Wisk and Judge Ryu. Dkt. 260-17 at ¶¶ 7–14. Wisk not only fails to mention this analysis (which show no file deletion or transfers), but misrepresents the record by claiming Third Parties "have

not offered to search for evidence of file transfer and deletion." Mot. at 4.[3]  Wisk **already has** the information it claims can only be obtained through forensic inspection.

### C.      Wisk's Cited Cases Are Inapposite

Neither case Wisk relies on supports its position.  In *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, the undisputed evidence showed that the plaintiff's source code files were found on the individual *defendant's* hard drive, the defendant imaged his hard drive and then "recycled" it, and the defendant transferred the files from the imaged hard drive to his work device.  2012 WL 70428, at *2 (N.D. Cal. Jan. 9, 2012).  Forensic inspection was necessary to "test[] the veracity of [the defendant's] claims as to whether any of [the plaintiff's] source code files on [the individual defendant's] hard drives were accessed" during the relevant period.  *Id.*  Here, not only did Wisk expressly permit employees to use personal devices for work, there is also no evidence that any Wisk files on Third Parties' personal devices—including the 16 at issue—were ever transferred to Archer.  *See* Dkt. 260-16.  Nor is there evidence of destruction or concealment of relevant materials.  *Ameriwood* also does not support Wisk.  There, the court allowed imaging of the *defendant's* computers upon finding evidence that the defendants (its former employees) improperly used plaintiff's computers to divert plaintiff's business to themselves.  2006 WL 3825291 at *4–5.  Here, Wisk seeks images of *non-party* devices.

### III.    Wisk's Inspection Protocol Is Invasive and Disproportionate to the Needs of the Case

Wisk's proposed protocol is not minimally invasive from either a privacy or cost perspective.  As proven through the forensic inspection of a different former Wisk employee's personal devices, an extraordinary amount of personal data is shown in the "Red Flag Reports" Wisk seeks, particularly given frequent usage of cloud-based email and storage systems.  The time and cost involved in redacting this personal data is unduly burdensome and disproportionate to the needs of the case—particularly where Third Parties have already undertaken the immense burden and privacy intrusion of having dozens of their personal accounts and devices reviewed.

### CONCLUSION

Wisk's objections and request to overturn Judge Ryu's ruling should be denied.

---

[3]  This Court and Judge Ryu have previously admonished Wisk for mischaracterizing evidence in its briefs.  *See* Dkt. 133 at 34; Dkt. 177 at 18:5–25.

1    Dated:       August 11, 2022          MORRISON & FOERSTER LLP

2

3                                          By:    *Shaelyn K. Dawson*
                                                  SHAELYN K. DAWSON
4
                                           Attorneys for Non-Parties
5                                          JOHN MELACK AND DIEDERIK
                                           MARIUS
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28