UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>ARCHER AVIATION INC.,<br><br>        Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**ORDER ON OBJECTIONS TO NONDISPOSITIVE MAGISTRATE JUDGE ORDER**<br><br>Re: Dkt. No. 304 |

Plaintiff Wisk Aero LLC ("Wisk") objects to a nondispositive pretrial discovery order entered by Magistrate Judge Donna Ryu. *See* Dkt. No. 304 ("Obj."). For the reasons that follow, Wisk's objections are OVERRULED and Judge Ryu's order is AFFIRMED.

**BACKGROUND**

The parties and third parties are familiar with the history of this dispute, so I do not repeat it in detail here. In brief, Wisk sought to compel several third-party individuals, John Melack and Diederik Marius (collectively, the "third parties"), to produce 71 personal electronic devices for forensic inspection. *See* Dkt. No. 263 (discovery letter brief).[1] The third parties were employees of Wisk until they left for defendant Archer Aviation, Inc. ("Archer"), a competitor. *See id.* Wisk argued that the third parties retained confidential Wisk documents and information on their personal devices when they departed Wisk. *See id.* This suit concerns Wisk's allegations that Archer infringes its patents and, most relevant here, misappropriated its trade secrets when developing its own product. *See generally* Dkt. No. 133.

---

[1] The dispute before Judge Ryu concerned other third-party former Wisk employees as well. Wisk objects only to Judge Ryu's determinations about Melack and Marius here. *See* Obj. 1 ("Wisk objects to the Order's denial of its Motion at Dkt. 263, insofar as that Motion sought relief from Defendant's employees John Melack and Diederik Marius.").

Judge Ryu denied Wisk's first attempt at obtaining a forensic inspection without prejudice because it "proffered . . . newly obtained evidence" at the hearing; she ordered Wisk and the third parties to "renew their meet and confer efforts" and file a new dispute if appropriate. Dkt. No. 233. Wisk and the third parties filed a new dispute. Dkt. No. 263. Wisk argued that "[t]he evidence gathered to date has identified specific devices used by the [third parties] to store confidential Wisk documents reflecting Wisk's asserted trade secrets." *Id.* at 1. The third parties responded that Wisk had not met a "heightened showing of good cause" necessary to conduct forensic search of personal computing devices. *Id.* at 3–5. Judge Ryu held a hearing at which she walked through the evidence Wisk introduced to meet that heightened standard. *See* Transcript of July 14, 2022 Hearing ("Tr.") [Dkt. No. 298]. While she granted some of Wisk's other requests, she denied its request for forensic searches of the third parties' personal devices. *See* Dkt. No. 295 (minute entry ordering that Wisk's motion to compel was denied "[f]or the reasons stated on the record").

**LEGAL STANDARD**

Under 28 U.S.C. § 636, "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for certain matters not relevant here. 28 U.S.C. § 636(b)(1)(A). When reviewing objections to a magistrate judge's determination under this provision, "[a] judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

**DISCUSSION**

Wisk objects on two related grounds. First, it argues that Judge Ryu applied the wrong legal standard: according to it, Judge Ryu erroneously required a "heightened showing of good cause" and interpreted this requirement to require proof of "malfeasance" by the third parties. *See* Obj. 1–4. Second, Wisk argues that, under the correct standard, it should be able to inspect the devices. *Id.* 5.

*First*, I reject Wisk's argument that Judge Ryu employed an incorrect legal standard. In general, when deciding what may be obtained in discovery, courts are required to weigh competing interests. Federal Rule of Civil Procedure ("FRCP") provides that, as a starting point,

2

1    parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's
2    claim or defense." Fed. R. Civ. P. 26(b)(1). But that broad provision is then limited in several
3    ways. Discovery must be "proportional to the needs of the case, considering the importance of the
4    issues at stake in the action, the amount in controversy, the parties' relative access to relevant
5    information, the parties' resources, the importance of the discovery in resolving the issues, and
6    whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*
7    District courts have broad authority to supervise and limit discovery. *Surfvivor Media, Inc. v.*
8    *Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

9    In finding that a good-cause standard applies here, two sets of concerns are relevant. First,
10   courts have often expressed special concern about permitting inspections of personal computing
11   devices. The Advisory Committee notes to FRCP 34, which governs production of electronically
12   stored information, explain that the rule "is not meant to create a routine right of direct access to a
13   party's electronic information system, although such access might be justified in some
14   circumstances. Courts should guard against undue intrusiveness resulting from inspecting or
15   testing such systems." Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment; *see also*
16   *Shiavone v. Fortune*, 477 U.S. 21, 31 (1986) (giving interpretive weight to the Advisory
17   Committee's notes). The ubiquity, use, and storage capacity of modern personal computing
18   devices raise important privacy concerns. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 385–91
19   (2014) (examining these privacy interests in the Fourth Amendment context). So, as one case
20   relied on by Judge Ryu explained, "[b]ecause personal computers contain highly personal and
21   sensitive material courts generally require a heightened showing of good cause." *Lee v.*
22   *Stonebridge Life Ins. Co.*, No. 11-CV-43 RS (JSC), 2013 WL 3889209, at *1 (N.D. Cal. July 30,
23   2013) (citations omitted). Second, in applying the discovery principles above, "[c]ourts have
24   often held that non-parties should generally shoulder lesser discovery burdens than parties can be
25   made to." *Lickerish, Inc. v. PicClick, Inc.*, No. 5:22-MC-80152-WHO, 2022 WL 2812174, at *3
26   (N.D. Cal. July 18, 2022) (citation omitted); *see, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*,
27   No. 16CV02200HSGKAW, 2017 WL 3124014, at *2 (N.D. Cal. July 24, 2017) (collecting cases).
28   While the third parties here are employees of the defendant and so can sometimes be held to

stricter standards than complete strangers to the suit, they are still not named parties.

As a result, Judge Ryu correctly required a showing of good cause—not just mere relevance—in assessing whether to order forensic examinations of the personal computing devices of non-parties. And in light of all that has just been said, it is no surprise that many decisions take this basic approach. *See, e.g.*, *Lee*, 2013 WL 3889209, at *1; *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (collecting cases).

Wisk raises several counterarguments. It maintains that because *Lee* was not a case about trade secrets, it is of minimal value here. Obj. 2–3. To be sure, when a case is about trade secrets, that no doubt must be considered in the analysis—for instance, it may mean that if there is sufficient indication of a trade secret on a personal device, good cause to search it has been shown. But, as explained, the good-cause standard flows from general discovery principles and, so, is applicable across subject matters. As noted, *Lee* is far from the only case to take this approach. In fact, even Wisk's cases do so. *See In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 3973752, at *2 (N.D. Cal. Aug. 22, 2019) ("The court finds that Plaintiffs have a legally protected privacy interest in their devices, that their expectation of privacy in their phones is reasonable, and that the threatened invasion is serious. As they argue, personal devices are afforded special privacy protections. (citations omitted)); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012) ("Brocade shows good cause for requiring [the] production.").

Wisk also argues that "Judge Ryu further erred by interpreting the 'heightened' standard to require a showing of 'malfeasance.'" Obj. 3. It notes that *Lee* did not include a requirement of "malfeasance." *Id.* 3–4. But Wisk's objection is misplaced. To start , Wisk itself teed up the issue in the first letter it filed by arguing that "[t]he Third Parties contend that Wisk should be required to make a threshold showing of 'wrongdoing,' but Wisk has already done so by identifying the Target Documents on the personal devices." Dkt. No. 191 at 2. In its next letter it wrote that, "[t]he evidence of malfeasance gathered so far confirms additional investigation is warranted." Dkt. No. 263 at 1. And it referenced alleged "suspicious activity" and documents on the devices already identified as being from Wisk. *Id.* at 2. More broadly, Wisk's rationale for examining

4

these devices *was* that they might contain evidence indicative of trade-secret misappropriation.

Judge Ryu began her analysis by noting that "Wisk allowed use of personal devices for work purposes, so the fact that there's information on a personal device is not suspicious in and of itself." Tr. at 11:2–4. In other words, on these facts, just because the third parties had a Wisk document on a personal device after leaving does not show good cause to subject that device to inspection. Judge Ryu went on to explain her analytical approach: "What I'm doing here is trying to analyze the Wisk Aero documents found on personal devices that were accessed by the individual who used to work at Wisk but then went over to Archer. And looking at the ones that have been identified by Wisk Aero in their letter as indicative of malfeasance and working through those." *Id.* at 11:6–10. She then analyzed each of the specific pieces of evidence put forward by Wisk for why it believed it had justified forensic examinations. In context, Judge Ryu did not hold that meeting a good-cause standard would always require malfeasance she was explaining that, on these facts, the rationale being put forward was improper behavior and that merely having Wisk files on a device was not good cause on its own. Because she needed to find good cause to order forensic examinations, she sensibly looked to Wisk's evidence of the alleged improper or suspicious behavior.

*Second*, I reject Wisk's argument that Judge Ryu clearly erred in applying the test to these facts. *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014) ("On review of a nondispositive order, the magistrate's factual determinations are reviewed for clear error, and the district court may only set aside those factual determinations if it is left with a definite and firm conviction that a mistake has been committed." (internal quotation marks and citations omitted)). Wisk's argument on this front depends entirely on accepting its argument that an incorrect test was employed, so the analysis could end there. But in any event, I perceive no clear error in Judge Ryu's application of a good-cause standard to these facts. In a long hearing, Judge Ryu carefully and thoroughly walked through every piece of evidence Wisk introduced about why it believed the third parties' devices needed to be examined. She gave Wisk's counsel opportunities to respond at every turn. She elicited explanations from the third parties' counsel about weaknesses in their reasoning. She then explained in detail why she concluded each piece

5

of evidence that Wisk put forward was not concerning. As she noted, the evidence showed that "Wisk allowed use of personal devices for work purposes." Tr. at 11:2–3. She found that a declaration showed that Archer had conducted a forensic review and none of the allegedly suspect documents were in its systems. *Id.* at 11:12–19. And she found, when it came to each particular document, that Wisk had not met its burden for reasons that need not be rehashed here. There was no clear error in that analysis and Wisk does not point to any under the correct legal test.[2]

Wisk's objections are OVERRULED and its motion for relief from the order is DENIED.

**IT IS SO ORDERED.**

Dated: August 19, 2022



William H. Orrick
United States District Judge

---

[2] The case that Wisk most heavily relies on for factual comparison found good cause to order inspections of personal devices on different salient facts. *See Brocade*, 2012 WL 70428, at *2. In that case, the party whose device was imaged was a named defendant. More importantly, the court chronicled extensive evidence of unauthorized files kept on his device without sufficient explanation and transferred onto his work device with the defendant. *See id.*, at *2–*3. Here, Judge Ryu cogently explained why there is no similar showing of good cause based on the facts Wisk put forward.