QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ARCHER AVIATION INC.,<br><br>Defendant. | Case No.  3:21-cv-02450-WHO<br><br>Honorable: William H. Orrick<br><br>**PLAINTIFF WISK AERO'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>Hearing Date: September 28, 2022<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 2 Honorable Judge William H. Orrick |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that on September 28, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom in the courtroom of the Honorable William H. Orrick at the United States

District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Wisk Aero LLC ("Wisk") shall and hereby does move the Court for leave to amend Wisk's infringement contentions pursuant to Patent Local Rule 3-6 to amend its infringement contentions for good cause.

Wisk proposes amendments to the infringement charts of two patents: U.S. Patent No. 10,110,033 ("the '033 patent") and U.S. Patent No. 9,764,833 ("the '833 patent").  This is Wisk's first request to amend its infringement contentions, and the basis for the proposed amendments relate to information that has only recently been discovered despite Wisk's diligent efforts since service of its initial infringement contentions.

Wisk's motion is based on this notice of motion and supporting memorandum of points and authorities and the supporting declarations and accompanying exhibits, as well as Wisk's forthcoming reply briefing in further support of this motion and supporting declarations and accompanying exhibits, Wisk's proposed order, as well as other written or oral argument that Wisk may present to the Court.


DATED:  August 22, 2022                         QUINN EMANUEL URQUHART &
                                                SULLIVAN, LLP


                                         By     *Patrick Schmidt*
                                                Patrick T. Schmidt
                                                Attorneys for Plaintiff Wisk Aero LLC

# TABLE OF CONTENTS

Page

FACTUAL BACKGROUND .................................................................................................3

    A.    The '033 Patent.................................................................................................3

            1.    Wisk's Initial Infringement Contentions For The '033 Patent ....................4

            2.    Wisk Diligently Sought Source Code For The '033 Contentions ................5

            3.    Wisk Diligently Sought Evidence Regarding Archer's Patent Defenses.................................................................................................6

            4.    Wisk's Proposed Amendment ....................................................................6

    B.    The '833 Patent.................................................................................................7

            1.    Wisk's Initial Infringement Contentions For The '833 Patent ....................8

            2.    Wisk Diligently Sought Documentary Evidence For Its '833 Contentions .................................................................................................9

            3.    Wisk Diligently Sought Evidence Regarding Archer's Patent Defenses...............................................................................................10

            4.    Wisk's Proposed Amendment ..................................................................11

    C.    The Meet And Confer Process .......................................................................12

LEGAL STANDARD ......................................................................................................13

ARGUMENT ....................................................................................................................14

II.    GOOD CAUSE EXISTS FOR THE '033 AMENDED CONTENTIONS .......................14

            1.    Wisk Was Diligent in Adding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to its Proposed Infringement Contentions ....................................................14

            2.    Wisk was Diligent in Refining its Doctrine of Equivalence Theory...........18

    B.    Archer Can Identify No Prejudice .................................................................19

III.    GOOD CAUSE EXISTS FOR THE '833 AMENDED CONTENTIONS .......................20

    A.    Wisk Acted Diligently In Collecting Information For Its '833 Patent Contentions And Sought Leave Promptly Thereafter...........................20

            1.    Wisk was Diligent in Adding Citations Regarding Archer's New Boom Design For The Midnight Aircraft ..................................................20

            2.    Wisk was Diligent in Refining its Doctrine of Equivalence Theory...........22

    B.    Archer Can Identify No Prejudice .................................................................22

1.   The Midnight Aircraft Booms are Properly Accused of Infringing
the '833 Patent.........................................................................................23

CONCLUSION ................................................................................................................25

PLAINTIFF WISK AERO'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS

# TABLE OF AUTHORITIES

**Page**

## Cases

*3D Sys, Inc. v. Aarotech Labs, Inc.*,
   160 F.3d 1373 (Fed. Cir. 1998) ............................................................................... 24

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. 2012) ................................. 14, 17

*DCG Sys. v. Checkpoint Techs., LLC*,
   No. C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ........................ 20, 23

*Duraflame, Inc. v. Hearthmark, LLC*,
   No. CV 12-01205 RS KAW, 2012 WL 4097741 (N.D. Cal. Sept. 17, 2012) .................. 14

*Facebook, Inc. v. BlackBerry Ltd.*,
   No. 18CV05434JSWJSC, 2019 WL 8013872 (N.D. Cal. Sept. 17, 2019) ................ 19, 22

*Fortinet, Inc. v. Palo Alto Networks, Inc.*,
   No. 09–00036, 2010 WL 4608250 (N.D. Cal. Nov. 5, 2010) .................................... 16, 21

*GREE, Inc. v. Supercell Oy*,
   2020 WL 7396506 (E.D. Tex. Dec. 17, 2020) ............................................................ 18

*Impinj, Inc. v. NXP USA, Inc.*,
   No. 19-CV-03161-YGR, 2022 WL 2125133 (N.D. Cal. Mar. 4, 2022) ..................... 15, 20

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
   No. 14-CV00876-RS(JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) .................... 14

*Nuance Comm'ns, Inc. v. Abbyy Software House*,
   2012 WL 2427160 (N.D. Cal. June 26, 2012) .......................................................... 16, 21

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-CV-01622-JST, 2015 WL 13446267 (N.D. Cal. Jan. 20, 2015) .............. 14, 15, 21

*PersonalWeb Techs., LLC v. Google Inc.*,
   No. C13-01317 EJD(HRL), 2014 WL 4088201 (N.D. Cal. Aug. 19, 2014) ................... 25

*Radware Ltd. v. F5 Networks, Inc.*,
   No. C-13-02021-RMW, 2014 WL 3728482 (N.D. Cal. 2014) ...................................... 13

*Shared Memory Graphics LLC v. Apple, Inc.*,
   812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................................. 17, 25

*Synchronoss Techs., Inc. v. Dropbox Inc.*,
   No. 416CV00119HSGKAW, 2018 WL 5619743 (N.D. Cal. Oct. 29, 2018) .................. 14

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010) ............................................................................... 24

*Vasudevan Software, Inc. v. International Business Machines Corp.*,
   No. C 09-05897 RS(HRL), 2011 WL 940263 (N.D. Cal. Feb. 18,
   2011) ........................................................................... 13, 14, 16, 20, 22, 23, 24

### **Rules and Regulations**

P.L.R. 3-4 ................................................................................................ 5, 9

P.L.R. 3-6 ................................................................................................ 1, 13

P.L.R. 3-6(c) ............................................................................................. 13

### **Additional Authorities**

*https://www.dgrlegal.com/process-service-letters-rogatory/* ...................................... 15

U.S. Patent No. 10,110,033 ...................................................................... 1

U.S. Patent No. 9,764,833 ........................................................................ 1

Plaintiff Wisk seeks leave pursuant to Patent Local Rule ("PLR") 3-6 to amend its infringement contentions.[1] Wisk proposes amendments to the infringement charts of two patents: U.S. Patent No. 10,110,033 ("the '033 patent") and U.S. Patent No. 9,764,833 ("the '833 patent"). This is Wisk's first request to amend its infringement contentions. The proposed amendments relate to information that has only recently been discovered despite Wisk's diligent efforts since service of its initial contentions. The proposed amendments do not add new claims or theories of infringement, will not impact the case schedule, and do not require new discovery. Wisk has included a clean and redline version of the charts as exhibits A-D respectively.[2] *See* Exs. A-D.[3]

<u>First</u>, Wisk proposes amending the '033 patent chart to add source code citations and discussion for an ███████████████████████████████████ ███████████ This amendment is based on recently obtained discovery from a foreign third-party, Electro.Aero. Specifically, after the service of Wisk's initial chart, Archer informed Wisk that Electro.Aero, not Archer, is in possession of the source code for the accused charging systems. Wisk then pursued the source code through a lengthy foreign discovery process. In June 2022, Electro.Aero produced the code for Archer's charging systems. That production revealed for the first time that Archer had ███████████████████████████████████. Wisk promptly investigated whether that product infringes. Having now determined that it does infringe—in the same manner as the already accused charging systems—Wisk seeks to amend its contentions to map this product to the asserted claims. This change introduces no new infringement theories or asserted claims, and the only basis Archer has provided for opposing the

---

[1] Wisk understands this Motion to relate to the scope of the substantive allegations in this case, and has thus directed it to District Court Judge Orrick as a noticed Motion, rather than to Magistrate Judge Ryu.

[2] Unless otherwise stated, all exhibits are to the declaration of Nima Hefazi in Support of Wisk's Motion to Amend ("Hefazi Declaration").

[3] Wisk also proposes small modifications to its cover pleading that relate to the asserted claims and embodiments in this case. Archer has indicated it does not oppose Wisk's proposed amendments to the cover pleading. Wisk has attached a clean copy, Ex. E (Aug. 19, 2022, Proposed and Redlined Amended Cover Pleading) at 1, and a redline copy, Ex. E (Aug. 19, 2022 Proposed Amended Cover Pleading) at 9, of the proposed amendment.

1    addition is that it allegedly has not imported the charging system into the United States. ████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████

5    Archer cites to no authority establishing that a party must prove an infringing act at the

6    contentions stage, and at least one court in this district has allowed service of contentions based on

7    the release of a foreign product where the United States release was soon to follow.

8         Second, Wisk also proposes amending the '033 patent chart to update its doctrine of

9    equivalents ("DoE") theory for one limitation based on its review of the Electro.Aero source code

10   obtained two months ago.  Archer opposes this amendment on the grounds that Wisk's DoE

11   theory is "new."  Not so.  Wisk's initial contentions provided Archer with notice that Wisk

12   intended to rely upon DoE for this one limitation.  Wisk also articulated its theory for how the

13   operation of Archer's charging systems satisfied the limitation under at least DoE based on the

14   information Wisk had at the time—which did not include source code or detailed technical

15   documents for the charging systems.  Wisk's amendment merely refines its DoE theory to reflect

16   additional details learned through the source code that Wisk diligently obtained from Electro.Aero.

17        Third, Wisk seeks to amend its '833 patent infringement contentions to reflect new

18   documents produced by Archer as recently as July of this year reflecting designs of its planned

19   ventilated boom for its production aircraft.  Wisk's amendments do not fundamentally change any

20   infringement theory.  Just as in its initial contentions, Wisk contends that Archer infringes the '833

21   patent based on its use of boom mounted rotors that leverage air inlets and outlets to induce air

22   flow from the rotor through an enclosure to facilitate cooling of the rotor controller assembly.

23   Wisk's amendment seeks to supplement its contentions with citations to documents produced after

24   the service of the initial contentions to demonstrate that Archer is carrying this accused

25   functionality over from its demonstrator aircraft (Maker) to its next-generation production aircraft

26   (Midnight).  Archer has indicated it opposes this amendment because the design of its Midnight

27   aircraft is not yet complete. ████████████████████████████

28   ████████████████████████████████████████████████████████

██████████████████████████████████████████████████

**Finally**, Wisk's amendments include further refinements to its DoE theories for three limitations of the '833 patent based on its understanding of Archer's non-infringement arguments which were only crystalized during the August 11, 2022 deposition of Archer engineer Diederik Marius.  Like the '033 patent, Wisk's DoE theory is not new.  Wisk provided Archer notice that it intended to rely on DoE for each of the three limitations in its initial contentions.  Wisk now re-articulates these theories in response to Archer's emerging non-infringement positions and in view of discovery Wisk recently obtained.  Wisk requests that the Court grant its motion for leave.

## FACTUAL BACKGROUND

### A.   The '033 Patent

The '033 patent, titled "Multi-battery Charging Station Which Selectively Connects Battery Submodules To A Common Power Bus For Charging," is directed at an apparatus and method for battery charging.  The asserted claims recite processor instructions for implementing a charging technique that permits fast charging of battery sub-modules in an eVTOL. Dkt. 1-3 ('033 patent), at Fig. 2, Claims 1, 19.  Archer has worked with a third-party, Electro.Aero, to develop charging systems that infringe the '033 patent.

On August 25, 2020, Archer purchased a ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

In March of 2022—about seven months after Wisk served its initial infringement

---

[4]  As explained in the Hefazi Declaration, Electro.Aero's counsel has alleged that submitting the deposition transcript of Elector.Aero would violate the Australia court's order granting the deposition.  Wisk thus provides a statement of the relevant testimony in the Hefazi Declaration.

1 ████████████████████████████████████████

2 ██████████████████████████████████████████

3 ████████████████████████████████████████

4 ██████████████████████████████████

5 ████████████████████████████████████████

6 ██████████████████████████████████████████

7 ██████████████████████████████████████████

8 ██████████████████████████████████████

9 ██████████████████

10         **1.**      **<u>Wisk's Initial Infringement Contentions For The '033 Patent</u>**

11       On August 11, 2021, Wisk served its initial infringement contentions, including a claim

12 chart for the '033 patent. Ex. F (Ex. C to Aug. 11, 2021, Initial Infringement Contentions, '033

13 Chart). Wisk's claim chart "describes infringement by Archer Aviation's ('Archer') Maker

14 aircraft with battery management and fast charging system and/or a production aircraft that will

15 leverage the technology of the Maker." *Id.* at 1.

16       At the time Wisk served its initial infringement contentions, Archer had not produced

17 technical documents and manuals for its Electro.Aero charging system, despite Wisk having

18 served discovery requests seeking such information more than two months earlier on July 15,

19 2021. *See e.g.*, Ex. G (Jun. 15, 2021, Wisk's First Set of Interrogatories), Ex. H (Jun. 15, 2021,

20 Wisk's First Set of Requests for Production). Thus, Wisk's initial contentions rely upon Archer

21 presentations that describe the Archer charging system generally, rather than low-level source

22 code and technical documents. Using the information available at the time, Wisk's initial

23 infringement contentions alleged that to the extent Archer was deemed not to literally infringe

24 limitation 19[d] of the '033 patent (and the corresponding limitations in the other independent

25 claims), Archer infringed under the DoE because "any alleged differences are insubstantial" and

26 "the Maker performs substantially the same function (*i.e.*, obtaining a maximum voltage and

27 setting a charging current based at least in part on the maximum voltage), in substantially the same

28 way (*i.e.*, measuring voltage of a plurality of battery sub-modules and comparing it to a voltage

1   threshold), to achieve substantially the same result (*i.e.*, charging battery sub-modules)."  Ex. F

2   (Ex. C to Aug, 11, 2021, Initial Infringement Contentions, '033 Chart) at 40.

3        Moreover, Archer purchased its 80kW charging system more than six months after Wisk

4   served its initial contentions—in March of 2022.  Thus, Wisk's initial contentions do not (and

5   could not) specifically accuse Archer's 80kW charging system.

6           **2.     Wisk Diligently Sought Source Code For The '033 Contentions**

7        Pursuant to P.L.R 3-4, Archer was required to produce "source code, specifications,

8   schematics, flow charts, artwork, formulas, or other documentation sufficient to show the

9   operation" for the accused charging systems with its invalidity contentions.  Archer served its

10  invalidity contentions on October 25, 2021.  Archer did not, however, produce technical

11  documents and code for its accused charging systems.

12       Wisk promptly wrote Archer about the deficiency in its Patent Local Rule 3-4 production.

13  For example, on October 27, 2021, Wisk wrote Archer and requested that it immediately produce

14  source code and documentation describing the details of the accused charging systems.  Ex. J (Oct.

15  27, 2021, Letter From Wisk to Archer).  In response, Archer claimed that it lacked possession,

16  custody, or control of the source code and technical documents provided by an Australian-based

17  third-party, Electro.Aero.  *See* Ex. K (Nov. 12, 2021, Letter from Archer to Wisk).  Wisk then set

18  out to recover to source code and technical documents directly from Electro. Aero.

19       Wisk initially served a subpoena on Electro.Aero's U.S. based agent, Tim Frank.  Ex. L

20  (Dec. 15, 2021, Document Subpoena to Electro.Aero).  However, despite listing Mr. Frank as its

21  "President North America," Electro.Aero claimed that it is not subject to personal jurisdiction in

22  the United States because it is headquartered in Australia, and refused to comply with the U.S.

23  subpoena.  *See* Ex. M (Jan. 11, 2022, Electro.Aero Objections and Responses to Subpoena).  Wisk

24  then requested that this Court issue a Letter of Request to the Australian authorities to gather

25  foreign evidence in support of its '033 patent contentions.  Dkt. 218.  After the Court issued the

26  Letter of Request, Wisk diligently sought the requested discovery in the Australian judicial

27  system.  *See* Ex. N (Apr. 28, 2022, Order of Master Sanderson). █████████████████

28  ████████████████████████████████████████████

1 ██████████████████████████████████████████████

2 █████████████████████████████████████████

3 ████████████████████████████████

### 3. Wisk Diligently Sought Evidence Regarding Archer's Patent Defenses

Wisk also exercised diligence in seeking information regarding Archer's non-infringement contentions so that it could refine its DoE positions as necessary. On June 15, 2021, Wisk propounded Interrogatory No. 9, asking Archer to "[s]tate in detail" the basis for its contention it did not infringe the Patents-in-Suit, including an identification of any missing claim elements and a technical explanation of why such elements were not satisfied either literally or under the DoE. Ex. G (Jun. 15, 2021, Wisk's First Set of Interrogatories).

Archer's first substantive response to Interrogatory No. 9, served on September 20, 2021, merely quoted fourteen claim limitations it contended were missing for the asserted claims of the '033 patent and provided a string cite of documents. Ex. X (Dec. 17, 2021, Archer's Third Supplemental Response to First Set of ROGs) at 28-34.[5] No further articulation of Archer's contention was provided. On December 17, 2021, Archer supplemented its response to Interrogatory No. 9 to cite a few additional documents, Ex. X (Dec. 17, 2021, Archer's Third Supplemental Response to First Set of ROGs) at 34, but still no description of its contentions was provided. To this day, Archer has not articulated its contentions regarding its non-infringement positions to the '033 patent in response to Interrogatory No. 9.

### 4. Wisk's Proposed Amendment

21 ████████████████████████████████████████████

22 ███████████████████████████████████████. On July 25, 2022, Wisk informed Archer that it anticipated it would need to amend its contentions. Ex. O (Jul. 25, 2022, Email from Wisk to Archer). Wisk also provided Archer with an initial proposed copy of the amended contentions on July 28, 2022—well in advance of the deposition of Electro.Aero which

---

[5] Wisk raised the deficiency of this response in a letter dated November 5, 2021. Ex. Y (Nov. 5, 2021 Letter) at 3.

took place on August 11, 2022. Ex. O (Jul. 28, 2022, Email from Wisk to Archer).[6] This initial proposed amendment provided Archer a detailed roadmap of Wisk's element-by-element source code analysis a full two weeks before the deposition of Archer's third-party vendor, Electro.Aero.

The parties have met-and-conferred regarding Wisk's proposed supplementation for the '033 patent. ████████████████████████████████████████████████████████████ Ex. O (Aug. 9, 2022, Email from Archer to Wisk). Archer also opposes Wisk's additional explanation in support of its existing DoE theory for limitation 19[d] (item 4) on the grounds that Wisk is advancing a "new doctrine of equivalents theory." Ex. O (Aug. 9, 2022, Email from Archer to Wisk)██████████████████████████████████████████████████████████████████

**B.    The '833 Patent**

The '833 patent, titled "Ventilated Rotor Mounting Boom for Personal Aircraft," is

---

[6]  On August 16, 2022, just a few days after the Electro.Aero deposition, Wisk provided Archer with slightly updated copies of its amended contentions for the '033 patent reflecting new additional information learned through the deposition.

1  directed to a "rotor mounting boom assembly" for electrically powered aircraft with vertical lift

2  capabilities.  *See generally* Dkt. 1-2 ('833 Patent) at Abstract.  The rotor mounting boom includes

3  a boom "releasably attachable to a wing," "one or more vertical lift rotors," and "one or more rotor

4  controller assemblies."  *Id.*  In certain embodiments, the controller assemblies for each rotor are

5  positioned on the rotor mounting boom in a manner that allows downwash from the rotor to cause

6  increased airflow to cool the controller assembly components.  *Id.*  For example, the boom

7  includes an air inlet that directs airflow through a "controller enclosure" that is in "fluid

8  communication" with the air inlet and an air outlet.  *E.g.*, claim 1.  In some embodiments there is

9  included a "heat exchanger" coupled to the rotor controller for further dissipating heat from the

10  rotor controller.  *E.g.*, claim 6.

### 1.  Wisk's Initial Infringement Contentions For The '833 Patent

12  Wisk served its initial infringement contentions for the '833 patent on August 11, 2021.  At

13  the time, Archer had only produced information regarding its boom design for its demonstrator

14  aircraft, the Maker.



25  Although only information related to the Maker was

26  available, Wisk had learned during the preliminary injunction phase that Archer was planning a

27  follow-on, production aircraft ("Midnight").  Wisk's contentions therefore expressly accused

28

technology relating to any "production aircraft that will leverage the technology of the Maker." Ex. Q (Ex. B to Aug, 11, 2021, Initial Infringement Contentions, '833 Chart).

**2.** **Wisk Diligently Sought Documentary Evidence For Its '833 Contentions**

Wisk propounded its first set of document discovery on June 15, 2021.  *See e.g.*, Ex. G (Jun. 15, 2021, Wisk's First Set of Interrogatories); Ex. H (Jun. 15, 2021, Wisk's First Set of Requests for Production).  As relevant here, these requests included RFP No. 45 seeking "Documents relating to the design and features of the airframe and structural components (including boom design/features) for the Accused Archer Instrumentalities . . . ," and RFP No. 58 seeking "Documents relating to thermal management for motors or motor controllers of the Accused Archer Instrumentalities, including Documents relating to any features of Your aircraft booms to provide active cooling, passive cooling, or ventilation."[7]  *Id.* at 13, 15.

Archer substantively responded to Wisk's RFPs for the first time on September 13, 2021, attempting to limit the definition of "Accused Instrumentalities" to only its demonstrator Maker aircraft.  *See* Ex. R (Sept. 13, 2021, Archer's Amended Objections and Responses to First Set of RFPs) at 7, 39, 52-23.  Wisk promptly responded by sending Archer a letter on September 22, 2022, explaining that Archer's unilateral aircraft limitation was improper.  Ex. S (Sept. 22, 2021, Letter from Wisk to Archer) at 3.  The parties subsequently met and conferred multiple times regarding the status of Archer's planned production aircraft with respect to the patent case.  *See, e.g.*, Ex. T (Oct. 1, 2021, Letter from Wisk to Archer) at 2.

In the meantime, Archer served is P.L.R. 3-4 document production on October 11, 2021. That production, however, included no information regarding Archer's production aircraft.  When the parties met and conferred regarding this document production on November 8, 2021, Archer again took the position that technology for aircraft other than Maker was not at issue.  *See* Ex. U

---

[7]  Archer Accused Instrumentalities was defined to include "***any*** eVTOL aircraft and charging systems (including prototypes) developed, tested, used, offered for sale or sold, and/or marketed by Archer, including, but not limited to, Archer's Maker aircraft."  Ex. H (Jun. 15, 2021, Wisk's First Set of Requests for Production) at 2.

1   (Nov. 10, 2021, Letter from Wisk to Archer) at 2.  In an effort "to make progress on this issue,"

2   and avoid judicial intervention, Wisk asked that Archer at least produce the conceptual design

3   review materials related to the production aircraft.  *Id.* ███████████████████

4   ████████████████████████████████████████████████

5   █████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   ████████████████████████████████████████████

8   █████████████████████████████████████████████

9   ███████████████████████████████

10      ███████████████████████████████████████

11   ████████████████████████████████████████████

12   ███████████████████████ ████████████████████

13   █████████████████████████████████████████████████

14   ███████████████████████████████████████████████

15   the figures in this document disclose features relevant to the '833 patent functionality in only a

16   vague, high-level format ███████████████████████████████

17   ████████████████████████████████ █████████████

18   █████████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████████████████

22         **3.**     **Wisk Diligently Sought Evidence Regarding Archer's Patent Defenses**

23       Wisk also exercised diligence for the '833 patent in seeking information regarding

24

25   [8]  This document was included in a February 28, 2022, production spanning 244,366 pages. Just two days earlier, Archer made a production spanning 277,288 pages.

26   [9]  The March 2022 document is also cited in Wisk's proposed supplement to the infringement

27   contentions. Ex. C (Aug. 19, 2021 Proposed Infringement Contentions, '833 Chart, *citing* Archer-NDCA-01872000) at -038.  This document was not produced to Wisk until July 6, 2022.

28

1   Archer's non-infringement contentions so that it could refine its DoE positions as necessary.  As

2   with the '033 patent, Wisk propounded Interrogatory No. 9 seeking the basis for Archer's

3   contention that it did not infringe the '833 patent.  Ex. G (Jun. 15, 2021, Wisk's First Set of

4   Interrogatories).  Archer's first substantive response to Interrogatory No. 9, served on September

5   20, 2021, merely quoted four claim limitations it contended were missing and provided a string

6   cite of documents.  Ex. X Dec. 17, 2021, Archer's Third Supplemental Response to First Set of

7   ROGs at 30.[10]  No further articulation of Archer's contention was provided, though Archer did

8   identify Geoff Bower, Kalem Dinkel, and Diederik Marius as persons knowledgeable regarding its

9   non-infringement positions.  On December 17, 2021, Archer supplemented its response to

10  Interrogatory No. 9 to cite one additional document, Ex. X (Dec. 17, 2021, Archer's Third

11  Supplemental Response to First Set of ROGs) at 34, but still no description of its contentions was

12  provided.  To this day, Archer has not articulated its contentions regarding its non-infringement

13  positions to the '833 patent in response to Interrogatory No. 9.

14       Given Archer's identification of persons most knowledgeable, Wisk noticed the deposition

15  of Diederik Marius on June 10, 2022.  Archer did not offer Mr. Marius for deposition until July

16  19, and that deposition was postponed by Archer due to a medical issue outside of Wisk's control.

17  █████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████

20            **4.      Wisk's Proposed Amendment**

21       Wisk's proposed amendments to the '833 infringement contentions are focused on

22  mapping the features of the Midnight boom design, as disclosed in the documents produced on

23  July 6, to the elements of the claims.  Wisk's amended contentions do not involve any re-reading

24  of the claim, or any fundamental change in the infringement theory asserted against the Maker.

25  The basic infringement theory remains centered on Archer's continued use—from the

---

26  [10]  Wisk raised the deficiency of this response in a letter dated November 5, 2021. Ex. Y (Nov. 5,
27  2021 Letter) at 3.

28

demonstrator to its production aircraft—of boom mounted rotors that leverage air inlets and outlets in induce air flow from the rotor through an enclosure to facilitate cooling of the rotor controller assembly.  These new citations merely conform the contentions to the existing proof.

Wisk's proposed amendments also include refinements to its DoE theories regarding the Maker aircraft and the Midnight aircraft, based on Wisk's better understanding of Archer's non-infringement contentions from the recent, August 11 deposition of Diederik Marius.[11]

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████  The proposed amendment merely adjusts Wisk's articulation of theory so that it is responsive to what appears to be Archer's non-infringement positions.

### C.    The Meet And Confer Process

Wisk first informed Archer that it intended to serve amended infringement contention on

---

[11]   Wisk does not agree with Archer's apparent non-infringement argument on the merits, but nevertheless seeks to tailor its DoE theory to respond to this argument and illustrate that it results in, at most, an insubstantial difference from the claim.

July 25, 2022, and asked whether Archer would stipulate to the amended contentions.  Ex. O (Jul. 25, 2022, Email from Wisk to Archer).  Archer responded by requesting a copy of the amended contentions, which Wisk promptly provided Archer on July 28.  Ex. O (Jul. 28, 2022, Email from Wisk to Archer).  On August 2, Archer indicated that it would stipulate to certain parts of the amendment, but would oppose others.  Ex. O (Aug. 2, 2022, Email from Wisk to Archer).  Wisk then requested a meet and confer to obtain clarification regarding the scope of the parties' dispute and the parties thereafter met-and-conferred on August 5, 2022.  Ex. O (Aug. 4, 2022, Email from Wisk to ███████████████████████████████████████████████████████████████████████████████████████████████████████████████  On August 9, Archer informed Wisk that it would continue to oppose these two items.  Ex. O (Aug. 9, 2022, Email from Archer to Wisk).  Two days later, on August 11, 2022, Wisk took the depositions of Electro.Aero and Diederik Marius.  Based on these depositions, Wisk made a few additional changes to its proposed amendments, and served those updated claim charts to Archer on August 16.  Ex. O (Aug. 9, 2022, Email from Archer to Wisk).  Having heard nothing in response, on August 19, Wisk reached out to Archer to confirm that the parties were at an impasse, and thereafter filed this motion the next business day.  Ex. O.

## LEGAL STANDARD

The expectation that a "patentee would have a precise sense of its infringement theory at the outset is unrealistic ... [where] the patentee may not have been able to get access to the necessary information because it is hidden from view (for example, source code)."  *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *2 (N.D. Cal. 2014) (quotation marks omitted).  Accordingly, this Court may allow a party to amend its infringement contentions if that party shows "good cause" for the amendment.  P.L.R. 3-6; *Vasudevan Software, Inc. v. International Business Machines Corp.*, No. C 09-05897 RS (HRL), 2011 WL 940263, at *1 (N.D. Cal. Feb. 18, 2011).  A finding of good cause includes the "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before service of the Infringement Contentions."  P.L.R. 3-6(c).

The good cause inquiry "considers first whether the moving party was diligent in

1    amending its contentions and then whether the non-moving party would suffer prejudice if the

2    motion to amend were granted." *Duraflame, Inc. v. Hearthmark, LLC*, No. CV 12-01205 RS

3    KAW, 2012 WL 4097741, at *4 (N.D. Cal. Sept. 17, 2012). "The party seeking to amend its

4    contentions bears the burden of establishing diligence." *Vasudevan Software,* 2011 WL 940263,

5    at *1. "[T]he diligence required for a showing of good cause has two subparts: (1) diligence in

6    discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for

7    amendment has been discovered." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-

8    CV00876-RS (JSC), 2016 WL 2855260, at *2–3 (N.D. Cal. May 13, 2016). The Court "retains

9    discretion to grant leave to amend even in the absence of diligence so long as there is no prejudice

10   to the opposing party." *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 416CV00119HSGKAW,

11   2018 WL 5619743, at *6 (N.D. Cal. Oct. 29, 2018); *see also Apple, Inc. v. Samsung Electronics

12   Co., Ltd.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *5 (N.D. Cal. 2012).

13                                        **ARGUMENT**

14   **II.    GOOD CAUSE EXISTS FOR THE '033 AMENDED CONTENTIONS**

15          Archer opposes two aspects of Wisk's amended contentions for the '033 patent.  <u>First,</u>

16   ████████████████████████████████████████████  <u>Second</u>, Archer opposes the

17   additional explanation Wisk has provided in support of its existing DoE theory for limitation

18   19[d].  Ex. O (Aug. 9, 2022, Email from Archer to Wisk).  But Wisk's amendments are supported

19   by good cause because they are based on recent discovery of nonpublic information—*i.e.*, source

20   code for Archer's accused charging system.  Wisk acted diligently in collecting the information

21   needed for these amendments and sought leave promptly thereafter.  The Court should grant Wisk

22   leave to amend and reject Archer's arguments for at least the reasons below.

23                **1.   Wisk Was Diligent in Adding ████████████████████ to its
                         Proposed Infringement Contentions**

24

25          Good cause exists to add a new accused product to a movant's infringement contention

26   where that product was discovered only after the movant had disclosed its infringement

27   contentions.  *See, e.g., Apple, Inc.,* 2012 WL 5632618, at *3 (finding good cause to amend to add

28   products "released after the parties exchanged their [initial] infringement contentions"); *OpenTV,*

1   *Inc. v. Apple, Inc.*, No. 14-CV-01622-JST, 2015 WL 13446267, at *1 (N.D. Cal. Jan. 20, 2015)

2   ("Because the products that Plaintiffs seek to add to the action were not yet released at the time

3   Plaintiffs served their infringement contentions, good cause exists for granting leave to amend the

4   infringement contentions."). ████████████████████████████████████████████

5   ███████████████████████████████████████████████████████████████████

6   ██████████████████████████████ Thus, "[Wisk's] amendment does not seek to add

7   new claims or theories of infringement, but merely adds another device that has the same accused

8   functionality as the previous versions of the [charging system]." *Apple, Inc.*, 2012 WL 5632618,

9   at *3. *See also Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125133, at *2

10  (N.D. Cal. Mar. 4, 2022) ("Impinj's amendment does not seek to add new claims or theories of

11  infringement. Instead, Impinj's amendment seeks to include UCODE 9, the latest version in a line

12  of products that Impinj has already accused of infringing the '266 Patent"). Good cause exists.

13  ██████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ██████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████. 

20      Archer cannot reasonably dispute Wisk's diligence in obtaining this discovery from

21  Electro.Aero.  As described above, although Electro.Aero is an Archer third-party supplier, Wisk

22  was forced to pursue discovery through a lengthy foreign discovery process, and therefore did not

23  receive such discovery until June 2022.[12] █████████████████████████████████

24  ████████████████████████████████████████████

25

26  _____

    [12]   Obtaining foreign discovery through letters rogatory is time consuming process.  *See*
27  https://www.dgrlegal.com/process-service-letters-rogatory/ ("Letter Rogatory is one of the most
    lengthy methods for international process service, sometimes taking upward of a year.").
28

source code to be made available in the United States and scheduling numerous rounds of in-person source code review—to determine whether it infringed the claims of the '033 patent. *Id.*

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ Wisk then took the deposition of Electro.Aero's representative on August 11, 2022, and promptly filed this motion to amend.[13]

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████. Courts in this District have found time periods of this length, or longer, to be reasonable for seeking to add additional products to infringement contentions. *See, e.g., Fortinet, Inc. v. Palo Alto Networks, Inc.*, No. 09–00036, 2010 WL 4608250, at *1 (N.D. Cal. Nov. 5, 2010) (granting leave to amend where plaintiff contended that it was unable to allege infringement until it received non-public technical information and moved to amend within two months of receipt of that information); *Nuance Comm'ns, Inc. v. Abbyy Software House*, 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012) (finding sufficient diligence where plaintiff waited a "few months" after learning that defendant acquired accused products and thus plaintiff "could not include them in its infringement contentions"); *Vasudevan Software*, 2011 WL 940263, at *3–4 (finding four months diligent); *Apple, Inc.*, 2012 WL 5632618, at *3 (granting motion to amend to add Samsung Galaxy Note 10.1 as an infringing device, where Apple filed its amended infringement to include this device approximately two months after the release).

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ Ex. O (Aug. 9, 2022, Email from Archer to Wisk).  This

---

[13]   The deposition of Electro.Aero was initially schedule for July 2022, but had to be rescheduled for August due to health reasons beyond Wisk's control.



1   argument should be rejected for at least three reasons.

6   The Patent

7   Local Rules do not require a patentee to prove infringement or eve

8   produce evidence of infringement.  Rather, the Rules are designed

9   to provide "reasonable notice to the defendant why the plaintiff

10  believes it has a reasonable chance of providing infringement."

11  *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d

12  1022, 1025 (N.D. Cal. 2010) (quotation marks omitted).  For instance, in *Apple, Inc. v. Samsung*

13  *Electronics Co., Ltd.*, Apple was allowed to serve infringement contentions against the Samsung

14  Galaxy S III prior to the release of that device in the United States.  *See* 2012 WL 5632618, at *3

15  ("Apple prepared its June 15 infringement contentions against the Samsung Galaxy S III before

16  the device had been released in the United States. Apple purchased and investigated a Samsung

17  Galaxy S III device from the United Kingdom and based its contentions on the findings.  After the

18  release of the United States version, Apple found minor visual differences and now seeks to

19  change its infringement contentions to reflect these differences.").  Archer has not provided any

20  authority suggesting that Wisk cannot accuse the 80kW charger until it is "in the United States."

21  <u>Second</u>, on August 11,

28  *See, e.g.*, *GREE, Inc. v. Supercell Oy*, 2020 WL 7396506, at *2–4 (E.D. Tex. Dec.

17, 2020) (granting patentee leave to amend its infringement contention to include a new game product that was released after the patentee had served its infringement contentions, and noting that "for the sake of judicial economy, it would be very advantageous to include the amended infringement contentions to avoid another suit"); *Apple, Inc.*, 2012 WL 5632618, at *3 (finding "judicial economy" supported granting leave to add products released after the service of the initial infringement contentions).

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████.

### 2.   Wisk was Diligent in Refining its Doctrine of Equivalence Theory

Limitation 19[d] recites the step of "in the event it is determined that the global maximum cell voltage exceeds the voltage threshold, setting the charging current based at least in part on the global maximum cell voltage." Wisk's initial contentions allege that, to the extent limitation 19[d] is not literally met, it is met under the DoE. Ex. F (Ex. C to Aug, 11, 2021, Initial Infringement Contentions, '033 Chart). Wisk's initial contentions explain that, at minimum, Archer infringes under DoE because its charging process obtains a maximum voltage from the plurality of battery sub-modules, compares it to a threshold value, and sets an output current of the charger. *Id*. Wisk prepared its DoE theory based on the information it had at that time of the initial contentions, which did not include code or technical documents for the charging systems and did not describe the precise manner in which Archer set the output current. *See* Factual Background, Section A.2.

███████████████████████████████████████████

████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ██████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12      During the parties' meet-and-confer, Archer objected to Wisk's updated description of how

13 the claim limitation and accused technology perform "substantially the same function," claiming

14 that this amounts to an improper change in the scope of claimed equivalents.  But Archer has

15 provided no authority for the proposition that a patentee must precisely define the scope of the

16 DoE in its initial contentions.  In fact, the authority is to the contrary—in this District, information

17 produced during discovery can provide "good cause" for amending a DoE theory.  *See, e.g.*,

18 *Facebook, Inc. v. BlackBerry Ltd.*, No. 18CV05434JSWJSC, 2019 WL 8013872, at *9 (N.D. Cal.

19 Sept. 17, 2019) (allowing amendment to DoE theory because the amendments were based on

20 "specific nonpublic information" obtained after the service of the initial contentions).  Here, Wisk

21 provided Archer with its proposed amendments to the preexisting DoE theory promptly after

22 reviewing the confidential source code.  The theory is not "new"; Wisk has merely restated its

23 articulation of the preexisting theory based on recently discovered, non-public.

24     **B.**    **Archer Can Identify No Prejudice**

25      Archer cannot claim undue prejudice from Wisk's amendments.  The close of discovery is

26 nearly three months away, expert reports are not due until December 7, 2022, and trial is set for

27 August 14, 2023—nearly a year way.  Dkt. 303 (Scheduling Order).  Further, Archer received

28 Wisk's proposed amendment on July 28, 2022—well in advance of the August 11, 2022

1  deposition of Electro.Aero—and Archer's counsel actively participated in the deposition (asking

2  more than an hour of questions).  Archer has also yet to take any depositions of Wisk's witnesses.

3  ███████████████████████████████████████

4  ███████████████████████████████████████

5  ███████████████████████████████████████████

6  ███████████████████████████████████████████

7  ███████████████████████████████████████

8  ███████████████████████████████████████ .

9  *See Apple, Inc.*, 2012 WL 5632618, at *3; *Impinj, Inc.*, 2022 WL 2125133, at *2 (both cases

10  finding no prejudice where the amendments did not "add new claims or theories of infringement").

11  During the parties' meet-and-confer, Archer vaguely suggested that it would suffer

12  prejudice if Wisk's proposed amendment were allowed because the Court had already completed

13  *Markman*.  But Archer did not explain how Wisk's proposed amendment might necessitate further

14  claim construction.  Archer was also aware that Wisk was alleging DoE for Limitation 19[d]

15  during claim construction but chose not to pursue constructions directed at the DoE theory.  And

16  Wisk's current amendments do not implicate any term that Archer proposed for construction.

17  Accordingly, because Archer will not be prejudiced by Wisk's amendment, Wisk asks the

18  Court to find good cause for Wisk's requested amendment.  *See DCG Sys. v. Checkpoint Techs.,*

19  *LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *3–4 (N.D. Cal. Apr. 16, 2012) (allowing

20  plaintiff to amend its infringement contentions because defendants would suffer no prejudice by

21  the amendment); *Vasudevan Software,* 2011 WL 940263, at *5 (allowing plaintiff to amend its

22  infringement contentions finding no prejudice to defendant where the proposed amendments

23  would not "dramatically affect any of the claims that were construed").

24  **III.    GOOD CAUSE EXISTS FOR THE '833 AMENDED CONTENTIONS**

25       **A.    <u>Wisk Acted Diligently In Collecting Information For Its '833 Patent</u>**
<u>**Contentions And Sought Leave Promptly Thereafter**</u>

26

27            **1.    <u>Wisk was Diligent in Adding Citations Regarding Archer's New Boom</u>**
<u>**Design For the Midnight Aircraft**</u>

28  Good cause also exists for Wisk to amend its contentions regarding the '833 infringement

contentions.  As discussed above, these amendments are aimed primarily at mapping the relevant

claim limitations against the newly disclosed features of the booms for Archer's Midnight aircraft.

After diligent discovery efforts by Wisk, the necessary details of these new boom features were

first disclosed by Archer in documents produced on July 6, 2022.  Ex. C (Aug. 19, 2022, Proposed

Infringement Contentions, '833 Chart, *citing* Archer-NDCA-01871807 at -825).  Wisk promptly

disclosed its proposed amendment to Archer on July 28, 2022 ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ *See OpenTV, Inc.*, 2015 WL 13446267, at *1.

During the parties' meet and confer, Archer argued that Wisk was not diligent to the extent

the proposed amended contentions cite documents produced by Archer last February 28. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████  ███████████████████

████████████████████████████████████████████████████

███████████████████████████ It is the July 6 document, and the

August 11 deposition testimony that provided Wisk "good cause" for the amendment sought

here.[14]  *See Fortinet*, 2010 WL 4608250, at *1–2; *Nuance Comm'ns*, 2012 WL 2427160, at *2;

*Vasudevan Software*, 2011 WL 940263 at *3–4; *Apple, Inc.*, 2012 WL 5632618 at *3–6 (all

finding good cause to amend contentions in view of newly discovered information).

---

[14]  Even focusing on the design disclosed in the February 28, 2022 documents, Wisk disclosed its initial proposed supplement to Archer just five months after this production.  This timeline also reflects diligence, particularly given that the document was vague and included amongst back-to-back productions by Archer totaling over 500,000 pages.  *See Vasudevan Software*, 2011 WL 940263, at *1–4 (N.D. Cal. Feb. 18, 2011) (sufficient diligence despite being aware of document prior to filing action because the document was "in fact, unclear," and despite a further four month delay after affirmatively learning of facts leading to amendments).

1

## 2.  Wisk was Diligent in Refining its Doctrine of Equivalence Theory

2    Wisk was also diligent in seeking information necessary to refine its DOE theories to

3  respond to Archer's non-infringement positions for both the Maker and the Midnight aircraft.

4  Wisk promptly served a contention interrogatory regarding the '833 patent when discovery

5  opened.  But, other than an identification of certain verbatim claim limitations, Wisk has received

6  no substantive articulation of Archer's non-infringement positions.

7

8

9

10

11

12

13

14

15

16

17    Wisk was diligent in seeking discovery relating to Archer's newly

18  identified non-infringement positions and now promptly seeks leave to refine its DOE theories to

19  address these positions.  *See Facebook*, 2019 WL 8013872, at *9 (N.D. Cal. Sept. 17, 2019)

20  (permitting amended DoE theory based on new "specific nonpublic information").

21

## B.  Archer Can Identify No Prejudice

22    As with the proposed '033 patent contention amendment, the proposed amendments to the

23  '833 patent will not unduly prejudice Archer.  Archer identified no terms for construction for the

24  '833 patent, Dkt. 202 (Jan. 20, 2022, Archer's Responsive Claim Construction Brief), and it is

25  thus difficult to see how Wisk's amended contentions would not have affected claim construction

26  proceedings.  Archer was initially provided notice of Wisk's amendment on July 28, prior to the

27  deadline for the service of final written discovery.  Wisk then provided a slightly revised version

28  of its amendment on August 16 to account for facts learned during Mr. Marius' deposition.  The

close of discovery is nearly three months away, expert reports are not due until December 7, 2022, and trial is set for August 14, 2023—nearly a year way.  *See* Dkt. 303 (July 22, 2022, Scheduling Order); *see also DCG Systems*, 2012 WL 1309161, at *3–4 (allowing plaintiff to amend its infringement contentions because defendants would suffer no prejudice by the amendment).

Also, Wisk's amendment largely addresses the technical design of Archer's boom technology, which is in the control of Archer and has presumably been well-understood by Archer even before it was disclosed to Wisk.  The amendment does not represent any new reading of the claims or change in fundamental infringement theories.  Rather, the theory of infringement remains focused on Archer leveraging "inlets" on its booms for allowing air-cooling of its rotor controller assemblies.  *See Vasudevan Software*, 2011 WL 940263, at *5 (allowing plaintiff to amend its infringement contentions finding no prejudice to defendant where the proposed amendments would not "dramatically affect any of the claims that were construed").  If anything, Wisk's proposed amendments provide more detailed disclosure of Wisk's existing theories, helping Archer focus and streamline its case and narrow the scope of expert discovery.  Because Archer will not be prejudiced by Wisk's amendment, Wisk's amendment should be allowed.

### 1.  The Midnight Aircraft Booms are Properly Accused of Infringing the '833 Patent

Archer has contended that the booms of its production, Midnight aircraft are not properly accused of infringing the '833 patent.  Wisk, however, has made clear from its original complaint that its infringement allegations extended to the aircraft that Archer had sold and/or offered to sell to United Airlines, Inc. ("United"), as described in Archer's February 2021 Investor Deck.  Dkt. 1 at ¶¶ 118-121. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████  Thus, Wisk's originally served infringement contentions for the '833 Patent specifically accused "Archer Aviation's [ ] Maker aircraft *and/or a production aircraft that will leverage the technology of the Maker* (collectively, the 'Maker')."  Ex. Q (Ex. B to Aug, 11,

2021, Initial Infringement Contentions, '833 Chart) (emphasis added).  Archer never moved to dismiss Wisk's allegations regarding the production aircraft from the Complaint, and it never sought to strike Wisk's inclusion of its allegations in the initially served infringement contentions.

Discovery has confirmed that Archer has committed an infringing act by selling, or at least offering for sale, its Midnight aircraft that will incorporate the accused boom design. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  A recent press release from Archer has confirmed that United recently paid Archer a $10 million pre-delivery payment on this agreement. Ex. BB (Aug. 13, 2022, Archer Press Release).  Thus, Archer has already committed an infringing act by selling (or at least at a minimum, offering for sale the Midnight aircraft) to United.  *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310 (Fed. Cir. 2010) ("[A] contract between two U.S. companies for performance in the U.S. may constitute an offer to sell within the U.S. under § 271(a)."); *3D Sys, Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) ("One of the purposes of adding 'offer[] to sell' to § 271(a) was to prevent exactly the type of activity [defendant] has engaged in, i.e., generating interest in a potential infringing product to the commercial detriment of the rightful patentee.").

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, 

PLAINTIFF WISK AERO'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS

1　██████████████████████████████████████████████

2　████████████████████████████████████████████████████

3　██████████████████████████

4　　　　During the parties' meet and confer, Archer cited *PersonalWeb Techs., LLC v. Google*

5　*Inc.*, No. C13-01317 EJD (HRL), 2014 WL 4088201 (N.D. Cal. Aug. 19, 2014), for the

6　proposition that a product "in development" could not be accused of infringement.  But,

7　*PersonalWeb* was a discovery dispute, not a dispute about the scope of a proper infringement

8　allegation under the patent local rules.  *Id.*, at *4.  Additionally, the product in question in

9　*PersonalWeb* was source code that was undergoing changes and would not be in "final form" for

10　"another two to three quarters" after expert reports and summary judgment proceedings.  *Id.*  This

11　is distinguishable from the present case where Archer has already infringed with an offer for sale,

12　and the evidence suggests that the accused instrumentality is either in the process of being built, or

13　on the verge of being built.  ████████████████████████████████████

14　████████████████████████████████████████████████

15　████████████████████████████████████████████████

16　████████████████████████████████████████████████████

17　██████████████████████  Indeed, as the documents cited in Wisk's infringement contentions

18　demonstrate, Archer's Midnight boom design is advanced, and now sufficiently definite to support

19　an infringement allegation.  *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (N.D. Cal. 2010).

20　　　　Finally, judicial economy weighs in favor of allowing Wisk's amendment at this time.  If

21　the Court denies inclusion of the Midnight boom technology in this case, that will likely

22　necessitate the filing of a separate action after Archer has completed the build on its first prototype

23　aircraft (likely, mere months from now).  It would be inefficient for the Court and the parties to be

24　forced to handle, in parallel, a separate case, involving an overlapping patent.

25　　　　　　　　　　　　　　　　**CONCLUSION**

26　　　　For the foregoing reasons, Wisk respectfully asks the Court for permission for Wisk to

27　amend its infringement contentions as set forth in the proposed supplements.

28

1  DATED:  August 22, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By  */s/ Patrick T. Schmidt*
      Patrick T. Schmidt
      Attorneys for Plaintiff Wisk Aero LLC

PLAINTIFF WISK AERO'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS