UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ARCHER AVIATION INC.,<br><br>    Defendant. | Case No. 21-cv-02450-WHO (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 287-1 |

The parties filed a joint discovery letter in which Defendant Archer Aviation Inc. ("Archer") sought to modify the operative protective order to give certain Archer employees limited access to documents designated as Highly Confidential – Attorneys' Eyes Only (AEO) by Plaintiff Wisk Aero LLC ("Wisk"). [Docket No. 278.] On July 1, 2022, the court denied the joint letter without prejudice because the dispute "is fact-intensive and requires the court to balance the risk of inadvertent disclosure of trade secrets to a competitor against the risk of impairing a party's defense or prosecution of its claims" and "the parties only provided generalized concerns about the risks." [Docket No. 279 (7/1/22 Order) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992)).] The parties were ordered to meet and confer about the dispute, taking into account the *Brown Bag* balancing test. The court ordered the parties to file a joint letter about any remaining disputes by July 6, 2022. 7/1/22 Order at 2.

On July 8, 2022, the parties filed a stipulation along with their joint discovery letter asking the court to extend their deadline by two days. [Docket Nos. 287, 287-1 (Jt. Letter).] The extension is granted. This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Archer's motion is granted in part and denied in part.

**I.     BACKGROUND**

Wisk asserts claims for misappropriation of trade secrets and patent infringement related to

the development of electronic vertical takeoff and landing ("eVTOL") aircraft against its competitor, Archer. Wisk has been developing eVTOL vehicles for over ten years. [Docket No. 148 (Second Amended Complaint, "SAC") ¶ 2.] Archer was founded in 2018. In 2019 and 2020, Archer hired ten engineers from Wisk, including Wisk's VP of engineering and chief engineer. [Docket No. 133 (Order on Prelim. Inj.) 4-5; SAC ¶ 6.] In February 2021, Archer announced that it would soon release its own eVTOL aircraft. SAC ¶ 4. Wisk alleges that the announcement was "surprising" because Archer appeared to have had "little or no meaningful operations" and had only a fraction of the number of engineers employed by its competitors just one year prior to the announcement. Wisk further alleges that the design Archer released for its eVTOL aircraft "appeared to be a copy of a potential design that Wisk had developed for its next-generation aircraft and submitted in a confidential patent application" in January 2020 to the U.S. Patent and Trademark Office. *Id*. Specifically, Wisk alleges that Archer's aircraft has "the same overall aircraft configuration" disclosed in the patent application, even though that configuration has not been publicly disclosed. *Id*. at ¶ 83. Wisk asserts that Archer's design "infring[es] at least several patents issued to Wisk[.]" *Id*. at ¶ 5. According to Wisk, the resemblance between Archer's aircraft design and Wisk's aircraft "could not have been a coincidence" given Archer's "targeted recruiting" of Wisk's engineers. *Id*. at ¶ 6.

Archer now moves to modify the existing protective order to permit limited disclosure of AEO-designated information to ten former Wisk engineers who now work for Archer. It proposes the following modification:

> If Wisk contends that an individual developed or used a specific alleged trade secret while at Wisk, then Archer's outside counsel may disclose to that individual (1) the portion of Wisk's [California Code of Civil Procedure section] 2019.210 Statement (Dkt. 148-7) describing that alleged trade secret, and (2) the portions of Wisk's responses to Archer's Interrogatory Nos. 1, 23-25 where Wisk makes its contentions that relate to that alleged trade secret; in each case limited to the specific portions of those documents under the headings that include that alleged trade secret and provided that the individual agrees to be bound by Section 7.1 of the PO, and views a copy of those portions of those documents solely in the presence of Archer's outside counsel.

Jt. Letter 1. Section 7.1 of the protective order states in relevant part that "[a] Receiving Party

may use Protected Material . . . in connection with this case only for prosecuting, defending, or attempting to settle this litigation . . ." [*See* Docket No. 161 (Protective Order).] Archer states that "Interrogatory No. 1 identifies who developed or used the trade secret at Wisk; No. 23 provides Wisk's misappropriation contentions and further identifies individuals' alleged development or use of the trade secret at Wisk; [and] Nos. 24 and 25 provide Wisk's contentions why the trade secret is allegedly not publicly known or readily ascertainable." *Id*. In sum, under Archer's proposal, if Wisk contends that a particular individual who now works for Archer either developed or used a trade secret while employed at Wisk, the proposed modification would permit Archer to disclose to that individual Wisk's description of the trade secret (but not any associated documents) and the portions of Wisk's interrogatory responses containing Wisk's contentions regarding that trade secret. *Id*. at 2.

Archer contends that it needs the proposed modification to develop evidence to defend against Wisk's trade secret claims. *Id*. It identifies the ten individuals and the trade secret(s) with which each is associated and states that Wisk can reduce the list by confirming in writing that Wisk does not contend that specific individual(s) developed or used a particular trade secret while at Wisk. *See id*.

Wisk opposes the modification. It argues that if the court grants Archer's motion to modify the protective order, it should: 1) require that every Archer employee with whom Wisk's trade secret information is shared must agree to be bound by the prosecution bar in the protective order[1]; 2) enjoin any use by Archer or its employees of the disclosed information, including requiring the withdrawal of any pending patent applications on technologies in the same subject matter area; and 3) require that at the close of discovery, Archer must disclose which individuals had access to Wisk's trade secret information, each of whom must sit for an additional deposition

---

[1] Section 8 states in relevant part that any individual who receives access to AEO or source code information "shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office . . . [t]his Prosecution Bar shall begin when access to [AEO] or [source code] information is first received by the affected individual and shall end two (2) years after final termination of this action."

3

1 about their use of the information in the disclosure, and that these depositions will not count
2 against Wisk's time limit. *Id*.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 26(c), courts may issue orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). In *Brown Bag*, the Ninth Circuit observed that when considering entry of a protective order for trade secrets, "[t]he issue entails conflicting interests," as follows:

> On the one hand, parties seeking discovery are entitled to all information "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1)—an intentionally broad mandate. On the other hand, responding parties are entitled to protection from "undue burden" in discovery, including protection from misuse of trade secrets by competitors. Fed. R. Civ. P. 26(c).

960 F.2d at 1470. Accordingly, courts must balance the risk of inadvertent disclosure of trade secrets to a competitor against the risk of impairing a party's defense or prosecution of its claims. *Id*. at 1470-71.

Archer argues that the proposed modification is necessary to "develop factual evidence *that is available only from* [*the former Wisk employees*] in the defense of Wisk's trade secret claims." Jt. Letter 2 (emphasis in original). Archer argues that the former Wisk employees who now work for Archer are the best source of evidence relevant to these claims, including each individual's alleged development or use of the trade secret information while employed at Wisk; whether the information was treated as secret at Wisk; and whether the information originated from Wisk or another source. *Id*. at 2-3 (citing *Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, No. 219CV000637RJSDAO, 2020 WL 2736094, at *3 (D. Utah May 26, 2020), *aff'd,* No. 219CV000637RJSDAO, 2020 WL 5645321 (D. Utah Sept. 22, 2020) (discussing trade secret-related information that "can be addressed only by the parties themselves, not by retained experts")). Archer further argues that disclosure of the protected information to the ten individuals poses no serious risk of harm to Wisk because Wisk specifically contends that those individuals already possessed or knew the trade secret information at issue while employed at Wisk. Jt. Letter

4

2-3.

    In response, Wisk disputes that Archer's defense would be prejudiced or impaired if it is unable to show its employees the trade secret information. *Id*. at 3. Wisk denies that the individuals possess special knowledge relevant to Archer's defense, noting that all of the information in Wisk's trade secret disclosure and discovery responses came from Wisk's own witnesses. *Id*. at 4. Therefore, it argues, Wisk's current personnel and its documents are the best sources of information regarding its trade secrets. It also argues that Archer has retained experts that can analyze Wisk's trade secret disclosure and that Archer can depose Wisk's own experts to obtain the necessary information. *Id*. at 3, 4. Wisk emphasizes that the ten individuals at issue are currently "working on competitive technologies" and that it is "wishful thinking" that disclosure of AEO material to them would pose no risk of harm to Wisk, arguing that the individuals "should not have seen the details of Wisk's trade secrets for almost two years now, and would be amply refreshed" on the details if given access to the trade secret information at issue. *Id*. at 4. It argues that "[g]iving disloyal former employees renewed access to Wisk's trade secrets would facilitate and perversely encourage further misappropriation," and that if these individuals are permitted to review this information, they should be subject to a two-year prosecution bar (among other restrictions). *Id*. at 5.

    First, the court concludes that the former Wisk/now Archer employees should have limited access to the protected information. The applicable statutes define trade secrets as "various types of information that are (1) sufficiently secret and (2) derive economic value from their secrecy," and "the first element requires that its owner have 'taken reasonable measures to keep such information secret,' or that the secret '[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Order on Prelim. Inj. 16 (citing 18 U.S.C. § 1839(3) and Cal. Civ. Code § 3426.1(d)). As to the second element, "the secret must have some economic value just from the fact that it is secret." *Id*. (citing *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 847 (N.D. Cal. 2019)). Wisk's position does not adequately account for Archer's need to discover information from witnesses that Wisk itself has identified as having percipient knowledge about the trade secrets at issue, including facts that may be uniquely in their possession

5

about how and whether they developed or used the information while at Wisk, and what steps Wisk took to protect the information to maintain its secrecy. Wisk argues that its own personnel and documents "are the best, or at least an extremely, substantial source of information" relevant to these inquiries, Jt. Letter 4, but its former employees may have different facts and perspectives that conflict with Wisk's position. It is not fair to completely block Archer from obtaining relevant information from key percipient witnesses; expert testimony is no substitute for facts that may be uniquely within their knowledge. *See Brown Bag*, 960 F.2d at 1470 ("parties seeking discovery are entitled to all information 'reasonably calculated to lead to the discovery of admissible evidence'" (citation omitted)).

Providing limited access to the protected information to the Archer employees must be balanced against the risks to Wisk. *See id.* ("responding parties are entitled to protection . . . from misuse of trade secrets by competitors"). Wisk requests that the court mitigate the risks by subjecting the individual Archer employees to a prosecution bar, and by enjoining any use by Archer or its employees of the disclosed information, including requiring Archer to withdraw any pending patent applications on technologies in the same subject matter area. The court recognizes the sensitivity of Wisk's confidential trade secret information and acknowledges that it is entitled to a high degree of protection. However, Wisk's proposed conditions—severely restricting the employees' work in the eVTOL industry for two years as well as fully disrupting Archer's subject area patent applications—amount to a competitive poison pill.

Courts recognize that "there may be circumstances in which even the most rigorous efforts of the recipient of [information designated as confidential] to preserve confidentiality in compliance with the provisions of . . . a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010)). This is because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id.* (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980)). "As individuals cannot simply purge selected information from their memory, the risk is that they may later use the knowledge gained from the confidential material, however inadvertently, in the prosecution of future patents."

6

*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011). "Accordingly, courts authorize the inclusion of prosecution bars in protective orders as a less drastic alternative to the disqualification of counsel or experts." *Id*. at *1.

Here, Wisk's theory is that specifically identified former employees already know the information comprising its alleged trade secrets and that they are currently misappropriating the trade secrets in their work at Archer. *See* Jt. Letter at 2, 5 ("[t]he infringement and misappropriation that Wisk has alleged in this case *is ongoing*" (emphasis in original)). This theory is inconsistent with Wisk's current position that disclosure of the trade secret information to these same individuals risks misappropriation. *See id*. ("giving these employees a detailed primer on Wisk's trade secrets would risk precisely the misuse of Wisk's information that Wisk filed this suit *to stop*." (emphasis in original)). Under Wisk's theory of the case, the Archer individuals already possess most, if not all, of the protected information because they allegedly developed or used the alleged trade secrets while working for Wisk. This distinguishes the current case from *In re Deutsche Bank* and *Applied Signal*, which wrestled with the problem of being unable to "unring the bell" when an individual learns sensitive competitive information for the first time. Moreover, Archer does not seek to give these individuals access to all of Wisk's AEO information. Rather, the proposed modification is narrowly tailored to provide the former Wisk employees with access only to the portions of Wisk's trade secret disclosure describing the alleged trade secrets that Wisk specifically has associated with each individual, and the corresponding portions of Wisk's interrogatory responses setting forth its contentions about the trade secrets.

Wisk identifies a valid concern that providing access to the Archer individuals may refresh their memories about Wisk's trade secrets that they haven't seen in two years, but that concern can be managed through appropriate limits on the time and method of reviewing the information.

The court has balanced the risk of disclosure of Wisk's trade secrets to the individuals accused of misappropriation with the risk of impairing Archer's defense against those claims. *See Brown Bag*, 960 F.2d at 1470-71. It concludes that there are less restrictive alternatives to the prosecution bar and the requirement that Archer and its employees withdraw any pending patent

7

1  applications on technologies in the same subject matter area that will minimize any risk of misuse
2  of Wisk's confidential information. These are:

3  - The individuals that Wisk contends developed or used an alleged trade secret while
4    employed at Wisk must agree in writing to be bound by Section 7.1;
5  - The individuals may view the relevant portion(s) of Wisk's trade secret disclosure
6    and interrogatory responses regarding the trade secret(s) with which they are
7    associated ("the restricted information") solely in the presence of Archer's outside
8    counsel;
9  - The amount of time during which the individuals may view the restricted
10   information is restricted to no more than 15 minutes total per trade secret;
11 - The individuals are barred from retaining copies of the restricted information or
12   taking notes about the restricted information for any purpose;
13 - Within two days of the date that fact discovery closes, Archer must identify each of
14   the former Wisk employees with whom it shared the trade secret disclosure and
15   interrogatory responses pursuant to the modification to the protective order. Within
16   seven days of the date of the disclosure, each of those individuals must provide a
17   declaration that (1) for each trade secret, sets forth the amount of time that they
18   viewed the restricted information; (2) provides the name of the individual(s) who
19   were present when they viewed the restricted information; (3) confirms that they
20   did not copy or take notes about the restricted information; and (4) describes in
21   detail their use of the restricted information after they viewed it. The declarations
22   must be sworn under penalty of perjury and may not include any information that is
23   protected by the attorney-client privilege.

24  Accordingly, Archer's motion to modify the protective order is granted in part and denied
25 in part. Given the approaching fact discovery cutoff and number of depositions that the parties
26 must complete, the court denies Wisk's request that it stay this order by 14 days to permit Wisk
27 time to seek review. *See* Jt. Letter at 5. If Wisk seeks a stay of this order, it must do so before the
28 Honorable William H. Orrick.


### III.  CONCLUSION

For the foregoing reasons, Archer's motion to modify the protective order is granted in part, in conformance with the conditions set forth in this order.

**IT IS SO ORDERED.**

Dated: August 30, 2022



Donna M. Ryu
United States Magistrate Judge