1 | GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted pro hac vice
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted pro hac vice
  dthomasch@gibsondunn.com
Paul Torchia, admitted pro hac vice
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted pro hac vice
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

*Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.*

<span style="color:red">REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</span>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WISK AERO LLC,

                  Plaintiff,

       v.

ARCHER AVIATION INC.,

                  Defendant.

CASE NO. 3:21-CV-02450-WHO (DMR)

**ARCHER'S OPPOSITION TO WISK'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS**

Hearing Date:     September 28, 2022
Hearing Time:     2:00 p.m.
Hearing Location: Courtroom 2
Honorable Judge William H. Orrick

Gibson, Dunn & Crutcher LLP

105701785.4

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................... 1

II. BACKGROUND ........................................................................................................ 2

    A.    Wisk's Operative Infringement Contentions ................................................. 2

    B.    Discovery Regarding Midnight ...................................................................... 3

    C.    Wisk's Proposed Amended Infringement Contentions .................................. 4

III. ARGUMENT ............................................................................................................ 6

    A.    Wisk Does Not Have Good Cause For Its Proposed Amendments Regarding Midnight or Alleged Boom Designs and Charging Systems Related to Midnight .......................................................................................................... 6

        1.    Midnight Is Not A Proper Accused Product Because It Is An Unreleased Product ▮▮▮▮▮▮▮▮▮▮ ...................................................... 6

        2.    The United Contract Does Not Support Wisk's Motion ................................. 8

        3.    The ▮▮▮▮▮▮▮▮▮▮ Does Not Support Wisk's Motion ........................ 10

        4.    Wisk Was Not Diligent In Seeking Amendment Regarding Midnight .......... 11

        5.    Wisk Cannot Accuse Midnight Under The Guise of Mere "Booms" And "Charging Systems" ............................................................................... 13

        6.    Archer Would Be Unfairly Prejudiced By The Addition of Midnight .......... 14

    B.    Wisk Does Not Have Good Cause For Its Doctrine of Equivalents Amendments ................................................................................................... 16

        1.    Wisk Was Not Diligent Regarding The '833 Patent ..................................... 17

        2.    Wisk Was Not Diligent Regarding The '033 Patent ..................................... 18

        3.    Archer Would Be Unfairly Prejudiced By Wisk's New Theories ................. 19

IV. CONCLUSION ........................................................................................................ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

105701785.4

# TABLE OF AUTHORITIES

Page(s)

CASES

*3D Systems, Inc. v. Aarotech Laboratories, Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998) ................................................................................................9

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. 2012) .........................................8

*DCG Sys. v. Checkpoint Techs., LLC*,
    No. C 11-03792 PSG, 2012 WL 1309161 (N.D. Cal. Apr. 16, 2012) ......................12, 16

*EPOS Techs. v. Pegasus Techs.*,
    842 F. Supp. 2d 31 (D.D.C. 2012) ......................................................................................1, 6

*Impinj, Inc. v. NXP USA, Inc.*,
    No. 19-CV-03161-YGR, 2022 WL 2125133 (N.D. Cal. Mar. 4, 2022) .........................16

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
    No. 14-CV00876-RS (JSC), 2016 WL 2855260 (N.D. Cal. May 13, 2016) ................11

*OpenTV, Inc. v. Apple, Inc.*,
    No. 14-CV-01622-JST, 2015 WL 13446267 (N.D. Cal. Jan. 20, 2015) ......................18

*PersonalWeb Techs., LLC v. Google Inc.*,
    No. C13-01317 EJD (HRL), 2014 WL 4088201 (N.D. Cal. Aug. 19, 2014) ..........1, 6, 7

*Rembrandt Patent Innovations, LLC v. Apple Inc.*,
    Nos. C 14-05049 WHA, C 14-05093 WHA, 2015 WL 8607390 (N.D. Cal. Dec. 13, 2015).........16

*Richtek Tech. Corp. v. uPi Semiconductor Corp.*,
    No. C 09-05659 WHA, 2016 WL 1718135 (N.D. Cal., Apr. 29, 2016) .........................16

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ...............................................................................8

*Synopsys, Inc. v. Atoptech, Inc.*,
    No. 13-CV-02965-MMC-DMR, 2016 WL 4945489 (N.D. Cal. Sept. 16, 2016)....................13, 14

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010).............................................................................................9

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA Inc.*,
    No. CIV.A. H-07-2392, 2009 WL 8712585 (S.D. Tex. May 14, 2009) .........................9

*Vasudevan Software, Inc. v. International Business Machines Corp.*,
    No. C 09-05897 RS (HRL), 2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ...................12

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
    236 F. Supp. 3d 1110 (N.D. Cal. 2017) ......................................................................17, 19

Gibson, Dunn & Crutcher LLP

# I. INTRODUCTION

Wisk's motion to amend its infringement contentions should be denied with respect to all of the contested amendments.[1]  Wisk bears the burden to show good cause for the amendments, but Wisk lacks good cause and has failed to meet its burden.

First, Wisk should not be permitted to add allegations against Archer's future Midnight aircraft, including allegations against alleged Midnight boom designs under the '833 patent and charging systems under the '033 patent.  The Midnight aircraft ███████████████████████████ ████████████    And Midnight ████████████████████████████████████ ████████████████████████████████   Thus Wisk does not have any legal basis to accuse Midnight of patent infringement now, in this case, as opposed to in a later case if and when ██████████ ████████████   and there is a ripe infringement dispute about it.  Indeed, Wisk's motion *does not cite a single case* allowing a patentee to amend its infringement contentions to add a product that is still in development.  And to the contrary, courts are clear and consistent in holding that "an incomplete, non-'live' product cannot be evaluated for infringement in patent litigation."  *PersonalWeb Techs., LLC v. Google Inc.*, No. C13-01317 EJD (HRL), 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014); *accord EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 34 (D.D.C. 2012).  Thus Wisk has no basis for the bulk of its proposed amendments.  Nor was Wisk diligent in seeking amendment in any event.  And the addition of Midnight would unfairly prejudice Archer, by forcing Archer to commit to non-infringement defenses for a product ██████████████████████████████████████████████

Second, Wisk should not be permitted to add its new Doctrine of Equivalents theories under the '833 and '033 patents.  Wisk was not diligent in seeking to add those theories to the case.  For example, Wisk admits in its motion that it had all of the relevant facts *a year ago* for the theory it now seeks to add against the Maker aircraft under the '833 patent.  And adding new theories now would unduly prejudice Archer, because claim construction proceedings were completed months ago, and

---

[1]  Archer does not oppose Wisk's addition of citations to support its existing allegations for the '033 patent (specifically, the allegations against the Maker in connection with the ██████ charger), Wisk's removal of allegations in connection with ██████ charger, and Wisk's removal of the '328 patent (while Archer reserves its right to seek fees and costs for Wisk's meritless assertions). But Archer opposes Wisk's motion in all other respects.

1    document discovery is already closed.  It is simply too late for Wisk to add new theories that it could

2    have articulated a year ago.  Therefore the Court should deny Wisk's motion in all contested respects.

3                                              **II.  BACKGROUND**

4    **A.    Wisk's Operative Infringement Contentions**

5            Wisk filed this case in April 2021, and served its infringement contentions on August 11, 2021.

6    Mot. at 4.  Wisk accused Archer's Maker aircraft, which Wisk purported to define in its cover pleading

7    as "Archer's Maker demonstrator aircraft and/or any follow-on versions of the Maker aircraft,

8    including a production aircraft that will leverage the technology of the Maker (collectively, the

9    'Maker')."  Ex. 1 (Wisk Aug. 11, 2021 Cover Pleading) at 2-3.  In its contention claim charts, Wisk

10   cited design documents regarding the Maker demonstrator aircraft.  *See, e.g.*, Ex. F; Ex. Q.

11           Wisk's contentions attached claim charts for patents including U.S. Patent No. 9,764,833 ("the

12   '833 patent").  The '833 patent relates to air-cooling of electronics.  It discusses using the cool air

13   generated by a spinning rotor to cool down the rotor's control electronics.  The asserted claims require

14   an assembly with a boom, rotor, rotor controller, and other components, including an "air inlet" that is

15   "positioned on the boom such that airflow generated by the rotor is directed through the air inlet," and

16   a "controller enclosure" that is "disposed around the rotor controller" and is "in fluid communication

17   with the air inlet and an air outlet for allowing *air* to flow through the controller enclosure,"[2] such that

18   the rotor controller is cooled by the air flowing through the enclosure.  Ex. Q at 14-17.  Wisk alleged

19   that Maker infringes the '833 patent because, *inter alia*, allegedly the ███████████████████

20   ████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████

22   *Id.* at 17.

23           Wisk also attached a claim chart for U.S. Patent No. 10,110,033 ("the '033 patent").  The '033

24   patent relates to battery charging.  It discusses ways to charge multiple "battery sub-modules" over a

25   "common power bus."  The asserted claims recite limitations including charging "selected battery sub-

26   modules that are electrically connected to the common power bus."  Ex. F at 27.  Wisk alleged that

27

28   ────────────────────────────
     [2]   All emphasis herein is added, except where noted as being in original.

1   Maker infringes the '033 patent because, *inter alia*, █████████████████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████

**B.    Discovery Regarding Midnight**

As the case proceeded later into 2021, Wisk requested that Archer produce documents regarding Midnight, the code name for a different aircraft that Archer was (and still is) developing.  Archer responded that it would produce documents regarding Midnight to the extent relevant to Wisk's trade secret claims, but Archer objected to providing document discovery into Midnight on the basis of Wisk's patent infringement claims, because Midnight was (and is) still in development and thus is not properly subject to discovery in a patent case.  Ex. 2 (Nov. 3, 2021 letter to Wisk) at 1.  Wisk never challenged Archer's objection before the Court.

Archer has produced certain documents regarding the development of Midnight, and documents regarding a planned interim prototype aircraft codenamed ████████, in response to Wisk's trade secret claims.  For example, Archer has produced documents showing design options that Archer is considering for the booms and motors in Midnight.  *See, e.g.*, Ex. D at 23-26 and 29-34 (excerpting Archer-NDCA-01126187, Archer-NDCA-01139550, and Archer-NDCA-01026856).  One option that Archer is developing for Midnight uses ████████████████████████████████████████

████████████████████████████████████ Ex. W (Marius Dep.) at 501:7-12.  For further example, Archer has produced documents showing that it is developing an approach to battery charging ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ Ex. B at 6 (excerpting Archer-NDCA-01870184).

Further, Archer has produced agreements with United.  As those agreements make clear, the model, type, and specifications of aircraft ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

1  ██████████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████

7  ████████████████████████████

## C.    Wisk's Proposed Amended Infringement Contentions

On July 28, 2022, Wisk sent Archer a proposed supplement to Wisk's infringement contentions, including a revised cover pleading and revised claim charts for the '833 and '033 patents. Ex. O at 4. Wisk stated that its proposed supplement was for the purpose of "simply adding new evidence—not new theories." *Id.* But to the contrary, Wisk was indeed seeking to add new theories and even to add entire new accused products. Wisk's proposed amendments did not merely add evidence in support of Wisk's existing infringement theories against Maker, but also purported to (1) change the definition of the Accused Instrumentalities for all patents-in-suit to add "Midnight aircrafts"; (2) add accusations regarding ████ battery chargers made by Electro.Aero that ████████████████████████████ ██████████████████████████████████ and (3) change Wisk's Doctrine of Equivalents ("DoE") theory regarding a limitation in the '033 patent. *See* Ex. O at 2.

Archer informed Wisk that Archer would agree to a supplement adding evidence regarding Maker in support of Wisk's existing theories, but would *not* agree to additions regarding Midnight, the ████ chargers █████████, or the new DoE theory. *Id.* The parties met and conferred on August 5, 2022, and Archer wrote to Wisk to memorialize its views on August 9, 2022. Ex. 3 (Aug. 9, 2022 email to Wisk).[3] Archer explained that (1) "for all of the patents-in-suit, Archer opposes Wisk's proposed addition of contentions against Midnight, which is still in development"; (2) "Archer opposes Wisk's proposed addition of contentions regarding the ████ chargers █████████—████ ████████████████████████████"; and (3) "Archer opposes Wisk's

---

[3]  While Wisk's motion discusses Archer's August 9 email, Wisk did not include it in the exhibits to the motion.  Therefore Archer attaches it here.

proposed supplement regarding the doctrine of equivalents at page 91 of the redlined claim chart for the '033 Patent."

Archer also provided legal authority for its position that Midnight is not properly the subject of infringement contentions because it is still in development, and Archer asked Wisk to provide any contrary caselaw Wisk was aware of for Archer's consideration. *Id.* Further, Archer explained its position that Wisk lacks diligence for its amendments regarding Midnight, the ███ chargers ███ ███████ and the new DoE theory, and that adding these contentions would unfairly prejudice Archer. *Id.*

Wisk did not respond to Archer's request for Wisk's caselaw, nor did Wisk respond to Archer's other positions from Archer's August 9 email. Nor did Wisk file its motion to amend. Instead, Wisk proceeded to take the depositions of Archer employee Diederik Marius and third party Electro.Aero on August 11. Then, five days after the depositions, on August 16, 2022, Wisk sent Archer a revised set of proposed claim charts for the '833 and '033 patents. Wisk called these charts "slightly updated copies of Wisk's supplemental contentions" (Ex. O at 1), but in fact they contained voluminous new allegations even as compared to the July 28, 2022 proposed supplement, including new DoE theories. *See* Ex. 4 (Aug. 16, 2022 "Redline - Intermediate v. Latest Claim Chart for U.S. Patent 9,764,833") at 31, 40, 47, 57, 74, 86, 92 (new DoE theories); *id.* at 34-36 and 52-54, 72-73, 82-85, 89-91 (other new allegations); Ex. 5 (Aug. 16, 2022 "Intermediate v. Latest Claim Chart for U.S. Patent 10,110,033") at 85 (changes to DoE theory); *id.* at 74-75 (changes to literal infringement theory). Wisk also changed its proposed contentions by removing allegations about Maker in connection with the ███ charger. *See* Ex. 5 at 3, 7. Wisk wrote that it understood the parties to be at an impasse and that it would proceed with a motion to amend. Ex. O at 1.

Three days later, on August 19, 2022, Wisk sent Archer "an updated redline of Wisk's cover pleading." *Id.* Wisk wrote that it was "further narrowing the case by withdrawing claim 2 of the '033 patent and claim 11 of the '328 patent." *Id.* In fact, the redline showed that Wisk had also made changes to the definitions of Accused Instrumentalities for the '833 and '033 patents as compared to the July 28, 2022 proposed supplement. Ex. 6 (Aug. 19, 2022 "Redlines-Intermediate v. Latest Cover Pleading") at 2. Wisk changed the Accused Instrumentalities for the '833 patent to reframe them as

1    Archer's "booms" instead of its aircraft, and changed the Accused Instrumentalities for the '033 patent

2    from to reframe them as "battery management and charging systems" instead of Archer's aircraft.  *Id.*

3            Wisk wrote in its cover email that it understood the parties to be at an impasse.  Ex. O at 1.  And

4    Wisk proceeded to file its motion to amend the following week.

## III.  ARGUMENT

### A.    Wisk Does Not Have Good Cause For Its Proposed Amendments Regarding Midnight or Alleged Boom Designs and Charging Systems Related to Midnight

            As Wisk admits in its motion, Wisk bears the burden to establish good cause for the contested

proposed amendments.  Mot. at 13.  But Wisk has not shown good cause, and cannot do so.  Below,

Archer demonstrates that Wisk was not diligent and that Wisk's proposed amendments would unduly

prejudice Archer.  But even before that, there is a threshold issue that is dispositive of the bulk of

Wisk's motion.  Specifically, Wisk cannot show good cause to add infringement contentions regarding

Archer's Midnight production vehicle, or its alleged boom design or charging system, because Wisk

has no legal basis to accuse Midnight of infringement in this case.[4]

### 1.    Midnight Is Not A Proper Accused Product Because It Is An Unreleased Product █████████

            As a threshold matter, Wisk cannot add allegations regarding Midnight because it is an

incomplete, unreleased product ████████████████████████████████████████████████████████

████████    The law is clear that "an incomplete, non-'live' product cannot be evaluated for

infringement in patent litigation."  *PersonalWeb.*, 2014 WL 4088201 at *4; *accord EPOS Techs.*, 842

F. Supp. 2d at 34 ("Requiring [defendant] to produce information about these devices while they are

still in development would not advance [plaintiff's] pending claims *because there is not yet any final*

---

[4]    This threshold issue relates to all three of the remaining patents-in-suit, because Wisk's motion seeks to amend Wisk's cover pleading, where Wisk seeks to change the definition of "Accused Instrumentalities" to add references to Midnight for all three of the patents.  Ex. E. at PDF page 4, 11.  Indeed, Wisk's redline includes changes not only for the '833 and '033 patents, but also for the '036 patent, which Wisk does not mention anywhere in its motion, let alone attempt to justify.  Instead, Wisk's motion glosses over this issue by incorrectly representing to the Court in a footnote that "Archer has indicated it does not oppose Wisk's proposed amendments to the cover pleading."  Mot. at 1 n.3.  That is simply not true.  Archer informed Wisk clearly that "for *all of the patents-in-suit*, Archer opposes Wisk's proposed addition of contentions against Midnight."  Ex. 3 (Aug. 19, 2022 email) at 1.

Gibson, Dunn & Crutcher LLP

1    *product that can be evaluated for infringement*; the design is still in flux."); *see also Fenster Family*

2    *Patent Holdings, Inc. v. Siemens Med. Sols. USA, Inc*., 2005 WL 2304190, at *6 (D. Del. Sept. 20,

3    2005) (denying patent discovery as to a product "that is still in the stages of research and

4    development").

5          Here, the very testimony that Wisk attached to its motion confirms that Midnight is an

6    incomplete, unreleased product that ████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████████████████████████

8    ███████████████████████████    *See* Ex. W (Marius Dep.) at 417:15-418:8.   Because there is no

9    Midnight aircraft in existence, ███████████████████████████████████████████████████

10   ██████████████████    there is simply no basis for Wisk to accuse Midnight of patent infringement.

11   *PersonalWeb Techs*, 2014 WL 4088201 at *4.

12         Critically, Wisk has offered no authority whatsoever to support its request to add Midnight to

13   its infringement contentions while Midnight is still in development.   Archer asked Wisk repeatedly to

14   identify any such authority before Wisk filed its motion, and Wisk refused.   Ex. 3 (Aug. 9, 2022 email)

15   at 1.   Indeed, Archer referred Wisk to the *PersonalWeb* decision and asked Wisk "[i]f you are aware

16   of caselaw that you believe supports the addition of infringement contentions against a product that is

17   still in development, please provide that caselaw for our review, as we requested during our meet and

18   confer." *Id.*   Wisk never even responded, much less identified any cases.   In its motion, Wisk does not

19   provide any such authority either—*not a single case* allowing a plaintiff to amend its infringement

20   contentions to add a product still in development at the time of the motion, let alone a product ███████

21   ███████████████████████████    Thus, Wisk has no legal basis for its proposed amendment.

22         Nor does Wisk have any good response to Archer's authority.   Wisk takes issue with the

23   *PersonalWeb* case, arguing that it is inapposite because it concerned a discovery dispute rather than a

24   motion to amend contentions.   Mot. at 25. But Wisk ignores the court's explicit statement that "an

25   incomplete, non-'live' product cannot be evaluated for infringement in patent litigation." *Id.*   And

26   Wisk ignores the court's explanation that this principle was *the basis* of the court's decision regarding

27   discovery—"courts find that when a product is still in development, discovery into such material would

28

1  be premature *because* an incomplete, non-'live' product cannot be evaluated for infringement in patent

2  litigation." *Id; accord EPOS Techs.*, 842 F. Supp. 2d at 34.

3      Wisk also cites *Shared Memory Graphics* to argue that "Archer's Midnight boom design is

4  advanced, and now sufficiently definite to support an infringement allegation." Mot. at 25.  But Wisk

5  is wrong on the facts and the law.  Relevant aspects of the boom and motor assemblies for Midnight

6  are not fixed, and instead are still ████████████████████████████████████████

7  ███████████████████████   And *Shared Memory Graphics* would not support Wisk's argument in

8  any event, as it does not have anything to do with the question of when a product is sufficiently

9  developed to be accused of patent infringement.  The accused products in that case were Nintendo and

10  Sony video game systems that were *already in existence* and on sale to the public, and the question

11  before the court was whether the plaintiff's infringement contentions regarding those products "contain

12  the requisite specificity under Rule 3-1" or instead were "too vague to provide fair notice as to what

13  components and circuitry of the accused products [allegedly] infringe" the asserted patents.  *Shared*

14  *Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010); *id.* at 1024

15  ("Plaintiff accuses at least two products sold by Sony and at least two products sold by Nintendo.").

16  Nothing in that case—or any other case cited by Wisk—suggests that Wisk can amend its contentions

17  to accuse products that are still being developed ██████████████████████████████████████

18  ████████████████████████████████████.[5]

19      **2.    The United Contract Does Not Support Wisk's Motion**

20      Wisk also tries to rely on Archer's contract with United, arguing that it constitutes a sale or

21  offer for sale and thus allows Wisk to add infringement contentions against Midnight before it exists.

22  Mot. at 24.  But the United contract makes clear that ████████████████████████████████████

23  ████████████████████████████████   To the contrary, the contract states repeatedly that ████

24  ███████████████████████████████████████████████████████████████████████████

25  ███████████████████████████████████████████████████████████████████████████

26  ─────────────────

27  [5]   Wisk also cites *Apple v. Samsung*, but as Wisk's own citation shows, the decision there concerned
    a motion to amend infringement contentions filed "[a]fter the release of the United States version"
    of the product at issue.  Mot. at 17 (quoting *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. CV

28  12-00630 LHK, 2012 WL 5632618, at *5 (N.D. Cal. 2012).  Here, there has been no such release.

1

2

3

4

5

6

7

8

9

10      In the cases Wisk cites, by contrast, the defendant had offered *specified* products for sale, where

11  the offers themselves allegedly specified the provision of allegedly infringing products and thus were

12  actionable under the Patent Act.   For example, in *3D Systems* the defendant "sent eight letters

13  containing price quotations *and descriptions of the merchandise for sale* to four different companies in

14  California." *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998).

15  The Federal Circuit explained that "the price quotation letters can be regarded as 'offer[s] to sell' under

16  § 271 *based on the substance conveyed in the letters*, i.e., *a description of the allegedly infringing*

17  *merchandise* and the price at which it can be purchased." *Id.* at 1379.

18      Likewise, in *Transocean,* the plaintiff pointed to a contract that called for a specific oil rig, one

19  that was already under construction per existing specifications.  *See Transocean Offshore Deepwater*

20  *Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1307 (Fed. Cir. 2010) (defendant's

21  parent company "contracted with [a third party] in 2005 to build the accused rig in Singapore" *before*

22  defendant signed the separate, later contract alleged to be the offer for sale of that same rig).  As the

23  district court explained,  the plaintiff "contends that the Contract *describes a rig, the specification of*

24  *which, infringes* Claim 17 of [the] Patent.").  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk*

25  *Contractors USA Inc*., No. CIV.A. H-07-2392, 2009 WL 8712585, at *2 (S.D. Tex. May 14, 2009).

26      Here, there are no such descriptions or specifications in the United contract, and to the contrary

27  the contract states

28

1   ███████████████████████████████████████████████ For example, with respect to

2   cooling technologies (which Wisk seeks to add to its '833 patent contentions based on computer

3   renderings of possible Archer designs), the very testimony that Wisk attached its Motion confirms that

4   Archer's work is ████████████████████████████████████████████████████

5   ███████████. Indeed, Archer engineer Mr. Marius testified that ████████████████

6   ████████████████████████████████████████████████████████████████

7   ██████ *Id.* at 513:25-514:3.  Thus Wisk's cases are inapposite and do not support its motion to add

8   Midnight.

   **3.    The ███████████████ Does Not Support Wisk's Motion**

10      Next, Wisk argues that even though the Midnight production aircraft does not exist and is still

11  in development, Wisk should be allowed to add Midnight to its contentions because ███████████

12  █████████████████████████████ Mot. at 24-25.  But as Archer's witness explained

13  to Wisk, ██████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ██████  Thus Wisk has no basis to add ███████████████████ to its infringement contentions.

17      Wisk also argues that Archer will ██████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ██████  Mot. at 24.  But the '833 patent does not claim a fuselage or booms; it claims a "rotor mounting

20  boom assembly" comprising several components beyond the boom itself, including *inter alia* a

21  "vertical lift rotor assembly coupled to the boom" and a "rotor controller assembly disposed on the

22  boom," each with further requirements.  Ex. C at 2, 11, 23, 39. ████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████

25      Similarly, for the '033 patent, Wisk argues that Archer has put the ██████████████

26  █ at issue by discussing them in Archer's interrogatory response regarding non-infringing alternatives

27  to the asserted claims.  Mot. at 18.  But Wisk misses the point.  The asserted claims require charging

28  multiple battery sub-modules over a "common power bus."  Archer contends that one acceptable

alternative is to charge each alleged battery sub-module using its own dedicated charger, without an alleged "common power bus."  As evidence that this alternative approach is viable, Archer cited to documents showing that ███████████████████████████████████████████████ ████████████████████████ Wisk can certainly try to dispute Archer's contention regarding this non-infringing alternative, but that does not mean Wisk can amend its infringement contentions to change the definition of the Accused Instrumentalities from "aircraft" to freestanding "charging systems" and add the ██████████████████ as newly accused products—especially given that Archer does not make or sell the chargers, has not even used the ██████ chargers yet, and does not even possess them yet.

Further, Wisk has not demonstrated—and cannot demonstrate—that ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

### 4. Wisk Was Not Diligent In Seeking Amendment Regarding Midnight

Even if it were proper to accuse a product while it is still in development, Wisk's motion would still fail because Wisk has not met its burden on diligence.  As Wisk admits, it bears the burden to prove that it exercised "the diligence required for a showing of good cause," which requires not only "diligence in discovering the basis for amendment," but also "diligence in seeking amendment once the basis for amendment has been discovered." Mot. at 14 (quoting *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV00876-RS (JSC), 2016 WL 2855260, at *2–3 (N.D. Cal. May 13, 2016)). Wisk cannot meet this burden, because under Wisk's own view that it is entitled to accuse Midnight of infringement based on the United contract and Archer's preliminary designs for Midnight, Wisk should have sought amendment many months ago, when it obtained the relevant information.  Wisk lacks good cause for waiting until now, at the end of the document discovery period, to seek amendment.

Indeed, Archer produced the United contract to Wisk in September 2021, nearly *eleven months* before Wisk sought to amend its contentions to include the contract and accuse Midnight.  Rosenberg Decl., ¶ 8; Ex. D (8/19/22 Redline '833 chart) at 4 (proposing to add contention that "Archer offered to sell the Midnight aircraft to United Airlines on January 29, 2021. See Archer-NDCA-00007462.").

Wisk has not cited, and Archer is not aware of, any authority finding a plaintiff diligent where it waited eleven months to seek amendment.  To the contrary, the longest delay in any of Wisk's cited cases finding diligence was *four* months.  *See* Mot. at 16 (citing *Vasudevan Software, Inc. v. International Business Machines Corp.*, No. C 09-05897 RS (HRL), 2011 WL 940263, at *1 (N.D. Cal. Feb. 18, 2011)).

Archer raised Wisk's lack of diligence when the parties met and conferred about this motion, and Wisk responded that its amendment was justified by Archer's later production of the ███ ████████████████ document at Archer-NDCA-01139550, which Wisk cites throughout its proposed amendment contentions for the '833 patent.  Ex. 3  (Aug. 9, 2022 email) (Archer memorializing that Wisk identified this document during meet and confer "as the *core document* supposedly allowing Wisk to articulate an infringement theory against Midnight").

But Archer produced that ████ document to Wisk on February 28, 2022, *five months* before Wisk cited it in proposed amended contentions on July 28, 2022 as the parties were winding down document discovery.  *Id.*; Mot. at 10.  Thus, even if Wisk had needed that document before seeking leave to amend—a position that is inconsistent with Wisk's own argument that the earlier-produced United contract was actionable—then Wisk's delay of five months still would foreclose a finding of diligence.  *See, e.g.*, *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *3 (N.D. Cal. Apr. 16, 2012) (cited in Wisk's motion) (explaining that leave to amend has been denied regularly where the patentee "unreasonably delayed amending the infringement contentions— five months to one year").

In its motion, Wisk now changes position again, but still fails to show diligence.  Abandoning what it said during the parties' meet and confer, Wisk now claims that the document produced on February 28, 2022 does *not* provide the basis for Wisk's amendment.  Instead, Wisk now writes, Wisk only cited that document ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████  Mot. at 21.

Wisk's change in position between the meet and confer and its motion strains credibility, but in any event Wisk does not establish diligence, because Wisk does not explain *what information* in the

Gibson, Dunn & Crutcher LLP

July 2022 production allegedly provided a basis for amendment when the earlier productions allegedly did not.   Instead, Wisk merely states without explanation that the July production provided "the necessary details."  *Id.*  That kind of conclusory statement does not suffice to prove diligence, and it is too late for Wisk to take another bite at this apple on reply.  *See, e.g.*, *Synopsys, Inc. v. Atoptech, Inc.*, No. 13-CV-02965-MMC-DMR, 2016 WL 4945489, at *4 (N.D. Cal. Sept. 16, 2016) (patentee did not show diligence where its motion to amend "sticks to conclusory statements, rather than providing facts and details to give life to its broad assertions").  Wisk also admits elsewhere in its motion that the July 2022 production ██████████████████████████████████████████████████████████ ████████████████████████ which by definition is an admission that Wisk already knew the supposed ████████ ████ for its amendment from Archer's earlier productions.  Mot. at 10.  And Wisk cannot rely on Mr. Marius's deposition to excuse its delay, because Wisk was not diligent in seeking Mr. Marius' deposition, as explained below in Section III.B.1.

### 5.   Wisk Cannot Accuse Midnight Under The Guise of Mere "Booms" And "Charging Systems"

Finally, Wisk cannot overcome its lack of diligence regarding Midnight—or its lack of a legal basis to accuse Midnight of infringement—by redefining the Accused Instrumentalities in its proposed amended contentions to accuse mere "booms" and "charging systems," instead of an "aircraft" as in Wisk's original contentions.  *See* Ex. E at PDF page 11 (redline cover pleading); Ex. B at 1 (redline '033 claim chart); Ex. D at 1 (redline '833 claim chart).  Wisk appears to have made these edits on the theory that if it redefines the Accused Instrumentalities in this way, then Wisk should be permitted to accuse discrete "booms" and "charging systems" even before Midnight or any prototype of Midnight actually exist.  But Wisk's attempt fails, because Wisk does not address these edits to its contentions *anywhere in its motion*, let alone justify them with a showing of good cause.  Thus Wisk has waived any argument for good cause.  *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived").

Regardless, Wisk does not have any good cause to amend the definition of Accused Instrumentalities to accuse free-standing "booms" and "charging systems," because Wisk was not diligent.  If Wisk had wanted to accuse a boom or charging system by itself, rather than accusing

Archer's Maker aircraft, then Wisk should have done so in its initial contentions, or sought to amend its contentions far earlier in the case.  Indeed, Wisk already knew before serving its initial contentions in August 2021 that Archer was sourcing a charger from Electro.Aero (*see, e.g.*, Ex. F at 19), and yet Wisk never sought to accuse the charger standing alone, outside of alleged use with Maker.  Therefore Wisk cannot show diligence in seeking to make that wholesale change a year later in August 2022.[6]

### 6. Archer Would Be Unfairly Prejudiced By The Addition of Midnight

Finally, the Court need not even reach the question of prejudice as to Midnight or its alleged booms and charging systems, because Wisk has not shown diligence for adding them to the case. *Synopsys*, 2016 WL 4945489, at *2 ("[w]here the moving party is unable to show diligence, there is no need to consider the question of prejudice") (internal citation omitted).  But if the Court does consider prejudice, it should find that the contested amendments would unduly prejudice Archer and that therefore Wisk has not demonstrated good cause.

Specifically, if Wisk were permitted to add Midnight to its infringement contentions, then Archer would be severely prejudiced by being forced to commit to non-infringement defenses for a product *before it even exists* to be compared to the asserted claims.  The unfairness of that approach is manifest, and Wisk has not cited *any case* allowing it, not even after Archer asked Wisk repeatedly to identify its authority.  Ex. 3 (Aug. 9, 2022 email) at 1.  By contrast, there is no unfairness to Wisk in denying its motion as to Midnight.  To the extent Wisk ever has a supportable infringement claim against an actual Midnight aircraft in the future, the parties can litigate that claim in a separate case when and if it accrues.

Adding Midnight to this case would also unduly prejudice Archer because this case is already at a late stage of fact discovery, and the Court has already issued its claim construction opinion.  If Wisk had pursued amendment earlier in the case, then Archer could have at least tried to identify terms for construction relevant to Wisk's new theories, and could have expanded its prior-art search and

---

[6]   Notably, Wisk did not make these proposed changes to the definitions of Accused Instrumentalities until August 16 and 19, 2022, after the parties had already met and conferred about Wisk's motion. Exs. 5-7 (redlines sent by Wisk after meet and confer).  While Archer would not have agreed to the changes for the reasons explained above, Wisk did not ask for a further discussion, and instead wrote that it assumed the parties were at an impasse.

1   invalidity contention analysis to take account of the broader scope of Wisk's new theories. But it is

2   now too late to do so without disrupting the careful schedule agreed to by the parties (after weeks of

3   negotiation) and adopted by the Court.

4        Wisk argues that there would be no prejudice because its proposed amended contentions "do

5   not involve any re-reading of the claim, or any fundamental change in the infringement theory asserted

6   against the Maker." Mot. at 11. But that is flatly incorrect. For one example, Wisk proposes to add

7   the allegation that █████████████████████████████████████████████

8   ███████████████████████████████████████████████ Mot. at 12. This is a

9   brand-new and different theory of infringement as compared to Wisk's existing theory against Maker,

10  which accuses ███████████ If Wisk were permitted to add Midnight to the case, then Archer would

11  need to consider whether to seek construction of '833 claim terms such as "controller enclosure in fluid

12  communication with the air inlet and an air outlet *for allowing air to flow through* the controller

13  enclosure," and Archer would need to expand its prior-art search and invalidity contentions to pursue

14  ██████████ prior art. Wisk argues that Archer cannot be prejudiced because Archer did not identify

15  terms from the '833 patent for construction during the *Markman* process earlier this year. Mot. at 22.

16  But Wisk has it backwards. Archer had no reason to identify terms relevant to an infringement dispute

17  about Midnight's potential ████████████████ because there was no such infringement dispute in

18  the case. Adding one now, well after the *Markman* process has ended, would be unduly prejudicial.

19       Likewise, for the '033 patent, Wisk seeks to add a theory that Electro.Aero's ███████████

20  ███████████████████████████████, infringes the patent regardless of whether its intended

21  use is ███████████████████████████████████████████████

22  ███████████████████████████████████████████████████████

23  If Wisk were permitted to add its new proposed theory, then Archer would need to consider new claim

24  construction disputes relevant to this theory—for example, regarding the claim term "configuring the

25  selected battery sub-modules so that the selected battery sub-modules *are electrically connected to the*

26  *common power bus*"—and would need to expand its prior-art search and invalidity contentions

27  accordingly.

28

Gibson, Dunn &
Crutcher LLP

ARCHER'S OPPOSITION TO WISK'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS
CASE NO. 3:21-CV-02450-WHO (DMR)

Next, Wisk argues that there would be no prejudice because "[t]he close of discovery is nearly three months away." Mot. at 19. But document discovery *has already closed* as of August 31, and the remaining time in fact discovery is only for completing depositions. *See* D.I. 303 at 1-2. The case schedule simply does not have room for re-opened claim construction proceedings and prior-art discovery before expert reports are due, and even if the Court and the parties were to try, it would be unduly prejudicial to make Archer bear the expense and disruption of re-opening those proceedings in parallel with all of the remaining fact depositions.[7]

Indeed, even if Midnight were not still in development, and even if Wisk had been diligent in seeking the contested amendments, they would still be unduly prejudicial to Archer because of the disruption they would cause to the case schedule. As another court in this District aptly explained when denying a motion to amend infringement contentions in the year before trial, "it is time for the case to narrow, not expand." *Richtek Tech. Corp. v. uPi Semiconductor Corp.*, No. C 09-05659 WHA, 2016 WL 1718135, at *3 (N.D. Cal., Apr. 29, 2016); *see also Rembrandt Patent Innovations, LLC v. Apple Inc.*, Nos. C 14-05049 WHA, C 14-05093 WHA, 2015 WL 8607390, at *3 (N.D. Cal. Dec. 13, 2015) ("It is time to prepare for the trial of the already-accused products…. There must be some reasonable cut-off date after which [plaintiff] cannot further expand the case simply because [defendant's] product cycle has outpaced the resolution of this case.").

**B.     Wisk Does Not Have Good Cause For Its Doctrine of Equivalents Amendments**

Finally, Wisk lacks good cause for its proposed amendments to its theories of infringement under the Doctrine of Equivalents ("DoE"). Wisk argues that it is merely "refining" its existing theories, but that is not true. In fact, Wisk seeks to assert new DoE theories that were not disclosed in the original contentions, and that Wisk has not justified adding a full year later.

---

[7]   The cases cited by Wisk to argue lack of prejudice are inapposite because they did not involve attempts to add products that were still in development, or new infringement theories, let alone both as Wisk seeks here. Further, the *Impinj* and *DCG* cases were pending at significantly earlier stages when the courts allowed amendment, and thus amendment did not create prejudice with respect to the case schedule, unlike here where amendment would create that exact prejudice. *See Impinj, Inc. v. NXP USA, Inc.*, No. 19-CV-03161-YGR, 2022 WL 2125133, at *2 (N.D. Cal. Mar. 4, 2022) (no depositions taken and no claim construction order yet issued); *DCG Sys.*, 2012 WL 1309161 at *3 (claim construction briefing still to come).

1

### 1.   Wisk Was Not Diligent Regarding The '833 Patent

For the '833 patent, Wisk seeks to change its DoE theory for element 1[c], which requires "an air inlet positioned on the boom such that airflow generated by the rotor is directed through the air inlet."   Wisk's new theory differs from its old theory on *all* of the constituent parts of the DoE analysis—the function, way, and result.   *See* Ex. D (redline) at 37.   Indeed, Wisk fundamentally changes what Wisk alleges is covered by this element, expanding the contentions to cover an alleged air inlet that is *not* "positioned on the boom" at all, but rather ███████████████ ████.   *Id.*

To justify this change, Wisk argues that it did not ████████████████████████ ████████████████████████████████████████████████████████████ Mot. at 22.   But that argument is untenable, and it is eviscerated by Wisk's own motion, which demonstrates that Wisk already knew a year ago—in August 2021, when Wisk served its initial contentions—that ████████████████████████████████ *See* Mot. at 8 (reproducing an Archer slide ████████ ████████████████████████████████████████████████████████ Thus Wisk admits that it already had a year ago all of the *facts* it needed to make the DoE contention it now seeks to add.   *Id.*   The law is clear that Wisk cannot prove diligence merely by claiming surprise at Archer's non-infringement *contentions* after Wisk already had the relevant facts.   *See, e.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1114-15 (N.D. Cal. 2017) (denying motion to amend infringement contentions where amendment was "merely responsive to [defendant's] noninfringement contentions rather than raising theories based on previously *unknown* information").

Wisk also argues that it should be entitled to amend in light of Mr. Marius' testimony because Archer identified him as a person knowledgeable about non-infringement.   *Id.*   But as Wisk admits, Archer identified Mr. Marius on this issue in *September 2021*, and then Wisk waited approximately nine months—until June 2022—to seek his deposition.   Mot. at 11.   Thus, Wisk was not diligent in discovering what it now alleges was the basis for its proposed amendment.   *See, e.g.*, *Verinata Health*, 236 F. Supp. 3d at 1113 ("In considering the party's diligence, the critical question is whether the party

1  could have discovered the new information earlier had it acted with the requisite diligence.") (internal

2  citation omitted).[8]

3      Wisk also purports to seek leave to "refine" a DoE theory for limitation 1[e] of the '833 patent

4  against the Midnight aircraft.  Mot. at 22.  But Wisk *never had* a DoE theory against Midnight—or

5  even any literal infringement theory against Midnight—as Wisk's own redlines make clear.  *See, e.g.*,

6  Ex. D at 52-61 (showing that all arguments and citations regarding Midnight for limitation 1[e] are new

7  in Wisk's proposed amended contention).  Thus Wisk's request to "refine" a theory against Midnight

8  is misleading at best, and should be denied for all of the reasons discussed above regarding Midnight.

9      **2.  Wisk Was Not Diligent Regarding The '033 Patent**

10     Wisk also seeks to change its DoE theory for limitation 19[d, v] of the '033 patent, which recites

11  "in the event it is determined that the global maximum cell voltage exceeds the voltage threshold,

12  setting the charging current based at least in part on the global maximum cell voltage."  As with the

13  '833 patent above, here Wisk seeks to change *all* of the constituent parts of the DoE analysis—the

14  function, way, and result.  Ex. B (redline) at 91.  Wisk argues that the changes are justified by discovery

15  from Electro.Aero.  Mot. at 18-19.  But Wisk could have made this change a year ago if it had wanted

16  to do so, because it is a change in Wisk's contentions about *the scope of Wisk's own patent claim*, rather

17  than a contention accusing anything specific in the Electro.Aero discovery.  Wisk cannot show

18  diligence to support that late change in its legal theory of claim scope.

19     For example, Wisk originally contended that the function of this claim limitation is "obtaining

20  a maximum voltage and setting a charging current based at least in part on the maximum voltage."  Ex.

21  F at 40.  Now, Wisk seeks to contend instead that the function is "determining that the global maximum

22  cell voltage exceeds a voltage threshold and then setting the current based at least upon the global

23  maximum cell voltage exceeding a voltage threshold."  Ex. B at 91.  Wisk could have articulated this

24  different function a year ago if it had wanted to allege that the claim extends this broadly—Wisk's

---

26  [8]  Wisk cites *OpenTV* as supposedly supporting Wisk's argument that the Marius deposition provides

27  good cause to amend.  Mot. at 21.  But Wisk does not inform the Court that in *OpenTV* the defendant *stipulated* to the proposed amendment, unlike here.  See *OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-JST, 2015 WL 13446267, at *1 (N.D. Cal. Jan. 20, 2015) ("Defendant stipulated that it would not oppose Plaintiffs' motion to amend the contentions.").

Gibson, Dunn &
Crutcher LLP

ARCHER'S OPPOSITION TO WISK'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS
CASE NO. 3:21-CV-02450-WHO (DMR)

1  motion does not identify any reason why Wisk could not have done so—and thus Wisk cannot show

2  diligence in seeking leave to make this amendment.

3  **3.    Archer Would Be Unfairly Prejudiced By Wisk's New Theories**

4  Finally, Archer does not need to show prejudice from Wisk's new proposed DoE amendments,

5  because Wisk has not shown diligence for them. *Synopsys*, 2016 WL 4945489, at *2. But they would

6  indeed cause unfair prejudice to Archer, and should be denied on that basis if the Court reaches this

7  issue.

8  If Wisk had been diligent in asserting its new DoE theory for the '833 patent █████████

9  ████████████████████████████, then Archer could have considering seeking a claim

10  construction to foreclose that theory early in the case, and thus avoid having to devote expert witness

11  resources to it before the parties reach summary judgment filings.  Wisk argues that Archer cannot be

12  prejudiced because Archer did not propose any terms from the '033 patent for construction, but again

13  Wisk gets it backwards.  Archer could not have known that Wisk was pursuing this specific DoE theory

14  until Wisk disclosed it, and thus Archer did not have a fair chance to consider whether to seek

15  construction during the regular *Markman* proceedings—for example, construction of the claim phrase

16  "positioned on the boom."  Wisk was required to set forth its DoE theories in its initial contentions

17  precisely to prevent the need for multiple rounds of claim construction.  *See, e.g.*, *Verinata Health*,

18  236 F. Supp. 3d at 1113 (denying plaintiff leave to amend regarding DoE theories and noting purpose

19  of contentions to prevent "shifting sands").  Thus Wisk's delay unfairly prejudices Archer.

20  Similarly, for the '033 patent, if Wisk had timely disclosed its new DoE theory that the claim

21  covers setting a charging current based on the fact of "the global maximum cell voltage *exceeding a*

22  *voltage threshold*" rather than setting a charging current based on the actual "global maximum cell

23  voltage" *itself*, then Archer could have considered seeking a construction during the regular *Markman*

24  proceedings and thus foreclose Wisk's DoE theory before expert discovery and summary judgment—

25  for example, construction of the claim phrase "setting the charging current based at least in part on the

26  global maximum cell voltage."  By failing to seek amendment until well after *Markman* proceedings,

27  Wisk has unfairly prejudiced Archer.

28

Gibson, Dunn &
Crutcher LLP

ARCHER'S OPPOSITION TO WISK'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS
CASE NO. 3:21-CV-02450-WHO (DMR)

## IV.  CONCLUSION

For the foregoing reasons, Archer respectfully requests that the Court deny Wisk's motion to amend in all respects except for Wisk's addition of citations to Electro.Aero documents and source code regarding alleged infringement by the Maker in connection with the ████ charger, Wisk's removal of allegations in connection with ████ charger, and Wisk's removal of the '328 patent (while Archer reserves its right to seek fees and costs for Wisk's meritless assertions).

DATED: September 6, 2022                        Respectfully submitted,

                                                GIBSON, DUNN & CRUTCHER LLP


                                                By:  */s/ Stuart M. Rosenberg*
                                                     Stuart M. Rosenberg

                                                *Attorneys for Defendant Archer Aviation Inc.*

Gibson, Dunn &
Crutcher LLP