Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Wisk Aero LLC ("Wisk") and Archer Aviation Inc. ("Archer") respectfully submit this joint letter brief regarding Archer's Requests for Production Nos. 176, 181, 183–184, 186, and 192 ("RFPs") and Requests for Admission Nos. 1–10, 13–24, 37–38, 41–42, 45–50, 55–56, 59–70, 73–74, 81–86, 95–106, 109–112, 121–200, 203–204, 213–224, 233–236, 243–248, 263–266, 269–270 ("RFAs"). *See* Exs. 1 & 2. The parties met and conferred via Zoom on May 11, July 6, and September 7, 2022. Fact discovery closed August 31, 2022 (excluding depositions); expert discovery closes January 25, 2023; dispositive motions are to be heard by April 26, 2023; and the pretrial conference and trial are set for June 26, 2023 and August 14, 2023, respectively.

**Archer's Statement.** Wisk brought this case alleging that its former employees misappropriated its alleged trade secrets when later employed at Archer—yet, Wisk categorically refuses to respond to discovery requests that test Wisk's bald assertions. In contrast to Wisk's generic contentions, the Archer RFAs and RFPs require Wisk to substantiate its claims with information—to the extent it has any—showing that the Archer employees that Wisk contends misappropriated its trade secrets *actually* authored, received, or accessed the trade secret documents cited in Wisk's Section 2019.210 Statement ("2019.210"). Dkt. 148-7. The information sought by these requests is directly relevant to Wisk's misappropriation claims, but Wisk has refused to produce *any* documents responsive to the RFPs, and it has refused to respond substantively to *any* of the RFAs, asserting in both cases that the requests are irrelevant and unduly burdensome. Neither argument is apposite.

Wisk's statement argues repeatedly (and inaccurately) that "the former Wisk employees' access to the trade secrets . . . is already beyond dispute." In fact, Archer's Interrogatory No. 11 asks Wisk to "identify all individuals … who at any time had access to" each trade secret, but Wisk's response does not identify a single individual. (Though it promised to provide a supplemental response by June 10, it later declined to do so.) But in any event, that assertion is irrelevant. These requests are focused on evidence of whether specific employees *in fact accessed* trade secret documents, not whether the employees generally *had access to* the purported secrets. Although either inquiry would be relevant, Archer chose to ask only one, and Wisk does not get to choose which to answer.

Wisk's misappropriation theory rests on the claim that current Archer employees knew the alleged trade secrets while employed at Wisk, and that they misappropriated the trade secrets by using them at Archer. Through Interrogatory No. 23, Archer sought to determine which of its employees Wisk alleges to have misappropriated specific trade secrets. In its response, Wisk identified six Archer employees in addition to Jing Xue. Separately, Wisk's 2019.210 cites 172 "exemplary documents which reflect and provide context for" the 20 remaining claimed trade secrets (124 of which are at issue in these requests). *Id.* at 1. Although Wisk argues that it had no obligation to cite *any* documents in its 2019.210, it nonetheless chose to do so, and in fact relied on those documents in defending the sufficiency of its 2019.210. *See* Dkt. 64 at 15. Wisk alleges that many of these documents were improperly downloaded, but, with only one exception (Jing Xue), Wisk has not identified *which* employees allegedly accessed or downloaded *which* documents.

*RFPs*.  Archer's RFPs concern the connection between the trade secret documents Wisk cites in its 2019.210 and the specific individuals who Wisk alleges misappropriated those trade secrets.

1

One of the trade secrets at issue in these requests, No. 15, is alleged to be a documented trade study reflected in a single document. If Wisk possesses evidence that Archer employees authored, received, or accessed this or the other documents purportedly reflecting Wisk trade secrets, that evidence is discoverable as relevant to Wisk's claims. Alternatively, if Wisk has no such documentary evidence, that information is directly relevant to Archer's defense. Archer's RFPs are also essential to determining which trade secret documents Archer's counsel may show to witnesses. The Protective Order ("PO") allows outside counsel to disclose information designated Attorneys' Eyes Only ("AEO") to "the *author* or *recipient* of a document containing the information or a custodian or *other person who otherwise possessed or knew the information* …." Dkt. 161 § 7.3(f) (emphasis added). Thus, a former Wisk employee who authored, received, or accessed a document designated AEO by Wisk may see that document. But only 29 of the 124 2019.210 documents at issue in the requests reflect any author(s) and/or recipient(s). If Wisk has other evidence that a former Wisk employee authored, received, or accessed a trade secret document, Archer is entitled to this information to position it to disclose specific, AEO-designated Wisk documents to specific witnesses (including for deposition preparation), per the PO. *See id.* Wisk mistakenly asserts that the Court's August 30, 2022 order moots the question of whether certain employees may be shown specific documents, but that order only concerns the 2019.210 and specific interrogatory responses, not documents produced by Wisk under the PO.

*RFAs*.  The RFAs at issue are, effectively, the flipside of the RFPs, as they seek to confirm the identities of those employees who Wisk contends were involved in the misappropriation of its trade secrets as set out in Wisk's response to Archer's Interrogatory No. 23, but as to whom Wisk has produced no documents in response to the RFPs. Thus, the RFAs request, on an employee-by-employee basis, that Wisk admit that: (1) the employee "was not the Author or a Recipient of" the 2019.210 documents associated with the specific trade secret(s) Wisk alleges the employee developed or misappropriated, and (2) Wisk has "no Record evidencing" that the employee "ever Accessed" those same documents. If answered properly, Archer suspects that the RFA responses would reveal that Wisk has no evidence that certain employees named in its interrogatory responses authored, received, or accessed the key trade secret documents cited in Wisk's 2019.210.

*Burden and Proportionality*.  Any burden associated with these requests is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b). After Archer served this discovery, Wisk narrowed its trade secret claims, and alleged in its supplemental response to Archer's Interrogatory No. 23 that Jing Xue and six other Archer employees were involved in the misappropriation of its alleged secrets. Archer thereafter proposed a compromise to limit the scope of the requests. *First*, Archer has limited its RFAs and RFPs to the requests which concern the 20 trade secrets still in the case. *Second*, with respect to the RFPs, Archer has further narrowed the scope of its requested relief to six RFPs (reduced from 18), each specific to an identified Archer employee who Wisk named in its response to Interrogatory No. 23. Further, as to each RFP, Archer has limited the scope of the requested production to "Documents, Communications, and Things evidencing" that the employee was "an Author or Recipient of, and/or otherwise Accessed" the documents cited in Wisk's 2019.210 *for the specific trade secret(s)* the employee allegedly developed (identified in Wisk's Interrogatory No. 1 response) and/or misappropriated (identified in Wisk's Interrogatory No. 23 response). That is in lieu of the original request for *all* of the documents cited in the 2019.210. That compromise reduced the total number of documents at issue in the RFPs from 517 to 124. *Third*, Archer likewise only seeks to enforce 180 of the 422 RFAs it initially served—those that concern (i) the six individuals named in Wisk's Interrogatory No. 23 response and (ii) the

documents associated with the specific trade secrets they allegedly developed or misappropriated.

The requests concern the relationship between the specific employees and trade secret documents that Wisk has placed at the center of its case, and thus the requested responsive information bears directly on its misappropriation claims. Wisk's proportionality argument suffers from two specific flaws. *First*, Wisk repeatedly argues that it is irrelevant whether Archer employees *access**ed*** specific Wisk documents because Wisk considers it clear that those employees *had access* to the trade secrets. But the absence of evidence that an Archer employee accessed a trade secret document need not be fatal to Wisk's claims to be relevant; whether Wisk possesses such evidence will make the alleged fact of misappropriation "more or less probable" than it would be otherwise, thus satisfying the test of Rule 401. Indeed, in one instance where it actually has such evidence (as to Jing Xue), *Wisk* has emphasized the significance of his having accessed purported trade secret documents. *See* Dkt. 148 at ¶¶ 63–70. If such evidence strengthens Wisk's case, then the lack of such evidence weakens Wisk's case and strengthens Archer's defense. Although Wisk argues it has produced documentary evidence which purportedly shows employees knew "the trade secret information," this evidence is ***not*** responsive to Archer's requests, which are person-, document-, and trade secret-specific. Archer is entitled to know whether Wisk has evidence showing that Archer employees who allegedly misappropriated specific trade secrets in fact *accessed* the documents Wisk contends are key to understanding those trade secrets. Under Wisk's approach, Wisk may introduce evidence for the first time at trial that an Archer employee in fact accessed one of these key documents. Such blindsiding should not be permitted.

Contrary to Wisk's characterization, many of the RFAs do not require any additional investigation, specifically those that ask Wisk to admit that it has "no Record evidencing that [the employee] ever Accessed the document." These RFAs are intended to identify facts actually known to Wisk; they do not require Wisk to take any position with respect to a fact unknown to them, except that Wisk does not know that fact. And if Wisk admits an RFA and later discovers a Record that would have given it a basis to deny, then Wisk may seek to amend its answer.

**Wisk's Statement.**

The numerous requests at issue here are highly burdensome and of little to no relevance. Archer has focused on documents cited as examples of Wisk's trade secrets, and demands evidence that former Wisk employees accessed those specific documents. But the former Wisk employees' *access to the trade secrets*—which is the basis of Wisk's claim—is already beyond dispute. Wisk has already produced documents showing these employees had access to and knowledge of Wisk's trade secrets. *See, e.g.*, Archer's RFP Nos. 166-174. The evidence called for by these requests cannot change that fact; making a point out of one document does not change the story as to any other document. These requests are irrelevant and disproportionate to the needs of the case.

That the Former Wisk Employees Had Access and Knowledge of the Trade Secrets Is Established. As Archer knows, there is no doubt that the former Wisk employees had access to and knowledge of Wisk's trade secrets as required by Cal. Civ. Code § 3426; in fact, they were involved in the work to develop the trade secrets at issue. For example, Diederik Marius was a Senior Electrical Engineer at Wisk, and wrote the code to model and optimize the motor design at Wisk [trade secret 12]. Similarly, Tom Muniz was Vice President of Engineering at Wisk, Johnny Melack was Director of Engineering for Aircraft Systems at Wisk (Melack Dep. 28:11-15, Aug. 24, 2022), and Scott Furman was Chief Avionics Architect at Wisk (Furman Dep. 17:19-22); all had access to

and knowledge of the trade secrets as they worked to develop Wisk's aircraft. The others were senior engineers at Wisk, and also had knowledge of the trade secrets.

Wisk has produced ample documentary evidence that the employees featured in Archer's requests knew of (and in many cases retained after they left Wisk) the trade secret information. *See, e.g.*, WISK00135767 at Appendix C (showing S. Furman's knowledge of the design for low voltage power supply system [trade secret 42] and details of avionics architecture and system [trade secret 44]); WISK00058019 (showing T. Muniz and D. Marius knew about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ); JM-000084 (J. Melack retained document with schematics for motor control algorithms and architecture [trade secret 17]) ); Marius Dep. 276:08-278:24. Aug. 11, 2022 (D. Marius retained Wisk code for motor optimization [trade secret 12] in personal files). Jing Xue, not even mentioned in the requests, certainly had knowledge of trade secrets and was caught downloading thousands of Wisk's technical documents in preparation for his employment at Archer. At least six other former Wisk employees at Archer retained Wisk technical documents as well. *See* AC-000695 (A. Chen); GB-000078 (G. Bower); PdP-000130 (P. DePape); RM-000167 (R. Moore); SF-000497 (S. Furman); SW-000031 (S. Wong). Archer has even admitted that several categories of Wisk documents are in its possession. *See* Archer's Fourth Am. Resp. to Wisk's Interrogatory No. 1. Archer claims Wisk did not identify "a single individual" in response to Interrogatory No. 11. But Wisk properly identified whole categories of people at Wisk (engineers, employees, etc.) who had access to the trade secret information.

<u>These RFAs and RFPs Have No Evidentiary Value</u>. To suggest that whether employees "in fact accessed specific trade secret documents" is relevant, Archer claims these documents are what "Wisk contends are key to understanding those trade secrets"—but Wisk never suggested anything like that. The documents were cited as examples in Wisk's 2019.210 statement and were *not* a list of every document reflecting the trade secrets. All of the supporting documents in the 2019.210 statement (including for trade secret 15 Archer cites) are merely exemplary, which is not surprising given the nature of technical development in a large engineering organization.

There are many other documents that happen to reflect the trade secrets,[1] and other ways Wisk employees knew about the trade secrets (e.g., if they developed them). Whether an individual accessed a specific *document* does not make it less likely that he or she misappropriated or knew of Wisk's *trade secrets* that he or she otherwise had access to. To use an analogy, an admission that a bank robber did not "access" a specific dollar bill is meaningless when it is undisputed that the robber had access to the vault and may have accessed many other dollar bills not asked about.

Similarly, the RFPs each request *all evidence* that "[a specific employee] was an Author or Recipient of, and/or otherwise Accessed, any document(s) cited in the 2019.210 Statement." But such evidence, even if collected, would be eclipsed by the broader question of whether they had access to and/or knowledge of *the trade secrets*, which we already know they did.

<u>These Requests Are Highly Burdensome.</u> To determine whether a given employee accessed a

---

[1] Wisk only "relied" on these documents to augment the trade secret descriptions in its Section 2019.210 disclosure, and make sure there was no question they identified the trade secrets with reasonable particularity such that defendant Archer could clearly discern the trade secrets it was accused of misappropriating. *See* Cal. Code Civ. Proc. § 2019.210; *see also Comp. Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 986 (S.D. Cal. May 25, 1999). Contrary to Archer's suggestion, Wisk has not relied on the documents for any other purpose in this litigation.

specific document—as opposed to a specific trade secret more generally—Wisk would need to manually review each document several ways, on a custodian-by-custodian basis.  First, Wisk would need to manually log into its audit tool using each employee's credentials, and search for the document in that person's edit and download history. But this would not show whether an employee ever reviewed a document without making edits, or received it in an email or in hard copy form.  Second, Wisk would need to open its internal logs for each document, and analyze the document history to determine if it was ever opened by an employee.  Still, Wisk would not know whether an employee received a document via email or in hard copy, which is necessary to answer Archer's inquiries accurately.  Third, to determine whether it was received by email, Wisk would need to search in the employee's email for the document name, and for any prior names or previous versions.  This would still not address whether the employee (none of whom are available to Wisk at present) saw a hard copy of the document.  Archer seeks credit for finally narrowing its demand for compliance with its RFAs and RFPs to just the exemplary documents for Wisk's narrowed list of trade secrets, but going through all of the above steps for even this narrowed list would cost  as much as $69,000, just in out-of-pocket vendor costs alone.  That is not speculation: Wisk has obtained an updated cost estimate for responding to these RFAs and RFPs, which Wisk will file under seal if it would assist the Court.  Archer's supposed compromise reflects more on the completely over-the-top nature of its original request and its prior refusal to even limit its ask to Wisk's narrowed trade secrets list.  There are still 124 documents to inspect (using the multi-step process described above), for six different custodians, and 180 RFAs to respond to.

Wisk *cannot* answer these RFAs without investigation. Wisk may have a record that the employees in question authored, received, or accessed these particular documents, but it has not already investigated that issue, as Archer contends; why would it?  It has already shown Archer's employees had access to, and knowledge of, Wisk's trade secrets.  Investigating whether any particular document—out of many that contain the trade secret—was accessed by any one particular employee, at any time in Wisk's history, is burdensome and irrelevant.  Wisk's case rests on showing that its former employees had access to *the trade secrets*, not to a random, exemplary subset of documents that may illustrate them.

Weighing Burden and Benefit, The Discovery Should Not Be Compelled.  Wisk has already produced 73,079 documents totaling 668,806 pages, and has responded to 185 other RFPs and 25 interrogatories. The interrogatory responses collectively span hundreds of pages.  And the requests at issue here do not narrow the case or provide any other useful function, as any conclusion drawn from them is eclipsed by the established fact that Wisk's former employees had more than sufficient access to the trade secrets to misappropriate them. Whatever minimal probative value the discovery sought here might have is vastly outweighed by its burden, and Wisk should not be compelled to respond.  *See* Fed. R. Civ. P. 26(b)(2)(B); *see also Kahlenberg v. Bamboo IDE8 Ins. Servs.*, LLC, No. 220CV06805FLAPDX, 2021 WL 8693114 at *4-*6 (C.D. Cal. May 19, 2021) (denying motion to compel where burden of searches outweighed relevance).

Archer speculates this discovery would reveal whether its employees may be shown certain documents.  Wisk disagrees that documents reflecting its trade secrets may be disclosed to Archer employees, even if they authored the documents.  A Court in this district rejected Archer's interpretation of a substantively identical protective order (based on the N.D. Cal. Model Order).  *See  UCAR, Inc. v. Yan Li,*, No. 17-cv-01704 EJD (NC), Dkt. 135 (letter brief); Dkt. 142 (order).  Even if this were not the case, this supposed benefit would not justify the burden here.

Given the utter lack of proportionality here, the Court should deny Archer's request.

DATED: September 9, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By <u>/s/  Yury Kapgan</u>
Yury Kapgan
Robert M. Schwartz
Michael T. Zeller
Diane Cafferata
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By <u>/s/  Josh A. Krevitt</u>
Josh A. Krevitt
Daniel J. Thomasch
Wayne Barsky
Paul Torchia
Michael H. Dore
Diana M. Feinstein
*Attorneys for Defendant Archer Aviation Inc.*

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Josh A. Krevitt*

Josh A. Krevitt
