QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Michael F. LaFond (Bar No. 303131)
michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| WISK AERO LLC, | Case No. 3:21-cv-02450-WHO |
|---|---|
| Plaintiff, | Honorable: William H. Orrick |
| vs. | **PLAINTIFF WISK AERO'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** |
| ARCHER AVIATION INC., | |
| Defendant. | Hearing Date: September 28, 2022<br>Hearing Time: 2:00 p.m.<br>Hearing Location: Courtroom 2 Honorable Judge William H. Orrick |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.    GOOD CAUSE EXISTS FOR THE '033 PATENT AMENDMENTS ............................... 1

       A.    [REDACTED] ................. 1

       B.    Wisk Was Diligent In Seeking Leave To Amend Its Contentions ........................... 3

       C.    Wisk Was Diligent In Seeking Leave To Amend Its Contentions To Refine Its Doctrine of Equivalents Argument ............................................................... 4

       D.    Archer Will Not Be Prejudiced By Wisk's Amendments ........................................ 4

II.    GOOD CAUSE EXISTS FOR THE '833 PATENT AMENDMENTS .............................. 6

       A.    [REDACTED]

       B.    Wisk Was Diligent In Seeking Leave To Amend Its Contentions With Archer's Newly Produced Documents ................................................................. 10

       C.    Wisk Was Diligent In Seeking Leave To Amend Its Contentions To Refine Its Doctrine of Equivalents Argument ............................................................. 12

       D.    Archer Is Not Prejudiced By The Proposed Amendment ...................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

### Cases

*3D Systems, Inc. v. Aarotech Laboratories, Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998) .................................................................................. 10

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. 2012) .......................................... 2

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*,
    16 F.3d 394 (Fed. Cir. 1994) ........................................................................................ 4

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) .................................................................................... 5

*Fluidigm Corp. v. Ionpath, Inc.*,
    2020 WL 5073938 (N.D. Cal. Aug. 25, 2020) ............................................................... 6

*GE Harris Ry. Electronics, L.L.C. v. Westinghouse Air Brake Co.*,
    2004 WL 1854198 (D. Del. Aug. 18, 2004) ................................................................ 10

*Putnam v. Citigroup Global Mkts., Inc.*,
    No. 09-02230, 2010 WL 1460241 (N.D. Cal. Apr. 7, 2010) .......................................... 5

*Rembrandt Patent Innovations, LLC v. Apple Inc.*,
    2015 WL 8607390 (N.D. Cal. Dec. 13, 2015) ............................................................... 6

*Richtek Tech. Corp. v. uPi Semiconductor Corp.*,
    2016 WL 1718135 (N.D. Cal., Apr. 29, 2016) .............................................................. 6

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000) .................................................................................... 9

*Shared Memory Graphics LLC v. Apple, Inc.*,
    812 F. Supp. 2d 1022 (N.D. Cal. 2010) ........................................................................ 7

*Vasudevan Software, Inc. v. International Business Machines Corp.*,
    2011 WL 940263 (N.D. Cal. Feb. 18, 2011) ............................................................... 11

*VirnetX Inc. v. Apple Inc.*,
    2019 WL 6247818 (Fed. Cir. 2019) ............................................................................. 5

**INTRODUCTION**

Archer spends most of its Opposition urging this Court to deny Wisk's Motion to Amend on the ground that its production aircraft ▮▮▮▮▮▮▮▮▮▮ Even crediting Archer's vague and conclusory assertions regarding the status of ▮▮▮▮▮▮▮▮▮▮, such statements are irrelevant. It is undisputed that the '033 and '833 patents at issue in this case are not directed at an entire aircraft, but rather the charging system and boom assembly, respectively, for the aircraft. ▮▮▮▮▮▮▮▮▮▮

As to the relevant question, Archer's Opposition is most notable for what it fails to challenge and what it chooses to omit. For the '033 patent, ▮▮▮▮▮▮▮▮▮▮ For the '833 patent, Archer similarly ignores documents and testimony from its witnesses indicating that the boom design ▮▮▮▮▮▮▮▮▮▮ Tellingly, Archer chose not to submit any declaration to support its assertions regarding the status of the specifically accused technology. And although not necessary at the infringement contention stage, Wisk has shown that Archer has already committed infringing acts by offering to sell ▮▮▮▮▮▮▮▮▮▮ The Court should grant Wisk's Motion.

**ARGUMENT**

**I.    GOOD CAUSE EXISTS FOR THE '033 PATENT AMENDMENTS**

▮▮▮▮▮▮▮▮▮▮

Archer urges the Court to deny Wisk's proposed amendment because allegedly ▮▮▮▮▮▮▮▮▮▮ Opp. at 6.[1] Archer's argument is a red herring. The '033 patent claims are not directed to an entire aircraft, but rather the charging system of the aircraft. Asserted Claim 19,

---

[1] Archer fails to support its assertions regarding the state of the ▮▮▮▮▮▮▮▮▮▮ with evidence.

1 | for example, recites a "computer readable storage medium comprising computer instruction" to
2 | perform charging. ▮▮▮
3 | ▮▮▮
4 | ▮▮▮
5 | ▮▮▮
6 | *See* Mot. at 20. ▮▮▮
7 | ▮▮▮
8 | ▮▮▮ Mot. at 3-4; *see also* ▮▮▮
9 | Whether or not certain other elements of ▮▮▮
10 | ▮▮▮.
11 |     Tacitly recognizing that its focus on the overall development status of the ▮▮▮ is
12 | irrelevant, Archer also argues that it does not "make or sell the ▮▮▮," and has yet to
13 | import them into the United States. Opp. at 10-11. But Archer does not point to any authority holding
14 | that a patentee must prove an infringing act at the infringement contention stage. Archer also fails to
15 | meaningfully distinguish the *Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. CV 12-00630 LHK,
16 | 2012 WL 5632618, at *3 (N.D. Cal. 2012) decision cited by Wisk, which involved a situation similar
17 | to the one here. Mot. at 17. Archer claims that *Apple* is distinguishable because "the decision there
18 | concerned a motion to amend infringement contentions filed '[a]fter the release of the United States
19 | version' … Here there has been no such release." Opp. at 8. However, Archer's argument ignores the
20 | fact that in *Apple* the defendant was allowed to include "unreleased versions" of the iPhone and iPads
21 | in its contentions that had "recently been announced by Apple." *Apple*, 2012 WL 5632618, at *1.
22 | Similarly, the plaintiff "previously file[] infringement contentions against the Samsung Galaxy S III

---

[2] Archer argues that Wisk changed its definition of the ▮▮▮ Opp. at 13, *citing* Mot. Ex. B. But, Wisk's original infringement charts focused on the charging systems utilized with the ▮▮▮

based on the United Kingdom version of the device" (in advance of the United States release) and was simply seeking leave to account for deviations between the product initially released abroad and the product ultimately released in the United States. *Id.* at *3. Thus, the *Apple* case demonstrates that parties may chart products in their infringement contentions, even prior to their release. ▮

▮

▮

▮   Archer's importation of the ▮

▮

▮

▮

▮

### B. Wisk Was Diligent In Seeking Leave To Amend Its Contentions

Archer does not (and cannot) dispute that Wisk was diligent in obtaining discovery regarding ▮ *See* Opp. at 12-13. It is undisputed that ▮ after Wisk served its original infringement contentions and ▮

▮

▮ It is also undisputed that after learning of ▮ ▮—less than two months before Wisk served its proposed amendments—Wisk diligently conducted an in-depth analysis of the source code needed to determine whether the ▮ ▮ *See* Mot. at 15-16. Wisk's Motion cited to multiple decisions in this District that have found time periods of this length, or longer, to be reasonable for seeking to add additional products to infringement contentions. *Id.* Archer fails to distinguish any of these authorities, as they relate to the amendment for the '033 patent. In fact, Archer essentially argues that Wisk has been overly diligent ▮

### C. Wisk Was Diligent In Seeking Leave To Amend Its Contentions To Refine Its Doctrine of Equivalents Argument

Wisk showed that its proposed Doctrine of Equivalents ("DoE") amendment for the '033 patent merely refines its existing DoE theory in view of the source code that Wisk recently obtained from Electro.Aero. Mot. at 18-19. Archer does not dispute that Wisk was diligent in obtaining source code from Electro.Aero for the accused charging systems. Nevertheless, Archer argues that "Wisk could have made this change a year ago if it had wanted to do so" because the amendment is not "accusing anything specific in the Electro.Aero discovery." Opp. at 18. Archer is wrong.

As the Federal Circuit has recognized, a DoE analysis is performed in view of the details and functionalities found in the "accused device." *See, e.g.*, *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 397 (Fed. Cir. 1994) ("An accused device may infringe a claim under the doctrine of equivalents if it performs substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result."). According to Archer's argument, Wisk should have been expected to characterize the precise contours of its DoE theory at the outset, without the benefit of highly relevant technical information and Archer's contentions regarding its patent defenses. Unsurprising, Archer fails to support this position with any persuasive legal authority.

Here, Wisk's DoE amendment relies upon details regarding the operation of the accused products that were not available at the time Wisk served its initial infringement contentions, including specific source code and Archer interrogatory responses. *See* Dkt. No. 312-3 at 91. And while Archer focuses on slight modifications to Wisk's articulation of the function, way, result test, those modification simply clarify that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### D. Archer Will Not Be Prejudiced By Wisk's Amendments

Archer cannot show that it would suffer prejudice if Wisk's amendments are granted. First, Archer argues that Wisk presents a new theory under which the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Archer argues that this new theory *may* require it to "consider new claim construction" positions and "invalidity contentions," although Archer provides no specific construction or invalidity

1  arguments it would add. *Id*. Archer's claim of prejudice should be denied on these grounds alone.

2  In any event, Archer's argument does not withstand scrutiny, because the "intended use" of the invention is irrelevant to liability here. The asserted claims of the '033 patent include apparatus claims—for example, Claim 19 recites a "computer readable storage medium comprising computer instruction" that can charge batteries connected to a common bus. It is black-letter law that an apparatus claim is infringed by a device that includes computer code capable of performing the claimed feature, regardless of whether that computer code is used. *See VirnetX Inc. v. Apple Inc.*, 2019 WL 6247818, *9-*10 (Fed. Cir. 2019) ("Claim 13 requires a computer readable medium, not the underlying process itself, so infringement 'do[es] not require the performance of any method steps.' When it is 'undisputed that software for performing the claimed functions existed in the products when sold,' infringement occurs when the party sells those products.") (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). Put another way, Archer's "intended use" of the charger is irrelevant to Wisk's infringement theories, and has no bearing on claim construction or invalidity.

Also, contrary to Archer's assertions, Wisk's infringement theories for the ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ *See, e.g.*, *Putnam v. Citigroup Global Mkts., Inc.*, No. 09-02230, 2010 WL 1460241, at *2 (N.D. Cal. Apr. 7, 2010 (rejecting party's claim of prejudice when the alleged prejudice was "self-imposed").

Second, Archer argues that it would be prejudiced because "fact discovery has *already closed* as of August 31, and the remaining time in fact discovery is only for completing depositions." Opp. at 16 (emphasis in the original). But Wisk provided Archer with its proposed amendments on July 28, 2022—more than four months before the deadline for opening expert reports on December 7, 2022; more than three months before the close of deposition discovery on November 7, 2022; more than one

1  month before the close of document discovery on August 31, 2022; and weeks before the deposition
2  of Electro.Aero on August 11, 2022. Dkt. No. 303 (Scheduling Order). There is nothing stopping
3  Archer from developing its defenses to Wisk's contentions, especially since, as mentioned, ▮
4  ▮

5        Third, and finally, Archer cites *Richtek Tech. Corp. v. uPi Semiconductor Corp.*, 2016 WL
6  1718135, at *3 (N.D. Cal., Apr. 29, 2016), and *Rembrandt Patent Innovations, LLC v. Apple Inc.*,
7  2015 WL 8607390, at *3 (N.D. Cal. Dec. 13, 2015), to argue that "it is time for the case to narrow, not
8  expand." Both cases are easily distinguishable. In *Richtek*, the court expressed concern about the
9  "sluggish pace of the litigation due to a series of mandatory stays pending the resolution of
10 proceedings at the ITC," and in *Rembrandt* the plaintiff had made the case "increasingly
11 unmanageable" through "repeated amendments to its infringement contentions." *Id*. Neither of these
12 situations is at issue here. In fact, absent these circumstances, the author of the cited opinions (Judge
13 Alsup) has permitted a party to add new infringement theories to a case just two months before the
14 deadline for summary judgment briefing in a "patent showdown." *See, e.g., Fluidigm Corp. v.
15 Ionpath, Inc.*, 2020 WL 5073938, *5 (N.D. Cal. Aug. 25, 2020) (concluding that two months provides
16 a defendant sufficient time to analyze and prepare its defenses for the showdown). Here, Wisk's
17 amendments do not seek to add new theories of infringement, but merely add another device that has
18 the same accused functionality as the already accused charging system. As a result, Archer's analysis
19 in defending against Wisk's contentions should remain largely the same.

20 **II.   GOOD CAUSE EXISTS FOR THE '833 PATENT AMENDMENTS**
21     **A.**   ▮

22       As was the case for the '033 patent, Archer primarily objects to Wisk's '833 amendments on
23 the grounds that they address newly produced evidence of features on Archer's production aircraft,
24 ▮   Wisk's inclusion of newly produced evidence relating ▮
25 ▮   From the original complaint, Wisk expressly identified the eVTOL aircraft that Archer
26 sold and/or offered for sale to United as an accused product. Dkt. 1 at ¶¶ 118-121. After Wisk
27 learned during the preliminary injunction phase that the ▮
28 ▮

1
2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Archer's use of the infringing technology across *all* of its
3  various iterations of eVTOL aircraft has always been the focus of this case.
4  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But, the
6  premise of this argument is flawed. The '833 patent is not directed to the entire aircraft, but rather to a
7  "rotor mounting boom assembly." *E.g.*, '833 patent, claim 1. The claim charts supporting Wisk's
8  infringement contentions have always focused on this specific aspect of Archer's technology.[3] Mot.
9  Ex. Q. The relevant question is not the development status of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[4]

11  As discussed in Wisk's Opening Motion, the record evidence demonstrates that Wisk
12 *specifically* accused the rotor mounting boom assembly, as well as the boom-motor interface. Both
13 are well-defined and at an advanced stage of development. *See* Mot. Ex. C, at 50, *citing* ▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Shared Memory*
19 *Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (holding that the relevant

---

[3] Archer argues that Wisk changed its definition of the "Accused Instrumentality" to accuse "mere booms." Opp. at 13, *citing* Mot. Ex. D. As with the '033 patent, *supra* n.2, this argument elevates form over substance. Wisk's original infringement charts focused entirely on the boom technology of the Maker, which of course is all that is required by the plain language of the claims. Nevertheless, during meet-and-confer, Archer seized on language in Wisk's original claim charts to suggest that Wisk had somehow conceded that infringement requires an entire aircraft. This is clearly wrong from a simple reading of the patent claim and analysis of Wisk's element-by-element mapping. To address Archer's objection, Wisk's amendment simply proposes redlines to more precisely define "Accused Instrumentality," consistent with the claim language and Wisk's original, substantive infringement theory. Mot. Ex. D, at 1.

[4] Archer's Opposition repeatedly attempts to conflate the status of development of the *specific* infringing functionality, with the development of the aircraft as *a whole*. Mot. at 6, citing Ex. W at 417:15-418:8 (describing development status for entire aircraft).

inquiry under P.L.R. 3-1 is whether the infringement contentions are sufficient to "provide reasonable notice" to the defendant why the plaintiff believes it has a "reasonable chance of proving infringement.").

Tellingly, Archer cites to no documents, declaration, or other testimony that would indicate the specific features accused in Wisk's proposed amendment do not accurately reflect ███████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████
██████████████████
█████████████████
████████████████████████████
████████████████████
████████████████
██████████████████
███████████████████
█████████████████████
████████████████████████████

---

[5] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

1  ████████████████████████████████████████████████████████████████
2  ████████████████████████████████
3  Any doubt regarding the maturity of ███████████████████████████████
4  ████████████████████████████████████████████████████████  Since
5  the filing of the Opening Motion, Wisk deposed Archer engineer John Melack who confirmed ██
6  ████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████
20 ███████████████████████████████████████████████████████████████.

21  Finally, Archer is wrong that its executed contract with United Airlines—including its receipt
22 of a $10 million pre-delivery payment—is not relevant to the analysis. While Archer argues that an
23 "offer for sale" under Section 271(a) must "specif[y] the provision of allegedly infringing products," it
24 fails to cite a single case standing for this proposition. In actuality, "offers to sell" should be judged
25 "according to the norms of traditional contractual analysis." *Rotec Indus., Inc. v. Mitsubishi Corp.*,
26 215 F.3d 1246, 1255–56 (Fed. Cir. 2000). An "offer for sale" may be actionable under Section
27 271(a) even where the "four corners" of the offer "do not contain a precise definition of the
28 [infringing] technology," so long as the facts and circumstances indicate that what was offered

1  includes technology covered by the patent. *See GE Harris Ry. Electronics, L.L.C. v. Westinghouse
2  Air Brake Co.*, 2004 WL 1854198, *10–11 (D. Del. Aug. 18, 2004) ("Although the four corners of the
3  offer do not contain a precise definition of the FreightCorp 90 technology, an examination of the
4  undisputed facts and circumstances involved in the QR proposal, reveal that it is explicitly an offer to
5  sell an RF distributed power system with options for hard-wired distributed power."). Of course, one
6  purpose of "offer for sale" liability is to prevent infringers from "generating interest in a *potential*
7  *infringing* product to the commercial detriment of the rightful patentee," *3D Systems, Inc. v. Aarotech*
8  *Laboratories, Inc.*, 160 F.3d 1373, 1375 (Fed. Cir. 1998), which is exactly what Archer has done
9  through its press releases touting its deal with United. Dkt. 1 ¶ 118. In sum, Archer's contract for
10 delivery of specific quantities, at specific prices of its ███████████████████████
11 ███████████████████████████████████████████████████████████████████████
12 ███████████████████████████ establish that Archer has already committed an infringing act.
13 This confirms that Wisk's allegations are ripe for resolution in this action, and weighs in favor of
14 allowing the amendment.

15      **B.   Wisk Was Diligent In Seeking Leave To Amend Its Contentions With Archer's Newly Produced Documents**

17      Despite initially arguing that the design of its ███████████ remains too early and uncertain
18 to support an infringement allegation, Archer goes on to argue that Wisk did not move quickly enough
19 in seeking leave to amend. The tension between these two arguments is glaring. As shown below,
20 Wisk has contended from the start that Archer's production aircraft likely infringes based on evidence
21 from the demonstrator, and it moved to amend its contentions shortly after Archer produced the
22 technical information confirming that fact.

23      Archer first argues that Wisk should have sought leave to accuse ███████████████
24 ███████████████████████████████████████████████████████████████████████ But,
25 Archer ignores that the originally served infringement contentions *did* accuse Archer's ███████
26 ███████████████████████████████████████████████████████████████████████
27 ███████████████████████████████████████████████████████████████████████
28 ███████████████████████████████████████████████████████████████████████

1. ███████████████████████████████████████████████████████████████████ Archer
2. never sought to strike or otherwise challenge these assertions.
3.   To be sure, Wisk's initial contentions relied upon technical evidence regarding the Maker
4. aircraft because that was all that Archer had produced at the time. In fact, Archer cannot identify *any*
5. produced technical information pertaining to the accused functionality █████████████████
6. ████████████████████████████████████████████████████████████████████████
7. ████████████████████████████████████████████████████████████████████████
8. ████████████████████████████████████████████████████████████████████████
9. ████████████████████████████████████████████████████████████████████████
10. ████████████████████████████████████████████████████████████████████████
11. ████████████████████████████████████████████████████████████████████████
12. ████████████████████████████████████████████████████████████████████████
13. ████████████████████████████████████████████████████████████████████████
14. ████████████████████████████████████████████████████████████████████████
15. ████████████████████████████████████████████████████████████████████████
16. ████████████████████████████████████████████████████████████████████████
17. ██████. *Supra* Section II.A.
18.   ████████████████████████████████████████████████████████████
19. ████████████████████████████████████████████████████████████████████████
20. ████████████████████████████████████████████████████████████████████████
21. ████████████████████████████████████████████████████████████████████████
22. ██████████████
23.   Archer's Opposition argues that Wisk's Opening Motion did █████████████
24. ████████████████████████████████████████████████████████████████████████
25. ██████████████████████████████. But that is also wrong. Wisk's Opening Motion (at 10, lines 20-
26. 21) cited specifically to its proposed amended claim chart with a pinpoint bates number citation
27. ████████████████████████████████████████████████████████████████████████
28. ████████████████████████████ proposed amended claim charts repeatedly cite to the figure

1  depicting this configuration and explain how it meets the limitations of the asserted claims. ▮

2  ▮

3  ▮

4  ▮.

5  Finally, Wisk was also diligent in seeking the deposition of Diederik Marius, ▮

6  ▮

7  ▮ Archer's suggestion that Wisk should have deposed Mr. Marius earlier lacks merit. Wisk

8  obviously could not have questioned Mr. Marius regarding the recently disclosed designs before it

9  received the documentation on July 6. In any event, it is undisputed that Wisk first noticed Mr.

10 Marius' deposition on June 10, and then worked diligently to schedule the deposition, which was

11 postponed for reasons beyond Wisk's control until August 11. ▮

12 ▮

### C. Wisk Was Diligent In Seeking Leave To Amend Its Contentions To Refine Its Doctrine of Equivalents Argument

Wisk was also diligent in seeking to amend its DoE theory for element 1[c] (against the Maker) and for element 1[e] ▮ These amendments seek to refine Wisk's DoE allegations, to better address what Wisk now understands to be Archer's non-infringement arguments. ▮

▮

▮

▮

▮

▮

▮

▮

▮

▮

1  ▮
2  ▮
3  ▮
4  Regarding element 1[e], contrary to Archer's argument, Wisk's original infringement contentions *did* disclose its intent to rely upon a DoE theory ▮ ▮. At that time, however, Wisk could not have possibly articulated its DoE theory in a manner responsive to Archer's non-infringement position, because Archer had not produced *any* information ▮ ▮ ▮ ▮ Archer's Opposition does not dispute that Wisk lacked any basis for understanding Archer's non-infringement position until recently. Thus, Wisk was diligent, and there is good cause for permitting the amendment to the DoE theory for limitation 1[e].

### D. Archer Is Not Prejudiced By The Proposed Amendment

Archer identifies no real prejudice with the Court allowing the '833 patent amendments. Archer's argument that it would be "forced to commit to non-infringement defenses for a product before it even exists," Opp. at 14, lacks credibility, particularly given how Archer goes out of its way in the Opposition to detail its non-infringement position, complete with citations to its own witness testimony. Opp. at 3, 15 ▮ Archer also asserts prejudice on the basis that it "did not have a fair chance to consider whether to seek construction" of the term "positioned on the boom" during Markman proceedings. Opp. at 19. Not true. Archer not only had a "fair chance" to consider a construction for this claim term, it actually proposed: "an air inlet positioned on the boom such that airflow generated by the rotor is directed through the air inlet" as a term for construction in its November 8, 2021 P.L.R. 4-1 disclosure. Ex. D (November 8, 2021, P.L.R. 4-1 disclosure) at 1. ▮
▮
▮

████████████████████████████████

## CONCLUSION

For these reasons, and those stated in the Opening Motion, Wisk respectfully requests that the Court grant leave for Wisk to serve its proposed amended infringement contentions.

DATED: September 13, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Patrick T. Schmidt
Patrick T. Schmidt
Attorneys for Plaintiff Wisk Aero LLC