UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ARCHER AVIATION INC.,<br><br>    Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**ORDER GRANTING LEAVE TO SERVE AMENDED INFRINGMENT CONTENTIONS**<br><br>Re: Dkt. No. 312 |

Plaintiff Wisk Aero LLC ("Wisk") filed this Motion for Leave to Amend Infringement Contentions ("Mot.") [Dkt. Nos. 311, 312] to amend its allegations against Archer Aviation Inc. ("Archer") regarding two patents: U.S. Patent no. 10,110,033 ("the '033 patent"), concerning the battery charging system, and U.S. Patent no. 9,764,833 ("the '833 patent"), concerning the ventilated rotor mounted on the aircraft boom. Wisk seeks to amend based on purportedly new information it acquired during discovery from Archer, Archer's Australian supplier Electro.Aero, and the deposition testimony of Archer (formerly Wisk) engineer, Diederik Marius. Archer stipulates to some of the minor amendments but objects to the more significant changes, citing lack of good cause and unfair prejudice.

Because Wisk does not assert new theories of infringement, and because it filed its amendments within two or three months of receiving relevant and previously nonpublic information, Wisk sufficiently established good cause and diligence to amend its contentions. At this point there is no prejudice to Archer, particularly because none of the amendments assert new theories or seem to require new discovery. For the following reasons, I GRANT the motion.

**BACKGROUND**

This is an ongoing trade secret and patent infringement dispute between Wisk and Archer.

This order assumes familiarity with the case and prior orders, and only recounts the factual and procedural background to the extent necessary to consider this motion.

Wisk previously alleged that Archer's battery charging system infringes the '033 patent, through its design ▓▓▓ and source code, and under the Doctrine of Equivalents ("DOE"). The initial allegations detailed Archer's use of ▓▓ ▓▓ charging systems in its Maker aircraft. Mot. 1:15-19. In June 2022 during discovery, Wisk learned that Electro.Aero, an Australian corporation, sold Archer ▓▓ charging system, and Wisk also received from Electro.Aero documents containing the source code for Archer's ▓▓ systems. Mot. 5:3-5; 5:27-6:3; 6:21-22. In a subsequent deposition of Electro-Aero's corporate executive, Wisk learned that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. 2:1-4; *see also* Mot. 3:24-4:9; 7:15-22; Mot. Hefazi Decl. In that same deposition, the corporate representative testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓

Wisk's proposed amendments identify the ▓▓ charging systems, allege ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ add citations to the newly produced documents, quote the source code to show it is nearly identical to the prior code, and refine explanations of the DOE theory.[1] Mot. 7:4-14; Reply in Support of Motion for Leave to Amend ("Repl.") [Dkt. Nos. 332, 333] 5:15-23; *see also* Mot. Ex. B (redline changes). Archer also noted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Mot. Ex. W 417:22-418:14. In response, Archer contends that the amendments are unripe because ▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opposition to Motion for Leave to Amend Infringement Contentions ("Oppo.") [Dkt. Nos. 321, 322] 1:5-19; 6:16-8:18. Archer also argues that the amended contentions cannot apply to ▓▓

---

[1] Wisk also removed allegations that the ▓▓ charging system infringes the patent, after learning that it ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. 3:17-23. The removal is uncontested. Oppo. 1 n.1.

1  ██████████████████████████████
2  ██████████████████████████████
3  ████████████████ Oppo. 10:10-16; 11:10-13; *see also* Dkt. No. 345. Finally,
4  Archer notes that Wisk's amendments appear to change the scope of products covered from
5  "aircraft" to more general "charger systems." Oppo. 10:27-11:9.

6  Wisk's '833 patent allegations concern the ventilated rotor assembly air-cooling system
7  mounted on the boom of the aircrafts. *See* Mot. Ex. D. The underlying technology is, in essence,
8  an enclosure of a set of rotors with an air inlet and outlet, which together cause air to flow through
9  the enclosure and cool the rotors. *See* Mot. 11:21-12:3; Mot. Ex. D at pdf 37, 53, 62, 96. The
10 initial contentions alleged that the technology is mounted on the booms. *See, e.g.*, Ex. Mot. D at
11 pdf 35, 63. While the very first page of the initial allegations seemed to focus on the Maker
12 "aircraft" as the infringing product, the rest of initial allegations referred to the *booms* of the
13 aircraft. *See, e.g.*, Mot. Ex. D at pdf 27 (initial allegation concerning details about "[e]ach of the
14 six booms of the Maker aircraft"); *id.* at pdf 46 (same).

15 The amendments mostly add revised explanations of the technology and citations to the
16 newly produced documents, including quotations from the Marius deposition. *See, e,g.*, Mot. Ex.
17 D at pdf 54-61, 64, 69, 77-78, 88, 95. Additionally, Wisk clarifies that its allegations extend to the
18 Midnight aircraft because Wisk only recently learned— ██████████████████
19 ██████████████████████████████
20 ████████████████████████ Mot. 2:17-3:1; 11:14-
21 19; 11:21-12:3; 24:24-25:3. Wisk also asserts that the amendments to its DOE allegations allege
22 the same theories but address contentions brought to light by the Marius deposition, including that
23 the rotors are on the fairing rather than the boom, and that Archer's design may ████████
24 ████████████ Mot. 12:4-19. Finally, while the initial allegations cited the purchase
25 contract between Archer and United Airlines, the amended allegations rely more prominently on
26 the contract as evidence that Archer has already sold the technology and therefore committed an
27 infringing act. *See* Mot. 8:25-9:2; 23:18-26.

28 Archer contends that Wisk cannot include allegations against Midnight's boom design

3

██████████████████████████████████████████████████████████ Oppo. 1:5-19; 3:15-23; 6:16-8:18. Additionally, and in line with its contentions about the '033 patent, Archer says that Wisk cannot change the definition of "Accused Instrumentalities" to refer to the booms specifically instead of the aircraft. Oppo. 5:28-6:2. Finally, Archer argues it will be prejudiced by all the '033 and '833 amendments because they assert new theories and would require additional claims construction. Oppo. 14:21-15:27.

## LEGAL STANDARD

The Patent Local Rules permit amendment to initial infringement allegations "only by order of the Court upon a timely showing of good cause." Pat. Loc. R. 3-6. "[A]bsent undue prejudice to the non-moving party," good cause may be demonstrated through, among other things, "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id.* 3-6(a)-(b).

A court's "good cause inquiry is two-fold: (1) whether the moving party was diligent in amending its contentions; and (2) whether the non-moving party would suffer prejudice if the motion to amend were granted." *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 4:16-cv-00119-HSG (KAW), 2018 WL 5619743, at *3 (N.D. Cal. Oct. 29, 2018) (citation omitted). "Diligence is 'the critical issue' in the good cause determination" and consists of two subparts: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016) (citations omitted). The moving party has the burden to establish diligence, but the court has discretion to grant leave to amend "even in the absence of diligence so long as there is no prejudice to the opposing party." *Id.*; *see also Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR, 2022 WL 2125133, at *1 (N.D. Cal. Mar. 4, 2022). Prejudice can be shown when there will be disruptions to the case schedule or other court orders, *Synchronoss Techs.*, 2018 WL 5619743, at *5, and when a party changes its infringement theories or requires its opposition to prepare additional defenses, *see Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. cv 12-00630 LHK, 2012 WL 5632618, at *3 (N.D.

4

Cal. Nov. 15, 2012). "[E]xtra work alone does not support a finding of prejudice." *Impinj, Inc.*, 2022 WL 2125133, at *2.

Finally, it is "unrealistic" that a "patentee would have a precise sense of its infringement theory at the outset," particularly where "the patentee may not have been able to get access to the necessary information because it is hidden from view (for example, source code)." *Radware Ltd. v. F5 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 3728482, at *1 (quoting Peter S. Menell et al., Federal Judicial Center, *Patent Case Management Judicial Guide* 4-14 (2009)).

## DISCUSSION

### I.   Good Cause and Diligence

Though Archer makes reasonable arguments to the contrary, I find that there was good cause for the amendments and that Wisk was sufficiently diligent in seeking to amend its infringement contentions.

#### a.   Substance of the Amendments

After reviewing the proposed changes, I determine that the amendments do not present new theories of infringement but rather further detail existing theories, cite newly produced documents, and clarify that Wisk's initial infringement allegations extend to Midnight and ▮▮▮▮ alleged use of technology that infringes on Wisk's patents. *See Karl Storz Endoscopy-Am*, 2016 WL 2855260 at *2 (noting the Patent Local Rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed" (quoting *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006))). Though Wisk now more clearly applies its allegations to Midnight and ▮▮▮▮▮▮▮▮ battery and rotor boom assembly, the amendments rely on the same underlying theories of infringement, including the DOE theories for both patents. *Cf. Fortinet, Inc. v. Palo Alto Networks, Inc.*, No. c-09-00036 RMW, 2010 WL 4608250, at *1-2 (N.D. Cal. Nov. 5, 2010) (denying amendment for infringement contentions where plaintiff sought to add entirely new DOE theories that had not previously been asserted). For example, the allegations about the battery system explain the ▮▮▮▮ battery uses the same source code as the prior version, and the allegations about Midnight's boom assembly allege it infringes in the

5

1  same way as the assembly on Maker. To the extent that Archer believes that the newest versions
2  of the battery and boom assembly do not employ the same source code or design, as it asserted at
3  the hearing, Archer may present evidence supporting that position later in litigation—but those
4  counterarguments do not mean that Wisk presented new theories of infringement.

5        Archer also asserts that Wisk's theories of infringement changed with the amendments
6  because the initial allegations asserted that the *aircrafts* infringed on Wisk's patents while the
7  amendments assert that the battery system and boom assembly infringe. According to Archer,
8  Wisk focused its initial allegations on the aircraft and defined the Accused Instrumentalities as
9  such. But the initial allegations show that Wisk alleged, in detail, that Maker's battery system and
10 boom assembly were the infringing pieces of technology. *See, e.g.*, Mot. Ex. F at pdf 5, 9, 14, 18-
11 22, 24-32, 34-36, 44, 47, etc. (describing the charging system technology, not just the aircraft as a
12 whole); Mot. Ex. Q at pdf 7, 12-24 (focusing on the boom assembly, not just the aircraft as a
13 whole). Because of that, and because Wisk initially asserted that its allegations applied to Maker's
14 technology and to any "production aircraft that will leverage the technology of the Maker," Mot.
15 Ex. F at pdf 2; Mot. Ex. Q at pdf 2, Wisk did not change its theories of infringement when it made
16 amendments to its allegations.

17       Wisk is also permitted to clarify that its allegations about Maker and its battery and boom
18 assembly extend to Midnight's battery and boom assembly. Amendments to infringement
19 allegations can apply to a new version of a product that infringes in the same way as a previously-
20 accused version, so long as new claims and theories are not asserted. *Apple Inc*, 2012 WL
21 5632618, at *3. That is the case here. As Archer points out, in *Apple* the new version of the
22 product had been released in the U.S., while here ▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮ according to Wisk's contentions. But that misses the point—the allegedly infringing
24 pieces of technology, i.e. the battery and the boom assembly, have been or soon will be built.
25 Wisk showed that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. Hefazi Decl. 2:18-23; Mot. Ex. W 417:22-
27 418:14. And Wisk also showed that the plans for the booms are finalized (and were used for the
28 production of Maker) and that its allegations apply regardless of ▮▮▮▮▮▮

6

1  ▮▮▮▮▮ *See* Mot. 20:28-21:9; *see also* Mot. Ex. W 421:4-11. For that reason, these proposed
2  amendments differ from those in *PersonalWeb Technologies, LLC v. Google Inc*, which prohibited
3  amendment from including a new (unfinalized) version of a previously-accused product because
4  the parties could not evaluate an incomplete product for infringement. No. C13-01317 EJD
5  (HRL), 2014 WL 4088201, at *4 (N.D. Cal. Aug. 19, 2014). Here, the allegedly infringing
6  technology—Midnight's battery system and boom assembly—*has* been finalized, or so Wisk
7  sufficiently alleges. The charger and boom assembly can therefore be evaluated for infringement,
8  and indeed Wisk conducts some of that evaluation in its papers.[2]

For the same reason, Archer's argument about the contract with United Airlines is unconvincing. *See* Oppo. 8:19-10:8. Archer says the contract cannot serve as evidence for sale of a patented invention where the specifications of the product being sold have not been finalized. *See* Oppo. 3:25-27; 8:20-10:8. But the product being sold is Midnight, *see* Mot. Ex. Z at pdf 2, and as explained above, Wisk sufficiently alleged that the component parts of Midnight can be evaluated for infringement. And importantly, Wisk included evidence of the deal to support its allegations that Archer "offer[ed] to sell, or s[old] . . . a[] patented invention," 35 U.S.C. § 271(a), not to detail the specifications of the infringing product.

### a. Diligence

I also find that Wisk was diligent in discovering the bases for its amendments and seeking amendment once the bases were discovered. *See Karl Storz Endoscopy-Am*, 2016 WL 2855260 at *3. It diligently pursued discovery from Archer's Australian supplier, Electro.Aero, but was unable to obtain information until June 2022. At that point, Wisk first learned of the existence of the ▮▮▮▮▮—the basis for many of its '033 patent amendments. *See* Mot. 15:20-16:7. The two-month delay between discovering the basis and filing this motion was reasonable, especially in light of Wisk notifying Archer before filing. *See, e.g.*, *Nuance Commc'ns, Inc. v. ABBYY*

---

[2] Archer says that it might use ▮▮▮▮▮ for each battery pack, instead of the common power bus system that Wisk outlined in its allegations, and ▮▮▮▮▮ ▮▮▮▮▮ used in Midnight. *See* Oppo. 3:15-23. These are potential defenses Archer can use in future stages of litigation, but do not preclude Wisk from evaluating the charger and rotors, as they exist now, for infringement. *Cf. PersonalWeb Techs.*, 2014 WL 4088201, at *4.

7

*Software House*, No. C 08-02912 JSW MEJ, 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012) (finding diligence despite a period of a "few months" between learning of the new relevant information and moving to amend infringement contentions). And the amendments to the '033 patent DOE contentions merely clarified Wisk's theory based on previously undisclosed descriptions from Electro.Aero, *see* Mot. Ex. B. at pdf 92; Repl. 4:17-21, rather than change the scope of its allegations in a way that could have been done previously, *see* Oppo. 18:10-19:2.

Wisk also met its burden to show it was diligent in discovering the basis for the amendments to the '833 patent allegations related to Midnight's boom-mounted rotors. Although Archer correctly notes that Wisk received documents alluding to Midnight's design and its placement of the rotors ▉▉▉▉▉▉ in late February 2022, Mot. 10:10-21, Wisk presented evidence *from Archer's engineer* that those documents were too vague and preliminary to provide a basis for the amended allegations, *see* Mot. Ex. W 489:3-493:5. It was not until July 2022 that Wisk received "detailed figures of functionality" confirming Wisk's basis for the amendments. *See* Mot. 10:10-21. It was also not until ▉▉▉▉▉▉ that Wisk discovered its basis for its amended DOE contentions.³ *See id.* 11:14-19. Wisk promptly sought amendment after these events. *See Synchronoss Techs.*, 2018 WL 5619743, at *5 (finding diligence where "[t]he trigger for amending [the plaintiff's] [c]ontentions" was "undoubtedly" the later-received information). And even if Wisk was not diligent in deposing Marius, *see* Oppo. 17:21-18:2, I exercise my discretion to find there is good cause and no prejudice here, *Impinj, Inc.*, 2022 WL 2125133, at*1, in part because regardless of the timing of the deposition, Wisk did not have the necessary boom design documents until July 2022. I also find that Wisk was diligent in incorporating the United Airlines contract in its allegations because the deal was included in the initial allegations, *see* Mot. Ex. B at pdf 8; Mot. Ex. D at pdf 5, and the amendments merely clarify Wisk's contentions.

Overall, because Wisk was diligent in seeking discovery, and then in reviewing the

---

³ Archer also argues the amendment is improper because Wisk's DOE contentions include that the rotors are mounted on the boom, while Archer's documents show they are ▉▉▉▉▉▉. *See, e.g.*, Oppo. 17:2-8. This is debatable, *see* Mot. Ex. D at pdf 37 (noting the alleged infringement is "practiced *by the booms of* the Maker" (emphasis added)), and also goes to the merits of the claim, so Archer may raise this at later stages of the litigation.

documents and depositions to compare the previously undisclosed source code and products to its existing theories of infringement, Wisk was "diligent in discovering the basis for the proposed amendments." *Facebook, Inc. v. BlackBerry Ltd.*, No. 18-cv-05434-JSW-JSC, 2019 WL 8013872, at *5 (N.D. Cal. Sept. 17, 2019) (finding diligence where the plaintiffs amended their infringement contentions to include previously undisclosed and nonpublic information, including technical details supporting *existing* theories).

## II.     Prejudice

Finally, I find that permitting amendment will not prejudice Archer. First, because Wisk was diligent in moving to amend and in notifying Archer of its amendments, there is no prejudice for lack of diligence. *See Synchronoss Techs.*, 2018 WL 5619743, at *6. Second, as described above, Wisk's amendments do not change its underlying infringement or DOE theories, and so there is no prejudice on that basis. *See* Oppo. 16:19-22, 19:8-27; *cf. Apple Inc., Ltd.*, 2012 WL 5632618, at *3. And third, despite Archer's reasonable argument to the contrary, Wisk's amendments do not significantly change its contentions from accusing the aircrafts to accusing the component parts. In fact, Wisk's initial contentions for the '033 and '833 patents mostly described the infringing aspects of the battery system and the boom-mounted rotors, not the aircrafts as a whole. *See, e.g.*, Mot. Ex. B at pdf 5-12, 14-19, 21-30, 33-43, 46-54, 56-65, 70-79, 84-91 (referring almost exclusively to the battery system); Mot. Ex. D at pdf 6, 27 (initial allegation concerning details about "[e]ach of the six booms of the Maker aircraft"); *see also* Mot. 2 at n.2.[4] The amendments merely clarify which technology is being accused of infringement.

Archer's strongest argument for prejudice is that the parties already participated in claims construction and the *Markman* hearing, and so adding anything new to the claims prejudices Archer by precluding future claims construction. *See* Oppo. 14:21-15:27. But there is no hard and fast rule precluding parties from amending infringement allegations after the claims have been

---

[4] For this reason, there is no prejudice to Archer from Wisk amending its cover pleadings to clarify that its allegations refer to the technology used in Midnight. And with respect to Archer's contentions that Wisk's changes to the cover pleading affect the '036 Patent in this suit, Wisk conceded on the record at the hearing that it has made no changes to its contentions concerning that patent.

9

1 construed by the court. *See Vasudevan Software, Inc. v. Int'l Bus. Machs. Corp.*, No. C09-05897
2 RS HRL, 2011 WL 940263, at *3 (N.D. Cal. Feb. 18, 2011). To the extent that Archer believes
3 any of the amended language in the claims needs to be construed, it may file a motion to do so.
4 *See id.* (citing *Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-16
5 (Fed. Cir. 2010) ("[D]istrict courts may engage in a rolling claim construction.")); *see also Nuance*
6 *Commc'ns, Inc.*, 2012 WL 2427160, at *2 (noting that if additional discovery or claims
7 construction were needed after amendment, the party may request to reopen discovery). And even
8 though an additional claims construction hearing could theoretically delay this case's schedule, *see*
9 *Karl Storz Endoscopy Am.*, 2016 WL 2855260 at *3 (noting that a disruption in the case's
10 schedule may constitute prejudice), at this point I am not convinced another construction hearing
11 will be necessary. Though Archer stated in its papers that it will now need additional claims
12 construction to properly defend itself from "new" theories, Wisk asserts the same theories as
13 found in the original contentions, and the terms relevant to those theories have already been
14 construed. *See* Order on Claims Construction [Dkt. No. 258]; *see also Imping, Inc.*, 2022 WL
15 2125133, at *2 ("[B]ecause the [patent-in-suit] has already been asserted against earlier
16 functionally similar versions of [a newly added product], amendment will not require identifying
17 additional prior art.").

18 While Archer argues that it is prejudiced by having to defend against infringement
19 contentions before it has finalized production of Midnight, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20 ▓▓▓▓▓▓▓▓▓▓▓▓▓ *see* Oppo. 14:13-20, as described above, the alleged infringing components
21 are apparently sufficiently finalized. Archer may assert as a defense that its products do not (or no
22 longer) use the allegedly infringing technology. But that argument can be made at the next stage
23 of litigation.

## CONCLUSION

25 Wisk's Motion for Leave to Amend its Infringement Contentions is GRANTED.
26 Wisk's and Archer's Motions to File Under Seal, Dkt. Nos. 311, 321, 332, are GRANTED
27 because they meet the compelling reasons standard, as they contain sensitive, confidential

28

information about parties and trade secrets.[5]  *See In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2021).

**IT IS SO ORDERED.**

Dated: October 4, 2022



William H. Orrick
United States District Judge

---

[5] The unredacted version of this order has also been filed under seal.  The parties are cautioned that some of the purportedly secret information was mentioned by counsel at the public hearing on this motion.  Regardless, much of it will likely become public when this case proceeds to trial.

11