QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC, | CASE NO. 3:21-cv-02450-WHO |
| Plaintiff, | **PLAINTIFF WISK AERO LLC'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE PURSUANT TO FED. R. CIV. P. 37(E)(1); 37(E)(2) AND THE COURT'S INHERENT POWERS** |
| vs. | |
| ARCHER AVIATION INC., | |
| Defendant. | Hearing: |
| | Date: Wednesday, February 15, 2023 |
| | Time: 2:00 pm |
| | Judge:  The Honorable William H. Orrick |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 15, 2023 at 2:00 pm, or soon thereafter as this matter can be heard before the Honorable Judge William H. Orrick in Courtroom 2, Seventeenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Wisk Aero LLC ("Wisk") shall and hereby does move the Court to issue sanctions against Defendant Archer Aviation, Inc. ("Archer") for spoliation of evidence.

Wisk's motion requests that the Court enter the following sanctions, pursuant to Federal Rules of Civil Procedure 37(e)(1), 37(e)(2), and the Court's inherent powers:

1. that, for all purposes in this case, including dispositive motions and at trial, it shall be taken as conclusively established that Mr. Scott Furman, as Archer's employee, had access to confidential and proprietary Wisk documents, photographs, and emails during his employment at Archer;

2. that, for all purposes in this case, including dispositive motions and at trial, it shall be taken as conclusively established that Mr. Scott Furman, as Archer's employee, shared those documents, photographs, and emails with Archer; and that Archer used those documents, photographs, and emails to help develop its eVTOL aircraft and related technologies;

3. an adverse inference jury instruction that the contents of the documents, photographs, and email Mr. Furman destroyed would have been unfavorable to Archer;

4. an instruction informing the jury of Archer's obligation to preserve this evidence and its failure to do so;

5. that, for all purposes in this case, including dispositive motions and at trial, Archer shall be precluded from adducing evidence or argument contrary to any of the established facts listed above; and

6.    that Wisk is entitled to an award of its attorneys' fees and costs incurred in connection with this motion and all discovery related to Archer's spoliation of evidence.

The remedies sought by Wisk are more fully set forth in Wisk's accompanying [Proposed] Order.

Wisk's motion is based on this notice of motion and motion, the following memorandum of points and authorities; the supporting declaration of Brian Mack, and the exhibits to that declarations; all matters of which the Court may take judicial notice; other pleadings on file in this action; and other written or oral argument that Wisk may present to the Court.

DATED:  December 16, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  _/s/ Brian E. Mack_
    Yury Kapgan
    Robert M. Schwartz
    Diane Cafferata
    Patrick Schmidt
    Michael LaFond
    Brian E. Mack

Attorneys for Plaintiff Wisk Aero LLC

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND OF ARCHER'S SPOLIATION .......................................................................2

LEGAL STANDARDS FOR THIS MOTION .............................................................................6

I.      SANCTIONS UNDER RULE 37(E)...............................................................................6

II.     SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ...............................7

III.    ARCHER IS RESPONSIBLE FOR ITS EMPLOYEES' SPOLIATION...........................8

ARGUMENT.................................................................................................................................9

I.      FURMAN SPOLIATED POTENTIALLY THOUSANDS OF DOCUMENTS, PHOTOGRAPHS, AND EMAIL.....................................................................................9

II.     FURMAN'S SPOLIATION MUST BE IMPUTED TO ARCHER.................................11

        A.      Furman's Spoliation Was Conduct Within The Scope Of His Employment .........11

        B.      Archer Is Itself At Fault For Mr. Furman's Spoliation .........................................12

        C.      Archer Is "The Real Party In Interest" Who Benefitted From the Spoliation.........13

III.    ARCHER'S SPOLIATION HAS SIGNIFICANTLY PREJUDICED WISK ...................14

IV.     WISK IS ENTITLED TO PRECLUSION SANCTIONS AND ADVERSE INFERENCE INSTRUCTIONS ......................................................................................16

V.      ARCHER SHOULD BE SANCTIONED UNDER RULE 37(E)....................................18

VI.     WISK IS ENTITLED TO ITS ATTORNEYS' FEES ....................................................19

CONCLUSION............................................................................................................................20

## TABLE OF AUTHORITIES

**Page**

### Cases

*Akiona v. United States*,
   938 F.2d 158 (9th Cir. 1991).............................................................................. 8

*Apple Inc. v. Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012)..........................................................7, 14

*Aramark Mgmt., LLC v. Borgquist*,
   No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067 (C.D. Cal. Jan. 27, 2021),
   *recommendation adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021)...............7, 20

*Bagley v. Yale Univ.*,
   318 F.R.D. 234 (D. Conn. 2016)............................................................13, 18, 19

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)........................................................................................6, 8

*Childers v. Shasta Livestock Auction Yard, Inc.*,
   190 Cal. App. 3d 792 (Cal. Ct. App. 1987) .......................................................... 9

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   No. 5:18-cv-00420-JGB, 2020 WL 1496444 (C.D. Cal. 2020)............................ 8, 14, 16, 19

*CrossFit, Inc., v. Nat'l Strength and Conditioning Ass'n*,
   No. 14cv1191 JLS, 2017 WL 2298473 (S.D. Cal. May 26, 2017)........................... 8

*Gemsa Enters., LLC v. Specialty Foods of Ala., Inc.*,
   No. LA CV13-00729 JAK, 2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) .........................8, 9

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993)........................................................................8, 18

*In re Black Diamond Mining Co.*,
   514 B.R. 230 (E.D. Ky. 2014)...................................................................10, 11

*In re Hitachi Television Optical Block Cases*,
   No. 08-cv-1746 DMS, 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011).....................8, 9

*In re Napster, Inc. Copyright Litigation*,
   462 F. Supp. 2d 1060 (N.D. Cal. Oct. 25, 2006).............................................18, 20

*In re Yagman*,
   796 F.2d 1165 (9th Cir. 1986) ........................................................................... 6

*Inland Concrete Enters., Inc. v. Kraft Americas LP*,
   No. CV 10–1776–VBF, 2011 WL 13209166 (C.D. Cal. Mar. 9, 2011)....................6, 8, 16

*Jimenez v. Menzies Aviation Inc.*,
   No. 15-CV-02392-WHO, 2016 WL 3232793 (N.D. Cal. June 13, 2016) .............................. 20

*Katzman v. L.A. Cnty. Metro. Transp. Auth.*,
   No. 13-cv-00438-LHK, 2015 WL 13861765 (N.D. Cal. Mar. 26, 2015)................................ 7

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ............................................................................ 7

*Mastr Adjustable Rate Mortgages Trust 2006 v. UBS Real Estate Securities Inc.*,
   295 F.R.D. 77 (S.D.N.Y. 2013) ...................................................................... 18

*Micron Tech, Inc. v. Rambus, Inc.*,
   645 F.3d 1311 (Fed. Cir. May 13, 2011) ............................................................... 8

*Miranda v. Wyatt*,
   677 F. App'x 432 (9th Cir. 2017) ......................................................................... 7

*Network Appliance, Inc. v. Bluearc Corp.*,
   No. C 03-5665 MHP, 2005 WL 1513099 (N.D. Cal. June 27, 2005) ........................ 6

*Nursing Home Pension Fund v. Oracle Corp.*,
   254 F.R.D. 559 (N.D. Cal. 2008) .................................................................... 8, 16

*Oppenheimer v. City of La Habra*,
   No. SACV 16–00018 JVS, 2017 WL 1807596 (C.D. Cal. Feb. 17, 2017 ................... 8

*Perez v. Van Groningen & Sons, Inc.*,
   41 Cal. 3d 962 (1986) .......................................................................................... 9

*Pettit v. Smith*,
   45 F. Supp. 3d 1099 (D. Ariz. Sept. 9, 2014) ................................................... 9, 13

*Porter v. City and Cnty. of San Francisco*,
   No. 16-cv-03771-CW, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .................. 18, 19

*Ramos v. Swatzell*,
   No. ED CV 12-1089-BRO, 2017 WL 2857523 (C.D. Cal. June 5, 2017) ................. 13

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002) ............................................................................ 7, 10

*Schmid v. Milwaukee Elec. Tool Corp.*,
   13 F.3d 76 (3d Cir. 1994) ..................................................................................... 8

*Straitshot Comms., Inc. v. Telekenex, Inc.*,
   No. C10–268Z, 2012 WL 727271 (W.D. Wash. Mar. 6, 2012) ............................. 12

*Swisher Hygiene Franchise Corp. v. Clawson*,
   No. CV-15-01331-PHX, 2019 WL 4169003 (D. Ariz. Sept. 3, 2019) ..................... 13

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) .............................................................................. 1

*WeRide Corp. v. Kun Huang*,
   No. 5:18-cv-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ................... 8

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ....................................................................... 7, 9

## Statutory Authorities

18 U.S.C. § 1836 ................................................................................................... 1

Cal. Civ. Code. § 3426 ........................................................................................... 1

## Rules and Regulations

Fed. R. Civ. P. 37(e) ............................................................................... 6, 7, 19, 20

Fed. R. Civ. P. 37(e)(1) ......................................................................................... 7

Fed. R. Civ. P. 37(e)(2) ................................................................................... 18, 19

Fed. R. Civ. P. 45(g) ............................................................................................ 9

Fed. R. Evid. § 1005 ........................................................................................... 11

**PRELIMINARY STATEMENT**

In April 2021, Plaintiff Wisk Aero LLC ("Wisk") sued Defendant Archer Aviation, Inc. ("Archer") for patent infringement and for trade secret misappropriation, under both the Defend Trade Secrets Act 18 U.S.C. §§ 1836 *et seq.* and the California Uniform Trade Secrets Act, Cal. Civ. Code. §§ 3426 *et seq.* The key issues in Wisk's trade secret claims are: (1) did Archer take Wisk's trade secrets, including through its hiring of multiple ex-Wisk employees; and (2) did Archer improperly acquire, disclose, or use those Wisk trade secrets?

One of those ex-Wisk employees that Archer hired, Scott Furman, who now serves as Archer's Chief Avionics Architect, has willfully destroyed Wisk's ability to obtain evidence bearing on these issues. Despite Archer's assurances to the Court that no Wisk documents ever made their way onto Archer's systems, *see* Dkt. 224, Mr. Furman has admitted that he took documents, photographs, and emails with him when he left Wisk and then stored them on his Archer-issued laptop. Even worse, roughly 10 months after Wisk sued, and after Mr. Furman received two Archer document hold notices and a Wisk document subpoena, Mr. Furman intentionally destroyed all of these materials to keep Wisk from finding out that he had them. They are critical to the case. They concern Wisk's eVTOL aircraft and related technologies.

Willful destruction of evidence while a case is pending is a serious offense. As the Ninth Circuit has explained, "[t]here is no point to a lawsuit, if it merely applies law to lies." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998) (affirming district court's dismissal of case as pre-trial sanction for plaintiff's destruction of evidence).

The nature and scope of the willful document destruction that occurred here is egregious. Mr. Furman's actions are to be imputed to Archer, his employer. He was one of the Wisk ex-employees who served as a conduit of Wisk's confidential information to Archer. He held a senior engineering position at Wisk, with responsibility for work pertaining to key Wisk trade secrets. He holds a similar position at Archer, working on similar technology. Archer included Mr. Furman as a custodian whose documents it had to search and produce on core case issues.

By destroying these documents, Archer has prevented Wisk from obtaining key evidence to make its case. Wisk has no way of determining the extent to which Archer has benefitted from

the potentially thousands of Wisk documents, photographs, and emails he placed on his Archer-issued laptop. When Mr. Furman wiped the documents out of existence, he also destroyed their metadata, which would show whether, when, and how often he accessed Wisk's documents while working at Archer, and who he shared them with. The damage is real. Absent the relief requested here, Archer will ask the jury to believe Mr. Furman's denial that he accessed, used, or shared the documents he destroyed, knowing the difficulty Wisk will have of disproving that testimony—precisely because he destroyed the evidence of his misconduct. Instead, the jury can reasonably conclude—and should be directed to conclude—that an ex-employee who destroyed potentially thousands of his ex-employer's documents that he improperly took with him when he left, and placed them on the computer his new employer gave him, did so because they showed the transfer and use of his ex-employer's trade secrets. Wisk moves the Court to obtain issue, evidentiary, and fee-shifting sanctions against Archer. Anything less would reward Archer for what Mr. Furman did. And it would punish Wisk, the victim of this misconduct.

### BACKGROUND OF ARCHER'S SPOLIATION

Before Mr. Furman joined Archer, he worked at Wisk predecessors Kitty Hawk and Zee.Aero and then at Wisk, for a total of eight years. Ex. 1 (Furman Tr.) at 26:17-27:4, Ex. 2. He was not a low-level employee. For about five of those eight years, Mr. Furman held the title Chief Avionics Architect. Ex. 2; Ex. 1 at 17:19-22. Not only was Mr. Furman involved in the development of technologies at Wisk that form the basis of Wisk's Narrowed Trade Secret No. 44, Ex. 3 at 5, 17, but he is also implicated in the misappropriation of Wisk's Narrowed Trade Secret Nos. 31, 39, and 44. Ex. 4 at 143, 151-52, 157. During his tenure at Wisk, Mr. Furman worked on many generations of Wisk's aircraft (including POC, ZP-1, Mutt, and Cora), Ex. 1 at 25:20-26:15, and was primarily responsible for the overall design of the fly-by-wire electronics and software on Wisk's Cora (fifth generation) aircraft. *Id.* at 31:6-17.

On his resignation, Wisk reminded Mr. Furman several times of his obligations to refrain from using any confidential Wisk information and to return Wisk documents. The ▮▮▮



Ex. 5; Ex. 1 at 172:2-173:22.

Ex. 5; Ex. 1 at 174:7-175:24.

. Ex. 6 ¶ 9.

Ex. 7.

*Id.*

Archer hired Mr. Furman in January 2020 to be its Chief Avionics Architect, the same function he had at Wisk, and he has performed substantially similar duties since then. Ex. 1 at 14:5-15:23, 128:22-129:9, 289:3-12 (responsibility for avionics). Archer offered Furman a

. *Id.* at 129:10-131:1.

After the start of this litigation, and after being issued multiple litigation hold notices and a subpoena for the production of documents, Mr. Furman destroyed documents and obstructed Wisk's investigation into its trade secret misappropriation claims—all to Archer's benefit. The timeline of Mr. Furman's spoliation while employed at Archer is as follows:

1.      Archer sent Mr. Furman, an Archer employee possessing information relevant to this lawsuit, litigation hold notices on February 14, 2020 and August 20, 2021, *see* Ex. 8 at 2; Ex. 1 at 181:6-11. Despite receiving these hold notices, Mr. Furman admitted under oath that he "didn't do anything" in response to them. Ex. 1 at 181:11-18 ("Q. Okay, did you – did you read

1  the litigation hold notice? A. I read part of it, yes. Q. And what did you do in response to receiving

2  the litigation hold notice? A. At that point, I didn't think it applied. I – I didn't think there was any

3  immediate application, so I didn't do anything.").

4        2.      Between December 2021 and April 2022, Archer agreed to include Mr. Furman on

5  its list of custodians whose documents would be collected and produced responsive to 26 RFPs

6  concerning numerous core case issues. Declaration of Brian Mack ("Mack Decl.") ¶ 22. Those

7  include Archer's claimed "independent" development of ████████████████████

8  ████████████████████████████████████████████████████████████

9  ████████████████████████. *Id.*

10        3.      In November 2021, Wisk served a subpoena on Mr. Furman to produce all Wisk

11  material in his possession, custody, or control. Ex. 1 at 178:14-16. When asked at his deposition

12  what he did to comply, Mr. Furman testified that he did not even read the subpoena or do anything

13  to comply. *Id.* at 180:4-7 ("Q. Yes. Well, did you – did you happen to read through the subpoena

14  after you were served with it? A. I – I didn't read the subpoena at all."); *id.* at 180:16-18 ("Q.

15  Okay. What did you do in response to receiving the subpoena? A. I didn't do anything."); *id.* at

16  180:19-23 ("Q. Okay, did you realize that you had a duty to preserve all documents in connection

17  with the subpoena? A. Again, I didn't – I didn't read the subpoena.").

18        4.      A few weeks later, on December 6, 2021, Mr. Furman searched the Internet to find

19  out how to remove Wisk files from his Archer-issued laptop that he did not want to be found,

20  specifically those he had sent and received using the Thunderbird application and mailbox file.

21  *See id.* at 187:17-188:10 (Furman testimony about his searches for how to "remove thunderbirds

22  files from mac" and "remove thunderbirds cache from mac").

23        5.      Armed with this know-how, Mr. Furman deleted the Thunderbird application and

24  associated mailbox file, containing an unknown number, but potentially ***thousands***, of Wisk

25  emails and attachments, ***from his Archer-issued laptop***. *Id.* at 191:21-192:1; 197:11-198:8,

26  200:19-201:2, 207:19-24, 208:19-25. He should not have possessed these emails and attachments.

27        6.      Around that same time, Mr. Furman also deleted Wisk photos from the Apple

28  Photos folder on his ***Archer-issued laptop***, *id.* at 205:2-23, 208:2-5, 225:4-225:6, as well as Wisk

Apple Messages *on that same Archer-issued laptop*. *Id.* at 207:14-18, 208:6-9, 224:25-225:3.  He should not have possessed these photos.

7.     In January 2022, after Archer hired Mr. Furman, he accessed *from his Archer-issued laptop* an email account that, in his words, contained a "whole bunch" of Wisk email, using an email hosting service called Fastmail, *id.* at 221:14-222:4, and *permanently* deleted those emails.  *Id.* at 221:14-222:4, 230:6-16.  Again, he had no legal right to possess these emails.

8.     At around that same time, Mr. Furman also deleted additional Wisk photos from his Apple Photos account, *id.* at 237:11-238:2, none of which he should have then possessed.

9.     At around that same time, Mr. Furman also deleted a document concerning Wisk's prior-generation aircraft from his Dropbox account, *id.* at 248:11-249:2.  Mr. Furman explained that this deleted document was a technical critique of the 2011 first-generation Zee aircraft, containing technical information as to eVTOL transition from lift to cruise configurations.  *Id.* at 248:16-249:24.  Before deletion, Mr. Furman had saved this particular Wisk document in his Dropbox account.  *Id.* at 248:7-14.  Wisk learned about this deletion for the first time at Mr. Furman's deposition.

Mr. Furman has admitted under oath that at least some of these documents contained Wisk's confidential and proprietary information because they described the details of Wisk's past and present eVTOL aircraft.  *Id.* at 238:16-242:14.  Despite learning of Mr. Furman's spoliation of Wisk documents by at least March 1, 2022 (*see* Ex. 8 at 2), Archer took no action against Mr. Furman until April 4, more than one month later, when it revoked Mr. Furman's eligibility to receive his 2022 performance bonus.  *Id.*  Archer took no further disciplinary action against Mr. Furman.  Ex. 9 at 242:22-243:6; Ex. 10 (citing only to Ex. 11).

Archer hid the document destruction.  Wisk learned about it on March 30, 2022 from Mr. Furman's counsel, Arturo González, a full month after Archer knew that Mr. Furman had destroyed the documents.  *See* Ex. 12; Ex. 8 at 2.  Wisk promptly asked Archer for information, Ex. 13, but Archer rebuffed most of Wisk's questions, insisting that Wisk ask Mr. Furman about his actions at his deposition.  Ex. 8 at 3.  Mr. Furman finally sat for his deposition on July 21, 2022.  But he was unable to meaningfully identify or describe the contents of the documents he

1   had destroyed.  Ex. 1 at 217:6-12 ("So, with the exception of a couple of them, no, I really don't

2   know what the contents of the e-mails were.").

3        After Mr. Furman's deposition, Wisk wrote to Archer to: (1) request the immediate

4   production of certain files that Mr. Furman suggested at his deposition may have remained on

5   Archer's laptop, and (2) insist that Archer update its interrogatory responses to account for Mr.

6   Furman's document destruction.  Ex. 14.  Wisk and Archer met and conferred on these issues

7   through October, Ex. 15, but none of the resulting discovery answered Wisk's questions about the

8   contents of the Wisk material that Mr. Furman had destroyed.

9        On November 18, 2022, Wisk deposed Adam Goldstein, Archer's Rule 30(b)(6) designee

10  on topics related to Archer's policies and practices regarding violations of its document retention

11  orders, Wisk documents in Archer's possession, disciplinary measures taken against former Wisk

12  employees, and Archer's response to learning that its employees retained Wisk documents.  Ex. 9

13  at  204:24-206:4.  Mr. Goldstein deflected and could not answer most of the questions relating to

14  Mr. Furman's misconduct.  *See, e.g.*, *id.* at 206:5-15; 206:17-24; 207:14-21; 207:23-208:8;

15  221:13-222:20; 224:3-9; 224:10-225:9; 232:8-15; 242:17-21.

16       As a result, Wisk will never know the extent or content of the deleted material.  Archer has

17  irrevocably prejudiced Wisk.

18                        **LEGAL STANDARDS FOR THIS MOTION**

19  **I.        SANCTIONS UNDER RULE 37(E)**

20       "Federal courts have the authority to sanction litigants for discovery abuses both under the

21  Federal Rules of Civil Procedure and pursuant to the court's inherent power to prevent abuse of

22  the judicial process."  *Network Appliance, Inc. v. Bluearc Corp.*, No. C 03-5665 MHP, 2005 WL

23  1513099, at *2 (N.D. Cal. June 27, 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

24  (1991); *In re Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986)).  The purpose of spoliation sanctions

25  is to "avoid substantial unfairness to the [non-spoliating] party[.]"  *Inland Concrete Enters., Inc. v.*

26  *Kraft Americas LP*, No. CV 10–1776–VBF, 2011 WL 13209166, at *6 (C.D. Cal. Mar. 9, 2011).

27       Rule 37(e) provides that "[i]f electronically stored information that should have been

28  preserved in the anticipation or conduct of litigation is lost because a party failed to take

1   reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery,"

2   a court that finds prejudice to another party may "order measures no greater than necessary to cure

3   the prejudice," and a court that finds "that the party acted with the intent to deprive another party

4   of the information's use in the litigation" may presume that the information was unfavorable,

5   instruct the jury that it may or must so presume, or enter judgment against the culpable party. Fed.

6   R. Civ. P. 37(e).

7        An award of attorneys' fees for the cost of a sanctions motion is an appropriate spoliation

8   remedy under Rule 37(e)(1), even where a party fails to show bad faith. *Aramark Mgmt., LLC v.*

9   *Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *22 (C.D. Cal. Jan. 27, 2021),

10  *recommendation adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021).

11  **II.    SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY**

12       A district court also has inherent authority to impose sanctions for spoliation. *Leon v. IDX*

13  *Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Most courts use a three-part test to determine

14  whether spoliation occurred: "'(1) that the party having control over the evidence had an

15  obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a

16  "culpable state of mind;" and (3) that the evidence was "relevant" to the party's claim or defense

17  such that a reasonable trier of fact could find that it would support that claim or defense.'" *Apple*

18  *Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (quoting *Zubulake v.*

19  *UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)) (footnotes omitted). "[T]he 'culpable

20  state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if

21  without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp. v.*

22  *DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (cleaned up; emphasis omitted); *see*

23  *Miranda v. Wyatt*, 677 F. App'x 432, 432–33 (9th Cir. 2017) (citing *Residential Funding* with

24  approval and noting the parties' agreement that it "provides an appropriate test for determining

25  when an adverse inference instruction can be given"); *Katzman v. L.A. Cnty. Metro. Transp. Auth.*,

26  No. 13-cv-00438-LHK, 2015 WL 13861765, at *9-10 (N.D. Cal. Mar. 26, 2015) (applying

27  *Residential Funding*).

28

If spoliation is found, courts often consider three factors to determine whether and what sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

Trial courts have "the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior" so long as the party responsible had "simple notice of 'potential relevance to the litigation,'" with no requirement to prove bad faith. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (quoting *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)).

Trial courts may also grant evidentiary or issue preclusion sanctions where the defendants have spoliated evidence that likely supported one or more of the plaintiff's claims. *See Inland Concrete Enters.*, No. CV 10–1776–VBF, 2011 WL 13209166, at *8 (precluding defendant from introducing contrary evidence); *CrossFit, Inc. v. Nat'l Strength and Conditioning Ass'n*, No. 14cv1191 JLS, 2017 WL 2298473 at *6 (S.D. Cal. May 26, 2017) (entering issue preclusion sanctions taking several facts as conclusively established).

Fee shifting under the inherent authority of the court requires a finding of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Hitachi*, 2011 WL 3563781, at *13 (citing *Micron Tech, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1326 (Fed. Cir. 2011)).

## III.   ARCHER IS RESPONSIBLE FOR ITS EMPLOYEES' SPOLIATION

An employer is responsible for the spoliation of its employees. *WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *13 (N.D. Cal. Apr. 24, 2020) (quoting *Gemsa Enters., LLC v. Specialty Foods of Ala., Inc.*, No. LA CV13-00729 JAK, 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015)); *see also In re Hitachi Television Optical Block Cases*, 2011 WL 3563781, at *16 (S.D. Cal. Aug. 12, 2011) ("Hitachi is responsible for its employee's

spoliation."); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420-JGB, 2020 WL 1496444, at *7-12 (C.D. Cal. 2020) (citing, *inter alia*, *Oppenheimer v. City of La Habra*, No. SACV 16–00018 JVS, 2017 WL 1807596, at *11 (C.D. Cal. Feb. 17, 2017) (imposing sanctions against city based on spoliation by individual city employee)).  Courts apply the general principles of agency to determine whether to impose sanctions against a party for its employee's spoliation. *Gemsa Enters.*, 2015 WL 12746220, at *9.

Under California law, an employee must be acting within the scope of his employment for his employer to be liable for his acts.  *E.g.*, *Childers v. Shasta Livestock Auction Yard, Inc.*, 190 Cal. App. 3d 792, 805 (Cal. Ct. App. 1987).  It is not necessary that the employee's acts benefit the employer, and "an employer can be liable for his employee's unauthorized intentional torts committed within the scope of employment despite lack of benefit to the employer."  *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 969 (1986).  Further, courts have imputed spoliation to the real party in interest to ensure fairness.  *See, e.g.*, *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1110 (D. Ariz. Sept. 9, 2014) (although the evidence was not destroyed by an agent of Defendants, the court found there was "strong reason to impute the spoliation of ADC to Defendants to ensure that fairness is done at trial") (granting adverse inference instructions and evidentiary sanctions); *see also In re Hitachi*, No. 08-cv-1746 DMS, 2011 WL 3563781 (S.D. Cal. Aug. 12, 2011).

## ARGUMENT

## I.   FURMAN SPOLIATED POTENTIALLY THOUSANDS OF DOCUMENTS, PHOTOGRAPHS, AND EMAIL

Mr. Furman's destruction of Wisk's files after he received two litigation hold notices and a subpoena from Wisk undoubtedly constitutes spoliation.

***First***, it is undisputed that Mr. Furman had an obligation to preserve the documents and emails long before he destroyed them in December 2021 and January 2022.  Mr. Furman's duty to preserve had attached by at least February 14, 2020, when Archer sent him the ***first*** litigation hold notice.  If not then, it arose at least by August 20, 2021, when Archer sent him the ***second*** litigation hold notice from Archer.  Ex. 8 at 2; *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (the duty to preserve attaches when noticed that the evidence is relevant to

the litigation).  In addition, on November 10, 2021, Wisk served Mr. Furman with a subpoena to produce documents, which imposed on him a further obligation to retain and produce the requested documents to Wisk.  Ex. 16 at 5; Fed. R. Civ. P. 45(g).

**Second**, Mr. Furman admitted that he intentionally deleted the documents.  When asked why he had deleted, in January 2022, the files from his Fastmail account, Mr. Furman admitted that he "freaked out," and that he deleted the files because he "was [] scared" that Wisk would accuse him of having walked off with its confidential information.  Ex. 1 at 222:5-18.  His choice of what to delete was no accident.  Mr. Furman "searched for e-mails that were to or from [Wisk predecessors] Zee Aero or to Cora Aero or to Wisk Aero, and [he] found a whole bunch of them," *id.* at 221:18-222:1, and then he ***permanently deleted*** them to avoid the consequences.  *Id.* at 222:5-18; *see also id.* at 204:15-205:1 (Mr. Furman admitting that he deleted Wisk documents "out of fear that Wisk would falsely accuse him of committing a crime").

This was not an isolated incident.  Beyond deleting Wisk emails, Mr. Furman searched the Internet to learn how to "remove thunderbirds files from mac" and "remove thunderbirds cache from mac," *id.* at 187:17-188:10, and then ***actually deleted*** the Thunderbird application and associated mailbox file, knowing that he was deleting Wisk emails and attachments from his Archer-issued laptop.  *Id.* at 197:11-198:8, 200:19-201:2, 207:19-24, 208:19-25.  Mr. Furman also ***deleted*** Wisk photos from his Apple Photos folder on his Archer-issued laptop.  *Id.* at 205:2-23, 208:2-5, 225:4-225:6, 237:11-238:2.  And he ***deleted*** Wisk Apple Messages that he had stored on his Archer-issued laptop.  *Id.* at 207:14-18, 208:6-9, 224:25-225:3.  He also ***deleted*** from his Dropbox account a document related to Wisk's prior-generation aircraft.  *Id.* at 248:11-249:2.

Mr. Furman knew that he should not have possessed these materials.  And he admits that he was "freaked out" by his possession of them.  That means that he destroyed the evidence knowingly.  *Residential Funding*, 306 F.3d at 108 ("[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently."); *In re Black Diamond Mining Co.*, 514 B.R. 230, 240 (E.D. Ky. 2014) (finding spoliator's destruction of notes and to-do lists related to his work to be "intentional," and destruction without checking if they were relevant to be "negligent").

1     **Third**, the evidence Mr. Furman destroyed is central to Wisk's claims.  As discussed

2  above, Mr. Furman has admitted that all of these deletions were ***Wisk's property***.  Ex. 1 at 238:16-

3  242:14 (documents would qualify as confidential and proprietary to Wisk because they described

4  the details of Wisk's past and present eVTOL aircraft).  They are indisputably relevant because the

5  core of Wisk's claim is that its former employees that went to Archer, such as Mr. Furman, aided

6  Archer's misappropriation of Wisk trade secrets by unlawfully retaining and using confidential

7  Wisk files after leaving Wisk.  Indeed, Archer has produced some documents in its possession Mr.

8  Furman wrote when he was a ***Wisk*** employee that are directly related to Wisk's ████████ trade

9  secrets.  Ex. 17 (Wisk document titled ███████████████████████████████████████████████

10 ████████ in Archer's production).  Although Archer may dispute the relevancy of the deleted

11 files, this is not a decision that Archer or Mr. Furman had the right to make, especially here, where

12 Archer has confirmed that Mr. Furman brought Wisk's confidential property to Archer.  Mr.

13 Furman should have preserved the documents pursuant to the litigation hold notices and Wisk's

14 subpoena no matter what he thought of their relevance.  *See Black Diamond*, 514 B.R. at 240.

15 Besides, any characterizations as to the supposed content of the spoliated materials would be

16 inadmissible secondary evidence of the documents' content.  Fed. R. Evid. § 1005.

17 **II.      FURMAN'S SPOLIATION MUST BE IMPUTED TO ARCHER**

18       **A.      Furman's Spoliation Was Conduct Within The Scope Of His Employment**

19       **First**, Mr. Furman's spoliation was related to his Archer employment and furthered

20 Archer's interests.  He is Archer's Chief Avionics Architect—hired by Archer to fill the same role

21 he had at Wisk.  Ex. 1 at 14:5-15:23.  As noted above, Mr. Furman gathered all of the deleted files

22 from his time at Wisk and all are admittedly ***Wisk property***.  He had stored (and deleted) most, if

23 not all, of them on his ***Archer-issued*** laptop.[1]  Further, at the core of Wisk's claims is that former

24 Wisk employees that went to Archer, such as Mr. Furman, aided Archer's misappropriation of

25 Wisk trade secrets by unlawfully retaining and using Wisk confidential files after leaving Wisk.

26

27 [1]  It is unclear from Mr. Furman's deposition if he had stored and deleted the Wisk prior-generation

28 aircraft document using his Archer-issued laptop, or if it was saved and deleted from only his
   Dropbox account.  *See* Background of Archer's Spoliation ¶ 9.

The only possible reason for Mr. Furman's retention of Wisk confidential files on an Archer laptop was to use them in connection with his substantially similar work at Archer. Thus, there is a clear nexus between Archer's employment of Mr. Furman and his spoliation.

*Second*, even though Archer retained and paid for separate counsel for Mr. Furman, Archer's counsel defended him vigorously at his deposition when Wisk asked him questions about his deletions. *Id.* at 202:14-205:1; 240:6-241:24.

*Third*, Archer's conduct suggests that it understood Mr. Furman's deletions to have been done within the scope of his employment. When Archer found out about Mr. Furman's spoliation, Archer reprimanded Mr. Furman by withholding his annual performance bonus. Ex. 8 at 2 ("Archer disciplined Mr. Furman by revoking his eligibility to receive any portion of his 2022 annual performance bonus."). Archer would not have docked Mr. Furman's compensation unless it believed that his conduct fell within the scope of his employment.

These facts are sufficient to establish that Mr. Furman's actions were within the scope of his Archer employment. Spoliation can be imputed to the employer solely because the person who destroyed the evidence was then its employee. *Straitshot Comms., Inc. v. Telekenex, Inc.*, No. C10–268Z, 2012 WL 727271, at *6 (W.D. Wash. Mar. 6, 2012) (awarding sanctions against company defendant). In *Straitshot*, the employee was ordered to produce a plaintiff-owned laptop that he retained after leaving the plaintiff company. Instead, the employee used the computer to access proprietary information, lied about his possession of the computer, and deleted documents from it to conceal his use of it. The court awarded sanctions against the defendant company, finding the employee had at all times been acting within the scope of his employment and, therefore, that the employer was jointly liable for spoliation. This Court should do the same here.

## B.      Archer Is Itself At Fault For Mr. Furman's Spoliation

Archer failed to properly enforce the litigation hold notices and Wisk's subpoena. Even though Archer assured Wisk that it had "repeatedly reminded all Archer employees to abide by the litigation hold notices" and it had "taken steps to preserve" relevant files, Ex. 8 at 2, those efforts fell far below any reasonable standard given that Mr. Furman had a meaningless understanding of Archer's litigation hold notices, and did not even read the subpoena or do anything to comply. Ex.

1 at 180:4-7 ("Q. Yes. Well, did you – did you happen to read through the subpoena after you

2 were served with it? A. I – I didn't read the subpoena at all."); *id.* at 180:16-18 ("Q. Okay. What

3 did you do in response to receiving the subpoena? A. I didn't do anything."); *id.* at 180:19-23 ("Q.

4 Okay, did you realize that you had a duty to preserve all documents in connection with the

5 subpoena? A. Again, I didn't – I didn't read the subpoena."); *id.* at 181:11-18 ("Q. Okay, did you

6 – did you read the litigation hold notice? A. I read part of it, yes. Q. And what did you do in

7 response to receiving the litigation hold notice? A. At that point, I didn't think it applied. I – I

8 didn't think there was any immediate application, *so I didn't do anything*."). The steps Archer

9 took (if any) to remind Mr. Furman of his obligations were clearly insufficient. *Bagley v. Yale*

10 *Univ.*, 318 F.R.D. 234, 238 (D. Conn. 2016) ("[A] party's issuance of a litigation hold notice does

11 not put an end to the party's obligation to preserve evidence; it is, rather, the first in a series of

12 related steps necessary to ensure that preservation"). Whether negligent or willfully blind, Archer

13 is as culpable as Mr. Furman.

14       Further, Archer cannot claim that Mr. Furman was a rogue employee acting outside the

15 scope of his employment and thus it is free of fault. As discussed above, Mr. Furman was acting

16 within the scope of his employment when he deleted the files. Mr. Furman has been a key player

17 in Wisk's claims for trade secret misappropriation since the beginning of this litigation. *See* Ex. 4

18 at 143, 151-52, 157; *see also* Mack Decl. ¶ 22. Under the circumstances there is simply no excuse

19 for Archer not to have done more to ensure that its employees did not destroy relevant evidence.

20       **C.**    **Archer Is "The Real Party In Interest" Who Benefitted From the Spoliation**

21       Mr. Furman's spoliation must be imputed to Archer because Archer is the "real party in

22 interest" benefitting from the damage done to Wisk's case. As the only defendant, Archer is the

23 only party responsible for a judgment in Wisk's favor. Thus, Archer stands to benefit the most

24 from Mr. Furman's spoliation. Courts have frequently imposed sanctions on a party for another

25 person's spoliation because fairness required it. *E.g.*, *Pettit*, 45 F. Supp. 3d at 1110 ("[T]here is

26 strong reason to impute the spoliation of ADC to Defendants to ensure that fairness is done at

27 trial.") (granting adverse inference instructions and evidentiary sanctions); *Ramos v. Swatzell,* No.

28 ED CV 12-1089-BRO, 2017 WL 2857523, at *7 (C.D. Cal. June 5, 2017) (imputing nonparty's

1   spoliation to defendant "to avoid unfair prejudice to the plaintiffs"); *see also Swisher Hygiene*

2   *Franchise Corp. v. Clawson*, No. CV-15-01331-PHX, 2019 WL 4169003, at *6 (D. Ariz. Sept. 3,

3   2019) (considering that the spoliator's conduct was for the benefit of his employer in imputing

4   spoliation to the employer); *Colonies Partners*, 2020 WL 1496444, at *7 ("[R]esponsible for any

5   potential judgment in Plaintiffs' favor, a duty to preserve ESI can be imputed to the County").

6          The Wisk documents and files that Mr. Furman took and brought with him to Archer could

7   be ***direct evidence*** of the trade secret misappropriation claims against Archer.  Because this

8   evidence has been destroyed, Wisk will not be able to analyze those documents and files to

9   determine the extent to which they contained the Wisk trade secrets asserted in this case, or if they

10  had ever been accessed or used by Mr. Furman or other Archer employees during the design or

11  development of Archer's aircraft.  Archer should bear responsibility for the spoliation.

12  ## III.    ARCHER'S SPOLIATION HAS SIGNIFICANTLY PREJUDICED WISK

13         Wisk is significantly prejudiced by the spoliation and cannot be made whole without the

14  requested sanctions.  As to the Thunderbird email account, when asked "approximately how many

15  e-mail[s] did you delete off of your Archer-issued laptop in -- on about December 2021," Mr.

16  Furman testified "***I don't know how*** much e-mail was stored on the laptop, because the laptop

17  comes out of the cloud, but it was ***my entire account***."  Ex. 1 at 200:19-25; *see also id.* at 208:19-

18  25 ("I don't know the number deleted, but, again, I didn't know the number that was in the cache

19  file to begin with.").  Mr. Furman admitted that he intentionally deleted potentially "***tens of***

20  ***thousands***" of emails from his Archer laptop.  *Id.* at 200:19-201:2.  It is undisputed that some of

21  these emails related to his work at Wisk.  *Id.* at 216:9-20, 242:1-14.  Because Wisk will never

22  know how many emails Mr. Furman deleted or their contents, Archer's employee has deprived

23  Wisk from the ability to confirm that Mr. Furman misappropriated Wisk trade secrets described in

24  those emails in connection with his work at Archer.  *Apple v. Samsung*, 881 F. Supp. 2d at 1150

25  ("By the very nature of the spoliation, there is no way to know what the spoliated evidence would

26  have revealed, and so courts have to instruct the jury that they are allowed to infer a certain fact or

27  set of facts from the absence of specific evidence.").  This much is undisputed:  Mr. Furman was

28  working on largely the same technologies at both Wisk and Archer, and he had access to Wisk

confidential information on his Archer laptop until December 2021 (almost ***two full years*** after he left Wisk and started working at Archer). Thus, it is reasonable to conclude that Mr. Furman took Wisk trade secrets and then used them in his work for Archer. Because Mr. Furman's spoliation has created an evidentiary gap that cannot be remedied, sanctions are required.

Wisk is prejudiced also by Mr. Furman's deletion of his iCloud photos and messages from his Archer-issued laptop. Mr. Furman testified that he deleted "probably somewhere between 25- and 30,000 photos" from his Archer-issued laptop, but Archer was able to locate and produce only a handful of them. *Id.* at 205:2-11; *contra* Ex. 10 at 12-13 (Archer identified Mr. Furman's iCloud photos in Appendix C and D, which include nowhere near the 30,000 items he once stored there). ***Significantly, Mr. Furman admitted that the deleted photos related to his work at Wisk***. Ex. 1 at 205:20-23; 208:2-5. Mr. Furman also deleted an unknown number of Apple chat messages related to Wisk. *Id.* at 224:19-225:3. Because Wisk will never know the full number or content of the deleted photos and messages, the spoliation has undermined Wisk's ability to prove that Mr. Furman or other Archer employees misappropriated the information contained within the photos or messages to design or develop Archer's eVTOL aircraft.

Wisk is also prejudiced by Mr. Furman's deletion of Zee Aero, Cora Aero, and Wisk Aero emails from his Fastmail client. *Id.* at 221:18-25. These were permanent deletions from his cloud storage of these emails. *Id.* at 230:6-16. Although Archer and Mr. Furman claim that he saved the last surviving copy of these emails in a zip file, Wisk has no way to test Mr. Furman's claim that the file contains all of the emails that he deleted and it appears it doesn't. Archer claims that there are *68 emails and attachments* in this zip file, but has refused to produce the actual zip file. Ex. 10 at Appendix E; Ex. 15 (agreeing to produce files from the zip file, but not the zip file itself). And even a cursory review of the documents allegedly within the zip file reveal unexplained gaps related to information that concern Wisk's trade secrets. *See, e.g.*, Ex. 18 (the zip file contained ███ ███████████████████████████████████████████████████); Ex. 19 (the zip file contained a conversation with Tom Muniz, but no follow-up emails or context); Ex. 20 (the zip file contained a response to Geoff Bower about ██████████████, but is missing the original email). Even more important are the files as to which there is now no record (*i.e.*, the

1  complete collection of files Mr. Furman deleted from Fastmail but did not save to the zip file).

2  Wisk does not know, and now cannot know, what the spoliated evidence would have revealed.

3  Because Mr. Furman deliberately deleted these emails, it is reasonable to infer that they contained

4  the most damaging evidence to Archer—even direct evidence of trade secret misappropriation.

5          Finally, Wisk is prejudiced by Mr. Furman's deletion of a Wisk document that he admits

6  concerned the 2011, first-generation Zee aircraft. Ex. 1 at 248:11-23. He admits that this deleted

7  document contained technical information as to eVTOL transition from lift to cruise

8  configurations. *Id.* at 249:3-15. But that's all he can say. That benefits Archer. Meanwhile, Mr.

9  Furman can think of no way for Wisk to recover it. *Id.* at 248:24-249:2. These deletions leave an

10 unacceptable and highly prejudicial void in Wisk's right to obtain relevant information possessed

11 by only Archer or the ex-Wisk employees now working there. Archer's defense is that its ex-

12 Wisk employees never accessed or used any Wisk information in their work for Archer. Because

13 Furman destroyed the documents and the metadata from those documents, that cannot be known.

14 **IV.     WISK IS ENTITLED TO PRECLUSION SANCTIONS AND ADVERSE**

15 **INFERENCE INSTRUCTIONS**

16         The purpose of spoliation sanctions is to "avoid substantial unfairness to the [non-

17 spoliating] party[.]" *Inland Concrete Enters.*, 2011 WL 13209166, at *6. The sanctions Wisk

18 seeks are appropriate because: (1) Mr. Furman, and thus Archer, intentionally destroyed the

19 evidence; (2) Wisk has been severely prejudiced because it has lost direct evidence, unattainable

20 elsewhere, that could have supported its claims; and (3) the relief is narrowly tailored. *Nursing*

21 *Home*, 254 F.R.D. at 563.

22         ***First***, as explained above, Mr. Furman has admitted that he intentionally destroyed the

23 evidence to avoid legal consequences, and this intent can be imputed to Archer. *Colonies*

24 *Partners*, 2020 WL 1496444, at *10 ("the intent to deprive Plaintiffs of the text messages and

25 emails can be imputed to the County").

26         ***Second***, Wisk has been severely prejudiced. The destroyed evidence is the type to which

27 Wisk is entitled to make its case against Archer and cannot be recovered from other sources.

28 Indeed, it is these very deleted files that Wisk should have been able to show the jury. This

includes not only the documents' content but also information concerning the timeframe of the Wisk files Mr. Furman kept, the extent to which they contain trade secrets, when Mr. Furman accessed the Wisk files before he deleted them, and whether any other Archer employee accessed these files.  Mr. Furman and Archer have obstructed the jury's ability to answer these questions.

Archer may claim that Wisk has not been prejudiced because Mr. Furman purportedly saved a copy of some of the deleted emails in a zip file on his Archer-issued laptop.  Ex. 10 at 13-14.  But Wisk will never be able to test Archer's claim that the zip file contains all the deleted emails from Fastmail because Mr. Furman deleted the original emails from the Fastmail client.  In addition, Archer has refused to produce the actual zip file itself so that Wisk can independently verify that all the files within the zip file were in fact produced to Wisk.  Ex. 15.  Even if the zip file did contain all of the deleted emails—which Wisk disputes—and Archer produced all of those emails to Wisk, the zip file does not contain the many other documents Mr. Furman admitted deleting, including the Thunderbird mailbox file, the Wisk photos from the Apple photos folder, the Wisk Apple Messages, or the Wisk document in Mr. Furman's Dropbox account.  Archer will ask the jury to take Mr. Furman's word that the zip file contains all of the emails from Fastmail that Mr. Furman deleted, but the truth is that Archer does not know—and Wisk cannot know— whether that is true.  This constitutes permanent and irrevocable prejudice.

*Third*, the relief is narrowly tailored to the spoliation itself.  No lesser sanctions are appropriate.  Wisk seeks an order: (1) that, for all purposes in this case, including dispositive motions and at trial, it shall be taken as conclusively established that Mr. Furman had access to confidential and proprietary Wisk documents, photographs, and emails during his employment at Archer; (2) that, for all purposes in this case, including dispositive motions and at trial, it shall be taken as conclusively established that Mr. Furman shared that material with Archer, and that Archer used that material to help develop its eVTOL aircraft and related technologies; (3) an adverse inference jury instruction that the contents of the documents, photographs, and email spoliated by Mr. Furman would have been unfavorable to Archer; (4) an instruction informing the jury of Archer's obligation to preserve this evidence and its failure to do so, and (5) that, for all purposes in this case, Archer shall be precluded from adducing evidence or argument contrary to

1   any of the facts listed above.  This set of relief is narrowly tailored to include only the evidentiary

2   findings that Wisk likely would have been able to establish absent Archer's spoliation.

3        Adverse inference instructions are appropriate where "(1) [] the party having control over

4   the evidence had an obligation to preserve it at the time it was destroyed; (2) [] the records were

5   destroyed with a culpable state of mind; and (3) [] the destroyed evidence was relevant to the

6   party's claim or defense such that a reasonable trier of fact could find that it would support that

7   claim or defense."  *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1078 (N.D.

8   Cal. Oct. 25, 2006); *Glover*, 6 F.3d at 1329 (the culpable state of mind need not be bad faith).

9   These factors have been discussed and established in the sections above.

10       The appropriateness of the issue preclusion and evidentiary exclusion sanctions "depends

11  on the extent to which [Wisk was] prejudiced by [Mr. Furman's] deletion[s]."  *Id*.  As discussed

12  above, Wisk has and will continue to suffer significant prejudice from the evidentiary gaps caused

13  by Mr. Furman's acts.  Wisk's issue preclusion as to the contents and use of the deleted material,

14  and exclusion of evidence to the contrary is narrowly tailored to this specific prejudice.

15  **V.**     **ARCHER SHOULD BE SANCTIONED UNDER RULE 37(E)**

16       Archer should also be sanctioned under Rule 37, which "sets forth three criteria to

17  determine whether spoliation of ESI has occurred: (1) the ESI should have been preserved in the

18  anticipation or conduct of litigation; (2) the ESI is lost because a party failed to take reasonable

19  steps to preserve it; and (3) the ESI cannot be restored or replaced through additional discovery."

20  *Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771-CW, 2018 WL 4215602, at *3 (N.D.

21  Cal. Sept. 5, 2018). "[T]he court … only upon finding that the party acted with the intent to

22  deprive another party of the information's use in the litigation may: (A) presume that the lost

23  information was unfavorable to the party; (B) instruct the jury that it may or must presume the

24  information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

25  Fed. R. Civ. P. 37(e)(2).

26       ***First***, Archer had notice of this litigation—and thus a duty to preserve ESI—no later than

27  April 7, 2021, the date Archer was served with the complaint. ***Second***, Archer failed to take

28  enough steps to preserve the data; "a litigation hold is not, alone, sufficient; instead compliance

1   must be monitored." *Bagley v. Yale Univ.*, 318 F.R.D. 234, 239 (D. Conn. 2016) (citing *Mastr*

2   *Adj. Rate Mort. Trust 2006 v. UBS Real Estate Securities Inc.*, 295 F.R.D. 77, 85 (S.D.N.Y.

3   2013)).  *Bagley* offered several factors to consider in deciding whether such efforts were

4   reasonable, including what the recipients of the hold notice did in response and what further

5   action, if any, the noticing party took to preserve the evidence.  *Id.* As discussed above, Mr.

6   Furman's inaction in response to the hold notices shows that Archer failed to promote, much less

7   ensure, compliance and were thus not reasonable. Ex. 1 at 181:11-18 (Furman admitting that he

8   did nothing in response to the notices).  And despite reading the hold notices, he ***intentionally***

9   ***deleted*** relevant evidence.  *Id.* at 222:5-18.  His culpable state of mind can be imputed to Archer.

10  ***Third***, the deleted files cannot be restored or replaced through additional discovery.  *Id.* at 230:6-

11  23 (Furman admitted that he permanently deleted the documents and files).  No additional

12  discovery can cure this misconduct.  The existence of Wisk files and metadata on an Archer-issued

13  laptop or in Mr. Furman's possession while an Archer employee are unique pieces of evidence of

14  trade secret misappropriation.  No other evidence can be obtained from Archer to show the dates

15  of these deleted files, which Wisk trade secrets they contained, when and from where Mr. Furman

16  or any other Archer employee accessed them, or what Archer did with this information.

17       Finally, the deletions were intentional. Fed. R. Civ. P. 37(e)(2).  "[C]ourts have found that

18  a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is

19  reasonable to infer[] that the a party purposefully destroyed evidence to avoid its litigation

20  obligations."  *Porter*, 2018 WL 4215602 at *3.  As explained above, Mr. Furman's deletions were

21  not accidental.  They were admittedly done with the intent to avoid his obligation to produce

22  documents in response to Wisk's subpoena. Ex. 1 at 222:5-18.  "Intent may be inferred if a party

23  is on notice that documents were potentially relevant and fails to take measures to preserve

24  relevant evidence." *Colonies Partners*, 2020 WL 1496444, at *9.  Thus, an adverse inference

25  against Archer under Rule 37(e) is appropriate.

26  **VI.    WISK IS ENTITLED TO ITS ATTORNEYS' FEES**

27       Wisk is entitled to an award of the attorneys' fees and costs it incurred in connection with

28  this motion and its inquiry into Archer's spoliation. *Napster*, 462 F. Supp. 2d at 1078 ("Monetary

1  sanctions may be imposed where one party has wrongfully destroyed evidence."; "Plaintiffs are

2  entitled to an award of attorney fees that is reasonable in light of the degree of [] culpability.").

3  An award of attorneys' fees is also appropriate here under the Court's inherent authority because

4  the deletions were done intentionally and in bad faith. *See supra* at 8-9.  Fees are warranted

5  separately under Rule 37(e). *Aramark*, 2021 WL 864067, at *22 ("There is no requirement in

6  Rule 37(e) or the Committee Notes that a court must make a finding of bad faith before imposing

7  monetary sanctions.").  Indeed, fee shifting is warranted because Archer's and Mr. Furman's

8  spoliation has required months of work, including forensic document review, letter-writing,

9  depositions, and preparing this motion.  Wisk is prepared to submit a declaration tabulating and

10  demonstrating the reasonableness of its fees and costs, should the Court grant this relief. *See*

11  *Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2016 WL 3232793, at *6 (N.D. Cal.

12  June 13, 2016) (granting in part plaintiff's motion for sanctions and ordering plaintiff to file a

13  declaration justifying fees and an itemization of the fees and costs associated with the motion).

## CONCLUSION

15      Wisk respectfully requests that the Court grant Wisk's motion for sanctions.

16  DATED:  December 16, 2022          Respectfully submitted,

17                                     QUINN EMANUEL URQUHART & SULLIVAN, LLP

18                                     By    */s/ Brian E. Mack*
                                       _____
19                                         Yury Kapgan
20                                         Robert M. Schwartz
                                           Diane Cafferata
21                                         Patrick Schmidt
                                           Michael LaFond
22                                         Brian E. Mack
                                       Attorneys for Plaintiff Wisk Aero LLC