# EXHIBIT 14

**quinn emanuel** trial lawyers | san francisco

50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700

WRITER'S DIRECT DIAL NO.
**(415) 875-6423**

WRITER'S EMAIL ADDRESS
**brianmack@quinnemanuel.com**

July 26, 2022

**VIA ELECTRONIC MAIL**

| | |
|---|---|
| Diana Feinstein | Arturo J. González |
| Gibson, Dunn & Crutcher LLP | Morrison & Foerster LLP |
| 333 South Grand Avenue | 425 Market Street |
| Los Angeles, CA 90071-3197 | San Francisco, CA 94105-2482 |

Re: Wisk Aero LLC v. Archer Aviation Inc., Case No. 3:21-cv-02450-WHO (DMR)

Dear Diana and Arturo:

We write to raise serious concerns surrounding Mr. Scott Furman's deletion, on several occasions, of Wisk-related documents from his personal accounts/devices and from his Archer-issued laptop. Mr. Furman testified at his deposition yesterday to the following: (i) Mr. Furman received in November of 2021 the subpoena to produce all Wisk-related material in his possession, Furman Tr. at 178:14-16; (ii) on December 6, 2021, less than one month after receiving the subpoena, Mr. Furman performed searches for "remove thunderbirds files from mac" and "remove thunderbirds cache from mac," *id.* at 187:17-188:10; (iii) thereafter, Mr. Furman indeed deleted the Thunderbird application and associated mailbox file, containing an unknown number of Wisk-related email and attachments, from his Archer-issued laptop, *id.* at 197:11-198:8, 200:19-201:2, 207:19-24, 208:19-25; (iv) at around that same time, Mr. Furman also deleted Wisk-related photos from Apple Photos on his Archer-issued laptop, *id.* at 205:2-23, 208:2-5, 225:4-225:6; (v) at around that same time, Mr. Furman deleted Wisk-related Apple Messages on his Archer-issued laptop, *id.* at 207:14-18, 208:6-9, 224:25-225:3; (vi) around January 13, 2022, Mr. Furman downloaded Wisk-related emails through the Fastmail client and saved them in a zip file on his Archer-issued laptop, *id.* at 214:11-215:4; (vii) at around that same time, Mr. Furman *permanently* deleted Wisk-related emails from his cloud storage source, using the Fastmail client, *id.* at 221:14-222:4, 230:6-16; (viii) at around that same time, Mr. Furman deleted additional Wisk-related photos from Apple Photos, *id.* at 237:11-238:2; and (ix) Mr. Furman deleted a Wisk-related document related to the first-generation Zee aircraft from his Dropbox account, *id.* at 248:11-249:2. Mr. Furman also testified that at least some of the aforementioned documents would qualify as confidential and proprietary to Wisk. *Id.* at 238:16-242:14.

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Mr. Furman also testified that the above-mentioned zip file remains saved in his Archer-issued laptop. Furman Tr. at 215:5-6, 224:3-5. To the extent the zip file has not yet been produced to Wisk, we request it be produced immediately. Even then, production of the zip file does not rectify the harm already done—not only did Mr. Furman identify multiple documents that were permanently deleted and not saved in the zip file, Wisk has no way of knowing whether the zip file is a complete record of Mr. Furman's January 13 deletion. This is exacerbated by the fact that Mr. Furman was not even aware of the fact that he had a duty to preserve all documents in his possession in connection with the subpoena issued to him *or* in connection with the Archer's litigation hold notices. Furman Tr. at 180:4-7 ("Q. Yes. Well, did you – did you happen to read through the subpoena after you were served with it? A. I – I didn't read the subpoena at all."); *id.* at 180:16-18 ("Q. Okay. What did you do in response to receiving the subpoena? A. I didn't do anything."); *id.* at 180:19-23 (Q. Okay, did you realize that you had a duty to preserve all documents in connection with the subpoena? A. Again, I didn't – I didn't read the subpoena."); *id.* at 181:3-18 (testifying that he "didn't do anything" in response to the litigation hold notices because he didn't think they applied).

Wisk reserves the right to seek the appropriate relief, including sanctions, for example, in the form of an adverse inference at trial regarding Mr. Furman's numerous instances of spoliation of evidence and counsel's utter lack of appropriate advice to Mr. Furman regarding his responsibilities in connection with the litigation hold notices and Wisk's subpoena to Mr. Furman. *See Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006) (noting that spoliation sanctions can be imposed pursuant to either the court's "inherent power" or under Rule 37); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence," which includes the power "to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."). In the meantime, Wisk requests that Archer immediately supplement its discovery responses to reference the aforementioned testimony and documents. For example, at a minimum, Archer must supplement its response to Wisk's Interrogatory No. 1 regarding the zip file that Mr. Furman saved to his Archer-issued laptop containing the now-deleted Fastmail emails relating to his work at Wisk.

Separately, Mr. Furman was instructed at his deposition not to answer several questions on the basis of attorney-client privilege and common interest privilege. *E.g.*, Furman Tr. at 101:11-102:1 ("Q. Why did you create the ▮▮▮▮▮▮▮▮▮▮ e-mail address? A. I think that represents privileged communication . . . Q. Were you asked to create the ▮▮▮▮▮▮▮ e-mail address for some reason? MR. GONZALEZ: Hold on a second. I'm going to instruct you that if that would require you to disclose privileged communications, you should say, 'I can't answer that without disclosing privileged communications.' THE WITNESS: I can't answer that without disclosing privileged communication."); *id.* at 156:2-5 ("Q. Were any of your devices imaged as a result of that meeting with the attorney? MR. GONZALEZ: I'm going to instruct him not to answer that."); *id.* at 192:2-4 ("Q. Okay. And why were you trying to delete those files? A. That's privileged communications."). We disagree that the responses to these, and other, questions are privileged.

Wisk again reserves the right to seek the appropriate relief, including seeking leave to reopen Mr. Furman's deposition as to those questions. As an interim compromise, in response to this letter, Wisk requests that Archer and his personal counsel: (1) provide a full and complete description of the timing and substance of all communication between Mr. Furman and his personal counsel or Archer's counsel regarding any potential spoliation of evidence; and (2) explain the creation of the ▇▇▇▇▇▇▇▇ email address, including whether any Wisk-related documents were ever sent to that account; and (3) immediately produce the litigation hold notices that were sent to Mr. Furman in connection with this lawsuit. *See, e.g.*, *Thomas v. Cricket Wireless, LLC*, No. 19-cv-07270-WHA-AGT, 2020 WL 7344742, at *2 (N.D. Cal. Dec. 14, 2020) (finding a "sufficient preliminary showing of spoliation to overcome the attorney-client privilege that presumably attached to the litigation hold notice").

Very truly yours,

*/s/ Brian E. Mack*

Brian E. Mack
Attorney for Plaintiff, Wisk Aero LLC

3