GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted *pro hac vice*
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

*Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC, | CASE NO. 3:21-CV-02450-WHO (DMR) |
| Plaintiff, | **ARCHER'S OPPOSITION TO WISK'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE** |
| v. | |
| ARCHER AVIATION INC., | Hearing Date:      February 22, 2022 |
| Defendant. | Hearing Time:      2:00 p.m. |
| | Hearing Location: Courtroom 2 |
| | Honorable Judge William H. Orrick |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

<u>Page</u>

I. INTRODUCTION ....................................................................................................... 1

II. FACTS ...................................................................................................................... 3

    A.    Mr. Furman's Removes Wisk Materials From His Personal Devices and Accounts Before Starting at Archer ........................................................ 3

    B.    Archer Preserved All Archer ESI, Including Imaging Mr. Furman's Archer Laptop For The First Time in May 2021, Before Mr. Furman Deleted Any Documents ............................................................................................. 4

    C.    Mr. Furman Inadvertently Saves Wisk Materials He Did Not Know He Had to His Archer Laptop As Part of An Automated Data Sync ............................... 5

    D.    Archer Images Mr. Furman's Archer Laptop in May 2021 ........................... 6

    E.    Mr. Furman Un-Syncs His Personal Accounts from His Archer Laptop in December 2021 ........................................................................................ 6

    F.    Mr. Furman First Realizes His Personal Accounts Contain Wisk Materials in January 2022 ........................................................................................... 7

    G.    Archer Discovers Wisk Materials Synced to Mr. Furman's Archer Laptop, Images Mr. Furman's Archer Laptop Again, and Discloses to Wisk and the Court ....................................................................................................... 9

    H.    Archer Learns of the Attempted Deletions, Preserves and Produces All Wisk Documents, and Punishes Mr. Furman ....................................................... 9

III. LEGAL STANDARD ............................................................................................ 10

    A.    Rule 37(e) Provides the Exclusive Source of Sanctions for Spoliation of ESI ........... 10

    B.    Sanctions Under Rule 37(e) .................................................................... 12

IV. ARGUMENT ......................................................................................................... 12

    A.    Wisk Fails to Prove Spoliation……………………………………………12

        1.    Nothing Has Been Lost From Mr. Furman's Archer Laptop ......................... 13

        2.    With One Possible Exception, Nothing Has Been Lost from Mr. Furman's Personal Accounts ................................................................ 15

    B.    Wisk Fails To Prove Any Purportedly Destroyed Document is Irrecoverable Through Other Means ............................................................................ 17

    C.    Wisk Fails to Prove It Suffered Any Prejudice and Any Relief Would Be Far Greater Than Necessary to Cure That Non-Existent Prejudice ................... 18

    D.    Wisk Has Failed to Show Mr. Furman's Actions Can Be Imputed to Archer ........... 21

i

1

**TABLE OF CONTENTS**
(continued)

2
                                                                                                    **Page**

3        E.      The Relief Wisk Seeks Is Not Appropriate or Even Available Under Rule 37(e)...... 24

4    V. CONCLUSION ..................................................................................................................... 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARCHER'S OPPOSITION TO WISK'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT
CONTENTIONS
CASE NO. 3:21-CV-02450-WHO (DMR)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bagley v. Yale University*,
   318 F.R.D. 234 (D. Conn. 2016)..................................................................................24

*Best Label Co. v. Custom Label & Decal, LLC*,
   No. 19-CV-3051-SI (VKD), 2022 WL 1525301 (N.D. Cal. May 13, 2022)................................11

*Childers v. Shasta Livestock Auction Yard, Inc.*,
   190 Cal. App. 3d 792 (1987)....................................................................................21

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), *report & recommendation adopted*, 2020 WL
   1491339 (C.D. Cal. Mar. 27, 2020) .......................................................................12, 21

*Edifecs, Inc. v. Welltok, Inc.*,
   2019 WL 5862771 (W.D. Wash. Nov. 8, 2019) ...............................................................23

*Envy Haw. LLC v. Volvo Car USA LLC*,
   2019 WL 1292288, at *2 (D. Haw. Mar. 20, 2019)......................................................13, 16, 17

*Est. of Bosco by & through Kozar v. Cnty. of Sonoma*,
   No. 20-CV-4859-CRB, 2022 WL 16927796 (N.D. Cal. Nov. 14, 2022) ..................................11

*FiTeq Inc. v. Venture Corp.*,
   No. 13-CV-1946-BLF, 2016 WL 1701794 (N.D. Cal. Apr. 28, 2016).....................................12

*Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*,
   2015 WL 12746220 (C.D. Cal. Feb. 10, 2015)...........................................................22, 23

*In re Hitachi Television Optical Block Cases*,
   2010 WL 11748027 (S.D. Cal. Oct. 20, 2010) ...............................................................21

*Laub v. Horbaczewski*,
   2020 WL 7978227 (C.D. Cal. Nov. 17, 2020) ...............................................................12

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   No. 13-CV-4236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ....................................12

*Newberry v. County of San Bernardino*,
   750 F. App'x 534 (9th Cir. 2018) ..............................................................................12

*Nida v. Allcom*,
   2020 WL 2405251 (C.D. Cal. Mar. 11, 2020)................................................................16

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   328 F.R.D. 543 (N.D. Cal. 2018)...............................................................................12

*Perez v. Van Groningen & Sons, Inc.*,
    41 Cal. 3d 962 (1986) ..................................................................................................21

*Pettit v. Smith*,
    45 F. Supp. 3d 1099 (D. Ariz. 2014)..........................................................................24

*Pitney Bowes Government Solutions, Inc. v. United States*,
    94 Fed. Cl. 1 (2010) ....................................................................................................16

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002) ..........................................................................................10

*Ryan v. Editions Ltd. W., Inc.*,
    786 F.3d 754 (9th Cir. 2015)........................................................................................18

*Scott Griffith Collaborative Sols., LLC v. Falck N. Cal. Corp.*,
    No. 19-CV-6104-SBA (JCS), 2021 WL 4846926 (N.D. Cal. Sept. 10, 2021), *report &
    recommendation adopted*, 2021 WL 4846244 (N.D. Cal. Oct. 4, 2021)......................11

*Straitshot Communications, Inc. v. Telekenex, Inc.*,
    2012 WL 727271 (W.D. Wash. Mar. 6, 2012) ............................................................21

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17-CV-939-WHA, 2018 WL 646701 (N.D. Cal. Jan. 30, 2018) ......................2, 11

*WeRide Corp. v. Kun Huang*,
    No. 18-CV-7233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020).........................21

*Williams v. Williams*,
    No. 07-CV-4464-CW (LB), 2013 WL 3157910 (N.D. Cal. June 20, 2013)..................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. ..................................10

Judicial Council of Cal. Civil Jury Instructions No. 3720 (2022) ........................................20

**RULES**

Fed. R. Civ. P. 26(e)(1) ...........................................................................................................9

Fed. R. Civ. P. 37(e) ..............................................................................................................12

Fed. R. Civ. P. 37(e)(2) .........................................................................................................10

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

In support of its motion seeking extraordinary sanctions against Archer, Wisk represents that Scott Furman stored "potentially thousands" of Wisk documents on an "Archer-issued laptop," and that he subsequently "wiped the documents out of existence."  Mot. at 1-2.  That claim, repeated throughout Wisk's motion, is knowingly false.  Archer preserved every single Wisk document on Mr. Furman's Archer laptop, and Archer produced every one of those documents to Wisk.  Every Wisk document that was ever stored on Mr. Furman's Archer laptop remains in existence, having been preserved by Archer, and has been produced to Wisk.  Every one.

The same is true of all Wisk-related documents that Mr. Furman tried to delete from personal accounts: every single Wisk-related document (save for one old, irrelevant document) that Mr. Furman tried to delete has been preserved and produced.

Wisk's motion is full of, and based entirely on, critical misrepresentations of fact (and misstatements of law).  On the very first page of its brief, for example, Wisk claims: "By destroying [Wisk-related] documents, Archer has prevented Wisk from obtaining key evidence to make its case." Mot. at 1.  Every aspect of this sentence is false.  Archer did not destroy any documents; and, in fact, aside from reckless claims like this, Wisk does not actually contend otherwise.  No documents were actually destroyed; all Wisk-related material on Mr. Furman's Archer device was preserved and produced, and all Wisk-related material Mr. Furman sought to delete from personal accounts was preserved and produced, save the one document mentioned above.  Given that Archer in fact produced the supposedly destroyed documents, Wisk's failure to link any of those documents to an alleged trade secret undermines any notion that those documents constitute "key evidence."

Wisk also omits critical, undisputed information that refutes its motion.  As Wisk knows, Archer took an image of Furman's work laptop *before* the supposed deletions from the device, and later took a second image that captured the contents of a zip file with Wisk emails that Furman had saved on the laptop.  Collectively, those images preserved everything that Mr. Furman tried to delete. Incredibly, in a motion regarding whether material is lost, Wisk nowhere mentions these images.  Wisk contends that Mr. Furman deliberately deleted Wisk material from his work laptop in response to a subpoena, but this also is false; Mr. Furman testified that he was not aware of any Wisk information

when he removed **all** information from his personal device from his work device, which he did in response to a new policy at Archer regarding personal information on work computers.  Wisk mentions none of these facts.

Wisk also fails to inform the Court that when Archer discovered Wisk documents on Mr. Furman's Archer laptop early last year, Archer immediately informed both Judge Ryu and Wisk.  Dkt. 224.  Archer stated explicitly that it had made a forensic image of the device and thereby preserved the Wisk materials that had been transferred from Mr. Furman's personal accounts to the Archer laptop. But Wisk does not say one word in its twenty-page Motion about the fact that Archer revealed to Wisk and the Court that it had Wisk material as soon as Archer discovered it, or about Archer's imaging that preserved documents on Mr. Furman's Archer laptop.

In the end, there is only one document—which Wisk does not even claim ever made it to an Archer computer—that Furman had and is unaccounted for.  It is ten-years-old, without apparent relevance, and may well be in Wisk's possession.  Incredibly, when Archer inquired about which purportedly destroyed documents Wisk does not have, Wisk refused to answer.

In what may prove to be a preview of Wisk's opposition to summary judgment, Wisk repeatedly argues, without any supporting evidence and in conflict with clear percipient witness testimony, that it would be reasonable for this Court to assume that ex-Wisk employees engaged in trade secret misappropriation to benefit Archer.  Indeed, Wisk's overreach in seeking to have the Court relieve it of its burden of proof is further reflected by its request for extraordinary, draconian sanctions—such as that it be "conclusively established" that Mr. Furman used Wisk's confidential information at Archer despite all evidence to the contrary, with Archer being precluded from adducing evidence to the contrary.  These tactics reveal Wisk's Motion for what it truly is: a desperate attempt to accomplish through adverse inference what Wisk cannot accomplish through actual evidence.  In that regard, this motion is reminiscent of the *Waymo* case, where Wisk's present counsel brought a sanctions motion that, according to Judge Alsup, reflected "the recurring problem that Waymo seems unwilling or unable to prove its case at trial with qualified witnesses and evidence and seeks to have the Court fill in the gaps with adverse inferences instead."  *See Waymo LLC v. Uber Techs., Inc.*, No.

17-CV-939-WHA, 2018 WL 646701, at *18 (N.D. Cal. Jan. 30, 2018) (footnote omitted).  The same can be said here.

Wisk's "spoliation" motion is entirely without merit, and Wisk knew that when it filed it—as demonstrated by all of the information Wisk knew but withheld from the Court, most notably of course the dispositive fact that no information is actually lost.  The motion should be denied.

## II.      FACTS

### A.      Mr. Furman Removes Wisk Materials From His Personal Devices and Accounts Before Starting at Archer

Mr. Furman worked at Wisk and its predecessors for eight years, and at all times, Wisk allowed and encouraged employees to use their personal devices for work.  *See* Furman Dep. Tr. (Ex. 1)[1] 63:7–11, 157:18–23; Ex. 2 (Jan. 8–10, 2020 Emails between Mr. Furman and Wisk HR); Dkt. 298 (July 14, 2022 Hr'g Tr.) 4:21–25; Ex. 3 (Wisk employee handbook) at WISK00007936; Nightengale Dep. Tr. (Ex. 4) 96:22–25.  Not surprisingly, by the end of his tenure at Wisk, Mr. Furman had a large quantity of Wisk documents on his personal devices.

In January 2020, Mr. Furman gave Wisk his two-weeks' notice so he could pursue his career at Archer, but Wisk instead ordered him to leave two days later.  Furman Dep. Tr. (Ex. 1) 158:2–7, 173:1–9. Wisk also informed Mr. Furman he needed to remove all Wisk materials from his personal devices and accounts that same week.  *Id.*; *see also id.* 158:2–9.  This was no easy task given the volume.

Wisk gave Mr. Furman no guidance on how to search for Wisk information in his personal accounts among his co-mingled personal photographs and messages.  *See* Ex. 2; Furman Dep. Tr. (Ex. 1) 238:9–15.  And Wisk had no policy to inventory everything Furman turned in (Ex. 5 (Wisk SCDA Trade Secret Questionnaire) at WISK00034033) and it did not identify to Mr. Furman any Wisk material—let alone "trade secrets"—that he failed to return.

In contrast to Wisk's offboarding procedures, before Mr. Furman began at Archer, he was provided with assistance in complying with Archer's robust onboarding process, which Archer put in place to shield itself from competitors' information, including Wisk's.  Archer's process included paying an attorney experienced in employee mobility issues to counsel all new employees who came

---

[1] All references to "Ex." are to exhibits to the Declaration of Diana Feinstein ("Feinstein Decl.").

ARCHER'S OPPOSITION TO WISK'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE
CASE NO. 3:21-CV-02450-WHO (DMR)

Gibson, Dunn &
Crutcher LLP

to work for Archer, including Mr. Furman, about how to comply with former employers' offboarding requirements and ensure they did not retain their former employers' confidential information. *See* Dkt. 58-13 (Adcock Decl.) ¶¶ 52–60; Dkt. 58-18 (Goldstein Decl.) ¶¶ 12–13; Dkt. 58-37 (Aparicio Decl.) ¶¶ 2–5. In addition, each employee (again including Furman) signed an "Employee Proprietary Information and Arbitration Agreement" requiring the employee to represent that they had searched for and returned all property and confidential information belonging to all prior employers. Ex. 6 (Mr. Furman's Employee Proprietary Information and Arbitration Agreement); Dkt. 58-13 (Adcock Decl.) ¶¶ 53-60.

With guidance from the outside onboarding counsel that Archer provided, Mr. Furman spent considerable time reviewing his personal devices and accounts where he may have stored Wisk materials and returned what he found to Wisk. Furman Dep. Tr. (Ex. 1) 158:2–159:12; Ex. 2. He sent Wisk's HR a detailed email listing the steps he took to remove Wisk materials and represented to Wisk after that considerable effort that "[a]ll company information and materials known to me of a confidential or secret nature have been removed from my personal devices and accounts." Ex. 2. Furman testified that he genuinely believed he had successfully removed all confidential Wisk material from his personal accounts and devices when he made that representation to Wisk. Furman Dep. Tr. (Ex. 1) 177:19–23; 222:2–18. He did not learn of his error in that regard for another two years.

**B.      Archer Preserved All Archer ESI Before Mr. Furman Deleted Any Documents**

Wisk claims Archer limited its preservation efforts to issuing two litigation hold notices. Mot. at 3–4, 18–19. Archer did far more than that.

Archer first sent a litigation hold notice on January 9, 2020, the day after it received the first of a series of letters from Wisk threatening litigation. Feinstein Decl. ¶ 2. On February 14, 2020, Archer re-issued the litigation hold notice to all employees, including Furman, who had joined Archer in late January 2020. *Id.* Archer issued additional litigation hold notices to Furman and others in April 2021 and August 2021. *Id.* Archer's in-house and outside legal counsel repeatedly reminded Archer employees to abide by the litigation hold notices. *Id.*

Importantly, at the outset of this litigation, Archer forensically preserved the Archer devices of the Archer employees who had departed Wisk for Archer, as well as Archer's co-founders and Chief

Engineer.  *Id.* ¶ 3.  That included the laptop Mr. Furman used in his work at Archer—the focus of Wisk's Motion—which Archer's e-discovery vendor imaged on May 8, 2021.  *Id.*[2]  **That forensic image preserved all data**—including emails, iPhotos, iMessages, and their accompanying metadata—as they existed on the Archer laptop on that date.  Harrison Decl. ¶¶ 17, 19–21.  That imaging preceded any alleged deletions.

## C.   Mr. Furman Inadvertently Saves Wisk Materials He Did Not Know He Had to His Archer Laptop As Part of An Automated Data Sync

Shortly after joining Archer in January 2020, Furman installed the Mozilla Thunderbird email application on his Archer laptop to enable him to access his personal email account from that laptop. Furman Dep. Tr. (Ex. 1) 138:13–24.  He also logged into his personal Apple iCloud account on that laptop.  *Id.* 167:7–10.  By simply connecting these two accounts to his Archer laptop, the vast majority of the messages in the Mozilla Thunderbird application and all of the photos and other contents of the Apple iCloud account transferred automatically to the device.  Furman Dep. Tr. (Ex. 1) 254:16–255:8; Ex. 10 (Ltr. from J. Krevitt to M.J. Ryu (Dkt. 224)); Harrison Decl. ¶¶ 8–11.[3]  There was no manual transfer; the files synced as part of an automated process common to these types of applications Harrison Decl. ¶¶ 8–11, 17, 19.  Doing so swept into the Archer laptop every family photo, Happy Birthday email, utility bill and other files in those personal accounts.

Mr. Furman was not aware that this synchronization process resulted in his transfer of a number of Wisk emails from his personal accounts to his Archer laptop, because he did not then know that his personal accounts contained any Wisk documents.  Furman Dep. Tr. (Ex. 1) 182:22–183:1, 184:3–7. Mr. Furman testified, for example, that "I had, I believed, always kept my personal e-mail and my work e-mail very segregated," and when he left Wisk "I did … undergo a search, looking for Wisk e-mails,

---

[2]  Mr. Furman's Archer laptop was not "issued" by Archer in the traditional sense; instead, Mr. Furman purchased a MacBook to use for his Archer work, and Archer reimbursed Furman for the cost of that device.  Furman Dep. Tr. (Ex. 1) 338:1–18.  Nor was Mr. Furman's Archer laptop ever connected to a network or server that would allow another Archer employee to remotely access the items on that device; Archer has no such network or server.  *Id.* 338:18–340:16; Declaration of Brett Harrison ("Harrison Decl.") ¶ 18.

[3]  With respect to emails synced through Thunderbird, it was a "vast majority" of the contents because, unlike the transfer of iPhotos, the syncing process does not always transfer one-hundred percent of the emails from an email server to a device.  Harrison Decl. ¶ 9, n.4.

Gibson, Dunn &
Crutcher LLP

that is Wisk.aero e-mails, and I didn't find any in personal email." *Id.* 158:21–159:4.  Mr. Furman did come across four Wisk-related photos among his personal iPhotos shortly after Wisk filed its complaint and after he received a second additional litigation hold notice.  *Id.* 243:22–244:3.  He immediately alerted his personal counsel and the photos were ultimately produced.  Feinstein Decl. ¶ 13, n.5.

**D.    Archer Images Mr. Furman's Archer Laptop in May 2021**

Shortly after Wisk filed its lawsuit in April 2021, Archer forensically preserved over 40 Archer devices, including Mr. Furman's Archer laptop.  *Id.* ¶ 3.  A complete forensic copy of Mr. Furman's Archer laptop was made on May 8, 2021.  *Id.*

**E.    Mr. Furman Un-Syncs His Personal Accounts from His Archer Laptop in December 2021**

Wisk claims that in December 2021, "Mr. Furman searched the Internet to find out how to remove Wisk files from his Archer-issued laptop *that he did not want to be found*."  Mot. at 4 (emphasis added).  In support, Wisk cites Mr. Furman's deposition testimony that he ran searches for how to remove Thunderbird files from a Mac.  *Id.* (citing Furman Dep. Tr. 187:17–188:10).  Mr. Furman's ensuing testimony that Wisk does not cite states that those searches had nothing to do with an effort to delete Wisk files.  Furman Dep. Tr. (Ex. 1) 198:10–13, 199:8–13, 218:7–12.

In December 2021, Archer adopted a policy on the use of personal email on Archer laptops.  *Id.* 200:4–18.  Contemporaneous with that new policy, Mr. Furman Googled how to remove his personal email account from the Archer device.  *Id.* 187:17–189:20.  He then deleted the Thunderbird application from his Archer laptop, as well as the copies of personal emails synced to his Archer laptop.  *Id.*; *see also id.* 201:3–17.  Mr. Furman testified that when he removed personal files based on Archer's new December 2021 policy, he "was not aware there were any Wisk documents in that information."  *Id.* 207:19–24, 236:22–24.

At the same time, in December 2021, Mr. Furman logged out of his personal Apple iCloud account on his Archer laptop and removed the synced personal iPhotos and personal iMessages from his Archer laptop.  *Id.* 207:14–18, 226:6–16.  Mr. Furman testified that he did so because of Archer's new policy regarding use of personal accounts on Archer laptops.  *Id.* 205:12–14 ("Q. And why did you delete your Apple Photos?  A. Because of this aforementioned policy change.").

Mr. Furman's removal of the copies of the Thunderbird cached emails and the copies of the iPhotos and iMessages from his Archer laptop did not permanently delete those materials because they still resided in the email server and iCloud. Harrison Decl. ¶ 26. It was as if someone made a photocopy of a passport they kept in a drawer and then lost the photocopy; the passport would still be in the drawer. Second, to continue the metaphor, Archer already had made its own copy of the passport when it imaged Mr. Furman's Archer laptop in May 2021. Mr. Furman may have thrown away Copy #1, but, in addition to the passport still being in the drawer (*i.e.*, the email server and iCloud accounts), Archer's Copy #2 was preserved. And to the extent any personal email, iPhoto, or iMessage on the Archer laptop pre-dated the May 2021 image date—as any Wisk-related file would have—***Archer produced it to Wisk***. Feinstein Decl. ¶ 7.

## F.   Mr. Furman First Realizes His Personal Accounts Contain Wisk Materials in January 2022

Mr. Furman received a subpoena to produce all Wisk-related material still in his possession in November 2021. Dkt. 384-18. Mr. Furman's personal counsel produced documents in response to the subpoena in March, April and May 2022. Feinstein Decl. ¶ 13. In the interim, Mr. Furman searched for Wisk material in his personal accounts. This time, on or about January 13, 2022, he found something. Furman Depo Tr. (Ex. 1) at 220:16–221:3. Specifically, Mr. Furman logged into his personal email through an application called fastmail.com and ran searches for Wisk-related domain names.[4] *Id.* 219:24–220:22, 221:14–17. Mr. Furman testified he was "shocked to find Wisk materials in [his] e-mail," which he "didn't expect … to be there." *Id.* 221:19–222:9. According to Mr. Furman's testimony, he "freaked out":

> I thought – Wisk has this habit of – of making outrageous accusations against Archer employees, and I knew they were going to claim that I had known the emails all along and I retained it and I had used it improperly, and I was afraid. I was afraid that the same thing would happen to me that happened to – Jing Xue had FBI agents [c]ome through his door at 6 a.m. with guns drawn. I did not want that scenario at all for me and my family. I was fucking scared.

*Id.* 222:9–18.

---

[4]   Fastmail.com and Thunderbird are two methods of accessing the *same* personal email account associated with Furman's personal ████████████ email address. Fastmail.com (similar to Gmail.com) accesses the cloud-based email account through the Web, whereas Thunderbird is an email client application (similar to Microsoft Outlook). Harrison Decl. ¶¶ 7–10.

Panicking, Mr. Furman saved the Wisk emails he found to a zip file, downloaded the zip file to his Archer laptop, and deleted the corresponding Wisk material from his personal email account. Specifically, Mr. Furman testified:

> I searched for e-mails that were to or from Zee.aero or to Cora.aero or to Wisk.aero [email addresses], and I found a whole bunch of them that I didn't expect to see, and I … separated the[m] out into a … zip folder, which I stored on my Archer-issued laptop, and I deleted the other copy of them from the … from the email … from the Fastmail folder.

*Id.* 221:19–222:1, 214:16–215:16 ("I deleted them when I … was very panicked about deleting them, but I still thought maybe this is something that I need to undo, so I saved those e-mails, the e-mails I deleted, into a zip file that I stored on my Archer work laptop.").

Significantly, Mr. Furman **did not delete any emails other than those he saved to the zip file that he then placed on his Archer laptop**. As discussed further below regarding Archer's February 2022 image of Mr. Furman's Archer laptop, because Furman copied every email he deleted from his personal account to a zip file saved to his Archer laptop, no "deleted" email is unaccounted for. *Id.* 230:17–231:5 ("Q. Okay. And it's your testimony that you – before permanently deleting them, you a copy in a zip file. A. Yes. Q. Were there any e-mail[s] that you permanently deleted that you did not put in the zip file? A. …. The answer is no.").

Around when Mr. Furman deleted emails in January 2022, he also deleted iPhotos from his personal iCloud account for the same reason. *Id.* 237:11–238:15. None of those iPhotos was lost. Mr. Furman's personal iPhotos synced to his Archer laptop when he first logged into his iCloud account from that device in January 2020, and the image Archer made of Furman's Archer laptop in May 2021 captured every one of those iPhotos. Harrison Decl. ¶¶ 11, 19–21.

In addition to the emails and iPhotos, Mr. Furman deleted a single document—a 2013 critique of the first-generation Zee.Aero aircraft built in 2011—from his personal Dropbox account. Furman Dep. Tr. (Ex. 1) 248:11–23; Declaration of Scott Furman ("Furman Decl.") ¶ 4. Archer does not possess a copy of that document; Wisk refuses to say whether it does. Feinstein Decl. ¶ 21.

**G.      Archer Discovers Wisk Materials Synced to Mr. Furman's Archer Laptop, Images Mr. Furman's Archer Laptop Again, and Discloses to Wisk and the Court**

In late February 2022, Archer's counsel identified what appeared to be personal Scott Furman emails to and from Wisk personnel among documents collected from Mr. Furman's Archer laptop. Archer investigated the matter and learned Mr. Furman had inadvertently retained some Wisk documents in his personal accounts and that copies of those documents had synced to his Archer laptop through the Thunderbird application and iCloud (as describe above).  Feinstein Decl. ¶ 5.  Archer immediately informed both Wisk and the Court of this information.  *Id.* ¶ 8; Ex. 10.  Archer also immediately sent Mr. Furman's Archer laptop to be forensically imaged for a second time by Archer's forensic expert FTI Consulting.  Feinstein Decl. ¶ 6.  This second image captured the zip file Furman had added to the device in January 2022.  Harrison Decl. ¶ 23.  Archer has produced every responsive Wisk document from this second image, just as it produced every responsive Wisk document from the May 2021 image.  Feinstein Decl.  ¶ 7.  Archer also conducted a forensic investigation and determined there is no evidence that Mr. Furman or anyone else at Archer used or shared the Wisk materials synced to Mr. Furman's Archer laptop.  Harrison Decl. ¶¶ 18, 22, 24.

**H.      Archer Learns of the Attempted Deletions, Preserves and Produces All Wisk Documents, and Punishes Mr. Furman**

On or about March 1, 2022, shortly after Archer discovered inadvertently retained Wisk materials from Mr. Furman's personal accounts had synced to his Archer laptop, Archer separately learned that Mr. Furman had deleted Wisk-related emails and iPhotos directly from his personal accounts in January 2022.  Feinstein Decl. ¶ 10.  Archer worked with Mr. Furman's personal counsel and forensic consultants to determine whether or not the documents had in fact been lost (they had not).  *Id.* ¶ 11.  Through this investigation, Archer discovered the zip file of deleted personal emails intact on the February 2022 image of Mr. Furman's Archer laptop.  Archer has preserved and produced the entire contents of that zip file.[5]  *Id.* ¶ 7.

---

[5]  As discussed in the Feinstein Declaration, the zip file consists of a mix of Wisk-related and personal emails Furman sent or received during his employment at Wisk as well as personal emails he received between January 6 and 13, 2022.  Feinstein Decl. ¶ 7, n.3.  Archer initially only produced the Wisk-related emails in that zip file, which were the only documents responsive to discovery requests issued by Wisk.  *Id.*  After a series of meet and confers in August 2022, Archer supplemented its production to include all emails in the zip file, irrespective of subject matter.  *Id.* ¶¶ 17–18.  As of the close of fact

ARCHER'S OPPOSITION TO WISK'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE
CASE NO. 3:21-CV-02450-WHO (DMR)

Gibson, Dunn &
Crutcher LLP

1   Based on Mr. Furman's failure to immediately inform Archer when he realized he had

2   inadvertently retained Wisk-related materials on his personal devices and accounts, and his attempt to

3   delete those materials, Archer disciplined Mr. Furman by denying him the 2022 annual performance

4   bonus he otherwise would have received.  Dkt. 384-13.

5   Archer preserved every Wisk document on Mr. Furman's Archer laptop by imaging the device

6   in May 2021 and February 2022.  And Archer has produced every Wisk document that was on Mr.

7   Furman's Archer laptop in productions sourced from those images.

## III.   LEGAL STANDARD

### A.   Rule 37(e) Provides the Exclusive Source of Sanctions for Spoliation of ESI

10   Wisk moves for sanctions against Archer based on both Rule 37(e) and the Court's inherent

11   authority to prevent abuse of judicial process.  There has been no spoliation under Rule 37 or the

12   Court's inherent authority, but in this District, Rule 37(e) is the exclusive source of authority for

13   sanctions for ESI spoliation.  The distinction matters.  Rule 37(e)(2) explicitly limits the relief available

14   in the event of a finding of spoliation, and virtually all of the relief Wisk requests, including that certain

15   facts be conclusively established, is not even available under Rule 37(e)(2).

16   Moreover, the relief Wisk requests, such as an adverse instruction, is available "***only*** upon

17   finding that the party acted ***with the intent to deprive*** another party of the information's use in the

18   litigation."  Fed. R. Civ. P. 37(e)(2) (emphasis added).  By contrast, older cases applying inherent

19   authority like *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002),

20   "authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."

21   Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Adv. Comm. Note") (citing

22   *Residential Funding*).

---

23   discovery, Archer believed it had produced the full contents of the zip file.  *Id*. ¶ 18.  However, after
24   reviewing Wisk's Motion, Archer discovered that its e-discovery vendor had deduplicated the contents
      of the zip file prior to production, resulting in the exclusion of 68 emails in the zip file *that were exact*
25   *duplicates of other emails Archer previously had produced. Id.* ¶ 19.  Accordingly, on January 3, 2023,
      Archer produced the 68 duplicate emails and amended its response to a Wisk interrogatory correct its
26   identification of the Bates numbers applied to Wisk-related documents from the zip file.  *Id.* ¶ 20; Ex.
      7 (Jan. 3, 2023 Ltr. From D. Feinstein to B. Mack).  Although the parties' ESI Protocol (Dkt. 167-1,
27   App'x A) did not require it, on January 3 Archer also produced a metadata overlay to aid Wisk in
      understanding that emails in the zip file also were located in a different file repository on Furman's
28   Archer device; Archer produced a native copy of the entire zip file as well.  *Id.* ¶ 20.

Wisk quotes *Residential Funding* in seeking sanctions under the Court's inherent authority and advocating a negligence standard.  Mot. at 7.  Wisk says nothing about the Advisory Committee's Note to the 2015 Amendment of Rule 37(e), which expressly rejects the *Residential Funding* case on which Wisk relies.  Adv. Comm. Note.  The Note states that when addressing failure to preserve ESI, Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used."  *Id.*  Courts in this District that have considered the issue have concluded the 2015 Amendment eliminates the availability of inherent authority sanctions for alleged ESI spoliation.[6]  Wisk's motion says nothing about this caselaw.

It is difficult to view Wisk's omission as an oversight.  At least four of Wisk's counsel (including its lead counsel and the signatory of its Motion) were on the team representing Waymo, which briefed and lost this very question in *Waymo*, 2018 WL 646701, at *14 (briefing at *Waymo* Dkts. 2197-4, 2240, 2266).  Judge Alsup cited and quoted the Advisory Committee Note in rejecting Waymo's request to invoke the Court's inherent authority.  He held that "[b]ecause the evidence in question consists of electronically-stored information, FRCP 37(e), not inherent authority, supplies the controlling legal standard."  *Id.*  Later that year, a Ninth Circuit panel held that "[t]he detailed language of Rule 37(e) … 'foreclose[d] reliance on inherent authority' to determine whether terminating sanctions were appropriate."  *Newberry v. Cnty. of San Bernardino*, 750 Fed. App'x. 534, 537 (9th Cir. 2018) (unpublished) (second bracketed alteration in original) (quoting Adv. Comm. Note).[7]

---

[6]  *See, e.g., Best Label Co. v. Custom Label & Decal, LLC*, No. 19-CV-3051-SI (VKD), 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022) ("The Court concludes that Rule 37(e), as amended in 2015, displaces the Court's inherent authority to award sanctions with respect to ESI."); *Est. of Bosco by & through Kozar v. Cnty. of Sonoma*, No. 20-CV-4859-CRB, 2022 WL 16927796, at *6 (N.D. Cal. Nov. 14, 2022) (Rule 37(e) "*exclusively* governs the remedies available for spoliation of" ESI (emphasis added)); *FiTeq Inc. v. Venture Corp.*, No. 13-CV-1946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) ("[T]he Advisory Committee's Notes to Rule 37(e) explicitly foreclose" relying on inherent authority to impose spoliation sanctions); *but see, e.g., Scott Griffith Collaborative Sols., LLC v. Falck N. Cal. Corp.*, No. 19-CV-6104-SBA (JCS), 2021 WL 4846926, at *10 (N.D. Cal. Sept. 10, 2021), *report & recommendation adopted*, 2021 WL 4846244 (N.D. Cal. Oct. 4, 2021) (relying on inherent authority to impose ESI spoliation sanctions even after the 2015 Amendment without addressing the amendment's impact).

[7]  Notwithstanding *Newberry* and the numerous courts adopting the reasoning of the Advisory Committee Note, some courts outside this District have held that the 2015 amendment to Rule 37 does not preclude a court from sanctioning a party for ESI spoliation pursuant to the court's inherent authority.  *See, e.g., Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020), *report & recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020)

**B.** **Sanctions Under Rule 37(e)**

Wisk bears the burden to prove by a preponderance of the evidence that spoliation occurred. *See, e.g.*, *Laub v. Horbaczewski*, 2020 WL 7978227, at *17 (C.D. Cal. Nov. 17, 2020).  Rule 37 sets out the requirements for a finding of spoliation and imposition of sanctions.  A court only can impose sanctions under Rule 37(e) if the ESI in question is ***actually lost*** and ***irrecoverable through other means***, including from the party alleging spoliation.  Fed. R. Civ. Proc. 37(e).  Additionally, among other factors, the moving party must show must show that it suffered prejudice as a predicate to a sanctions award.  Fed. R. Civ. P. 37(e).[8]

## IV.    ARGUMENT

**A.** **Wisk Fails to Prove Spoliation**

The *sine qua non* of a motion alleging spoliation of electronically stored information (ESI) is that the ESI "is lost."  Fed. R. Civ. P. 37(e); *see, e.g.*, *Envy Haw. LLC v. Volvo Car USA LLC*, 2019 WL 1292288, at *2 (D. Haw. Mar. 20, 2019).  Spoliation will not be found, and "[s]poliation sanctions are not available … when information is not lost." *Id.*; *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) ("Rule 37(e) essentially functions as a decision tree.  The threshold inquiry is whether ESI has been 'lost' ….").

Incredibly, Wisk has filed a spoliation motion where it has not proven one document is lost. Wisk alleges documents were deleted on two separate occasions: (i) in December 2021, Wisk alleges that Mr. Furman deleted "from his *Archer-issued laptop*" "potentially thousands" of Wisk-related emails, photos, and iMessages; and (ii) in January 2022, Wisk alleges that Mr. Furman again deleted Wisk email and photos from his personal accounts.  Mot. at 2, 4–5, 9.  Wisk does not particularize what it claims was "lost" in these separate alleged deletion events, but argues repeatedly that "Mr. Furman wiped the documents out of existence."  Mot. at 2.  Wisk's allegations are objectively disprovable.

(collecting cases showing a split in the Central District on the continued availability of inherent-authority sanctions for ESI spoliation after the 2015 Amendment to Rule 37(e)).

[8] While Rule 37(e)(2) on its face applies only to adverse inference and terminating sanctions, the Court must "'ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent ….'"  *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-4236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (citation omitted).

Gibson, Dunn &
Crutcher LLP

***Before*** the earliest date on which Wisk alleges Mr. Furman attempted to delete any document from any device or account, ***Archer had forensically imaged the entirety of Mr. Furman's Archer laptop***, as part of its company-wide preservation of ESI.  As a result, when Mr. Furman removed from his Archer laptop the Thunderbird email application that previously allowed him to access his personal email, as well as copies of synced emails, iPhotos, and iMessages (the alleged December 2021 deletion), not a single Wisk document was lost because months earlier Archer made an image of Mr. Furman's Archer laptop.  Harrison Decl. ¶¶ 26–27.  Similarly, when Mr. Furman removed Wisk emails from his personal email account (the alleged January 2022 deletion), he copied those emails into a zip file, saved the zip file on his Archer laptop, and Archer separately imaged the entire contents of that file.  Furman Dep. Tr. (Ex. 1) 221:19–222:1, 214:16–215:16, 230:17–231:5; Feinstein Decl. ¶¶ 7, 11.

Through its two images, Archer preserved *every* Wisk file that Mr. Furman ever deleted from any device or account (with a singular irrelevant exception), and Archer has produced every one of those documents to Wisk.  As a result, Wisk has filed a high-pitched spoliation motion that fails to demonstrate the loss of any ESI.  But Wisk never once addresses that reality, because nowhere in Wisk's twenty-page motion does it refer to either of the two images by which Archer preserved the very documents that Wisk claims were wiped out of existence.

In addition to ignoring the critical forensic images by which Archer preserved the documents at issue, Wisk repeatedly mischaracterizes or ignores Mr. Furman's sworn testimony in regard to the events at issue here, as shown below.

### 1.    Nothing Has Been Lost From Mr. Furman's Archer Laptop

Archer has not destroyed a single Wisk-related document. That is an unchallenged fact, notwithstanding Wisk's carefully constructed, and deliberately misleading, accusation in the Introduction of its brief:  "By destroying these documents, Archer has prevented Wisk from obtaining key evidence to make its case."  Mot. at 1.  Wisk does not directly allege document destruction by Archer because it knows that did not happen.

Wisk's argument is limited to what *Mr. Furman* did in two alleged deletion events, only the first of which concerned deletions from his work laptop.  Wisk argues that Mr. Furman "stored" "documents, photographs, and emails" from Wisk "on his Archer-issued laptop," and after receiving a

document subpoena in November 2021 he "intentionally destroyed all of these materials to keep Wisk from finding out that he had them." Mot. at 1.  Thus, Wisk alleges that Mr. Furman knowingly took Wisk documents with him when he left Wisk's employ, and then intentionally deleted them from his work laptop.  These allegations, which form the basis of Wisk's motion, are not true.  Wisk offers ***no evidentiary support*** for these critical assertions, and Mr. Furman's testimony and contemporaneous emails (Ex. 2) are directly to the contrary.  As discussed below, Mr. Furman testified he did not realize he had any Wisk information when he left Wisk, and did not realize there was any Wisk material in the trove of material he removed from his Archer device following a change in Archer policy precluding use of Archer devices for personal information.

In fact, there is no dispute that Mr. Furman originally attempted to load all of his personal emails and iCloud account onto his Archer laptop shortly after joining Archer in January 2020. Mr. Furman did so through his use using an email synchronization application named "Thunderbird" and logging into his iCloud account.  Furman Dep. Tr. (Ex. 1) 190:13–16, 167:7–10, 254:16–255:8. He testified clearly and unequivocally that he did so without realizing that Wisk materials were among the massive number of emails, iPhotos, and iMessages that could now be accessed through either his Archer laptop or directly through his personal accounts.  *Id.* 182:22–183:1, 184:3–7.

Critically, Archer had made a forensic copy of Mr. Furman's Archer laptop in May 2021.  And when Archer did so, that image captured every document—***every Wisk-related document*** that Mr. Furman unknowingly had on the device.  That critical fact is undisputed.  It also is nowhere mentioned in Wisk's motion.

In December 2021, seven months ***after*** Archer imaged his laptop for the first time, Mr. Furman removed the Thunderbird application from his Archer laptop and logged out of his iCloud account.  *Id.* 201:3–17.  This had the effect of removing from his Archer laptop the material he had put there from his personal accounts.  This is the "deletion" and "destruction" of documents on which Wisk chiefly bases its motion.  Mr. Furman removed the personal information to comply with a new Archer policy that prohibited the use of Archer computers for personal email.  *Id.* 200:4–18, 205:12–14.  At that time, Furman was completely unaware that he possessed any Wisk-related documents.  *Id.* 207:19–24, 236:22–24.

Wisk argues precisely to the contrary, representing to the Court (without specifying the time but wrongfully implying that it was in or after January 2022) that Mr. Furman "actually deleted the Thunderbird application and associated mailbox file, ***knowing that he was deleting Wisk emails*** and attachments from his Archer-issued laptop." (Mot. at 10, emphasis added).  That claim is false, and directly contrary to Mr. Furman's sworn testimony.  Shockingly, in making that assertion, Wisk suggests Mr. Furman admitted he knew he was deleting Wisk information.  Mr. Furman actually says the exact opposite:

> **Q**    Okay.  And did any of those -- let's start
> with the e-mail.  Did any of the e-mail that ended
> up being deleted because of removal of Thunderbird
> relate to your work at Wisk?
>
> **A**    Yes, ***but I was not aware of it at the time
> of deletion.***

Furman Dep. Tr. (Ex. 1) 207:19–24, cited at Mot. at 10 (emphasis added).  Thus, Wisk's repeated suggestions to this Court that Mr. Furman knew he was deleting Wisk information is simply untrue.

Wisk's fundamental premise that Mr. Furman knew he was deleting Wisk emails when he removed the Thunderbird application from his work laptop requires him to have committed perjury.

Moreover, severing the connection between his personal accounts and work device did not "destroy" any document.  Harrison Decl. ¶ 26.  The documents at issue remained accessible to Mr. Furman through his personal accounts.  *Id.*  And all such documents had already been imaged by Archer, which imaging, of course, was unaffected by the removal of the Thunderbird application.  *Id.* To be clear, nothing was lost by the removal of the personal accounts from Mr. Furman's work laptop because Archer already had made an image of the device.

### 2.    With One Possible Exception, Nothing Has Been Lost from Mr. Furman's Personal Accounts

The second deletion event that Wisk tries to characterize as spoliation occurred in January 2022, when Mr. Furman deleted a number of Wisk-related emails and iPhotos directly from his personal accounts.  Again, ***no Wisk-related emails or photos were lost***.  And with the possible exception of one document, no Wisk-related documents were lost either.  Every single Wisk-related document, e-mail, and photo Mr. Furman deleted was saved, preserved, and ultimately produced to Wisk.  Nothing has been lost; no spoliation occurred.

Mr. Furman put the deleted emails in a zip file and downloaded that zip file onto his Archer laptop. Furman Dep. Tr. (Ex. 1) 214:16–215:16 ("I deleted them when I … was very panicked about deleting them, but I still thought maybe this is something that I need to undo, so I saved those e-mails, the e-mails I deleted, into a zip file that I stored on my Archer work laptop."). Specifically, Mr. Furman testified he put *every* email he deleted from his personal account in January 2022 in a zip folder on his Archer laptop, which Archer has produced to Wisk. *Id.* 230:17–231:5 (testifying that there were no emails that he deleted other than those he put into the zip file). In February 2022, Archer again imaged Mr. Furman's Archer laptop, thus preserving the contents of that zip file in its entirety. Feinstein Decl. ¶¶ 7, 11.[9]

Wisk does not dispute that in January 2022 Mr. Furman removed Wisk emails from his personal email account and put them in a zip file that he then downloaded to his Archer laptop. Wisk does dispute that the zip file contained "all of the deleted emails" (Mot. at 17), but it offers nothing but speculation to counter Mr. Furman's sworn testimony. But speculation, and certainly Wisk's false representations, do not carry Wisk's burden to show spoliation. *See Nida v. Allcom*, 2020 WL 2405251, at *3, *7 (C.D. Cal. Mar. 11, 2020) (denying spoliation motion where alleged spoliator threw away boxes of documents after those documents had been provided to, and produced by, counsel, rejecting speculative assertion that "there were unproduced, relevant documents in those boxes at the time they were trashed").

The evidence reflects that one document and one document alone was not captured in either of Archer's two images of Mr. Furman's Archer laptop. That document was removed from Mr. Furman's personal Dropbox account as part of the January 2022 "deletion" event discussed above. As discussed, *infra* at 20, the document at issue may not be lost to Wisk and in any event has no apparent relevance to this action.

In short, Archer preserved every Wisk file ever on Mr. Furman's Archer laptop through two separate images of the device. Archer's counsel searched the two images of Mr. Furman's Archer laptop and produced every single Wisk-related document ever on that device. Every one. Without the

---

[9]   Any deleted iPhotos, just like nearly all of the deleted emails, had been captured in the first image of Mr. Furman's Archer laptop taken nearly a year earlier in May 2021. Harrison Decl. ¶ 26.

loss of a single document, there is no basis for a Rule 37 sanctions motion against Archer.  *Pitney Bowes Gov't Sols., Inc. v. United States*, 94 Fed. Cl. 1, 9 (2010) (rejecting spoliation claim when the deleted documents were produced from backup tapes, explaining "there is no longer a question of spoliation because the documents were never in fact destroyed"); *Williams v. Williams*, No. 07-CV-4464-CW (LB), 2013 WL 3157910, at *5 (N.D. Cal. June 20, 2013) ("Spoliation is no longer an issue because the photographs were found and produced … in advance of Plaintiff's … motion for sanctions.").  Even to the extent Mr. Furman destroyed the ten-year-old Dropbox document, Wisk fails to carry its burden under Rule 37.

## B.    Wisk Fails To Prove Any Purportedly Destroyed Document is Irrecoverable Through Other Means

"Information is 'lost' for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians."  *Envy Haw.*, 2019 WL 1292288, at *2 (citation omitted).  And the moving party—here, Wisk—bears the burden to demonstrate *with actual evidence* that the relevant information is irretrievably lost.  *Id.* (denying sanctions under Rule 37(e) when movant had not demonstrated that deleted ESI was not available from third parties or the movant's own sources).

Wisk offers no evidence—no declaration, no witness testimony, nothing—to show that Wisk does not already have every document Mr. Furman purportedly destroyed.  That includes the one Wisk document Mr. Furman deleted from his personal Dropbox folder regarding a Wisk proof-of-concept vehicle.  Furman described that document with sufficient specificity at his deposition such that Wisk should be able to locate it.  *See* Furman Dep. Tr. (Ex. 1) at 249:3–25.  Archer has asked Wisk whether Wisk still possesses Mr. Furman's Wisk-issued computers, or has preserved their contents, as well as the results of any forensic analysis Wisk performed on those devices.  Feinstein Decl. ¶ 21; Ex. 7.  Archer also expressly requested that Wisk disclose what efforts Wisk has undertaken, if any, to locate and preserve any emails to or from Mr. Furman's personal email account that remain in Wisk's possession, custody, or control, as well as the Wisk document Mr. Furman deleted from his Dropbox account that Wisk says it does not have.  *Id.*

In response, Wisk *did not deny* it had Furman's Wisk-issued device(s) and knows exactly what they contain.  Ex. 8 (Jan. 7, 2023 Ltr. from B. Mack to D. Feinstein).  Wisk even *did not deny* it

1   has the Wisk document Furman deleted from his personal Dropbox account. *Id.* Instead, Wisk

2   pronounced that "Wisk's possession of Mr. Furman's *Wisk*-issued devices is not relevant to the case

3   or Wisk's motion." *Id.* (emphasis in original).

4       Wisk's claim is contrary to law. If Wisk already possesses the materials it claims have been

5   destroyed, that is not only relevant, it is dispositive. *Envy Haw.*, 2019 WL 1292288, at *2. Without

6   showing Wisk has searched its own systems for the purportedly missing documents and that Wisk

7   does not have them, Wisk cannot prove they are irrecoverable. *See id.* at *3; *Ryan v. Editions Ltd.*

8   *W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (affirming denial of sanctions under district court's

9   inherent authority in part because movant had failed to show the documents at the center of the

10  motion were not otherwise available from other sources).

11  ## C.  Wisk Fails to Prove It Suffered Any Prejudice and Any Relief Would Be Far Greater Than Necessary to Cure That Non-Existent Prejudice

12      Rule 37(e)(1) requires a court finding of prejudice as a prerequisite to any sanctions for failure

13  to preserve ESI. Wisk has suffered no prejudice for the simple reason no information has been lost.

14      Having no evidence whatsoever of prejudice, Wisk combines false facts with rampant

15  speculation to conjure up the *possibility* of prejudice. Wisk insists that it does not know and "will never

16  know how many emails Mr. Furman deleted [from his Archer laptop] or their contents." Mot. at 14.

17  This claim is false. Archer preserved ***all*** of the e-mails Mr. Furman had on his Archer laptop months

18  before Mr. Furman deleted his Thunderbird email application and cached emails. It did so through the

19  forensic images it took of Mr. Furman's work laptop (which Wisk never mentions). Wisk has ***all*** the

20  e-mails that were ever on Mr. Furman's Archer laptop, and knows their contents. Wisk has been

21  deprived of nothing.

22      Wisk's prejudice argument largely boils down to its contention that there ***may*** be other

23  documents that have not been preserved and produced. It does not attempt to explain how those

24  documents would have eluded capture by one or both of Archer's images of Mr. Furman's Archer

25  laptop, because, of course, Wisk has elected not to acknowledge the fact of Archer's imaging. But

26  none of that deters Wisk from piling speculation upon speculation about the hypothesized "lost"

27  documents. Thus, without a shred of evidence, Wisk contends that "it is reasonable to conclude that

28

Mr. Furman took Wisk trade secrets and then used them in his work at Archer." Mot. at 15.  Enhancing the supposed probative value of the non-existent documents, Wisk argues that they "could be **direct evidence** of the trade secret misappropriation claims against Archer."  Mot. at 14 (emphasis in original).  And, further gilding the lily, Wisk continues by declaring that "it is reasonable to infer that they contained **the most damaging evidence** to Archer—even direct evidence of trade secret misappropriation.  Mot. at 16 (emphasis added).

But, again, the whole premise for Wisk's argument is wrong because **not a single email or any other document has been lost**.  Wisk's unfounded speculation that there may be more documents that have not been preserved is contrary to the forensic evidence, contrary to the sworn testimony of Mr. Furman, and supported by nothing.  And, even if there were lost documents, it would be up to Wisk to present evidence of prejudice, not simply postulate that documents supposedly just shy of signed confessions of guilt may have existed but escaped imaging conducted by Archer's counsel before Mr. Furman was even aware that he had Wisk documents within his personal accounts.

Wisk's tower of conjecture is built upon an assumption directly at odds with Mr. Furman's deposition testimony, *viz.*, that "Furman took Wisk trade secrets and then used them in his work at Archer."  Mot. at 14–15.  That assumption ascribes both knowledge and intent to Mr. Furman, and cannot be reconciled with Furman's testimony that he did not know that any Wisk materials were in his personal accounts when he went to Archer, and that he never accessed any Wisk documents for his work at Archer.  *See supra* at 7–8.[10]  There is no *evidence* to the contrary.

Wisk also materially misstates facts to create the impression that there may be additional photos that were not preserved and produced.  Wisk represents to the Court, for example, that Mr. Furman testified that he had around 30,000 photos that he deleted from his Archer laptop, that *"[s]ignificantly, Mr. Furman admitted that the deleted photos related to his work at Wisk,"* and that Archer produced

_____

[10] Wisk's claim is also contrary to Judge Ryu's finding in this case (which this Court affirmed) that mere possession of documents does not equate to, or even imply, use.  As Judge Ryu noted regarding a device used by Dr. Jing Xue, "that there are Wisk documents on Xue's device is not in and of itself suspicious because the record is undisputed that Wisk let their employees use their personal devices to download and send Wisk documents."  Dkt. 298 (July 14, 2022 Hr'g Tr.) 4:21–25; *e.g.*, *id.* 11:2–4, 13:20–14:1, 27:6–21; Dkt. 310 (affirming ruling).  That is especially so where, as Judge Ryu noted and is true here, "there was a pretty quick push out the door."  Dkt. 298 at 27:11–12.

only a handful of the photos.  Mot. at 15 (emphasis in original) (citing Furman Dep. Tr. at 205:20–23; 208:2–5).  Every part of Wisk's claim is false.  Mr. Furman did not "admit" that all of the deleted photos related to his work at Wisk; he testified that "some" of the deleted photos did.  *See* Furman Depo Tr.(Ex. 1) 205:9–11, 205:20–23, 208:2–5.  And none of the photos were lost, not one.  Archer has found and produced ***every single*** Wisk-related photo on Mr. Furman's Archer laptop.  Tens of thousands of non-Wisk-related purely personal photos (overwhelmingly of his family) remain on the image of Mr. Furman's Archer laptop.  Feinstein Decl. ¶ 7, n.2.  Archer preserved all of them, but did not produce them or list them in its interrogatory response because they have nothing to do with Wisk.

Separately, there is only one deleted document—the one Mr. Furman deleted from his personal Dropbox account—that Archer did not produce, and that is because it never reached an Archer computer.  Furman Decl. ¶ 4.  Nowhere does Wisk try to explain the relevance of the "technical critique of the 2011 first-generation Zee aircraft" to any specific trade secret, much less how its deletion prejudices Wisk.  Mot. at 5.  But, the problem with Wisk's argument is more than lack of an explanation—the problem is its falsity.  Wisk claims that Mr. Furman testified about his deletion of the Dropbox document, confirmed that it "concerned the 2011, first-generation Zee aircraft," and testified that it "contained technical information as to eVTOL transition from lift to cruise configurations."  *Id.*  Wisk's motion then adds these assertions:  "But that's all he can say.  That benefits Archer."  *Id.*  Neither is true.  It is not all Mr. Furman could or did say.  He identified the document as a "2013 critique" that he described as a "presentation proposed … to change the design" of Wisk's first-generation aircraft in some way Mr. Furman testified that he could not recall.  Furman Dep. Tr. (Ex. 1) 248:16–18, 249:3–24.  That level of identification should allow Wisk to determine whether it possesses a copy of the document in its files—presumably there were a multiple recipients of such a presentation.  Notably, Wisk does not claim to have looked for the document in its files and has refused to respond to Archer's inquiries.  Feinstein Decl. ¶¶ 22248:16–18, 23.

Finally, there is no reason whatsoever to assume the single missing document has anything to do with a Wisk trade secret or would have any benefit to Archer.  Apparently Wisk expects the Court to simply accept, without explanation or evidence, that a decade-old proposal to change the design of Wisk's *first-generation* "proof of concept" aircraft is somehow relevant to this case in which claims

that Archer stole the configuration of its radically different *sixth-generation* aircraft.  Wisk identifies no trade secret to which the 2013 document could pertain, has established no link between the document and Wisk's proof of misappropriation, and has failed to show that Archer had anything to do with the document's deletion.  Archer has caused no prejudice, and Wisk has suffered no prejudice.

## D.    Wisk Has Failed to Show Mr. Furman's Actions Can Be Imputed to Archer

Wisk knows it cannot possibly meet the requirements for spoliation sanctions against Archer based on Archer's conduct.  Wisk thus resorts to trying to impute Mr. Furman's conduct to Archer, but there is no basis to do so.

At the outset, Wisk claims that "[s]poliation can be imputed to the employer solely because the person who destroyed the evidence was then its employee."  Mot. at 12.  That is a striking misstatement of the law.  No case—not the one out-of-district case Wisk cites or any other—stands for that proposition.  In fact, the one case Wisk cites makes clear that imputation requires an employee to be "acting within the scope of his employment."  *Straitshot Commc'ns, Inc. v. Telekenex, Inc.*, 2012 WL 727271, at *4–6 (W.D. Wash. Mar. 6, 2012).[11]  Mr. Furman was clearly not acting with the scope of his employment when he "panicked" and deleted material to protect himself and his family, and did so in violation of Archer's clear and repeated instructions.

Under California law (which Wisk does not cite), conduct is within the scope of one's employment if it "is reasonably related to the kinds of tasks that the [employee] was employed to perform" or "is reasonably foreseeable in light of the employer's business or the [employee's] job responsibilities."  Judicial Council of Cal. Civil Jury Instructions No. 3720 (2022).  Wisk does not even

---

[11]    Other cases Wisk cites also show that imputation requires the employee's conduct to be within the scope of their employment, but none justifies imputation here.  *See WeRide Corp. v. Kun Huang*, No. 18-CV-7233-EJD, 2020 WL 1967209, at *3, 13 (N.D. Cal. Apr. 24, 2020) (involving founder and CEO who "controlled" a company that engaged in company-wide automatic deletion); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *2, *3 (C.D. Cal. Feb. 27, 2020) (imputing ex-District Attorney's spoliation of materials from political campaign email account and personal email he used for prosecutorial work on behalf of the defendant employer County); *In re Hitachi Television Optical Block Cases*, 2010 WL 11748027, at *2 (S.D. Cal. Oct. 20, 2010) (holding employee copied files "in the course and scope of his employment" (emphasis added)).  Wisk's other cited cases, *Childers v. Shasta Livestock Auction Yard, Inc.*, 190 Cal. App. 3d 792, 805 (1987) and *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 969 (1986), relate generally to the principle of *respondeat superior*, but have no factual similarities to Wisk's allegations.

Gibson, Dunn &
Crutcher LLP

1   attempt to show Furman falls within either category.  That is hardly surprising considering Archer did

2   not employ Mr. Furman to delete emails on his personal email account, or reasonably expect him to do

3   so; the deletions were not meant to benefit Archer; and they violated Archer's instructions.

4   As Mr. Furman testified repeatedly, his actions were motivated by a deeply personal fear that

5   he and his family would be caught in FBI crosshairs.  Furman Dep. Tr. (Ex. 1) 222:7–18 ("I was afraid

6   that the same thing would happen to me that happened to – Jing Xue had FBI agents [c]ome through

7   his door at 6 a.m. with guns drawn. I did not want that scenario at all for me and my family. I was

8   [expletive] scared.").  Mr. Furman was motivated to act for *personal reasons* in deleting non-Archer

9   items from his *personal accounts*.  In fact, Mr. Furman testified that he was not even aware he had the

10  Wisk material, never accessed it, and deleted it in a panic when he discovered its existence.  *Id.* 182:22–

11  183:1, 184:3–7, 207:19–208:1, 222:7–18.  There is, therefore, no basis whatsoever to conclude that his

12  deletions were within the scope of his employment and, thus, imputable to Archer.

13  Wisk provides just three conclusory justifications for imputing Mr. Furman's alleged spoliation

14  to Archer.  *See* Mot. 11–12.  Each is without merit.

15  *First*, Wisk claims—without a shred of evidence and contrary to Mr. Furman's sworn testimony

16  and other evidence—that "[t]he only possible reason for Mr. Furman's retention of Wisk confidential

17  files on an Archer laptop was to use them in connection with his substantially similar work at Archer,"

18  and "[t]hus there is a clear nexus between Archer's employment of Mr. Furman and his spoliation."

19  Mot. at 12.  There is no support whatsoever for Wisk's conclusory (and serious) allegation that Mr.

20  Furman retained information to use it at Archer.  Nor would that even establish a "nexus between

21  Archer's employment of Mr. Furman and his spoliation" in any event.

22  Mr. Furman testified under oath that until January 2022, he never knew he had—and thus never

23  used—the Wisk materials mixed among his tens of thousands of personal communications and photos.

24  Furman Dep. Tr. (Ex. 1) 218:9–12, 344:1–23. Wisk does not cite anything from the mountains of

25  evidence it has obtained in this case to prove otherwise.

26  And, when Mr. Furman deleted materials, he acted against Archer's express and repeated

27  directives to preserve relevant documents.  *Supra* at 4.  When Archer learned of Mr. Furman's actions,

28  it moved swiftly to investigate and to confirm the removed files had not been lost.  *Supra* at 9.  Archer

then disciplined Mr. Furman for taking actions contrary to the litigation hold notices.  *Supra* at 10; Dkt. 384-13.  Any of these facts alone supports the conclusion Mr. Furman acted outside the scope of his Archer employment when he attempted to delete files—taken together, they compel it.

Thus, once again, the actual evidence is diametrically opposed to Wisk's conjecture, presenting circumstances like those in *Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc*., 2015 WL 12746220 (C.D. Cal. Feb. 10, 2015).  There, the court refused to attribute the employee's deletions to their employer when the deletions were against the employer's instruction to retain documents, done without the employer's advance knowledge or permission, and were "a substantial deviation from [the employee's] employment duties."  *Id.* at *10.  The *Gemsa* court held the employee's actions were "undertaken for personal purposes" even though the employer—which acted promptly to try to capture the contents of the employee's computer—punished the employee for his conduct.  *Id.*[12]

*Second*, Wisk makes the bizarre claim (again unsupported by any case citation) that because Archer's counsel made objections  at Mr. Furman's deposition, Mr. Furman must have acted in the scope of his employment.  Mot. at 12.  Archer's counsel allowed Mr. Furman to answer the questions about the deletions, and objections obviously do not suggest that Mr. Furman's conduct—which was done contrary to Archer's explicit instructions—was somehow within the scope of employment.

*Third*, Wisk claims (again with no authority) that because Archer punished Mr. Furman for his deletions, those deletions must have been in the scope of his employment.  According to Wisk, "Archer would not have docked Mr. Furman's compensation unless it believed that his conduct fell within the scope of his employment."  Mot. at 12.  That argument is not only nonsensical, it also is wrong as a matter of law.  Actions to punish an employee indicate conduct was ***outside*** the scope of employment. *See Gemsa Enters.*, 2015 WL 12746220, at *10 (no *respondeat superior* liability when employer promptly took corrective action, including punishing employee and attempting to recover files).

Because Mr. Furman did not act within the scope of his employment when he violated Archer's instructions and deleted material to protect himself, his conduct cannot be imputed to Archer.

---

[12] *See also Edifecs, Inc. v. Welltok, Inc.*, 2019 WL 5862771, at *5 (W.D. Wash. Nov. 8, 2019) (alleged spoliation could not be attributed to employer because movant "did not present evidence that the Employees deleted text messages to protect [the employer], as opposed to protecting themselves").

Nevertheless, Wisk goes on to claim that "Archer failed to properly enforce the litigation hold notices and Wisk's subpoena," and that its efforts "fell far below any reasonable standard."[13]  Mot. at 9, 12. That would not convert Mr. Furman's conduct to being within the scope of his employment, as required for imputation, even if Wisk's allegations were true.[14]  But, they are not.

Even before Wisk threatened any litigation, Archer hired counsel to advise Mr. Furman (and other employees) during the onboarding process to ensure they had no prior employers' confidential information.  *Supra* at 3-4.  Archer issued numerous litigation hold notices—including one more than one year ***before*** the lawsuit—and repeatedly advised its employees of their obligations to preserve. *Supra* at 4.  Archer later hired counsel that advised and worked with Mr. Furman to respond to Wisk's subpoena.  *Supra* at 7.  Archer imaged Mr. Furman's Archer laptop multiple times, including within a month after Wisk filed lawsuit, which was seven months *before* Wisk claims Mr. Furman removed anything from the device.  *Supra* at 6, 9.  Wisk denies none of these facts, but simply asserts Archer should have done more.  The fact is, Mr. Furman made his deletions not because he was unaware of his duty to preserve, but despite that duty out of "fear that Wisk would falsely accuse him of committing a crime."  Furman Depo Tr.  204:18-19.

### E.    The Relief Wisk Seeks Is Not Appropriate or Even Available Under Rule 37(e)

Wisk seeks extraordinary relief.  Wisk asks this Court to deem it conclusively established that Mr. Furman used Wisk confidential information at Archer, even though all of the evidence, including Mr. Furman's sworn testimony, disproves that proposition.  Mr. Furman testified that he was not even

---

[13]   Wisk cites just one out-of-district case—*Bagley v. Yale University*, 318 F.R.D. 234, 238, 239 (D. Conn. 2016)—for the proposition Archer failed to take reasonable steps to preserve ESI.  *Bagley* did not even rule on a spoliation motion.  *Id.* at 237.  And it involved a party's "unreasonable delay" in issuing litigation hold notices and its failure to monitor responses to surveys about what devices containing relevant information the recipients may possess.  *Id.* at 241.

[14]   "Fairness" in no way requires imputing Furman's conduct to Archer because Archer is the "only defendant" Wisk decided to sue.  Mot. at 13.  Wisk is not entitled to benefit from choosing to invent a claim Archer used Wisk trade secrets rather than seeking relief against the individuals that Wisk claims misappropriated them.  Nor should Wisk obtain relief on fairness grounds when it once again misstates a case holding to try to do so.  Wisk cites *Pettit v. Smith*, 45 F. Supp. 3d 1099 (D. Ariz. 2014), as an example of a court that "imposed sanctions on a party for another person's spoliation because fairness required it") (Mot. at 9 (emphasis added)), when in fact the *Pettit* court held that it "will not impute spoliation" to defendants."  45 F. Supp. 3d at 110-11 (emphasis added).

aware of the Wisk information, and never used any at Archer.  As noted above, Wisk's draconian relief is designed to relieve it of the burden it cannot actually meet in this case: the burden actually to show misappropriation with evidence.

When Wisk's counsel in this case filed a sanctions motion seeking adverse inferences in the *Waymo* case, Judge Alsup found that the motion reflected "the recurring problem that Waymo seems unwilling or unable to prove its case at trial with qualified witnesses and evidence and seeks to have the Court fill in the gaps with adverse inferences instead."  *Waymo*, 2018 WL 646701, at *18.  That is precisely the case here as well.

In fact, the requested relief here is so extreme virtually none of it is actually appropriate pursuant to Rule 37(e), even if spoliation had occurred.  Rule 37(e)(2) is explicit that, upon a finding the party acted with bad intent, the court may "instruct the jury that it may or must presume the information was unfavorable to the party."  Fed. R. Civ. P. 37(e)(2)(B).  Wisk seeks much more, asking the Court to hold it to be "conclusively established" that Mr. Furman accessed confidential Wisk data at Archer, that Archer used that data to develop its aircraft, and that Archer cannot offer evidence to prove otherwise.  Mot. at i (requested sanctions 1, 2, and 5).  Rule 37(b)—which Wisk does *not* invoke— contemplates such relief where a party fails to comply with a court order; Rule 37(e) does not.[15]

## V.   CONCLUSION

For the reasons set out above, Archer respectfully requests that Wisk's motion be denied in full.

---

[15] *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 2022 WL 16641829 (C.D. Cal. Nov. 2, 2022), addresses this distinction between the types of relief permitted by Rule 37(b) and Rule 37(e)(2).  In that case, the plaintiffs moved the Court "to punish Defendants' spoliation misconduct by granting issue and evidentiary sanctions in the form of finding certain facts established under Rule 37(b)(2)(A)(i)." *Id.* at *42.  The RG Abrams court held, however, that "such sanctions are not available under Rule 37(e)(2), the framework under which spoliation sanctions must be considered." *Id.* (emphasis added). Instead, "Rule 37(e)(2) permits only an adverse inference … that the lost information was unfavorable to the spoliating party." *Id.*

DATED: January 23, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Josh A. Krevitt*
       Josh A. Krevitt

*Attorneys for Defendant Archer Aviation Inc.*

ARCHER'S OPPOSITION TO WISK'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE
CASE NO. 3:21-CV-02450-WHO (DMR)