Hon. Donna M. Ryu, Magistrate Judge (N.D. Cal.)

Re: *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-cv-02450-WHO (DMR)

Dear Judge Ryu:

Pursuant to the Court's December 12, 2022 Order (Dkt. 380), Wisk Aero and Archer Aviation submit this joint letter brief for Wisk's motion to compel production of unredacted documents from Archer. *See* Dkt. 371.

**Wisk's Statement.** In opposing Wisk's motion for a preliminary injunction, Archer filed a declaration from Brett Harrison, a forensic consultant Archer hired to analyze "Archer devices." Harrison's declaration stated that he found "none of the 851 documents that Wisk identified as a trade secret" on those "Archer devices." Dkt. 58-24 ¶ 37. True or not, Archer deliberately hid from the Court and Wisk that Harrison had also analyzed the ***personal*** devices of ex-Wisk employees working at Archer, and Archer is still hiding the results of that analysis—*i.e.*, whether those devices contained any Wisk documents or other information—by claiming "privilege."

The Court should be startled to learn that Archer's consultant examined these non-Archer-owned devices. Throughout this litigation, Archer has resisted Wisk's discovery into "personal" devices on the grounds that Archer lacked control over them; and the Court has relied on Archer's representations that it "lacked control" over those devices when denying Wisk's attempts to discover their contents. *See, e.g.*, Dkt. 295. Archer's representations, it turns out, were not true: Nearly a year after the PI proceedings, Archer produced two reports confirming that Harrison's investigation included the personal devices of Archer's ex-Wisk employees; and that Archer shared those reports with third party Atlas Crest—the company Archer later merged with. (Archer-NDCA-01761127 (Harrison's June 2, 2021 presentation to Archer and Atlas Crest); Archer-NDCA-01778024 (May 27, 2021, Archer-Atlas Crest meeting minutes)). At that time, Atlas Crest was deciding whether, or on what terms, it would proceed with the proposed merger. These documents show that Archer disclosed the results of Harrison's investigation to Atlas Crest as part of merger discussions, while Archer withheld that information in discovery.

When Archer finally produced these documents to Wisk, it redacted the identity of some of the devices Harrison examined, as well as his findings about them, claiming privilege and work product. In other words, Archer selectively disclosed only a part of Harrison's investigation in his preliminary injunction declaration, but shielded the remainder from the Court and Wisk. The documents suggest (and Archer does not deny) that the hidden part of his investigation was into personal devices of Archer's ex-Wisk employees Diederik Marius, Tom Muniz, and John Melack.

Archer bears the burden to establish the applicability of both the attorney-client and work-product privileges. *United States v. Richey*, 632 F.3d 559, 566–57 (9th Cir. 2011); *Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp. 3d 1009, 1013 (N.D. Cal. 2014). Archer cannot meet that burden. *First*, Archer and Harrison prepared the June 2, 2021 presentation primarily to meet the business need to placate Atlas Crest. Archer has not substantiated any privilege over that information.

*Second*, even if the information had been privileged, Archer's disclosure of Harrison's investigation to third-party Atlas Crest (including as embodied in the two documents noted above), when the parties were engaged in an adverse, arm's-length negotiations, results in waiver. Archer cannot claim "common interest" privilege over disclosures made for a business purpose, during a negotiation. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578–80 (N.D. Cal. 2007).

1

*Third*, Archer waived any privilege by selectively relying on only part of Harrison's investigation in opposing Wisk's PI motion—and presenting a misleading version of events to the Court—while redacting portions of the underlying investigation (*i.e.*, the identity of *some* of the devices and *some* of Harrison's findings). The law imposes a waiver when a party relies on aspects of an investigation as a sword, while using privilege as a shield to hide the same investigation's unfavorable findings. *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016). Archer's selective disclosure waived any privilege or work product over the investigation, as well as documents related to it. *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (waiver extends to "related, protected information").

*Fourth*, one of Archer's defenses to misappropriation is that it conducted a reasonable investigation. That puts Mr. Harrison's investigation at issue, and is therefore a separate basis for waiver. *See, e.g.*, *McIntyre v. Main St. & Main Inc.*, 2000 WL 33117274, at *3 (N.D. Cal. Sept. 29, 2000) ("[D]efendant cannot rely on the investigation by outside counsel as part of its defense, while at the same time shielding the investigation from discovery. Any use of the investigation in its defense would waive the privilege.").

*Finally*, given that Archer's selective disclosure in opposing Wisk's PI motion, and subsequent misleading representations about its control over employee devices, may have infected multiple court rulings in this proceeding, fairness dictates that the truth about Archer's investigation be revealed. The jury needs to know whether the devices Archer has shielded to date contained Wisk's trade secrets. **This Court should compel Archer to produce unredacted versions of Archer-NDCA-01761127, Archer-NDCA-01778024, the results of Mr. Harrison's review of the hidden devices, and any other documents or communications related to the same subject matter; and to supplement responses to discovery requests that seek information on devices that Archer had sufficient control over for Mr. Harrison to investigate, including Interrogatories No. 1, 11, 16, and 24, RFPs No. 10, 11, 30, 33, 36, and 39, and RFI No. 21**. *See Wadler*, 212 F. Supp. 3d at 851 (explaining that "the disclosure of [a privileged presentation regarding an investigation] … resulted in waiver of attorney-client privilege not only as to the document itself but also any privileged communications about the specific matters disclosed in the [presentation]").

**Archer's Statement.** Wisk's motion improperly seeks to vastly expand the scope of relief Wisk originally sought (Dkt. 371) and that this Court ordered the parties to brief, including another attempt by Wisk to gain access to Messrs. Marius, Melack, and Muniz's personal devices, which the Court has repeatedly denied. Dkts. 233, 295, 310. Wisk knows it cannot carry its burden of showing Archer misappropriated and used Wisk's purported trade secrets, so it has sought throughout this litigation to conflate individuals' inadvertent personal possession of Wisk material with *Archer's* possession (and use) of Wisk material. This time, Wisk improperly challenges privilege and argues waiver in order to get at the personal devices. Wisk's motion should be denied because the redacted portions of the two documents at issue (May 27, 2021 Atlas Crest Board meeting minutes and a June 2, 2021 PowerPoint) are privileged, and there has been no waiver.

Wisk does not dispute that redacted portions of the Board meeting minutes had a primarily legal purpose. In any event, the redactions in both documents—each labeled "Privileged and Confidential"—are appropriate. In the May 27 meeting minutes, the document and corresponding privilege log show Archer has redacted updates counsel provided to the Atlas Crest Board. In Brett Harrison's June 2 status report—which was attached to an email from Atlas Crest's General Counsel and Secretary, labeled "ATTORNEY CLIENT PRIVILEGED COMMUNICATION,"

2

and sent to recipients including six outside attorneys for Atlas Crest—Archer has redacted the undisclosed choice of certain devices a non-FTI vendor collected. Harrison's declaration shows he started working on April 7, 2021, to evaluate the claims in Wisk's lawsuit filed the day before, and not "primarily to meet the business need to placate Atlas Crest." *See* Dkt. 58-24 ¶ 3.

In this case, Wisk must prove its allegation that *Archer* misappropriated Wisk trade secrets. In its defense, Archer submitted the Harrison declaration, stating that "[o]ur investigation of Archer systems had a single goal—locate all data on Archer's systems that appeared to come from Wisk, if any such data exists." Dkt. 58-24 ¶ 2. In an SEC filing, Atlas Crest—Archer's merger partner—likewise stated that FTI conducted a forensic investigation "of Archer" to "search for Wisk's trade secrets and confidential information on Archer's systems," which included "dozens of Archer devices used by Archer's employees." *See* https://tinyurl.com/mrdkaw53. Investigating Wisk's claims was a legal endeavor and the merger partners had a shared legal interest in evaluating and defending against Wisk's claims. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) (common interest protection can apply to disclosures made "[p]resumably to improve the odds of persuading [a third party] to make [a] purchase" during merger negotiations even where it is only "likely that [the parties] would be sued").

There is no waiver here. At the time of the FTI presentation, Atlas Crest and Archer were not engaged in negotiations, having already agreed to merge. And, Atlas Crest's August 10, 2021 Form S-4 (p. 102) shows Atlas Crest did not begin discussions with Archer about a change in Archer's enterprise value until July 13, 2021, almost six weeks after Harrison's June 2 status report of FTI's work prompted by Wisk's lawsuit.

Likewise, Archer has never relied on any investigation of individuals' personal devices in defending against Wisk's claims. That distinguishes this case from *Wadler*, where the defendant had disclosed the document to the investigating DOJ and SEC, conceded it waived attorney-client privilege as to the document, and relied on the document "as a sword by citing to its conclusion." 212 F. Supp. 3d at 851.

Finally, Archer has never assumed control over the individuals' personal devices. Messrs. Melack, Muniz, and Marius allowed their personal devices to be imaged by a non-FTI vendor, but they did not give Archer permission to look at files in those devices. And Archer had no desire to expose itself to potential Wisk material that never went to Archer. With the individuals' permission, FTI ran data artifact software across certain personal devices for hits that might need to be analyzed. Unlike its investigation of Archer devices, however, FTI did not review the personal devices to look at data that would intrude on the individuals' privacy. Contrary to Wisk's claim, Archer has not redacted any findings arising from any "investigation" of personal devices.

Wisk has deposed 11 former Wisk employees (some more than once) and received documents from 19 former Wisk employees' personal devices and accounts. Wisk has ample evidence as to the personal devices. *United States v. Amlani*, 169 F.3d 1189, 1196 (9th Cir. 1999) (waiver only required when "alternative sources of evidence would be of little, if any, value …."). Its motion should be denied.

Dated: January 24, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Yury Kapgan*
Yury Kapgan
Robert M. Schwartz
Diane Cafferata
Patrick Schmidt
Michael LaFond
*Attorneys for Plaintiff Wisk Aero LLC*

GIBSON, DUNN & CRUTCHER LLP

By /s/ *Josh A. Krevitt*
Josh A. Krevitt
Daniel J. Thomasch
Wayne Barsky
Paul Torchia
Michael H. Dore
Diana M. Feinstein
*Attorneys for Defendant Archer Aviation Inc.*

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

                                                */s/ Yury Kapgan*