QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Brian E. Mack (Bar No. 275086)
  brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:    (415) 875-6000
Facsimile:    (415) 875-6700

Attorneys for Plaintiff Wisk Aero LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>                 Plaintiff,<br><br>        vs.<br><br>ARCHER AVIATION INC.,<br><br>                 Defendant. | CASE NO. 3:21-cv-02450-WHO<br><br>**PLAINTIFF WISK AERO LLC'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE PURSUANT TO FED. R. CIV. P. 37(E)(1); 37(E)(2) AND THE COURT'S INHERENT POWERS**<br><br>Hearing:<br>Date: Wednesday, February 22, 2023<br>Time: 2:00 pm<br>Judge: The Honorable William H. Orrick |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................3

I.     Archer's Prior ESI Representations Were False, And Its Latest Representations Are Not Credible ..................................................................................................................3

II.    Furman Destroyed Seven-Months' Worth Of Email Metadata ..............................................4

III.   The Court Can Never Know The Extent Of Furman's Cloud Server Deletions ....................5

IV.   Furman's Photos And Chat Messages Are Likewise Compromised .....................................7

V.    Archer Has Finally Acknowledged That Furman's Dropbox Data Is Irrecoverable .............8

VI.   The 2015 Amendments To The Federal Rules Do Not Divest This Court Of Its Inherent Power To Sanction ..........................................................................................9

VII.  Archer Should Be Sanctioned Under Rule 37(e) And The Court's Inherent Authority ...............................................................................................................10

VIII. Furman's Spoliation Is To Be Imputed To Archer .............................................................11

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .......... 9

*Cooley v. Leonard*,
No. 4:18-cv-00719-YGR(KAW), 2019 WL 6250964 (N.D. Cal. Nov. 22, 2019) .......... 10

*Edifecs, Inc. v. Welltok, Inc.*,
No. C18-1086, 2019 WL 5862771 (W.D. Wash. Nov. 8, 2019) .......... 11

*Envy Hawaii LLC v. Volvo Car USA LLC*,
No. 17-00040, 2019 WL 1292288 (D. Haw. Mar. 20, 2019) .......... 8, 9

*Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*,
No. CV13-0072, 2015 WL 12746220 (C.D. Cal. Feb. 10, 2015) .......... 11

*Hugler v. Sw. Fuel Mgmt., Inc.*,
No. 16 CV 4547- FMO, 2017 WL 8941163 (C.D. Cal. May 2, 2017) .......... 9

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
No. 20-CV-07182-JCS, 2022 WL 1990225 (N.D. Cal. June 6, 2022) .......... 10

*Newberry v. County of San Bernardino*,
that Archer relies on. 750 Fed. App'x. 534 (9th Cir. 2018) .......... 10

*Nida v. Allcom*,
No. 8:17-cv-02162, 2020 WL 2405251 (C.D. Cal. Mar. 11, 2020) .......... 7

*Pauly v. Stanford Health Care*,
No. 18-CV-05387-SI(TSH), 2022 WL 774296 (N.D. Cal. Mar. 14, 2022) .......... 10

*Perez v. Van Groningen & Sons, Inc.*,
41 Cal. 3d 962 (1986) .......... 11

*Skyline Advanced Tech. Servs. v. Shafer*,
No. 18CV06641, 2020 WL 13093877 (N.D. Cal. July 14, 2020) .......... 10

## Additional Authorities

*Judicial Council of Cal. Civil Jury Instructions No.* (2023) .......... 11

# INTRODUCTION

In ruling on this motion, the only question for the Court is what sanctions are necessary and appropriate. There is no question that for many years Scott Furman uploaded to his personal cloud-based accounts (Thunderbird, Apple, and Dropbox) thousands of emails, photos, and chats documenting his work at Wisk. There is no question that, when he joined Archer in January 2021, on multiple occasions—including after May 2021, when Archer captured an image of whatever he had transferred ("synced") to that laptop as of that date—Furman continued to download these files to that laptop. There is no question that in December 2021 and January 2022, after Wisk subpoenaed Furman, he intentionally deleted all of these files from his laptop *and* from the cloud accounts, including relevant metadata. Nor is there any question that he deleted them on an industrial scale because he feared the legal consequences of his mere possession of the files, given where he worked. And there is no question that Furman's conduct has severely prejudiced Wisk. Without these files and without the metadata he destroyed, Archer has put the jury in the position of having to take Furman's word about what these files contained and when and how often he used them in his work at Archer.

That is not how our evidence-based adversarial process works. This is a textbook case calling for adverse inferences to level the playing field.

Archer resists by asking the Court to do exactly what it wants the jury to do—to take Furman's word, or the word of an Archer expert whom, like Wisk and the jury, Furman has denied the necessary forensic evidence. Archer's outlandish claim that "every one" of Furman's documents was preserved is a wild guess—and nothing more—as even its expert acknowledges.

- Archer's expert says it is "reasonable to assume" that Furman had synced all his Wisk files to his laptop before May 2021, when Archer imaged the laptop and produced files responsive to Wisk's requests. But Archer's expert has no basis to know. He is merely assuming that, at some point between January and May 2021, Furman configured his Thunderbird application to copy everything Wisk-related to his Archer laptop and in fact everything was copied over. Although the expert provided a configuration page of Furman's laptop Thunderbird

application, missing are pages that would show which Thunderbird folders Furman selected for syncing.  As a result, the Court has no basis to credit this mere assumption.

- Archer's expert has nothing to say about how Furman handled the Dropbox file containing Wisk information.  Furman testified that the Dropbox account alone contained a file concerning Wisk's first-generation aircraft—the same generation aircraft from which several of Wisk's trade secrets are derived.  Because Furman destroyed the file, there is now no way to know the precise content of that file or what he did with it while working at Archer.

- None of Archer's arguments or declarations accounts for Furman's actions in the *ensuing* seven months after May 2021, when Furman continued to access his cloud accounts, download files through folder syncing (or individually), and then deleted them in December 2021 and January 2022.  Neither Archer nor its expert has anything to say about this seven month gap between Archer's image capture and Furman's mass deletion.  Again, because Furman destroyed these files, there is no way to know what he transferred during those seven months, what he looked at, and what he incorporated into his work at Archer.

- Archer wants Furman to be able to tell the jury that he never looked at any of these files while working at Archer.  But when he deleted the files, he deleted the forensic evidence including the metadata that would enable the truth to be known.

- Also within the "just trust me" category is Furman's assertion that, in January 2022, before permanently destroying Wisk emails on the cloud-based email server, he placed all Wisk emails in a zip file and saved it to his laptop.  Archer withheld the complete zip file until after Wisk deposed Furman.  It contains fewer than 600 emails, leaving unaccounted for the thousands of emails Furman copied to that account while at Wisk.  Nor does the zip file contain any of the thousands of Apple photos and messages or Dropbox document that Furman intentionally deleted.

- Archer points to Furman files it produced after Wisk deposed him.  But those files are of no help because they do not purport to be the entirety of what Furman took, or what he downloaded.  And they are only copies.  Thus, their metadata can at most say whether Furman

looked at *those* copies of the files, not that he never looked at *any* copies of the files in the seven month gap between imaging and deletion.

- Archer has also actively hindered Wisk from discovering the whole truth. Wisk first learned of Archer's spoliation on March 30, 2022. Rather than provide details of the nature and extent of Furman's spoliation in response to a request by Wisk, Archer forced Wisk to wait until July 21, 2022 to ask about these deletions at Mr. Furman's deposition. Wisk learned new and important details (such as the existence of the zip file and the deleted Dropbox file) for the first time at this deposition. But when pressed to produce documents and update discovery responses to test Mr. Furman's testimony, Archer prolonged the process over multiple piecemeal document productions and written responses—even waiting to produce relevant documents (including the complete zip file) until Wisk filed this motion.

In sum, this is a quintessential case of intentional spoliation that warrants sanctions.

## ARGUMENT

### I. Archer's Prior ESI Representations Were False, And Its Latest Representations Are Not Credible

Archer's defense of the mass spoliation contradicts the assurances Archer gave the Court in opposing Wisk's motion for preliminary injunction. In Summer 2021, Archer assured the Court that none of Wisk's ex-employees had any Wisk information. Archer submitted a declaration from the same expert (Harrison) whom it relies on here, in which he said he "can confirm that neither [he nor FTI] have found any document on Archer's network or contained on any Archer devices that reflect any sensitive proprietary information from Wisk." Dkt. 58-24 ¶ 2. He inspected the same device at issue here. *Id.* ¶ 11.

Given Archer's statements in opposing this motion that it had already (in May 2021) captured hundreds of Wisk files from Mr. Furman's Archer-issued laptop (Harrison Decl. ¶ 17), Archer's statements to the Court to avoid the preliminary injunction were stunningly false.

The Court should thus bring a skeptical eye to Archer's attempt here to assure it that Wisk has suffered no prejudice because Furman caused no documents to be "lost," that is, because they exist elsewhere in Wisk's files. Opp. at 17. That argument misses the point of this motion. Of

course, Wisk possesses myriad documents that reflect its trade secrets. But it makes no difference here that Wisk has such documents. What is important—and what has been lost—is the evidence showing that Furman possessed and used Wisk's trade secrets while working at Archer. Furman destroyed the only evidence concerning his interaction with these files.

## II. Furman Destroyed Seven-Months' Worth Of Email Metadata

Key information was lost when Furman deleted the Thunderbird local mailbox from his Archer device. In response, Archer draws an inapt analogy to making a photocopy of a passport. Opp. at 7. A repository of email and its metadata is not like a physical passport sitting in a drawer. Here, there were two "copies" of Furman's emails: (1) one on the Thunderbird local mailbox stored locally in his Archer device, and (2) one on the "cloud." Declaration of Andy Crain ("Crain Decl.") ¶¶ 13-14; *see* Harrison Decl. ¶ 9. Furman could have accessed and used the Thunderbird local mailbox offline, or accessed and used the emails in the cloud. If Furman accessed and used only the offline copy contained in the local mailbox file, then the two copies are no longer identical. The offline copy would have metadata showing access, while the online copy would not. Crain Decl. ¶ 20.

Although Archer argues that a May 8, 2021 forensic image of Furman's laptop preserved "all data—including emails, iPhotos, iMessages, and their accompanying metadata— as they existed on the Archer laptop on that date," Opp. at 5, it was not until December 2021—more than seven months later—that Furman deleted his Thunderbird local mailbox. Opp. at 14. The forensic image can show only what existed at the time of its collection. If Furman accessed, disclosed, or used the Wisk material in the Thunderbird local mailbox between May 8 and December 21, it would not be reflected in the May image. Crain Decl. ¶¶ 18-19. By deleting the local mailbox while this litigation was ongoing, and while he had a legal obligation to preserve it, Furman forever destroyed those emails as well as seven-months of metadata indicating when he accessed the Thunderbird local mailbox. *Id.*

One Archer-produced document illustrates the problem. It is a Wisk document whose metadata shows that it came from Furman's Thunderbird local mailbox, titled "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Crain Decl. ¶ 22. This file concerns Wisk's

Trade Secret 44 regarding avionics.  Mot. at 11; Dkt. 382-11.  Because the original metadata has been destroyed, Wisk now has no way of knowing whether Furman accessed, disclosed, or used it between May and December 2021.  Crain Decl. ¶ 22.

Archer's expert can claim only that it is "logical to *assume*" that "the vast majority" of emails would have transferred automatically to Furman's laptop.  Harrison Decl. ¶ 8 n.19 (emphasis added).  That statement required careful wording.  As Archer's expert admits, the Thunderbird application can be set to allow for synchronization of only specified folders, not the entire collection.  Harrison Decl. ¶ 9 n.4; Crain Decl. ¶¶ 14-15.  But the screenshot that Archer's expert submitted does not show the "Synchronization & Storage" settings page where Furman would have instructed what to download to his laptop during a particular session, and Archer's expert fails to show which folders Furman synced to his Archer device.  Crain Decl. ¶¶ 14-15.  Because Furman deleted the Thunderbird account and files, he has prevented Wisk from determining which Thunderbird folders contained which files after Archer imaged his computer in May 2021.  *Id.*

In addition, Furman could have forwarded messages containing Wisk files after the May image but before he deleted the Thunderbird files in December.  Crain Decl. ¶¶ 18-19.  Those messages are now gone.  And Furman could have composed new emails containing or attaching Wisk files after the May 8 image.  *Id.*  Furman has destroyed all of this evidence.

As a result, Archer's May 2021 image of Furman's laptop cannot reliably tell the jury which Wisk files Furman accessed, disclosed, or used after May 8, 2021.  And Archer's February 2022 image, taken months after Furman's document destruction, has no value at all.

**III.    The Court Can Never Know The Extent Of Furman's Cloud Server Deletions**

Furman's "second deletion event" occurred in January 2022, when he accessed the server that hosted his email account to search for *and delete all* e-mails stored there that were either "to" or "from" users with Zee.aero, Cora.aero, or Wisk.aero accounts.  Mot. Ex. 1 at 221:18-222:1.  Furman admits that he intended to destroy all of these emails from his pre-Archer employment so that no one would know that he took them.  *Id*. at 222:7-18.

Now that Wisk has found out, Archer attempts to brush it off as without consequence

1  because, it says, Furman "saved, preserved, and ultimately produced [all of them] to Wisk."  Opp.
2  at 15.  According to Furman, he placed all of the emails into a zip folder that he saved on his
3  Archer laptop.  But because Furman permanent destroyed the emails from his server, Wisk has no
4  way of knowing whether the zip folder contains all of the emails he destroyed.  And, frankly,
5  neither does Archer.  To state the obvious, Furman has put the Court and the jury in a position of
6  just having to take his word.  Why should anyone?  Certainly, in light of Furman's conduct, and
7  the importance of the information to the case, Wisk should not have to settle for that.

8  Further, there are serious doubts that the documents Archer produced represent all of the
9  emails Furman destroyed on his email server.  We know this because Archer initially declined to
10 provide the contents of the zip file that Furman claimed to have created.  Instead, Archer directed
11 Wisk to 68 emails in its document production, which Archer said constituted all of the Wisk-
12 related emails in Furman's zip file.  That proved hard to believe—and ultimately false—because
13 the threads those emails purported to reconstruct were missing a substantial number of emails.
14 When Wisk reported these gaps—but only after Wisk deposed Furman about his spoliation and
15 only after Wisk filed this motion—Archer miraculously produced a folder that, it claimed,
16 contained all of the emails Furman had supposedly "saved" to the zip file.  That, too, is hard to
17 credit because of the massive discrepancy between the number of emails Furman admitted he
18 deleted from his cloud account—in the tens of thousands from the synced account (Mot. Ex. 1 at
19 200:19-201:2)—and the grand total of 534 Wisk-related emails in Archer's second attempt to
20 produce them to Wisk.

21 Further, this supposed zip file includes numerous emails that do not contain the keywords
22 "Zee," "Cora," or "Wisk" that Furman said he used to identify and delete those emails he knew he
23 should not have possessed.  Crain Decl. ¶22.  That suggests that Furman padded the zip folder
24 with meaningless emails to make it look more complete.  Furman had an incentive to delete many
25 more emails than what he saved to the zip file.

26 In any case, Wisk has no way to fairly test Furman's assertions about the completeness of
27 his self-serving zip file precisely and entirely because of his spoliation that preceded it.  As Wisk's
28 expert explained and Archer did not dispute, there is no way to forensically audit or confirm

1  Furman's story that he saved a copy of every email he deleted.  Crain Decl. ¶¶ 20-21.  Wisk and
2  the jury are left to rely on solely the testimony of the very person who deleted the evidence.  That
3  is not acceptable.  With no way to verify Furman's statements, the Court should impose the
4  requested sanctions.

5  Archer's case law is inapposite.  Archer's tries to draw a parallel to the spoliation in *Nida*
6  *v. Allcom*, in which the court denied the alleged spoliated documents because plaintiff could only
7  speculate as to what was destroyed when the alleged spoliator threw away some boxes as part of a
8  housecleaning.  No. 8:17-cv-02162, 2020 WL 2405251, at *6 (C.D. Cal. Mar. 11, 2020).
9  Importantly, the court noted that "there is no evidence of what was in the boxes at the time they
10 were 'trashed.'"  *Id.*  But here, we know what types of documents Furman trashed—emails that
11 related to Zee, Cora, and Wisk that he ***specifically searched*** for.  Furman deleted these relevant
12 emails, and now presents a zip file that he himself created in an attempt to fill in that gap.  Because
13 Furman intentionally deleted and selectively saved some unknown set of the Wisk emails, Wisk
14 has been severely prejudiced—unlike the plaintiff in *Nida*.

15 **IV.    Furman's Photos And Chat Messages Are Likewise Compromised**

16 Just like the emails that Furman deleted, when he deleted the Apple photos and messages
17 he also deleted the metadata.  ***First***, it appears that, like for the emails on Furman's personal
18 account, Archer has not performed a forensic collection or inspection of Furman's iCloud account
19 and photo library.  So, it is impossible to confirm whether all of the iCloud photos and messages
20 were actually synced to Furman's Archer device.  Crain Decl. ¶¶ 25-26.  Additional photos and
21 messages may have synced onto the Archer device after May 8, but before the deletions in
22 December.  *Id.*  ***Second***, Furman's removal of iCloud from the computer in December 2021
23 (which caused the locally-stored copies of photos to be deleted) caused the permanent loss of
24 forensic metadata related to those photos.  Specifically, the local photos' "last accessed" and "last
25 modified" dates were deleted when the underlying photos were removed.  *Id.*  The status of that
26 metadata, as of December 2021 when Furman removed his iCloud account, is of course not
27 necessarily the same as what is contained in the forensic image of Furman's Archer MacBook
28 captured in May 2021.  These lost metadata values would help show whether and when Furman

may have accessed those photos from his iCloud library containing Wisk-related content. *Id*. Thus, Wisk is left with a complete evidentiary gap with respect to these photos and messages in the timeframe after May 8, 2021.

**V.     Archer Has Finally Acknowledged That Furman's Dropbox Data Is Irrecoverable**

Archer has no real argument with respect to Furman's spoliation of the technical critique contained in the Dropbox file, purportedly a 2013 document describing the first-generation Zee aircraft. Archer makes no excuses about extra copies of this document being saved elsewhere—this document was permanently deleted in all forms. Archer's only rebuttal is that Wisk should still possess this document, so there is no prejudice. Opp. at 20. But neither Archer nor Furman provided any way for Wisk to locate this document because of the dearth of information Furman recalled about this document. Mot. Ex. 1 at 248:24-249:2 ("Q [I]s there a way for us to find that 2013 critique to see it today? A. I don't know the answer to that."). In addition, Archer has not even attempted to confirm (for example, by accessing Furman's Dropbox account) that only a single file was deleted; due to Furman's widespread deletion of other relevant evidence, he may have actually deleted many more files from his Dropbox account, but Wisk will never be able to learn the identity or number of those missing documents. Moreover, as explained above, whether Wisk still possesses the Dropbox document Furman deleted is irrelevant. What is relevant is whether Furman accessed, disclosed, or used this document after he left Wisk and joined Archer.[1]

The only detail that Wisk knows about this document is that it relates to issues about pitch during the transition of Wisk's first-generation aircraft. Mot. Ex. 1 at 249:3-15. Although Archer tries to downplay the potential significance of this document to the case (Opp. at 20), the transition characteristics of Wisk' first-generation eVTOL aircraft are directly relevant to Wisk's trade

---

[1] Archer disputes this and claims that Wisk's purported possession of this document is dispositive, citing *Envy Hawaii LLC v. Volvo Car USA LLC*, No. 17-00040, 2019 WL 1292288 (D. Haw. Mar. 20, 2019). This case is completely inapposite. *Envy* involved contract and improper business practices claims, not trade secret claims. *Id.* at *1. The information the defendant sought was contained in deleted financial and accounting records, and emails. The court denied sanctions because that information was available elsewhere. *Id.* at *3. Here, however, what matters is whether this Dropbox document was in Furman's possession, when it was in his possession, and whether he accessed, disclosed, or used it. That the document could exist somewhere else is not relevant to whether Furman misappropriated Wisk trade secrets.

1  secrets.  For example, Wisk's trade secret ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
2  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
3  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.
4  Evidence that Furman possessed this document, and accessed, disclosed, or used it is precisely the
5  type of evidence that shows that Furman and Archer misappropriated Wisk's trade secrets.
6  Because Furman permanently and irrevocably deleted the file from his Dropbox account, Wisk has
7  been deprived of all metadata relating to that file, including the file's last modified and access
8  dates and whether and with whom the file may have been shared.

## VI. The 2015 Amendments To The Federal Rules Do Not Divest This Court Of Its Inherent Power To Sanction

Archer argues that the Advisory Committee notes of Federal Rule 37 has divested this Court's inherent authority to issue sanctions for spoliation of ESI.  Archer is mistaken.  In *Chambers v. NASCO, Inc.*, the Supreme Court held that the Federal Rules do not displace the inherent power of the district courts to impose sanctions.  501 U.S. 32, 42-43 (1991).  The Court recognized that the inherent power of the courts parallels the Federal Rules and "can be invoked even if procedural rules exist which sanction the same conduct."  *Id.* at 49.  As Archer recognized, *see* Opp. at 11 n.7, some district courts have refused to interpret the 2015 Amendment to the Advisory Committee Notes to have overruled *Chambers*.  See, e.g., *Hugler v. Sw. Fuel Mgmt., Inc.*, No. 16 CV 4547- FMO, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) ("It is an irrefutable principle of law that the Supreme Court's authority cannot be limited by a body such as the Advisory Committee.").

Further, while Archer asserts that Northern District of California courts "have concluded the 2015 Amendment eliminates the availability of inherent authority sanctions for alleged ESI spoliation," Opp. at 11, many courts in this District have continued to apply inherent authority to spoliation cases.  E.g., *Cooley v. Leonard*, No. 4:18-cv-00719-YGR(KAW), 2019 WL 6250964, at *1 (N.D. Cal. Nov. 22, 2019) (applying inherent authority for deletion of emails); *Pauly v. Stanford Health Care*, No. 18-CV-05387-SI (TSH), 2022 WL 774296, at *1 (N.D. Cal. Mar. 14, 2022) (applying inherent authority); *Skyline Advanced Tech. Servs. v. Shafer*, No. 18CV06641,

2020 WL 13093877, at *12 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, No. 18-CV-06641-CRB, 2020 WL 13093878, at *7 (N.D. Cal. July 30, 2020) ("There are two sources of authority under which a district court can sanction a party who has destroyed evidence."); *Meta Platforms, Inc. v. BrandTotal Ltd.*, No. 20-CV-07182-JCS, 2022 WL 1990225, at *7 (N.D. Cal. June 6, 2022) ("BrandTotal's negligence could potentially support an adverse inference instruction under the Court's inherent authority even if not under Rule 37(e).").[2]

### VII.     Archer Should Be Sanctioned Under Rule 37(e) <u>And</u> The Court's Inherent Authority

Archer does not dispute that its spoliation would be sanctionable under the Court's inherent authority. Instead, it relies solely on its contention that this Court does has not have such authority. Opp. at 10-11. As explained above, Archer is wrong.

Regardless, Archer's spoliation is sanctionable under Rule 37. Furman's spoliation has irrecoverably destroyed emails, photos, messages, and their metadata, and Wisk has been severely prejudiced. Because Furman intentionally destroyed this evidence, Wisk is entitled under Rule 37(e)(2) to the requested adverse jury instructions. Archer fails to disprove that Furman's actions were intentional. Instead, it asks the Court to excuse Furman because he merely panicked. That does not change that out of his fear over the legal consequences, he knowingly deleted a massive trove of Wisk documents that he knew he should not have possessed. Furman admitted this at his deposition. Mot. Ex. 1 at 222:5-18.

Furman's deletions were not simply an unintentional "unsyncing" from his Archer device. Opp. at 6. After receiving the subpoena, Furman searched the Internet to learn how to "remove thunderbirds files from mac" and how to "remove thunderbirds cache from mac." Mot. Ex. 1 at 187:17-188:10. Furman wanted to delete all traces of his use of the Thunderbird app, permanently and irreversibly deleting the mailbox file and all metadata associated with those files. None of Furman's actions were unintentional. Rule 37(e) sanctions are thus appropriate.

---

[2]   These cases postdate the unpublished decision in *Newberry v. County of San Bernardino* that Archer relies on.  750 Fed. App'x. 534 (9th Cir. 2018). *Newberry* discussed the ability of the trial court to issue terminating sanctions, which Wisk does not seek. *Id.* at 537. And the language on which Archer relies is *dicta.* The court's finding of no prejudice would have supported a denial of terminating sanctions under both its inherent authority and Rule 37(e). *Id.* at 537.

**VIII.  Furman's Spoliation Is To Be Imputed To Archer**

It makes no difference whether Furman's "deletions were not meant to benefit Archer." Opp. at 22.  Furman has aided Archer's misappropriation of Wisk trade secrets by preventing discovery of evidence that could be used against Archer.

Archer's response to imputation is to argue that Furman's conduct was outside the scope of his employment.  Archer takes an improperly narrow view of the "scope" of conduct within one's employment.  It argues that, because Archer "did not employ Furman to delete emails," because "the deletions were not meant to benefit Archer," and because "they violated Archer's instructions," Furman's conduct could not be within the scope of his employment.  Opp. at 22.

That is wrong.  By Archer's reasoning, no employer could ever suffer consequences because of an employee's deletion of subpoenaed documents unless the employer directed the destruction (in which case there would be no need to impute anything).  That is not the law.  It is not necessary that the employee's acts benefit the employer.  An employer can be liable for its employee's unauthorized wrongful acts.  *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 969 (1986).  Further, an employee's wrongful conduct may be within the scope of employment even if it breaks a company rule.[3]  Judicial Council of Cal. Civil Jury Instructions No. 3722 (2023).

Archer does not dispute that it bears fault for Furman's spoliation.  Archer failed to enforce the litigation hold notices and Wisk's subpoena.  *See* Mot. Ex. 8.  Archer does not dispute that Furman had a meaningless understanding of Archer's litigation hold notices, and that he did not even read the subpoena or do anything to comply.  Mot. Ex. 1 at 180:4-7; 180:16-18; 180:19-23;

---

[3]  Archer's cited case law is inapposite.  In *Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, the employee's actions were clearly "undertaken for personal purposes."  No. CV13-0072, 2015 WL 12746220 (C.D. Cal. Feb. 10, 2015).  Here, however, Furman's deletions were done in response to Archer's policy and resulted in Wisk email, related to the same subject matter as his work at Archer, being destroyed.  Opp. at 6-7 ("Mr. Furman [deleted Apple iCloud and Thunderbird] because of Archer's new policy").  Archer's second case, *Edifecs, Inc. v. Welltok, Inc.*, an unpublished out-of-district case, is also inapposite.  No. C18-1086, 2019 WL 5862771 (W.D. Wash. Nov. 8, 2019).  There, the court found that the alleged spoliators deleted messages on their personal cell phones as a matter of course, and that it was possible the messages were deleted "simply to clear space on their phones."  *Edifecs*, 2019 WL 5862771, at *5.  Furman, however, intentionally searched for and deleted Wisk-related material from an Archer device.

1   181:11-18.  Archer reprimanded Furman for his deletions by withholding his bonus.  *See* Opp. at
2   10.  It could not have done so unless Archer believed that his actions were related to his
3   employment.  Archer must bear responsibility.  Archer chose to recruit Furman from Wisk.
4   Archer tasked him with developing virtually identical technology at Archer.  Archer failed to put
5   in place adequate safeguards to ensure that Furman did not destroy evidence called for in this case.
6   And because Archer failed to cause Furman to understand his duties and the consequences of
7   spoliation, Furman deleted the Wisk documents while employed at Archer, from an Archer-
8   provided device.

Archer knows this.  It admits that Furman deleted the Thunderbird cache, and Apple photos and messages ***because of Archer's policy***. Opp. at 6-7 ("Mr. Furman [deleted Apple iCloud and Thunderbird] because of Archer's new policy").  Whatever restrictions, guidance, information, or instructions Archer may have given to Mr. Furman, they were not good enough.  Indeed, Archer's policy of removing personal accounts from Archer devices gave Furman free rein to delete files from his Archer device.  Archer must bear the consequences of the intentional destruction of documents by its employee.

## CONCLUSION

Wisk respectfully requests that the Court grant Wisk's motion.

DATED:  February 6, 2023            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Brian E. Mack*
      Brian E. Mack

Attorneys for Plaintiff Wisk Aero LLC

-12-   Case No. 3:21-cv-02450-WHO
PLAINTIFF WISK'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS