Hon. William H. Orrick

Re:     *Wisk Aero LLC v. Archer Aviation Inc.*, Case No. 3:21-CV-02450-WHO (DMR)

Dear Judge Orrick:

Archer Aviation Inc. (Archer) and Wisk Aero LLC (Wisk) respectfully submit this joint letter brief regarding the limits to summary judgment briefing applicable to this case. In the parties' Fourth Case Management Statement (Dkt. 356), the parties agreed to a process whereby they would confer regarding these briefing limits after the close of fact discovery, and submit a joint letter brief to the Court if unable to reach agreement. *Id*. at 5–6.

**Archer's Statement**

Archer respectfully requests that the Court modify its default summary judgment limits and permit Archer to file (1) one 50-page motion for summary judgment on trade secret issues and (2) one 10-page motion for summary judgment on patent issues.[1] In the event the Court is not inclined to grant Archer's proposal, Archer requests that at a minimum it be permitted to file one omnibus motion of 50 pages.

Archer recognizes that its request seeks a material modification of the Court's normal practice, and Archer is sensitive to not unduly burdening the Court. But there are ten trade secrets and three patents remaining in the case. Given the nature and number of issues appropriate for summary judgement, Archer submits that such an expansion is appropriate for Archer fairly to be able to address, and this Court to be able to adjudicate, the relevant issues, which have the potential to resolve the case in its entirety without a trial.

**A. Summary Judgment on Trade Secret Issues**

With ten trade secrets remaining in the case, an enlargement of the summary judgment page limits would be reasonable under almost any circumstances. Here, that is particularly true, as Archer intends to address numerous substantive issues with respect to each trade secret, based on Wisk's Section 2019.210 Statement, fact discovery, and the reports and depositions of Wisk's expert witnesses. Archer does not address the merits of these issues here, but, as requested by the Court, Archer identifies the intended bases of its motion, which collectively require additional pages to address.

*No Evidence of Misappropriation or of Economic Value From Secrecy.* Archer intends to seek summary judgment that it has not misappropriated any of Wisk's ten trade secrets. As Archer will show in its motion papers, Wisk is without evidence that Archer used any Wisk trade secret information for any purpose. Given the number of trade secrets, briefing these issues alone will require a meaningful number of pages.

With respect to certain of Wisk's trade secrets, Archer also intends to seek summary judgment on the ground that Wisk has not carried its burden of showing that the trade secrets have economic value by virtue of not being generally known or readily ascertainable.

---

[1] Archer proposes that opposition and reply briefs be 50 and 25 pages respectively for the trade secret motion and 10 and 5 pages respectively for the patent motion.

1

In addition to these substantive trade secret issues, given the unique circumstances in this case, Archer intends to address the following additional and important issues.

***Wisk's Failure to Articulate its Trade Secrets With Particularity.*** Archer intends to address the fact that Wisk has failed to define its trade secrets with particularity, and has refused to provide information regarding the scope of its trade secrets. These are independent bases for summary judgment. *See Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *12 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590 (9th Cir. 2018). While the Court found at the outset of the case that Wisk's 2019.210 trade secret disclosure was sufficient to allow discovery to proceed, Wisk's discovery responses and expert reports show that the 2019.210 disclosure fails to identify the boundaries of Wisk's trade secrets.

Notably, Wisk designated two corporate witnesses (including its Chief Technology Officer) to testify on the "precise definition" of each trade secret. At their Rule 30(b)(6) depositions, however, the Wisk corporate designees repeatedly claimed to be unable to testify as to the scope of Wisk's own trade secrets. Both testified not only that they did not know the scope of any of Wisk's trade secrets, but that they did not understand Wisk's 2019.210 Statement, and therefore would not discuss it. Even more troubling, one of the corporate representatives made clear that Wisk's trade secrets had not even been defined yet, but that Wisk had delegated that task to its retained experts. *See, e.g.*, Long Dep. Tr. at 409:8–12 ("I know that Wisk has retained experts to establish what the bounds of the trade secrets are. I can't tell you what the bounds are because they have not been established yet.").

In addition, in their reports, Wisk' expert witnesses described Wisk's trade secrets in manner that eliminates any discernable definition or scope of those purported secrets.

Archer will argue on summary judgment that Wisk has not identified its trade secrets with particularity, and that Wisk cannot maintain an action in which it refused to say what its own trade secrets are, and then had its expert witnesses expand the scope of the trade secrets in a manner that compounds the pre-existing lack of particularity problem.

***Wisk's Departures from Its 2019.210 Statement.*** In denying Archer's motion to strike Wisk's 2019.210 Statement at the outset of the case, the Court stated that, to "avoid doubt, the trade secrets in the Disclosure in its current form are the only ones that Wisk has alleged; if it wishes to add more, it will have to seek leave to amend the complaint, as any party would." Dkt. 134 at 23. Dating back to May 2022, Archer has repeatedly advised Wisk that its attempts to depart from its 2019.210 Statement were improper and that a motion to amend was required to alter its trade secrets. When Archer again raised concerns in the October CMC, Wisk assured this Court (in writing and then orally) that it knew it was not allowed to depart from the 2019.210 Statement and that it was not doing so. Dkt. 356 at 2–4 (Fourth CMC Statement); Dkt. 376 at 6:24–7:1 (Fourth CMC Tr.). And the Court made clear at that time that it would be appropriate to raise any such departure in the context of summary judgment. Dkt. 376 at 5:12–16.

Despite these assurances, in its expert reports, Wisk departed significantly from the 2019.210 Statement with respect to every trade secret. With respect to some, Wisk's opening expert reports bear virtually no resemblance at all to Wisk's 2019.210 Statement, other than that Wisk's experts placed a new purported secret under the same heading as an old one. For some alleged secrets, Wisk—now that it has looked at Archer's most sensitive technical information in discovery—

seeks to add elements that Wisk did not disclose in its 2019.210 Statement, and/or remove elements that Wisk originally disclosed but now knows Archer does not use.

And for other purported trade secrets, Wisk cites dozens of new Wisk documents, not disclosed in the 2019.210 Statement, that Wisk now asserts embody its trade secrets—again, all in an effort to redefine the trade secrets to fit Archer's documents. Finally, Wisk has attempted to incorporate the technologies of dropped trade secrets back into the case through its experts' expansive redefinitions of the trade secrets that Wisk elected to remain in the case.

**B. Summary Judgment on Patent Issues**

Archer also requests that the Court grant Archer a 15-page motion for summary judgment on patent issues. That is a reasonable request because there are three different patents remaining in the case, all of which are from different patent families and none of which share a common specification. Archer suggests a truncated motion for the patent issues in light of its request to expand the page limits for the trade secret claims. Below are issues that Archer now expects to raise:

**'033 patent:** Summary judgment of noninfringement by Archer's Midnight production aircraft, based on the undisputed fact the accused battery charging system has not even been designed yet.

**'833 patent:** Summary judgment of noninfringement by Archer's Maker or Midnight aircraft, because no air flows through the rotor controller enclosure, as required by the claims.

**'036 patent:** Summary judgment of noninfringement by Archer's Maker aircraft because Archer has never made, used, sold, or offered to sell the Maker aircraft with opposite-canting booms, as required by the claims. Wisk has not even sought damages for this patent.

**Wisk's Statement.** In previous drafts of this filing, Archer sought 100 pages of briefing for itself. Despite this Court's order yesterday rejecting that proposal, Archer now continues to insist that it needs 90 pages. ECF 406 at 1 n.1 (citing Civ. Loc. R. 7-2(b)). As the Court previously emphasized in expressing its strong preference to abide by the default summary judgment process, a summary judgment motion is not an elaborate paper trial on the merits, but rather is appropriate only for issues on which there truly is "no dispute of facts." July 12, 2022 Hr'g Tr. at 12:16–17.

That does not describe Wisk's claims. This is a complex, fact-dependent case, spanning multiple technical areas, and on which 17 experts have submitted thousands of pages of competing reports. Wisk's claims are not going to be resolved on summary judgment, and Archer should not be entitled to throw every issue against the wall to see if any stick. Archer should focus its summary judgment motion on issues which Archer can genuinely claim arise from undisputed facts, and brief those issues within the usual page limits. If the facts are not in dispute, and if Archer would be entitled to prevail, it would not take 90 pages between its two motions and replies to convince the Court.

Archer has established no good cause to permit a dramatic expansion of the page limits prescribed by the rules, let alone good cause for two motions. *See* July 12, 2022 Hr'g Tr. at 12:11–14 (this Court explaining that its experience has been that departing from the usual summary judgment process "never shortens the case" and that the Court has found that it always "rue[s] the day" it permits deviations); *Team One Display Servs., Inc. v. Arlon Graphics, LLC*, 2016 WL 3457008,

at *1-2 (D. Nev. June 23, 2016) (affirming the magistrate judge's rejection of a party's request to file a fifty-page motion based on the magistrate judge's "determination that the arguments do not warrant the length of the brief" and because the court concluded that it was "in the interest of both the parties and the court for parties before the court to follow the local rules and the court's orders"); *Traylor Bros. v. San Diego Unified Port Dist.*, 2012 WL 1019966, at *3 (S.D. Cal. Mar. 26, 2012) (denying the plaintiff's motion for leave to file a sixty-page summary-judgment motion based on the court's conclusion that much of the discussion in the brief was unnecessary); *see also Urena v. Earthgrains Distribution, LLC*, 2017 WL 4786106, at *11 n.4 (C.D. Cal. July 19, 2017) (admonishing the defendant for filing an overlength brief without requesting leave or providing a sufficient explanation).

At Archer's demand, Wisk has already narrowed its case: from 52 asserted trade secrets down to 10, and from 57 patent claims down to 8. That cleared away many issues that Archer might have targeted on summary judgment. Yet when it came time for Archer to narrow its case, Archer disobeyed the Court's orders to reduce its trade-secret references, choosing instead to *expand* its references.[2] Archer now intends to rely on those expanded references to make the arguments it described above that Wisk's trade secrets supposedly were generally known or readily ascertainable. It would be perverse to reward Archer with substantially more summary judgment briefing space for flouting the Court's orders.

Apart from Archer's challenge to the substance of Wisk's trade secret claims, the remaining issues Archer plans to raise are legal, especially as to any discovery dispute regarding Wisk's section 2019.210 statement. On that issue, Archer is taking two inconsistent positions in the same brief. Either Archer doesn't know what Wisk's trade secrets are, or they are so extensive that Archer needs 75 pages to rebut them. Both statements cannot be true. And Archer does not need dozens of pages to make the same legal arguments it managed to lay out in a handful of paragraphs above.[3]

---

[2] Last July, the Court ordered Archer to "narrow its references—that is, the technology or knowledge that is public that it argues will show the putative trade secrets were not secret—for [Wisk's] trade secrets claims." ECF 299. Archer did not comply with that Order—choosing instead to serve two subsequent amended interrogatory responses that further *expanded* its references (ballooning them from 123 to 220). Archer's intransigence resulted in a Second Order in which the Court held that Archer had "disregard[ed]" the July Order and again ordered Archer to narrow its references. ECF 354 at 2 ("Archer's response does not suggest that, in light of my order and Wisk's binding representations, it reviewed its references and determined whether any should now be withdrawn. I order it to do that now, and to meet and confer with Wisk by October 14th to explain in detail why Archer is unable to reduce the references further in light of the trade secrets asserted by Wisk."). Following the Second Order, Archer withdrew some of its references, but still asserted many more references than it had at the time of the Court's original narrowing Order in July. Then, just before the deadline for the parties' expert reports in December, Archer served another amended interrogatory response adding *still more* references.

[3] This is not the proper forum for Wisk to rebut Archer's arguments. Suffice it to say that Archer's representations regarding Wisk's witnesses' testimony about the scope of Wisk's trade secrets are misleading at best. Wisk's engineers spent hours and hours across multiple deposition days walking Archer through Wisk's technology and its trade-secret claims. And Archer's contentions that Wisk failed to identify its trade secrets with particularity or departed from them later are inconsistent with this Court's (and the Ninth Circuit's) explanation of the purpose of a trade-secret disclosure: to "'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies.'" ECF 134 at 15 (citations omitted); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (recognizing that "discovery provides

A dramatic expansion of the usual summary judgment process is not warranted in this case. Indeed, Archer has not shown any good cause to modify this Court's default summary judgment process.

| | |
|---|---|
| DATED: February 14, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>By /s/  Yury Kapgan<br>Yury Kapgan<br>Robert M. Schwartz<br>Michael T. Zeller<br>Diane Cafferata<br>Patrick Schmidt<br>Michael LaFond<br>*Attorneys for Plaintiff Wisk Aero LLC*<br><br>GIBSON, DUNN & CRUTCHER LLP<br><br>By /s/  Josh A. Krevitt<br>Josh A. Krevitt<br>Daniel J. Thomasch<br>Wayne Barsky<br>Paul Torchia<br>Michael H. Dore<br>Diana M. Feinstein<br>*Attorneys for Defendant Archer Aviation Inc.* |

---

an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification").

Per Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories to this document.

*/s/ Josh A. Krevitt*

Josh A. Krevitt
