1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Yury Kapgan (Bar No. 218366)
2    yurykapgan@quinnemanuel.com
   Robert M. Schwartz (Bar No. 117166)
3    robertschwartz@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
4    michaelzeller@quinnemanuel.com
   Diane Cafferata (Bar No. 190081)
5    dianecafferata@quinnemanuel.com
   Patrick Schmidt (Bar No. 274777)
6    patrickschmidt@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
7  Los Angeles, California 90017
   Telephone:    (213) 443-3000
8  Facsimile:    (213) 443-3100
9
10 Michael F. LaFond (Bar No. 303131)
     michaellafond@quinnemanuel.com
11 555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
12 Telephone:    (650) 801-5000
   Facsimile:    (650) 801-5100
13
14 Attorneys for Plaintiff Wisk Aero LLC
15
                **UNITED STATES DISTRICT COURT**
16
              **NORTHERN DISTRICT OF CALIFORNIA**
17
                  **SAN FRANCISCO DIVISION**
18

19 WISK AERO LLC,                          Case No. 3:21-cv-02450-WHO

20          Plaintiff,                      **PLAINTIFF WISK AERO LLC'S NOTICE
                                            OF MOTION AND MOTION TO COMPEL**
21      vs.
                                            Hearing
22 ARCHER AVIATION INC.,                    Date: March 23, 2023
                                            Time: 1:00 p.m.
23          Defendant.                      Hon. Donna M. Ryu

24
25
26
27
28

1      **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that on March 23, 2023 at 1:00 p.m., or soon thereafter as this

3 matter can be heard before the Honorable Donna M. Ryu in Courtroom 4, Third Floor, United

4 States District Court for the Northern District of California, Oakland Courthouse, 1301 Clay

5 Street, Oakland, California 94612, Plaintiff Wisk Aero LLC ("Wisk") will and hereby does move

6 the Court to compel Defendant Archer Aviation, Inc., to produce unredacted versions of the

7 documents produced as Archer-NDCA-01761127, Archer-NDCA-01778024, and any other

8 documents or communications related to the same subject matter, and to supplement Archer's

9 responses to discovery requests that seek information on the same subject matter, including

10 Interrogatories No. 1, 11, 16, and 24, and RFPs No. 10, 11, 30, 33, 36, and 39.

11      Wisk's motion is made in response to Judge Ryu's Order requesting further briefing on

12 this issue (ECF 398), and is based on this notice of motion and motion, the following

13 memorandum of points and authorities; the supporting declaration of Michael LaFond and the

14 exhibits to that declaration; all matters of which the Court may take judicial notice; other

15 pleadings on file in this action; and other written or oral argument that Wisk may present to the

16 Court.

17

18 DATED:  February 16, 2023          Respectfully submitted,

19                            QUINN EMANUEL URQUHART & SULLIVAN, LLP

20                            By  */s/ Yury Kapgan*

21                              Yury Kapgan
                               Robert M. Schwartz

22                                Diane Cafferata
                               Patrick Schmidt

23                                Michael LaFond

24                                Brian E. Mack

25                              Attorneys for Plaintiff Wisk Aero LLC

26

27

28

## I.      Introduction.

In opposing Wisk's motion for a preliminary injunction, Archer filed a declaration from Brett Harrison, a forensic consultant Archer hired to analyze a set of "Archer devices." Mr. Harrison's declaration stated that he found "none of the 851 documents that Wisk identified as a trade secret" on those "Archer devices." ECF 58-24 ¶ 37. True or not, Archer hid from the Court and Wisk the fact that Mr. Harrison had *also* analyzed the personal devices of ex-Wisk employees working at Archer. Archer is *still* hiding the results of that analysis—*i.e.*, whether those devices contained any Wisk documents or other information—by claiming "privilege." The Court should order Archer to produce these documents.

That this issue is being raised only now is a result of obstruction. Throughout this litigation, Archer has resisted Wisk's discovery into its employees' "personal" devices on the grounds that Archer lacked control over them. Importantly, the Court has relied on Archer's representations that it "lacked control" over those devices when denying Wisk's attempts to discover their contents. *See, e.g.*, ECF 295. It turns out, however, that Archer's representations were false:

WISK'S NOTICE OF MOTION AND MOTION TO COMPEL

1 ████████████████████████████████████████████████

2 ██████████████████████████████████████

3    Archer asserts that the Atlas Crest Board Minutes are attorney-client privileged and subject

4 to the work-product doctrine. Ex. 3, Archer's Fifth Privilege Log. Archer likewise asserts that the

5 Harrison Presentation is also its work product. Ex. 3, Archer's Fifth Privilege Log. But Archer has

6 not substantiated any privilege claims over those documents, both of which reflect Archer's

7 undeniable business purpose to persuade Atlas Crest not to bail on their proposed merger. And

8 even if Archer's privilege assertions were appropriate, Archer waived privilege in multiple ways.

9    Archer's decision to hide the true scope of Mr. Harrison's investigation during the

10 preliminary injunction phase, its misrepresentations about "lacking control" over employees'

11 "personal" devices, and its delay producing the contemporaneous documents revealing the actual

12 scope of Mr. Harrison's investigation for *more than a year*, is the sort of misleading, obstructive

13 discovery misconduct that recently led Judge Chhabria to sanction Archer's counsel, including one

14 of its lead counsel here, by name. Ex. 4, *In re Facebook, Inc. Consumer Privacy User Profile*

15 *Litig*., No. 18-md-02843-VC, Feb. 9, 2023 Order at 1–2 (chastising Archer's counsel's reliance on

16 "delay, misdirection, and frivolous arguments" to resist discovery as part of a "sustained,

17 concerted, bad-faith effort to throw obstacle after obstacle in front of the plaintiffs").

18    The Court should compel Archer to produce unredacted versions of these documents, all

19 other documents concerning the same subject matter, and to supplement its responses to discovery

20 requests concerning this subject matter.

21 **II.    Factual and Procedural History.**

22    **A.    In Early 2021, Atlas Crest and Archer Agreed to Merge.**

23    On February 10, 2021, Archer announced it intended to merge with Atlas Crest Investment

24 Corp. in a de-SPAC transaction. Atlas Crest would acquire Archer and the two would merge into a

25 new entity.  Although Archer and Atlas Crest signed a merger agreement, the merger would not be

26 consummated until numerous conditions were satisfied over the ensuing months, including Atlas

27 Crest shareholders' approval. This shareholder vote would depend in part on Atlas Crest Board's

28 recommendation to shareholders, after further due diligence, that the transaction was "advisable

1  and in the best interests" of Atlas Crest. *See* Ex. 5, Form S-4, Atlas Crest Investment Corp., filed

2  March 8, 2021 at 62, https://tinyurl.com/2p9c6vus.   Although the Atlas Crest Board had

3  recommended the transaction when signing the merger agreement, it retained the right before the

4  vote to change its recommendation or (under certain circumstances) cancel the transaction.  It also

5  had the right to terminate the deal if Archer's representations and warranties were not true—

6  including its warranty that Archer "owns and possesses all right, title and interest" in its

7  intellectual property. *Id.* at A-34 and A-68. If the Board concluded that it were necessary to

8  change its shareholder recommendation, it had to tell Archer and negotiate in good faith

9  "regarding any revisions or adjustments" that could allow Atlas Crest to "reaffirm its

10  recommendation." *Id.* at 77-78.

11         **B.**       **This Litigation and the Criminal Investigation Caused Atlas Crest to Reassess.**

12         On March 30, 2021, a federal grand jury pursuing a criminal investigation into the

13  misappropriation of Wisk's trade secrets served a subpoena on Archer. *See* Ex. 6, Archer-NDCA-

14  00014173. Several former Wisk engineers that Archer had hired also received grand jury

15  subpoenas, and the FBI executed a search warrant on another. *See* Ex. 7, Form 8-K, Archer

16  Aviation Inc., filed April 6, 2021 ("April 8-K"), https://tinyurl.com/mr489aj9. On April 6, Wisk

17  filed this case, alleging that Archer had engaged in a "theft of [Wisk's] intellectual property." ECF

18  1. That same day, Archer put out a statement disclosing the criminal investigation, including the

19  subpoenas and search warrant. *See* Ex. 8, Archer-NDCA-01454758.

20         After Atlas Crest learned about Archer's legal jeopardy, including the criminal

21  investigation and litigation, it reassessed whether to proceed with the transaction on the existing

22  terms or at all. The shareholder vote had not yet occurred, so Atlas Crest could still back out. Atlas

23  Crest's Board and its advisors met several times to decide whether and how to proceed. *See* Ex. 9,

24  Amendment No. 4 to Form S-4, Atlas Crest Investment Corp., filed August 3, 2021 ("August S-

25  4"), at 100, https://tinyurl.com/yc35vps5. During this string of meetings, "the Atlas Board engaged

26  in extensive review and discussion regarding these matters and other conditions and developments

27  relevant to the Original Business Combination Agreement." *Id.* The Board discussed "the civil

28  [lawsuit] and federal government investigation," "the Atlas Board's recommendation to Atlas

1  stockholders," "the fiduciary duties of the Atlas Board in the context of such matters," and,

2  particularly relevant here, "the forensic investigation of Archer being conducted by a third party

3  forensic firm." *Id.* at 101.

4       To convince Atlas Crest not to back out, ████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████                              Atlas

11 Crest's August S-4 publicly disclosed that it "engaged in extensive review" of the Archer

12 transaction and considered whether continuing to recommend the transaction was consistent with

13 its fiduciary duties. Ex. 9, August S-4; *see also* Ex. 10, Spellacy Tr. 91:4–15; 94:10–18 (Atlas

14 Crest's CEO, Michael Spellacy, testifying that Atlas Crest discussed "revising the terms of the

15 Archer merger" and that Atlas Crest was contemplating requesting a reduction in Archer's

16 valuation).

17       The Atlas Crest Board "ultimately determined" to make a "strategic reset" of the deal

18 terms, over the course of these meetings. *Id.* at 102.  Negotiating at arms' length, Archer and Atlas

19 Crest set new terms for the merger, including a reduction in Archer's enterprise value of

20 approximately $1 billion. *Id.* at 104. Only after renegotiating the merger agreement did Atlas

21 Crest's Board reaffirm its recommendation that the transaction be approved. *Id.* at 104.

22       **C.      Archer Selectively Relied On FTI's Investigation To Oppose Wisk's**

23              **Preliminary Injunction Motion.**

24       Around the same time that Archer was struggling to get Atlas Crest to close their deal, it

25 was resisting Wisk's motion for a preliminary injunction. Archer submitted a declaration from Mr.

26 Harrison, in which he stated that he and his company (FTI) had conducted an "investigation of

27 Archer systems" and had found "no evidence" of any Wisk files "having been accessed or used"

28 on "Archer computers." ECF 58-24 ¶¶ 4, 39. Archer trumpeted that point in its brief, representing

1 to the Court that "[t]he day after Wisk filed its complaint (and well before Wisk filed this motion),

2 Archer commenced a sweeping internal investigation to identify any Wisk confidential

3 information on Archer's systems." ECF 58 at 8.

4       But Archer's brief and Mr. Harrison's declaration omitted that ███████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 **III.    Archer Has Not Carried Its Burden To Establish Privilege And Work Product.**

12       Archer bears the burden to establish both the attorney-client privilege and work-product

13 rule. *United States v. Richey*, 632 F.3d 559, 566–57 (9th Cir. 2011); *Schoenmann v. Fed. Deposit*

14 *Ins. Corp.*, 7 F. Supp. 3d 1009, 1013 (N.D. Cal. 2014). Archer cannot meet either burden.

15       **A.    Archer Has Not Established That the Atlas Crest Board Minutes Are**

16                       **Protected by the Attorney-Client Privilege.**

17       The attorney-client privilege protects from discovery "confidential communications

18 between attorneys and clients, which are made for the purpose of giving legal advice," and

19 attaches when "(1) legal advice of any kind is sought (2) from a professional legal adviser in his

20 capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by

21 the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the

22 legal adviser, (8) unless the protection be waived." *Richey*, 632 F.3d at 566 (citation omitted).

23       However, "where there is a clear business purpose in the environment in which the

24 communications occurred[], the court should sustain an assertion of privilege only when there is a

25 clear evidentiary predicate for concluding that each communication in question was made

26 primarily for the purpose of generating legal advice." *McCaugherty v. Siffermann*, 132 F.R.D.

27 234, 238 (N.D. Cal. 1990). The Court must review the "content, the purposes of the

28 communications, and the context in which they were written" to determine whether privilege

1  applies—not only the assertedly privileged portions. *Bio-Rad Lab'ys, Inc. v. Pharmacia, Inc.*, 130

2  F.R.D. 116, 126 (N.D. Cal. 1990). ████████████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6      **B.      Archer Has Not Established That Either the Harrison Presentation or the**

7              **Atlas Crest Board Minutes are Protected by the Work-Product Rule.**

8      "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

9  from discovery documents and tangible things prepared by a party or his representative in

10  anticipation of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d

11  900, 906 (9th Cir. 2004) (internal quotation marks and citation omitted).

12      The documents at issue here were not prepared in anticipation of litigation. Archer hired

13  Harrison and ████████████████████████████████ to calm its anxiety about

14  proceeding with the deal. *See supra* at 3-4. ██████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████ Archer knew that the Atlas Board's review of

18  "developments relevant to the Original Business Combination Agreement" included verifying

19  Archer's representation that it "owns and possesses all right, title and interest" in its intellectual

20  property. To close the merger, Archer needed to reassure Atlas Crest on this issue. But Archer hid

21  it throughout this litigation, even misleading the Court and Wisk by omitting mention of it in

22  Harrison's declaration.

23      Archer is also talking out of both sides of its mouth. Archer's counterclaims allege that

24  Wisk's blog posts and press release—and ***not*** the existence of Wisk's litigation or the federal

25  criminal investigation—required it to placate Atlas Crest and its investors with additional due

26  diligence, ████████████████████████. If true, Archer cannot claim litigation work product

27  over ████████████████. If those allegation are not true, however, Archer needs to dismiss

28  its counterclaims. Until it does so, the Court cannot permit Archer to re-characterize ████████████

1 ████████ here as litigation-driven work product.

2 **IV.     Archer Waived Any Privilege Covering These Documents.**

3     In the Ninth Circuit, non-waiver is an element of the attorney-client privilege. *Weil v.*

4 *Inv./Indicators, Research & Mgmt., Inc*., 647 F.2d 18, 25 (9th Cir. 1981) ("[T]he asserting party

5 must prove that it has not waived the privilege."). The Ninth Circuit has not ruled whether a party

6 asserting the protection of the work-product rule likewise bears the burden of proving non-waiver.

7 Some district courts in this circuit have taken the contrary position, placing the burden on the party

8 asserting waiver. *See Grano v. Sodexo Mgmt., Inc.*, 2021 WL 4751181, at *6 (S.D. Cal. Oct. 12,

9 2021). Either way, Archer's multiple waivers easily clear the bar.

10     **A.     Archer Cannot Claim Common-Interest Privilege with Atlas Crest.**

11     Disclosure of privileged communications to a third party waives privilege unless the two

12 parties (1) share a common legal interest, and (2) communications were made to further that

13 common legal interest. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 598 (N.D. Cal. 2007).

14 The "nature" of the interest must be "identical, not similar," and "be legal, not solely commercial."

15 *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) (quoting

16 *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985)). Here, the

17 disclosure of Mr. Harrison's findings to Atlas Crest did not further a common legal interest.

18     *First*, there is no indication that Archer's disclosure was meant to facilitate a strategy for

19 joint litigation. Disclosures made in anticipation of litigation "must be made in the course of

20 formulating a common legal strategy." *Nidec*, 249 F.R.D. at 579. But as Atlas Crest's SEC filings

21 made clear, the purpose of the June 2 meeting was not to plan legal strategy. It was to engage in

22 "extensive review and discussion" regarding "matters and other conditions and developments

23 relevant to the Original Business Combination Agreement." Ex. 9, August S-4, at 100. Atlas Crest

24 was deciding how—and whether—to proceed *with the transaction*, not how to handle possible

25 litigation. Archer was not seeking Atlas Crest's legal advice on the litigation, nor was Atlas Crest

26 providing any. Disclosures made to facilitate a "commercial decision whether to buy" a corporate

27 asset are not protected. *Nidec*, 249. F.R.D. at 580.

28     *Second*, Atlas Crest and Archer had significant adverse interests at the time. Atlas Crest

1   was considering whether and by how much to reduce the purchase price. *See* Ex. 10, Spellacy Tr.

2   at 94:10–18 (Atlas Crest's CEO testifying that it was contemplating a proposal to reduce Archer's

3   price during the June meetings). The two sides were in an adverse negotiation, and they knew it.

4   There was a significant possibility of litigation by Archer ***against*** Atlas Crest: if Wisk's litigation

5   caused Atlas Crest to walk away without following the process in the Business Combination

6   Agreement, or if Atlas Crest had negotiated in bad faith, Archer could have sued Atlas Crest for

7   breach of contract. *See* Ex. 11, Archer-NDCA-00143498 at '576–577 (process for change in

8   recommendation). On the other hand, if Atlas Crest determined that Archer had not been truthful

9   in its warranties regarding its intellectual property, Atlas Crest could determine not to close the

10  deal, which also could have led to litigation. *See id.* at '542–'545 (intellectual property

11  warranties); '589–'590 (termination). Archer and Atlas Crest were neither aligned nor did they

12  share an "identical" legal interest. *Hewlett-Packard*, 115 F.R.D. at 309; *see also Nidec*, 249 F.R.D.

13  at 580 (Thus, [disclosure] was designed to further not a joint defense in this litigation, but ***to***

14  ***further a commercial transaction in which the parties, if anything, have opposing interests***. The

15  [disclosed document] thus would not qualify for the common interest exception.") (emphasis

16  added). Archer's and Atlas Crest's adversity at the pertinent time waives any attorney-client or

17  work-product privilege. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020).

18        **B.**      **Archer's Selective Disclosure of Part of FTI's Investigation During the**

19               **Preliminary-Injunction Phase Waived Privilege.**

20        A party cannot selectively reveal privileged information to help its case while maintaining

21  privilege over unfavorable information. *Columbia Pictures Television, Inc. v. Krypton Broad. of*

22  *Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("'The [attorney-client] privilege … may

23  not be used both as a sword and a shield. Where a party raises a claim which in fairness requires

24  disclosure of the protected communication, the privilege may be implicitly waived.'") (quoting

25  *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992)).

26        Here, a year after opposing Wisk's preliminary injunction motion by claiming that

27  Harrison's investigation found no Wisk files on "Archer devices," , and while falsely claiming that

28  it had no control over its employees' "personal" devices, Archer disclosed to Wisk ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ That is a

quintessential waiver. *See Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal.

2016) (disclosure of a privileged presentation regarding an investigation waived privilege as to the

presentation itself as well as any related documents or communications).

### C. Archer's Defense Based on its Investigation Waived Any Privilege.

Archer intends to defend itself on the grounds that it conducted a reasonable investigation

into whether Wisk's former employees misused Wisk's trade secrets in their work at Archer. *See*

ECF 396 at 2-3 (Archer refusing to disclaim that position in prior briefing); *see also* ECF 154

¶ 289 (Archer claiming that it cannot be liable for malicious misappropriation because it employed

"better-than-best practices … to prevent such confidential information from infecting Archer").

Archer thereby put Mr. Harrison's investigation at issue, waiving any privilege that might have

attached. *See, e.g.*, *McIntyre v. Main St. & Main Inc.*, 2000 WL 33117274, at \*3 (N.D. Cal. Sept.

29, 2000) ("[D]efendant cannot rely on the investigation by outside counsel as part of its defense,

while at the same time shielding the investigation from discovery. Any use of the investigation in

its defense would waive the privilege."); *see also Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D.

234, 242-43 (N.D. Cal. 2015) (same). Archer cannot be allowed to advance a phony narrative

about its "good faith" to the jury, while depriving Wisk of relevant rebuttal evidence. *See*

*McIntyre*, 2000 WL 33117274, at \*3 ("To allow defendant to use its investigation affirmatively as

a defense while shielding it from discovery would be patently unfair.") (citing *Handgards, Inc. v.*

*Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976)).

### D. Archer Should Be Compelled to Produce All Documents and Communications on the Subject Matter.

Given that Archer's selective disclosures and subsequent misleading representations about

its control over employee devices may have infected multiple court rulings in this proceeding

(*e.g.*, ECF 295), fairness dictates that the truth about Archer's investigation be revealed. The jury

1   needs to know whether the devices Archer has shielded to date contained Wisk's trade secrets.

2   Therefore, in addition to unredacted versions of the Harrison Presentation and the Atlas Crest

3   Board Minutes, Archer should be compelled to produce any documents and communications on

4   the same subject matter. *See Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468,

5   472 (N.D. Cal. 2012) (waiver extends to "related, protected information"); *Wadler*, 212 F. Supp.

6   3d at 851 (explaining that "the disclosure of [a privileged presentation regarding an investigation]

7   … resulted in waiver of attorney-client privilege not only as to the document itself but also any

8   privileged communications about the specific matters disclosed in the [presentation]").

9   **V.      Conclusion.**

10       For the foregoing reasons, Wisk respectfully requests that the Court compel Archer to

11   produce unredacted versions of the ████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████ , and any other documents or

13   communications related to the subject matter; and to supplement responses to discovery requests

14   that seek information on devices that Archer had sufficient control over for Mr. Harrison to

15   investigate, including Interrogatories No. 1, 11, 16, and 24 (Exhibit 12), and RFPs No. 10, 11, 30,

16   33, 36, and 39 (Exhibit 13).

17   Dated:  February 16, 2023                    Respectfully submitted,

18                                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

19                                                By      */s/ Patrick Schmidt*

20                                                        Yury Kapgan
                                                         Robert M. Schwartz
21                                                       Diane Cafferata
                                                         Patrick Schmidt
22                                                       Michael LaFond
                                                         Brian E. Mack
23                                                Attorneys for Plaintiff Wisk Aero LLC

24

25

26

27

28