1

2

3

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7   WISK AERO LLC,                          Case No.  3:21-cv-02450-WHO

8              Plaintiff,
                                            **ORDER DENYING MOTION FOR**
9        v.                                 **SANCTIONS**

10  ARCHER AVIATION INC.,                    Re: Dkt. No. 384

11             Defendant.

12

13        Plaintiff Wisk Aero moves for sanctions against defendant Archer Aviation based on the

14  conduct of one of Archer's employees, Scott Furman, who allegedly spoliated relevant

15  electronically stored information.  Furman's conduct was wrongful, though it may not have been

16  intended to deprive Wisk of any relevant discovery in this litigation.  And there is no evidence that

17  Archer was aware of his conduct before it learned of the actions and disclosed them to Wisk and

18  the court.  Because Wisk does not show prejudice from the alleged deletion, let alone show that

19  most of the information was actually deleted, its motion for sanctions is denied.

20                                  **BACKGROUND**

21        This ongoing dispute concerns patents and trade secrets, and the factual background is laid

22  out in detail in my prior Orders.  *See* Dkt. Nos. 146 (Order Denying Motion to Strike and

23  Dismiss), 133 (Order Denying Motion for Preliminary Injunction).  This Order assumes

24  familiarity with those facts.

25        After engaging in extensive discovery and on the eve of the deadline to file motions for

26  summary judgment, Wisk moves for sanctions against Archer for alleged intentional destruction of

27  evidence.  Motion for Sanctions ("Mot.") [Dkt. No. 384].  Archer filed an opposition.  ("Oppo.")

28  [Dkt. No. 395].  Wisk filed a reply.  ("Repl.") [Dkt. No. 400].  Archer moved for leave to file a

United States District Court
Northern District of California

1   sur-reply expert declaration, which I granted.  [Dkt. Nos. 408, 409]; *see also* Sur-Reply

2   Declaration of Brett Harrison ("Harrison Decl.") [Dkt. No. 412].  The parties also filed motions to

3   seal and motions to consider whether the other party's materials should be sealed.[1]

4       This Order concerns the actions of Scott Furman, Archer's Chief Avionics Architect.  The

5   following facts, many of which are undisputed, are gathered from the motions and exhibits

6   attached to the motions, including Furman's deposition transcript and other declarations.

7       Furman was Wisk's Chief Avionics Architect when he left Wisk in January 2020 to

8   assume a role with the same title at Archer.  Deposition of Scott Furman ("Furman Depo.")[2] 14:5-

9   7, 17:19-22.  Upon leaving Wisk, Furman was contractually obligated to remove all information

10  related to his work at Wisk from his electronic devices, and he repeatedly stated that he had done

11  so.  *See id.* 172:2-177:23, 222:7-14.

12      Soon after joining Archer, in January or February 2020, Furman downloaded the

13  Thunderbird email application onto his Archer-issued computer to access his personal email.  *Id.*

14  189:25-190:16.  Subsequently, many emails from his personal email account downloaded onto the

15  Thunderbird application and therefore onto his work computer.  *See id.* 189:11-24.  It is

16  undisputed that some of those emails contained information relating to his work at Wisk, though

17  Furman says he did not know that at the time.  *See id.* 218:9-12, 224:9-225:10, 255:5-8, 344:8-9.

18  Around the same time, Furman also logged onto his personal Apple iCloud account on his Archer-

19  issued computer.  *Id.* 167:7-18; 221:19-222:18.  It is undisputed that some of the chat messages

20  and photos in his iCloud account related to his work at Wisk, though again Furman says he did not

21  know that at the time.  *Id.* 224:15-225:6.

22      Furman received litigation hold notices on February 14, 2020, and on August 20, 2021.  *Id.*

23  181:6-10.  He said that he did not do anything in response to the notices.  *Id.* 181:14-18.

24      In May 2021, Furman's Archer-issued laptop was forensically imaged, capturing a copy of

25

26  _____

    [1] The motions to seal are GRANTED.  [Dkt. Nos. 382, 383, 393, 394, 399].

27

28  [2] Different portions of Furman's deposition are available in the sealed versions of Mot. Ex. 1 and
    Oppo. Ex. 1.  The citations in this order reflect the page and line numbers from the deposition
    regardless of which exhibit contained the particular excerpt.

all documents, applications, and files that were on the computer at the time. *See id.* 209:15-19; Declaration of Diana Feinstein ("Feinstein Decl.") [Dkt. No. 395] ¶ 3. It is undisputed that the imaging captured all of the emails that were on the Thunderbird application at the time, including all metadata related to when and whether any of those emails had been viewed, accessed, forwarded, attached, opened, or otherwise used. *See, e.g.*, Repl. 4:16-25. That imaging also captured all of the messages and photos saved to Furman's iCloud at that time on his Archer-issued computer. *See id.* (agreeing it captured the material that existed at the time of collection).

In November 2021, Furman received a subpoena that required him to produce all Wisk-related documents in his possession. Furman Depo. 178:14-179:6. Furman said he did not read the subpoena or understand what it was asking. *Id.* 180:4-181:2.

It is undisputed that in December 2021, Furman deleted the Thunderbird application from his Archer-issued computer, including all the downloaded emails and files. *Id.* 196:24-197:4, 198:1-8; Repl. 1:8-10. It is also undisputed that at the same time, he deleted the messages and photos saved to his iCloud on his Archer-issued computer. *Id.* 207:14-24. Furman says he took both actions in response to a new Archer policy prohibiting the use of work-issued computers for personal purposes. *See id.* 200:8-19, 205:12-19. Furman and Archer note, and Wisk does not appear to contest, that the Thunderbird and iCloud files removed from the computer in December 2021 had been previously imaged in May 2021, and so no *files* were permanently deleted. *See generally* Oppo. As discussed further below, though, Wisk says that the May 2021 image did not capture metadata that would show use or access of the files between May and December 2021, and that information was lost in the December 2021 deletion. *See* Declaration of Andy Crain ("Crain Decl.") [Dkt. No. 399].

Additionally, the parties explain that Fastmail.com is a web browser that can be used to access Furman's email account—the same account accessible via the Thunderbird application. Furman Depo. 210:16-211:18; 219:24-17. In January 2022, Furman logged into his personal email via Fastmail.com on his Archer-issued laptop and searched for particular Wisk-related terms. *Id.* 221:14-222:1. He testified at his deposition that he was "shocked" to find many responsive emails in that search. *Id.* 222:7-8. Furman says he saved all the emails to a zip folder

3

on his Archer-issued laptop and then deleted the emails from his account. *Id.* 214:16-215:4; 221:19-222:18. Furman says he was "scared" of what might happen to him and his family if the emails were found, and that he feared FBI agents would appear at his doorstep if the emails were found, as they had done to one of his former colleagues. *Id.* 221:19-222:18; 236:16-17. Furman said that same fear motivated him to delete a single file from his personal Dropbox account around that time, which showed "a 2013 critique of the first-generation Zee aircraft," which was Wisk-related material. *Id.* 248:13-18.

After Archer learned about the Fastmail deletion, Furman's laptop was forensically imaged a second time. *Id.* 204:22-205:1. The emails in the zip file were produced to Wisk, *see* Feinstein Decl. ¶ 7, though Wisk contends there is no way to know whether the zip file contains all deleted emails, *see* Crain Decl. ¶¶ 22-23; *but see* Furman Depo. 215:17-24. The email account from which Furman deleted messages is the same email account that was downloaded to Thunderbird and so was forensically imaged in May 2021, but Wisk says it is likely that Thunderbird did not originally download all emails from Furman's inbox and so it is possible that some of the emails deleted from Fastmail were not saved in the forensic imaging. *See* Crain Decl. ¶¶ 13-15. Additionally, Wisk has not been provided a copy of the deleted Dropbox file. *See* Repl. 8:5-9:8.

Wisk argues Archer is responsible for Furman's conduct and subsequent loss of information and accordingly moves for sanctions, including preclusion sanctions, adverse inference instructions, and attorney fees. *See generally* Mot.; Repl.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 37(e), a court "may order measures no greater than necessary" to cure any prejudice where (1) there was a duty to preserve electronically stored information ("ESI"); (2) that ESI is "lost" and "cannot be restored or replaced through additional discovery"; (3) the loss is because "a party failed to take reasonable steps to preserve" the ESI; and (4) a party was prejudiced by the loss. Fed. R. Civ. Proc. 37(e)(1). If the court further finds that a party "acted with the intent to deprive another party of the information's use in the litigation," the court may impose additional sanctions, including presuming the lost information was unfavorable to that party, instructing the jury that it may or must presume the

4

1  information was unfavorable to that party, or dismissing the action or entering a default judgment.

2  Fed. R. Civ. Proc. 37(e)(2).

3                              **DISCUSSION**

4  **I.      Applicable Rule for Sanctions Related to Electronically Stored Information**

5          As a preliminary matter, I address the applicable rule for determining whether sanctions

6  may be imposed in this case.  Wisk seeks sanctions under FRCP 37(e), which specifically

7  addresses electronically stored information, and under my inherent authority as a federal district

8  judge.  *See generally* Mot.  In opposition, Archer contends that sanctions under my inherent

9  authority are foreclosed by the 2015 Amendment to FRCP 37.  *See* Oppo. 10:0-11:18.  As Archer

10  discusses, the Advisory Committee Notes for the 2015 Amendment provide that FRCP 37

11  "forecloses reliance on inherent authority or state law to determine when certain measures should

12  be used."

13          The facts underlying this motion concern one employee's spoliation of electronically

14  stored information, and under these facts I agree with the vast majority of my colleagues on this

15  Court and with the Ninth Circuit's unpublished guidance on the matter that FRCP 37(e) limits my

16  discretion.  *See Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018)

17  (unpublished) (first citing Fed. R. Civ. Proc. 37(e); and then citing Fed. R. Civ. Proc. 37 Advisory

18  Committee Notes to the 2015 Amendment); *Est. of Bosco by & Through Kozar v. Cnty. of*

19  *Sonoma*, No. 20-CV-04859-CRB, 2022 WL 16927796, at *6 (N.D. Cal. Nov. 14, 2022)[3] (citing

20  *Newberry* and the Advisory Committee Notes with approval and stating, "[a]s amended in 2015,

21  [FRCP] 37(e) exclusively governs the remedies available for spoliation of electronically stored

22  information" (citations omitted)); *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-CV-03301-EMC,

23

24  [3] This 2022 decision from Judge Breyer holds that FRCP 37(e) is the exclusive source of sanctions
    for lost ESI.  Judge Breyer's prior order from 2021 in *Fourth Dimension Software v. DER*
25  *Touristik Deutschland GmbH*, No. 19-CV-05561-CRB, 2021 WL 5919821, *8-11 (N.D. Cal. Dec.
    15, 2021), applied the Rule 37(e) test without addressing inherent authority.  And prior to that,
26  Judge Breyer adopted Judge Illman's report and recommendation stating sanctions were available
    under both standards, without discussing *Newberry* or the Advisory Committee Notes.  *Skyline*
27  *Advanced Tech. Servs. v. Shafer*, No. 18-CV-06641-CRB-RMI, 2020 WL 13093877, at *7 (N.D.
    Cal. July 14, 2020), *report and recommendation adopted*, No. 18-CV-06641-CRB, 2020 WL
28  13093878 (N.D. Cal. July 30, 2020).

United States District Court
Northern District of California

2022 WL 18399982, at *19 (N.D. Cal. Nov. 4, 2022) (stating that "[t]he Ninth Circuit has

indicated that Rule 37(e) 'foreclose[s] reliance on inherent authority'" (quoting *Newberry*, 750

App'x at 537)); *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL

11270394, at *2 (N.D. Cal. Oct. 19, 2022) (noting the 2015 Amendments to FRCP 37(e)

foreclosed sanctions under the court's inherent authority); *Best Label Co. v. Custom Label &

Decal, LLC*, No. 19-CV-03051-SI (VKD), 2022 WL 1525301, at *2 n.1 (N.D. Cal. May 13, 2022)

("The Court concludes that Rule 37(e), as amended in 2015, displaces the Court's inherent

authority to award sanctions with respect to ESI." (first citing *Waymo LLC v. Uber Techs., Inc.*,

No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018); then citing *Newberry*,

750 F. App'x at 537; and then citing Fed. R. Civ. Proc. 37(e) Advisory Committee's Note to 2015

Amendment)); *see also Eacret v. Crunch, LLC*, No. 18-CV-04374-JST-RMI, 2022 WL 4466718,

at *2 n.2 (N.D. Cal. Sept. 26, 2022) (analyzing sanctions for spoliation of ESI only under FRCP

37(e) without discussing inherent authority).[4]  This finding does not extend beyond the facts of

this case to limit my inherent authority to issue sanctions.[5]

---

[4] It is true that Judge Spero has come out differently.  *See Meta Platforms, Inc. v. BrandTotal Ltd.*,
No. 20-CV-07182-JCS, 2022 WL 1990225, at *6 (N.D. Cal. June 6, 2022); *Scott Griffith
Collaborative Sols., LLC v. Falck N. Cal. Corp.*, No. 19-CV-06104-SBA-JCS, 2021 WL 4846926,
at *6-7, 10 (N.D. Cal. Sept. 10, 2021), *report and recommendation adopted sub nom. Falck USA,
Inc. v. Scott Griffith Collaborative Sols., LLC*, No. 19-CV-06104-SBA-JCS, 2021 WL 4846244
(N.D. Cal. Oct. 4, 2021)).  And Judge Westmore in *Cooley v. Leonard*, No. 4:18-CV-00719-YGR-
KAW, 2019 WL 6250964, at *1, 3-4 (N.D. Cal. Nov. 22, 2019), analyzed allegedly lost ESI under
the court's inherent authority without discussing FRCP 37(e), though more recently she cited
FRCP 37(e) as the appropriate standard for sanctions in similar situations, *Resolute Forest Prod.,
Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST-KAW, 2022 WL 16637990, at *7 (N.D. Cal. Nov.
2, 2022).  Wisk also cites Judge Hixson's application of inherent authority in *Pauly v. Stanford
Health Care*, No. 18-CV-05387-SI (TSH), 2022 WL 774296, at *1, 4 (N.D. Cal. Mar. 14, 2022),
but it is not clear from that order that the medical records at issue constituted ESI, so the sanctions
analysis is inapposite.  Wisk also fails to cite a later order in the same case, where Judge Hixson
found that FRCP 37(e) governs remedies for the failure to preserve ESI.  *See Pauly v. Stanford
Health Care*, No. 18-CV-05387-SI (TSH), 2022 WL 4137579, at *1 (N.D. Cal. Aug. 22, 2022),
*report and recommendation adopted*, No. 18-CV-05387-SI, 2022 WL 4133298 (N.D. Cal. Sept.
12, 2022).

[5] Wisk also cites *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) for the assertion that the FRCP
cannot divest a court of its inherent authority to issue sanctions for spoliation of ESI.  *See* Oppo.
9:11-21.  It is true that the Supreme Court in *Chambers* explains that its "prior cases have
indicated that the inherent power of a court can be invoked even if procedural rules exist which
sanction the same conduct."  *Id.* at 49.  But *Chambers* also provides that "the inherent power of
lower federal courts *can be limited by statute and rule*, for '[t]hese courts were created by act of
Congress.'"  *Id.* (quoting *Ex parte Robinson*, 86 U.S. 505, 511 (1873)) (emphasis added).

United States District Court
Northern District of California

**II.      Information That May Have Been "Lost," "Deleted," or "Destroyed"**

Before turning to whether the standard for sanctions is met, I first address the extent of "lost" information.  Wisk's motion suggests that all of the files from Furman's computer were destroyed, including those from the Thunderbird application and his iCloud account.  *See generally* Mot.  But Wisk's reply concedes that the May 2021 imaging produced in discovery captured all emails, photos, and messages that were on Furman's computer at the time, including on the Thunderbird application and iCloud account.  *See* Repl. 4:19-20 (agreeing the forensic imaging captured the materials that "existed at the time").  As Archer points out, Wisk's reply pivots from the allegedly lost files to focus on the allegedly lost metadata.

Accordingly, none of this information in the files is "lost" as required to apply sanctions under FRCP 37(e), because all of that information was "restored or replaced through additional discovery."  Fed. R. Civ. Proc. 37(e).  Rather, the only groups of information discussed by the parties that could be defined as "lost" under FRCP 37(e) are the metadata from May 2021 to December 2021 related to those deleted files, *possibly* the emails deleted from Fastmail, and the single file deleted from Furman's Dropbox account.  I address each in turn.

**III.      Rule 37(e) Sanctions**

In addition to showing that ESI was lost and cannot be restored or replaced through additional discovery, a party seeking sanctions under FRCP 37(e)(1) must show: "(1) there was a duty to preserve the information; (2) the party who lost the information failed to take reasonable steps to preserve it; and (3) loss of the information prejudiced another party."  *Fourth Dimension Software*, 2021 WL 5919821, at *8 (citing Fed. R. Civ. Proc. 37(e)(1)).  "If this showing is made, the court 'may order measures no greater than necessary to cure the prejudice.'"  *Id.* (quoting Fed. R. Civ. Proc. 37(e)(1)).  A finding of prejudice is based on my discretion and depends "in part on the importance of the information to the case."  *Id.* at *10 (internal citations and quotation marks omitted).  FRCP 37(e) "does not place a burden of proving or disproving prejudice on one party or the other."  *Estate of Bosco*, 2022 WL 16927796, at *8 (quoting 2015 Advisory Committee Note).

---

Accordingly, *Chambers* does not preclude FRCP 37(e) from limiting inherent authority to impose sanctions.

United States District Court
Northern District of California

1    However, the moving party should provide some "specifics to support" a finding of prejudice.

2    *Fourth Dimension Software*, 2021 WL 5919821, at \*10 (finding that even while the lost

3    information "appear[ed] to go straight to the heart of the [moving party's] claims" and could

4    indeed be dispositive, the moving party did not make that argument in sufficient detail in the

5    motion[6]).

6        "To obtain more severe sanctions, including an adverse inference or default judgment, the

7    moving party must also show that the party who failed to preserve the electronically stored

8    information 'acted with the intent to deprive another party of the information's use in litigation.'"

9    *Id.* (quoting Fed. R. Civ. Proc. 37(e)(2)).  "A party's deletion of information qualifies as

10    intentional if the party has some notice that the documents were *potentially* relevant to the

11    litigation before they were destroyed."  *Id.* (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959

12    (9th Cir. 2006)).  "For purposes of Rule 37(e)(2), 'intent' . . . means the evidence shows, or it is

13    reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation

14    obligations." *Dish Network L.L.C.*, 2022 WL 11270394, at \*3 (citation omitted); *see also hiQ*

15    *Labs, Inc.*, 2022 WL 18399982, at \*19-20.  The court in *hiQ Labs, Inc.*, 2022 WL 18399982, at

16    \*20-21, addressed several relevant considerations to determine whether a party's intentional

17    destruction of ESI also showed the requisite intent to deprive another party of the information's

18    use in the litigation: (1) the parties' agreement that the affirmative deletion was motivated by a

19    distinct concern; (2) the context of the deletion, including the deleting party's financial situation;

20    (3) "the timing of the evidence's loss" which the court noted was "[t]he most decisive factor" in

21    the assessment; (4) whether there was "selective preservation" of any data; and (5) whether the

22    deleting party attempted to recover the data.  *Id.* (citations omitted).

23        Here, the parties do not appear to contest whether there was a duty to preserve the three

24    relevant groups of information.  Rather, Wisk argues that Archer failed to take reasonable steps to

25    preserve the information, and the parties hotly dispute whether any loss of information prejudiced

26

27

28

---

[6] In *Fourth Dimension*, the court ultimately found prejudice to the moving party from deletion of the usage logs for the relevant software where it "provide[d] evidence" that another entity used the relevant software.  2021 WL 5919821, at \*10.

Wisk.

### A. Metadata

#### 1. Reasonable Steps to Preserve Data

Wisk does not show that Archer or Furman failed to take reasonable steps to preserve the metadata. *See* Fed. R. Civ. Proc. 37. First, Archer represents that it took great pains to ensure its employees removed all information related to Wisk from their personal devices when they were hired, and Furman testified under oath that he believed he had done so. *See* Oppo. 3:23-4:17 (citing Archer declarations). Then, Archer forensically imaged Furman's entire computer—as well as the computers of many other Archer employees—within a month of Wisk initiating this suit. *See* Feinstein Decl. ¶ 3. Wisk concedes that this captured all the files that were on Furman's computer at the time; I agree this was a reasonable and expected step for Archer to take to preserve information for this litigation. Archer then took another forensic image after it learned about Furman's December and January deletions and provided it to Wisk so that both parties could understand the extent and potential impact of the deletion. *See id.* ¶¶ 4-9. That second image captured important information about what was deleted; taking the image was a reasonable step to ensure the information about the deletion was preserved. *Cf. Dish Network L.L.C.*, 2022 WL 11270394, at *4 (finding "a belated instruction to [] employees to preserve documents" was "not a reasonable effort to preserve" (citation omitted)).

I am not persuaded by Wisk's assertion that Archer and Furman did not take reasonable steps to preserve information showing whether Furman used the files between May to December 2021. Wisk initially sued in April 2021, saying Archer was using its trade secrets and infringing on its patents. Archer provided a copy of all files on Furman's computer as of May, within a month of the allegations. If Furman was indeed using Wisk's trade secrets or infringing on its patents, the May 2021 image would have captured any information Furman had used before that point. And while Wisk points to a single document in that capture that "concerns" one of Wisk's trade secrets, Wisk pointedly does not say that Furman opened, used, or implemented that document in his work at Archer. *See* Repl. 4:26-5:3. Accordingly, it seems that Wisk has no evidence that any of the documents from Furman's computer were used before May 2021.

United States District Court
Northern District of California

Wisk's theory in this motion is that even if Furman had not used those documents at the time Wisk initiated this lawsuit, he did use them between May and December 2021, and then deleted them from his computer so that he could destroy the metadata that showed he used them. If Wisk was able to show that Furman used any of these files for his work at Archer between January 2020, when he was hired, and May 2021, it would be reasonable to hold Archer responsible for taken further steps to retain any information showing their use after May 2021. But Wisk neither states that Furman used any files before May 2021, nor suggests that any of those files even potentially relate to any Archer work after May 2021, despite Wisk having access to every one of the underlying files. That makes Archer's insistence that it (and Furman) never used the files and never knew they existed seem reasonable. It also supports Furman's repeated assertions that he did not know any Wisk-related information existed on his computer. Accordingly, deleting Thunderbird was not unreasonable.

And while it is reasonable to expect Archer and Furman to preserve information they knew existed—here, the files themselves—it is not reasonable to expect them to take additional and hypothetical steps to preserve information they did not know existed—here, the metadata showing the files were used, which may not have ever existed. In particular, the steps Archer took to preserve information were reasonable in light of the facts and allegations of the case—Archer required new employees to delete information related to former employers before starting at Archer, it imaged employees' devices as soon as Wisk sued, it reviewed those images to confirm that no Wisk-related materials existed (though it apparently it could have done this better), it re-imaged Furman's laptop when it found out some files had been retained and then deleted, and it shared all of the information and images with Wisk and the court. *See* Oppo. 9:2-15 (citing Feinstein Decl.). Had Archer any reason to believe that Wisk-related files existed or that Furman was using them, it could have been reasonable to expect Archer to take additional steps, such as taking more frequent forensic images to capture metadata or better enforcing the litigation hold by confiscating Furman's laptop. But because Archer did not know the files existed—and Wisk does not point to information showing metadata might exist—those hypothetical steps are unreasonable to expect Archer to take.

1    Accordingly, Wisk does not show Archer or Furman failed to take reasonable steps to

2 preserve the metadata, and so sanctions are not merited under Rule 37(e).

3        **2.   Prejudice Under Rule 37(e)(1)**

4    Even if Archer had failed to take reasonable steps to preserve the metadata, Wisk must

5 show that it was prejudiced by the loss.  Wisk argues that in deleting Thunderbird and iCloud from

6 his computer in December 2021, Furman also deleted any metadata from May through December

7 2021 that could show whether he used any file related to his work at Wisk.  *See generally* Crain

8 Decl.  While Wisk mentioned this theory in its opening brief, when it filed a new expert

9 declaration in reply I permitted Archer to file a sur-reply expert declaration regarding this theory.

10 *See* Harrison Decl.  Archer's expert provides a convincing argument that no metadata was lost

11 besides possibly metadata connected to the deleted photos.  *See id.* ¶¶ 5-7.  And while I agree with

12 Wisk that it should not have to take Archer (or Furman) at its word for lack of metadata loss, Wisk

13 fails to show the necessary prejudice to impose sanctions under FRCP 37(e)(1).

14    Archer produced in discovery all of the files that were on Furman's computer, including

15 the documents on the Thunderbird application and the photos and messages from Furman's

16 iCloud.  Wisk points to only one document from Furman's "Thunderbird local mailbox" that is

17 says "concerns" one of its trade secrets.  *See* Mot. 11:7-10; Repl. 4:26-5:3; *see also* Mot. Ex. 17

18 (sealed copy of the document).  But Wisk pointedly does not say that the document was used or

19 opened before May 2021, meaning it had not been used at the time Wisk sued Archer for theft of

20 trade secrets.  Wisk also does not say that the document relates to any work Archer did after May

21 2021, meaning it is highly unlikely the document was used or opened after May 2021—and so no

22 metadata would exist that could have been destroyed in the December 2021 deletion.  This is in

23 accord with Archer's and Furman's insistence that they did not know any of these documents

24 existed and did not use them.

25    Armed with the knowledge that some of Furman's files contained Wisk-related

26 information, Wisk could have made a showing that any of those files were opened or used before

27 May 2021 or that any were connected to Archer's work conducted after May 2021.  Either would

28 have suggested that Furman or another Archer employee used the files, thereby establishing the

United States District Court
Northern District of California

existence of at least *some* metadata between May and December 2021.  *See, e.g.*, *Dish Network L.L.C.*, 2022 WL 11270394, at *1, 4-5 (finding the failure to preserve emails prejudiced the plaintiff where the plaintiff pointed to other evidence that established the existence of the missing information existed).  But Wisk does not do that; instead Wisk merely says it would be "reasonable to conclude" that Furman used Wisk's trade secrets. Mot. 15:2-3; *cf. Fourth Dimension Software*, 2021 WL 5919821, at *10 (noting the strength of a party's claim for sanctions is significantly diminished when it fails to provide some "specifics to support" prejudice).  Wisk's assertion of prejudice is entirely speculative because its assertion that metadata exists is speculative, despite having access to ample evidence it could have used to support its theory.

While it is true that Archer cannot simply say no metadata existed and expect Wisk to take its word for that, in turn Wisk cannot simply say that metadata existed and point to nothing in support, despite sufficient opportunity to do so.  *See Estate of Bosco*, 2022 WL 16927796, at *8 (noting FRCP 37(e) "does not place a burden of proving or disproving prejudice on one party or the other" (citation omitted)).  Wisk does not show it was prejudiced by any loss of information. Even if Archer were responsible for Furman's actions, sanctions are not warranted under FRCP 37(e)(1) for the loss of the metadata.

### 3.  Intent to Deprive Under FRCP 37(e)(2)

For similar reasons, Wisk fails to show under FRCP 37(e)(2) that Furman (or Archer) acted with an intent to deprive Wisk of the use of the metadata.  It is true that Furman clearly intentionally deleted the Thunderbird application and iCloud files from his Archer-issued laptop, though he testified under oath at his deposition that he did so in response to a new company policy prohibiting personal use of work-issued devices, not in an effort to keep any information from Wisk.  Furman also knew that his laptop had been imaged, so given his general familiarity with technology, it is reasonable to conclude that he knew that the Thunderbird application and iCloud files had been forensically copied and were accessible to Wisk.  That suggests that even if the act of deletion was intentional, Furman did not intend to deprive Wisk of the files because he knew Wisk already had access to them.  *See Dish Network L.L.C.*, 2022 WL 11270394, at *3 (noting a

finding of intent "means the evidence shows, or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations" (citation omitted)).

Furman also repeatedly stated under oath that he did not know there were any Wisk-related files on his computer, which implies he did not access any Wisk-related files on his computer. *See* Furman Depo. 344:8-9. That suggests not only that it was unlikely there was any metadata to delete, but also that Furman did not delete anything intending to deprive Wisk of the information. Consequently, merely showing that he intentionally deleted the *files* is insufficient to show he deleted any *metadata* with the intent to deprive Wisk of the metadata. And again, while it is true that Wisk should not have to take Furman's word for this, despite ample opportunity Wisk does not point to any evidence showing Furman used any of the files, meaning there likely was not any metadata that Furman could have deleted with the requisite intent to deprive.

Accordingly, even if Archer were responsible for Furman's actions, sanctions are not warranted under FRCP 37(e)(2) for the loss of metadata.

### B. January 2022 Email Deletion

As discussed, the May 2021 forensic image of Furman's laptop included all emails downloaded to the Thunderbird email application. In January 2022, Furman then deleted emails stored on that same email account, but this time he accessed the email account via the web browser fastmail.com. Wisk notes that Thunderbird does not download all emails from a particular account, which means it is possible that some of the emails Furman deleted in January 2022 were never downloaded to Thunderbird and so were not captured by the May 2021 forensic image. *See generally* Crain Decl. Furman says he copied all of the deleted emails into a zip file on his computer, and those files were then provided to Wisk in discovery. *See* Oppo. 16:1-9; Feinstein Decl. ¶ 7. Wisk again asserts that it should not have to take Furman at his word with respect to whether that zip file contained all the deleted emails.

It is not clear that these emails meet the FRCP 37(e) requirement that information was "lost." Zip file aside, many (if not most) of Furman's emails on his personal account were copied onto Thunderbird on his Archer-issued computer and so were included in the May 2021 forensic image. Wisk speculates that the emails deleted from Furman's personal account in January 2022

13

had not been previously copied via the forensic image and so were not provided in discovery. It pointedly does *not* assert that any of the emails recovered from the zip file could not be found in the May 2021 forensic image. Accordingly, whether any emails are actually "lost" is mere speculation, though I address the merits of Wisk's argument below.

### 1. Prejudice Under FRCP 37(e)(1)

Wisk does not establish prejudice necessary for sanctions under FRCP 37(e)(1) because it does not show that Furman or Archer ever used or accessed any of the information contained in those emails. *See Fourth Dimension Software*, 2021 WL 5919821, at *10 (noting the importance of providing "specifics to support" prejudice under FRCP 37(e)). Furman insists that he did not know about any emails referencing Wisk materials until January 2022, when he deleted the emails. Wisk agrees that Furman deleted the emails out of fear of being searched by the FBI. *See* Mot. 10:4-12. Given Furman's stated fears and motivation, it makes sense that he would have deleted the emails as soon as he had reason to fear repercussions—meaning either when he found out the emails existed or, less generously, when his colleague's home was searched by the FBI. But his colleague's home was searched in March 2021, [Dkt. No. 133] 10:1-4, and he deleted the emails in January 2022, which lends credence to his assertion that his fear developed as soon as he discovered that the emails existed. In turn, that supports Furman's assertions that he did not previously know they existed and that he never used the emails while at Archer.

Importantly, Wisk could counter this chain of logic by presenting any evidence of Archer's work that related to any of Furman's Wisk-related files, but again it does not do so. *Cf. Dish Network L.L.C.*, 2022 WL 11270394, at *1, 4-5 (finding the failure to preserve evidence caused prejudice where the moving party pointed to other evidence showing that the missing information existed). And while it is not Wisk's sole responsibility to show prejudice from "lost" information when it cannot show what that information is, Wisk does have to produce *some* specific assertion to establish prejudice from the loss. *See Fourth Dimension Software*, 2021 WL 5919821, at *10. It did not. I decline to issue sanctions under FRCP 37(e)(1).

### 2. Intent to Deprive Under FRCP 37(e)(2)

To merit sanctions under FRCP 37(e)(2), Wisk must show that Furman deleted the emails

1    with the intent to deprive Wisk of their use in litigation.

2         It is clear that Furman intentionally deleted the emails, given his stated "panic" and his

3    desire to avoid an FBI inquiry.  *See Fourth Dimension Software*, 2021 WL 5919821, at *10.  But,

4    while it is a close issue, it is not clear that Furman deleted them "with the intent to deprive [Wisk]

5    of the information's use in the litigation."  Fed. R. Civ. Proc. 37(e)(2); *see also Dish Network*

6    *L.L.C.*, 2022 WL 11270394, at *3 (noting a finding of intent "means the evidence shows, or it is

7    reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations"

8    (citation omitted)).

9         Applying the considerations from *hiQ Labs, Inc.*, I find that Furman's deletion was not

10   conducted with the requisite intent.  First, the parties apparently agree that Furman's affirmative

11   deletion was motivated by fear of FBI agents coming to his house and impacting his family, which

12   favors not finding the requisite intent.  Second, though the financial situation from *hiQ Labs* does

13   not apply directly here, the relevant context of Furman's situation was that he apparently feared

14   for the wellbeing of his family, which counsels against finding the requisite intent.  Third, like in

15   *hiQ Labs*, the evidence was deleted long after the litigation began—and importantly, long after

16   Furman's devices had been imaged—which shows "[t]here was no rush to delete relevant

17   evidence" and supports the lack of requisite intent.  2022 WL 18399982, at *20.  Fourth, Furman

18   testified that he preserved all of the deleted emails, which supports showing no selective

19   preservation—though Wisk asserts he only preserved some, which would support selective

20   preservation, so I find this consideration is neutral.  Fifth, Archer does not assert that Furman

21   attempted to recover any of the deleted emails, though Archer points out it provided the deleted

22   emails from the zip file to Wisk.  This consideration is likewise neutral.

23         Taken together, the specific facts of this deletion event suggest that Furman did not

24   affirmatively delete the emails with the intent to deprive Wisk of the information in litigation.  The

25   choice was clearly careless, short-sighted, and irresponsible, but it was not made with the requisite

26   intent to justify sanctions under FRCP 37(e)(2).  Coupled with the question as to whether any

27   information was even lost in the deletion event, this lack of intent shows sanctions are not

28   merited—*even if* Archer were responsible for Furman's actions—and so I decline to impose them.

15

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### C.  Dropbox File

2      There is no dispute the Furman deleted a Wisk-related filed from his personal Dropbox

3  account and that Wisk has not been provided a copy of that file—though Archer says Wisk should

4  have a copy in its possession because it is a Wisk document.  Mot. 16:5-13; Oppo. 20:9-21:4;

5  Repl. 8:5-9:8.  Thus, it is clear that this document is "lost" and Wisk makes a strong argument that

6  "it cannot be restored or replaced through additional discovery" because Wisk has been unable to

7  locate the document, despite Furman's description.  Fed. R. Civ. Proc. 37(e).

8      **1.  Reasonable Steps to Preserve Data**

9      The document at issue was deleted from Furman's personal Dropbox account.  There are

10  no allegations that the document was ever on an Archer-issued device.  That the relevant Archer-

11  issued devices were imaged and the relevant documents were provided to Wisk, yet Wisk cannot

12  find *this* document, shows that the Dropbox file was not transferred to an Archer computer.

13  Archer reasonably exercised its authority to help new employees remove confidential information

14  from former employees when they first started at Archer, and also imaged and eventually took

15  away Furman's Archer-issued computer; it is not reasonable to expect Archer to image or

16  confiscate all of its employees' *personal* devices and personal cloud-storage services at the onset

17  of litigation.  For the same reasons outlined above, *supra* Part III.A.1, it seems that Archer took all

18  reasonable steps to preserve data.  *Cf. Dish Network L.L.C.*, 2022 WL 11270394, at *4.  It is not

19  clear that Archer had a duty to do more to preserve information on Furman's personal device.

20      Of course, Furman had a responsibility to preserve the information on his personal device

21  given the litigation holds and the subpoena, all of which were issued before he deleted the

22  Dropbox file.  Wisk asserts that Archer was responsible for taking reasonable steps to ensure

23  Furman complied with those litigation-related demands, and accordingly should have prevented

24  Furman from deleting the Dropbox file.  *See* Mot. 11:17-14:11.  Because it did not do so, Wisk

25  contends, the responsibility for the spoliation is imputed to Archer and so sanctions should be

26  imposed.  *Id.*

27      Under the facts here, I would disagree.  But I need not reach the question of whether

28  Archer is responsible for the deletion of litigation-relation documents from Furman's personal

1   devices because, as explained below, Wisk does not show it was prejudiced by the deletion or that

2   Furman deleted the file with the requisite intent.  Therefore, the standards for sanctions are not met

3   under FRCP 37(e).

4           **2.   Prejudice Under FRCP 37(e)(1)**

5           Unlike Wisk's other arguments concerning prejudice, with respect to the Dropbox file,

6   Wisk specifically explains what information the file may have contained and which trade secret

7   might have been related.  *See* Repl. 8:19-9:8; *see also Fourth Dimension Software*, 2021 WL

8   5919821, at *10 (noting the importance of providing "specifics to support" a finding of prejudice).

9   Furman describes the deleted document ██████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ██████████████████████████  Furman Depo. 248:16-249:15.  He could not recall

12  additional details and said he had not viewed it since 2013.  *Id.*  Wisk says it is prejudiced by the

13  loss of this document ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████  Repl. 9:1-3.

16          Even assuming that the information in the Dropbox file relates to Wisk's choice to ████

17  ████████████████████████████████████████, it is not clear how the loss of this

18  document prejudiced Wisk, in part because it is not clear how this document is related to anything

19  Archer made or did.  Wisk seems to say that without the document, it cannot prove what the

20  document contained or whether Furman used the document and so stole Wisk's trade secrets.  And

21  while it is true that Wisk cannot know for sure exactly what it contained without having a copy,

22  Wisk must do more to show the missing document is important to the case at hand.  *See Fourth*

23  *Dimension Software*, 2021 WL 5919821, at *10 (noting that prejudice is based "in part on the

24  importance of the information to the case" (citations omitted)).  For example, Wisk does not say

25  whether the ████████████████ discussed in the document were at all related to any *Archer*

26  products or design, which could have established prejudice by showing the information may have

27  been used by Archer.  Rather, Wisk says that it believes the document contained information

28  somehow relating to a trade secret because it discussed an early-generation *Wisk* product design.

United States District Court
Northern District of California

1    *See* Repl. 9:1-3; *see also* Mot. 10:20-21, 16:5-13.  But merely relating the ████████████

2    to Wisk products is not sufficient to show that the information is important to the claims in *this*

3    case, which are grounded in Archer's alleged use of Wisk secrets in *Archer's* products.  *Cf. Dish*

4    *Network L.L.C.*, 2022 WL 11270394, at *4 (finding the deleted emails "were plainly relevant" to

5    the specific claims in the case).

6          Accordingly, Wisk does not show that the Dropbox file was important or relevant to its

7    claims in this case, in large part because it does not show how any of the information in the

8    deleted document may have related to *Archer*'s work.  I find Wisk has not established prejudice to

9    impose sanctions under FRCP 37(e)(1).

10         **3.   Intent to Deprive Under FRCP 37(e)(2)**

11         To merit sanctions under FRCP 37(e)(2), Wisk must show that Furman deleted the

12   Dropbox file with the intent to deprive Wisk of its use in litigation.  Furman testified in his

13   deposition that he deleted the Dropbox file due to the same fear that caused him to delete the

14   Fastmail emails.  *See* Furman Depo. 238:19-23.

15         Above, I applied the considerations outlined in *hiQ Labs, Inc.*, 2022 WL 18399982, at *20-

16   21, to determine that the January 2022 deletion was not conducted with the intent to deprive Wisk

17   of the information.  *Supra* Part III.B.2.  I find that the first three factors apply in the same way to

18   the deletion of the Dropbox file because of Furman's testimony that he feared the FBI coming to

19   his house—the deletion was motivated by a distinct concern, the context was such that Furman

20   feared for his family, and the deletion occurred long after litigation began, all of which counsel

21   against imposing sanctions.  *See hiQ Labs, Inc.*, 2022 WL 18399982, at *20-21.  The remaining

22   two factors come out differently for the Dropbox file, because the preservation of the Fastmail

23   emails but not the Dropbox file indicates "selective preservation," and because neither Furman nor

24   Archer say that they attempted to recover the data.  *See id.*

25         This is a closer question than it was for the Fastmail emails.  However, given Furman's

26   sworn testimony providing reasons for his actions, as well as the fact that the deletion occurred

27   months after the litigation began—coupled with the fact that Wisk still has yet to point to Wisk's

28   documents from Furman's files that were allegedly used in Archer's products—I find that there is

1    insufficient evidence to show Furman deleted the Dropbox file intending to prevent Wisk from

2    using it in the litigation. *See also hiQ Labs*, 2022 WL 18399982, at *20 ("The most decisive

3    factor [in the 'intent' analysis] is the timing of the offending conduct." (internal citations and

4    quotation marks omitted)).  Accordingly, I decline to impose sanctions under FRCP 37(e)(2).

5                                    **CONCLUSION**

6         For the foregoing reasons, Wisk's motion for sanctions is DENIED.

7         **IT IS SO ORDERED.**

8    Dated: February 27, 2023



William H. Orrick
United States District Judge