GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Orin Snyder, admitted *pro hac vice*
  osnyder@gibsondunn.com
Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

*Attorneys for Defendant and Counterclaimant*
*Archer Aviation Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>ARCHER AVIATION INC.,<br><br>           Defendant. | CASE NO. 3:21-CV-02450-WHO (DMR)<br><br>**ARCHER'S OPPOSITION TO WISK'S MOTION TO COMPEL**<br><br>Hearing Date:   March 23, 2022<br>Hearing Time:   1:00 p.m.<br><br>Hon. Donna M. Ryu |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

Wisk presents this as a privilege dispute concerning two partially redacted documents that Archer produced to Wisk more than eight months ago. Wisk says Archer's "obstruction" is responsible for Wisk's delay. Mot. at 1. That is not true. Archer made clear in a July 2021 deposition that it was asserting privilege over aspects of FTI's investigation outside the scope of Brett Harrison's filed declaration (as Wisk earlier had done at its own forensic expert's deposition). The evidence shows Archer and Atlas Crest worked together to, among other things, assess and comply with securities law disclosure requirements, respond to Wisk's accusations against Archer, and evaluate the prospect of ▌. All of these collaborative legal efforts related to the FTI investigation, which itself was prompted by and directly related to this case. *See* Dkt. 58-24 (June 24, 2021 Harrison Declaration) ¶ 3. Archer and Atlas Crest had shared legal interests (including over the FTI investigation) and never waived the applicable attorney-client privilege and attorney work-product doctrine protections.

Wisk nevertheless brings this motion based on speculation that a "hidden portion" of Harrison's investigation into "personal devices" was "presumably harmful" to Archer. Mot. at 8–9. Wisk's "presumption" confirms Archer has never put any investigation of individuals' devices at issue. Surely if Archer had said anything about such an "investigation" of personal devices, let alone the results, Wisk would claim Archer had broadly waived attorney-client privilege and work-product protection. Now Wisk is claiming a subject matter waiver because Archer did *not* put any "investigation" of individuals' devices at issue. No matter what Archer does, Wisk will claim waiver. If not for Wisk's continued efforts to obtain through Court order what Wisk cannot prove with evidence, *see, e.g.*, Dkt. 423 (Order Denying Wisk's Motion for Sanctions), Archer would be willing to immediately provide Wisk with the results of the only analysis of any personal devices that FTI conducted.

That lone analysis does not render "false" (Mot. at 1) any Archer representation to this Court. Archer has never had legal control over any of its employees' personal devices. With consent from three employees provided by their personal counsel, FTI ran a limited file name search for operating system artifacts on certain of the employees' personal devices. March 2, 2023 Declaration of Brett

Harrison ¶ 3. Unlike its investigation of Archer devices, FTI did not have discretion or authority to conduct any forensic analysis beyond the authorized artifact search. *Id.* at 4. The personal devices remain in the control of the individuals and their counsel. Declaration of Michael H. Dore ("Dore Decl.") ¶ 2. As this Court knows, its prior decision denying Wisk's motion to forensically examine the personal devices of Messrs. Marius, Melack, or Muniz did not turn on whether Archer had "legal" control; rather, Wisk failed to meet a "heightened standard of good cause." Dkt. 295 (aff'd Dkt. 335).

Discovery is now closed and Wisk knows it cannot carry its burden of showing Archer misappropriated and used Wisk's purported trade secrets. So under the guise of a privilege dispute, Wisk moves to compel Archer to produce not only unredacted copies of the FTI report and Atlas Crest board meeting minutes, but also moves to compel Archer to amend written discovery requests, "including" four interrogatories and six requests for production. Mot. at i, 10. Wisk's Interrogatory No. 1 demands that Archer "[i]dentify with specificity any and all Documents within [Archer's] possession, custody, or control that were created by Wisk, its employees, or agents." Dkt. 415-13 at 2. By demanding a "supplement" of Archer's response here, Wisk is trying to paper over the evidentiary gap in its case by conflating former Wisk employees' inadvertent retention of Wisk material on personal devices with Archer's possession (and use) of Wisk material.

Wisk's cynical gambit should be rejected. The two documents at issue are privileged and there has been no waiver. Wisk's motion should be denied.

## II.   FACTS & PROCEDURAL HISTORY

**A.   Archer and Atlas Crest Became Merger Partners in February 2021 and Shared Common Legal Interests From that Point Forward**

Archer and Atlas Crest started negotiating a potential go-public transaction through a merger with a special purpose acquisition company ("SPAC") on December 31, 2020. Goldstein Decl. ¶ 3; Spellacy Decl. ¶ 3. The parties executed their Business Combination Agreement ("BCA") on February 10, 2021, in which they agreed to merge into one legal entity. Goldstein Decl. ¶ 4; Spellacy Decl. ¶ 3; Dore Decl. Ex. 1 (Aug. 10, 2021 Form S-4, Am. No. 5) at 100.

Upon execution of the BCA, both parties shared a legal interest in complying with disclosure requirements under the securities laws regarding the merger, including filing an S-4 registration

statement and related filings.  Goldstein Decl. ¶ 5; Spellacy Decl. ¶ 4 ; *see also* U.S. Securities & Exchange Commission, *SPACs, IPOs and Liability Risk under the Securities Laws* (Apr. 8, 2021), http://www.tinyurl.com/2espjx8d ("[A]ny material misstatement in or omission from an effective Securities Act registration statement as part of a de-SPAC business combination is subject to Securities Act Section 11.").

Another shared legal interest arose in late March and early April 2021, when Archer learned of a criminal investigation into one of its employees.  Goldstein Decl. ¶ 6.  On or about March 30, 2021, Archer received a grand jury subpoena from the U.S. Attorney's Office for this District.  The cover letter accompanying the subpoena admonished Archer that "disclosure of the subpoena and your response to it to any third parties may impede or obstruct the investigation," and "[t]herefore, we ask you not to disclose the existence of the subpoena or the nature of your response to it to any person for the indefinite future."  Dkt. 415-7.  Archer disclosed the fact of the subpoena to Atlas Crest, and Atlas Crest and Archer then worked with legal counsel to balance disclosure requirements under the securities laws with the U.S. Attorney's Office's admonishment that disclosure could "obstruct the investigation."  Goldstein Decl. ¶ 6; Spellacy Decl. ¶ 5.; *see, e.g.*, 18 U.S.C. § 1510 (Obstruction of Criminal Investigations).

**B.     Wisk Sues Archer and Makes Defamatory Statements About Archer in April 2021**

Another shared legal interest arose on April 6, 2021, when Wisk sued Archer and posted an entry on its blog titled "Why We're Taking Legal Action Against Archer Aviation."  Dkt. 156.  The lawsuit and Wisk's statements about Archer in a press release and blog post created serious concerns among investors.  Dore Decl. Ex. 2 (Spellacy Tr.) at 38:11-39:23.  ▮

▮

▮ Dore Decl. Ex. 3 (Goldstein Tr.) at 386:3-6 ("[T]he investors were contractually bound by the PIPE agreement to invest in the company. ▮

▮ Dore Decl. Ex. 2 (Spellacy Tr.) at 50:17-50:22

▮

| | |
|---|---|
| 1 | ▮▮▮ |
| 2 | ▮▮▮ |
| 3 | ▮▮▮ Dore Decl. Ex. 2 (Spellacy |
| 4 | Tr.) at 39:1-5 ▮▮▮ |
| 5 | ▮▮▮ |
| 6 | ▮▮▮ Consequently, Archer and Atlas Crest had a shared legal interest in ▮▮▮ |
| 7 | ▮▮▮ |
| 8 | ▮▮▮ |
| 9 | ▮▮▮ *See id.* at 65:8-12 ▮▮▮ |
| 10 | ▮▮▮ |
| 11 | ▮▮▮; Dore Decl. Ex. 3 (Goldstein Tr.) at 385:15-23 ▮▮▮ |
| 12 | ▮▮▮ |
| 13 | ▮▮▮ |
| 14 | ▮▮▮ |

15  As part of Archer's and Atlas Crest's efforts to mitigate legal risks, and the day after Wisk filed
16  its lawsuit and posted its April 6, 2021 blog post, Archer's outside legal counsel—first Morrison &
17  Foerster and then Gibson Dunn—retained former FBI agent and forensic expert Brett Harrison of FTI
18  Consulting to conduct a forensic inspection to search for any Wisk trade secrets or confidential
19  information on Archer's systems.  Goldstein Decl. ¶ 9; Dkt. 58-24 ¶ 3.  The FTI investigation was
20  intended to respond to Wisk's accusations and ▮▮▮
21  ▮▮▮ Dore Decl. Ex. 3 (Goldstein Tr.) at 457:19-458:15 ▮▮▮
22  ▮▮▮ because of specifically, they would mention the blog post
23  . . . we felt that we needed to do a very deep, expansive investigation which we did of FTI consultant
24  Brett Harrison.'"").  As part of that work—including at a June 2, 2021 meeting that included Atlas
25  Crest's Board and eleven outside attorneys from three different law firms—Gibson Dunn and FTI
26  provided an update on FTI's investigation.  *See* Dkt. 415–3 at 3–4 (Archer-NDCA-01778024) (the
27  board meeting minutes); Archer-NDCA-01761127 (presentation given at June 2, 2021 board meeting).
28

**C.     Harrison Submits an Expert Declaration in Support of Archer's Opposition to Wisk's Motion for a Preliminary Injunction and Is Deposed During Expedited Discovery**

On June 24, 2021, Archer filed a declaration by Harrison in support of its opposition to Wisk's motion for a preliminary injunction. The Harrison Declaration stated that the goal of FTI's investigation was to "locate all data on Archer's systems that appeared to come from Wisk, if any such data exists." Dkt. 58-24 ¶ 4. In SEC filings, Atlas Crest likewise stated that FTI, "in collaboration with Archer's legal counsel," conducted a "forensic investigation of Archer " to "search for Wisk's trade secrets and confidential information on Archer's systems," which included "dozens of Archer devices used by Archer's employees." Dore Decl. Ex. 1 (Aug. 10, 2021 Form S-4, Am. No. 5) at 101.

During Harrison's July 1, 2021 deposition, Wisk's counsel asked questions about FTI work concerning individuals' personal devices. Archer's counsel repeatedly instructed Harrison not to answer on the ground that Wisk's questions sought attorney work product and privileged communications. Archer's counsel explained that "questions about the investigation as a whole outside the scope of [Harrison's] declaration . . . are "subject to attorney work product protection." Dore Decl. Ex. 4 (Harrison Tr.) at 24:19-26:24; *see also e.g., id.* at 14:7-15:23, 19:15-20:17. Wisk's counsel claimed "we're going to have to litigate this," but Wisk then waited well over a year to challenge Archer's expressly stated position. *Id.* at 24:11-18.

Wisk's forensic expert Michael Kunkel was deposed approximately two weeks before Harrison. At that June 18, 2021 deposition, Wisk's counsel instructed Kunkel not to answer multiple questions about devices that Wisk's counsel deemed not "relevant" and about communications with attorneys outside the scope of Kunkel's declaration in the preliminary injunction phase of the case. Dore Decl. Ex. 5 (Kunkel Tr.) at 25:15–18 (Wisk Counsel: "Yeah, we're not going to produce a list that includes devices that are not relevant to his analysis. That's privileged. We're not going to do that."); *see also e.g., id.* at 20:13:18, 24:14–20, 89:17-90:6. Later in the litigation, Wisk also refused to produce documents related to Kunkel's forensic analyses of devices that Wisk contended it had not put at issue. Dore Decl. Ex. 6 (Wisk's objections to Archer RFP Nos. 71 and 72).

D. **Archer and Atlas Crest Amend the Business Combination Agreement**

On July 13, 2021, Atlas Crest reached out to Archer regarding a proposed amendment to the BCA that would include a revised valuation. Goldstein Decl. ¶ 10; Dore Decl. Ex. 1 (Aug. 10, 2021 Form S-4, Am. No. 5) at 104. The entities negotiated the amendment over the next 16 days, and on July 29, 2021, Archer and Atlas Crest executed an amendment to the BCA. *Id.* That amendment was intended to incentivize PIPE investors to remain in the deal, which eventually was consummated on September 16, 2021. Dore Decl. Ex. 2 (Spellacy Tr.) at 85:13-86:5.

E. **Archer Timely Responds to Discovery Directed to Atlas Crest**

On December 3, 2021, Wisk served its fourth set of RFPs to Archer, which in effect sought documents from Atlas Crest. Dore Decl. ¶ 9, Ex. 7. Because Atlas Crest had merged with Archer, Archer informed Wisk that it should serve any document requests for Atlas Crest documents directly on Archer. Dore Decl. ¶ 9. Archer's counsel made clear that Archer did not currently have in its possession Atlas Crest documents, but Archer would exercise its legal right to obtain such documents and produce responsive, non-privileged documents subject to any applicable objections. *Id.* Beginning in early March 2021, Archer began a rolling production of Atlas Crest documents responsive to Wisk's discovery requests. *Id.* The two documents subject to this motion were produced on June 16, 2022, along with an accompanying privilege log served on July 16, 2022. *Id.*

### III.   ARGUMENT

A. **The Redacted Portions Of The Two Documents At Issue Are Covered By The Attorney-Client Privilege and Attorney Work-Product Doctrine**

A communication is privileged when "the primary purpose of the communication is to give or receive legal advice," *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021), and even if there is a "clear business purpose" in the context of the communication, it remains privileged so long as there "is a clear evidentiary predicate for concluding that each communication in question was made primarily for the purpose of generating legal advice." *McCaugherty v. Sifferman*, 132 F.R.D. 234, 238 (N.D. Cal. 1990). The work product doctrine protects "documents . . . prepared in anticipation of litigation . . . by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A).

1   Wisk speculates that Archer had Harrison present to Atlas Crest's Board on June 2, 2021 "[t]o
2   calm [Atlas Crest's] anxiety about proceeding with the deal." Mot. at 6. In support of its conjecture,
3   Wisk claims Atlas Crest "had the right to terminate the deal [with Archer] if Archer's representations
4   and warranties were not true—including its warranty that Archer 'owns and possesses all right, title
5   and interest in its intellectual property.'" Mot. at 3. That is not accurate. The BCA that Wisk purports
6   to interpret does not support Wisk's assertion that Atlas Crest could simply walk away, as reflected in
7   pages of the BCA Wisk did not append to its motion. Dore Decl. Ex. 8 (BCA) at 10, 31, 38, 85-87.

8   Wisk also does not address sworn deposition testimony showing the FTI investigation was
9   intended to benefit both Atlas Crest and Archer with respect to existing litigation with Wisk and in
10  anticipation of ███████████████████████. *See, e.g.,* Dore Decl. Ex. 3 (Goldstein Tr.) at
11  509:11-16 ██████████████████████████████████████████████████████████████
12  ████████████████████████████████████ Ex. 2 (Spellacy Tr.) at 39:15-17 ██████████
13  ██████████████████████████████████████████████████████████████████████
14  ██████████

15  Wisk's unsupported claim that the FTI investigation was conducted purely, or even primarily,
16  for business purposes is also contradicted by the face of the documents and the sworn declarations
17  submitted in connection with this opposition. Archer-NDCA-01761127 at -27, -32 (June 2, 2021)
18  (marked "Privileged and Confidential" and referring to "MOFO/Gibson review of search term hits to
19  identify and elevate documents for FTI forensic analysis…"); Archer-NDCA-01778024 at -24, -26-27
20  (marked "Privileged and Confidential" and referencing June 2, 2021 discussion of "FTI/Gibson
21  Investigation," "Gibson Litigation Update," and "Kirkland Litigation/Transaction Update" attended by
22  eleven outside attorneys from three separate law firms); Goldstein Decl. ¶¶ 8-9; Spellacy Decl. ¶ 6.

23  **B.     Archer and Atlas Crest Shared Common Legal Interests Regarding the FTI Investigation**
24  Privilege and work product protections were not waived over these documents because they
25  "pertain to" matters "in which the parties ha[d] a joint legal interest" and were "designed to further that
26  specific legal interest." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).
27  Here, Atlas Crest and Archer had a shared litigation interest. *Supra* at Section II.B. But the common-
28  interest exception to waiver is "not limited to joint litigation preparation efforts," and is broadly

"applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance." *Id.*

Wisk claims without citation to evidence that Archer and Atlas Crest "had significant adverse interests" in June 2021, that they were in an "adverse negotiation" and that there was a significant possibility Archer would sue Atlas Crest. Mot. at 7–8. On the contrary, Mr. Spellacy testified that "the reset was from a highly collaborative engagement between Archer and Atlas Crest … to ensure that these world-class pipe investors, who are your best advocates in a pre-revenue, pre-growth company, you want them to be their binding institution block of shares, you want them to be on your side and potentially be accumulators post the transaction." Dore Decl. Ex. 2 (Spellacy Tr.) at 85:13-24. That the BCA, like virtually every other commercial contract, could be amended under certain circumstances, and was in fact amended, does not undermine the common legal interests Archer and Atlas Crest shared with respect to the existing and threatened litigation they jointly faced in June 2021.

This District has recognized common interest privilege between negotiating parties that do not consummate a deal. In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987), Bausch & Lomb asserted common-interest privilege over an attorney's opinion letter shared with third-party company GEC regarding the validity and possible infringement of HP's patent by Bausch & Lomb. Bausch & Lomb was "in discussions with" GEC concerning the sale of one of Bausch & Lomb's divisions when it disclosed the letter. *Id.* at 310. "Presumably to improve the odds of persuading GEC to make the purchase," Bausch & Lomb shared the letter with GEC. *Id.* at 309-10. HP sued Bausch & Lomb and claimed Bausch & Lomb's disclosure to a third party waived attorney-client privilege. *Id.* at 308. The *Hewlett-Packard* court held that common-interest privilege protected the letter even though Bausch & Lomb and GEC never actually reached a deal. The court found it "clear that [Bausch & Lomb] and GEC anticipated litigation in which" they "would be identically aligned" and thus "have a common interest" had the deal gone through. *Id.* at 310.

The alignment of legal interests here is even more concrete. In their joint effort to comply with SEC regulations, Archer and Atlas Crest agreed in Section 5.7 of the BCA to work together to prepare SEC filings that would "comply in all material respects with the applicable [SEC] rules and regulations promulgated." Dore Decl. Ex. 9 (BCA) at 74. Archer and Atlas Crest also had a shared legal interest

1  concerning litigation against Wisk, as well as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See In re Regents of Univ. of Cal.*, 101
3  F.3d 1386, 1390-91 (Fed. Cir. 1996) ("Persons seek legal advice and assistance in order to meet legal
4  requirements and plan their conduct.").

5  The sworn deposition testimony of Mr. Goldstein and Mr. Spellacy, their respective
6  declarations, the cited SEC filings, Brett Harrison's prior declaration (Dkt. 58-24) and the redacted
7  documents themselves (among other things) show (1) FTI's analysis was necessary for the attorneys'
8  legal advice to Archer and Atlas Crest related to Wisk's allegations, the lawsuit, and disclosure
9  requirements, *see, e.g. In re REMEC, Inc. Sec. Litig.*, No. 04-CV-1948-MMA (AJB), 2009 WL
10 10673009, at *3 (S.D. Cal. June 4, 2009); *Helico Sonoma, Inc. v. Gannett Co.,* No. 22-CV-00590-JSW
11 (RMI), 2023 WL 181840, at *2–3 (N.D. Cal. Jan. 13, 2023) (citing Cal. Evid. Code § 952), and (2)
12 sharing that analysis between Archer and Atlas Crest did not result in a waiver of attorney-client
13 privilege because they had shared legal interests. *Hewlett-Packard*, 115 F.R.D. at 310.

14 **C.     Archer Never Put Employee Personal Devices, Nor Any Investigation Into Them, At Issue**

15 Archer has never put any information about personal devices at issue in this litigation. Nor has
16 Archer selectively disclosed information about some personal devices while withholding others. And
17 contrary to Wisk's claim, Archer does not intend to rely on FTI's limited analysis of personal devices
18 to defend itself. Mot. at 9 (citing Dkt. 154 ¶ 289). Archer's "no willful infringement" defense is based
19 on "better than best" onboarding practices, which were designed to ensure that prior employers'
20 confidential material never reached Archer (Dkt. 58-13 ¶¶ 52-60), not an *ex post* forensic investigation.

21 Wisk also cites *Wadler v. Bio-Rad Laboratories, Inc.*, 212 F. Supp. 3d 829 (N.D. Cal. 2016),
22 to argue that once a presentation about an investigation is disclosed, all privilege over that presentation
23 and "any related documents or communications" is waived. Mot. at 9. Wisk misstates the *Wadler*
24 holding and fails to acknowledge that Archer has complied fully with *Wadler*'s requirements. In
25 *Wadler*, the court held that because the defendants had disclosed complete copies of presentations
26 prepared by their attorneys to government regulators, privilege over those presentations was waived.
27 *Id.* at 852–54. Then, the court held that the waiver should expand to other documents related to the
28 presentation because the presentation "describe[d] the underlying investigation by outside counsel in

great detail" and because the defendants were "poised to use the conclusions of outside counsel offensively at trial to defeat" plaintiff's claim. *Id.* at 852. Unless the court held that privilege was waived, plaintiff would be precluded "from presenting related communications to rebut th[e] evidence" in the presentation. *Id.* at 852.

Unlike in *Wadler*, and the other cases Wisk cites—*McIntyre v. Main St. & Main Inc.*, No. 99-CV-5328-MJJ (EDL), 2000 WL 33117274 (N.D. Cal. Sept. 29, 2000) and *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 242–43 (N.D. Cal. 2015)—Archer has never put at issue the investigation over which privilege purportedly was waived. *See Schering Corp. v. Mylan Pharmaceuticals, Inc.*, 2011 WL 3651343, at *6 (D.N.J. Aug. 18, 2011) (rejecting argument that a waiver should be scoped to "the entirety of '[the] investigation'" at issue, instead affirming a waiver narrowed to elements of the investigation that were disclosed and used in the litigation); *see also Zeiger v. WellPet LLC*, No. 17-CV-04056-WHO, 2018 WL 10151156, at *3 (N.D. Cal. Apr. 10, 2018) (finding waiver "limited in scope only to" the information "specifically mentioned in the" filing that triggered the waiver).

**D.     Fairness Does Not Require Imposing a Subject-Matter Waiver Scoped Beyond the Documents Archer Has Already Produced**

When the party seeking subject-matter waiver "has not demonstrated why it would be unfair to limit disclosure to the documents already produced by" the party asserting privilege, this Court has declined to order a subject-matter waiver. *U.S. Inspection Serv's, Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D 614, 625 (N.D. Cal. 2010) (Ryu, J.).

Here, Wisk has deposed eleven former Wisk employees including Diederik Marius (two times), Johnny Melack (three times), and Tom Muniz (four times). Dore Decl. ¶¶ 12–15. Wisk also has received documents from nineteen former Wisk employees' personal devices and accounts, with metadata intact. *Id.* ¶ 16. Wisk has ample evidence as to the personal devices and has demonstrated no unfairness. In addition, Wisk has the Harrison Declaration, and the unredacted portions of the FTI presentation and Atlas Crest meeting minutes regarding the same. It has also deposed Mr. Harrison twice in this litigation. *Id.* ¶ 17.

**IV.     CONCLUSION**

For the reasons set out above, Archer respectfully requests that Wisk's motion be denied in full.

| | |
|---|---|
| DATED: March 2, 2023 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: /s/ Josh A. Krevitt |
| | Josh A. Krevitt |
| | *Attorneys for Defendant Archer Aviation Inc.* |