QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ARCHER AVIATION INC.,<br><br>　　　　　Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**PLAINTIFF WISK AERO LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL FTI DOCUMENTS**<br><br>Hearing<br>Date: March 23, 2023<br>Time: 1:00 p.m.<br>Hon. Donna M. Ryu |

I.     ARCHER AND ATLAS CREST LACKED A COMMON LEGAL INTEREST

Archer's opposition does not deny the legal principles that govern this motion, namely, that if Archer and Atlas Crest had adverse interests, Archer's disclosure of the FTI report waived any privilege that had attached to it.  Instead, to oppose that outcome, Archer has attempted to whitewash the facts. But those facts cannot be painted over. Once Atlas Crest's Board learned:

- that a federal grand jury pursuing a criminal investigation into the misappropriation of Wisk's trade secrets had served a subpoena on Archer;
- that several former Wisk engineers that Archer had hired also received grand jury subpoenas;
- that the FBI had executed a search warrant on another; *and*
- that Archer faced significant litigation arising from its alleged theft of Wisk's intellectual property;

the Board's fiduciary duties obligated it to reassess whether Archer was still worth purchasing, and at what price. That interest was at complete odds with Archer's.  Its aim at the time was to persuade Atlas Crest not to walk away, despite its legal baggage. Those are completely divergent interests—which ultimately resulted in a billion-dollar reduction in Archer's enterprise value—and they preclude Archer from claiming a "common interest" privilege over documents that it shared with Atlas Crest at the time.

Notably, Archer's declarations do not substantively dispute that Archer and Atlas Crest had conflicting interests. Nor do they dispute many of the antagonistic positions between Archer and Atlas Crest that Wisk's motion identified. Wisk pointed out that Atlas Crest had the right to back out of the transaction. Mot. at 7–8. Neither Mr. Spellacy nor Mr. Goldstein deny that. Wisk pointed out that Atlas Crest was considering pulling the plug on the merger. *Id*. at 3–4. Neither Mr. Spellacy nor Mr. Goldstein deny that. Wisk pointed out that there was a serious possibility of ***litigation between*** Archer and Atlas Crest over the potential failure of their merger. *Id*. at 8. Mr. Spellacy and Mr. Goldstein do not deny that. Instead, they talk around the obvious: Atlas Crest was considering walking away, and Archer was trying to persuade it not to. *See id*. at 4–8.

1  Likewise, Archer's opposition ***does not deny*** that Mr. Harrison's presentation to Atlas
2  Crest's Board was part of Archer's effort to keep Atlas Crest at the negotiating table. Mr.
3  Spellacy's declaration comes close to admitting as much, euphemistically discussing Mr.
4  Harrison's presentation in the context of Atlas Crest's "want[ing] to ensure its Board had all the
5  information to fulfill its fiduciary duties[.]" Spellacy Decl. ¶ 7. As Wisk explained in its motion,
6  the "fiduciary duties" Atlas Crest's Board were attempting to fulfill at the time included deciding
7  whether to ***reverse their recommendation that Atlas Crest's shareholders vote to approve***
8  ***Archer's purchase***. Mot. at 3–4. Neither Mr. Spellacy nor Mr. Goldstein denied that. It is difficult
9  to imagine a more ***adverse*** posture between two separate companies contemplating a merger. *See*
10 *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) ("Thus, [disclosure]
11 was designed to further not a joint defense in this litigation, but to further a commercial
12 transaction in which the parties, if anything, have opposing interests. The [disclosed document]
13 thus would not qualify for the common interest exception.").
14  To salvage its common-interest claim, Archer relies predominantly on one case: *Hewlett-*
15 *Packard Co. v. Bausch & Lomb, Inc*., 115 F.R.D. 308 (N.D. Cal. 1987). *See* Opp. at 8. Archer fails
16 to mention, however, that "the vast majority of the courts that have been asked to follow *Hewlett-*
17 *Packard* have declined to do so," holding that it misapplied the common-interest doctrine. *10x*
18 *Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 339 & n.3 (D. Del. 2020) (collecting cases).
19 That includes courts in this District. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2017 WL
20 2694191, at *6 (N.D. Cal. June 21, 2017) ("Although Uber continues to urge that *Hewlett-*
21 *Packard* is persuasive authority, numerous subsequent decisions have disagreed with its
22 suggestion that 'the common interest privilege extends generally to disclosures made in
23 connection with the prospective purchase of a business.'") (quoting *Nidec*)).
24  In any event, *Hewlett-Packard* is distinguishable. In that case, the court concluded that,
25 based on the narrow facts before it, the disclosure of an attorney's opinion letter to a merger
26 partner did not waive privilege. 115 F.R.D. at 311–12. Notably, the court found it "especially
27 significant" that the party seeking to avoid waiver was "not attempting to make use of any portion
28 of the subject opinion letter" in the litigation, which the court relied on in concluding that applying

the privilege would not risk any "truth-garbling or partial disclosure concerns[.]" *Id.* at 312. That is not the case here.  As explained in Wisk's motion, Archer is explicitly relying on Mr. Harrison's forensic investigation in this litigation, and it has already selectively disclosed some of the results of that investigation to defend against Wisk's claims. Mot. at 3–4, 8–9.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████ And neither Archer's opposition nor its supporting declarations explain how the FTI documents actually furthered any such common interests, which the doctrine requires. *Nidec*, 249 F.R.D. at 598. Such a contention would also contradict Atlas Crest's S-4 disclosure, which stated that the purpose of the Board meeting where Mr. Harrison made his presentation was not to plan legal strategy.  Instead, it was to engage in "extensive review and discussion" regarding "matters and other conditions and developments relevant to the Original Business Combination Agreement"—that is, to discuss the business deal over which they were then at odds. LaFond Decl. Ex. 9 at 100.

       On these facts, the Court should hold that Archer waived privilege by disclosing the results of Mr. Harrison's investigation to its adverse counterparty, Atlas Crest.

## II.  ARCHER WAIVED PRIVILEGE BY PUTTING HARRISON'S WORK AT ISSUE

       Archer concedes that it has relied on Mr. Harrison's investigation in this litigation and that it intends to continue to do so. To avoid the waiver that Archer's doing so triggers, *e.g.*, *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016), Archer pretends that Mr. Harrison conducted two investigations—one into "Archer devices" and a separate one into Archer's employees' personal devices. *See* Opp. at 9–10. Archer's claim defies the facts, given that those "separate" investigations were done at the *same time*, by the *same person*, and *memorialized in a single presentation* to Archer and then to the Atlas Crest Board.

       Archer's claim that it does not intend to rely on Mr. Harrison's investigation into Archer's employees' personal devices in its defense is another canard. *See* Opp. at 9. Of course Archer is

not planning to introduce evidence that would damage its case—which is why Archer conceived of its gerrymandered bisection of Mr. Harrison's investigation in the first place. Indeed, Archer's opposition all but admits that Mr. Harrison found Wisk confidential information on Archer's employees' devices—exactly what Wisk has been attempting to demonstrate all along. *See id*. at 1 (referring to the supposedly "inadvertent retention of Wisk material on personal devices").

Archer's self-serving division of Mr. Harrison's work seeks to hide admittedly relevant evidence from Wisk and the Court. Archer hired Harrison to investigate its employees' work devices ***and*** some of its key employees' personal devices, and it reported on the totality of that investigation to Atlas Crest because it knew its investors would not be reassured by an investigation that revealed that just ***some*** *of* the Archer employees' work devices had no Wisk information on them.

Yet when it came to defeating Wisk's motion for a preliminary injunction, Archer held back part of his investigation as "privileged" and used the rest to enable Mr. Harrison to make seemingly broad exculpatory statements that he found no evidence of Wisk's information on Archer's systems. *See* Mot. at 4–5. The entire point of those representations was to assure the Court that there was a complete absence of evidence of Wisk's misappropriation claims and therefore no basis for injunction. But Archer let Mr. Harrison testify only about the exculpatory items of evidence while deliberately hiding from the Court and Wisk the rest of the evidence that his investigation had uncovered. Had Archer been as candid with the Court as it was with its investors, it would have included the full results of Mr. Harrison's investigation in his preliminary-injunction declaration. That form of furtive, partial disclosure is a classic waiver. *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc*., 259 F.3d 1186, 1196 (9th Cir. 2001) ("'The [attorney-client] privilege … may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.'") (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)); *McIntyre v. Main St. & Main Inc*., 2000 WL 33117274, at *3 (N.D. Cal. Sept. 29, 2000) ("[D]efendant cannot rely on the investigation by outside counsel as part of its defense, while at the same time shielding the investigation from discovery. Any use of the

investigation in its defense would waive the privilege."); *see also Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 242–43 (N.D. Cal. 2015) (same).

### III.  ARCHER MUST PRODUCE ALL DOCUMENTS ON THE SUBJECT MATTER

Despite pretending that this dispute is about only two documents, *see* Opp. at 1, Archer does not dispute that the ordinary result of its waiver would be the production of all documents and communications on the same subject matter. *See Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (waiver extends to "related, protected information"); *Wadler v. Bio-Rad Lab'ys, Inc.*, 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016) (explaining that "the disclosure of [a privileged presentation regarding an investigation] … resulted in waiver of attorney-client privilege not only as to the document itself but also any privileged communications about the specific matters disclosed in the [presentation]"). But Archer seeks this Court's lenience, claiming that it would be "unfair" to impose the result that the law requires. *See* Opp. at 10. Not so. Archer's selective disclosures about the investigation and Archer's misleading representations about its scope have infected these proceedings from their inception. The core questions that the jury is going to be asked are whether Archer's employees took Wisk's information when they left, and whether they used that information in their work at Archer. It would be unfair to deprive Wisk of material evidence to prove that.

*U.S. Inspection Services, Inc. v. NL Engineered Solutions, LLC* is not to the contrary. In that case, this Court did not order a subject-matter waiver because "there [wa]s no indication in the record" that the party asserting privilege "attempted to use [its consultant's] work as both a 'sword and a shield' by making use of some documents . . . yet withholding the rest to shelter unfavorable evidence." 268 F.R.D. 614, 625 (N.D. Cal. 2010). That is obviously not the situation here. Archer *is* "making use of some" of Mr. Harrison's analysis while relying on privilege to shield the rest.

### IV.  CONCLUSION

The Court should compel Archer to produce unredacted versions of the Harrison Presentation and the Atlas Crest Board Minutes, the results of his review of the devices redacted in the Presentation, and all other documents or communications related to the subject matter, and to supplement the discovery responses that Archer's privilege claim rendered deficient.

Dated: March 9, 2023 Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    */s/ Diane Cafferata*
       Yury Kapgan
       Robert M. Schwartz
       Diane Cafferata
       Patrick Schmidt
       Michael LaFond
       Brian E. Mack

Attorneys for Plaintiff Wisk Aero LLC