QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Plaintiff Wisk Aero LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>ARCHER AVIATION INC.,<br><br>            Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**WISK'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF MIRANDA KANE**<br><br>Hon. William H. Orrick<br>Hearing Date: May 12, 2023<br>Hearing Time: 3:00 p.m. |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on May 12, 2023, at 3:00 p.m., or as soon thereafter as the matter may be heard, via videoconference, in Courtroom 2, 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, Plaintiff Wisk Aero LLC ("Wisk") will and hereby does move the Court for an order excluding the opinions and testimony of Miranda Kane, expert witness for Defendant Archer Aviation Inc. ("Archer"), pursuant to Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Although Wisk moves to exclude the entirety of Ms. Kane's opinions and testimony, for the Court's convenience, the opinions to be excluded are found in the following sections of Ms. Kane's expert report dated December 21, 2022 ("Kane Report"), which constitutes the complete statement of Ms. Kane's opinions required by Fed. R. Civ. P. 26(a)(2)(B):

- Ms. Kane's opinions regarding Archer's communications with the office of the U.S. Attorney for the Northern District of California, as reflected in paragraphs 17-20, 37-39, 41-47;
- Ms. Kane's opinions regarding the reputations of certain prosecutors in the office of the U.S. Attorney for the Northern District of California, as reflected in paragraph 38; and
- Ms. Kane's opinions regarding Archer's status as a "target" and the meaning and accuracy of Wisk's May 19, 2021 blog post, as reflected in paragraphs 17-20, 40-48.

Wisk's motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the supporting declaration of Moon Hee Lee, the exhibits to that declaration, all matters of which the Court may take judicial notice, other pleadings on file in this action, and the other written or oral argument that Wisk may present to the Court.

DATED: March 19, 2023                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By     */s/ Yury Kapgan*
Yury Kapgan
Attorneys for Plaintiff Wisk Aero LLC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 2

    A. The FBI And The DOJ Conducted An Investigation Into The Potential Theft And Use Of Wisk's Intellectual Property ............................................................ 2

    B. Ms. Kane Addresses Archer's Status As A "Target" In That Investigation ............. 5

III. ARCHER BEARS THE BURDEN OF PROVING ADMISSIBILITY ............................ 6

IV. ARGUMENT ................................................................................................................... 7

    A. Ms. Kane's Opinions Are Not Relevant To Any Live Question ............................ 7

    B. Ms. Kane's Opinions Are Unreliable And *Ipse Dixit* ........................................... 10

V. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*California ex rel. Brown v. Safeway, Inc.*,
  615 F.3d 1171 (9th Cir. 2010)..................................................................................................7, 13

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007)............................................................................................................ 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993).............................................................................................................passim

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)...........................................................................................................11, 12

*Guidroz-Brault v. Missouri Pac. R. Co.*,
  254 F.3d 825 (9th Cir. 2001)........................................................................................................... 7

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) .......................................................................................... 9

*Lust ex. Rel. Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996)............................................................................................................. 6

*Nicholson v. Medina*,
  2013 WL 6198187 (E.D. Cal. Nov. 27, 2013).........................................................................7, 13

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010)......................................................................................... 6, 7, 10, 11

*Siring v. Oregon State Bd. of Higher Ed. ex.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) ............................................................................................ 13

*United States v. Rincon*,
  28 F.3d 921 (9th Cir. 1994).................................................................................................7, 9, 10

*United States v. Komisaruk*,
  885 F.2d 490 (9th Cir. 1989)........................................................................................................ 12

*United States v. Verduzco*,
  373 F.3d 1022 (9th Cir. 2004)...................................................................................................... 12

*Woods v. City of Hayward*,
  2021 WL 4061657 (N.D. Cal. Sept. 7, 2021) .............................................................................. 13

**RULES AND REGULATIONS**

Fed. R. Evid. 702 ................................................................................................................................ 6

## I. INTRODUCTION

To support its state law counterclaims, Archer proffered a report from putative expert witness Miranda Kane, a former prosecutor in the U.S. Attorney's office, who offers no opinions relevant to the questions that Archer's counterclaims raise. The counterclaims are directed to Wisk's April and May 2021 blog posts and press release about this lawsuit and Archer's conduct. Ms. Kane's opinions focus on Wisk's May 19 blog post, in which Wisk said that it was cooperating with a federal criminal investigation "into Archer relating to the theft and use of Wisk's intellectual property." For two reasons, the Court should exclude Ms. Kane's testimony.

***First***, Ms. Kane's testimony does not address any issue the jury will be asked to resolve and should therefore be excluded under Fed. R. Evid. 702(a). Ms. Kane considered and is prepared to testify only about whether Archer was a "target" of the criminal investigation. But as Archer well knows and has conceded, Wisk never said that Archer was a target. Archer's counterclaims, which frame the issues for the jury, allege that Wisk's May 19 blog post defamed Archer by falsely implying that Archer was a "subject" of that criminal investigation. *See* Dkt. 154 (Second Amended Counterclaims) ¶¶ 88-90. Ms. Kane offers no opinion as to whether Archer was a subject, and for good reason: it is undisputable that Archer *was* a subject and that the investigation was "into" Archer, as Wisk correctly stated. The Kane Report does not mention Archer's subject status. If admitted, Ms. Kane's opinions about "target" status would improperly confuse the jury and waste its time.

***Second***, Ms. Kane's opinions should be excluded because they are unreliable and inadmissible under *Daubert*. Her opinions are merely *ipse dixit*, unsupported by any recognized or reliable methodology, reasoning, or example, and are contradicted by the undisputed facts and Archer's own pleadings. For example, Ms. Kane opines anecdotally that she has never heard reference an "investigation into" someone where that person was not a target. Ms. Kane claims that federal prosecutors say they are conducting an "investigation into" a party *only* after they have already determined that such party is a target—in other words, a putative defendant that prosecutors already have substantial evidence connecting to a crime—as opposed to a subject whose conduct is within the scope of that investigation. Ms. Kane offered no reasoning or

1

Case No. 3:21-cv-02450-WHO
WISK'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF MIRANDA KANE

methodology to support her opinion, or any way to test it. To the contrary, Ms. Kane acknowledged that her interpretation is not written down anywhere. When offered the opportunity to name even a single person who agreed with her opinion that "an investigation into" someone means that the "someone" is a "target" of that investigation, Ms. Kane could not. Nor does the Kane Report give a single example, treatise, or authority supporting her personal understanding of the words. The Justice Manual (formerly, the U.S. Attorney's Manual) contains no support for her opinion. Removing any doubt, Ms. Kane could not offer any explanation for why her opinions are contradicted by Archer's own pleading, which avers that the phrase "investigation into Archer" meant that Archer was a "subject" of the investigation.

For these reasons, and those explained below, Ms. Kane's opinions fail *Daubert* and should be excluded.

## II.    FACTUAL BACKGROUND

### A.    The FBI And The DOJ Conducted An Investigation Into The Potential Theft And Use Of Wisk's Intellectual Property

On June 19, 2020, Wisk made a formal referral to the Santa Clara County District Attorney regarding the possible theft of its trade secrets. Ex. C.[1] In it, Wisk detailed its findings, that between January 8 and 14, 2020, ten Wisk employees left to join Archer, and that forensic investigations showed that at least one had downloaded files containing Wisk's confidential information and trade secrets and not returned USB devices. *Id.* The District Attorney referred the matter to the FBI and the Department of Justice, who launched a grand jury investigation and sought Wisk's cooperation. *See, e.g.*, Ex. D (First Subpoena to Wisk). Wisk cooperated, including by responding to subpoenas and making its employees available for interviews. Ex. E (Email from FBI Special Agent Mergen: "Glad we could connect this week on the interviews, all of the employees at Wisk were great and provided very helpful information."); *see also* Ex. F-A (Wisk Expert Report of Hon. Louis J. Freeh (Ret.)) ¶ 14 ("Freeh Report").

---

[1] Citations to "Ex." refer to the exhibits in the concurrently filed declaration of Moon Hee Lee.

On March 30, 2021, the grand jury investigating the potential theft of Wisk's intellectual property subpoenaed Archer for a broad range of documents related to Archer's business and hiring practices, as well as records related to Wisk, including records related to "[a]ny Wisk technology, products or business plans, … [including] confidential business information or data belonging to Wisk … or use of any such information," records relating to former Wisk employees and "[a]ny proprietary documents … brought to Archer Aviation by th[o]se individuals," and records related to Archer's financing, foreign sources of funding, and partnerships with public and private investors. Ex. G at -738; Ex. F-A (Freeh Report) ¶ 17. On March 31, 2021, the FBI executed a search warrant at the home of an Archer employee formerly at Wisk, Dr. Jing Xue.

On April 6, 2021, Wisk filed its lawsuit against Archer, and published a blog post explaining why it sued Archer and summarizing the allegations in the Complaint. Ex. K (Wisk Blog Post). The same day, Archer told the *New York Times* that it had placed an employee on paid leave "in connection with a government investigation and search warrant," and that Archer itself and three other employees had been subpoenaed in that investigation. Dkt. 55-4 at 1. Also on April 6, 2021, Archer's announced merger partner, Atlas Crest Investment Corp., filed with the SEC a Form 8-K, noting Wisk's lawsuit and stating:

> Atlas has been informed by Archer that it has placed an employee on paid administrative leave in connection with a government investigation and a search warrant issued to the employee, which Archer believes are focused on conduct prior to the employee joining Archer. Atlas has also been informed that Archer and three other Archer employees with whom the individual worked have received subpoenas relating to this investigation. Atlas is reviewing these matters.

*See* Dkt 115-6 at 4.

On May 17, 2021, Archer's counsel sought confirmation from the U.S. Attorney's Office that "Archer was still not a target to the USAO," but Archer did not ask whether it was a subject of the investigation, and the U.S. Attorney's Office refused to provide any update to Archer. Ex. H (Archer-NDCA-00578482).

On May 19, 2021, Wisk filed a motion for a preliminary injunction to prevent Archer from using Wisk's trade secrets. Dkt. 16. In that motion, Wisk said that "[u]pon learning of the

lawsuit, Archer revealed to the New York Times that it was *the subject* of a criminal government investigation, which relates to the conduct alleged here." *Id*. at 1 (emphasis added). Also in that motion, under the heading "Wisk Contacts Authorities; Archer Copies Wisk's Design" (*id*. at 8), Wisk explained the steps it took that prompted the criminal investigation into the potential misappropriation and use of its intellectual property, the involvement of the Department of Justice and FBI, Archer's admissions to the media about the criminal investigation, and Atlas Crest's disclosure of the same in its SEC filing. *Id*. at 8-11.

Also on May 19, 2021, Wisk published an update to its April 6, 2021 blog post (Ex. K), stating, in full:

> After Wisk filed its Complaint on April 6, Archer publicly disclosed a criminal investigation relating to some of the claims Wisk brought, and Archer's SPAC sponsor Atlas Crest Investment Corp filed an 8-K noting that it was reviewing these matters. Wisk is fully cooperating with the FBI and Department of Justice in their criminal investigation into Archer relating to the theft and use of Wisk's intellectual property.

On June 4, 2021, Archer's merger partner, Atlas Crest, filed an amended Form S-4 that, among other things, disclosed that, "On March 30, 2021, one of Archer's employees, who is a former employee of Wisk Aero LLC ("Wisk"), was the subject of a search warrant executed at his home in connection with *a federal investigation **into Archer's** aircraft design and hiring practices*." Dkt. 115-7 (Amendment No. 1 to Form S-4, June 4, 2021) at 21 (emphasis added). Later that day, Atlas Crest filed another version of the same disclosure, removing just the portion that referred to the investigation "into Archer's aircraft design and hiring practices." Dkt. 115-8 (Amendment No. 2 to Form S-4, June 4, 2021) at 21. The second disclosure did not say that the prior disclosure contained any inaccurate or misleading information upon which investors should not rely. *Id*.

On August 10, 2021, Archer filed its opposition to Wisk's motion to strike Archer's counterclaims. Dkt. 124. In it, Archer told this Court that "Wisk widely publicized on its website and the news media" a statement with the "inflammatory and false" implication "that Archer was *the subject of* a criminal investigation …." *Id*. at 23 (emphasis added).

At deposition, Archer asked Wisk's General Counsel and Rule 30(b)(6) witness the bases on which Wisk made the May 19, 2021 statement, including that "Wisk [was] fully cooperating with the FBI and Department of Justice in their criminal investigation into Archer relating to the theft and use of Wisk's intellectual property." He testified that the information came not only from Archer and Atlas Crest's own public SEC filings and media statements, but also from Wisk's "discussions … with the FBI and U.S. Attorney's Office." Ex. I (Bibbes Tr.) 77:22-79:2 ("A: Special Agent Mergen said that they were looking into Archer. And all discussions that we had with him and the U.S. Attorney's Office confirmed that understanding, including the fact that subpoenas were issued to Archer, in addition to Messrs. Muniz, Marius, [Melack] and Xue"); 79:3-80:25.

### B. Ms. Kane Addresses Archer's Status As A "Target" In That Investigation

The Kane Report concludes that, among other things: (1) the U.S. Attorney's Office for the Northern District of California is the authority on what is being investigated by a grand jury it convenes (Ex. A (Kane Report) ¶ 17); (2) Assistant U.S. Attorneys (AUSAs) from that office communicated to Archer that Archer was not a "target" of its investigation (*id.* ¶ 18); (3) in Ms. Kane's experience, it would be contrary to that office's practice to state that Archer was "not a target" if it was in fact a target and under investigation (*id.* ¶ 19); and (4) the investigating AUSAs' statements that Archer was not a "target" meant that there was no investigation "into Archer" (*id.* ¶ 20). The Kane Report also states:

> In my opinion, saying Archer was not a target is synonymous with saying there was no grand jury investigation into Archer…. During the course of my decades practicing criminal law in the Northern District of California as both a federal prosecutor and a defense lawyer, I have heard investigations described as 'into' a given person or company. I interpret a statement that there is an investigation 'into' a person or company to mean that person or company is a target of the investigation (put another way, that they are 'under investigation'), and that is how the term was used in those instances. I cannot recall the phrase being used in a context where it would mean something else.

Ex. A (Kane Report) ¶¶ 43-44.

Archer's counterclaims—which Ms. Kane reviewed and relied on in coming to her opinions—plead that Wisk's statement that there was a "criminal investigation into Archer,"

among others, is "defamatory on [its] face because [it] tend[s] to suggest—or outright claim—that Archer … is the ***subject*** of a criminal investigation." Dkt. 154 (Archer's Second Amended Counterclaims) ¶ 90 (emphasis added).

The Kane Report refers to the "Justice Manual" (formerly, the U.S. Attorney's Manual) which provides guidelines to federal investigators and prosecutors, including with respect to grand jury investigations. But Ms. Kane does not provide the Justice Manual's own definition of a "target" or a "subject" of a grand jury investigation. At deposition, Ms. Kane opined that, consistent with the Justice Manual's definitions, a "target" is a person or entity that prosecutors "believe is substantially linked to the criminal activity that is under investigation. And I think the Justice Manual uses the term 'putative defendant' meaning if things go [the] way we are looking at them, [they're] going to be on the [other] side of the 'versus' in an indictment." Ex. B (Kane Tr.) 26:16-21. Ms. Kane also agreed that, consistent with the Justice Manual definition, a "subject" of a grand jury investigation is "someone that is within the scope of the investigation." *Id*. 28:3-4; *see also* Ex. J (Justice Manual) at 6 (§ 9-11.151).

Although Ms. Kane says that she relied on the grand jury subpoenas served on Archer (Ex. A (Kane Report), App. B at ii), her Report conspicuously does not refer to the grand jury's requests to Archer, or whether they indicate that Archer was a subject of the investigation. *See* Ex. G (Archer-NDCA-01643731) at -738. Ms. Kane does not even address whether Archer was a subject of the investigation, which is exactly the implication that Archer's counterclaim frames as constituting Wisk's alleged defamation.

## III. ARCHER BEARS THE BURDEN OF PROVING ADMISSIBILITY

Archer has the burden of proving the admissibility of Ms. Kane's opinions and testimony. *Lust v. Merrell Dow Pharm*., Inc., 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 Advisory Committee Note. Such testimony is admissible only if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Testimony must be "based on sufficient facts or data," and be "the product of reliable principles and methods." *Id*. The expert must have "reliably applied the principles and methods to the facts of the case." *Id*. The

Supreme Court has imposed a gatekeeping responsibility on courts to ensure that such evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

"[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotations omitted). "The consideration has been aptly described … as one of fit," meaning "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

To be reliable, expert testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *Primiano*, 598 F.3d at 565 (9th Cir. 2010) (the knowledge underlying expert testimony must have "a reliable basis in the knowledge and experience of the relevant discipline"). As such the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id*. "An expert's opinions that are without factual basis and are based on speculation or conjecture are inadmissible at trial." *Nicholson v. Medina*, 2013 WL 6198187, at *2 (E.D. Cal. Nov. 27, 2013), *quoting California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 n.4 (9th Cir. 2010).

Expert testimony that is "otherwise admissible may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *U.S. v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994) (citing *Daubert*, 509 U.S. at 595).

## IV.  ARGUMENT

### A.  Ms. Kane's Opinions Are Not Relevant To Any Live Question

Ms. Kane offers no opinions on the question raised by Archer's counterclaims: whether Archer was a "subject" of a "criminal investigation into Archer relating to the theft and use of

Wisk's intellectual property." Ex. K at 1-2.  The counterclaims assert that Archer was not a "subject" of the federal criminal investigation, and that Wisk's May 19, 2021 blog post that there was a "criminal investigation into Archer," was "defamatory on [its] face because [it] tend[s] to suggest—or outright claim—that Archer … [was] the *subject* of a criminal investigation."  Dkt. 154 (Archer's Second Amended Counterclaims) ¶ 90 (emphasis added). And in its public motion seeking a preliminary injunction, filed the same day as its blog post update, May 19, 2021, Wisk said that Archer was "the subject of a criminal government investigation"—not the target.  Dkt. 16 at 1.  And in Archer's opposition to Wisk's motion to strike Archer's counterclaims, Archer described the "inflammatory and false" sting of Wisk's blog post as being "that Archer was the *subject* of a criminal investigation …."  Dkt. 124 at 23 (emphasis added).  Yet Ms. Kane expresses no opinions as to whether Archer's "conduct was within the scope of the grand jury's investigation," that is, whether it was a "subject."  Ex. J (Justice Manual) at 6 (§ 9-11.151).  The Kane Report does not even provide that definition, let alone analyze how it fits Archer's circumstances.  In fact, the entirety of the Report's treatment of a "subject" of an investigation is contained in the following passing references:

> My understanding, consistent with the Justice Manual (previously known as the United States Attorneys' Manual), is that an AUSA may describe a person/company as either a witness, *subject*, or target of a grand jury investigation. The Justice Manual imposes additional procedures for subpoenaing targets or *subjects* for testimony before a grand jury. I am aware that certain subpoena recipients, in particular publicly traded companies, companies engaged in securities offerings, or other businesses with reporting obligations, may have differing reporting obligations which are dependent on the company's status as a target, *subject* or witness.
> ….
> [N]or would the U.S. Attorney's Office be allowed to share with Wisk the scope of its investigation, including what individuals or companies it had subpoenaed, or its characterization of particular individuals or entities related to the investigation as targets, *subjects*, or witnesses.

Ex. A (Kane Report) ¶¶ 41, 46 (emphasis added).

      Instead, Ms. Kane opines that Wisk's blog post was inaccurate because Archer was not a "target" of the investigation.  Ex. A (Kane Report) ¶ 18 ("The Northern District of California AUSAs' communications with Archer's counsel on April 23 and May 17, 2021 confirm

unequivocally that the U.S. Attorney's Office [did not] consider[] Archer to be ***a target*** of its investigation.") (emphasis added). But Wisk never said Archer was a "target," and the Kane Report does not identify any occasion where it did. Instead, even according to Archer's pleading, at most Wisk said or implied that Archer was a "subject" of the investigation, when Wisk stated that there was an "investigation into Archer relating to the theft and use of Wisk's intellectual property." *See* Dkt. 16 at 1; Ex. K at 3.

Ms. Kane's avoidance of the question whether Archer was a "subject" of the investigation is intentional, not inadvertent, because Archer *was* a subject of the grand jury's investigation, contrary to Archer's counterclaims and its briefing opposing Wisk's motion to strike the counterclaims. On December 21, 2022, the same day as Archer proffered the Kane Report, Wisk proffered an expert report from the former Director of the FBI, Louis J. Freeh. Before becoming FBI Director, Mr. Freeh was also an FBI Special Agent, Assistant U.S. Attorney, and U.S. District Court Judge. Ex. F-A (Freeh Report) ¶ 5. The Freeh Report states that "it is my opinion that there was a federal criminal investigation into Archer, as Archer was a subject of that investigation and not merely a witness," and explains in detail his bases for that opinion. *Id.* ¶ 3. Archer never responded to Freeh's report. Ms. Kane had the opportunity to rebut the Freeh Report and offer any opinions on whether Archer was a "subject" of the federal grand jury investigation, but she did not. Nor at her deposition did Ms. Kane testify she had any further opinions. *See* Ex. B (Kane Tr.) at 12:9-11 ("Q. And your opinions are contained in your report? A. They are."); *id.* at 50:9-14 ("I authored this report in December, if I recall … before I saw any report that would potentially be presented by Wisk. … [S]ince I authored this report, I've reviewed Mr. Freeh's report [and] I reviewed his rebuttal report.").

Despite Ms. Kane agreeing that, as a "subject," "even if you're not a target, the government [could] be investigating your conduct" (Ex. B (Kane Tr.) at 37:13-38:8), Ms. Kane's Report ignores that the grand jury was "investigating [Archer's] conduct," and ignores the evidence which conclusively establishes that fact. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding expert who "cherry-pick[ed] observational studies that support his conclusion and rejecting or ignoring

the great weight of the evidence that contradicts his conclusion"). The Kane Report omits mention of the substance of the grand jury subpoenas served on Archer, which required Archer to produce a broad range of documents concerning Archer's business and hiring practices, and in particular, Archer's records about "[a]ny Wisk technology, products or business plans, … [including] confidential business information or data belonging to Wisk … or use of any such information," and records related to Archer's financing, foreign sources of funding, and partnerships with public and private investors. Ex. G at -738. Ex. F-B (Freeh Rebuttal Report) ¶¶ 11-12. Ms. Kane ignored this, despite knowing and admitting that, for example, a request about Archer's financing "might be a way to figure out whether or not the stolen information or potentially stolen information from these former ten engineers made its way into Archer's technology in any way," which Ms. Kane accepted could potentially be "criminal conduct by Archer." Ex. B (Kane Tr.) at 117:9-117:23. Ms. Kane ignored this evidence and what it says about the facts, because she does not and cannot dispute that Archer was a "subject," given that Archer's conduct plainly was "within the scope of the grand jury's investigation." Ex. F-A (Freeh Report) ¶¶ 34-39; Ex. F-B (Freeh Rebuttal Report) ¶¶ 10-20.

As a result there is, under *Daubert*, no "fit" between Ms. Kane's opinions and the case, and such testimony "is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation omitted). And because the opinions address Archer's status only as not a "target"—even though no one said Archer was—and ignores and contradicts that Archer framed its counterclaims as whether Archer was only a "subject," any probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Rincon*, 28 F.3d at 923 (*citing Daubert*, 509 U.S. at 595). They should be excluded.

### B.   Ms. Kane's Opinions Are Unreliable And *Ipse Dixit*

Ms. Kane's opinions also should be excluded as unreliable because they are conclusory and unsupported by any "reasoning or methodology." *Primiano*, 598 F.3d at 564.

It is the lynchpin of Ms. Kane's opinions that, to her, "saying Archer was not a target is synonymous with saying there was no grand jury investigation into Archer." Ex. A (Kane Report) ¶ 43. Without that, Ms. Kane has no basis to say that Wisk's May 19, 2021 blog post

was incorrect. So what is Ms. Kane's basis for that opinion? In short, Ms. Kane has heard of investigations described as "into" a given person, and in her view, that phrase means the person is a "target." *Id.* ¶ 44. This is quintessential *ipse dixit*: "investigation into" means "target" because Ms. Kane believes it does—because Ms. Kane says so. Ms. Kane goes on to say that "I cannot recall the phrase being used in a context where it would mean something else." *Id.* Even if that were true, it would not be reliable expert testimony because it contains no "reasoning or methodology," let alone any of the attendant indicators like "testability, publication in peer reviewed literature, and general acceptance." *Primiano*, 598 F.3d at 564.[2]

The Court should not admit an expert opinion that is connected to the underlying facts "only by the *ipse dixit* of the expert," and should exclude such testimony if it determines "that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Ms. Kane's opinion here is all gap: Ms. Kane offers no reasoning for how "investigation into" comports with the definition of a "target" of an investigation—in fact the Kane Report does not even *give* the definition of a "target." Ms. Kane offers no examples—real world or even hypothetical—of the use of the phrase "investigation into" to mean what she asserts it means. Ms. Kane offers no body of work that explains or shows the general acceptance of the meaning she asserts. Ms. Kane offers no explanation for why her opinions are contradicted by Archer's pleaded understanding of the phrase. Ms. Kane offers no other person, treatise, or authority that supports her personal understanding of the words as she reads them.

In fact, Ms. Kane testified that "referring to the Paragraph 44 of my report that describes the fact that I've heard the term 'into' used. I don't think that I would describe that as a practice in the district." Ex. B (Kane Tr.) at 133:8-133:11. Asked if she was "relying on anything that's written down [within the U.S. Attorney's Office] that uses the word 'into'?" Ms. Kane

---

[2] In coming to her opinions, Ms. Kane saw that Archer itself says that "on [its] face," Wisk's statement means Archer was "the ***subject*** of a criminal investigation." Dkt. 154 ¶ 90 (emphasis added); Ex. 2 (Kane Tr.) at 154:22-154:23 ("A. I read this document. So including Paragraph 90."). Ms. Kane also ignored that Archer's merger partner told investors and the SEC that there was a "a federal investigation ***into*** Archer's aircraft design and hiring practices." Dkt. 115-7 (Amendment No. 1 to Form S-4, June 4, 2021) at 21 (emphasis added).

responded "I'm not." *Id*. at 129:4-129:6.  Asked about the unnamed examples and lawyers that she recalled as "using the word 'into' only in the context of targets," Ms. Kane testified that "they are not named because to name them would be to violate my attorney-client privilege," although she did not explain how. *Id*. at 124:24-125:3.  Indeed, Ms. Kane took a break to discuss, with Archer's counsel, her concerns that she might breach privilege if she testified to her interactions with any other "prosecutor, defense lawyer, colleague, [or] former colleague," that she believed shared her view, and then declined to identify anyone. *Id*. at 132:22-135:7.  Ms. Kane's opinions cannot be reliable expert evidence when the underlying examples that lead her to draw her conclusions are shrouded and cannot be tested.

Ms. Kane also relies on certain categories of experience and information to conclude that Wisk's blog post was inaccurate, none of which provide reliable, non-*ipse dixit* support. *See* Ex. A (Kane Report).  For example:

- Ms. Kane relies on her personal familiarity with the U.S. Attorney's Office for the Northern District of California, which informs her opinion that it would be contrary to practice there to say Archer was "not a target" if that office were "conducting an investigation" into Archer (*id*. ¶ 19), although she testified that in fact "I don't think that I would describe [use of the term "investigation into"] as a practice in the district."  Ex. B (Kane Tr.) at 133:8-133:11.

- Ms. Kane relies on her familiarity with some of the AUSAs who communicated with Archer, based partly on which she opines that "my own interactions with them and my familiarity with their reputations informs my opinion that they would not have affirmatively represented to Archer's counsel that the company was not a target of a grand jury investigation if that was not true." Ex. A (Kane Report) ¶ 38.  This is inadmissible character evidence, offered to prove that on a particular occasion the AUSAs in question likely acted in accordance with Ms. Kane's understanding of their character.  *See* Fed. R. Evid 404(a)(1).  Nor can "expert testimony … be offered to buttress credibility." *United States v. Komisaruk*, 885 F.2d 490, 494 (9th Cir. 1989); *see also United States v. Verduzco*, 373 F.3d 1022, 1035 (9th Cir. 2004).  And again, the

statement is irrelevant since no one disputes that Archer was not a "target" of the investigation.

- Ms. Kane relies on her general experience as a prosecutor, and her own reading of the correspondence, for her opinions as to the motivations and state of mind of the investigating AUSAs (Ex. A (Kane Report) ¶ 43):

> It is my opinion that AUSAs Gilbert and Kingsley would have understood Atlas Crest's obligations to communicate Archer's status to investors and would have understood that Archer and Atlas Crest intended to rely on the U.S. Attorney's Office's response to questions about Archer's status in its decision-making regarding those obligations. Similarly, I believe that AUSAs Gilbert and Kingsley would have understood the potential marketplace repercussions of such disclosures, particularly for start-up companies. Based on that, it is also my view that AUSAs Gilbert and Kingsley would have understood it to be particularly important to be accurate in their response to Archer's inquiries based on Mr. Gonzalez's and Ms. Yang's explicit references in their respective emails to Archer making a public statement and/or responding to investor inquiries. Therefore, in my opinion, neither prosecutor would have engaged in written communications regarding Archer's non-target status lightly.

But Ms. Kane has no basis for expert insight—or any other insight—into what the people in question knew or were motivated by, or were thinking, or believing, or doing. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind," which often "offers no more than the drawing of an inference from the facts of the case." *Woods v. City of Hayward*, 2021 WL 4061657, at *17 (N.D. Cal. Sept. 7, 2021) (*citing Siring v. Oregon State Bd. of Higher Ed. ex. rel. Eastern Oregon University*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases)).

In none of these instances does Ms. Kane connect her experience to her opinions in any concrete way. They are opinions "without factual basis and are based on speculation or conjecture," rendering them "inadmissible at trial." *Nicholson*, 2013 WL 6198187, at *2, *quoting California ex rel. Brown*, 615 F.3d at 1181 n.4.

## V. CONCLUSION

Wisk respectfully requests that the Court exclude the expert opinions of Miranda Kane.

DATED: March 19, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Yury Kapgan
Yury Kapgan
Robert M. Schwartz
Diane Cafferata
Patrick Schmidt
Michael F. LaFond

*Attorneys for Plaintiff Wisk Aero LLC*