QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
 Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
 Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
 Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

 Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Plaintiff Wisk Aero LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ARCHER AVIATION INC.,<br><br>　　　　Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**WISK'S NOTICE OF MOTION AND *DAUBERT* MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY OF MARILYN SMITH**<br><br>Hon. William H. Orrick<br>Date: May 12, 2023<br>Time: 3:00 p.m. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 12, 2023, at 3:00 p.m., or soon thereafter as this matter can be heard before the Honorable Judge William H. Orrick, via videoconference, in Courtroom 2, Seventeenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Wisk Aero LLC ("Wisk") will and hereby does move the Court to exclude expert opinion and testimony of Marilyn Smith pursuant to Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

For the Court's convenience, the opinions to be excluded are found in the following sections of Dr. Marilyn Smith's expert reports, which constitute the complete statement of Dr. Smith's opinions required by Fed. R. Civ. P. 26(a)(2)(B):

- All of Dr. Smith's opinions contained in her February 7, 2023, Supplemental Expert Report concerning the '833 patent;

- Dr. Smith's opinions regarding the sufficiency and particularity of Wisk's 2019.210 Disclosure contained in, for example, paragraphs 164, 166–170, 173–174, 181–196, 201, 208, 245, 336, 340, 344, 347, 369-370, 408, 452, 454–455, 458, 461, 465, 471, 476, and 479–481 of Dr. Smith's Rebuttal Trade Secret Report, and related deposition testimony (65:24–66:6);

- Dr. Smith's opinions regarding the head start advantage of Wisk's trade secrets contained in, for example, paragraphs 582–583 of Dr. Smith's Rebuttal Trade Secret Report.

Wisk's motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the supporting declaration of Patrick Schmidt, the exhibits to that declaration, all matters of which the Court may take judicial notice, other pleadings on file in this action, and the other written or oral argument that Wisk may present to the Court.

1  Dated: March 19, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Patrick Schmidt*
    Yury Kapgan
    Robert M. Schwartz
    Diane Cafferata
    Patrick Schmidt
    Michael F. LaFond

*Attorneys for Plaintiff Wisk Aero LLC*

<pre>                                                                                    </pre>
<pre>Case 3:21-cv-02450-WHO   Document 437   Filed 03/19/23   Page 4 of 16</pre>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

LEGAL BACKGROUND ..................................................................................................2

ARGUMENT .........................................................................................................................3

I.    The Court Should Exclude All Opinions Expressed In Dr. Smith's Supplemental Report Regarding The '833 Patent ................................................................................3

    A.    Factual Background Regarding Archer's ▇▇▇▇▇▇▇▇ ...........................3

    B.    The Court Should Exclude Dr. Smith's Opinions In Her Supplemental Report ................................................................................5

II.    The Court Should Exclude Dr. Smith's Opinions Regarding Trade Secret Identification ................................................................................7

III.    The Court Should Exclude Dr. Smith's Opinions Regarding the Head Start Advantage of Wisk's Trade Secrets ................................................................................8

IV.    Conclusion ................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Advanced Respiratory, Inc. v. Electromed, Inc.*,
  No. 00-2646, 2003 U.S. Dist. LEXIS 27583 (D. Minn. June 27, 2003) .................................. 6

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996) ................................................................................................ 6

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) .................................................................................................. 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................................1, 2

*Guidroz-Brault v. Missouri Pac. R. Co.*,
  254 F.3d 825 (9th Cir. 2001) .................................................................................................. 2

*Hebert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996) ................................................................................................ 3

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................2, 6

*Leatherman Tool Grp. Inc. v. Cooper Indus.*,
  131 F.3d 1011 (Fed. Cir. 1997) .............................................................................................. 5

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006) .............................................................................................. 3

*Lust By & Through Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996) .................................................................................................... 2

*M.H. v. County of Alameda*,
  No. 11-cv-02868, 2015 U.S. Dist. LEXIS 12081 (N.D. Cal. Feb. 1, 2015) ......................... 10

*Maldonado v. Apple, Inc*,
  No. 3:16-CV-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14, 2021) .......................... 2

*Malibu Boats v. Skier's Choice*,
  No. 3:18-CV-00015, 2021 U.S. Dist. LEXIS 89957 (E.D. Tenn. May 6, 2021) .................... 6

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
  No. 320CV02390, 2023 WL 2130379 (S.D. Cal. Feb. 10, 2023) ........................................... 3

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) .................................................................................................. 2

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
  No. C 13-03644, 2014 WL 2527148 (N.D. Cal. June 4, 2014) .............................................. 8

*Raytheon Co. v. Indigo Sys. Corp.*,
  598 F. Supp. 2d 817 (E.D. Tex. 2009) .................................................................................... 8

*Scentsational Techs., LLC v. Pepsi, Inc.*,
  No. 13-CV-8645, 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018),
  *aff'd sub nom* 773 F. App'x 607 (Fed. Cir. 2019) ...................................................................... 8

*United States v. Sandoval-Mendoza,*
  472 F.3d 645 (9th Cir. 2006) .................................................................................................... 3

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991) .................................................................................................. 6

**<u>Rules</u>**

Fed. R. Evid. 702 ............................................................................................................................ 2

**INTRODUCTION**

The Court should exercise its gatekeeping role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to exclude certain, specific opinions offered by Dr. Marilyn Smith, Archer's technical expert for Trade Secret Nos. 1, 3, and 15, and United States Patent No. 9,764,833 ("the '833 patent").

First, in a Supplemental Report regarding Wisk's '833 patent, Dr. Smith cites to a Notice of Allowance that Archer obtained on a patent application that it filed for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See generally* Ex. A (Smith Supp. Rpt.). Dr. Smith opines that the recent allowance of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is "different" from Wisk's '833 patent. *Id.* ¶¶ 11, 13. She then opines that this "difference" supports her prior expressed opinions concerning non-infringement, *id.* ¶¶ 11–13, secondary considerations, *id.* ¶¶ 14–15, and technical benefit for the invention of the '833 patent, *id.* ¶ 17. These opinions are highly misleading because they all stem from the erroneous legal assumption that an accused infringer's own patent somehow demonstrates that the infringer is operating outside the scope of an earlier granted patent. Of course, the mere fact that an application is allowed over an earlier patent says nothing about whether the claims of that application are or are not embodiments within the scope of the earlier issued patent. In other words, ▇▇▇▇▇▇▇▇▇▇▇ is completely irrelevant to whether Archer's aircraft infringes Wisk's '833 patent. Dr. Smith was not properly instructed on this fundamental patent law concept. Ex. B (Smith Tr.) at 313:4–315:10 ("In legal terms, you know, I – I'm not completely aware of all the terminology you're using and what implication that would mean."). As a result, her opinions are not the product of a reliable methodology, and could only serve to confuse the jury. Dr. Smith's opinions should be excluded for these reasons.

Second, in her Rebuttal Report regarding Wisk's Trade Secrets 1, 3, and 15, Dr. Smith offers the opinion that Wisk failed to identify any of these trade secrets with sufficient particularity. These are improper legal opinions, well outside of Dr. Smith's expertise and inappropriate for this case. These opinions would be confusing and unhelpful to the jury. They also flatly contradict this Court's prior ruling that Wisk's 2019.210 statement *is* sufficient.

Third, Dr. Smith offers a completely unsupported, conclusory opinion regarding the additional effort it would have taken Archer to achieve a level of confidence required to select the configuration for Maker. Ex. C (Smith Reb. Rpt.) ¶¶ 582–583. She opines that it would have taken six weeks for a single engineer, or two weeks for a team of four engineers to perform the requisite tests to select Maker's configuration with confidence. Because Dr. Smith fails to cite *any* facts or apply *any* methodology to form this opinion, this opinion should also be excluded.

## **LEGAL BACKGROUND**

Archer has the burden "to show, by a preponderance of the evidence, that the admissibility requirements are satisfied." *Maldonado v. Apple, Inc*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *3 (N.D. Cal. May 14, 2021) (citing *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); Fed. R. Evid. 702 advisory committee's note).

A qualified expert may offer opinion testimony if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must be "based on sufficient facts or data," and "the product of reliable principles and methods." *Id*. The expert must also have "reliably applied the principles and methods to the facts of the case." *Id*.

The Supreme Court has imposed a "gatekeeping" responsibility on courts to ensure that evidence admitted "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). To be reliable, expert testimony must "relate to scientific, technical, or other specialized knowledge, which *does not include unsupported speculation and subjective beliefs*." *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (emphasis added); *Primiano*, 598 F.3d at 565 (expert testimony is reliable if "the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline"). "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza,* 472 F.3d 645, 655 (9th Cir. 2006).

# ARGUMENT

## I. The Court Should Exclude All Opinions Expressed In Dr. Smith's Supplemental Report Regarding The '833 Patent

The Court should exclude Dr. Smith's opinions expressed in her February 7, 2023, Supplemental Report concerning the '833 patent. In that report, Dr. Smith identifies a Notice of Allowance that Archer recently received for a patent application ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See generally* Ex. A (Smith Supp. Rpt.). Dr. Smith improperly attempts to leverage this Notice of Allowance to corroborate her opinions on non-infringement, *id.* ¶¶ 11–13, secondary considerations, *id.* ¶¶ 14–15, and technical benefit, *id.* ¶ 17, for the '833 patent. This reflects a flawed understanding of the law, and an unreliable expert opinion. *See Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science … but markedly incorrect law. Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n. 2 (Fed. Cir. 2006) (affirming exclusion of testimony from the defendant's invalidity expert because of reliance on legally incorrect claim construction standard); *Pelican Int'l, Inc. v. Hobie Cat Co.*, No. 320CV02390, 2023 WL 2130379, at *5 (S.D. Cal. Feb. 10, 2023) (excluding testimony because defendant's expert "failed to apply the proper legal test in rendering her invalidity opinions … those opinions are irrelevant, unreliable, and would mislead the jury.") (internal quotations omitted).

### A. Factual Background Regarding Archer's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Archer filed the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. D (Ex. 1 to Smith Supp. Rpt.), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ this Court granted Wisk's Motion for Leave to supplement its infringement contentions. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 67. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As Dr. Smith states, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. A (Smith Supp. Rpt.) ¶ 8.

█████████████ [redacted]

The claims of the ███████████████████████ ██████████████████████████████ but use those terms in a manner that appears specifically calculated to bolster Archer's non-infringement positions in this case. For example, Archer distinguishes ██████████████████████ in an effort to support its non-infringement position ████████████████ ██████ Ex. D (Ex. 1 to Smith Supp. Rpt.) at 7–8 (████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████. *Id.* at 12.

The Examiner issued a Notice of Allowance on February 1, 2023. *Id.* at 2. That Notice of Allowance states that ███████████████████████████████████████. *Id.* at 8. Contrary to Archer's non-infringement positions in this case, the Notice of Allowance ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

1 [redacted]
2 [redacted]
3 [redacted]
4 [redacted]
5 [redacted]
6 [redacted]
7 [redacted]
8 [redacted]
9 [redacted]
10 [redacted]
11 [redacted]
12 [redacted]

### B. The Court Should Exclude Dr. Smith's Opinions In Her Supplemental Report

Dr. Smith's Supplemental Report is based on her understanding that because the [redacted] is "different" (Ex. A (Smith Supp. Rpt.) ¶¶ 11, 13) from the '833 patent, that somehow supports her opinions regarding non-infringement, secondary considerations, and technical benefit, *id.* ¶¶ 11–17; *see also* Ex. B (Smith Tr.) at 313:8–315:6. These opinions are fundamentally flawed. An accused product that may practice some other, later-filed patent than the one asserted—whether Archer's or not—has no bearing on infringement of the earlier-filed patent. *See Leatherman Tool Grp. Inc. v. Cooper Indus.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997) ("[T]he federal patent laws do not create any affirmative right to make, use, or sell anything"). The Federal Circuit has repeatedly held that the existence of the accused infringer's own patents is irrelevant and an improper defense to infringement. "[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is *elementary* that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." *Bio-Tech. Gen. Corp. v. Genentech*, Inc., 80 F.3d 1553, 1559 (Fed. Cir. 1996) (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991)).

The opinions in Smith's Supplemental Report are therefore not reliable and thus improper. For example, Dr. Smith's opinion that the ██████████████████████████████ ██████████████████████████████████████████████████████████████ thus Archer does not infringe the '833 patent is simply a legal non-sequitur. Contrary to Dr. Smith's logic, the mere fact that Archer may receive its own patent says nothing about whether that patent also falls within the scope of the '833 patent, and is immaterial to whether Archer's aircraft infringes the '833 patent. Dr. Smith's supplemental opinions are therefore unreliable on their face, and warrant exclusion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding that *Daubert's* "gatekeeping" obligation requires an inquiry into both relevance and reliability not only to "scientific" testimony but to all expert testimony).

Moreover, introduction of opinions regarding the allowance of Archer's ████████ ████████ as a defense to infringement and infringement-related issues will only result in misleading and confusing the jury, as courts have repeatedly recognized. As one court aptly observed, "the introduction of [the Defendant's patent] to the jury would merely cause confusion for the jury and thereby prejudice the Plaintiff. Indeed, introduction of the [the Defendant's patent], the claims of which have not yet been construed, would result in a mini-trial on that patent's claim construction. Aside from the great confusion that this would cause with the jury, it would also misdirect the jury's attention from the real issue of the case—specifically, whether the [Defendant's] device infringes the [Plaintiff's] Patent." *Advanced Respiratory, Inc. v. Electromed*, Inc., No. 00-2646, 2003 U.S. Dist. LEXIS 27583, at *2–4 (D. Minn. June 27, 2003); *see also Malibu Boats v. Skier's Choice*, No. 3:18-CV-00015, 2021 U.S. Dist. LEXIS 89957, at *1–4 (E.D. Tenn. May 6, 2021) (excluding the introduction of Defendant's patents for any purpose due to the potential that they would "unduly distract[] the jury from the main issues" and result in "inject[ing] frolics and detours") (internal quotation marks omitted).

Finally, introduction of expert opinions regarding Archer's ████████████████ are particularly inappropriate in this case, where the ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

[redacted]

For these reasons, the Court should exclude all of Dr. Smith's opinions contained in her Supplemental Report.

## II. The Court Should Exclude Dr. Smith's Opinions Regarding Trade Secret Identification

The Court should also exclude Dr. Smith's opinions regarding whether Wisk's 2019.210 statement discloses the boundaries of Trade Secrets 1, 3, and 15 with reasonable particularity. *See, e.g.*, Ex. C (Smith Reb. Rpt.) ¶ 164 ("Based on my review of Wisk's 2019.210 Statement, Dr. Gandhi's Report, and other relevant documents, and my understanding of the applicable legal principles, it is my opinion that Trade Secret No. 1 is not defined with a reasonable degree of particularity."); ¶¶ 166–170, 173–174, 181–196, 201, 208, 245 (opining that Trade Secret 1 was not defined with reasonable particularity); ¶ 336 ("[T]he 2019.210 Statement does not describe Trade Secret No. 3 with reasonable particularity."); ¶¶ 340, 344, 347, 369–370, 408 (opining that Trade Secret 3 was not defined with reasonable particularity); ¶ 452 ("Based on my review of Wisk's 2019.210 Statement, Dr. Gandhi's expert report, and other relevant documents, it is my opinion that Trade Secret No. 15 is not defined with a reasonable degree of particularity."); ¶¶ 454–455, 458, 461, 465, 471, 476, and 479–481 (opining that Trade Secret 15 was not defined with reasonable particularity).

Dr. Smith confirmed that it is her opinion that Wisk's 2019.210 statement fails to identify the boundaries of the trade secrets. Ex. B (Smith Tr.) at 65:24–66:6 ("Q. You've opined in this case that you can't determine the boundaries of trade secrets 1, 3, and 15; is that correct? A. I -- I feel that trade secrets 1, 3 and 15 in the form that they were given out are quite broad, and could encompass almost anything given the fact that there are no real boundaries given.").

Dr. Smith's legal opinions regarding the sufficiency of the 2019.210 statement are improper expert testimony. The sufficiency of a 2019.210 trade secret disclosure under California law, and

the question of whether a trade secret is identified with "reasonable particularity," is an issue for the Court. *Prolifiq Software Inc. v. Veeva Sys. Inc.,* No. C 13-03644, 2014 WL 2527148, at *2–3 (N.D. Cal. June 4, 2014). While an expert may testify regarding technical issues pertaining to information falling within the boundaries of an identified trade secret disclosure, it is not in the province of an expert like Dr. Smith to opine to the jury that Wisk's 2019.210 statement fails to identify or convey the asserted trade secrets with "reasonable particularity." *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-8645, 2018 WL 1889763, at *6 (S.D.N.Y. Apr. 18, 2018), *aff'd sub nom* 773 F. App'x 607 (Fed. Cir. 2019) (excluding opinions, "[n]othing in her resume or report supports a particular level of expertise in legal determinations as to trade secret status (and, of course, even if she were, expert witnesses should generally not offer legal conclusions)"); *Raytheon Co. v. Indigo Sys. Corp.*, 598 F. Supp. 2d 817, 821–22 (E.D. Tex. 2009) (contrasting "valid opinions" with those "conclud[ing] that trade secrets 20, 22 and 25 are not actually trade secrets because of the generality of their description").

Dr. Smith's opinions that the 2019.210 statement fails to identify the asserted trade secrets should also be excluded on the grounds that they contradict this Court's order in the case finding that the trade secrets *are* identified with reasonable particularity. Dkt. 134 at 18–21 (denying Archer's Motion to Strike Wisk's 2019.210 statement and finding Wisk's trade secret identification "sufficient," and noting that "Archer has at least enough knowledge of the technical boundaries of the trade secrets to confidently assert (and have its expert assert) that its technology lies beyond them").

Thus, the Court should exclude Dr. Smith's opinions as to the sufficiency and particularity of Wisk's 2019.210 Disclosure, as reflected, for example, in paragraphs 164, 166–170, 173–174, 181–196, 201, 208, 245, 336, 340, 344, 347, 369–370, 408, 452, 454–455, 458, 461, 465, 471, 476, and 479–481 of Dr. Smith's Rebuttal Trade Secret Report, and related deposition testimony (Ex. B at 65:24–66:6).

### III.  The Court Should Exclude Dr. Smith's Opinions Regarding the Head Start Advantage of Wisk's Trade Secrets

Dr. Smith also offers an opinion regarding the amount of additional effort it would have taken Archer to achieve a level of confidence required to select the configuration for Archer's demonstrator aircraft, the Maker. Ex. C (Smith Reb. Rpt.) ¶¶ 582–583. In particular, she estimates that a single engineer could run additional tests in about six weeks, and four engineers could have done it in two. *Id.* But Dr. Smith provides no further details or explanation for this opinion. She did not state what kind of engineers would be required, the engineers' levels of skill, what kind of studies or tests they would perform, how long each of those tests would take, and what percentage of the engineers' time would have been spent on these tests. Indeed, Dr. Smith could have—but did not—consider the extent of Archer's actual flight sciences department, which would be highly relevant in determining whether Archer had the capability to independently develop knowledge relating to Wisk's trade secrets. *See* Ex. E (███████████████████████████████████ ███████████).

Further, Dr. Smith opines that Archer could have engaged a contractor such as FlightHouse to perform this work. But Smith's opinion is contradicted by the actual facts. Dr. Smith overlooks the fact that, prior to ex-Wisk employees joining Archer, much of the work that FlightHouse had already done for Archer ███████████████████████████████. *See, e.g.*, Ex. F (██████████████████████████████████████████████████████); Ex. G at -3019 (████████████████████████████████████████); Ex. G at -3000, -3002 (████████████████████████████████). In fact, Archer ***specifically decided not to use FlightHouse*** in their aircraft configuration selection, choosing instead to make this decision internally. Archer's Chief Engineer, Geoff Bower, made the decision on the configuration of Maker, ██████████████████████████████████████. Ex. H (Adcock 6/28/2021 Tr.) at 39:12–41:5 (Dr. Bower was "given free rein on the design" and "ultimately proposed in February of 2020 that the 12-tilt-6 was [] the choice."); Ex. I (Bower 6/30/2021 Tr.) at 50:18–23 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████).

Thus, Dr. Smith's opinion is entirely conclusory and backed by no facts or expert reasoning, and is counterfactual to the actual evidence in the record. This opinion should be excluded. *See M.H. v. County of Alameda*, No. 11-cv-02868, 2015 U.S. Dist. LEXIS 12081, at *6 (N.D. Cal. Feb. 1, 2015) (excluding expert opinion regarding what employees "would have done" because it was based on mere subjective belief or unsupported speculation).

## IV. Conclusion

For the foregoing reasons, Wisk respectfully requests that this Court exclude the above opinions from Dr. Smith.

Dated: March 19, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Patrick Schmidt*
Yury Kapgan
Robert M. Schwartz
Diane Cafferata
Patrick Schmidt
Michael F. LaFond

*Attorneys for Plaintiff Wisk Aero LLC*