***PUBLIC REDACTED VERSION***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISK AERO LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ARCHER AVIATION INC.,<br><br>    Defendant. | Case No. 21-cv-02450-WHO (DMR)<br><br>**ORDER FOLLOWING IN CAMERA REVIEW**<br><br>Re: Dkt. No. 307 |

Defendant Archer Aviation Inc. ("Archer") filed a motion challenging Plaintiff Wisk Aero LLC's ("Wisk") clawback of three documents. [Docket No. 307.] Wisk originally produced the documents in full but later clawed back portions of them asserting protection under the attorney-client privilege. On November 7, 2022, the court ordered Wisk to lodge unredacted versions of the three documents for in camera review. [Docket No. 366.] Wisk timely lodged the documents. Having reviewed the documents in camera, the court grants Archer's motion to compel in part.[1]

## I.  BACKGROUND

### A.  Factual Background

In this action, Wisk asserts claims for misappropriation of trade secrets and patent infringement related to the development of electric vertical takeoff and landing ("eVTOL") aircraft against its competitor, Archer. [Docket No. 148 (Second Amended Complaint, "SAC") ¶ 2.] Wisk started working on a sixth generation of its aircraft in 2019. The previous generation of aircraft was the "Cora" and used "a fixed-wing, 12-rotor design." [Docket No. 133 (Order on Prelim. Inj.) 3; SAC ¶ 28.] The upcoming sixth generation of Wisk's aircraft is called the "Cora X." It "will employ a front row of six tilting rotors." Order on Prelim. Inj. 4.

---

[1] This matter is suitable for resolution without a hearing pursuant to Civil Local Rule 7-1(b).

Archer was founded in 2018. It hired ten engineers from Wisk in 2019 and 2020. *Id.* at 4-5; SAC ¶ 6. In February 2021 Archer announced that it would release its own eVTOL aircraft and presented its aircraft design called "the Maker." SAC ¶ 4. The presiding judge, the Honorable William H. Orrick, has described the development of the Maker as being "at the heart of this dispute." Order on Prelim. Inj. 5. Wisk contends that Archer's design for the Maker "appeared to be a copy of a potential design that Wisk had developed for its next-generation aircraft and submitted in a confidential patent application" in January 2020 to the U.S. Patent and Trademark Office. SAC ¶ 4. The Maker has a "12-tilt-6" configuration, which Archer uses as shorthand for an aircraft with 12 rotors, six of which tilt. Order on Prelim. Inj. 3, 6.

Archer disputes Wisk's claims. It contends that it "selected and began developing a 12-tilt-6 design well before Wisk" and that Archer's co-CEOs informed Wisk's chief engineer of that design in a December 2019 meeting to recruit the engineer to Archer. Mot. 3; Order on Prelim. Inj. 8. Archer contends that after its co-CEOs disclosed their prospective design to Wisk's chief engineer, the engineer "reported this information to the CEO of Wisk, after which the company retained a patent attorney and shortly thereafter filed the contrived patent application that forms the basis for Wisk's allegations." [Docket No. 154 (Answer to SAC) ¶¶ 2, 28-34.]

### B. Facts Relevant to the Present Dispute

Archer contends that Wisk's claim that it had developed a 12-tilt-6 aircraft by January 2020 "is a fraud." Mot. 3. It offers the following facts in support of this contention. Wisk was founded in 2010 as Levt, Inc. and was later renamed Zee.Aero Inc. SAC ¶ 24. In 2016, Zee.Aero Inc. and a sister company, Kitty Hawk Corporation ("Kitty Hawk"), merged and continued operations under the Kitty Hawk name. *Id.* at ¶ 26. In April 2016, Kitty Hawk spun off Zee.Aero Inc. under the name Cora Aero LLC ("Cora Aero"). *Id.* at ¶ 29. [*See also* Docket No. 307-1 (Thomasch Decl. Aug. 11, 2022) ¶ 8, Ex. 5 at -353.]

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████. Thomasch Decl. Ex. 5 at -353; *see also* SAC ¶ 29 (describing the formation of a joint venture between Kitty Hawk and Boeing). On

1  ████████████████████████████████████████
2  ████████████████████████████████████████
3  ████████████████████████████████████████
4  ████████ Thomasch Decl. Ex. 5 at -353. ████████
5  ████████████████████████████████████████
6  ████████████████████████████████████████
7  ████████ *Id.* at -357.  It defined ████████
8  ████████████████████████████████████ *Id.* at -355 (emphasis
9  added).  In late 2019, Cora Aero was renamed Wisk Aero LLC, which continues to operate as a
10 joint venture between Boeing and Kitty Hawk.  SAC ¶ 29.
11         As noted, Archer disputes that Wisk had developed a 12-tilt-6 aircraft design by January
12 2020.  Archer contends that the ████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████████████ However,
16 Archer contends that the current 12-tilt-6 design of both the Maker and the Cora X is one "in
17 which all 12 rotors are employed to lift the aircraft vertically, and six of those rotors tilt to propel
18 the aircraft forward," with "no separate rotors independently propel[ling] the aircraft forward."  In
19 other words, Archer argues that the 12-tilt-6 design at issue in this litigation does not feature
20 "████████████████████████████████."  Mot. 2.  According to Archer, "contrary to
21 what Wisk told the Court [in its original complaint] and the public, [Wisk] had not even decided
22 ████████████████████████ at the time it filed its complaint," and moreover, the
23 "████████████████████████████████████████
24 ████████████." *Id.*  According to Archer, "████████████████████
25 ████████████████████████████████████████
26 ████████████████████████████████████████. *Id.* at
27 3.
28

### C. Archer's Motion to Compel & In Camera Review

To develop evidence undermining Wisk's claim that it had developed a 12-tilt-6 aircraft by January 2020, Archer served discovery "concerning Wisk's internal analysis and external messaging regarding aircraft design considerations" dating back to the April 2019 formation of Cora Aero LLC, Wisk's predecessor. Mot. 3. The three documents at issue in this motion relate to that discovery. Wisk originally produced the documents in full but later clawed back certain parts, asserting the attorney-client privilege. Thomasch Decl. ¶ 2. The disputed excerpts are: 1) a single sentence within a 38-page slide deck presented to Wisk's Board of Managers, dated November 2, 2020 (the "November 2020 Board Deck"); 2) a set of comments to the November 2020 Board Deck (the "Comments"); and 3) parts of two slides from a June 2021 slide deck entitled "Wisk Funding Request" (the "June 2021 Funding Request"). Mot. 1; Thomasch Decl. ¶ 2, Exs. 1 at -615 (Nov. 2020 Board Deck); 2 at -194 (Comments); 3 at -822-823 (June 2021 Funding Request).[2] Greg Bibbes, Wisk's General Counsel, authored the material over which Wisk asserts the attorney-client privilege. [Docket No. 314-1 (Bibbes Decl. Aug. 25, 2022) ¶¶ 10, 11, 13.]

On July 5, 2022, the parties filed three joint letter briefs regarding their disputes about Wisk's clawbacks. In two letters, Archer challenged Wisk's ability to clawback the documents (Docket Nos. 281, 282). In the third, Wisk asserted that "Archer misused Wisk's assertedly privileged material." [Docket No. 284.] Archer also filed an administrative motion seeking an order requiring Wisk to lodge the three documents at issue for in camera review. [Docket No. 286.] On July 13, 2022, the court denied the joint letters and administrative motion without prejudice and granted Archer leave to file a duly-noticed motion to compel regarding the clawbacks. [Docket No. 293.] This motion followed.

Archer challenges Wisk's invocation of the attorney-client privilege over the clawed-back portions of the three documents at issue. It additionally argues that even if the disputed portion of

---

[2] Wisk produced and later clawed back five versions of the June 2021 Funding Request. It produced and later clawed back two versions of the Comments. Thomasch Decl. ¶ 2(b), (c). Both Archer and Wisk treat Exhibits 1 through 3 to the Thomasch Declaration as exemplar versions of the relevant documents. [Docket No. 314-2 (LaFond Decl., Aug. 25, 2022) ¶ 9.]

the June 2021 Funding Request is privileged, Wisk has waived it on various grounds. It also requests monetary sanctions pursuant to Federal Rule of Civil Procedure 37(a)(5) for having to oppose Wisk's joint letter brief accusing Archer of misusing its materials.

Wisk maintains that the attorney-client privilege shields the material. It also contends that Archer misused the Comments to the November 2021 Board Deck and that the motion to compel should be denied on that basis.

Archer moved for in camera review of the documents pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), which provides that a party challenging a clawback "may promptly present the information to the court under seal for a determination of the claim." Mot. 10. Wisk argued that Archer had not shown a basis for in camera review under applicable Ninth Circuit authority. Opp'n 7-8.

After the briefing on the motion was complete, the court ordered Wisk to submit unredacted exemplars of the three documents for in camera review. [Docket No. 366 (Order to Submit Documents).] The court held that Wisk had made "a prima facie showing that the attorney-client privilege applies to the clawed-back portions of the three documents" and that Archer had "establish[ed] a sufficient factual basis for the court to conduct an in camera inspection." *Id*. at 2-4 (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071, 1075 (9th Cir. 1992)). In particular, the court reviewed the circumstances in which the purportedly privileged communications by Bibbes took place and concluded that "Archer has shown 'a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence' that the primary purpose of the communications was to provide business as opposed to legal advice." *Id*. at 4 (quoting *In re Grand Jury*, 974 F.2d at 1075).

Wisk timely lodged complete, unredacted versions of the documents at issue.

II.   **LEGAL STANDARD**

The parties agree that federal privilege law applies to this dispute. Mot. 5; Opp'n 2-3. The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The Ninth Circuit describes the elements of the

privilege as follows: where "(1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id*. (cleaned up).

The privilege is "narrowly and strictly construed," *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989) (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)), and the party asserting it bears the burden of proving that it applies. *Richey*, 632 F.3d at 566; *accord In re Grand Jury Investigation*, 974 F.2d at 1071 (party asserting privilege "must make a *prima facie* showing" that privilege protects information the party intends to withhold). The privilege protects only communications, and not underlying facts, *Upjohn v. United States*, 449 U.S. 383, 396 (1981), and the fact "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Rather, in order for the privilege to apply, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002); *see also Richey*, 632 F.3d at 566 n.3 ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer.*" (quotation and citation omitted; emphasis in original)).

The Ninth Circuit has recognized that "some communications [between attorneys and clients] might have more than one purpose." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). In that circumstance, courts in this circuit apply the "primary-purpose test" to determine whether the communications are privileged. *Id*. at 1092. Under that test, "courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice." *Id*. at 1091 (citation omitted). "The natural implication of this inquiry is that a dual-purpose communication can only have a single 'primary' purpose." *Id*.

### III. DISCUSSION

#### A. Whether Wisk Has Established that the Clawed-Back Excerpts are Attorney-Client Privileged Communications

Having reviewed the November 2020 Board Deck, Comments to Board Deck, and June

6

2021 Funding Request in camera, the court finds that there was "a clear business purpose in the environment in which the" purportedly privileged communications by Bibbes occurred. *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990). Specifically, the communications took place in the context of Wisk's decision to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and its subsequent ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* November 2020 Board Deck at -613; June 2021 Funding Request at -817-821. Accordingly, Wisk's assertion of privilege may be sustained only if "there is a clear evidentiary predicate for concluding that each communication in question was made primarily for the purpose of generating legal advice." *McCaugherty*, 132 F.R.D. at 238; *In re Grand Jury*, 23 F.4th at 1091. As the party asserting the privilege, Wisk bears the burden of establishing that each communication that it claims is privileged "has as its primary or predominate purpose the provision of legal advice or assistance." *City of Roseville Employees' Ret. Sys. v. Apple Inc.*, No. 19-CV-02033-YGR-JCS, 2022 WL 3083000, at *9 (N.D. Cal. Aug. 3, 2022) (quotation marks and citation omitted), *motion for relief from judgment denied sub nom. In re Apple Inc. Sec. Litig.*, 2022 WL 4351392 (N.D. Cal. Sept. 12, 2022), *motion to certify appeal denied*, 2022 WL 4588603 (N.D. Cal. Sept. 29, 2022). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," *Fisher v. United States*, 425 U.S. 391, 403 (1976), which means that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *McCaugherty*, 132 F.R.D. at 238 (citing *Fisher*, 425 U.S. at 403).

Additionally, Bibbes' role as general counsel "warrants heightened scrutiny" because "[i]n-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA DMR, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). Thus, "[w]hen attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party . . . 'must make a clear showing that the speaker made the communication[ ] for the purpose of obtaining or

7

providing *legal* advice.'" *Id.* (emphasis in original) (quoting *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)); *accord City of Roseville*, 2022 WL 3083000, at *9 (applying "clear showing" standard where examining claim of attorney-client privilege over "internal communications involving in-house counsel").

With these principles in mind, the court turns to the particular communications withheld by Wisk on the basis of the attorney-client privilege.

### 1. November 2020 Board Deck

The November 2020 Board Deck is a  *Id.* at -599-601. It describes . *Id.* at -604-05, 609, 610, 613. The one-sentence communication at issue appears below a . *Id.* at -615. The statement "Wisk Confidential and Proprietary" appears at the bottom of the page but makes no reference to privilege. *Id.*

Archer contends that this presentation reflects Wisk's  Mot. 6. It further argues that "would be nothing more than a 'mechanical step[] that must be implemented'" and thus Bibbes' communications on that point are not privileged. *Id.* at 7 (quoting *In re Currency Conversion Antitrust Litig.*, No. 05 CIV. 7116 WHP THK, 2010 WL 4365548, at *9 (S.D.N.Y. Nov. 3, 2010) (holding that documents "in which business people are being instructed on mechanical steps that must be implemented and followed" were not privileged)).

Bibbes' description of the redacted sentence in the November 2020 Board Deck is barebones and convoluted. He states that the communication "reflects the substance of [his] legal advice at the time that *had been given* to Wisk's Board on the same subject matter as the two slides in the June [2021 Funding Request]." *See* Bibbes Decl. ¶ 12 (emphasis added). Bibbes' use of the past tense is confounding. It suggests that the communication in the November 2020 Board Deck simply repeated previously provided legal advice. Not so. The November 2020 Board Deck preceded the statements in the June 2021 Funding Request. Bibbes separately addresses the June 2021 Funding Request, stating that the subject of his communication in that document "was Wisk's 'LLC Agreement' and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.* at ¶ 10. Bibbes appears to contend that the redacted portion of the November 2020 Board Deck communicates his legal advice regarding Wisk's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, advice that was connected to Wisk's business decision to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

To be sure, where an attorney "gives a client legal advice on a business decision, that communication is protected by privilege." *L.D. v. United Behav. Health*, No. 20-CV-02254-YGR-JCS, 2022 WL 3139520, at *13 (N.D. Cal. Aug. 5, 2022) (citation omitted). However, in applying the primary purpose test, the issue is whether the communication was "made primarily for business purposes and/or would have been made even if no one had any interest in legal advice." *See McCaugherty*, 132 F.R.D. at 238. The communication in the November 2020 Board Deck does not identify any particular legal problem related to Wisk's business decision. Rather, in the context of what is clearly a business presentation, the redacted sentence references a logistical step needed to effectuate the planned change in Wisk's business. Although Bibbes states the communication "reflects the substance of [his] legal advice," he does not explain the significance of his purported legal advice and he does not state that anyone asked him for legal advice. Nothing in the November 2020 Board Deck establishes that Bibbes was acting in his legal capacity with respect to the disputed communication or that its "primary or predominate purpose" was to provide legal advice or assistance.

Wisk does not respond to Archer's point that amending Wisk's corporate governance

9

documents was simply a "mechanical step" required "to align Wisk's permitted activities with its business plans," i.e., that Bibbes' communication reflected the logistics of implementing a business decision. Instead, Wisk argues that Archer improperly focuses on the unredacted, unprivileged portions of the document to argue that the communication was not privileged and that the primary purpose test "applies to the purpose of the communications actually withheld"; here, "legal advice concerning Wisk's agreements." Opp'n 4-5. But Wisk does not actually grapple with the primary purpose test or contend that Bibbes would not have made the communication "absent the privilege." *See McCaugherty*, 132 F.R.D. at 238; *Fisher*, 425 U.S. at 403. Bibbes' declaration does not address primary purpose of his communication at all.

Ultimately, Wisk must make a "clear showing" that the "primary or predominate purpose" of Bibbes' communication in the November 2020 Board Deck was the provision of "legal advice or assistance." The court finds that Wisk has made not made that showing. Accordingly, it has not established that the redacted communication in the November 2020 Board Deck is protected by the attorney-client privilege.

### 2. Comments to November 2020 Board Deck

The Comments to the November 2020 Board Deck show discussion among Wisk employees, including Bibbes, regarding the preparation of the November 2020 Board Deck. The two clawed back sentences appear on the second page of the document above the comment, "Not a bad idea, @greg.bibbes@wisk.aero." Comments at -194.

Bibbes states the redacted communication "reflected the substance of [his] legal advice at the time, conveyed to members of Wisk's executive team, on the same subject matter as the November Board Deck and the June [Funding Request]." Bibbes Decl. ¶ 13. However, the unredacted portions of the Comments do not include any request for legal advice and Bibbes' redacted communication does not provide legal advice. Rather, as with the November 2020 Board Deck discussed above, the redacted communication identifies a necessary step to transition Wisk's business to the Cora X aircraft and poses a question about whether to call out that step in the November 2020 Board Deck, which is a business presentation. The court concludes that Wisk has not established that the primary purpose of the redacted communication in the Comments was to

provide legal advice. Accordingly, Wisk has failed to establish that it was an attorney-client privileged communication.

### 3. June 2021 Funding Request

The June 2021 Funding Request reflects a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. June 2021 Funding Request -815. It reviews ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and other financial analyses. *Id.* at -817-21. The two slides containing clawed-back materials, *Id.* at -822-23, appear under a section entitled, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The second slide contains redacted portions above and below the heading "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." The two slides are part of a document with a clear business purpose—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As with the November 2020 Board Deck, the statement "Wisk Confidential and Proprietary" appears at the bottom of the page but there is no reference to privilege. *Id.*

Bibbes states that he authored both slides, and that "[t]he sole purpose of the two slides I authored was to communicate my legal advice to Wisk's Board on a matter of relevance to the presentation, which, as indicated on the redacted version of the slides, was Wisk's 'LLC Agreement' and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.* at ¶ 10. The redacted information discusses the same step discussed above with respect to the November 2020 Board Deck that would have to occur to effectuate the proposed change in Wisk's business. The two redacted slides in the June 2021 Funding Request go into greater detail about that step. However, as with the November 2020 Board Deck, the information does not identify any particular legal issue and Bibbes' declaration is silent on this point. He does not state that he made the communications in response to a request for legal advice or explain what the primary purpose of his communication was. The June 2021 Funding Request has a clear business purpose: to explain why the new business plan needs additional funding. The two redacted slides identify necessary amendments to several agreements to effectuate the new

1  business plan.  Having reviewed the entire June 2021 Funding Request and considering that

2  Bibbes' role as general counsel "warrants heightened scrutiny," the court concludes that Wisk has

3  failed to show that Bibbes would not have made the disputed communications absent the attorney-

4  client privilege.  *See McCaugherty*, 132 F.R.D. at 238; *Fisher*, 425 U.S. at 403.  In other words,

5  the court finds that the primary purpose of the redacted communications was to provide business

6  advice.  Accordingly, Wisk has not established that the communications are protected by the

7  privilege.

### B. Whether Archer Committed an Ethical Breach With Respect to the Disputed Communications

In its opposition, Wisk asserts that Archer misused the Comments to the November 2020 Board Deck and committed an ethical breach by using them in a June 2022 draft joint letter brief and by subsequently "republishing" the Comments by circulating among counsel a redline of the joint letter showing its deletion of the substance of the Comments.  Opp'n 8-10.  Based on this conduct, Wisk argues that Archer's request for sanctions should be denied, and that "[i]f anything, Archer should be paying Wisk's fees." *Id*. at 10.  Wisk also contends that the remedy for Archer's misconduct should be to "deny Archer's infected motion challenging Wisk's privilege" over the clawed-back material at issue, although it offers no authority for such a remedy. *Id*. at 10.

Federal Rule of Civil Procedure 26(b)(5)(B) governs the process for claiming privilege over information after it has been produced to another party.  It states in relevant part that

> After being notified [that information is subject to a claim of privilege], a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. . . .

Fed. R. Civ. P. 26(b)(5)(B).

Here, after Wisk notified Archer that it was clawing back a portion of the November 2020 Board Deck, Archer notified Wisk that it was challenging the clawback and sent a draft joint letter brief regarding the challenge.  Thomasch Decl. ¶¶ 31, 33.  Archer sent Wisk a revised draft of the letter brief on June 2, 2022 in which Archer "cited and quoted from the Comments to support its

1 argument" challenging the clawback of the November 2020 Board Deck. *Id*. at ¶¶ 33, 38.

2 Archer's counsel states that "[n]othing in the Comments led [him] to believe that any portion of

3 them was privileged" as they were not marked privileged and did not "reveal anyone asking Mr.

4 Bibbes for legal advice or Mr. Bibbes providing legal advice of any kind to anyone." *Id*. at ¶ 36.

5 Six days later, on June 8, 2022, Wisk notified Archer that it was clawing back a portion of the

6 Comments that Archer had cited in the draft letter brief. *Id*. at ¶ 39. Archer's counsel later

7 confirmed that all unredacted copies of the Comments had been destroyed or sequestered. *Id*. at ¶

8 42.

9 On June 10, 2022, Wisk sent a letter accusing Archer's counsel of ethical misconduct with

10 respect to his use of the Comments in the June 2, 2022 draft letter brief and demanding that Archer

11 "withdraw (and destroy or sequester) its brief" to comply with its ethical obligations. *Id*. at ¶ 40,

12 Ex. 10 at 3. Wisk contends that Archer should have realized that the Comments were privileged

13 because "Bibbes' name was right on it, and the substance was the same as" the communications

14 over which Wisk had asserted privilege in the November 2020 Board Deck. Opp'n 9.

15 Archer's counsel responded on June 14, 2022 and attached a new version of the draft letter

16 brief reflecting the deletion of the text quoting from the Comments. Counsel's email transmitting

17 his response also attached a redlined version of the draft letter brief that showed in struck-through

18 text the material from the Comments that had been deleted. Thomasch Decl. ¶¶ 43, 44. Wisk

19 complains that the redline showing the "privileged text" from the Comments that had been deleted

20 amounts to "republishing Wisk's privileged material for everyone to see." Opp'n 9.

21 First, Archer's counsel did not engage in unethical behavior when citing the Comments in

22 the June 2, 2022 draft letter brief. As discussed above, the Comments do not contain an obvious

23 attorney-client privileged communication, and do not reflect a request for legal advice or Bibbes'

24 provision of the same. Six days later, Wisk notified Archer that it was now clawing back the

25 portion of the Comments cited in Archer's draft joint letter. Archer's counsel then acted

26 appropriately by ensuring that copies of the unredacted Comments were sequestered or destroyed

27 and removing the disputed reference to the Comments from the draft letter brief in accordance

28 with Rule 26(b)(5)(B). *See* Thomasch Decl. ¶¶ 42, 43.

13

Next, Archer's counsel did not act unethically with respect to the subsequent redlined version of the draft joint letter that reflected the text of the Comments. Archer's counsel states his understanding "that the redline was computer-generated after the completion of [the firm's] revisions to the draft joint letter brief and was not reviewed by any member of [his] team before it was sent to Wisk." *Id*. at ¶ 44. The facts show that circulation of the redline showing the disputed text of the Comments was inadvertent and was made only to Wisk and Archer counsel. Under these circumstances, the court does not find that Archer violated Rule 26(b)(5)(B) or that its counsel behaved improperly. In sum, Wisk's complaint that Archer acted unethically lacks merit.

Finally, Archer seeks attorneys' fees and costs for having to oppose Wisk Aero's original joint discovery letter raising the above-discussed "ethical concern." Mot. 10. Archer's request is denied.

## IV.     CONCLUSION

For the foregoing reasons, Archer's motion to compel is granted in part and denied in part. Wisk shall produce unredacted copies of the November 2020 Board Deck, Comments, and June 2021 Funding Request within three days of the date of this order.

**IT IS SO ORDERED.**

Dated: March 29, 2023



Donna M. Ryu
Chief Magistrate Judge