GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

*Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WISK AERO LLC, | CASE NO. 3:21-CV-02450-WHO (DMR) |
| Plaintiff, | **ARCHER'S OPPOSITION TO WISK'S** ***DAUBERT*** **MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY OF MARILYN SMITH (DKT. 436)** |
| v. | |
| ARCHER AVIATION INC., | Hearing Date:     May 12, 2023 |
| Defendant. | Hearing Time:     3:00 p.m. |
| | Hearing Location: Courtroom 2 |
| | Honorable Judge William H. Orrick |

<span style="color:red">REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</span>

1

**TABLE OF CONTENTS**

2
<u>Page</u>

3    I.    INTRODUCTION ...................................................................................................... 1

4    II.   LEGAL STANDARDS.............................................................................................. 1

5    III.  ARGUMENT ............................................................................................................. 2

6          A.    Dr. Smith's Challenged Opinions Regarding the '833 Patent Are Admissible ........... 2

7                1.    Relevant Background—Dr. Smith's Supplemental Report .............................. 3

8                2.    Wisk's Argument for Exclusion Are Meritless................................................. 5

9                      a.    Dr. Smith's Supplemental Noninfringement Opinions Are
10                           Admissible ................................................................................................. 5

11                     b.    Dr. Smith's Other Supplemental Opinions Are Admissible ................ 8

12         B.    Dr. Smith's Challenged Opinions Regarding Wisk's And Dr. Gandhi's Failure
                 To Describe Trade Secret Nos. 1, 3, And 15 With Particularity Are Admissible ....... 9

13         C.    Dr. Smith's Challenged Opinions Rebutting Dr. Gandhi's "Head Start"
                 Opinions Are Admissible............................................................................................ 14

14   IV.   CONCLUSION ....................................................................................................... 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

ARCHER'S OPP. TO WISK *DAUBERT* MOTION RE MARILYN SMITH
CASE NO. 3:21-CV-02450-WHO (DMR)

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Advanced Respiratory, Inc. v. Electromed, Inc.*,
  No. 00-2646, 2003 WL 25674810 ...................................................................7

*American Student Financial Group, Inc. v. Aequitas Capital Mgmt.*,
  No. 12-cv-2446-CAB-JMA, 2015 WL 11237638 (S.D. Cal. Feb. 12, 2015) ..............................13

*AngioScore, Inc. v. TriReme Med., Inc.*,
  No. 12-CV-03393-YGR, 2015 WL 5258786 (N.D. Cal. Sept. 8, 2015) ................................6

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846-LHK, 2018 WL 1586276 (N.D. Cal. Apr. 2, 2018)................................1

*Cook Inc. v. Endologix, Inc.*,
  No. 1:09-CV-01248-TWP, 2012 WL 4514036 (S.D. Ind. Oct. 1, 2012)....................................2, 6

*Emblaze Ltd. v. Apple Inc.*,
  No. 5:11-CV-01079-PSG, 2015 WL 396010 (N.D. Cal. Jan. 29, 2015), *aff'd*, 639 F. App'x 639
  (Fed. Cir. 2016) ......................................................................6

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004)...........................................................12, 13

*Havco Wood Prod., LLC v. Indus. Hardwood Prod., Inc.*,
  No. 10-CV-566-WMC, 2012 WL 12995414 (W.D. Wis. Oct. 18, 2012).......................................6

*Malibu Boats, LLC v. Skier's Choice, Inc.*,
  No. 3:18-CV-00015, 2021 WL 1852085 (E.D. Tenn. May 6, 2021)................................7

*In re MyFord Touch Consumer Litig.*,
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ..............................................2

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
  76 F.3d 1185 (Fed. Cir. 1996)..........................................................6

*Ormco Corp. v. Align Technology, Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)................................................9

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010)...........................................................2, 15

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2014)...........................................................2

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Raytheon Co. v. Indigo Sys. Corp.*,
   598 F. Supp. 2d 817 (E.D. Tex. 2009) ...........................................................................10, 13

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   No. 13-CV-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ......................................10

*Siemens Medical Solutions v. Saint-Gobain Ceramics*,
   637 F.3d 1269 (Fed. Cir. 2011) ................................................................................................6, 7

*Teradata Corp. v. SAP SE*,
   570 F. Supp. 3d 810 (N.D. Cal. 2021) ...........................................................................................8

*United States v. Sandoval-Mendoza*,
   472 F.3d 645 (9th Cir. 2006) .......................................................................................................15

*Wisconsin Alumni Rsch. Found. v. Apple, Inc.*,
   No. 14-CV-062-WMC, 2015 WL 13546429 (W.D. Wis. Oct. 4, 2015) .......................................6

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996) ......................................................................................................6

**RULES**

Fed. R. Civ. P. 704 ...............................................................................................................................12

Fed. R. Evid. 702 ...................................................................................................................................2

Fed. R. Evid. 704(a) .............................................................................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**TABLE OF ABBREVIATIONS**

| Abbreviation | Definition |
|---|---|
| '833 Patent | U.S. Patent No. 9,764,833 |
| Mtn. | Wisk's Notice of Motion and *Daubert* Motion to Exclude Expert Opinion and Testimony of Marilyn Smith, dated March 19, 2023 (Dkt. 436-1). |
| Smith Supp. Rpt. | Supplement to Rebuttal Expert Report of Dr. Marilyn Smith Regarding '833 Patent, dated February 7, 2023 (Dkt. 436-2). |
| Archer MSJ | Archer's Motion for Summary Judgment, dated March 19, 2023 (Dkt. 456) |
| Smith Tr. | Excerpts of Deposition Transcript of Marilyn J. Smith, dated February 16, 2023 (Dkt. 436-3) |
| Smith Reb. Rpt. | Excerpts of Rebuttal Expert Report of Dr. Marilyn Smith (Trade Secrets), dated January 27, 2023 (included herein as **Exhibit 1**) |
| Gandhi Rpt. | Excerpts of Opening Expert Report of Farhan Gandhi, dated December 21, 2022 (included herein as **Exhibit 2**) |
| Gandhi Tr. | Excerpts of Deposition Transcript of Farhan Gandhi, dated March 3, 2023 (included herein as **Exhibit 3**) |
| Long Tr. | Excerpts of Deposition Transcript of Geoff Long, dated October 27, 2022 (included herein as **Exhibit 4**) |

Gibson, Dunn & Crutcher LLP

# I.    INTRODUCTION

Wisk seeks to exclude certain opinions offered by Archer's technical expert Dr. Marilyn Smith. But Wisk has no legal basis for its motion, and instead the relevant legal authority confirms that Dr. Smith's challenged opinions are indeed admissible.

First, Wisk argues that Dr. Smith's opinions in her February 7, 2023 Supplemental Report regarding Wisk's '833 Patent are inadmissible because they "stem from an erroneous legal assumption" that the Patent Office's recent decision to grant Archer its own patent is relevant to the case.  Mtn. at 1.  But that is not an "erroneous legal assumption."  It is legally *correct*.  The only error of law here is *by Wisk*, who ignores (or chooses not to present) the governing Federal Circuit cases and district court decisions relevant to Dr. Smith's opinions, which all confirm that her opinions are admissible.

Next, Wisk argues that Dr. Smith offered "improper legal opinions" in her Trade Secret Rebuttal Report because she opined that Wisk's 2019.210 Disclosure, corporate testimony, and opening expert report by Dr. Gandhi all failed to identify the boundaries of Trade Secrets 1, 3, and 15 with reasonable particularity.  *Id.* at 1.  But none of Dr. Smith's challenged opinions are "legal opinions."  They are *technical opinions*.  Dr. Smith applies her aerodynamic expertise to determine whether Wisk has articulated an identifiable boundary between what it claims as an aerodynamic trade secret and what it does not (e.g., what is generally known in the field).  Wisk's own cited authorities confirm that such opinions are entirely proper and admissible, and do not amount to "legal opinions."

Finally, Wisk argues that Dr. Smith's opinions are unsupported and conclusory regarding the "head start" that Wisk and its expert contend Archer obtained through the alleged misappropriation. *Id.* at 2.  But Dr. Smith's opinion is firmly based on the record and her expertise, and Wisk's objections all concern the *merits* of its "head start" contention, which is a matter for cross-examination.  None of Wisk's arguments justify excluding Dr. Smith's opinions.  Therefore, the Court should deny Wisk's motion in its entirety.

# II.    LEGAL STANDARDS

"When considering expert testimony offered pursuant to Rule 702, the trial court acts as a 'gatekeeper' by making a preliminary determination that the expert's testimony is reliable."  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2018 WL 1586276, at *3 (N.D. Cal. Apr. 2, 2018)

Gibson, Dunn &
Crutcher LLP

1    (internal quotations omitted); Fed. R. Evid. 702.  "[T]he test under *Daubert* is not the correctness of

2    the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564

3    (9th Cir. 2010), as amended (Apr. 27, 2010).  "When an expert meets the threshold established by Rule

4    702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that

5    testimony.  *Id.*  "The purpose of the gatekeeping role is to ensure that expert testimony is 'properly

6    grounded, well-reasoned and not speculative,' but it is not meant to substitute for 'vigorous cross-

7    examination, presentation of contrary evidence, and careful instruction on the burden and proof which

8    are the traditional and appropriate means of attacking shaky but admissible evidence.'" *In re MyFord*

9    *Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) (quoting Fed. R. Evid. 702, Adv.

10   Comm. Notes (2000)).  "After an expert establishes admissibility to the judge's satisfaction, challenges

11   that go to the weight of the evidence are within the province of a fact finder, not a trial court judge."

12   *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014).

### III.    ARGUMENT

#### A.    Dr. Smith's Challenged Opinions Regarding the '833 Patent Are Admissible

15         Wisk has no basis to exclude Dr. Smith's opinions from her February 7, 2023 Supplemental

16   Report regarding the '833 Patent.  Mtn. at 1, 3-7.  Wisk argues that all of Dr. Smith's opinions in that

17   report "stem from the erroneous legal assumption that an accused infringer's own patent somehow

18   demonstrates that the infringer is operating outside the scope of an earlier granted patent."  *Id.* at 1.

19   But Wisk is simply wrong about the governing law, Dr. Smith's understanding of it, and the opinions

20   in her Supplemental Report.

21         Under governing Federal Circuit precedent, the fact that Archer has obtained its own patent

22   (covering its accused design and granted as nonobvious over Wisk's asserted patent) *is indeed relevant*

23   to Wisk's infringement allegations under the Doctrine of Equivalents ("DOE"), and district courts have

24   held repeatedly that testimony such as Dr. Smith offers here *is admissible* on that issue.   Wisk

25   conspicuously fails to cite any of the relevant cases in its motion, even though they are not hard to find

26   and even though it is Wisk's burden on this motion.  *See, e.g.*, *Cook Inc. v. Endologix, Inc*., No. 1:09-

27   CV-01248-TWP, 2012 WL 4514036, at *5 (S.D. Ind. Oct. 1, 2012) (denying motion to exclude) ("the

28

Court is bound to the Federal Circuit which has explicitly stated that evidence of separate patentability is a factor to be considered in a doctrine of equivalents analysis").

Further, contrary to Wisk's motion, Dr. Smith understands the governing legal framework, as demonstrated by her deposition testimony, including testimony that Wisk ignores. And, while Wisk claims that all of Dr. Smith's opinions in her Supplemental Report "stem from" the issue of infringement, that is simply not true, as she provides opinions that are independent of infringement and instead concern invalidity and technical underpinnings of damages. Wisk does not have any basis to exclude those opinions, and they would be admissible even if her DOE opinions were not admissible (they are). Therefore, the Court should deny Wisk's motion.

### 1.    Relevant Background—Dr. Smith's Supplemental Report

Dr. Smith's Supplemental Report concerns a new development that occurred after the parties exchanged rebuttal reports,[1] and that has relevance to Dr. Smith's opinions regarding Wisk's '833 Patent, which claims a rotor mounting boom assembly where the rotor control electronics are cooled using *air cooling*. As Dr. Smith explains in her Supplemental Report, the Patent Office issued a Notice of Allowance *to Archer* on February 1, 2023 regarding Archer's own patent application relating to cooling motors and control electronics on an eVTOL aircraft using *oil cooling*. Smith Supp. Rpt. ¶¶ 3-7. In Dr. Smith's opinion, ██████████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶ 8.[2]

Importantly, as Dr. Smith reviews in her report, the Examiner who allowed Archer's patent claims did so *only after considering Wisk's air-cooling '833 Patent as prior art* to Archer's claims. *Id.* ¶ 9. The Examiner addressed Wisk's '833 Patent explicitly in the Notice of Allowance, and explained that the '833 Patent does not teach or suggest Archer's claimed oil-cooling approach—in other words, the Examiner found that Archer's oil-cooling approach is *patentably distinct* from Wisk's '833 Patent

---

[1] Wisk does not argue that Dr. Smith's Supplemental Report was untimely; there is no dispute that it was timely served.

[2] Notably, while Wisk's motion includes a boilerplate request to exclude all opinions from Dr. Smith's Supplemental Report, Wisk *does not argue for exclusion of—or even appear to dispute—this particular opinion* by Dr. Smith, i.e., ████████████████████████████████████████████ ████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1   (where the rotor controller is cooled by having air flow through the controller enclosure instead of

2   being cooled by oil cooling). *Id.* ¶¶ 9-10.  This new development—the Examiner's issuance of a Notice

3   of Allowance to Archer on patent claims that ████████████████████████████████████████

4   ████████████████████████████████ at the same time are explicitly found by the Examiner

5   to be *patentably distinct* from Wisk's '833 Patent—is relevant to several different issues in the case.

6           First, the Notice of Allowance supports Dr. Smith's opinions rebutting Wisk's claim of

7   infringement *under the DOE*.  As Dr. Smith explains: ████████████████████████████

8   ████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████ *Id.* ¶ 11. ████████████████████████

11  ████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████ *Id.*  Dr. Smith explains in her Supplemental Report that ████████████████

14  ████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████

17  ██████████████████████ *Id.* ¶ 13 (emphasis in original).

18          Second, and standing independently of her opinions on noninfringement, the Notice of

19  Allowance also supports Dr. Smith's opinions about secondary considerations in her invalidity analysis

20  for Wisk's '833 Patent.  *Id.* ¶¶ 14-15.  For example, while Wisk and its expert Dr. Collins contend ██

21  ████████████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████ Dr. Smith explained in

23  her previous reports that Wisk and Dr. Collins are wrong because ████████████████████████

24  ██████████████████████████████ In her Supplemental Report, Dr. Smith explains

25  that the new Notice of Allowance supports her opinion about lack of nexus.  She writes that ████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

1    ▮▮▮▮▮▮   *Id.* ¶ 14.  Likewise, Dr. Smith explains that on the secondary consideration of copying,

2    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4    ▮▮▮▮▮▮▮   *Id.* ¶ 15 (emphasis in original).

5        Third, and also standing independently of infringement, the Notice of Allowance supports Dr.

6    Smith's opinions about supposed technical benefits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮   *Id.* ¶¶ 16-17.  Wisk and Dr. Collins contend that ▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   Dr. Smith disagrees, ▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   *Id.* ¶ 16.



17       **2.    Wisk's Argument for Exclusion Are Meritless**

18       Wisk asks the Court to exclude Dr. Smith's opinions from her Supplemental Report, but Wisk

19   has no basis for that request, and instead Wisk's arguments misstate the law and the record.

20       **a.    Dr. Smith's Supplemental Noninfringement Opinions Are Admissible**

21       Wisk's primary argument is that Dr. Smith's noninfringement opinions in her Supplemental

22   Report are "fundamentally flawed" because they all supposedly rest on an error of law.  Mtn. at 1, 5-6.

23   But Wisk is wrong.  Dr. Smith did not err on the law.  Wisk did.  Wisk argues that as a matter of law,

24   Archer's own patent covering the accused design for Midnight "has no bearing on infringement of the

25   earlier-filed [Wisk '833 patent]," and that Archer's patent is "immaterial to whether Archer's aircraft

26   infringes the '833 patent."  Mtn. at 5-6.  But Wisk is flatly incorrect.  The relevant Federal Circuit

27   precedent, which Wisk does not cite anywhere in its motion, provides that Archer's own patent

28   covering the accused design *is indeed relevant* to rebut Wisk's claim of infringement under the DOE—

Gibson, Dunn &
Crutcher LLP

5

the very infringement issue that Dr. Smith addresses in her Supplemental Report.  *See, e.g.*, *Siemens Medical Solutions v. Saint-Gobain Ceramics*, 637 F.3d 1269, 1280 (Fed. Cir. 2011) ("[W]here, as here, the alleged equivalent is claimed in a separate patent, this fact, when weighed by the fact-finder together with all other relevant evidence, may make equivalency 'considerably more difficult to make out' by a preponderance of the evidence."); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996) (*reversing* judgment of infringement under DOE and holding that "[t]he nonobviousness of the accused device, evidenced by the grant of a United States patent, is relevant to the issue of whether the change therein is substantial" for purposes of DOE); *Nat'l Presto Indus., Inc. v. W. Bend Co.,* 76 F.3d 1185, 1192 (Fed. Cir. 1996) ("The fact of separate patentability is relevant, and is entitled to due weight.").

That is why motions like Wisk's are regularly *denied* by district courts—including in this District—especially when a defendant's own patent was issued over the plaintiff's asserted patent and is being offered to demonstrate noninfringement of the plaintiff's patent *under the DOE*, as Archer and Dr. Smith do here.  Wisk fails to cite or acknowledge any of the relevant cases in its motion, even though they are squarely on point and refute Wisk's position.  *See, e.g.*, *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR, 2015 WL 5258786, at *3 (N.D. Cal. Sept. 8, 2015) (denying motion to exclude and agreeing with defendant that Federal Circuit law allows "evidence of separate patentability, suggesting non-infringement under the doctrine of equivalents"); *Wisconsin Alumni Rsch. Found. v. Apple, Inc*., No. 14-CV-062-WMC, 2015 WL 13546429, at *1 (W.D. Wis. Oct. 4, 2015) (denying motion to exclude and finding that "[t]here is no dispute that the separate patentability of an accused product is relevant in determining infringement by equivalence."); *Havco Wood Prod., LLC v. Indus. Hardwood Prod., Inc*., No. 10-CV-566-WMC, 2012 WL 12995414, at *3 (W.D. Wis. Oct. 18, 2012) ("Such evidence of separate patentability is relevant to the jury's determination of whether the alleged infringing patent is an 'insubstantial change' to find infringement under the doctrine of equivalents."); *Cook Inc.*, 2012 WL 4514036, at *5 (same); *see also Emblaze Ltd. v. Apple Inc*., No. 5:11-CV-01079-PSG, 2015 WL 396010, at *8 (N.D. Cal. Jan. 29, 2015) (holding that "[a]t trial, [defendant's] admitted patents were relevant to [defendant's] noninfringement position," and denying request for a new trial), *aff'd*, 639 F. App'x 639 (Fed. Cir. 2016).

By contrast, in the cases cited by Wisk, where a defendant's patent was excluded, the defendant's patent was *not* issued over the plaintiff's patent or was *not* being offered to show absence of equivalence under the DOE. Thus, Wisk's cases are inapposite, and do not support excluding Dr. Smith's opinions. *See, e.g.*, *Advanced Respiratory, Inc. v. Electromed, Inc*., No. 00-2646, 2003 WL 25674810, at *1 (recognizing that "the Federal Circuit has held that a subsequent patent may be relevant to the issue of whether certain elements of an improvement patent are equivalent," but excluding defendant's patent because "[defendant] does *not* argue that [its] Patent is an improvement to the [plaintiff's] Patent.") (emphasis added); *Malibu Boats, LLC v. Skier's Choice, Inc.*, No. 3:18-CV-00015, 2021 WL 1852085, at *1 (E.D. Tenn. May 6, 2021) (defendant's patents excluded where defendant *agreed* that it "has not asserted its patents as a defense to [the] allegations of infringement").

Wisk argues that these cases support exclusion because they show that Archer's patent would "misdirect the jury's attention from the real issue of the case—specifically, whether the [Defendant's] device infringes the [Plaintiff's] patent." Mtn at 6 (quoting *Advanced Respiratory*, 2003 WL 25674810, at *1). But the governing precedent shows that Archer's patent is *relevant* to that "real issue," because Wisk has chosen to assert infringement under the DOE. *Siemens*, 637 F.3d at 1280.

Thus, Wisk is simply wrong on the law. Further, Wisk is wrong when it argues that "Dr. Smith was not properly instructed" on the law. Mtn. at 1.[3] Wisk insinuates that Dr. Smith was instructed that a defendant who obtains its own patent thereby obtains a get-out-of-jail-free card, preventing a finding of infringement of the plaintiff's patent regardless of the facts and regardless of the plaintiff's infringement theory. But Wisk has no basis for that insinuation. To the contrary, Dr. Smith testified at her deposition—in testimony that Wisk conspicuously ignores—that ██████████████

███████████████████████████████████

███████████ Dr. Smith also explained at her deposition that ████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

[3] Notably, this argument appears only in the Introduction to Wisk's motion, not anywhere in the Argument section.

Gibson, Dunn &
Crutcher LLP

████████████   There is nothing improper in the legal framework applied by Dr. Smith.  Rather, her DOE opinions are entirely consistent with governing Federal Circuit precedent, which holds that a defendant's own patent can weigh against a finding of infringement under the DOE.

Finally, Wisk argues against Dr. Smith's DOE opinions *on the merits*, contending that the Notice of Allowance to Archer does not actually support her noninfringement opinions and instead "cuts against Archer's non-infringement arguments in this case." Mtn. at 6.  But even if Wisk were right (it is not), that is not a cognizable argument for *excluding* Dr. Smith's opinions.  Wisk is free to cross-examine Dr. Smith on the Notice of Allowance at trial, but cannot exclude her opinions by arguing about them on the merits.  *See, e.g.*, *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 847 (N.D. Cal. 2021) (critiques that "go to the weight of [an expert's] testimony are not grounds for excluding [her] opinions").[4]

In short, the central premise of Wisk's motion—that Archer's own patent is irrelevant to Wisk's claim of infringement of Wisk's '833 Patent—is simply false.  Wisk understandably does not want the trier-of-fact to hear that Archer's innovation was found to be patentably distinct by the Examiner over Wisk's patent claims, but that is not a basis to exclude such facts or Dr. Smith's reliance on that information.   Wisk has not identified any basis to exclude Dr. Smith's opinions regarding noninfringement in her Supplemental Report, and to the contrary the relevant caselaw confirms that they are admissible.

**b.   Dr. Smith's Other Supplemental Opinions Are Admissible**

In addition to noninfringement under the DOE, Dr. Smith's Supplemental Report also contains separate opinions about the invalidity of the '833 Patent and about supposed technical benefits underlying Wisk's damages claim.  *See* Smith Supp. Rpt. ¶¶ 14-17.  Wisk argues that the Court should exclude "all of Dr. Smith's opinions contained in her Supplemental Report" (Mtn. at 7), but Wisk does

---

[4] Wisk also spends more than a page of its motion arguing about an issue that has nothing to do with its request to exclude Dr. Smith's testimony.  Specifically, Wisk argues that the Notice of Allowance to Archer supports Wisk's view that its '833 Patent ████████████████████  But none of the opinions that Wisk seeks to exclude has anything to do with that question.  And neither do Wisk's asserted patent claims.  The asserted claims of the '833 Patent require "an air inlet positioned on the boom," not ██████████████ ████████████████████████████

Gibson, Dunn &
Crutcher LLP

1    not articulate *any* reason to exclude Dr. Smith's opinions about invalidity or technical benefits.  Instead,

2    Wisk lumps those opinions together with infringement, and contends that they "all stem" from the

3    infringement issue.  Mtn. at 1, 5-6.

4          Even if Wisk were right about that—i.e., even if Dr. Smith's invalidity and technical benefit

5    opinions depended on her noninfringement opinions—then Wisk still would have no basis to exclude

6    those opinions, for the reasons explained above.  But Wisk is wrong.  Dr. Smith's invalidity and

7    technical benefit opinions in her Supplemental Report do *not* depend on her noninfringement opinions,

8    and they would be admissible even if her noninfringement opinions in the Supplemental Report were

9    excluded (they should not be).  For example, regarding Dr. Smith's invalidity opinions on Wisk's

10   alleged secondary considerations of nonobviousness, Dr. Smith explains in the Supplemental Report

11   that

12

13

14

15                                                                     *Id.* ¶ 14.  Wisk has not

16   even attempted to make an argument for exclusion of that opinion—or any other invalidity or technical

17   benefit opinion offered by Dr. Smith in her Supplemental Report—and Wisk should not be permitted

18   to sandbag by making new arguments on reply.  In any event, Dr. Smith's invalidity and technical

19   benefit opinions are relevant and admissible, independently of her noninfringement opinions.  *See, e.g.*,

20   *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1212-13 (Fed. Cir. 2006) (holding that "the

21   evidence," including "testimony and an expert report of [defendant's expert]," served to "clearly rebut[]

22   the presumption that [defendant's] success was due to the claimed and novel features [of plaintiff's

23   patent]," including because defendant's expert "testified that commercial success was due to *unclaimed*

24   [in plaintiff's patent] or non-novel features of the device") (emphasis added).

25   **B.    Dr. Smith's Challenged Opinions Regarding Wisk's And Dr. Gandhi's Failure To**
            **Describe Trade Secret Nos. 1, 3, And 15 With Particularity Are Admissible**
26

27         In addition to her supplemental report on the '833 Patent, Wisk seeks to exclude Dr. Smith's

28   opinions from her rebuttal report regarding Wisk's and Dr. Gandhi's failure to describe Trade Secret

Nos. 1, 3, and 15 with a reasonable degree of particularity.  Mtn. at 7.  But Wisk again has no basis for its request.  While Wisk argues that Dr. Smith's opinions about the trade secrets are improper legal conclusions, Wisk's own cited case shows that they are not, and instead they are "valid opinions"— precisely *because* they do *not* extend to a legal conclusion.  *Raytheon Co. v. Indigo Sys. Corp.*, 598 F. Supp. 2d 817, 821-22 (E.D. Tex. 2009) ("Raytheon objects to [the expert's] conclusions that trade secrets 20, 22 and 25 are described with insufficient detail to identify the trade secrets. [The expert] does opine that these trade secrets, as described, do not meaningfully differ from information that is widely known in the industry. *These are valid opinions*; nowhere does [the expert] conclude that trade secrets 20, 22 and 25 are not actually trade secrets because of the generality of their description.").[5]

Indeed, while Dr. Smith's technical opinions are directly relevant to the central (and potentially dispositive) issue of particularity, that does not mean that her opinions usurp the role of the court as the source of the law.  Rather, for each asserted trade secret, Dr. Smith reviews the portion of Wisk's Disclosure directed to that trade secret, and she *applies* the legal standard of "reasonable particularity" and her technical expertise to offer a *technical opinion* about whether Wisk's Disclosure meaningfully conveys the boundaries of that trade secret.  *See* Smith Reb. Rpt. (**Exhibit 1**) ¶¶ 165-170 (TS 1); ¶¶ 339-344 and 454-455 (TS 3); ¶¶ 471 (TS 15).  For example, for TS 1, Dr. Smith states that she has reviewed the description in Wisk's Disclosure, ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████  *Id.* ¶ 167.  Dr. Smith never offers the legal opinion that Trade Secrets 1, 3, and 15 are not enforceable trade secrets because of a lack of particularity, but rather offers technical opinions about *the supposed boundaries that Wisk has drawn*. Therefore Dr. Smith's opinions are admissible under Wisk's own cited cases.  *See Raytheon*, 598 F. Supp. 2d at 821-22*; Scentsational*, 2018 WL 1889763, at *7.

---

[5] Similarly, *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018), on which Wisk relies, explains that an expert "*may offer an opinion* as to how unique or valuable [the trade secret] technology is within the industry" but "simply may not offer the legal conclusion that the technology is [or is not] a trade secret." *Id*. at *7.

1    Likewise, Dr. Smith considers 30(b)(6) testimony from Wisk's own corporate representatives

2  responding to questions about the definition, scope, and boundaries of each trade secret, and she

3  explains how this testimony supports her technical opinions about the lack of clarity for each trade

4  secret.  For example, Dr. Smith notes that Wisk representative Jim Tighe testified that █████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████████

8  █████████████   *Id.* ¶ 183.   That statement is not a *legal* opinion, it is a *technical* opinion based

9  on  Dr.  Smith's  expertise  regarding  the  difference  between  █████████████████████████

10  ███████████   *See also id.* ¶¶ 171, 177, 208 for TS 1; ¶¶ 336, 369-370 for TS 3; ¶ 479 for TS 15.

11    Dr. Smith also reviews the opinions offered by Wisk's expert Dr. Gandhi in his opening report

12  purporting to further define—or, more accurately, entirely redefine—each trade secret, and she offers

13  admissible *technical responses* about whether those statements provide a meaningful boundary for each

14  alleged trade secret.  Those opinions are proper both because they are technical opinions within Dr.

15  Smith's expertise, and because they are *rebuttal* opinions responding to Dr. Gandhi's opinions about

16  the scope of the alleged trade secrets.

17    For example, regarding TS 1, Dr. Smith opines that Dr. Gandhi's report █████████████

18  ████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████

20  █████████████████   *Id.* ¶ 173.   Dr. Smith's opinion is well-founded, as she shows that ████████

21  ████████████████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████████

23  *Id.* ¶¶ 174-175.  And Dr. Smith opines that ████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████████████

28

1 ████████████████████████████████████████████████████████████

2 ██████████████████████████████████████████ *Id.* ¶ 189.

3    Dr. Smith shows that Dr. Gandhi's opinions from his opening report would leave the boundaries

4 of TS 1 entirely unclear even to an expert in the field, for example ████████████████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████ *Id.* ¶

9 182; *see also id.* ¶¶ 172, 178-181, 184-196, 201, 208, 245 for TS 1; ¶¶ 347, 408, 452 for TS 3; ¶¶ 458,

10 461, 465, 476, 480-481 for TS 15.[6]

11    These are not legal opinions, they are technical opinions—*based on Dr. Smith's expertise*—

12 that she is unable to determine the boundaries of Wisk's claimed trade secrets from Dr. Gandhi's report.

13 Wisk can test Dr. Smith's opinions on cross-examination (if Wisk reaches trial on these alleged trade

14 secrets, which it should not for reasons explained in Archer's MSJ), but Wisk has no basis to exclude

15 Dr. Smith's opinions under *Daubert*.

16    Wisk points to a few paragraphs where Dr. Smith uses the phrase "reasonable particularity" in

17 her opinions, but that is not a magic phrase that turns technical opinions into legal opinions. The Rules

18 explicitly provide that "[a]n opinion is not objectionable just because it embraces an ultimate issue."

19 Fed. R. Civ. P. 704; *see also*, *e.g.*, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016

20 (9th Cir. 2004) ("It is well-established that expert testimony concerning an ultimate issue is not per se

21 improper" so long as the expert does not "give an opinion as to her legal conclusion, *i.e.*, an opinion

22 on an ultimate issue of law.").

---

25 [6] Notably, Dr. Gandhi confirmed at his deposition (conducted after he reviewed Dr. Smith's opinions above) that ████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ██████ Gandhi Tr. (**Exhibit 3**) at 189:8-13; *id.* at 164:11-17 ██████████████

28 ████████████████ Dr. Smith is within her expertise to opine that this is not a clear boundary because it does not distinguish TS 1 from knowledge known in the field.

Gibson, Dunn &
Crutcher LLP

1        Moreover, Wisk's motion to exclude these opinions by Dr. Smith is remarkably hypocritical.

2    Wisk *itself* sought a preliminary injunction in this case based on the explicit testimony of its technical

3    expert, Dr. Gandhi, that Wisk's trade secrets were "sufficiently identified." Dkt. 16-4 at 25 ("It is my

4    opinion that Wisk's trade secret nos. 1, 2, 3, 4, 5, 6, 7, 8, and 15 are more than sufficiently identified

5    to distinguish them from matters of general knowledge in the trade or of special knowledge of those

6    persons skilled in the trade.").[7]  Indeed, in denying Archer's motion to strike Wisk's Disclosure, the

7    Court *credited* Wisk's expert's testimony on this point. Dkt. 134 at 19 ("Wisk submitted declarations

8    from its experts that delve into detail about each individual trade secret, including to explain why they

9    are reasonably identified."). But Wisk now claims, in an about face, that Dr. Smith should be precluded

10   from addressing this precise issue, even though her opinions—unlike Dr. Gandhi's before her—do *not*

11   reach the ultimate legal conclusion in the case. Mtn. at 7-8.  Wisk's motion should be denied on this

12   basis. *Raytheon*, 598 F. Supp. at 821-22; *Hangarter*, 373 F.3d at 1016; Fed. R. Evid. 704(a).

13       Nor should Dr. Smith be precluded from offering her opinions because of the Court's ruling on

14   Archer's motion to strike, as Wisk argues.  Dr. Smith's opinions do not, as Wisk claims, "contradict"

15   the Court's order on the MTS. Mtn. at 8. The Court ruled only that "the trade secrets are adequately

16   identified *at this stage*"—i.e., at the pleading stage. Dkt. 134 at 20; *see also id.* at 22 ("In short, Section

17   2019.210 itself does not require an explanation of how the trade secrets meet the definitional elements.

18   At this stage, I see no reason it would be necessary as a matter of case management. … Archer will

19   have the opportunity to take discovery on this issue."). Archer does not understand that the Court's

20   ruling was intended to be the last word on the sufficiency of Wisk's Disclosure for the duration of the

21   case; if it was not, it is Archer's intent to continue to challenge the sufficiency of Wisk's Disclosure

22   and not waive its defense in this regard. *See, e.g., American Student Financial Group, Inc. v. Aequitas*

23   *Capital Mgmt.*, No. 12-cv-2446-CAB-JMA, 2015 WL 11237638 (S.D. Cal. Feb. 12, 2015) ("Whether

24   a trade secret plaintiff has introduced sufficient evidence to create a triable issue" is a "different

---

[7]  In fact, Wisk's case *depends* on its *experts'* conclusions that its trade secrets are sufficiently

identified.  As more fully explained in Archer's motion for summary judgment, Wisk's 30(b)(6)

representatives refused to provide *any* description of any asserted TS, and instead deferred entirely to

Wisk's experts. *See, e.g.* Long Tr. (**Exhibit 4**) 408:8-12 ▮

Gibson, Dunn &
Crutcher LLP

1    question from whether the claimant has adequately identified the trade secret under section 2019.210

2    so as to be permitted to proceed with discovery.") (internal citation omitted).

3         Finally, Wisk overreaches in its request for relief, so even if the Court were to overlook all of

4    the many deficiencies in Wisk's motion, it would be error to sweep with the broad brush Wisk proffers.

5    The vast majority of the paragraphs Wisk seeks to exclude do not contain *any statement* which could

6    even *remotely* be considered a legal conclusion on particularity.  For example, paragraphs 166, 181,

7    183-194, 208, 245, 347, 369, 458, 465, 471, 476, and 480 of Dr. Smith's Rebuttal Report (**Exhibit 1**)

8    and lines 65:24-66:6 (Dkt. 436-3) of her deposition transcript (identified by Wisk) are straightforward

9    analyses of Wisk's Disclosure—directly responsive to Wisk's expert testimony and deposition question

10   to Dr. Smith—and never come close to addressing the *legal* question of whether these descriptions are

11   sufficiently particularized.

12   **C.     Dr. Smith's Challenged Opinions Rebutting Dr. Gandhi's "Head Start" Opinions Are
         Admissible**

13        Finally, Wisk argues that the Court should exclude Dr. Smith's rebuttal opinions regarding the

14   supposed "head start" that Wisk claims Archer obtained by allegedly misappropriating trade secrets.

15   Mtn. at 9-10.  But again, Wisk has no basis for its motion, and its arguments concern the *merits* of Dr.

16   Smith's "head start" opinions (which Wisk can explore in cross-examination) rather than admissibility.

17        For background, Wisk's expert Dr. Gandhi included a short section in his opening report

18   opining that ███████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████ Gandhi

21   Rpt. (**Exhibit 2**) ¶ 191.  Dr. Smith disagrees with that opinion, and explains why in her rebuttal report,

22   basing her opinion on facts in the record and on her expertise in the art.  First, Dr. Smith notes that she

23   disagrees with the hypothetical premise of Dr. Gandhi's opinion (that Archer misappropriated TS 1 in

24   connection with Maker), and she opines that in any event Archer could have conducted separate work

25   on Midnight to avoid using any aerodynamic data regarding Maker, thus avoiding any basis for Wisk

26   to claim that Maker gave Archer a "head start" on Midnight.  Specifically, Dr. Smith explains that

27   ████████████████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

ARCHER'S OPP. TO WISK *DAUBERT* MOTION RE MARILYN SMITH
CASE NO. 3:21-CV-02450-WHO (DMR)

1     ██████████████████████████████████ Smith Reb. Rpt. (**Exhibit**

2   **1**) ¶ 582.  Dr. Smith further opines that █████████████████████████████

3   █████████████████████████████████ *Id*. ¶ 583.  Dr. Smith

4   also observes that ████████████████████████

5   ████████████████████████████████████████

6   ██████████   *Id*.

7        Wisk now seeks to exclude Dr. Smith from testifying consistent with Paragraphs 582-583 of

8   her Report on the grounds that her opinion "is contradicted by the actual facts" as viewed by Wisk.

9   Mot. at 9.  But that is an argument for robust cross-examination, not for exclusion of testimony, and in

10   any event Wisk's view of the facts is incomplete and inaccurate.  ████████████████

11   ████████████████████████████████████████

12   ████████ *See* Gandhi Rpt. ¶ 316. ████████████████████

13   ████████████████████████████████████████

14   ████████████████████████████████████████

15   ████████████████████████████████████████

16   ██████████████████████ *See* Smith Reb. Rpt. (**Exhibit 1**) ¶¶ 524-525. ████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ██████████████████ *See id*. ¶¶ 531-536.  In arguing that Dr. Smith's conclusions are

20   "counterfactual to the actual evidence in the record," Wisk confuses the role of the trial court on a

21   *Daubert* motion, which is to be "'a gatekeeper, not a fact finder.'"  *Primiano*, 598 F.3d at 564 (quoting

22   *United States v. Sandoval-Mendoza*, 472 F.3d 645,654 (9th Cir. 2006)).   Here, Wisk's effort to

23   inoculate Dr. Gandhi's spurious opinions from challenge by a highly qualified expert who has fully

24   disclosed her opinions and the basis of those opinions should be rejected.

25                  **IV.    CONCLUSION**

26        For the foregoing reasons, Archer respectfully requests that Wisk's *Daubert* motion regarding

27   Dr. Smith be denied in its entirety.

28

1

2    DATED: April 6, 2023.                           Respectfully submitted,

3                                                     GIBSON, DUNN & CRUTCHER LLP

4                                                     By: */s/ Josh A. Krevitt*
                                                          Josh A. Krevitt
5
                                                      *Attorneys for Defendant Archer Aviation Inc.*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28