1

2                                    ***PUBLIC REDACTED VERSION***

3

4                                    UNITED STATES DISTRICT COURT

5                                 NORTHERN DISTRICT OF CALIFORNIA

6

7        WISK AERO LLC,                              Case No.  21-cv-02450-WHO (DMR)

8                            Plaintiff,

9               v.                                   ORDER ON PLAINTIFF'S MOTION
                                                     TO COMPEL
10       ARCHER AVIATION INC.,                       Re: Dkt. No. 415

11                           Defendant.

12              Plaintiff Wisk Aero LLC ("Wisk") filed a motion to compel production of unredacted

13       versions of two documents produced by Defendant Archer Aviation Inc. ("Aviation").  [Docket

14       No. 415.]  The documents are (1) a presentation by Archer's expert, FTI Consulting, regarding its

15       forensic investigation, and (2) board meeting minutes reflecting discussions of that investigation.

16       Archer asserts that the attorney-client privilege and/or work product doctrine shield the redacted

17       portions of the documents.

18              The court held a hearing on March 23, 2023 at which the parties discussed a potential

19       agreement resolving the motion to compel.  The court ordered the parties to meet and confer and

20       file a joint notice by March 28, 2023 advising whether they reached an agreement.  It also ordered

21       Archer to lodge the relevant portions of the board meeting minutes for in camera review.  [Docket

22       No. 462.]  The parties twice requested additional time to attempt to reach an informal resolution

23       and ultimately filed a joint status report on April 13, 2023 regarding their efforts.  [Docket Nos.

24       464, 470, 506 (Jt. Status).]  They explained that since the hearing, Archer withdrew its claims of

25       attorney-client privilege and work product doctrine over the two documents and produced them to

26       Wisk along with other documents and information.  The parties dispute whether the pending

27       motion to compel has been mooted by that production.  Jt. Status.  The court enters the following

28       order on the motion.

United States District Court
Northern District of California

I.     **BACKGROUND**

   A.     **Facts Relevant to Wisk's Motion to Compel**

   In this action, Wisk asserts claims for misappropriation of trade secrets and patent infringement related to the development of electronic vertical takeoff and landing ("eVTOL") aircraft against its competitor, Archer.  [*See* Docket No. 133 (Aug. 24, 2021 Order on Prelim. Inj.) 1.]  Wisk has been developing eVTOL vehicles for over ten years.  [Docket No. 148 (Second Amended Complaint, SAC) ¶ 2.]

   Archer was founded in 2018.  In 2019 and 2020, Archer hired ten engineers from Wisk, including Wisk's VP of engineering and chief engineer.  Order on Prelim. Inj. 4-5; SAC ¶ 6.  In February 2021, Archer announced that it would release its own eVTOL aircraft.  SAC ¶ 4.  Wisk alleges that the design Archer released for its aircraft appears to be a copy of a design Wisk had developed and that the design infringes several patents issued to Wisk.  *Id*. at ¶¶ 4, 5, 83.  Wisk contends that the resemblance between the designs "could not have been a coincidence" given Archer's "targeted recruiting" of Wisk's engineers.  *Id*. at ¶ 6.

   Following the departure of its engineers to work for Archer, Wisk hired a third party to conduct a forensic investigation.  The investigation allegedly showed that one of the engineers, Jing Xue, "surreptitiously downloaded thousands of files" shortly before announcing his departure from Wisk for Archer.  According to Wisk, the files contain "immensely valuable trade secrets and confidential information about Wisk's aircraft development."  *Id*. at ¶¶ 6, 61, 63-66, 70; Order on Prelim. Inj. 9.  Wisk turned over the information it learned about Xue's actions "to local prosecutors, raising the issue of trade secret theft, who turned it over to the federal government."  In March 2021, the FBI seized Xue's personal devices and laptop pursuant to a search warrant.  Order on Prelim. Inj. 9-10.

   Archer learned of a criminal investigation into one of its employees in late March 2021 and received a grand jury subpoena from the United States Attorney for the Northern District of California on March 30, 2021.  [Docket Nos. 426-10 (Goldstein Decl. Mar. 2, 2023) ¶ 6; 426-11 (Spellacy Decl. Mar. 2, 2023) ¶ 5; 415-1 (LaFond Decl. Feb. 16, 2023) ¶ 8, Ex. 6 (subpoena).]  Wisk filed this lawsuit against Archer on April 6, 2021 alleging theft of its intellectual property.

1    The following day, Archer's counsel retained forensic expert Brett Harrison of FTI Consulting

2    ("FTI") "to conduct a forensic inspection to search for Wisk's trade secrets or confidential

3    information on Archer's systems."  Goldstein Decl. ¶ 9.  At the time, Archer was in the process of

4    merging with Atlas Crest Investment Corporation ("Atlas Crest"), discussed further below.  *Id*. at

5    ¶¶ 3-9; Spellacy Decl. ¶¶ 3-6.

6         Wisk filed a motion for a preliminary injunction on May 19, 2021.  In support of its

7    opposition to the motion, Archer submitted an 18-page declaration by Harrison in which he stated

8    that FTI had conducted an "investigation of Archer systems" and found no documents "on

9    Archer's network or contained on an Archer device" that was "included in the purported trade

10   secrets identified by Wisk" or otherwise "reflect[ed] any sensitive proprietary information from

11   Wisk."  [Docket No. 58-24 (Harrison Decl. June 23, 2021) ¶¶ 2, 4.]  In addition to describing the

12   sources on Archer's network that FTI searched, Harrison stated that FTI also analyzed "Archer

13   work devices" used by various Archer employees, including "fifteen Archer employees who

14   joined the company directly from Wisk."  *Id*. at ¶¶ 10, 11.

15        Harrison's June 2021 declaration omits the fact that FTI also examined certain personal

16   devices belonging to three Archer employees.  In a declaration submitted in connection with the

17   instant motion, Harrison states that "[i]n late Spring 2021, with consent from three Archer

18   employees' separate, personal counsel, a team of FTI consultants . . . ran a limited file name

19   search for operating system artifacts on certain of those employees' personal devices."  [Docket

20   No. 426-12 (2d Harrison Decl. Mar. 2, 2023) ¶ 3.]  Neither Harrison nor Archer describe the

21   results of that search, although Archer references "former Wisk employees' inadvertent retention

22   of Wisk material on personal devices," suggesting that FTI found Wisk's information on the

23   personal devices it searched.  Opp'n 2.

24        In June 2022, Archer produced redacted versions of the two documents at issue in this

25   motion: 1) a 14-page document titled "Status Report Prepared by FTI Consulting, Archer Aviation

26   Forensic Analysis" (the "FTI Investigation Presentation"), dated June 2, 2021; and 2) meeting

27   minutes of Atlas Crest's Board of Directors, including meeting minutes from May 27, 2021 and

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    June 2, 2021 "that reflect discussions relating to the FTI investigation."[1]  Dore Decl. ¶ 9; LaFond

2    Decl. ¶¶ 3, 4, Exs. 1 (FTI Investigation Presentation), 2 (board meeting minutes).  Archer served a

3    privilege log for these documents on July 16, 2022 in which it asserted the work product doctrine

4    and common interest over the redacted portions of the FTI Investigation Presentation.  The

5    redacted portion of the FTI Investigation Presentation pertains to FTI's analysis of the personal

6    devices of the three Archer employees who are former Wisk employees.  [*See* Docket No. 463

7    (Mar. 23, 2023 Hr'g Tr.) 5-6.]  With respect to the redacted portions of the board meeting minutes,

8    Archer asserted the attorney-client privilege, work product doctrine, and common interest.  Dore

9    Decl. ¶ 9; LaFond Decl. ¶ 5, Ex. 3 (Privilege Log).

10        Wisk contends that it did not know that FTI had examined any personal devices of Archer

11   employees until Archer's production of these two documents.  Mot. 5.

12        The parties filed a joint discovery letter in January 2023 in which Wisk moved to compel

13   production of documents related to FTI's investigation and supplementation of previous discovery

14   responses related to the FTI report.  [Docket No. 396.]  The court granted Wisk leave to file a

15   regularly noticed motion to compel regarding the withheld documents.  [Docket No. 398.]  Wisk

16   then filed the instant motion to compel unredacted versions of the documents, arguing that Archer

17   has not established that the redacted portions are protected by the attorney-client privilege or work

18   product doctrine.  Wisk asserts that even if privilege attaches to the redacted portions, Archer has

19   broadly waived any privilege or protection over them as well as "any other documents or

20   communications related to the subject matter" in three ways by: 1) selectively disclosing part of

21   FTI's investigation in this litigation; 2) disclosing the documents to Atlas Crest, a third party; and

22   3) asserting a defense based on Harrison's investigation.  Mot. 7-9.  Wisk also requests

23   supplementation of Archer's "responses to discovery requests that seek information on devices

24   _____

25   [1] Wisk attached a 30-page compendium of minutes from several Atlas Crest board meetings to its
     motion.  LaFond Decl. Ex. 2.  Archer's counsel states that "[t]he only meeting minutes in that
26   compendium that reflect discussions relating to the FTI investigation are the meeting minutes from
     May 27, 2021 and June 2, 2021."  Dore Decl. ¶ 17.  He states that "the bulk of privilege and work
27   product redactions on that document do not relate to the subject of Wisk's motion."  *Id.*  Wisk did
     not respond to this assertion on reply.  At the hearing, Archer confirmed which portions of the
28   May 27, 2021 and June 2, 2021 minutes are at issue, which Wisk does not dispute.  Hr'g Tr. 2-4.

1    that Archer had sufficient control over for Mr. Harrison to investigate," including four

2    interrogatories and six RFPs.  *Id*. at 10.

3        **B.    Events Following the March 2023 Hearing on the Motion to Compel**

4        In the April 13, 2023 joint status report, Archer explains that it has withdrawn its claims of

5    attorney-client privilege and work product doctrine over the FTI Investigation Presentation and

6    board meeting minutes and has produced unredacted versions to Wisk.  Jt. Status 2.  Archer also

7    1) produced all forensic artifact reports that Harrison "considered in rendering his opinion about

8    historical file activity on personal devices"; 2) disclosed the process by which Harrison "received

9    and evaluated forensic artifact reports related to certain Archer employees' personal devices to

10   render the opinion he shared with Archer and the Atlas Crest board on June 2, 2021"; 3) produced

11   four forensic artifact reports that should have been provided to Harrison in connection with his

12   Spring 2021 analysis but inadvertently were not; and 4) offered to make Harrison available for a

13   one-hour remote deposition regarding the process described above.  *Id*. at 2-3.[2]  Archer contends

14   that "the pending motion has been mooted by its recent production of documents" and its offer to

15   make Harrison available for a one-hour deposition.  *Id*. at 2.

16       Wisk refused Archer's offer and made the following proposal to resolve the motion

17   without court intervention: 1) make Harrison available for an additional day of deposition; 2)

18   produce all remaining forensic artifact reports generated by FTI; and 3) produce (or identify if

19   already produced) documents and communications that Harrison "considered during the course of

20   his investigation, relied on or considered in preparing his declaration, and factual information

21   provided to him by Archer's counsel."  *Id*. at 1-2.

22        Additionally, Wisk explains that since the hearing, counsel for former Wisk employee

23   Diederik Marius "began to make rolling productions of Wisk documents and files from . . .

24   Marius's personal devices" and has produced "more than 150 such files."  *Id*. at 1.  Wisk asserts

25   that these materials "were responsive to prior requests and should have been produced during the

26

27   ───────────────

28   [2] At the hearing, Archer's counsel explained that "artifact analysis" refers to the use of forensic tools to determine whether there was "anything that was [on devices] before and it's not there now."  Tr. 14.

1    course of fact discovery, including Wisk's source code." *Id*.  It asks Wisk to produce Marius for

2    an additional four hours of deposition.  *Id*.  Archer offers to make Marius available for a one-hour

3    deposition.  *Id*. at 3.

4         Because Archer has withdrawn its privilege and work product claims over the FTI

5    Investigation Presentation and board meeting minutes, the remaining dispute is whether any

6    waiver of the attorney-client privilege and/or work product protection over the documents

7    occurred, and if so, the scope of the waiver.  *See* Jt. Status 2.  Wisk now asks the court to resolve

8    this dispute.  *Id*. at 1.

9    **II.    LEGAL STANDARDS**

10        This court exercises federal question jurisdiction over Wisk's claims under the Defend

11   Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., and patent law claims pursuant to 28 U.S.C. § 1331,

12   and supplemental jurisdiction over Wisk's pendent state law claims.  "Where there are federal

13   question claims and pendent state law claims present, the federal law of privilege applies." *Agster*

14   *v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed. R. Evid. 501, Advisory

15   Committee Notes ("In nondiversity jurisdiction civil cases, federal privilege law will generally

16   apply.").

17        The attorney-client privilege protects from discovery "confidential communications

18   between attorneys and clients, which are made for the purpose of giving legal advice." *United*

19   *States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted).  The Ninth Circuit describes

20   the elements of the privilege as follows: where "(1) legal advice of any kind is sought (2) from a

21   professional legal adviser in his capacity as such, (3) the communications relating to that purpose,

22   (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

23   disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id*. (cleaned

24   up).  The privilege is "narrowly and strictly construed," *United States v. Gray*, 876 F.2d 1411,

25   1415 (9th Cir. 1989) (citation omitted), and the party asserting it bears the burden of proving that

26   it applies.  *Richey*, 632 F.3d at 566; *accord In re Grand Jury Investigation*, 974 F.2d at 1071

27   (party asserting privilege "must make a *prima facie* showing" that privilege protects information

28   the party intends to withhold).  The privilege protects only communications, and not underlying

United States District Court
Northern District of California

6

1    facts.  *Upjohn v. United States*, 449 U.S. 383, 396 (1981) (finding that a party "may not refuse to

2    disclose any relevant fact within his knowledge merely because he incorporated a statement of

3    such fact into his communication to his attorney") (citations omitted).

4         "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

5    'from discovery documents and tangible things prepared by a party or his representative in

6    anticipation of litigation.'"  *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d

7    900, 906 (9th Cir. 2004) (quoting *Admiral Ins. Co. v. United States District Court,* 881 F.2d 1486,

8    1494 (9th Cir. 1989)).  It aims to balance the "promotion of an attorney's preparation in

9    representing a client" and "society's general interest in revealing all true and material facts to the

10   resolution of a dispute."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation

11   and quotation marks omitted).  To qualify for work-product protection, materials must "(1) be

12   prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or

13   for that other party's representative."  *Richey*, 632 F.3d at 567 (citation and quotation marks

14   omitted).

15        The common interest doctrine, also known as the joint defense doctrine or privilege, "is a

16   doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared

17   only with those with a common legal interest."  *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-

18   00939-WHA (JSC), 2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017).  The common interest

19   doctrine is not an independent privilege; rather, as an "exception[ ] to the rule on waiver . . . it

20   comes into play only if the communication at issue is privileged in the first instance."  *Nidec Corp.*

21   *v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  The common interest doctrine

22   applies where (1) a communication is made by separate parties in the course of a matter of

23   common legal interest; (2) the communication is designed to further that effort; and (3) the

24   privilege has not been waived.  *Id.* (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D.

25   Cal. 2003)).  The common interest doctrine is not limited to parties to litigation, but can extend to

26   "interested third parties who have a community of interests with respect to the subject matter of

27   the communications," and "is applicable whenever parties with common interests join[ ] forces for

28   the purpose of obtaining more effective legal assistance."  *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

## III.   DISCUSSION

Archer originally claimed that the redacted materials in the FTI Investigation Presentation and the board meeting minutes were shielded by the work product doctrine and that the board meeting minutes also contained attorney-client privileged communications, and that no waiver of these protections occurred.  *See* Privilege Log.[3]  Archer has since withdrawn its claims of privilege or protection but maintains that no waiver occurred.  In the alternative, it argues that the court should find only a limited waiver.

Wisk asks the court to find that Archer's conduct with respect to the disputed materials effected a broad subject matter waiver.

Given important distinctions between waiver of attorney-client privileged communications and waiver of attorney work product, *see United States v. Sanmina Corp.*, 968 F.3d 1107, 1119-20 (9th Cir. 2020) (discussing differences between the two), the court first addresses the attorney-client privilege and then turns to the work product doctrine.

### A.   Attorney-Client Privilege

The board meeting minutes for the May 27, 2021 and June 2, 2021 meetings each contain several redacted portions.  The court concludes that Archer did not satisfy its burden of establishing that the attorney-client privilege applies to these materials.  Although it appears that attorneys and individuals associated with law firms were in attendance at the May 27, 2021 and June 2, 2021 meetings, Archer did not address the board meeting minutes in any detail.  The attorney-client privilege protects only communications, not underlying facts, *Upjohn*, 449 U.S. at 396, and the fact "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged."  *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996).  Rather, in order for the privilege to apply, "the communication must be between the client and lawyer for the purpose of obtaining legal advice."  *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002); *see also Richey*, 632 F.3d at 566 n.3 ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining *legal* advice *from the lawyer*." (emphasis in

---

[3] Archer appeared to take the position in its opposition that the attorney-client privilege also applies to the redactions in the FTI Investigation Presentation, *see* Opp'n 6, but Archer did not claim the privilege in its privilege log as to that document.  *See* Privilege Log.

United States District Court
Northern District of California

1    original; quotation and citation omitted)).

2           In this case, although Michael Spellacy, the former CEO and Board Member of Atlas Crest

3    and current Archer Board Member, is listed in the minutes as attending both meetings, his

4    declaration does not describe the meetings, the subjects discussed, or whether and how the

5    redacted portions of the minutes reflect communications made "for the purpose of obtaining legal

6    advice."  *See generally* Spellacy Decl.  Nor did Archer submit any attorney declarations

7    supporting its claim of attorney-client privilege, even though the court ordered the parties to file

8    "evidentiary support for their positions in the form of" sworn declarations.  [*See* Docket No. 398.]

9    As this court has previously observed, "attorney declarations generally are necessary to support

10   the designating party's position in a dispute about attorney-client privilege."  *Dolby Lab'ys*

11   *Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 865-66 (N.D. Cal. 2019) (citing, e.g., *Datel*

12   *Holdings Ltd. v. Microsoft Corp.*, No. 09-cv-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar.

13   11, 2011); *Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-03561-WHA (DMR), 2011 WL 3794892,

14   at *3 (N.D. Cal. Aug. 26, 2011)).  In the absence of any evidence supporting the individual

15   elements of the attorney-client privilege as to the board meeting minutes for the May 27, 2021 and

16   June 2, 2021 meetings, the court concludes that Archer has failed to meet its burden to establish

17   that the privilege applies.  Accordingly, it does not reach the issue of whether any waiver of the

18   attorney-client privilege occurred.

19          **B.      Work Product Doctrine**

20                  **1.      Applicability of the Work Product Doctrine**

21          The work product doctrine protects "documents and tangible things that are prepared in

22   anticipation of litigation" by a party or their representative.  *In re Grand Jury Subpoena*, 357 F.3d

23   at 906.  It extends to documents prepared by a party's "attorney, consultant, surety, indemnitor,

24   insurer, or agent."  *See* Fed. R. Civ. P. 26(b)(3)(A).

25          Wisk disputes that the materials in question were prepared in anticipation of litigation.  It

26   argues that Archer hired FTI to conduct a forensic investigation and then disclosed the results of

27   that investigation to Atlas Crest in an effort "[t]o convince Atlas Crest not to back out" of the

28   proposed merger in light of Wisk's lawsuit and the federal criminal investigation.  Mot. 4.

United States District Court
Northern District of California

In response, Archer submits evidence that it claims demonstrates that Archer hired FTI to perform a forensic investigation for several reasons, including to respond to and defend against Wisk's lawsuit and in anticipation of ████████████████████. Archer explains that in late 2020 it began exploring a merger with a special purpose acquisition company ("SPAC") to raise capital. It entered into discussions with Atlas Crest about a merger in December 2020. Goldstein Decl. ¶¶ 2, 3; Spellacy Decl. ¶ 3. On February 10, 2021, Archer and Atlas Crest executed a "business combination agreement in which the parties agreed to merge into one legal entity, finalized the related transaction documents, and publicly announced" their agreement. Goldstein Decl. ¶ 4; Spellacy Decl. ¶ 3; Dore Decl. ¶ 3, Ex. 1. In a March 8, 2021 filing with the United States Securities and Exchange Commission ("SEC"), Atlas Crest set forth the recommendation of its Board of Directors "that the Business Combination Agreement and the transactions contemplated thereby, including the Merger, were advisable and in the best interests of, Atlas and its stockholders," and that the Board of Directors "unanimously recommends that its stockholders vote 'FOR' the Business Combination Proposal" and related proposals. LaFond Decl. ¶ 9, Ex. 7 at 62. The deadline for approval of the proposal was October 31, 2022. *Id*. The filing also explained that the Board of Directors could make a change in recommendation at any time before approval if it "concluded in good faith, after consultation with its outside legal advisors and financial advisors, that the failure to" change the recommendation "would be a breach of its fiduciary duties under applicable law," subject to certain conditions. *Id*. at 77-78.

In the months following the announcement, Archer and Atlas Crest "worked closely to evaluate and address legal issues including required disclosures under the securities laws" such as Atlas Crest's Form S-4 registration statement. Goldstein Decl. ¶ 5; Spellacy Decl. ¶ 4.

Archer informed Atlas Crest about the grand jury subpoena it received on March 30, 2021. According to Archer's CEO, Adam Goldstein, "both parties worked with legal counsel to make sure they complied with potentially applicable disclosure requirements under the law." Goldstein Decl. ¶ 6; Spellacy Decl. ¶ 5. Wisk filed this lawsuit against Archer on April 6, 2021. The same day, Wisk posted a blog post titled, "Why We're Taking Legal Action Against Archer Aviation" in which it asserted that Archer had "been using Wisk's proprietary intellectual property" without

10

permission.  Goldstein Decl. ¶ 7; Spellacy Decl. ¶ 5.  According to Goldstein and Spellacy, Archer and Atlas Crest immediately began working with their "legal advisors" to evaluate the claims, defend against the lawsuit, and satisfy any legal disclosure requirements and restrictions regarding these matters, including the federal criminal investigation.  Goldstein Decl. ¶ 8; Spellacy ¶¶ 5, 6.  Spellacy states, "Atlas Crest had executed a business combination agreement with Archer and collectively with Archer sought to satisfy any legal disclosure requirements and restrictions concerning these matters," and that the two entities "also had a shared goal in ensuring that the Archer entity was best positioned to defend against Wisk's legal claims and assertions."  Spellacy Decl. ¶ 5.[4]

    According to Goldstein and Spellacy, following the news of the federal criminal investigation as well as Wisk's lawsuit and blog post, Atlas Crest and Archer also worked together with their legal advisors to evaluate and strategize ███████████████████████████ ██████████████████████████.  Goldstein Decl. ¶ 8; Spellacy Decl. ¶ 6.  Spellacy testified that Wisk's allegations about Archer "████████████████████████████████████ ███████."  Dore Decl. ¶ 4, Ex. 2 (Spellacy Dep.) 38.  According to Spellacy, Atlas Crest and Archer heard from ███████████████████████████████████████████████████ ███████████████████████████████████████████ ████████ *Id.* at 39, 50, 65.  Goldstein testified that ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████."  Dore Decl. ¶ 5, Ex. 3 (Goldstein Dep.) 385.  According to Goldstein, "██████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████.  *Id.* at 386-87.

    Goldstein and Spellacy state that in order to defend Archer against Wisk's lawsuit and

---

[4] In an April 6, 2021 SEC filing, Atlas Crest disclosed the existence of Wisk's lawsuit against Archer and that Archer had "placed an employee on paid administrative leave in connection with a government investigation and a search warrant issued to the employee."  LaFond Decl. ¶ 9, Ex. 7.

United States District Court
Northern District of California

1    ███████████████████, Archer's outside counsel hired FTI Consulting to conduct a forensic

2    inspection to search Archer's systems for Wisk's trade secrets or confidential information and that

3    "Atlas Crest and Archer worked collaboratively with respect to this effort."  Goldstein Decl. ¶ 9;

4    Spellacy Decl. ¶ 6.  Goldstein testified that the parties "felt that we needed to do a very deep,

5    expansive investigation" with FTI Consulting and that they "████████████████████

6    ████████████████████████."  Goldstein Dep. 457-58, 509.  Atlas

7    Crest and Archer eventually began discussing amending certain terms of the business combination

8    agreement and executed an amendment on July 29, 2021.  Goldstein Decl. ¶ 10; Spellacy Decl. ¶¶

9    7, 8.  As part of the amendment, "Archer took a drastic valuation cut" and the parties "cut the price

10   of the deal by a billion dollars."  Goldstein Dep. 387, 458.  The "business combination" of Archer

11   and Atlas Crest eventually closed on September 16, 2021.  Goldstein Decl. ¶ 11; Spellacy Decl. ¶

12   9.

13        Based on this evidence, the court concludes that the FTI Investigation Presentation was

14   prepared by Archer's agent, FTI, to defend against Wisk's lawsuit alleging misappropriation of

15   trade secrets and ████████████████████████████████

16   ██████████████.  Accordingly, the FTI Investigation Presentation and board meeting minutes

17   reflecting discussions of FTI's investigation are protected by the work product doctrine.

18        The court next turns to whether any waiver of the work product doctrine occurred.

19                   **2.    Waiver**

20        Wisk argues that Archer waived work product protection over the documents by

21   selectively disclosing part of FTI's investigation in this litigation.  Wisk notes that during the

22   preliminary injunction briefing, Archer revealed protected portions of FTI's investigation that

23   were helpful to Archer—i.e., that FTI found no Wisk files on Archer's systems—while

24   maintaining as protected other portions of the same investigation, including FTI's examination of

25   three Archer employees' personal devices.  Mot. 8-9; *see* 2d Harrison Decl. ¶ 3.  Wisk argues that

26   this is a "quintessential waiver."  Mot. 9.

27        Voluntary disclosure of work product to an adversary in litigation waives work product

28   protection.  *Sanmina*, 968 F.3d at 1120-21.  As discussed above, in opposing Wisk's motion for a

preliminary injunction, Archer filed a declaration by Harrison in which he described in detail FTI's "investigation of Archer systems" to "determine whether any of the 851 files that Wisk identified as trade secrets were on any Archer devices." Harrison stated that he did not find "any document on Archer's network or contained on any Archer device that reflects any sensitive proprietary information from Wisk." Harrison Decl. ¶¶ 2, 4, 36-37, 44. Harrison described the sources on Archer's network that FTI searched and explained that FTI also analyzed "Archer work devices" used by various Archer employees," including former Wisk employees. *Id.* at ¶¶ 10, 11. The unredacted portions of the FTI Investigation Presentation contain a summary of some of the information in Harrison's declaration, including the sources analyzed. *See* FTI Investigation Presentation at ECF pp. 7-10.

Archer does not distinguish between the information about FTI's investigation that it voluntarily disclosed to Wisk in this litigation and the information about personal devices that it originally redacted and withheld for purposes of the work product doctrine. Put another way, Archer does not take the position that certain parts of FTI's investigation constituted work product while other aspects of the investigation did not. Archer also conceded at the hearing that FTI analyzed the personal devices as part of "a single scope of work agreement" at "around the same time" it analyzed the Archer systems and work devices. Hr'g Tr. 6. Accordingly, the court concludes that Archer waived work product protection over the information about FTI's investigation that it voluntarily disclosed in litigation. It now turns to whether Archer's waiver with respect to the voluntarily-disclosed information extends to the portions of FTI's investigation that it originally withheld as protected.

Federal Rule of Evidence 502 applies "to disclosure of a communication or information covered by the attorney-client privilege or work-product protection" and sets forth limitations on waiver resulting from such disclosure. Rule 502(a) governs disclosure of protected material in federal proceedings. It states:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

13

1                 (1) the waiver is intentional;

2                 (2) the disclosed and undisclosed communications or information
concern the same subject matter; and

3                 (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).  "[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information is order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 (Advisory Committee Notes).  "The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012) (citation omitted).

As discussed above, Archer filed a declaration by Harrison in support of its opposition to Wisk's motion for a preliminary injunction in which he described FTI's investigation and analysis of Archer's systems and produced in discovery the FTI Investigation Presentation summarizing some of the information in Harrison's declaration.  The waiver of work product protection was thus intentional, satisfying Rule 502(a)(1).  *See Sanmina*, 968 F.3d at 1121 (voluntary disclosure of work product to an adversary waives work product protection for that material).  Rule 502(a)(2) is also satisfied because the disclosed and undisclosed information relate to the same subject: FTI's investigation into whether Archer's network and devices used by Archer employees contained Wisk's material.

Rule 502(a)(3) requires that the disclosed and undisclosed information "ought in fairness to be considered together."  It would be unfair to allow Archer to continue to use its selective disclosures of favorable information from FTI's investigation into Archer's systems while withholding potentially unfavorable information about its investigation of Archer employees' personal devices.  Accordingly, Rule 502(a)(3) is also satisfied.  Archer's waiver of work product

United States District Court
Northern District of California

protection extends to the portions of FTI's investigation that it originally withheld as protected.[5]

As discussed above, Archer turned over the unredacted FTI Investigation Presentation and board meeting minutes following the hearing on Wisk's motion to compel.  The parties dispute whether Archer's waiver extends to the subject matter encompassed in these documents.

"[A] litigant can waive work-product protection to the extent that he reveals or places the work product at issue during the course of litigation," *Sanmina*, 968 F.3d at 1119, but "courts differentiate between a waiver of factual work product and a waiver of opinion work product." *Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 516 (N.D. Cal. 2021) (discussing *Sanmina*, 968 F.3d at 1124-25).  *See also Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2017 WL 5078436, at *1, 2 n.5 (N.D. Cal. Nov. 6, 2017) (noting Federal Circuit authority that "work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege.  Instead, work-product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product'" and observing that "it is not apparent that the outcome" of the parties' dispute "would differ under Ninth Circuit law" (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006)).  Opinion work product, which is work product that reveals counsel's "mental impressions, conclusions, opinions, or legal theories," *see* Fed. R. Civ. P. 26(b)(3)(B), "is discoverable only when mental impressions are at issue in a case and the need for the material is compelling."  *Sanmina*, 968 F.3d at 1125 (quotation marks and citations omitted).

In this case, nothing in the record indicates that Archer disclosed opinion work product and Wisk has not shown a "compelling" need for such material.  *See Resilient Floor Covering Pension Fund v. Michael's Floor Covering*, No. C11-5200 JSC, 2012 WL 3062294, at *7 (N.D. Cal. July 26, 2012) (observing that "[u]nless a party affirmatively places attorney opinions at issue . . . or engages in selective disclosure, disclosure of additional opinion work product is not likely justified" and that "courts limit waiver of work product protection to maintain the adversary

---

[5] Because the court finds that Archer's selective disclosure of portions of FTI's investigation waived work product protection, it need not reach Wisk's other arguments on waiver, including whether Archer's disclosure of the information to Atlas Crest waived any protection and/or whether the common interest doctrine applies.

1   system.").  Accordingly, Archer's waiver extends to "factual" work product concerning the same

2   subject matter as the disclosed work product—FTI's investigation—but does not extend to opinion

3   work product.

4           Having considered the parties' competing proposals regarding the scope of Archer's

5   waiver, the court orders the following: Archer shall make Harrison available for an additional four

6   hours of remote deposition testimony regarding FTI's investigation and shall produce all forensic

7   artifact reports generated by FTI in the course of its investigation.  Archer shall also produce all

8   documents and communications that Harrison 1) considered during the course of FTI's

9   investigation, and 2) relied on or considered in preparing his declaration, including documents and

10  communications that were provided to him by Archer's counsel, to the extent that these materials

11  have not previously been produced.  Archer need not include opinion work product in its

12  production and may redact information that reveals counsel's "mental impressions, conclusions,

13  opinions, or legal theories."

14          Archer shall also make Marius available for an additional one hour of deposition

15  testimony, consistent with its proposal.  The court denies without prejudice Wisk's motion for an

16  additional four hours of deposition of Marius, as it has not shown that the additional time is

17  warranted as a result of Archer's waiver of work product, which is the subject of this motion.

18          The parties shall complete this discovery forthwith.

19  **IV.    CONCLUSION**

20          For the foregoing reasons, Wisk's motion to compel is granted in part and denied in part.

21

22          **IT IS SO ORDERED.**

23  Dated: June 14, 2023

24

25                                                              Donna M. Ryu
                                                                Chief Magistrate Judge
26                                                              Judge Donna M. Ryu

27

28

