QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
 yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
 robertschwartz@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
 dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
 patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Michael F. LaFond (Bar No. 303131)
 michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:      (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>ARCHER AVIATION INC.,<br><br>    Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**PLAINTIFF WISK AERO LLC'S MOTIONS *IN LIMINE*** |

**NOTICE OF MOTIONS AND MOTIONS**

TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that at 2:00 p.m. on July 17, 2023, or as soon thereafter as the matter may be heard in the courtroom of the Honorable William H. Orrick, in Courtroom 2 of the above-titled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Wisk Aero LLC will move for orders excluding the following matters from trial:

1. Evidence or argument that a $1 billion drop in Archer's enterprise value constitutes Archer's damages or that Wisk harmed Archer's ability to recruit or retain employees;

2. Evidence or argument that Wisk was contractually barred from pursuing an eVTOL aircraft design with tiltable rotors or wrongfully filed for a patent on that topic;

3. Evidence or argument that government authorities declined to pursue criminal charges against Archer or its current or past employees;

4. Evidence or argument regarding Wisk's assertions of attorney client and/or work product privilege during discovery, the Court's order denying Wisk's motion for a preliminary injunction, and similar, irrelevant topics that may prejudice the jury;

5. Evidence or argument that Wisk's attorneys drafted the precise wording of the asserted trade secrets, or that Wisk's employees did not refer to information as "trade secrets" in the ordinary course of business; and

6. Evidence or argument inconsistent with the Court's claim constructions.

These motions are based on this Notice of Motions and Motions; the attached Memorandum of Points and Authorities; the Declaration of Christopher Lindsay; the arguments of counsel; and all other material that may properly come before the Court or before the hearing on these Motions.

| | | |
|---|---|---|
| 1 | Dated: July 3, 2023 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By:   /s/ Patrick Schmidt |
| | |      Yury Kapgan |
| 5 | |      Robert M. Schwartz |
| 6 | |      Diane Cafferata |
| | |      Patrick Schmidt |
| 7 | |      Michael F. LaFond |
| 8 | | *Attorneys for Plaintiff Wisk Aero LLC* |

**TABLE OF CONTENTS**

**Page**

MIL #1: To Exclude Evidence Or Argument That A $1 Billion Drop In Archer's Enterprise Value Constitutes Archer's Damages Or That Wisk Harmed Archer's Ability To Recruit Or Retain Employees. ..............................................................................1

MIL #2: To Exclude Evidence Or Argument That Wisk Was Contractually Barred From Pursuing An Evtol Aircraft Design With Tiltable Rotors Or Wrongfully Filed For A Patent On That Topic. ................................................................................................2

MIL #3: To Exclude Evidence Or Argument That Government Authorities Declined To Pursue Criminal Charges Against Archer Or Its Current Or Past Employees. .......................4

MIL #4: To Exclude Evidence Or Argument Regarding Wisk's Assertions Of Attorney Client And/Or Work Product Privilege During Discovery, The Court's Order Denying Wisk's Motion For A Preliminary Injunction, And The Court's Non-Claim-Construction Rulings. ..............................................................................................5

MIL #5: To Exclude Evidence Or Argument That Wisk's Employees Did Not Refer To Information As "Trade Secrets" In The Ordinary Course Of Business. ..............................8

MIL #6: To Exclude Evidence Or Argument Inconsistent With The Court's Claim Constructions. ......................................................................................................................9

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976) ................................................................................................ 6

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .................................................................................... 4

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
    2018 WL 1569703 (N.D. Cal. Mar. 30, 2018) ........................................................ 8

*Cordis Corp. v. Boston Scientific Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009) .............................................................................. 11

*Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*,
    2015 WL 5569095 (N.D. Cal. Sept. 22, 2015) ........................................................ 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) .............................................................................. 11

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
    2014 WL 4272771 (N.D. Cal. Aug. 28, 2014) ........................................................ 7

*Fujifilm Corp. v. Motorola Mobility LLC*,
    2015 WL 12622055 (N.D. Cal. Mar. 19, 2015) ...................................................... 7

*Gilbert v. King*,
    2018 WL 1050161 (N.D. Cal. Feb. 26, 2018) ......................................................... 5

*Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*,
    600 F. Supp. 3d 1082 (N.D. Cal. 2021) ................................................................... 4

*Illumina, Inc. v. BGI Genomics Co., Ltd*,
    2021 WL 4979799 (N.D. Cal. Oct. 27, 2021) ......................................................... 7

*Karimi v. Golden Gate Sch. of L.*,
    361 F. Supp. 3d 956 (N.D. Cal. 2019) ..................................................................... 4

*Kassim v. City of Schenectady*,
    415 F.3d 246 (2d Cir. 2005) ..................................................................................... 1

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) ........................................................................... 6, 7

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ............................................................................................... 10

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
    2012 WL 2339762 (N.D. Cal. June 7, 2012) .................................................................. 8

*Moseley v. V Secret Catalogue, Inc.*,
    37 U.S. 418 (2003) ......................................................................................................... 6

*Nabisco, Inc. v. PF Brands, Inc.*,
    191 F.3d 208 (2d Cir. 1999) ....................................................................................... 6, 7

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    2013 WL 6535164 (C.D. Cal. Dec. 9, 2013) ................................................................. 4

*Newmark Realty Cap., Inc. v. BGC Partners, Inc.*,
    2018 WL 6439133 (N.D. Cal. Dec. 7, 2018) ................................................................. 7

*Oracle Corp. v. SAP AG*,
    734 F. Supp. 2d 956 (N.D. Cal. 2010) ........................................................................... 1

*Parker v. Prudential Ins. Co. of Am.*,
    900 F.2d 772 (4th Cir. 1990) ...................................................................................... 6, 7

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000) .................................................................................... 6, 7

*Smith v. BNSF Ry. Co.*,
    2020 WL 2297798 (E.D. Wash. Feb. 21, 2020) ............................................................ 1

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015) ................................................................................................... 10

*United States v. Solano-Godines*,
    120 F.3d 957 (9th Cir. 1997) ......................................................................................... 6

**Statutes**

18 U.S.C. § 1839(3) ............................................................................................................... 8

**Other Authorities**

Fed. R. Evid. 402 .................................................................................................. 1, 3, 5, 8, 9

Fed. R. Evid. 403 .............................................................................................. 1, 2, 3, 5, 8, 9

**MIL #1: To exclude evidence or argument that a $1 billion drop in Archer's enterprise value constitutes Archer's damages or that Wisk harmed Archer's ability to recruit or retain employees.[1]**

Archer has repeatedly claimed that its counterclaim damages could be equivalent to the decline in its enterprise value between its initial acquisition agreement (in February 2021) and the acquisition agreement it re-negotiated with its SPAC partner (in August 2021). Events that intervened during this time period included the filing of this litigation, Archer's announcement that it had received a grand jury subpoena, a pronounced decline in the market for SPACs, and the statements Wisk made that are at issue in Archer's counterclaims. *E.g.*, ECF 497 at 9. Under Federal Rules of Evidence 402 and 403, that decline—an outsized $1 billion—should not be presented to the jury.

*First*, each of Archer's witnesses testified that the drop in Archer's enterprise value caused no change to Archer's finances, which showed the same value of assets and liabilities, and income and expenses, before and after the revaluation. Ex. A (Spellacy Tr.) at 136:24–138:24; Ex. B (Adcock Tr.) at 144:24–145:14; Ex. C (Goldstein Tr.) at 520:8–521:6. That is because the imputed reduction in Archer's enterprise value did not affect *Archer* as an entity—it only affected Archer's pre-merger *shareholders*, who received fewer shares in the combined entity than they would have under the original deal. Ex. D (Milbourn Tr.) at 196:5–21. But Archer's shareholders are not parties to this action, and Archer cannot recover for their imputed losses. *See Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 968–69 (N.D. Cal. 2010) (barring damages based on "the rights of third parties—even affiliated entities"). Because Archer cannot recover for the losses sustained by non-parties, evidence or argument tending to show those losses is irrelevant. *See Kassim v. City of Schenectady*, 415 F.3d 246, 250 (2d Cir. 2005) (holding that the trial court had properly granted a motion *in limine* restricting the plaintiff's damages theories to those that were legally appropriate); *Smith v. BNSF Ry. Co.*, 2020 WL 2297798, at *4 (E.D. Wash. Feb. 21, 2020) (granting a motion *in limine* to exclude "evidence of damages sustained to nonparties").

---

[1] All citations to "Ex." refer to the exhibits to the declaration of Christopher Lindsay.

*Second*, given the lack of relevance, permitting Archer to trumpet a billion dollars in claimed losses before the jury would be unfairly prejudicial and risk juror confusion under Rule 403. That is, the jury should not be misled into thinking that it needs to measure any damages award to Archer against a billion dollar yardstick, when the only damages figure Archer has actually supported **as a harm to Archer** is $7.5 million in incremental financing costs it incurred when the merger vote was delayed, which this Court mentioned in its summary judgment ruling. *See* ECF 572 at 8–9.

Finally, this Court should exclude any evidence or argument regarding Archer's counterclaim contention that, as a result of Wisk's statements, "several recruitment prospects were no longer interested in joining Archer . . . including at least one prospective employee who had signed an employment contract to join Archer but then backed out," and that Archer "has already lost, and will continue to lose, talent as well as the funds, time, and effort expended to recruit these individuals." ECF 154 ¶ 63; *id*. ¶ 95 (Archer alleging that Wisk's statements caused it to "los[e] employees"); *see also id*. ¶¶ 48, 60, 66-68, 73-75, 77, 91, 97 (similar).

Archer has waived that form of damage. To resolve a discovery dispute regarding a Wisk document request seeking support for those allegations, Archer stipulated "that it will not seek any award of damages arising out of any alleged interference by Wisk with Archer's hiring of any employee or attempts to hire any potential employees." Ex. E. Archer amended its interrogatory responses regarding its counterclaims to remove references to lost prospective employees. Wisk requests an order *in limine* binding Archer to that position.

**MIL #2: To exclude evidence or argument that Wisk was contractually barred from pursuing an eVTOL aircraft design with tiltable rotors or wrongfully filed for a patent on that topic.**

Archer wants to argue that Wisk's January 2020 patent application, for an invention that is not at issue in this case, was fraudulent because Wisk supposedly did not have "corporate authority" to develop or claim patent rights in any aspect of a tilt-rotor aircraft. Archer bases that on language in Wisk's corporate formation document and a Wisk attorney's November 2020 statement raising the issue whether that document allowed Wisk to develop a tilt-rotor aircraft.

The Court should not permit Archer to sidetrack the trial to resolve this issue. Its argument is substantively wrong, not relevant to any claim or defense in this litigation, would confuse the jury, waste a substantial amount of time, and should be excluded under Rules 402 and 403.

***First***, it is not relevant. The patent application has not matured into a patent and is not being asserted in this case. Even if Wisk had no authority to invent technology for use in a tilt-rotor aircraft or file the patent application (it did—as explained below), that would make no difference to whether Archer stole Wisk's trade secrets or infringed the patents in suit, or whether Wisk committed defamation or improperly interfered with Archer's business. None of the claims the jury will be charged with deciding depend on Wisk's corporate authority to invent the technology or file the patent application. As a result, Archer's argument and any related evidence will only waste time and confuse the jury.

***Second***, the contract provision that Archer relies on does not preclude the development of a tilt-rotor aircraft. It states that Wisk would be in the business of developing "Cora Air Vehicles" which is defined as "an electric vertical takeoff and landing aircraft with independent lift and forward propulsion systems." ECF 307-6. There is no provision barring development of a tilt-rotor aircraft. Moreover, it is undisputed that Wisk is, in fact, developing the aircraft that Archer claims Wisk somehow has no right to develop, and that Wisk did not amend (nor need to amend) its corporate documents to do so. That conduct is the best evidence that Wisk's documents do not restrict its ability to engage in this development. Indeed, both Wisk's CEO and Kitty Hawk's CEO testified under oath that no such restriction existed in the agreement and that this provision was not intended to impose one. Ex. F (Thrun Tr.) at 220:7–16 ("Q. Are you aware on behalf of Kitty Hawk of any discussions with respect to In-Scope Business that would limit the business of Cora to something related to vehicles that have independent lift and forward propulsion systems? A. That was never the intent, and the intent was to contribute the Cora vehicle and its assets and IP and people and so on to this new LLC, but then empower the LLC to iterate and build the business."); Ex. G (Gysin Tr.) at 295:2–6 ("Q. Is it your position that the sixth-generation Wisk aircraft under development has independent lift and forward propulsion systems? A. Yes.").

Thus, Archer's attempt to manufacture a dispute about the meaning of a contract to which it is not a party is a sideshow that, again, can only serve to waste time and confuse the jury. *See Blackie v. Barrack,* 524 F.2d 891, 906 (9th Cir. 1975) (trial courts may "exercise discretion in the conduct of the trial, to prevent a time-consuming series of mini-trials."); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *1 (C.D. Cal. Dec. 9, 2013) ("Accordingly, even if this evidence did have some marginal relevance, "allowing [the parties] to introduce this evidence would result in a series of 'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the various states involved.").

**Third**, even if a provision in Wisk's corporate formation agreement barred the company from developing tilt-rotor aircraft, that is not probative of whether it was "improper" for Wisk to apply for a patent to protect its invention. There is no support for Archer's proposition that a corporate formation agreement that discusses the scope of a company's business somehow prevents that business from filing a patent application on an invention, no matter the field. The Court should likewise exclude any mention of the derivation proceeding that is currently before the Patent Trial and Appeal Board related to the January 2020 patent application. Raising these issues here—in the wrong forum—is not only unfairly prejudicial, but it also runs the risk of confusing the jury.

**MIL #3: To exclude evidence or argument that government authorities declined to pursue criminal charges against Archer or its current or past employees.**

To assess Archer's defamation counterclaim, the jury will need to hear about the grand jury subpoenas issued to Archer and its employees, which are central to the truth of Wisk's statement that there was a "criminal investigation into Archer relating to the theft and use of Wisk's intellectual property." *See* ECF 572 at 16–18 (this Court's summary-judgment order discussing the issue); *Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1097 (N.D. Cal. 2021) ("Substantial truth is a defense to defamation and trade libel claims.") (citing *Karimi v. Golden Gate Sch. of L.*, 361 F. Supp. 3d 956, 977 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020)).

However, the *results* of that investigation are irrelevant to whether Wisk's statement that the investigation *existed* is true. Therefore, permitting the jury to hear any evidence or argument about the results would be unfairly prejudicial and distract the jury from the actual issue it needs to decide. *See* Fed. R. Evid. 402, 403; *Gilbert v. King*, 2018 WL 1050161, at *1 (N.D. Cal. Feb. 26, 2018) (excluding "evidence or argument regarding a decision or recommendation not to prosecute" the defendants, but permitting the admission of evidence related to the underlying criminal investigation, and noting the court's intention to "instruct the jury that they are not to speculate about the outcome of the criminal investigation").

When Wisk made the statement, on May 19, 2021, the government had not decided whether to prosecute Archer or the ex-Wisk employees involved. Archer was not informed about that decision until January 28, 2022. *See* Ex. H (Archer's Response to Interrogatory No. 30). Evidence that, eight months after Wisk's statement, the United States Attorneys' Office declined to prosecute Archer or its employees for the theft of Wisk's intellectual property is not relevant to Wisk's state of mind in May 2021.

Moreover, if Archer is permitted to present evidence about the declination, the jury might draw the unfair and unwarranted conclusion that Wisk's affirmative claims lack merit, when the declination decision could have been based on the balance of any number of factors federal prosecutors assess in determining whether or not to seek an indictment, including the presence of a civil suit that concerns overlapping subject matter. *See* Justice Manual §§ 9-27.220–9-27.250 (and associated comments); *id*. § 9-27.250 (cmt.) (explaining that the pendency of related civil proceedings can be considered as an alternative to federal prosecution).

**MIL #4: To exclude evidence or argument regarding Wisk's assertions of attorney client and/or work product privilege during discovery, the Court's order denying Wisk's motion for a preliminary injunction, and the Court's non-Claim-Construction rulings.**

Wisk moves to exclude evidence and argument about two categories of irrelevant and prejudicial information: Wisk's assertions of attorney client and work product privilege during discovery, and the Court's prior rulings in this matter, including the Court's order denying Wisk's motion for a preliminary injunction. Ample authority supports excluding these topics at trial,

because neither has any relevance to claims or defenses asserted in the litigation, and because both will unfairly prejudice the jury. Despite that authority, Archer's proposed exhibit list and deposition designations make clear that Archer intends to raise both of these topics before the jury.

Wisk's assertions of attorney client privilege and work product protection during discovery have no relevance to the merits of this case. Two decades ago, the Federal Circuit joined its sister circuits in holding that "the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004); *see also Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) ("a client asserting the privilege should not face a negative inference about the substance of the information sought"); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999), *abrogated on unrelated grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003) ("the district court erred in drawing an adverse inference against Nabisco by reason of its invocation of the attorney-client privilege"); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (citing *Nabisco* with approval for the proposition that "no negative inference could be drawn from a party's assertion of the attorney-client privilege"). On the basis of these authorities, this district has granted a motion *in limine* to exclude references to the assertions of attorney client privilege and work product protection during discovery. *See Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 2015 WL 5569095, at *1 (N.D. Cal. Sept. 22, 2015) (granting motion *in limine* and holding that party "may not introduce evidence of an invocation of the attorney-client privilege to lead the jury towards an adverse inference of liability or willfulness").

Such an order is necessary here. Archer's deposition designations include **dozens** of Wisk's assertions of attorney client privilege and work product privilege. In most instances, Archer has not designated other testimony on the same topics—just Wisk's assertion of privilege. In other words, Archer wants to show the jury evidence of Wisk asserting privilege, and nothing more. This appears to be an attempt by Archer to "counter" Wisk's arguments about former Archer employee Jing Xue's assertion of the Fifth Amendment. They are not equivalent situations. An adverse inference is permitted when a party invokes the Fifth Amendment. *See, e.g., Baxter v.*

*Palmigiano*, 425 U.S. 308, 318 (1976); *United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify."). It is not permitted when a party invokes the attorney client privilege or work product doctrine. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH*, 383 F.3d at 1345; *Parker*, 900 F.2d at 775; *Nabisco*, 191 F.3d at 226; *Doe ex rel. Rudy-Glanzer*, 232 F.3d at 1265.

The Court should also exclude evidence or argument regarding the Court's prior rulings and orders in the case. This Court—and other courts in this District—regularly grant motions *in limine* to exclude evidence or argument about rulings from earlier phases of the litigation, with the sole exception of claim construction rulings necessary to present a case to the jury. *See, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 12622055, at *6 (N.D. Cal. Mar. 19, 2015) (Orrick, J.) (granting motion *in limine* and holding "Except to the extent necessary to present the Court's claim constructions to the jury, the parties may not reference prior rulings from this case."); *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2014 WL 4272771, at *1 (N.D. Cal. Aug. 28, 2014) (granting motion *in limine* and holding "Introduction of the Court's reasoning to support the reasonableness of Marvell's actions and its subjective belief that it did not infringe would be more prejudicial than probative and will be excluded."). A similar order is needed here. Archer intends to introduce evidence and argument regarding prior motion practice and the Court's rulings, particularly the Court's order denying Wisk's motion for a preliminary injunction.

To that end, Archer's proposed exhibit list contains twelve emails discussing Wisk's motion for a preliminary injunction. But any attempt to raise Wisk's motion for a preliminary injunction—and the Court's order denying it—would unfairly prejudice Wisk by encouraging the jury to follow the Court's previous rulings (which rulings were made on an incomplete, pre-discovery record). *See, e.g.*, *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2018 WL 6439133, at *6 (N.D. Cal. Dec. 7, 2018) (granting motion *in limine* to exclude reference to preliminary injunction proceedings because "The Court concludes that the jury is likely to determine that the judge has already decided the factual issues and thus the jury need not re-weigh the evidence. Given the complexity of the issues and the unavoidable deference a jury is likely to give the

judge's written order, the Court concludes that a limiting instruction would not sufficiently reduce the prejudicial effect of the evidence."); *see also Illumina, Inc. v. BGI Genomics Co., Ltd*, 2021 WL 4979799, at *9 (N.D. Cal. Oct. 27, 2021) (Orrick, J.) ("Evidence of a preliminary injunction, including the fact of the preliminary injunction, is highly prejudicial and the probative value does not outweigh such prejudice."). To avoid that prejudice, the Court should exclude reference to the preliminary injunction proceedings.

For the same reasons, the Court should also exclude evidence or argument regarding the Court's other rulings, including on summary judgment, Wisk's trade secrets, and discovery. *See, e.g.*, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1569703, at *1 (N.D. Cal. Mar. 30, 2018) (granting motion *in limine* "to exclude Defendants from presenting any evidence, testimony or argument regarding any trade secrets no longer being asserted or 'dropped,' the timing and sufficient particularity of the trade secret disclosures including the prior summary judgment ruling on Trade Secret 9"); *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012) ("[T]he Court finds good cause to exclude evidence of the parties' pretrial discovery disputes, such as motions to compel testimony or production as well as Defendants' Motion for Sanctions.").

**MIL #5: To exclude evidence or argument that Wisk's attorneys drafted the precise wording of the asserted trade secrets, or that Wisk's employees did not refer to information as "trade secrets" in the ordinary course of business.**

Wisk moves under Federal Rules of Evidence 402 and 403 to preclude Archer from presenting evidence or argument that Wisk's attorneys drafted the precise wording of the asserted trade secrets, or that Wisk employees, in the course of their regular work prior to this lawsuit, did not use the term "trade secret" to describe the asserted trade secrets. Such evidence and argument is irrelevant. Under the statutory definition, whether information qualifies as a trade secret hinges upon whether Wisk took "reasonable measures to keep such information secret" and whether the information "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The definition of a trade secret does not ask whether engineers referred to information as a "trade secret" or specifically delineated it as such before litigation ensued. Archer has repeatedly suggested that it may want to present such argument at trial. Because such information is irrelevant, or alternatively because any probative value would be substantially outweighed by the risk of jury prejudice or confusion (*e.g.*, the jury inferring that the Wisk's trade secrets do not qualify as trade secrets because they were not referred to as such by engineers or because they were drafted by attorneys in Wisk's 2019.210 statement), the Court should preclude Archer from offering such evidence or argument under Rules 402 and 403.

**MIL #6: To exclude evidence or argument inconsistent with the Court's claim constructions.**

Wisk moves under Federal Rules of Evidence 402 and 403 for an order excluding Archer from introducing at trial evidence or argument inconsistent with the Court's claim construction of "battery sub-module." The term "battery sub-module" appears in the asserted claims of the '033 patent. Archer intends to elicit evidence at trial that the term "sub-module" refers to a sub-part of a module, which in turn is combined with other sub-modules into a battery pack. For instance, Archer has designated the testimony below from an inventor of the '033 patent, Lewis Hom, in which Mr. Hom testified that, in the context of certain Wisk aircraft, the term "submodule" was sometimes used to refer to a middle layer of a battery hierarchy:

> Q. The first submodule that you recall was 12 cells. Can you explain how the 12 cells were arranged within that submodule?
> A. Yes. They were in a 4S3P configuration.
>
> Q. So four cells in series times three in parallel?
> A. Yes. That is -- yes.
>
> Q. And were they then contained in any kind of physical container?
> A. Yes.
>
> Q. And what was the next level up in the organization of the battery of a submodule?
> A. The next legal up in the organization would be the module.
>
> Q. How many submodules were there in a module when you first started building submodules to make a module?

> A. At the time I was working on submodules, a module contained three submodules.
>
> …
>
> Q. What after module was the next level up in the organization of the battery in your work at the company?
> A. After a module came a unit known as a battery.
>
> Q. How many modules in a battery?
> A. There were 12 modules in a battery.

Ex. I (Hom Tr.) at 64:14–65:14, 66:2–19. This testimony directly contradicts the Court's claim construction order and its construction of "battery sub-module." Allowing the presentation of such evidence runs the risk of having the jury ignore or otherwise misapply the Court's claim construction to the prejudice of Wisk.

During the claim construction phase, the Court expressly rejected the interpretation Archer is attempting to advance at trial. After the parties fully briefed the meaning of the term and presented oral argument at the *Markman* hearing, the Court construed the term "battery-submodule" to mean "a component of a battery system that includes one or more cells, a battery management system, and a switch." ECF 258 (Claim Construction Order) at 20. In doing so, the Court considered and correctly rejected Archer's contention that the term "sub-module" refers to a middle-level of a battery hierarchy:

> Archer argues that a battery sub-module "has [an] ordinary meaning in the hierarchy of battery terminology." Resp. 11. According to it, a "sub-module" is a component part of a battery "module," which in turn is a component part of a battery pack. See id. Wisk, for its part, argues that a sub-module is merely a component of a broader "battery system," without the hierarchy Archer envisions. See Open. 11. I agree with Wisk that, as it is used in the asserted claims, "battery sub-module" is just a component of a "battery system," not Archer's more elaborate hierarchy.

*Id*. at 20. The Court considered Archer's argument that certain Wisk documents and patents use the term sub-module "in the way that Archer argues for," but found that the patent did not use the term this way. *Id*. at 20–21 (explaining that "Archer's interpretation" is "not grounded in the claims or specification" and that the intrinsic evidence "does not offer anything in support of Archer's" position).

Archer should be precluded from presenting contrary evidence or argument to the jury. "'[T]he construction of a patent, including terms of art within its claim,' is not for a jury but 'exclusively' for 'the court' to determine." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)). Consistent with that rule, "[o]nce a district court has construed the relevant claim terms, . . . then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Opinions and arguments inconsistent with the Court's claim construction are inadmissible, and are properly precluded from being presented at trial. *See, e.g.*, *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) (holding that district court "properly excluded [defendant's] claim construction argument before the jury" because "the risk of confusing the jury is high when experts opine on claim construction" (internal quotations and citation omitted)); *Exergen*, 575 F.3d at 1321 (reversing district court's denial of defendants' motion for judgment as a matter of law due in part to a party's "misleading statement to the jury . . . that directly contradict[ed] the district court's earlier construction of 'internal temperature'").

Wisk respectfully requests that the Court exclude any evidence or argument inconsistent with the Court's construction of the term "battery sub-module."

Dated: July 3, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By:   /s/ Patrick Schmidt
      Yury Kapgan
      Robert M. Schwartz
      Diane Cafferata
      Patrick Schmidt
      Michael F. LaFond

*Attorneys for Plaintiff Wisk Aero LLC*