QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Diane Cafferata (Bar No. 190081)
  dianecafferata@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WISK AERO LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ARCHER AVIATION INC.,<br><br>Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**WISK'S NOTICE OF MOTION AND MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REBUTTAL REPORT OF HEATH HOFMANN AND THE SECOND SUPPLEMENTAL EXPERT REBUTTAL REPORT OF BRETT HARRISON**<br><br>Hon. William H. Orrick<br>Date: August 23, 2023<br>Time: 2:00 p.m. |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 23, 2023, at 2:00 p.m. or soon thereafter as this matter can be heard before the Honorable Judge William H. Orrick, via videoconference, in Courtroom 2, Seventeenth Floor, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Wisk Aero LLC ("Wisk") will and hereby does move the Court to strike the supplemental expert rebuttal report of Dr. Heath Hofmann, dated June 30, 2023 ("Hofmann Supplement") and the second supplemental expert rebuttal report of Brett Harrison, dated June 29, 2023 ("Harrison Supplement") under Rule 26(a)(2) and Rule 37(c)(1) of the Federal Rules of Civil Procedure. Specifically, Wisk seeks an order striking the entire Hofmann Supplement and the entire Harrison Supplement as untimely rebuttal reports under Fed. R. Civ. P. 26(a)(2)(D)(ii).

In addition, Wisk seeks an order striking the following paragraphs of the Hofmann Supplement as introducing new evidence and new opinions that are not proper rebuttal evidence:

- Paragraphs 17 and 23 rendering a general opinion as to how other engineers around the world would design motor tools;
- Paragraphs 19 and 25 relating to discussion of the value of consulting or re-using source code from an earlier motor tool;
- Paragraphs 54-56 discussing new and previously undisclosed public literature references, which Dr. Hoffman now alleges are relevant to the trade secret issues.

Wisk also seeks an order striking the following paragraphs of the Harrison Supplement as introducing new evidence and new opinions that are not proper rebuttal evidence:

- Paragraphs 5-11 and Exhibits 1 and 2 relating to the Spring 2021 forensic analysis;
- Paragraphs 12 and 13 and Exhibit 3 relating to iSerial numbers provided by a third-party forensics consulting firm, KLD; and
- Paragraphs 31-33 relating to Jing Xue's access to and retention of certain Wisk confidential information.

1  This motion is based on this notice of motion and supporting memorandum of points and
2  authorities, the supporting declaration of Brian Mack, the accompanying exhibits, reply briefing in
3  further support of this motion and supporting declarations and accompanying exhibits, as well as
4  other written or oral argument that Wisk may present to the Court.

6  DATED: July 21, 2023                QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

9                                      By      /s/ *Brian Mack*
                                           Yury Kapgan
10                                         Robert M. Schwartz
                                           Diane Cafferata
11                                         Patrick Schmidt
                                           Brian Mack
12                                         Michael F. LaFond

                                       *Attorneys for Plaintiff Wisk Aero LLC*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE RELIEF REQUESTED ........................................................... 2

III. STATEMENT OF FACTS .............................................................................................. 3

    A. The Supplemental Hofmann Report ................................................................... 3

    B. The Supplemental Harrison Report ..................................................................... 4

IV. LEGAL STANDARD ..................................................................................................... 5

V. ARGUMENT ................................................................................................................... 6

    A. The Court Should Strike the Hofmann Supplement in its Entirety as Untimely ................................................................................................................ 7

    B. At the Very Least, the Court Should Strike Paragraphs 17, 19, 23, 25, and 54-56 of the Hofmann Supplement Because They Contain New Evidence and Arguments Not Responsive to Any Prior Expert Disclosure .............................. 7

    C. The Court Should Strike the Harrison Supplement in its Entirety as Untimely ................................................................................................................ 9

    D. At the Very Least, the Court Should Strike Paragraphs 5-11, 12-13, and 31-33 of the Harrison Supplement Because They Contain New Evidence and Arguments Not Responsive to Any Prior Expert Disclosure ............................. 10

VI. CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abdo v. Fitzsimmons*,
  No. 17-CV-00851-TSH, 2020 WL 4051299 (N.D. Cal. July 20, 2020) .................................. 8

*Clear-View Techs., Inc. v. Rasnick*,
  No. 13-CV-02744-BLF, 2015 WL 3509384 (N.D. Cal. June 3, 2015) ................................... 8

*Coward v. Forestar Realty, Inc.*,
  282 F. Supp. 3d 1317 (N.D. Ga. 2017) ........................................................................... 7, 10

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-03733-JST, 2021 WL 9038509 (N.D. Cal. Apr. 27, 2021) ............................ 6, 8, 10

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ........................................................................................... 6

*Musser v. Gentiva Health Servs.*,
  356 F.3d 751 (7th Cir. 2004) ............................................................................................. 6

*Shenon v. New York Life Ins*.
  Co., No. 218CV00240CASAGRX, 2020 WL 1317722 (C.D. Cal. Mar. 16,
  2020) .................................................................................................................................. 8

*Taylor v. N. Inyo Hosp.*,
  *No*. 115CV001607LJOJLT, 2017 WL 1273840 (E.D. Cal. Feb. 17, 2017) ....................... 7, 10

*United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*,
  No. 07-cv-2172-AJB, 2011 WL 672799 (S.D. Cal. Feb. 18, 2011) .......................................... 6

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................................. 6, 7, 9, 10

*Young v. Cree Inc*.,
  No. 4:17-CV-06252-YGR, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021) ................................ 8

### Rules

Fed. R. Civ. P. 26(a) ................................................................................................................ 6

Fed. R. Civ. P. 26(a)(2)(D)(ii) ................................................................................ 1, 5, 6, 7, 10, 12

Fed. R. Civ. P. 26(e) ................................................................................................................ 8

Fed. R. Civ. P. 37 ..................................................................................................................... 6

Fed. R. Civ. P. 37(c)(1) ................................................................................................... 6, 8, 10

## I. INTRODUCTION

On June 30, 2023, just a little over six weeks before the originally scheduled trial date (August 14, 2023), Defendant Archer Aviation ("Archer") served a supplemental expert rebuttal report of its technical expert, Dr. Heath Hofmann ("Hofmann Supplement"). The June 30, 2023 Hofmann Supplement purports to respond to a May 12, 2023 second supplemental expert report served by Wisk's expert Dr. Collins ("Second Collins Supplement"), which itself was served to address new forensic evidence and documents that were produced by Archer and its employees in late March and early April 2023.

One day prior, on June 29, 2023, Archer served a second supplement to the expert rebuttal report of its forensics expert, Brett Harrison ("Harrison Supplement"). The June 29, 2023 Harrison Supplement purports to respond to a May 12, 2023 supplemental expert report served by Wisk's forensics expert Mr. Crain ("Crain Supplement"), which itself was served to address some of the same new forensic evidence and documents that were produced by Archer and its employees in late March and early April 2023.

As an initial matter, the Court should strike the Hofmann Supplement and the Harrison Supplement in their entireties because they were each served more than 30 days after the disclosure it allegedly rebuts and is therefore untimely under Fed. R. Civ. P. 26(a)(2)(D)(ii). In addition, the Hofmann Supplement and the Harrison Supplement both include opinions that are not proper rebuttal to the opinions provided in the Second Collins Supplement or the Crain Supplement.

Specifically, the Hoffman Supplement goes beyond responding to the supplemental opinions of Dr. Collins (based on Archer's newly produced forensic evidence and documents) and instead presents entirely new opinions, some of which are based on three brand new public literature references that were not disclosed to Wisk during fact discovery.

Similarly, the Harrison Supplement goes beyond responding to the supplemental opinions of Mr. Crain (based on Archer's newly produced forensic evidence and documents) and instead presents entirely new opinions regarding four previously undisclosed forensic artifact reports and new "iSerial" numbers obtained from a third-party forensic consulting firm named KLD.

Dr. Hoffman's and Mr. Harrison's new opinions could have, and should have, been included in their original rebuttal expert reports, and the newly relied upon references and other evidence should have been disclosed in Archer's interrogatory responses before the close of fact discovery *ten months ago* on August 31, 2022. At this late stage with only a few weeks before trial, Wisk and its expert are left with no meaningfully opportunity to investigate or rebut the new evidence and new arguments. In this situation, the only reasonable and proper remedy under Federal Rules of Civil Procedure 26 and 37 is to exclude the Hofmann Supplement and the Harrison Supplement.

## II.    STATEMENT OF THE RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 26 and 37, Wisk seeks an order striking the entireties of the Hofmann Supplement and the Harrison Supplement as untimely.

Independently, Wisk also seeks an order striking the following paragraphs of the Hofmann Supplement as introducing new evidence and new opinions that are not proper rebuttal evidence:

- Paragraphs 17 and 23 rendering a general opinion as to how other engineers around the world would design motor tools;
- Paragraphs 19 and 25 relating to discussion of the value of consulting or re-using source code from an earlier motor tool;
- Paragraphs 54-56 discussing new and previously undisclosed public literature references, which Dr. Hoffman now alleges are relevant to the trade secret issues.

Wisk also seeks an order striking the following paragraphs of the Harrison Supplement as introducing new evidence and new opinions that are not proper rebuttal evidence:

- Paragraphs 5-11 and Exhibits 1 and 2 relating to the Spring 2021 forensic analysis;
- Paragraphs 12 and 13 and Exhibit 3 relating to iSerial numbers provided by a third-party forensics consulting firm, KLD; and
- Paragraphs 31-33 relating to Jing Xue's access to and retention of certain Wisk confidential information.

### III. STATEMENT OF FACTS

#### A. The Supplemental Hofmann Report

Fact discovery in this case closed on August 31, 2022. Dkt. No. 303. Before fact discovery closed, Archer provided numerous public literature references that it contended as rendering Wisk's motor tool trade secret "generally known" and/or "readily ascertainable" in its responses and supplemental responses to Wisk's interrogatory. Ex. A. In October of 2022, the Court ordered Archer to make "a realistic assessment in good faith" of the number of trade secret references it had raised to "make a reduction accordingly." Dkt. 354 at 2. The Court was clear in its October 2022 order that "it is time to begin the winnowing process." *Id.* Nevertheless, after fact discovery closed, late in the evening on December 19, 2022, less than two days before Wisk's opening expert report was due, Archer provided two additional public literature references for Wisk's motor tool trade secret. Ex. A at 208-209.

On December 21, 2022, Wisk timely served the opening expert report of Dr. E. Randy Collins, Jr., who offered his opinion on, among others, Wisk's motor tool trade secret and the related public literature references disclosed by Archer before the close of fact discovery. On January 27, 2023, Archer served the rebuttal expert report of Dr. Heath Hofmann ("Hofmann Rebuttal"). The Hofmann Rebuttal Report *further* expanded the number of public literature references cited against Wisk's motor tool trade secret, including references that were never disclosed in any prior Archer interrogatory responses. Ex. B, ¶¶40-41 (discussing the new Pries references) and ¶ 251 (discussing the new Ansys, Maxwell 2018 reference).

Rather than burden the Court with a motion to strike, Wisk asked its expert Dr. Collins to analyze the two belatedly disclosed references disclosed by Archer on December 19, 2022 as well as the newly identified references by Dr. Hofmann on January 27, 2023 and asked Dr. Collins to supplement his original report. On March 13, 2023, Dr. Collins provided a first supplement to his expert report ("First Collins Supplement") to, among others, address the new references alleged by Archer. Ex. C.

Subsequently, in connection with a motion to compel filed by Wisk, Archer produced additional forensic evidence from the personal device of its employee Diederik Marius on March

31, 2023. That new forensic evidence revealed numerous relevant, previously unproduced documents, some of which included significant metadata access information. As a result, Wisk demanded, and Mr. Marius produced additional documents on April 7 and 10, 2023, all showing additional evidence of misappropriation of Wisk's motor tool trade secret. In response to the newly produced evidence, on May 12, 2023, Dr. Collins provided a second supplement to his expert report ("Second Collins Supplement") to offer his opinions on Archer's misappropriation of Wisk's motor tool trade secret based on the newly produced evidence. Ex. D.

On June 30, 2023, Archer purportedly served the Hofmann Supplement to allegedly rebut the opinions offered in the first and second Collins supplements. Ex. E. However, as demonstrated below, Dr. Hofmann's opinions in the Hofmann Supplement were not limited to just rebutting Dr. Collins's opinions. Rather, Dr. Hofmann offered *new* opinions on three *previously undisclosed* public literature references—ten months after the close of fact discovery and six weeks before the scheduled trial date. *Id*. at ¶¶ 54-56.

###    B.    The Supplemental Harrison Report

On March 30, 2023, Archer wrote to Wisk to discuss ways to resolve Wisk's pending motion to compel certain forensic artifact reports that Archer was improperly withholding. Ex. F (3/30/23 Email From D. Feinstein to D. Cafferata). In that correspondence, Archer withdrew its claim of privilege and work product as to certain forensic artifact reports concerning personal devices that Archer's expert, Brett Harrison, considered in rendering his opinion delivered to Archer at a June 2, 2021 board meeting. *Id.*

One day later, on March 31, 2023, Archer produced 30 Excel spreadsheets representing various forensic artifact reports. On April 2, 2023, Archer sent Wisk a "map" to assist it in identifying the custodian and device for each forensic artifact report. Ex. G (4/2/23 Email From K. Hines to M. LaFond). According to the supplied map, the produced forensic artifact reports related to certain devices of three Archer employees that had come over from Wisk—Tom Muniz, Johnny Melack, and Diederik Marius. *Id.* These forensic artifact reports were all highly relevant and responsive to numerous Wisk discovery requests and should have been produced many

1  months ago during fact discovery.  *See generally* Dkt. No. 582 (order granting Wisk's motion to
2  compel forensic artifacts).
3  　　　　On May 12, 2023, Wisk served a supplemental report of its forensics expert Andrew Crain
4  ("Crain Supplement") to address the newly produced forensic artifact reports.  Ex. H.  In the
5  report, Mr. Crain explained that "the forensic reporting produced recently by Archer consists of
6  only piecemeal records from certain categories of forensic artifacts contained on the devices that
7  were imaged and examined.  That is, this reporting is nowhere near a fulsome set of all forensic
8  artifacts, nor all records from each type of artifact, from those computing devices." *Id.*, ¶ 13.  He
9  also explained that "a critical piece of information called a firmware 'iSerial' number" was lacking
10 in the connection history reports, hampering his review. *Id.*, ¶ 17.  Finally, Mr. Crain opined that a
11 forensic report for a 8GB SanDisk external storage device used by Mr. Marius indicated that
12 certain Wisk files were "last accessed" on June 13, 2020. *Id.*, ¶¶ 23-25.
13 　　　　On June 29, 2023, Archer served the Harrison Supplement.  Ex. I.  In the Harrison
14 Supplement, Mr. Harrison alleges that he provided paragraphs 1-27 in response to the May 12,
15 2023 Crain Supplement, paragraphs 28-30 in response to the May 12, 2023 Second Collins
16 Supplement, and paragraphs 31-32 in response to Wisk's "legal filings" dated April 5 and April 7,
17 2023. *Id.*, ¶¶ 3, 28, 31.
18 　　　　The Harrison Supplement also included three new exhibits allegedly in response to Mr.
19 Crain's May 12, 2023 supplemental report. *Id.*, ¶¶ 5-13.  Mr. Harrison alleges that Exhibit 1 is
20 "[a] full listing of the personal devices that were subject to FTI's analysis," Exhibit 2 is "[a] full
21 listing of the search terms and file names FTI ran across the [forensic tool] results," and Exhibit 3
22 is "a list of the iSerial numbers" for the personal external devices collected and forensically
23 imaged belonging to Messrs. Muniz, Melack and Marius. *Id.*, ¶¶ 5, 7, 13.
24 **IV.    LEGAL STANDARD**
25 　　　　Rebuttal disclosures of expert testimony are "intended solely to contradict or rebut
26 evidence on the same subject matter identified by another party" in its expert disclosures.  Fed. R.
27 Civ. P. 26(a)(2)(D)(ii).  Further, Rebuttal disclosures must be made "within 30 days after the other
28 party's disclosure." *Id*.

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Rule 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Rule 37 provides for "automatic and mandatory" exclusion unless the non-disclosure or late disclosure was "justified or harmless." *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, 2021 WL 9038509, at *9 (N.D. Cal. Apr. 27, 2021); *see also United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07-cv-2172-AJB, 2011 WL 672799, at *2 (S.D. Cal. Feb. 18, 2011) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).

Courts routinely exclude information disclosed too late for meaningful discovery. *Droplets*, 2021 WL 9038509, at *9 n.7 (granting plaintiff's motion to strike non-infringing alternative in rebuttal report of expert); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (noting that excluding undisclosed evidence is appropriate even when the litigant's entire cause of action is precluded as a result).

## V.  ARGUMENT

This Court should strike the Hofmann Supplement and the Harrison Supplement for two reasons. ***First***, the entire reports should be stricken as untimely because they were served more than 30 days after the expert disclosure it is allegedly responsive to. Fed. R. Civ. P. 26(a)(2)(D)(ii) (rebuttal expert disclosures must be submitted "within 30 days after the other party's disclosure"). ***Second***, paragraphs 17, 23, 25, and 54-56 of the Hofmann Supplement and paragraphs 5-11, 12-13, and 31-33 of the Harrison Supplement should be stricken because they contain new evidence and arguments that are not responsive to any prior expert disclosure of Wisk.

**A.     The Court Should Strike the Hofmann Supplement in its Entirety as Untimely**

Dr. Hofmann alleges that the Hofmann Supplement is responsive to the First Collins Supplement served March 13, 2023, and Second Collins Supplement served May 12, 2013.  Ex. E, ¶ 4 ("I submit this supplement to my Trade Secret Rebuttal Report to address and respond to the new opinions offered in the First Supplemental Collins Report and the Second Supplemental Collins Report.").  Because the Hofmann Supplement was served on June 30, 2023—more than 100 days after the First Collins Supplement and more than 30 days after the Second Collins Supplement—the opinions in the Hofmann Supplement are untimely and should be stricken.  *Yeti by Molly*, 259 F.3d at 1106.

**B.     At the Very Least, the Court Should Strike Paragraphs 17, 19, 23, 25, and 54-56 of the Hofmann Supplement Because They Contain New Evidence and Arguments Not Responsive to Any Prior Expert Disclosure**

More importantly, at least paragraphs 17, 19, 23, 25, and 54-56 of the Hofmann Supplement should be stricken also because they are not proper rebuttal evidence.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (evidence offered to "contradict or rebut evidence on the same subject matter identified by another party"); *see also Taylor v. N. Inyo Hosp., No*. 115CV001607LJOJLT, 2017 WL 1273840, at *3 (E.D. Cal. Feb. 17, 2017) ("[A] proper rebuttal opinion is limited to contradicting or rebutting an opinion set forth in the opponent's initial expert disclosure."); *Coward v. Forestar Realty, Inc*., 282 F. Supp. 3d 1317, 1331 (N.D. Ga. 2017) ("[A] rebuttal report is limited to contradicting or rebutting evidence on the same subject matter identified by another party and is not an opportunity to advance new opinions or new evidence.").

First, paragraphs 54-56 discusses three new public literature references (the Arnold presentation, the Thompson paper, and the Gieras textbook) that Archer did not disclose until the June 30, 2023 Hofmann Supplement.  Archer could have disclosed these references in any of its numerous responses or supplemental responses to Wisk's interrogatory before the fact discovery closed 10 months ago, or even in the original Hofmann Rebuttal report, but it failed to do so.  *See* Exs. A and B.  None of these three new references were discussed in the first or second Collins supplement, which the Hofmann Supplement is purported to rebut.  *See* Exs. C and D.  Thus, Dr. Hofmann's opinions on these three new references should be stricken as improper rebuttal

opinion. *See, e.g.*, *Young v. Cree Inc.*, No. 4:17-CV-06252-YGR, 2021 WL 292549, at *12 (N.D. Cal. Jan. 28, 2021) (striking new opinions in rebuttal expert report that "do not respond to any of the opinions of [opposing side's] expert witnesses"); *Shenon v. New York Life Ins*. Co., No. 218CV00240CASAGRX, 2020 WL 1317722, at *10 (C.D. Cal. Mar. 16, 2020) ("Rule 26(e) is not an avenue to . . . add new opinion, or deepen or strengthen existing opinions."); *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) ("Permitting parties to backdoor affirmative expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless.") (cleaned up).

The late disclosure of the three new public literature references in the Hofmann Supplement is not "justified or harmless." Fed. R. Civ. P. 37(c)(1). Trial is a month away, and there is no time for Wisk to meaningfully investigate or rebut the untimely opinions contained in the "rebuttal" disclosure. *Droplets*, 2021 WL 9038509, at *9. Particularly, the three new public literature references disclosed in the Hofmann Rebuttal include almost 400 pages of dense technical discussions. *See* Exs. E-1 to E-3. Because of the late disclosure of these new references and new arguments, and the impending trial date, Wisk's technical expert Dr. Collins will not be able to thoroughly analyze all this new information and meaningly respond to Dr. Hofmann's opinions on these new references before trial. *See, e.g.*, *Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2020 WL 4051299, at *4 (N.D. Cal. July 20, 2020) ("Further, the late disclosure is not harmless because it deprived Plaintiffs of the opportunity to submit an expert report to rebut the Rebuttal Report."). Therefore, paragraphs 54-56 of the Hofmann Supplement should be stricken as improper rebuttal evidence.

Second, paragraphs 17 and 23 includes Dr. Hofmann's speculation that "if you asked ten motor engineers in ten separate locations around the world to write independent code implementing this equation [of Wisk's], you would find the very same type of similarities among these ten sets of code . . . between the Archer code and the [Wisk code retained by Mr. Marius]." Ex. E, ¶17; *see also id.* at ¶23 ("[A]s I explained above with respect to the first equation, any two independently written motor modelling scripts that implement this equation would look similar and operate in a similar manner precisely because they are both measuring the same thing. . .").

Again, Dr. Hofmann's speculation is improper "rebuttal"—neither the first nor the second Collins supplement, which the Hofmann Supplement purported to rebut, offered any opinion on how other engineers around the world would write source code for a motor tool. Rather, the First Collins Supplement only offered opinions on Archer's public literature references that Dr. Collins did not have an opportunity to address in his opening expert report, and the Second Collins Supplement only offered opinions on the new forensic evidence and new documents produced by Archer and its employee Mr. Marius. *See* Exs. C and D. Because the statements in paragraphs 17 and 23 of the Hofmann Supplement are not responsive to any expert disclosure of Wisk, they should be stricken as improper rebuttal evidence.

Third and finally, paragraphs 19 and 25 include, among others, Dr. Hofmann's opinion that "there is [sic] would simply be no value in consulting or re-using code from an earlier motor tool when creating another motor tool" and "it is neither smart nor helpful to reuse old code from a different motor model when writing code for a new motor model." Ex. E, ¶¶ 19, 25. Again, the statements in paragraphs 19 and 25 are not responsive to any expert disclosure by Wisk. Neither the first nor the second Collins supplement offered any opinion on the value or approach of consulting or re-using source code from another motor tool when writing code for a new motor tool. Therefore, paragraphs 19 and 25 of the Hofmann Supplements are not responsive to any expert disclosure of Wisk and should be stricken as improper rebuttal evidence.

### C. The Court Should Strike the Harrison Supplement in its Entirety as Untimely

Mr. Harrison alleges that paragraphs 1-27 of the June 29, 2023 Harrison Supplement (including its Exhibits 1-3) are responsive to the May 12, 2023 Crain Supplement, and paragraphs 28-30 are responsive to the May 12, 2023 Second Collins Supplement. Ex. I, ¶¶ 3, 28 . Because the Harrison Supplement was served more than 30 days after Crain Supplement and the Second Collins Supplement, Mr. Harrison's opinions contained in these paragraphs are untimely and should be stricken. *Yeti by Molly*, 259 F.3d at 1106.

Mr. Harrison alleges paragraphs 31-32 of the Harrison Supplement are responsive to the "legal filings" in which Wisk "intends to rely on the downloading of additional Wisk documents by former Wisk employee Jing Xue that its technical experts previously did not identify in the

1  portions of their reports setting out the basis for their respective misappropriation opinions." *Id.*, ¶
2  31. The "legal filings" referenced in the Harrison Supplement include Docket No. 475 (Wisk's
3  Motion for Adverse Inferences) and Docket No. 502 (Wisk's Opposition to Archer's Motion for
4  Summary Judgment) and 475. *Id.* Because the Harrison Supplement was disclosed more than 30
5  days after each of these legal filings (April 5 and April 7, 2023, respectively), the opinions
6  contained in these paragraphs are untimely and should be stricken. Fed. R. Civ. P. 26(a)(2)(D)(ii);
7  *Yeti by Molly*, 259 F.3d at 1106.

8        The late disclosure of the Harrison Supplement is not "justified or harmless." Fed. R. Civ.
9  P. 37(c)(1). Trial is less than a month away, and there is no time for Wisk to meaningfully
10 investigate or rebut the untimely opinions contained in the "rebuttal" disclosure. *Droplets*, 2021
11 WL 9038509, at *9. For example, Mr. Harrison provides new opinions regarding the process his
12 firm used to prepare and analyze the forensic artifacts of multiple Archer employees, including a
13 new list of personal devices analyzed (Exhibit 1) and a ***13-page listing*** of search terms and file
14 names ran across the artifacts (Exhibit 2). Ex. I, ¶¶ 5-9. He also provides a new list of "iSerial"
15 numbers allegedly corresponding to ***38 different storage devices*** of Archer employees Diederik
16 Marius and Johnny Melack. *Id.* at Ex. 3. Because of the late disclosure of this information and
17 the impending trial date, Wisk's forensics expert will not be able to thoroughly investigate all this
18 new information and respond before trial. The Harrison Supplement should therefore be stricken.

19     **D.**    **At the Very Least, the Court Should Strike Paragraphs 5-11, 12-13, and 31-33
20 of the Harrison Supplement Because They Contain New Evidence and
   Arguments Not Responsive to Any Prior Expert Disclosure**

21       Paragraphs 5-11, 12-13, and 31-33 of the Harrison Supplement should also be stricken
22 because they are not proper rebuttal evidence. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (evidence
23 offered to "contradict or rebut evidence on the same subject matter identified by another party");
24 *see also Taylor*, 2017 WL 1273840, at *3; *Coward*, 282 F. Supp. 3d at 1331.

25       First, Paragraphs 5-11 and Exhibits 1 and 2 relate to Mr. Harrison's "late Spring 2021"
26 forensic analysis and provide new evidence and argument regarding the scope and nature of FTI's
27 investigation. This information should have been disclosed months ago during fact discovery so
28

that Archer's expert, Mr. Crain, could have reviewed the procedure used for the forensic analysis and commented on its appropriateness in his supplemental report.

For example, Mr. Harrison explains that FTI consultants working at his direction "ran a search for operating system artifacts on forensic images of those employees' personal devices that I understand the employees had identified as of that time as potentially being used in connection with their prior employment at Wisk." Ex. I, ¶ 5. He also explains how FTI conducted the analysis—information that should have been presented with the forensic artifact reports themselves. *Id.* ("FTI utilized an industry standard digital forensic tool called Axiom, which automatically parses and displays the file names of not just files on a device but also file system and operating system artifacts, which can show evidence of how a device was used and what activities occurred on the device (e.g., files actually opened, bulk uploads/downloads, files deleted)."). Finally, he alleges that "FTI applied search terms and file names to the resulting artifacts associated with personal computer devices, phones, and internal storage devices that contained operating systems" and provides a list of alleged search terms used in Exhibit 2. *Id.*, ¶ 7. Wisk has been untimely sandbagged with all this new evidence and information in "rebuttal" without any meaningful opportunity to respond.

Paragraph 11 of the Harrison Supplement is particularly prejudicial. In that paragraph, Mr. Harrison alleges, for the first time in "rebuttal," that four forensic artifact reports actually "hit on search terms" but "were inadvertently not elevated to [Harrison] for [his] review and consideration, but should have been." *Id.*, ¶ 11. Mr. Harrison then offers a conclusory and *ipse dixit **new*** opinion: "I have since reviewed those additional four artifact reports (all associated with a single internal hard drive within a single computer called a Define Mini belonging to Johnny Melack) and my opinion remains unchanged: I have seen no forensic evidence that Messrs. Marius, Muniz or Melack ever accessed any Wisk documents since starting their employment at Archer." *Id.* Because this new opinion is untimely and does not respond to any opinion by Mr. Crain (or any other Wisk expert), it should be stricken. More importantly, Wisk's expert will not have any meaningful opportunity to rebut Mr. Harrison's new opinion offered just weeks before trial.

Second, paragraphs 12 and 13 and Exhibit 3 of the Harrison Supplement also constitute new evidence that should have been provided earlier. Here, Mr. Harrison relays serial number information from another forensics consulting firm, KLD, that is not associated with Mr. Harrison: "Since reviewing Mr. Crain's Supplemental Report, I requested that KLD provide the iSerial numbers for the personal external devices it collected and forensically imaged belonging to Messrs. Muniz, Melack and Marius. Attached as Exhibit 3 is a list of the iSerial numbers KLD provided in response." *Id.*, ¶ 13. In addition to the hearsay, foundation, and authentication issues with this new serial number information obtained from a third party, Wisk's expert was deprived an opportunity to address or rebut this new information, which was first made available in the Harrison Supplement. It should therefore be stricken.

Third and finally, Dr. Harrison does not even allege that Paragraphs 31-33 of the Harrison Supplement are responsive to any expert disclosure by Wisk. Rather, Mr. Harrison offers these new and untimely opinions in response to certain "legal filings" by Wisk that allegedly show that Wisk "intends to rely on the downloading of additional Wisk documents by former Wisk employee Jing Xue that its technical experts previously did not identify in the portions of their reports setting out the basis for their respective misappropriation opinions." *Id.*, ¶ 31. Mr. Harrison then offers yet another conclusory and *ipse dixit* **new** opinion as improper "rebuttal" evidence: "I have seen nothing in the forensic evidence produced in this litigation or otherwise that supports a finding that any of above-referenced were accessed or retained by Dr. Xue since he left Wisk." *Id.*, ¶ 32. Because this new opinion is not responsive to any expert disclosure of Wisk, it should be stricken as improper rebuttal evidence. Fed. R. Civ. P. 26(a)(2)(D)(ii).

## VI.   CONCLUSION

For the foregoing reasons, Wisk respectfully requests that the Court strike the Hofmann Supplement and the Harrison Supplement in their entireties as untimely. Alternatively, Wisk respectfully requests that the Court strike at least paragraphs 17, 19, 23, 25, and 54-56 of the Hofmann Supplement and paragraphs 5-11, 12-13, and 31-33 of the Harrison Supplement because they constitute improper rebuttal evidence.

| | |
|---|---|
| DATED: July 21, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By  /s/ *Brian Mack*  |
| | Yury Kapgan |
| | Robert M. Schwartz |
| | Diane Cafferata |
| | Patrick Schmidt |
| | Brian Mack |
| | Michael F. LaFond |
| | |
| | *Attorneys for Plaintiff Wisk Aero LLC* |