QUINN EMANUEL URQUHART & SULLIVAN, LLP
Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Robert M. Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

Attorneys for Plaintiff Wisk Aero LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WISK AERO LLC,<br><br>   Plaintiff,<br><br>   vs.<br><br>ARCHER AVIATION INC.,<br><br>   Defendant. | Case No. 3:21-cv-02450-WHO<br><br>**WISK'S OPPOSITION TO ARCHER'S MOTION TO COMPEL WISK TO PRODUCE SARD DOCUMENTS**<br><br>Hon. Donna M. Ryu |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................................1

II. BACKGROUND .........................................................................................................................2

    A. Quinn Emanuel Retained Sard Verbinnen & Co. .......................................................2

    B. Sard Relied On Quinn Emanuel's Work Product........................................................2

    C. Archer Serves A Subpoena On Sard, and Sard Produces Documents .......................3

    D. Wisk Inadvertently Sent Nine Sard Documents To Archer And Quickly Clawed Them Back ........................................................................................................4

III. THE COURT SHOULD DENY ARCHER'S MOTION ............................................................4

    A. Archer's Motion Violates the Court's Order................................................................4

    B. The Logged Sard Documents Reflect Wisk's Attorney Work Product. ....................5

    C. Wisk Did Not "Waive" The Work Product Protection. ..............................................8

IV. CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. SeaWorld Parks & Entertainment, Inc.*,
   329 F.R.D. 628 (N.D. Cal. 2019) .................................................................................. 7

*Apple Inc. v. Samsung Elecs. Co.*,
   306 F.R.D. 234 (N.D. Cal. 2015) .................................................................................. 9

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,
   2011 WL 2433655 (E.D. Cal. June 14, 2011) ............................................................... 9

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*,
   408 F.3d 1142 (9th Cir. 2005) ...................................................................................... 8

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite*,
   2009 WL 4642388 (S.D. Cal. Dec. 1, 2009) ................................................................. 9

*Egiazaryan v. Zalmayev*,
   290 F.R.D. 421 (S.D.N.Y. 2013) .................................................................................. 7

*In re Grand Jury Subpoenas*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003) ................................................................. 5, 6, 7

*Johnson v. Starbucks Corp.*,
   2019 WL 402359 (N.D. Cal. Jan. 31, 2019) ................................................................. 9

*Khasin v. Hershey Co.*,
   2014 WL 690278 (N.D. Cal. Feb. 21, 2014) ............................................................ 9, 10

*Kirkpatrick v. City of Oakland*,
   2022 WL 137628 (N.D. Cal. Jan. 14, 2022) ......................................................... 5, 6, 7

*Lights Out Holdings, LLC v. Nike, Inc.*,
   2015 WL 11254687 (S.D. Cal. May 28, 2015) .......................................................... 5, 6

*Lofton v. Verizon Wireless (VAW) LLC*,
   308 F.R.D. 276 (N.D. Cal. 2015) ............................................................................ 9, 10

*Loop AI Labs Inc. v. Gatti*,
   2016 WL 2908415 (N.D. Cal. May 13, 2016) ............................................................. 10

*McNamee v. Clemens*,
   2013 WL 6572899 (E.D.N.Y. Sept. 18, 2013) ............................................................ 10

*Meyer v. Colavita, USA, Inc.*,
   2011 WL 2457681 (C.D. Cal. June 17, 2011) .............................................................. 5

*Padgett v. City of Monte Sereno*,
    2007 WL 4554322 (N.D. Cal. Dec. 20, 2007) .......................................................................... 8

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
    2022 WL 885368 (N.D. Cal. Mar. 25, 2022) ...................................................................... 7, 8

*Rojas v. Bosch Solar Energy Corp.*,
    2020 WL 8617414 (N.D. Cal. Aug. 28, 2020).......................................................................10

*Stardock Sys., Inc. v. Reiche*,
    2018 WL 6259536 (N.D. Cal. Nov. 30, 2018)................................................................ 5, 6, 7

*Stein v. U.S. Securities & Exchange Commission*,
    266 F. Supp. 3d 326 (D.D.C. 2017) ..................................................................................... 7, 8

I.      **INTRODUCTION**

By this motion, Archer seeks to compel non-party Sard Verbinnen & Co. ("Sard"), a non-testifying communications consultant retained by Wisk's Quinn Emanuel attorneys, to produce documents reflecting Wisk's attorneys' thinking, opinions, draft litigation documents, and materials the consultants prepared at counsels' request (the "Sard Documents"). The documents reflect information from Quinn Emanuel's pre-suit investigation and reflect Quinn Emanuel's litigation strategy. This is core work product. Under controlling case law, the sharing of an attorney's work product with a communications consultant does not waive its protection.

To pry into the thinking of its adversary's lawyers, Archer was required to show that Wisk either failed to show that the Sard Documents constitute work-product, or waived the protection. Archer's motion fails on both. Archer failed to rebut Wisk's evidence showing the applicability of work product protection. As explained in Wisk's privilege log and supporting declarations, and in the arguments below, the Sard Documents reflect the thoughts, opinions, and prefiling investigation of Wisk's outside counsel. Quinn Emanuel (not Wisk) hired Sard in anticipation of Wisk suing Archer, and Sard provided advice as part of Quinn Emanuel's litigation strategy. This is core work product, and its protection is not waived simply because Quinn Emanuel shared the work product with its litigation consultant, Sard. The Court should deny Archer's motion.

It should do so for a further reason: The Court ordered Archer to belatedly move, but only on a document-by-document basis, to enable the Court to evaluate if there was a basis for each requested document's production. (Dkt. 606.) Archer flaunted the Order, and took a high-altitude approach to the documents *as a whole*, making the Court's job impossible. It would be too late, and a denial of Wisk's due process rights, to permit Archer to comply with the Court's Order for the first time in its reply.

At bottom, Archer's motion addresses mostly the alleged merits of its defamation counterclaims. Wisk disputes that any of its statements were defamatory. But none of that helps the Court resolve this discovery motion, so Wisk focuses here on the question before the Court, namely, whether the Sard Documents are protected work-product.

## II. BACKGROUND

### A. Quinn Emanuel Retained Sard Verbinnen & Co.

Although Wisk filed this lawsuit in April 2021, Dkt. 1, its planning for the case began months earlier. In early March 2021, Quinn Emanuel retained Sard to advise on communications and other issues related to the case. *See* Declaration of Yury Kapgan ("Kapgan") ¶2 & Ex. 1. That arrangement is reflected in a March 3, 2021 Engagement Agreement, which required Sard to maintain in confidence all information it created or exchanged with the law firm. *Id*.

Pursuant to that consulting agreement, Quinn Emanuel shared its draft work product with Sard, including drafts of the complaint and other proposed filings, as well as internal strategy memos and presentations. *See, e.g.*, Declaration of Rafe Andrews ("Andrews") Ex. C (privilege log). As reflected in its engagement agreement, and the testimony of one of Sard's former managing partners, Sard operated at the direction of Quinn Emanuel for the purpose of assisting Quinn Emanuel in anticipated litigation. *See* Declaration of Megan Bouchier ("Bouchier") ¶¶3-6.

### B. Sard Relied On Quinn Emanuel's Work Product

Sard relied on Quinn Emanuel's pre-suit investigation, litigation strategy, and legal opinions to prepare draft public statements and advise Quinn Emanuel on communications and litigation issues. *See* Bouchier ¶¶6-11. As a result, Sard's internal documents reflect Quinn Emanuel's evolving impressions of the facts and potential legal claims that Wisk anticipated pursuing against Archer, as well as Quinn Emanuel's litigation strategy. *Id*.

This is also reflected in the Sard Documents privilege log. For example, Sard's emails sent on March 29, 2021 (the week before Wisk sued Archer) have the subject line "Re: DRAFT revised complaint…" indicating that the Sard employees were discussing a draft complaint provided by Quinn Emanuel. *See* Andrews Ex. C (Sard Documents Privilege Log) at SARD-Review0275, SARD-Review0307, SARD-Review0308. Other documents reflect attorney comments and, thus, their opinions and thought processes. *Id*. at SARD-Review0187 (email with subject line "Re: Yuri Comments"); SARD-Review0189; SARD-Review0191; SARD-Review0364 (email with subject line including "yurykapgan@quinnemanuel.com"); SARD-Review0366; SARD-Review0368; SARD-Review0370.

After Wisk sued Archer, Sard continued to provide advice to Quinn Emanuel, and the firm continued to share work product, which Sard incorporated into its documents. For example, in advance of filing its preliminary injunction reply brief (Dkt. 92) Quinn Emanuel shared drafts with Sard and Sard advised Quinn Emanuel in response, as reflected in the privilege log. *See* Andrews Ex. C at SARD-Review0563 (email with subject line "Wisk Reply Brief Strategy Doc"); SARD-Review0566; SARD-Review0567 & SARD-Review0568.

Nor were draft documents the only means by which Quinn Emanuel communicated its work product to Sard. Quinn Emanuel had multiple Zoom calls with Sard, and the parties shared information by collectively editing documents on the Google Docs platform. Bouchier ¶11. Given these facts, there can be no dispute that the Sard Documents Archer demands to see reflect Quinn Emanuel's work product including: (1) the results of Quinn Emanuel's prefiling investigation, (2) draft litigation documents, including drafts of the complaint and later briefs, and (3) Quinn Emanuel's litigation strategy. *See* Andrews Ex. C; *see also* Bouchier ¶¶6-11.

Meanwhile, Sard understood, as provided in its retention agreement with Quinn Emanuel, that because "all work product" Sard created "shall be made solely for the purpose of assisting counsel," such work would be "protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privilege or immunity." Bouchier ¶¶12-13. That is why Sard labeled the work product it generated for Quinn Emanuel as "confidential" or "privileged & confidential." *E.g.*, Andrews Ex. C (SARD-Review0195, -0434, -0424 & -0564).

  **C.**  <u>Archer Serves A Subpoena On Sard, and Sard Produces Documents</u>

In Spring 2022, Archer subpoenaed Sard, demanding the communications and documents shared by or with Wisk's attorneys. Before producing documents, Sard's attorneys provided potentially responsive documents to Wisk's attorneys for feedback on protecting Wisk's privileged and confidential documents in Sard's possession, custody, and control. Sard stamped those documents Sard-0001 to Sard-0855. *See* Andrews ¶6. Wisk's attorneys identified documents in that set that it believed should be withheld on work-product grounds.

On August 5, 2022, Sard's attorneys produced documents to Archer's subpoena counsel, Kwun Bhansali Lazarus LLP ("KBL"), **renumbering** the documents Quinn Emanuel had reviewed

with a **new** Bates range of Sard-0001 to Sard-0111.  *Id*. ¶7.  Archer's subpoena counsel then demanded Sard serve a further production of documents.  *Id*. ¶9.  Wisk was not aware that Archer had requested or received a supplemental production.  *Id*.  Sard's attorneys did not copy Wisk's attorneys on the emails transmitting either of Sard's productions.  *Id*. ¶¶7, 9.

### D. Wisk Inadvertently Sent Nine Sard Documents To Archer And Quickly Clawed Them Back

In June 2023, as part of the required joint trial preparation, the parties exchanged drafts of proposed trial exhibit lists.  On June 23, the parties exchanged objections to the other's exhibit lists.  Andrews ¶10. Among other things, Wisk objected to the description of 10 documents with Sard Bates numbers.  Archer's Bates numbers did not match the Bates numbers and descriptions of the Sard documents that Wisk had in its document review system.  *Id*. ¶10.

On June 28, Archer insisted that its descriptions and production numbers were correct.  *Id*. ¶11.  To resolve the document numbering mismatch, on June 29, Wisk sent Archer nine documents that bore the production numbers on Archer's list to demonstrate that the documents with those numbers in Wisk's document review system were not the same documents on Archer's proposed trial exhibit list.  *Id*. ¶12.  Because Wisk was not copied on Sard's production to Archer's subpoena counsel, Wisk did not know that Archer had received documents from Sard with different Bates numbers than the ones Sard had given to Wisk for the privilege review.  *Id*.  In following up, Wisk conferred with Sard's counsel and realized that it had inadvertently produced documents to Archer that Sard had withheld as Quinn Emanuel's work-product.  *Id*. ¶13.  On July 2, just three days after inadvertently producing them, Wisk clawed them back.  *Id*.

## III.  THE COURT SHOULD DENY ARCHER'S MOTION

### A. Archer's Motion Violates the Court's Order.

In allowing Archer to move to compel nine months after the motion cut-off, the Court ordered Archer to "address each challenged document on a document-by-document basis or in appropriate, logical groups of documents."  Dkt. 606 at 1.  Archer did not do that.  Instead Archer filed a motion demanding that Wisk produce **all** Sard Documents withheld on work product grounds, based on a shotgun argument that none are entitled to work product protection.

*See, e.g.*, Dkt. 616 at 4 (arguing "Wisk improperly withheld **all** of the Sard Documents") (emphasis added).   Archer discussed but a single document (Mot. 4), but did not address whether it is work product.   Instead, Archer discusses only its alleged relevance.   That is not sufficient. "If simple relevance constituted a substantial need sufficient to overcome work product protection, the protection would be largely meaningless in practice."  *Meyer v. Colavita, USA, Inc.*, 2011 WL 2457681, at *3 (C.D. Cal. June 17, 2011).   Because Archer did not provide document-specific or category-specific evaluations of the work product, the Court cannot evaluate that issue.   That is reason alone to deny the motion.   Given Archer's refusal to comply with the Court's Order, the balance of this brief rebuts the improper, macro approach Archer took to frustrate the inquiry the Court intended and needed to undertake.

### B.   The Logged Sard Documents Reflect Wisk's Attorney Work Product.

As Archer admits, federal work-product law governs this dispute.   Dkt. 616 at 5.   Archer erroneously describes how that law addresses the work of communications consultants retained by litigation attorneys.   Federal law "makes the clear distinction between the scenario where the clients themselves hire a PR firm for general PR services … and the scenario where the lawyers of the client actually hire the PR firm to manage publicity for the litigation."  *Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536, at *3 (N.D. Cal. Nov. 30, 2018) (quoting *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003)).   Where the attorneys hire the outside PR firm to consult on and manage public communications related to the litigation, documents qualify for work product protection if "the document 'would not have been created in substantially similar form but for the prospect of litigation,'" and "'the litigation purpose so permeates any [PR] purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.'" *Kirkpatrick v. City of Oakland*, 2022 WL 137628, at *1 (N.D. Cal. Jan. 14, 2022) (quoting *Lights Out Holdings, LLC v. Nike, Inc.*, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015)).   Under these authorities, work product protection is not waived when counsel shares draft litigation documents with a PR consultant, and work product protection extends to PR documents such as a "draft press release" "public posts" and communications about "potential future strategy." *Stardock*, 2018 WL 6259536, at *6.

Here, Wisk's litigation attorneys at Quinn Emanuel hired Sard to manage public communications for the litigation. *See* Kapgan Decl. ¶2 & Ex. A (Quinn Emanuel – Sard Engagement Agreement stating that Sard was retained to: "Provide public and investor relations advice in support of Quinn Emanuel's representation of Wisk in connection with the Archer Aviation matter."); *see also* Bouchier Decl. ¶3. The agreement also states that Sard "shall work at the direction and control of Quinn Emanuel." Kapgan Ex. A at 1. Sard acted only at the direction of Quinn Emanuel. *See* Bouchier Decl. ¶¶3-6. Under these circumstances, the Sard Documents qualify for work product protection. *See Stardock*, 2018 WL 6259536 at *3; *Kirkpatrick*, 2022 WL 137628, at *1; *Lights Out Holdings*, 2015 WL 11254687, at *4; *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 326.

*Stardock* **is** this case. There the court found that "because [the party's] counsel (and not [the party] themselves) hired the PR firm" that meant work product protection extended to documents shared with—and created by—the PR firm, including "documents such as a 'draft Answer and Counterclaim' and a 'draft press release.'" *Stardock*, 2018 WL 6259536 at *3.

*Stardock* is not an outlier. *Kirkpatrick* reached the same conclusion, finding that "attorney work product protection" extended to communications and documents shared with a PR consultant upon a three-part showing: "First … [the party] retained [the PR consultant] as early as February 2020 to assist with anticipated litigation. Second … [the PR consultant] did, in fact, assist with the conduct of the litigation. Third … while some of the communications were for a public relations purpose, that public relations purpose was part of a litigation strategy and the communications 'would not have been created in substantially similar form but for the prospect of litigation.'" *Kirkpatrick*, 2022 WL 137628, at *2; *see also In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 332 (documents generated by outside PR firm were protected by work product because the PR firm was hired by the party's attorneys, and the documents were created in anticipation of litigation).

Notably, and contrary to Archer's motion (Mot. 2), these cases do **not** require an attorney be the author, sender, or recipient of a document to retain its work product protection. In fact, Archer's own privilege log. Archer withheld 501 documents logged by its PR firm Reevemark that do not list an attorney as the author, sender, or recipient. *See* Andrews ¶¶15-16 & Ex. E.

As for Archer's attempt to draw distinctions between draft PR **statements** and draft PR **strategies** (Mot. 8-9), both categories of documents are protected, including under the cases Archer cites. See, e.g., *Stardock*, 2018 WL 6259536, at *6 ("draft press release" was protected work product when prepared by outside PR firm hired in anticipation of litigation); *Kirkpatrick*, 2022 WL 137628, at *1 (document revealing "PR advice and litigation strategy" was protected work product); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 2022 WL 885368, at *4 (N.D. Cal. Mar. 25, 2022) (work product may extend to PR documents created at the direction of counsel).

Archer urges a contrary conclusion, but the authorities it cites are inapposite. It relies primarily on *Anderson v. SeaWorld Parks & Entertainment, Inc.*, 329 F.R.D. 628 (N.D. Cal. 2019), but *Anderson* was a diversity case that relied on California state privilege law. See *Anderson*, 329 F.R.D. at 632. This is made clear in footnote 3, were *Anderson* references California work product law. See *Anderson*, 329 F.R.D. at 635 n. 3. As Archer concedes, this is not a diversity case, and only federal law applies. Mot. 5. Moreover, *Anderson* did not consider the distinction between "the scenario where the client themselves hire a PR firm for general PR services … and the scenario where the lawyers of the client actually hire the PR firm to manage publicity." *Stardock*, 2018 WL 6259536 at *3. *Anderson* extensively quotes from, and relies on, an earlier New York case, *Egiazaryan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013), which rejected work product protection because the client had hired the PR firm for general PR services, before the litigation. See *Egiazaryan*, 290 F.R.D. at 432 ("BGR was retained before this litigation began … [and] it was not called upon to perform a specific litigation task"). Indeed, *Anderson* considered a scenario where the defendant and its counsel, not counsel alone, hired "crisis management" firms. See *Anderson*, 329 F.R.D. at 632 ("SeaWorld and its outside counsel then retained two 'crisis' public relations firms…"). But *Anderson* did not address the situation where outside counsel alone hired a PR firm to help manage a lawsuit. Cf. *Stardock*, 2018 WL 6259536 at *3; *Kirkpatrick*, 2022 WL 137628, at *1; *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 326.

Archer's other authorities are no more helpful. *Stein v. U.S. Securities & Exchange Commission*, 266 F. Supp. 3d 326 (D.D.C. 2017), is a FOIA case that examined draft press releases prepared by a government agency. It has no bearing on the work product of a private

litigant or its consultant.  See, *id*. at 333.  *Padgett v. City of Monte Sereno*, 2007 WL 4554322, at *2 (N.D. Cal. Dec. 20, 2007) is inapposite because it concerns a draft press release that the parties "d[id] not contend … was prepared in 'anticipation of litigation or for trial.'"  *Id*.  By contrast, ***every*** Sard Document was created in anticipation of, or during, litigation.  See Andrews Ex. C.

Archer's citation of *Resolute Forest Products, Inc. v. Greenpeace International*, 2022 WL 885368 (N.D. Cal. Mar. 25, 2022), is a head-scratcher.  That court ***agreed*** that a PR firm's documents could constitute protected work product where they were "prepared at the behest of an attorney or provided to an attorney in anticipation of litigation."  *Id.* at *4.  That is Wisk's point here.  The problem in *Resolute Forest Products* was that the PR firm had refused to produce ***any*** documents, even those that did not meet that standard.  But Archer acknowledges that Sard produced documents.  Nor can Archer rely on Judge Orrick's order denying Wisk's Anti-SLAPP Motion (Dkt. 146).  There, Judge Orrick was discussing whether Wisk's ***public*** statements fell under California's litigation privilege, not work production protection for ***internal*** strategy documents, and not federal law.  See Dkt. 146 at 14-15.

Archer is also wrong to argue the Sard Documents do "not invade the thoughts or trial preparation of the attorney and will not lead to any stealing of trial preparation materials."  Mot. 8-9.  The opposite is true.  The Sard Documents reflect Quinn Emanuel's litigation strategy, pre-suit investigation, and legal theories.  See Bouchier ¶¶6-11.

**C.      Wisk Did Not "Waive" The Work Product Protection.**

Archer argues that, under *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005), Wisk "waived" the Sard Documents' work product protection by delaying service of a privilege log.  See Mot. 9-10.  *Burlington Northern* identifies four factors for courts to evaluate waiver arguments related to untimely privilege logs: "[1] the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged … [2] the timeliness of the objection and accompanying information about the withheld documents … [3] the magnitude of the document production; and [4] other particular circumstances of the litigation that make responding to discovery unusually easy … or unusually hard."  408 F.3d at 1149.

1        But the Court need not even consider those factors.  Where, as here, a party asserted work product and privilege objections in its written discovery responses (and even if they were "insufficient boilerplate objections") and then later provided a detailed privilege log, "[d]istrict courts applying *Burlington Northern* often decline to find waiver of privilege."  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (citing *Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*, 2011 WL 2433655, at *6 (E.D. Cal. June 14, 2011) & *Carl Zeiss Vision Int'l GmbH v. Signet Armorlite*, 2009 WL 4642388, at *3–4 (S.D. Cal. Dec. 1, 2009).  That happened here: Wisk asserted privilege objections in its RFP responses and later produced a detailed log when ordered to.  *See* Andrews Ex. F (RFP response); Ex. C (Sard Privilege Log).

        Even if the Court were to consider the *Burlington Northern* factors, they support Wisk.  The first factor, the ability of the party seeking discovery to challenge the work product claim, requires the Court examine the adequacy of the allegedly "untimely" privilege assertions.  Here, the assertions are more than "adequate."  *Khasin v. Hershey Co.*, 2014 WL 690278, at *5 (N.D. Cal. Feb. 21, 2014), is instructive.  In *Khasin*, the defendant served a log seven months late, but substantially compliant with the Ninth Circuit's requirements.  On that basis, the Court declined to find a waiver.  *Id*. at *4-5.  Notably, the party opposing waiver is not limited to just its privilege log.  "[C]laims of privilege may pass muster despite an inadequate privilege log" because "[b]riefs, declarations or other proof may establish" privilege or work product claims.  *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015).

        Archer does not (and cannot) argue that Wisk's log is incomplete, because it is not.  *See* Andrews Ex. C.  Instead, Archer relies *Johnson v. Starbucks Corp.*, 2019 WL 402359, at *7 (N.D. Cal. Jan. 31, 2019) to argue that Wisk's delay in serving a log meant Archer was "unable to challenge" Wisk's work product claims.  Mot. 10.  But in *Johnson*, the plaintiff "never asserted the [work-product] doctrine in his discovery responses, never identified any documents being withheld on that ground, and never served a privilege log."  *Johnson*, 2019 WL 402359, at *7.  Here, Wisk asserted work product protection in its discovery responses, Sard's production letter stated that documents were being withheld due to Quinn Emanuel and Wisk's work product claims, and Wisk served a privilege log.  *See* Andrews Exs. F, D & C.  Archer's reliance on

*McNamee v. Clemens*, 2013 WL 6572899, at *3 (E.D.N.Y. Sept. 18, 2013), also misses the mark. In *McNamee* the defendant refused to produce a log that complied with the local rules, even after being ordered to do so. *Id*. But Wisk has produced a fully compliant log. Andrews Ex. C.

The second factor, the timeliness of the objection and accompanying information, also favors Wisk, because similar "delays" have not been found sufficient to effect a waiver. *See, e.g.*, *Lofton*, 308 F.R.D. at 282 (delay of "over a year" insufficient to support a finding of privilege waiver); *Khasin*, 2014 WL 690278, at *5 (seven month delay insufficient to find waiver).

The third factor, the magnitude of the document production, considers whether the scale of discovery produced, and documents withheld, might explain why a privilege log was untimely or overlooked. If a party "produced over half a million pages of documents," *Khasin*, 2014 WL 690278 at *6, then an untimely log is generally acceptable. If the number of withheld documents is small, then an untimely log may not be acceptable. *E.g. Loop AI Labs Inc. v. Gatti*, 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) (finding waiver where the "privilege log is only four pages long and contains less than 50 entries"). Here, Wisk produced over 676,963 pages of documents, and its privilege logs span hundreds of pages and contain thousands of entries. Andrews ¶¶2, 5. The Sard Documents log is 84 pages long and has 333 entries. *Id*. Ex. C. This factor weighs against waiver. *Khasin*, 2014 WL 690278, at *6.

The fourth factor considers "other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard." This factor weighs against waiver where the work product or privilege claims are asserted over documents in the possession of a third party, because that necessarily complicates the process. *See, e.g.*, *Rojas v. Bosch Solar Energy Corp.*, 2020 WL 8617414, at *5 (N.D. Cal. Aug. 28, 2020) (where a log was not served for documents withheld by third-party related corporate entities, that dynamic constituted "other circumstances" weighing against waiver). Here, Sard possessed the Sard Documents, and Sard is a third party. This factor also weighs against waiver.

Because all four factors weigh in favor of Wisk, there is no basis to find a waiver here.

## IV.   CONCLUSION

Wisk respectfully requests that the Court deny Archer's motion.

| | | |
|---|---|---|
| 1 | DATED: July 26, 2023 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By  /s/ Yury Kapgan
   Yury Kapgan
   Robert M. Schwartz
   Patrick Schmidt
   Michael LaFond

*Attorneys for Plaintiff Wisk Aero LLC*