GIBSON, DUNN & CRUTCHER LLP
Josh A. Krevitt, SBN 208552
  jkrevitt@gibsondunn.com
Stuart Rosenberg, SBN 239926
  srosenberg@gibsondunn.com
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

Daniel J. Thomasch, admitted *pro hac vice*
  dthomasch@gibsondunn.com
Paul Torchia, admitted *pro hac vice*
  ptorchia@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Wayne Barsky, SBN 116731
  wbarsky@gibsondunn.com
Michael Dore, SBN 227442
  mdore@gibsondunn.com
Diana M. Feinstein, admitted *pro hac vice*
  dfeinstein@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone: 310.552.8500

Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WISK AERO LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>ARCHER AVIATION INC.,<br><br>               Defendant. | CASE NO. 3:21-CV-02450-WHO (DMR)<br><br>**ARCHER'S REPLY IN SUPPORT OF MOTION TO COMPEL WISK TO PRODUCE SARD DOCUMENTS**<br><br>Hon. Donna M. Ryu |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I. INTRODUCTION

Since Wisk's inadvertent production of nine Sard documents on June 29, it has become clear that Quinn Emanuel effectively prevented Sard from producing a single internal document in response to Archer's broad subpoena. Specifically, Quinn Emanuel has asserted *work product privilege over every single one of the 333 responsive internal Sard Documents, without regard to the purpose for or content of the documents*. No caselaw supports such an abusive application of the work product privilege, and Wisk's contrived privilege arguments to globally shield production of such public relations documents make a mockery of the discovery process and of the work product privilege.

Wisk's first argument, that Archer "flaunted" [*sic*] the Court's order to move "only on a document-by-document basis," Opp'n at 1, is ironic given Wisk's universal assertion of work product without regard to the differing purposes of the withheld documents. It is also wrong. The Court ordered no such thing. Rather, the Court permitted Archer to address "*appropriate, logical groups of documents*." Dkt. 606 (emphasis added). Archer complied by grouping documents and addressing those groups in its Motion. Mot. at 5. That was the only feasible approach, given the large number of withheld documents at issue and the repetitive nature of Wisk's log. Dkt. 615-3 ¶¶ 57–58.

The balance of Wisk's Opposition is a distraction. Wisk mischaracterizes Archer's Motion from its very first sentence, asserting that Archer "seeks to compel non-party Sard" to produce documents. Opp'n at 1. Not so. Archer seeks the production of documents in Quinn Emanuel's possession that Quinn Emanuel designated (but did not log in connection with Sard's production) as its privileged attorney work product. Similarly, Wisk misleadingly asserts that Archer is seeking "draft litigation documents," *id.*, but Archer's Motion seeks production only of the recently logged internal Sard Documents, not one of which is a "draft litigation document." Dkt. 616-32; Hines Decl. ¶ 3. And, contrary to Wisk's claim, Archer nowhere argues that the "sharing of an attorney's work product with a communications [or "litigation"] consultant … waive[s] protection." Opp'n at 1. Waiver by such sharing is not an issue here because none of the recently logged *internal* Sard documents was shared with Quinn Emanuel or constitutes attorney work product in the first instance.

Wisk has failed entirely to carry its burden to prove its claims of *attorney* work product, as it has made no showing as to the purpose for or content of the public relations documents at issue.

## II. ARGUMENT

**A.     Quinn Emanuel's Retention and "Direction" of Sard Does Not Categorically Transform Sard's Internal PR Documents and Communications into Attorney Work Product**

Wisk makes much of the fact that Quinn Emanuel supposedly retained Sard to "'work at the direction and control of Quinn Emanuel,'" which Wisk characterizes as "circumstances [that] qualify [the Sard Documents] for work product protection." Opp'n at 6 (quoting Dkt. 626-1 (retention letter)). Based on those "circumstances," Quinn Emanuel makes a blanket work product assertion over *all* responsive, internal Sard documents *in their entireties*—no such documents have been produced with redactions. Hines Decl. ¶ 2. But Quinn Emanuel's retention of Sard is insufficient to cloak every internal Sard document with work product protection. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1242–43 (D. Or. 2017) (collecting cases). So too is Sard's perfunctory agreement that "all work product generated [by Sard] pursuant to this agreement" shall be protected as attorney work product, Dkt. 626-1 ¶ B(1), and Ms. Bouchier's claim that Sard personnel "understood" the same. Dkt. 625-3 ¶ 12. Wisk's argument is the epitome of form over substance.

Instead, the *purpose* of the documents, discernible from their contents, is determinative, and this Court should summarily reject Wisk's conclusory assertion (Opp'n at 5) that the Sard Documents constitute Quinn Emanuel work product because they were created with a "litigation purpose [that] so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 910 (9th Cir. 2004). Wisk's argument is antithetical to Judge Orrick's anti-SLAPP ruling, which expressly found that Wisk's blog posts *lack any litigation purpose.* Dkt. 146 at 15 (the "blog posts were … not for purposes of achieving [the litigation's] objects"). That is dispositive because all nine clawed-back documents, Hines Decl. ¶ 4, and many entries on the Sard Document Log concern the blog posts and press release upon which Archer based its counterclaims. *E.g.*, Dkt. 616-32 at SARD-Review0027 ("FOR REVIEW: Wisk Press Release"), SARD-Review0347 ("Re: Client Updates to Comms Package and Blog"). Judge Orrick's ruling is controlling as the law of the case—a point against which Wisk made *no* serious argument at all. Mot. at 6; Opp'n at 8. By extension, drafts of the defamatory PR statements and Sard's "PR strategy" documents listed on the Sard Document Log serve no more of a litigation purpose than the eventual public statements themselves. Mot. at 8–9.

The anti-SLAPP ruling also sets the Sard Documents apart from those at issue in *Stardock Systems, Inc. v. Reiche*, No. 17-CV-7025-SBA (KAW), 2018 WL 6259536 (N.D. Cal. Nov. 30, 2018) and *Kirkpatrick v. City of Oakland*, No. 20-CV-5843-JSC, 2022 WL 137628 (N.D. Cal. Jan. 14, 2022), on which Wisk's argument wholly depends. Opp'n at 5–7. Most of the documents at issue in *Stardock* were "communications between [a PR firm] and Defendants' counsel." *Stardock*, 2018 WL 6259536, at *6. None of the documents at issue here is a communication with counsel. And, while the *Stardock* court protected as work product a number of "internal communications relating to legal advice sought by [Defendants]," *id.* at *6, no such rationale applies here in light of the descriptions of the documents at issue on the Sard Document Log and Judge Orrick's anti-SLAPP ruling. Likewise, the *Kirkpatrick* court found that the challenged "documents establish that [the PR consultant] did, in fact, assist with the conduct of the litigation." *Kirkpatrick*, 2022 WL 137628, at *2. Wisk's reliance on Ms. Bouchier's declaration to establish a litigation purpose for the documents should be rejected: Her claim—that Sard "provide[d] advice" related to the "litigation against Archer" (Dkt. 625-3 ¶ 5)—is not specific to the wholly internal, non-litigation documents at issue, and is entirely conclusory. *See Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019) (Ryu, M.J.) ("conclusory statements in the supporting declarations" failed to support work product claims).

The clawed-back documents also prove the absence of any "litigation purpose" underlying the Sard Documents. None reveals any mental impressions of counsel or any litigation purpose. Dkt. 615-3 ¶ 38. For instance, in Sard-0051 Ms. Bouchier expresses concern that ██████████ ██████████████████████████████████████████████████████████████. *Id.* ¶ 48. That concern was hers, not Quinn Emanuel's; it has nothing to do with Wisk's claims, and it reflects a PR executive doing PR work, not assisting with "litigation strategy." Opp'n at 8; Dkt. 625-3 ¶ 6.

**B.     Wisk's Log and Declarations Fail to Carry Its Burden**

*Wisk's Log.* Wisk highlights a handful of Sard Document Log entries as supposedly "reflect[ing] attorney comments," such as emails bearing subject lines such as "Re: Yuri Comments" and "yurykapgan@quinnemanuel.com." Opp'n at 2 (collecting Bates). But Mr. Kapgan's declaration is notably silent in regard to the cited documents, and thus Wisk has failed to show that *any* individual email reflects a "litigation purpose" sufficient to qualify as work product. Instead, for all of the cited

documents, the Sard Document Log identifies (1) the "Subject Matter" as "Draft Wisk *public statement* regarding litigation against Archer" and (2) the "Specific Basis" for Wisk's work product assertion as "document discusses edits to a draft *public statement*." Dkt. 616-32 (emphasis added). (Notably, Wisk used the exact same Subject Matter and Specific Basis descriptions for some of the clawed-back documents, none of which reveals *any* attorney direction or litigation purpose. *See, e.g.*, SARD-Review0051; Dkt. 615-3 ¶ 38.) Given that "[w]ork product protection does not attach to an attorney's work directing a public relations campaign," *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 637 (N.D. Cal. 2019), Wisk has fallen far short of showing that these emails are work product.

The same goes for log entries that refer to specific court filings, such as emails with the subject line "Wisk Reply Brief Strategy Doc." Opp'n at 3 (collecting Bates). These "Strategy Docs" may reflect nothing more than Sard's strategy for maximizing media attention on Wisk's PI reply once filed. After all, Wisk used the exact same Subject Matter and Specific Basis descriptions for emails with the subject line "Re: Wisk Reporter Outreach," among others. *Compare, e.g.*, SARD-Review0634 *with* SARD-Review0563. Wisk asks the Court to simply *assume* that these internal Sard emails reflect *attorney* work product, but their subject lines are not sufficient evidence to do so.

**Declarations.** The declarations Wisk filed do not come close to providing "evidentiary support for [Wisk's] position." Dkt. 606. Most glaringly, Mr. Kapgan's declaration has only a single substantive paragraph establishing a single, non-dispositive fact: That Quinn Emanuel retained Sard. Dkt. 625-1 ¶ 2. The Kapgan Declaration needed to—but fails to—establish that the 333 documents reveal attorney work product generated at Mr. Kapgan's direction, as Wisk claimed in its log. Dkt. 616-32. Stunningly, he does not claim to have "directed" anyone at Sard to do anything, at any time, for any purpose, nor does he claim that any of the Sard Documents—let alone any particular document—reveals his "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B).

Ms. Bouchier's declaration does not fill the void left by Mr. Kapgan's declaration. Her sole mention of Mr. Kapgan is that he "retained" Sard. Dkt. 625-3 ¶ 3. There is therefore *no evidence* that, in creating the documents at issue, Sard "acted at the direction of attorney Yury Kapgan." Dkt. 616-32 (*passim*). (That claim is further undermined by a clawback document reflecting ██████ ██████████████████████████████████████████████████████████ Dkt. 615-3 ¶ 47.) Nor does

Ms. Bouchier "identify any particular legal issue" (Dkt. 466 at 11) on which Sard "provid[ed] Quinn Emanuel with communications strategies and advice." Dkt. 625-3 ¶ 3. In fact, *none* of the declarations Wisk filed says anything about *any* specific document on the log.

### C.   Wisk Mischaracterizes and Misapplies the *Burlington* Factors

***First factor.*** Wisk attempts to distinguish this case from *Johnson v. Starbucks Corp.*, No. 16-CV-724-DMR, 2019 WL 402359, at *7 (N.D. Cal. Jan. 31, 2019) on the grounds that *Wisk* asserted work product protection in its discovery responses," and *Wisk* served a belated privilege log, but neither circumstance allowed Archer a timely opportunity to challenge *Sard's* withholding of *its* documents based on Quinn Emanuel's alleged work product. Opp'n at 9 (citing Dkt. 625-10). Moreover, Wisk's untimely service of the Sard Document Log is irrelevant to the first factor: "[T]his Court's standing order impose[s] an affirmative obligation on the parties" to serve privilege logs, which is not a "mere guideline[] to be followed only upon request by an opposing party"—let alone only when ordered to do so. *Vieste, LLC v. Hill Redwood Dev.*, No. 09-CV-4024-JSW (DMR), 2010 WL 4807058, at *9 (N.D. Cal. Nov. 18, 2010). ***Second factor.*** On untimeliness, Wisk writes only that "similar 'delays' have not been found sufficient to effect a waiver." Opp'n at 10 (citations omitted). Only one delay Wisk cites exceeds Wisk's roughly 10-month delay here, and shorter delays have effected waiver. *See, e.g.*, *Vieste*, 2010 WL 4807058, at *9 (six months); Hines Decl. ¶ 5. ***Third factor.*** On "magnitude," Wisk touts its production of "over 676,963 pages of documents" as excusing its failure to log the Sard Documents. Opp'n at 10. But burden had nothing to do with Wisk's failure to log the Sard Documents over which Quinn Emanuel claimed work product—Sard sent 855 pages to Quinn Emanuel, which then told Sard to withhold all internal documents "on work-product grounds." *Id.* at 3. Quinn Emanuel simply refused to log them. ***Fourth factor.*** Incredibly, Wisk argues that logging the Sard Documents was "'unusually hard'" because "Sard possessed the Sard Documents, and Sard is a third party." Opp'n at 10. But Quinn Emanuel has *also* possessed the Sard Documents since July 2022, Dkt. 616-19 (Sard's counsel on 7/22/22: "I am still waiting for the documents back from Wisk and Quinn to complete their privilege review."), and presumably still possesses them today. Dkt. 616-32 (Wisk's Court-ordered log, served by Quinn Emanuel on July 17, 2023); Dkt. 625-4 ¶ 4.

## III.  CONCLUSION

Archer respectfully requests that the Court grant Archer's Motion in all respects.

Respectfully submitted,

DATED:  July 28, 2023                            GIBSON, DUNN & CRUTCHER LLP

By:  _/s/ Daniel J. Thomasch_
Daniel J. Thomasch

*Attorneys for Defendant Archer Aviation Inc.*