1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Yury Kapgan (Bar No. 218366)
2    yurykapgan@quinnemanuel.com
   Robert M. Schwartz (Bar No. 117166)
3    robertschwartz@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California 90017
   Telephone:      (213) 443-3000
5  Facsimile:      (213) 443-3100
6
7  Michael F. LaFond (Bar No. 303131)
     michaellafond@quinnemanuel.com
8  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
9  Telephone:   (650) 801-5000
   Facsimile:   (650) 801-5100
10
11 Attorneys for Plaintiff Wisk Aero LLC

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15 WISK AERO LLC,                          | Case No. 3:21-cv-02450-WHO

16             Plaintiff,                   | **PLAINTIFF WISK AERO LLC'S REPLY**
                                            | **IN SUPPORT OF MOTION TO ENFORCE**
17       vs.                                | **SETTLEMENT AGREEMENT**

18 ARCHER AVIATION INC.,
                                            | Hearing Date:     August 14, 2024
19             Defendant.                   | Hearing Time:     2:00 P.M.
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     THE COURT SHOULD ORDER ARCHER TO ███████████████
███████████████ ...................................................................................3

    A.      Archer Has Breached by Failing to ███████████████..............3

    B.      Archer Has Breached by Failing to Issue the Initial Unvested Share
Tranche.................................................................................................................4

    C.      The Warrant Does Not Allow Archer to Await Its Own Liquidation Event
Before Issuing the Initial Unvested Share Tranche......................................5

    D.      Archer's Interpretation of the Warrant Is at Odds with Its Own Conduct. ...............6

    E.      Archer Cannot Use the Lentell Declaration to Rewrite the Agreements. ..................9

    F.      Wisk Has Adequately Exercised Its Rights..............................................................12

    G.      Given Archer's Refusal to Issue the Shares, the Court Should Order It to
███████████████........................................................13

    H.      Archer Does Not Dispute that It Is Liable for ███████████.......................14

III.    CONCLUSION ..........................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Crumley v. U.S. Bank Nat'l Ass'n,*
   2018 WL 984864 (N.D. Cal. Feb. 20, 2018).............................................................................. 13

*Dreiling v. Am. Exp. Co.,*
   458 F.3d 942 (9th Cir. 2006)...................................................................................................... 7

*Exelon Generation Acquisitions, LLC v. Deere & Co.,*
   176 A.3d 1262 (Del. 2017)......................................................................................................... 9

*FleetBoston Fin. Corp. v. Advanta Corp.,*
   2003 WL 240885 (Del. Ch. Jan. 22, 2003) ............................................................................. 12

*Julian v. Julian,*
   2010 WL 1068192 (Del. Ch. Mar. 22, 2010) ............................................................................ 7

*Martin Marietta Materials, Inc. v. Vulcan Materials Co.,*
   56 A.3d 1072 (Del. Ch.), *aff'd,* 45 A.3d 148 (Del. 2012) ........................................................ 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
   540 F.3d 1049 (9th Cir. 2008).................................................................................................... 7

*Pecover v. Elecs. Arts Inc.,*
   633 F. Supp. 2d 976 (N.D. Cal. 2009) .................................................................................... 13

*Pers. Decisions, Inc. v. Bus. Plan. Sys., Inc.,*
   2008 WL 1932404 (Del. Ch. May 5, 2008), *aff'd,* 970 A.2d 256 (Del. 2009) ......................... 7

*Reeder v. Specialized Loan Servicing LLC,*
   52 Cal. App. 5th 795 (2020)....................................................................................................... 3

*Reilly v. Inquest Tech., Inc.,*
   218 Cal. App. 4th 536 (2013)................................................................................................... 11

*Rust v. Rust,*
   2023 WL 3120545 (Del. Ch. Apr. 27, 2023) .......................................................................... 12

*SBC Interactive, Inc. v. Corp. Media Partners,*
   1997 WL 810008 (Del. Ch. Dec. 29, 1997), *aff'd,* 714 A.2d 758 (Del. 1998) ...................... 11

*Starr Indem. & Liab. Co. v. Brightstar Corp.,*
   388 F. Supp. 3d 304 (S.D.N.Y. 2019), *aff'd,* 828 F. App'x 84 (2d Cir. 2020) ...................... 12

*Stream TV Networks, Inc. v. SeeCubic, Inc.,*
   279 A.3d 323 (Del. 2022)........................................................................................................... 9

*Weston Invs., Inc. v. Domtar Indus., Inc.*,
　2002 WL 31011141 (Del. Super. Ct. Sept. 4, 2002) .................................................. 12

*Williams Plumbing Co. v. Sinsley*,
　53 Cal. App. 3d 1027 (1975) ................................................................. 12

**<u>Statutes</u>**

Cal. Civ. Code § 3287(a) ................................................................. 13

Cal. Civ. Code § 3289(b) ................................................................. 13

1    **I.      PRELIMINARY STATEMENT**

2           Archer's Opposition concedes or does not dispute most of the issues Wisk's Motion raises:

3    (1) by executing the parties' settlement agreement (the "Agreement") Archer promised to ███

4    ████████████████████████████████████████████████████; (2) Archer promised to

5    ████████████████████████████████████ (*i.e.,* ████████████████████████

6    the Specified Date); (3) Archer's obligation is "████████████████████████████";

7    (4) Archer elected to ████████████████████████████████████████████

8    ████████████████████████████████████████████████, which

9    shares the Warrant defines as the "Initial Unvested Share Tranche"; (5) Wisk has delivered all

10   necessary notices and demands to be issued the shares; (6) the shares are "fully vested and

11   exercisable" by Wisk; and (7) despite Wisk's requests, Archer has failed to issue the shares or ███

12   ████████████████.

13          Archer's concessions leave only two questions for the Court to resolve before granting

14   Wisk's Motion.  First, is a "Liquidation Event" a condition precedent to Wisk's ability to exercise

15   the Warrant and Archer's obligation to issue the Initial Unvested Share Tranche?  Second, given

16   Archer's failure to issue the shares, does Archer have to ████████████████████████?

17          The answer to the first question is "no."   The answer to the second question is "yes."

18          As to the first question, Archer asserts that Section 4 of the Warrant conditions its

19   obligation to issue shares ████████████████████████████████████████████

20   ████████████████████ on whether a Liquidation Event occurs within five years of signing

21   the Agreement.  *See* Opp. 10-13.  But Section 4 does not say that—or anything close to it.  It does

22   not say that Wisk cannot exercise the Warrant now or that Archer can refuse to issue the shares.  It

23   does not even mention the Initial Unvested Share Tranche.  Indeed, Archer's reading conflicts

24   with every other provision of the agreements related to ████████████████, including:

25   •   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████;

28

1

2

3

4

- ███████████████████████████████████████████████
  ███████████████████████████████████████████████████
  █████████████████████████████████████████████████
  ███████████████████████████████████████████;

5

6

7

- Section 1 of the Warrant, which states that the Initial Unvested Share Tranche "shall remain unvested and unexercisable unless and until [Archer] ███████████
  █████████████████████████████████████;

8

- Section 2.2 of the Warrant, which states that "[t]he Shares issuable under this Warrant will become vested and exercisable as set forth in Section 1 hereof"; and

9

10

11

- Section 2.3 of the Warrant, which states that it "shall be exercisable . . . at any time and from time to time on or before the earliest of (i) immediately prior to the closing of . . . a Liquidation Event or (ii) 5:00 p.m. Eastern time on the 5[th] anniversary of the date hereof."

12

To avoid these unambiguous provisions, Archer submitted a declaration from its lawyer,

13

Eric Lentell, claiming that Section 4 and Archer's interpretation of it were the product of

14

negotiations specific to this transaction. But because, as even Archer admits, the Warrant's

15

language is unambiguous, the Court should not consider that declaration.[1]  Even if the Court were

16

to consider it, Lentell's testimony consists of unexpressed subjective intent and is thus irrelevant.

17

And his assertions about Section 4 are demonstrably false.  Section 4 is no bespoke provision

18

crafted to address Archer's concerns unique to this settlement.  Archer cribbed Section 4 nearly

19

word-for-word from an earlier warrant, issued in circumstances requiring none of the

20

customization supposedly needed here.  And Archer's August 2023 SEC filings confirm that it

21

knew that it had to issue the shares or ██████████████.  In fact, Archer took a charge for ███

22

████████████████████████ and said nothing to its shareholders or the capital

23

markets about the existence of any Liquidation Event condition.

24

25

26

27

28

---

[1]  Wisk submits the declaration of M. Keith Jackson ("Jackson Decl."), who helped lead the negotiations of the Agreement and associated documents on behalf of Wisk and Boeing, for the Court's consideration only if and to the extent the Court finds the Lentell Declaration admissible and relevant.

1    To side with Archer, the Court must find that, when the parties wrote "████" and

2    "████████" in the documents, they did not mean either; and when they wrote "████████," they

3    meant "████████████████████████████

4    ████████████████████" Under Archer's reading, Wisk gave Archer two

5    options to satisfy ████████████████████████████████████████████

6    ████████████████████████████████████████████

7    ████████████████. Not only does the agreements' plain language contradict Archer's

8    distorted reading, Archer's argument flies in the face of common sense.  No rational business

9    would accept Archer's conditions on ████████████████. The Court should reject Archer's

10   attempt to escape its obligations and grant Wisk's Motion.

11   **II.     THE COURT SHOULD ORDER ARCHER TO** ████████████████████████

12   ████████████████████

13       **A.     <u>Archer Has Breached by Failing to</u>** ██████████████████████████**.**

14       Section 2.13 of the Agreement states that Archer must ████████████████████

15   ████████████████. *See* Ex. 1 § 2.13(a).[2]  Archer does not dispute this, or that

16   ████████████████████████. *See* Opp. 14-15 (asking the Court to excuse ████████

17   ████████████████████████████████████████████

18   ████████████); *see also* Mot. 2 n.1 (████████████████████████████

19   ████████████); Mot. 4 (████████████████████████████████).  Critically,

20   Section 2.13 is ***not*** ████████████████████████████████████████

21   ████████████████████████████████████ *See* Ex. 1

22   § 2.13(a).  By reading a non-existent ████████████████ into Section 2.13(a), Archer is

23   attempting to add a new term to the Agreement.  But the Agreement's integration clause forbids

24   that.  *See* Ex. 1 § 3.02 ("Entire Agreement"); *see also Reeder v. Specialized Loan Servicing LLC*,

25

26   ───────────────────

27   [2]   As used in this brief, numbered exhibits refer to exhibits to the June 7, 2024 Declaration of
     Greg Bibbes, filed with Wisk's Motion.  By contrast, exhibits identified by letter are exhibits to

28   the July 31, 2024 Declaration of Keith Jackson filed with this brief.

1  52 Cal. App. 5th 795, 804 (2020) ("when parties enter an integrated written agreement, extrinsic

2  evidence may not be relied upon to alter or add to the terms of the writing") (quotation omitted).[3]

3        Archer's Opposition attempts to add ███████████████████████████

4  ███████ by claiming that "[t]he purpose of the settlement was to solidify a collaboration

5  between erstwhile litigants."  Opp. at 3.  Nothing in the Agreement, its attachments, or the

6  declaration from Archer's attorney reflects any agreement by Wisk to delay—much less,

7  potentially forgo—███████████████████████████████████████ in

8  pursuit of "collaboration."

9        Even assuming the parties' aim was collaboration, Archer cannot explain how that would

10  be advanced by ███████████████ until their collaboration was likely to end.  As Archer

11  admits, whether through merger or going out of business, a Liquidation Event would jeopardize

12  any collaboration.  *See* Opp. 7 (arguing Section 4 was meant to "██████████████████

13  █████████████████████████████████").  On Archer's purported

14  reading, Wisk had a ████████ incentive to wait for the very event—a change in control or

15  liquidation—that would jeopardize their collaboration.  That would make no sense.

16      **B.**    **<u>Archer Has Breached by Failing to Issue the Initial Unvested Share Tranche.</u>**

17        Wisk's rights—and Archer's obligations—under Section 1 of the Warrant are clear:

18  "[Wisk] is entitled, upon surrender of the Warrant to [Archer] to purchase from [Archer] up to an

19  aggregate of 13,176,895 shares of [Archer's] Class A Common Stock, par value $0.0001 per

20  share."  Ex. 2 § 1.  The first portion of the 13,176,895 shares consists of 4,512,636 shares referred

21  to as the Initial Vested Share Tranche.  *Id*.  Archer issued those shares to Wisk.

22        Meanwhile, the additional 8,664,259 shares that the Warrant entitles Wisk to receive—

23  referred to as the Initial Unvested Share Tranche—were to remain "unvested and unexercisable

24  unless and until ████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ███████████████████████████████████████"  Ex. 2 § 1.

27

28  ───────────────
[3]  The Agreement is governed by California law.  *See* Ex. 1 § 3.04(a).

1    Upon ████████████, however, the Warrant expressly provides that the Initial Unvested

2    Share Tranche shall "become vested and exercisable" for the "number of Shares equal in value to

3    the █████████████████ less any cash paid in settlement of the █████████████

4    ████████████████████████████████████." *Id.*

5         Archer does not dispute that it ████████████████████████████████.

6    *See* Ex. 4 (the "████████████████████"); *see also* Opp. 1 (discussing when "Archer

7    ████████████████████"). Nor does Archer dispute that, after it delivered the

8    Notice, Wisk demanded that Archer issue the shares in the Initial Unvested Share Tranche. *See*

9    Opp. 2, 8-9, 15. And Archer admits that, despite Wisk's demand for the shares and Wisk's rights

10   under Section 1 of the Warrant, Archer has failed to issue any shares from the Initial Unvested

11   Share Tranche to Wisk. *Id.* Archer's continuing refusal to do so constitutes a breach of both the

12   Agreement and the Warrant. That is sufficient to grant this motion.

13        **C.    The Warrant Does Not Allow Archer to Await Its Own Liquidation Event**

14             **Before Issuing the Initial Unvested Share Tranche.**

15        Archer's only defense to its failure to █████████████████████████ is its

16   argument that, under Section 4 of the Warrant, Archer need not issue the Initial Unvested Share

17   Tranche unless and until there is a Liquidation Event. Opp. 10-13. Archer is wrong. Section 4

18   says none of the things Archer claims it says.

19        Section 4, titled "Treatment of Warrant Upon a Liquidation Event," discusses Wisk's

20   rights under the Warrant if a Liquidation Event occurs. The Warrant defines a Liquidation Event

21   as: (i) Archer merging with another company, (ii) Archer dissolving or liquidating its assets, or

22   (iii) a qualifying change in control or the composition of Archer's board of directors. *See* Ex. 2

23   § 2 (definition of "Liquidation Event"). Pursuant to Section 4, *if* a Liquidation Event occurs, Wisk

24   may either: (i) receive "all remaining Shares for which the Warrant is then exercisable," or (ii)

25   elect not to receive the shares at all. *Id.* § 4. This is the text of Section 4, in its entirety:

26             4.    Treatment of Warrant Upon a Liquidation Event. In the event of a
             Liquidation Event, either (a) Holder shall affirmatively exercise this Warrant in full
27           with respect to all remaining Shares for which the Warrant is then exercisable and
             such exercise will be deemed effective immediately prior to the consummation of
28           such Liquidation Event or (b) if Holder affirmatively elects not to exercise the

                                              5                        Case No. 3:21-cv-02450-WHO

Warrant, this Warrant will expire upon the consummation of such Liquidation Event; provided, however, should Holder not affirmatively elect option (a) or (b), then the Warrant will automatically convert in full with respect to all remaining Shares for which the Warrant is then exercisable and such conversion will be deemed effective immediately prior to the consummation of such Liquidation Event with payment owed on the full exercise price on a cashless basis pursuant to Section 3.2 hereof. The Company shall provide Holder with written notice of the foregoing (together with such information as Holder may reasonably request in connection with such contemplated Liquidation Event giving rise to such notice), which is to be delivered to Holder not less than ten (10) days prior to the closing or occurrence, as applicable, of the proposed Liquidation Event.

Ex. 2 § 4.

Section 4 does ***not*** state that Wisk may exercise its right to receive shares from the Initial Unvested Share Tranche (or any other shares) ***only*** if there is a Liquidation Event.  *Id*.  No language to that effect appears anywhere in Section 4.  Nor does Section 4 establish a method or requirements for Wisk to exercise the Initial Unvested Share Tranche.  In fact, the term "Initial Unvested Share Tranche" does not even appear in Section 4.

To make it appear that Section 4 has relevance to Wisk's Motion, Archer contends that Section 4 provides the "authorization of exercise" for the Initial Unvested Share Tranche as a companion to the provisions in Section 3 for the "authorization of exercise" for the Initial Vested Share Tranche.  *See* Opp. 13.  But Archer is comparing apples to oranges.  Section 3 sets forth steps that have no counterpart in Section 4, such as the requirements that Wisk "surrender th[e] Warrant" "at the principal office of [Archer]" and pay Archer "by certified, cashier's or other check acceptable to [Archer] or by wire transfer to an account designated by [Archer] of an amount equal to" the cost of the shares.  *See* Ex. 2 § 3.1.  If, as Archer claims, Section 4 were the Initial Unvested Share Tranche counterpart to Section 3, it would have similar provisions.  But it does not.  Section 4 has no comparable provisions describing the "mechanics" of how Wisk would elect to obtain shares; it simply describes what happens should Archer experience a Liquidation Event.  It has no bearing on Archer's failure to issue the Initial Unvested Share Tranche.

## D.  <u>Archer's Interpretation of the Warrant Is at Odds with Its Own Conduct.</u>

Under Delaware law, which governs the Warrant (*see* Ex. 2 § 20), the best evidence of the parties' contractual intent—other than the language of the contract itself—is their conduct before

1   the dispute arose.  *See, e.g.*, *Martin Marietta Materials, Inc. v. Vulcan Materials Co*., 56 A.3d

2   1072, 1119 n.186 (Del. Ch.), *aff'd*, 45 A.3d 148 (Del. 2012), and *aff'd*, 68 A.3d 1208 (Del. 2012)

3   ("The parties to an agreement know best what they meant, and their action under it is often the

4   strongest evidence of their meaning.") (quoting Restatement (Second) of Contracts § 202 cmt. g

5   (1981)); *see also Julian v. Julian*, 2010 WL 1068192, at *5 (Del. Ch. Mar. 22, 2010) (same); *Pers.*

6   *Decisions, Inc. v. Bus. Plan. Sys., Inc.*, 2008 WL 1932404, at *5 (Del. Ch. May 5, 2008), *aff'd*,

7   970 A.2d 256 (Del. 2009) (same).  Before Archer breached its payment obligations, its conduct

8   was consistent with the unambiguous language of the Agreement and the Warrant—and at odds

9   with the *post hoc* interpretation that Archer now presses.

10      Right after Archer signed the Agreement, Archer filed documents with the SEC that

11   advised its shareholders and the capital markets about the Agreement, the Warrant, and Archer's

12   obligations under both.  *See* Ex. A (Archer's August 14, 2023, Form 10-Q) at 22-23;[4] Ex. C

13   (Letter to Shareholders attached to Archer's August 10, 2023, Form 8-K) at 10, 26, 28, 30, 32.[5]

14      In Archer's August 14, 2023, Form 10-Q, Archer disclosed its obligation to issue shares to

15   Wisk in the Initial Vested Share Tranche and the Initial Unvested Share Tranche.  Notably, Archer

16   did **not** state in its SEC filing that the Initial Unvested Share Tranche could be issued to Wisk only

17   upon the occurrence of a Liquidation Event.  There is no mention of such a condition:

18      Pursuant to the [Settlement] Agreements, the Company has agreed to issue Wisk a
19      warrant to purchase up to 13,176,895 shares of Common Stock with an exercise
        price of $0.01 per share (the "Warrant"). The Warrant shall vest and be exercisable
20      as follows: (i) immediately as to 4,512,636 shares, underlying the Warrant (the
        "Initial Vested Share Tranche") and (ii) for up to 8,664,259 shares (the "Second
21      Tranche") underlying the Warrant as determined six months from the effective date
        of the Warrant (the "Specified Date"). The extent to which the Second Tranche
22      vests is based on the value of the First Boeing Investment and the shares underlying
        the Initial Vested Share Tranche as of the Specified Date. The portion of the
23      Warrant that does not vest in accordance with the foregoing shall be forfeited on
24      the Specified Date.

25   _____

26   [4]   For consistency, cited page numbers for Jackson Declaration exhibits refer to the PDF page
     numbers, and not any internal numbering that the exhibit may contain.

27   [5]   Archer's filings with the SEC are subject to judicial notice.  *See Metzler Inv. GMBH v.*
     *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (noting that district courts may
28   take judicial notice of SEC filings) (citing *Dreiling v. Am. Exp. Co*., 458 F.3d 942, 946 n.2 (9th
     Cir. 2006)).  Wisk requests that the Court take judicial notice of the SEC filings cited in this brief.

1   Ex. A (Archer's August 14, 2023, Form 10-Q) at 22-23.

2          Archer also told its investors and the capital markets about the "risk factors" associated

3   with the Warrant.  Although Archer detailed the circumstances surrounding the vesting and

4   issuance of both tranches of shares, it did **not** say the Warrant could be exercised only pursuant to

5   a Liquidation Event:

6          [W]e have agreed to issue Wisk a warrant to purchase up to 13,176,895 shares of
           Class A Common Stock with an exercise price of $0.01 per share (the "Warrant").
7          The Warrant shall vest and be exercisable as follows: (i) immediately as to
           4,512,636 of the shares underlying the Warrant (the "Initial Vested Share
8          Tranche") and (ii) for up to 8,664,259 of the shares (the "Second Tranche")
           underlying the Warrant as determined six months from issuance. The extent to
9          which the second tranche of the Warrant will vest is based on the value of Boeing's
           investment in the Private Placement and the shares underlying the Initial Vested
10         Share Tranche as determined six months from entry into the Warrant (the
           "Specified Date"). Any shares underlying the Warrant that do not vest in
11         accordance with the foregoing shall be immediately forfeited and shall not become
           exercisable. If the value of the shares underlying First Boeing Investment and the
12         Warrant plus any shares that become vested pursuant to the Second Tranche have a
           combined value of less than a certain specified amount as of the Specified Date,
13         Archer will be required to pay the balance, if any, in cash.

14

15   Ex. A (Archer's August 14, 2023, Form 10-Q) at 44.

16          On the same day that Archer filed these disclosures with the SEC, it wrote its shareholders

17   to discuss these transactions.  Archer's statements further confirm that it had the same

18   understanding of the Agreement then as Wisk has had all along.  Archer disclosed that it had taken

19   a $73 million charge[6] against that quarter's earnings to account for its obligations under the

20   Agreement.  Ex. C (Letter to Shareholders attached to Archer's August 10, 2023, Form 8-K) at 10,

21   26, 28, 30, 32.  But again, Archer said nothing in its disclosure to shareholders about the Initial

22   Unvested Share Tranche being contingent on a Liquidation Event, *see id*., or anywhere else in its

23   August 14, 2023, Form 10-Q.  *See* Ex. A (Archer's August 14, 2023, Form 10-Q).

24   _____

25   [6]  The $73 million represented ███████████████████████████, calculated as
     follows: Under the Agreement, ████████████████████████████████████

26   ████████████.  *See* Ex. 1 § 2.13(a) ("████████████████████████").  However,

27   ██████████(*see id*.), ████████████████████.  *See* Ex. 1 § 2.09 ("███
     ████████").

28   ████████████████████████████████████.

Four months later, Archer filed its Quarterly Report for the period ending September 30, 2023.  Archer again described the Warrant.  Although it stated when the shares would vest and be exercisable, once again it said nothing about any condition or requirement of a Liquidation Event:

> On August 15, 2023, we issued Wisk Aero LLC a warrant to purchase up to 13,176,895 shares of Common Stock with an exercise price of $0.01 per share. The Warrant shall vest and be exercisable as follows: (i) immediately as to 4,512,636 shares of Common Stock (the "Initial Vested Share Tranche"), and (ii) for up to 8,664,259 shares of Common Stock as determined six months from entry into the Agreement.

Ex. E (Archer's November 9, 2023, Form 10-Q) at 46; *see also id*. at 23-24.

In short, Archer's conduct consistently confirmed that the Agreement and Warrant mean what they say: the Initial Unvested Share Tranche is not conditioned on a Liquidation Event.  It was only when the time came for Archer to issue the shares that it created its *post hoc* rationalization to avoid its clear promises.

**E.      Archer Cannot Use the Lentell Declaration to Rewrite the Agreements.**

To argue that the agreements mean things that they do not say, and to claim that the parties intended things they never even discussed, Archer offers Lentell's declaration.  As explained below, these arguments are untenable.  But the Court need not even consider them.  Archer admits that the Warrant's language is "unambiguous."  Opp. 11 (referring to "the clear, unambiguous language of the Warrant").  Under Delaware law, which Archer admits governs the Warrant, *id*. 10 n.3, where a contract is unambiguous, the parol evidence rule precludes the consideration of such extrinsic evidence.  *See, e.g.*, *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323, 338 (Del. 2022) ("We do not consider extrinsic evidence unless we find that the text is ambiguous."); *Exelon Generation Acquisitions, LLC v. Deere & Co*., 176 A.3d 1262, 1267 (Del. 2017) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity.").  Nonetheless, even if it were relevant and considered, Lentell's declaration cannot support Archer's reading of the contract language for several reasons.

**First**, Archer argues that, in drafting and revising the documents, ████████████

████████████████████████████████████████████████

1    ███████████████████████████████████.  *See* Opp. 5-6; Lentell Decl. ¶ 12.  Archer

2    claims that Wisk edited Section 3 "██████████████████████████████████████████

3    ████████████████████████████" to "ensure[] that the Initial Unvested Share Tranche

4    could be exercised only upon a Liquidation Event per Section 4 of the Warrant."  Lentell Decl.

5    ¶ 12 (emphasis in original).  That contention defies common sense as well as any tenable reading

6    of the language.  Nothing about Wisk's edits suggested a spontaneous and charitable desire to

7    forgo ████████████████ for which it had contracted.  The revisions to Section 3 were

8    intended to clarify that, at the time Archer issued the Warrant, it could be exercised only as to the

9    Initial Vested Share Tranche, not also the Initial Unvested Share Tranche, which the prior

10   language could be read to have included.  Jackson Decl. ¶ 8.  No counterpart section was

11   necessary to address when the Initial Unvested Share Tranche became exercisable, as it was

12   already addressed in Sections 1, 2.2 and 2.3 (*i.e.*, if Archer ████████████████████

13   ████████████████████████████████).  The revisions to Section 3

14   did not somehow cause Section 4 to silently impose a Liquidation Event condition on issuance of

15   the Initial Unvested Share Tranche.

16        ***Second***, Mr. Lentell claims that the language appearing in Section 4 represents "████████

17   ████████████" between ██████████████████████████████████████████

18   ████████████████.  Lentell Decl. ¶ 14.  Not so.  The language in Section 4 is boilerplate that

19   appears nearly word-for-word in an unrelated, earlier warrant Archer issued to another shareholder

20   under different circumstances not in the context of a litigation settlement.  *Compare, e.g.*, Ex. D

21   (Stellantis Warrant) § 4 *with* Ex. 2 § 4.

22        ***Third***, Archer relies on Lentell's declaration to argue erroneously that Section 4 functions

23   somehow as an implied "lock-up" provision similar to—but vastly more restrictive than—the

24   express lock up provision in Section 13 of the Warrant.  *See* Opp. 12; Ex. 2 § 13 ("Lock-up;

25   Transfer Restrictions").  Archer is wrong.  On its own terms, Section 13 created a lock-up that

26   would end at the ***earlier*** of (i) the Specified Date, or (ii) a Liquidation Event.  *See* Ex. 2

27   § 13.  There is no dispute that the Specified Date has passed, and thus the lock-up is now

28   over.  *Id.*  The Court should reject Archer's attempt to extend the lock-up until a Liquidation Event

1  occurs; that would be contrary to the plain language of Section 13 stating that the lock-up ended as

2  of the Specified Date.

3        **Fourth**, Archer has no evidence that Wisk shared Archer's current views.  Archer has

4  identified no communications from Wisk in which Wisk acknowledged or agreed that Section 4

5  would excuse Archer from delivering shares from the Initial Unvested Share Tranche in the

6  absence of a Liquidation Event.  The most Archer can point to is ████████████████████

7  ████████████████████████.  *See* Lentell Decl. ¶ 13.  But that is not evidence that the parties

8  discussed—much less that Wisk agreed—that a Liquidation Event was a condition precedent for

9  Archer's issuance of shares from the Initial Unvested Share Tranche.  Mr. Lentell's artfully

10 worded declaration also conspicuously omits any assertion that Archer ever communicated its

11 purported understanding of these provisions to Wisk or that Wisk ever manifested any agreement

12 with that understanding.  As a result, Mr. Lentell's declaration at best evinces only Archer's

13 undisclosed subjective intent, which cannot be used to interpret a contract under either California

14 or Delaware law.  *See, e.g.*, *Reilly v. Inquest Tech., Inc.*, 218 Cal. App. 4th 536, 554 (2013) ("The

15 parties' undisclosed intent or understanding is irrelevant to contract interpretation."); *SBC*

16 *Interactive, Inc. v. Corp. Media Partners*, 1997 WL 810008, at *4 n.13 (Del. Ch. Dec. 29, 1997),

17 *aff'd*, 714 A.2d 758 (Del. 1998) ("A party's subjective, undisclosed understanding of a contract's

18 meaning is not legally effective to prove contractual intent.").

19       **Finally**, Archer's own SEC filings also contradict Mr. Lentell's claim that "[a]s a startup

20 company that is pre-revenue" Archer "███████████████████████████████████████."

21 Lentell Decl. ¶ 8.  The filings reveal instead that in August 2023—when Archer signed the

22 Agreement—it was holding over $400 million in cash and cash equivalents, ██████████████

23 ██████████████████████████████████.  *See* Ex. A (Archer's August 14, 2023,

24 Form 10-Q) at 5; *see also* Ex. E (Archer's November 9, 2023, Form 10-Q) at 5 (confirming that

25 Archer still held over $400 million in "Cash and cash equivalents" as of September 30, 2023); Ex.

26 F (Archer's May 9, 2024, Form 10-Q) at 5 (also showing Archer held over $400 million in "Cash

27 and cash equivalents" as of March 31, 2024).

28

At bottom, Archer asks this Court to transform Archer's unambiguous "███████ ███████████████████████" obligation to ████████████████, into an uncertain, conditional ███████████████████ which would be left to chance (*i.e.*, whether a Liquidation Event occurred) or to the discretion of Archer's management (*i.e.*, whether Archer agreed to sell or take other actions causing a Liquidation Event within five years).  As noted above, it is undisputed that the contract is unambiguous, but even if there were some ambiguity, Archer has presented no evidence to support its position.  It has offered no communications between the parties even suggesting that they ever intended the Agreement to operate in that fashion.  And such a construction would defy common sense: The parties were settling hard-fought litigation arising from Wisk's accusations that Archer had stolen valuable trade secrets to obtain an unfair advantage.  There was no reason for Wisk to renounce its "██████████" entitlement to ██████████ ████████████████████.

## F. Wisk Has Adequately Exercised Its Rights.

Wisk has made reasonable attempts to exercise its rights under the Warrant.  *See, e.g.*, Exs. 5, 6, 7, 9.  That is all that Delaware law requires.  Even where parties to a contract fail to supply a term essential to a determination of their rights and duties, the court will supply "a term which is reasonable in the circumstances."  *Rust v. Rust*, 2023 WL 3120545, at *9 (Del. Ch. Apr. 27, 2023) (quoting Restatement (Second) of Contracts § 204); *see also FleetBoston Fin. Corp. v. Advanta Corp.*, 2003 WL 240885, at *31 (Del. Ch. Jan. 22, 2003) (same); *Weston Invs., Inc. v. Domtar Indus., Inc.*, 2002 WL 31011141, at *6 (Del. Super. Ct. Sept. 4, 2002) (same).

Once Wisk became entitled to receive the Initial Unvested Share Tranche—a fact Archer does not dispute, *see* Opp. 12 ("Archer does not dispute that the shares are 'vested and exercisable.'")—Wisk needed only to exercise its rights in a reasonable manner.  Wisk did so, using the same mechanism provided for the Initial Vested Share Tranche.  *See* Exs. 5, 6, 7, 9.  That was reasonable, and reason enough for the Court to grant Wisk's Motion.  *See, e.g.*, *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 328 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 84 (2d Cir. 2020) (applying Restatement (Second) of Contracts and holding that, where an

1   insurance policy was silent on the method of adding new sites to the policy but the insurer used a

2   consistent method to add new sites, that method was reasonable and binding on the parties).

3         Even though Archer admits that it failed both to ████████████████████████

4   ███████████████████████████████████████, it argues that Wisk has

5   "waived any complaint about the timeliness of ████████████."  Opp. 14.  That misrepresents

6   Wisk's argument.  Wisk's acceptance of Archer's belated █████████████████ is

7   not a waiver of Wisk's right to timely receipt of ████████████████████.  *Cf., e.g.,*

8   *Williams Plumbing Co. v. Sinsley*, 53 Cal. App. 3d 1027 (1975) (party that waived timeliness of

9   payment did not waive right to ultimately receive payment).  Far from "waiving" its right to ███

10  ███, Wisk repeatedly demanded that Archer comply with its contractual rights, and then filed

11  its Motion when Archer refused.  *See, e.g.*, Exs. 6, 7, 9.[7]  Through its demands and motion

12  practice, Wisk has preserved its rights.

13        **G.    Given Archer's Refusal to Issue the Shares, the Court Should Order It to ███**

14  **█████████████████████████████:**

15        Archer admits that it has not issued any shares ██████████████████████

16  ██████████████████.  *See* Opp. 2 (arguing "Archer . . . was unable to issue those

17  shares").  The Agreement contains a clear provision covering that possibility.  It requires Archer to

18  ███████████████████████:

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████████████████████████

22  ███████████

23  *See* Ex. 1 § 2.13(b).

24

25  ───────────────────
    [7]  Archer argues elsewhere that "[w]here time is not of the essence of an instrument, compliance

26  within a reasonable time after the specified due date constitutes compliance therewith."  Opp. 14.
    But Archer's authorities are inapposite, because they examine contracts that did not set specific

27  deadlines.  By contrast, the Agreement set forth a specific date when ████████████████
    ██████████████████████████.  *See* Mot. 2 n.1 (████████████████████

28  ████████████████████████).

1    Archer does not address this clause or even try to explain why it does not apply.  That

2  silence concedes the point.  *See Crumley v. U.S. Bank Nat'l Ass'n*, 2018 WL 984864, at *4 (N.D.

3  Cal. Feb. 20, 2018) (by "fail[ing] to address these arguments at all" the party opposing the motion

4  "thus has conceded the issue"); *Pecover v. Elecs. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal.

5  2009) ("plaintiffs have effectively conceded, by failing to address the issue in their opposition").

6    **H.    Archer Does Not Dispute that It Is Liable for ████████████████.**

7    Under California law, the party that breaches a contract for the payment of an amount that

8  is "capable of being made certain by calculation" is liable to the non-breaching party for

9  █████████████.  *See* Cal. Civ. Code §§ 3287(a), 3289(b).  Archer's opposition is also silent

10  on the issue of █████████████.  *Compare* Mot. 10 (Wisk's argument that it is entitled to

11  █████████████) *with* Opp. 15 (arguing that Archer may still cure its breach by ████████

12  █████████, but without discussing or mentioning █████████████).  As set forth in

13  Wisk's opening brief, ████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  █████████████████.  *See* Mot. 10.  Through the date of the hearing, ███

16  ████████████████████████████.

17  **III.    CONCLUSION**

18    For the foregoing reasons, the Court should grant Wisk's Motion to Enforce the parties'

19  Settlement Agreement and award █████████████.

20  Dated:  July 31, 2024                    Respectfully submitted,

21                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

22

23                            By  */s/ Yury Kapgan*
                                    Yury Kapgan
24                                  Robert M. Schwartz
                                    Michael LaFond
25

26                            Attorneys for Plaintiff Wisk Aero LLC

27

28